ACCEPTED
15-24-00132-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/22/2025 4:02 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00132-CV

## IN THE FIFTEENTH COURT OF APPEALS
## AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/21/2025 5:00:00 PM
CHRISTOPHER A. PRINE
Clerk

AIRW 2017-7, L.P.; 600 WESTINGHOUSE INVESTMENTS, LLC; 800 WESTINGHOUSE INVESTMENTS, LLC; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; AND JONAH WATER SPECIAL UTILITY DISTRICT, *Appellants*

v.

CITY OF GEORGETOWN, TEXAS, *Appellee*.

On Appeal from the 261st District Court, Travis County, Texas
Trial Court Cause No. D1-GN-23-001004

## BRIEF OF APPELLANT
## JONAH WATER SPECIAL UTILITY DISTRICT

John J. Carlton
State Bar No. 03817600

Kelli A. N. Carlton
State Bar No. 15091175

Erin R. Selvera
State Bar No. 24043385

THE CARLTON LAW FIRM, P.L.L.C.
4301 Westbank Drive, Suite B-130
Austin, Texas 78746
john@carltonlawaustin.com
kelli@carltonlawaustin.com
erin@carltonlawaustin.com
Telephone: (512) 614-0901
Facsimile: (512) 900-2855
ATTORNEYS FOR JONAH WATER
SPECIAL UTILITY DISTRICT

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

| PARTY | COUNSEL |
|---|---|

**Defendant-Appellant:**
Texas Commission on
Environmental Quality

Aaron L. Nielson
Solicitor General

Evan Greene
Assistant Solicitor General
Evan.Greene@oag.texas.gov

Kellie E. Billings-Ray
Chief, Environmental Protection Division

Sara J. Ferris
Assistant Attorney General
Sara.Ferris@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911

**Plaintiff-Appellee:**
City of Georgetown, Texas

William A. Faulk, III
cfaulk@spencerfane.com

Carlota Hopinks-Baul
chbaul@spencerfane.com

Maris M. Chambers
mchambers@spencerfane.com
SPENCER FANE, LLP
9442 North Capital of Texas Highway
Plaza I, Suite 500
Austin, Texas 78759

Patricia Erlinger Carls
tcarls@tcarlslaw.com
LAW OFFICES OF PATRICIA ERLINGER
CARLS
3100 Glenview Ave.
Austin, Texas 78703-1443

**Intervenor Defendants-Appellants**:
AIRW 2017-7, L.P.; 600 Westinghouse Investments, LLC; and 800 Westinghouse Investments, LLC

Andrew Davis
Andrew@lkcfirm.com

William T. Thompson
will@lkcfrim.com

Todd Disher
todd@lkcfirm.com

Michael C. Cotton
michael@lkcfirm.com
LEHOTSKY KELLER, LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701

Helen S. Gilbert
hgilbert@bartonbensonjones.com
BARTON BENSON JONES, PLLC
7000 North MoPac Expressway, Suite 200
Austin, Texas 78731

Edmond McCarthy
Ed@ermlawfirm.com
MCCARTHY & MCCARTHY, LLP
122 Colorado St. Suite 2399
Austin, TX 78701

**Intervenor Defendants-Appellants**:
Jonah Water Special Utility District

John J. Carlton
john@carltonlawaustin.com

Kelli A. N. Carlton
kelli@carltonlawaustin.com

Erin R. Selvera
erin@carltonlawaustin.com
THE CARLTON LAW FIRM, P.L.L.C.
4301 Westbank Drive, Suite B-130
Austin, Texas 78746

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................2

TABLE OF CONTENTS ..................................................................................4

INDEX OF AUTHORITIES................................................................................6

GLOSSARY OF ACRONYMS AND TECHNICAL TERMS ...............................8

STATEMENT OF THE CASE...........................................................................11

STATEMENT REGARDING ORAL ARGUMENT..............................................12

ISSUES PRESENTED......................................................................................13

STATEMENT OF FACTS .................................................................................14

    I.   New development creates a need for wastewater service. ...........................14

    II.  The City denies service and agrees to allow AIRW to use a private wastewater facility, prompting AIRW to apply for a wastewater permit from TCEQ. .........................................................................................................15

    III. The City seeks judicial review after TCEQ issues the Permit. ....................16

STANDARD OF REVIEW ................................................................................18

SUMMARY OF THE ARGUMENT ....................................................................22

ARGUMENT ..................................................................................................24

    I.   The trial court erred in applying standards not found in statute, Commission rule, or guidance. .......................................................................................24

        A.     An applicant is not required to secure denial of an annexation waiver for the Commission to issue the TPDES permit.....................................................24

        B.     Texas' Regionalization Policy does not limit what costs the Commission can consider..................................................................................................29

        C.     The trial court had no basis to substitute its judgment for the Commission's judgment..................................................................................30

    II.  The Commission's issuance of the TPDES Permit to AIRW did not prejudice the City's substantial rights. ........................................................31

        A.     The City has no statutory or substantial right to serve the property.......31

B. The Commission has clear and unambiguous authority over this matter. .........................................................................................33

C. The Commission followed all constitutional and statutory requirements .................................................................................33

D. The Commission followed proper procedure applying Texas' Regionalization Policy. .....................................................................35

E. The Commission reasonably exercised its discretion to grant AIRW the permit. .........................................................................................37

F. The Commission's decision to issue the Permit was not arbitrary or capricious. ......................................................................................39

G. Substantial evidence supports the Commission's final order. ................40

III. There are no other grounds for affirming the trial court's order. ..................41

CONCLUSION AND PRAYER ...................................................................................42

CERTIFICATE OF COMPLIANCE ..........................................................................44

CERTIFICATE OF SERVICE ...................................................................................45

INDEX TO APPENDIX ...............................................................................................47

# INDEX OF AUTHORITIES

**Cases**

*Ammonite Oil & Gas Corp. v. R.R. Comm'n of Tex.*, 698 S.W.3d 198, 207 (Tex. 2024) ...............................................................................................................19

*Citizens Against Landfill Location v. Tex. Comm'n on Envtl. Quality*, 169 S.W.3d 258, 264 (Tex. App.—Austin 2005, pet. denied) ..............................................19

*City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994) ...20

*City of San Antonio v. Texas Water Commission*, 407 S.W.2d 752, 756 (1966)......41

*City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 819-20 (Tex. App.—Austin 2011) ...........................................................................................20

*Dyer v. Tex. Comm'n on Envtl. Quality*, 646 S.W.3d 498.......................................21

*Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*, 393 S.W.3d 417 (Tex. App.—Austin 2012, pet. denied).............................................40

*Hyde v. Harrison Cnty.*, 2025 Tex. App. LEXIS 1896............................................21

*Jenkins. v. Crosby Indep. Sch. Distr.,* 537 S.W.3d 142, 149 (Tex. App.-Austin 2017, no pet) ........................................................................................................18

*Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ)...................................................................................................40

*McRae v. Lindale Independent School Dist.*, 450 S.W.2d 118, 1970 Tex. App. LEXIS 1967.................................................................................................. 40, 41

*Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) ......................19

*Pierce v. Underwood*, 487 U.S. 552, 564-65, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988)...................................................................................................................40

*Pub. Util. Comm'n of Tex. v. Tex. Indus. Energy Consumers*, 620 S.W.3d 418, 427 (Tex. 2021)..................................................................................................... 18, 20

*Save Our Springs All., Inc. v. Tex. Comm'n on Envtl. Quality*, 2025 Tex. LEXIS 306 ............................................................................................... 18, 19, 21, 39

*Slay v. Tex. Comm'n on Envtl. Quality*, 351 S.W.3d 532, 2011 Tex. App. LEXIS 7278 ..................................................................................................................40

*State v. Public Util. Comm'n*, 883 S.W.2d 190, 204, 37 Tex. Sup. Ct. J. 1102 (Tex. 1994) ..................................................................................................................19

*Suburban Util. Corp. v. Pub. Util. Comm'n*, 652 S.W.2d 358, 364 (Tex. 1983).....18

*Tex. Comm'n on Envtl. Quality v. Friends of Dry Comal Creek*, 669 S.W.3d 506, 517 (Tex. App.- Austin 2023, pet denied) ...................................................... 20, 39

*Tex. Comm'n on Envtl. Quality v. Maverick County*, 642 S.W.3d 537, 547 (Tex. 2022) ...................................................................................................21

*Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 453 (Tex. 1984) ................................................................................... 18, 21

*Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam) ...................................................................................................21

*Texas Health & Hum. Servs. Comm'n v. Lukefahr*, No. 03-15-00325-CV, 2016 Tex. App. LEXIS 10855, 2016 WL 5874871, at *2 (Tex. App.—Austin Oct. 6, 2016, no pet.) (mem. op.) ...................................................................................20

## Statutes

Tex. Gov't Code § 2001.051 ...................................................................................33
Tex. Gov't Code § 2001.052 ...................................................................................33
Tex. Gov't Code § 2001.174 ...................................................................................18
Tex. Gov't Code § 2001.174(2) ...............................................................................20
Tex. Gov't Code § 2003.047 ...................................................................................33
Tex. Gov't Code § 2003.047(i-1) .............................................................................21
Tex. Gov't Code § 2003.047(i-2) .............................................................................21
Tex. Gov't Code § 311.016(1) .................................................................................38
Tex. Water Code § 13.244(c) ..................................................................................32
Tex. Water Code § 26.003 .......................................................................... 24, 29, 37
Tex. Water Code § 26.028 .......................................................................................33
Tex. Water Code § 26.0282 .............................................................................. 24, 38
Tex. Water Code § 26.081 ................................................................................ 24, 37
Tex. Water Code § 5.114 .........................................................................................33
Tex. Water Code § 5.351 .........................................................................................18
Tex. Water Code Chapter 65 ..................................................................................32

## Rules

16 TAC § 24.225(c)..................................................................................................32
30 TAC § 39.405 .....................................................................................................33
30 TAC § 39.551 .....................................................................................................33

## GLOSSARY OF ACRONYMS AND TECHNICAL TERMS

| Term | Meaning |
| --- | --- |
| AIRW | Intervenor AIR-W 2017-7, L.P., Applicant and Intervenor Defendant-Appellant |
| ALJ | Administrative Law Judge |
| APA | Administrative Procedure Act, Tex. Govt. Code §§ 2001.001-.903 |
| Application | AIR-W 2017-7, L.P.'s application for a new TPDES permit filed with the TCEQ on April 6, 2020 |
| AR | Administrative Record. Contained within the SCR. |
| CCN | Certificate of Convenience and Necessity |
| City | City of Georgetown, Plaintiff-Appellee |
| Commission | Appellant Texas Commission on Environmental Quality (TCEQ) |
| COL | Conclusion of Law |
| CR | Clerk's Record; See also SCR |
| Draft Permit | The draft of TPDES Permit No. WQ0015878001 prepared by the Executive Director and sent to the Applicant for public notice on December 3, 2020. |
| ED | Executive Director of the Texas Commission on Environmental Quality |
| ETJ | Extraterritorial Jurisdiction |
| Existing Use | A use that is currently being supported by a specific water body or that was attained on or after November 28, 1975 (30 TAC § 307.3(a)(27). |

| | |
|---|---|
| Facility | Rockride Lane Water Resource Reclamation Facility that is the subject of TPDES Permit Number WQ0015878001 |
| Final Order | Final Order issued by TCEQ on November 28, 2022 |
| FOF | Finding of Fact |
| Implementation Procedures | Implementation Procedures of the Texas Surface Water Quality Standards |
| Jonah | Jonah Water Special Utility District, Intervenor Defendant-Appellant |
| MGD | Million Gallons Per Day. |
| NSSA | Non-Standard Service Agreement |
| OP | Ordering Paragraph |
| Order | TCEQ's final order, issued November 28, 2022 |
| Permit | TPDES Permit Number WQ0015878001 |
| PFD | Proposal for Decision issued by the Administrative Law Judges of the State Office of Administrative Hearings |
| Regionalization Policy | The combination of Tex. Water Code §§ 26.003, 26.081, and 26.0282, as well as Texas' Regionalization Guidance – Information posted on TCEQ website at https://www.tceq.texas.gov/permitting/wastewater/tceq-regionalization-for-wastewater |
| RR | Reporter's Record |
| SCR | Supplemental Clerk's Record |
| SOAH | State Office of Administrative Hearings |
| TAC | Texas Administrative Code |
| TCEQ | Texas Commission on Environmental Quality ("Commission") Defendant-Appellant |

| TPDES | Texas Polluant Discharge Elimination System |
|---|---|
| TSWQS | Texas Surface Water Quality Standards |
| TWC | Texas Water Code |
| Water Quality Standards | Texas Surface Water Quality Standards in 30 TAC Ch. 307. |
| Westinghouse Entities | Appellants, 600 Westinghouse Investments, LLC and 800 Westinghouse Investments, LLC Intervenors in District Court. |

**STATEMENT OF THE CASE**

Nature of the Case: This is a suit for judicial review of a final order of the Texas Commission on Environmental Quality (TCEQ or Commission) granting a new Texas Pollutant Discharge Elimination System (wastewater) permit, pursuant to Texas Water Code Chapter 26, to AIRW. The permit authorizes AIRW to construct a new wastewater treatment plant in Williamson County, Texas. After participating in an extensive contested-case hearing before the Commission, the City of Georgetown sought judicial review of the Commission's final order in Travis County District Court.

Course of Proceedings: After briefing on all issues, the Travis County district court held a hearing on the merits on October 31, 2024.[1] RR at 1.

Trial Court: 261st Judicial District Court, Travis County

Presiding Judge: The Honorable Laurie Eiserloh

Trial Court Disposition: The district court reversed the Commission's final order granting AIRW's wastewater permit and remanded to the Commission for further proceedings consistent with the order. CR at 730-731.

---

[1] The Administrative Record (AR) was admitted into evidence at the hearing on the merits as Joint Exhibit 1. RR at 5. The AR consists of four components: Documents, Exhibits, Public Comments, and Transcripts. The Supplemental Clerk's Record (SCR) contains the AR (Joint Exhibit1), the contents of which have item numbers assigned. Citations to the AR will be to SCR-AR [item number] (example: SCR-AR 11 (ED's Response to Public Comment) at 1).

## STATEMENT REGARDING ORAL ARGUMENT

Jonah respectfully requests oral argument. This case involves the complex statutory and regulatory scheme surrounding water quality and TCEQ's administration of its wastewater permitting program. Oral argument will provide an opportunity to elucidate details impacting the Court's in its consideration of the issues presented.

## ISSUES PRESENTED

1.      Did the District Court err in reversing the Commission's final order based on factors not found in statute or Texas' Regionalization Policy?

2.      Was the Commission's final order issued in accordance with proper procedure and applicable law, a reasonable exercise of the Commission's broad discretion, and supported by substantial evidence?

## STATEMENT OF FACTS

The Statement of Facts in TCEQ's brief includes a comprehensive explanation of the history of Texas' wastewater permitting program, including TCEQ's authority regarding Texas' Regionalization Policy. Jonah agrees with this explanation and thus to avoid redundancy and duplicity, Jonah adopts by reference that portion of TCEQ's brief.

### I.     New development creates a need for wastewater service.

This case involves a challenge to the Commission's approval of a permit for a wastewater treatment facility that will serve two new residential developments. Due to the construction of SH-130, the area east of the City of Georgetown is the latest "new frontier" for development in Williamson County. New developments and the City have been plowing east through the farmland toward the existing rural communities that make up Jonah's service area.  For decades, Jonah, a political subdivision of the State of Texas operating under Texas Water Code Chapter 65, has been the water and, in some cases, the sewer service provider for the historically rural communities within Jonah's 169 square mile district boundaries.

In this case, AIRW and its fellow developers are seeking to develop 128 acres, partially within the City of Georgetown's eastern extraterritorial jurisdiction, and within Jonah's district boundaries on its western side. 2 AR 167 at 00002-0003. There is no regional provider designated for the area where the Facility is proposed

to be located. 1 AR 66.  However, the City of Georgetown does have a wastewater treatment facility within three miles of AIRW's development.

## II. The City denies service and agrees to allow AIRW to use a private wastewater facility, prompting AIRW to apply for a wastewater permit from TCEQ.

Through a series of communications with the City regarding possible wastewater service, the developer learned that the City would not provide wastewater service to the development without voluntary annexation in accordance with City ordinance. *See* City of Georgetown Ordinance No. 2003-16 (May 25, 2003). Additionally, the City agreed to allow AIRW to develop in the ETJ with a private system. 1 AR 103.  Therefore, AIRW applied to the TCEQ for a new wastewater permit. AIRW filed its application (Application) for a new TPDES permit with TCEQ on April 6, 2020. 1 AR 66. The Application requested authorization to discharge treated domestic wastewater from a proposed plant site, the Rockride Lane Water Resource Reclamation Facility (Facility), to be located approximately 500 feet southeast of the intersection of Rockride Lane (County Road 110) and Westinghouse Road (County Road 111), in Williamson County, Texas 78626. AIRW proposed to build the Facility to serve the Mansions of Georgetown III development, an 880-house subdivision. 1 AR 66.

The TCEQ Executive Director (ED) declared the Application administratively complete on June 19, 2020, and technically complete on October 26, 2020. 1 AR 2.

The ED completed the technical review of the Application, prepared a draft permit (Draft Permit) and made it available for public review and comment. 1 AR 9. Various individuals and the City submitted comments and hearing requests. In response, on November 3, 2021, the Commission referred this matter to SOAH to address eight issues raised in public comment. 1 AR 19. SOAH conducted a hearing on the merits from May 23-25, via video conference where the parties presented written and live testimony and evidence and then filed post hearing briefing on all issues. 1 AR 25. Having considered all of the testimony and evidence, SOAH issued a proposal for decision (PFD) and Proposed Order that included eighty-one findings of fact, and nineteen conclusions of law on August 23, 2022. 1 AR 59. The Commission adopted SOAH's PFD and Proposed Order with only four substantive changes and granted Texas Pollutant Discharge Elimination System Permit No. WQ0015878001 to AIRW, effective November 28, 2022. 1 AR 66.

## III.    The City seeks judicial review after TCEQ issues the Permit.

The City of Georgetown filed a petition for judicial review of the Commission's order in Travis County District Court. CR 5. AIRW and Jonah intervened as defendants. CR 145. The City raised all eight issues originally

considered in the contested case hearing at SOAH. CR 5. After written briefing, the trial court held a hearing on the merits on October 31, 2024. RR 1.

On December 2, 2024, the trial court issued a final judgment reversing and remanding to the Commission for further proceedings. CR 730. The court's Order listed two reasons as the basis for its reversal:

1. Defendant erred by determining that the Permit complies with Texas's Regionalization Policy.

2. Because Intervenor AIRW failed to seek a waiver from Plaintiff's city council, there is no way to know whether the city council would be willing to waive the annexation requirement. It is unreasonable to assume that City staff—who are bound by the city council—speak for the city council, which is not bound and has both the power to waive requirements and the ability to act under political considerations. This means that Defendant should not have determined both that (1) Plaintiff denied Intervenor AIRW service; and (2) connection to Plaintiff's system would cost Intervenor AIRW $20 million.

## STANDARD OF REVIEW

The substantial evidence standard of review applies to this suit for judicial review of the final order of the Commission following a contested-case hearing. Tex. Gov't Code § 2001.174; Tex. Water Code § 5.351. Under the APA, a court reviewing an agency's decision in a contested case "may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." Tex. Gov't Code § 2001.174. "To prevent courts from "usurping the agency's adjudicative authority," an agency's findings, inferences, conclusions, and decisions are presumed to be sufficient unless the protestant proves otherwise." *Save Our Springs All., Inc. v. Tex. Comm'n on Envtl. Quality*, 2025 Tex. LEXIS 306; citing *Pub. Util. Comm'n of Tex. v. Tex. Indus. Energy Consumers*, 620 S.W.3d 418, 427 (Tex. 2021). The Court must uphold the agency's decision if the evidence "is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 453 (Tex. 1984) (citing *Suburban Util. Corp. v. Pub. Util. Comm'n*, 652 S.W.2d 358, 364 (Tex. 1983)). Courts describe this as "a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record." *Jenkins. v. Crosby Indep. Sch. Distr.*, 537 S.W.3d 142, 149 (Tex. App.-Austin 2017, no pet) citing *Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452-53 (Tex. 1984).

Substantial evidence is a limited standard of review that gives significant deference to the agency in its field of expertise. *Save Our Springs All., Inc. v. Tex. Comm'n on Envtl. Quality*, 2025 Tex. LEXIS 306; citing *Ammonite Oil & Gas Corp. v. R.R. Comm'n of Tex.*, 698 S.W.3d 198, 207 (Tex. 2024) (internal quote marks and citations omitted). The issue is "not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action." *Id*. citing *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999); *Citizens Against Landfill Location v. Tex. Comm'n on Envtl. Quality*, 169 S.W.3d 258, 264 (Tex. App.—Austin 2005, pet. denied). In fact, "the evidence in the record may actually preponderate against the agency's decision and nonetheless amount to substantial evidence." *Citizens Against Landfill Location v. Tex. Comm'n on Envtl. Quality*, 169 S.W.3d 258, 264 (Tex. App.—Austin 2005, pet. denied). *See also State v. Public Util. Comm'n*, 883 S.W.2d 190, 204, 37 Tex. Sup. Ct. J. 1102 (Tex. 1994).

A reviewing court may only reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or

characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code § 2001.174(2). A Commission decision is arbitrary if it: "(1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result." *Pub. Util. Comm'n of Tex. v. Tex. Indus. Energy Consumers*, 620 S.W.3d 418 (Tex. 2021); *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994). In addition to these factors, courts have found agency orders to be arbitrary or capricious if the agency denies a litigant due process so as to prejudice its rights, and where the agency fails to follow the clear, unambiguous language of its own regulations. *Tex. Comm'n on Envtl. Quality v. Friends of Dry Comal Creek*, 669 S.W.3d 506, 517 (Tex. App.- Austin 2023, pet denied). In general terms, "we must remand for arbitrariness if we conclude that the agency 'has not actually taken a hard look at the salient problems and has not genuinely engaged in reasoned decision-making.'" *Id*.; citing *Texas Health & Hum. Servs. Comm'n v. Lukefahr*, No. 03-15-00325-CV, 2016 Tex. App. LEXIS 10855, 2016 WL 5874871, at *2 (Tex. App.—Austin Oct. 6, 2016, no pet.) (mem. op.) (quoting *City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 819-20 (Tex. App.—Austin 2011), *rev'd on other grounds*).

The agency's decision is presumed to be supported by substantial evidence, placing the burden on the contestant to prove otherwise. *Tex. Comm'n on Envtl.*

*Quality v. Maverick County*, 642 S.W.3d 537, 547 (Tex. 2022) (quoting *Charter Med.-Dall., Inc.*, 665 S.W.2d at 453). "Whether the contestant has met this burden is a question of law," *Hyde v. Harrison Cnty.*, 2025 Tex. App. LEXIS 1896; citing *Dyer v. Tex. Comm'n on Envtl. Quality*, 646 S.W.3d 498, "and on review, we focus on the agency's decision without deference to the district court's judgment," *Id.*, citing *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam) (noting that appellate court applies substantial evidence review without deference to district court).

Furthermore, pursuant to Section 2003.047(i-1), when the Commission issues a TPDES permit, there is a statutory presumption that the permit complies with all state and federal legal and technical requirements. Tex. Gov't Code § 2003.047(i-1). To rebut this presumption, a party must present evidence demonstrating that one or more provisions of the draft permit violate a specifically applicable state or federal requirement. Tex. Gov't Code § 2003.047(i-2).

In the end, "each of the statutory grounds for reversal, including substantial evidence review, is a question of law subject to de novo review." *Save Our Springs All., Inc. v. Tex. Comm'n on Envtl. Quality*, 2025 Tex. LEXIS 306; quoting *Dyer v. Tex. Comm'n on Envtl. Quality*, 646 S.W.3d 498, 505 (Tex. 2022).

## SUMMARY OF THE ARGUMENT

The trial court erred when applying standards not found in statute in lieu of applying the substantial evidence standard of review to the Commission's findings and conclusions. Instead of evaluating the facts to determine whether there was a reasonable basis for the Commission's decision and whether substantial record evidence supports this decision, the trial court usurped the Commission's authority by re-weighing evidence and substituting its judgment for the agency's judgment. The trial court's reinterpretation of Texas' Regionalization Policy included adding a requirement that an applicant for a TPDES permit must secure a formal denial of an annexation waiver before the Commission can determine that the City denied service. No such requirement exists in law or policy. Further, the trial court applied an arbitrary limitation on the cost-related information the Commission may consider when determining whether the applicant has demonstrated that an exception to regionalization should be granted. Again, no such limitation regarding cost data exists in law or policy. For these reasons, there was no basis for the trial court to second guess the Commission.

Further, the trial court erred in reversing and remanding the Commission's final order because the City failed to demonstrate that its substantial rights were prejudiced by the Commission's issuance of the Permit to AIRW. The City has no fundamental right to serve the property within its ETJ, particularly given that the

property is partially within Jonah's district boundary. Moreover, the Commission has clear and unambiguous authority to issue the Permit having followed all constitutional and statutory requirements, proper procedures, and reasonably exercising its discretion. The facts and evidence presented during the contested case hearing demonstrate that the Commission had ample evidence to support issuance of the Permit to AIRW.

I.     **The trial court erred in applying standards not found in statute, Commission rule, or guidance.**

The trial court inappropriately delved into the underlying process of AIRW's numerous and consistent requests to the City regarding wastewater service. Instead of focusing on whether the record demonstrates some reasonable basis for the Commission's action, the trial court probed into whether the agency's decision was correct, subsuming a requirement that AIRW secure a formal denial of an annexation waiver from the City Council before deeming the City denied service. Additionally, the trial court ignored the Commission's deference with regard to what cost data supports an exception to regionalization.

A.     **An applicant is not required to secure denial of an annexation waiver for the Commission to issue the TPDES permit.**

Texas' Regionalization Policy is codified in Tex. Water Code § 26.003, Tex. Water Code § 26.081, and Tex. Water Code § 26.0282.  These sections state:

> Sec. 26.003. POLICY OF THIS SUBCHAPTER. It is the policy of this state and the purpose of this subchapter to maintain the quality of water in the state consistent with the public health and enjoyment, the propagation and protection of terrestrial and aquatic life, and the operation of existing industries, taking into consideration the economic development of the state; to encourage and promote the development and use of regional and areawide waste collection, treatment, and disposal systems to serve the waste disposal needs of the citizens of the state; and to require the use of all reasonable methods to implement this policy.

Sec. 26.081.  REGIONAL OR AREA-WIDE SYSTEMS;  GENERAL POLICY.  (a)  The legislature finds and declares that it is necessary to the health, safety, and welfare of the people of this state to implement the state policy to encourage and promote the development and use of regional and area-wide waste collection, treatment, and disposal systems to serve the waste disposal needs of the citizens of the state and to prevent pollution and maintain and enhance the quality of the water in the state.

(b)  Within any standard metropolitan statistical area in the state, the commission is authorized to implement this policy in the manner and in accordance with the procedure provided in Sections 26.081 through 26.086 of this code.

(d)  The term "standard metropolitan statistical area," as used in this section, means an area consisting of a county or one or more contiguous counties which is officially designated as such by the United States Office of Management and Budget or its successor in this function.

Sec. 26.0282.  CONSIDERATION OF NEED AND REGIONAL TREATMENT OPTIONS. In considering the issuance, amendment, or renewal of a permit to discharge waste, the commission may deny or alter the terms and conditions of the proposed permit, amendment, or renewal based on consideration of need, including the expected volume and quality of the influent and the availability of existing or proposed areawide or regional waste collection, treatment, and disposal systems not designated as such by commission order pursuant to provisions of this subchapter. This section is expressly directed to the control and treatment of conventional pollutants normally found in domestic wastewater.

As reflected above, the statute does not specify any specific methods the Commission must employ to implement the policy, but dictates that the Commission use all *reasonable* methods to *encourage* and *promote* regional systems. Nowhere

do these sections specify the type of information the Commission can or must consider when determining the availability of a regional system.

The Commission's informal guidance, posted on its website, provides *some* detail confirming that "[t]he presence of a wastewater treatment facility or wastewater collection system within three miles of a proposed new wastewater treatment facility or the expansion of an existing facility is **not** an automatic basis to *deny an application **or** to compel an applicant to connect to an existing facility*." (Emphasis added.) 2 AR 98. The guidance lists four situations where "TCEQ may approve new, renewal, and major amendment applications for discharges of wastewater." 2 AR 98.

- There is no wastewater treatment facility or collection system within three miles of the proposed facility.

- The applicant requested service from wastewater treatment facilities within the three miles, and the request was denied.

- The applicant can successfully demonstrate that an exception to regionalization should be granted based on costs, affordable rates, and/or other relevant factors.

- The applicant has obtained a Certificate of Convenience and Necessity (CCN) for the service area of the proposed new facility or the proposed expansion of the existing facility.

AIRW provided evidence of, and the Commission based its decision on, two of these situations: that AIRW's service request was effectively denied, and that AIRW demonstrated that an exception to the Regionalization Policy should be

granted based on costs. As with the statute, the guidance does not specify the type of evidence necessary to make a demonstration, nor does it limit the Commission's discretion to consider a broad range of evidence. Given this, the trial court had no basis for substituting its judgment for the Commission's judgment.

Further, the guidance states: "TCEQ has not denied any wastewater permit actions based solely on regionalization, and the agency supports new applicants and existing facilities productively working together to provide quality and cost-effective service." 2 AR 98. This statement further supports the Commission's discretion and the weight the Commission gives to the Regionalization Policy when determining whether to issue a TPDES permit.

The Commission documented its findings and conclusions with regard to effective denial of service. The Commission's final order, Findings of Fact 33-42 lay out the basis for the Commission's Conclusion of Law 10 that: "The Application demonstrates compliance with TCEQ's regionalization policy. Tex. Water Code §§ 26.003, 26.081(a)-(b), (d); 26.0282." 1 AR 66.

> 33. To effectuate its policy of encouraging regionalization of wastewater services, TCEQ requires an applicant to provide certain information to allow TCEQ to conduct a regionalization analysis.
>
> 34. No part of the Facility or development is within the City's corporate limits.
>
> 35. The proposed Facility and its discharge are within the City's extraterritorial jurisdiction.

36.    Properties in the City's extraterritorial jurisdiction that desire wastewater services from the City must first submit a petition for voluntary annexation.

37.    The ordinance requiring annexation for wastewater services may be waived by the City Council.

38.    As part of its Application, AIRW provided email correspondence to and from nearby providers regarding whether they would provide sewer service.

39.    AIRW's written communications with nearby providers were sufficient, and AIRW was not required to submit certified letters because the emails provide similar tracking and traceability.

40.    AIRW explored securing wastewater services from the City, and the City placed conditions on providing service; including: the Facility site would have to be annexed into the City and comply with the City's land use restrictions.

41.    There was no indication that the City was willing to waive the annexation and land use requirements.

42.    AIRW received a conditional offer for sewer service from the City. The City denied AIRW's request for service unless AIRW agreed to annexation and land use restrictions. 1 AR 66 (20221130 Order Permit 2021-1214*-MWD.pdf)

The Commission's findings and conclusions document the Commission's *hard look* at the salient problems and show that the Commission genuinely engaged in reasoned decision-making. The findings and conclusions constitute substantial evidence and support the Commission's rational basis for issuing the Permit.

**B.      Texas' Regionalization Policy does not limit what costs the Commission can consider.**

Texas' Regionalization Policy, Tex. Water Code § 26.003, also encourages the Commission to take into consideration the economic development of the state. But again, the statute provides no detail regarding what economic information can or should be considered. The statute does not limit the Commission's discretion to consider the cost impacts of the City's annexation requirements and development regulations. Further, the Commission's informal guidance only provides a general statement regarding the factors that can form the basis for demonstrating an exception to regionalization: "The applicant can successfully demonstrate that an exception to regionalization should be granted based on costs, affordable rates, and/or other relevant factors." 2 AR 98.

The Commission documented its findings and conclusions with regard to cost. In the Commission's final order, Findings of Fact 43-46 provide the basis for the Commission's Conclusion of Law 10 that: "The Application demonstrates compliance with TCEQ's regionalization policy. Tex. Water Code §§ 26.003, 26.081(a)-(b), (d); 26.0282."  1 AR 66.

43.      The ED requested from AIRW a cost analysis of expenditures that includes the cost of connecting to the CCN facilities versus the cost of the proposed facility or expansion.

44.      Constructing a new plant will cost approximately $300,000 more than connecting to the City's system.

45.     Because of the higher property tax rate inside the City than outside it in the unincorporated area and the City's condition of annexation to connect to its system, connecting carries with it an approximately $20 million cost due to diminution in property value.

46.     Costs weigh in favor of granting AIRW's application.

Like denial of service, the Commission's findings and conclusions document the Commission's *hard look* at the salient problems and show that the Commission genuinely engaged in reasoned decision-making. The findings and conclusions constitute substantial evidence and support the Commission's rational basis for issuing the Permit. The trial court improperly usurped the Commission's judgment in this regard.

### C. The trial court had no basis to substitute its judgment for the Commission's judgment.

Having documented the facts and evidence the Commission relied upon for determining that the City denied service and that the costs of complying with the City's requirements weigh in favor of granting AIRW's application, the Commission established its rational basis for issuing the TPDES Permit. The Commission committed no error warranting reversal under the substantial evidence rule. Instead, the trial court committed reversible error by substituting its judgment for the Commission's judgment in lieu of finding that substantial evidence supports the Commission's decision.

**II.    The Commission's issuance of the TPDES Permit to AIRW did not prejudice the City's substantial rights.**

Pursuant to Tex. Gov't Code § 2001.174(2), under the substantial evidence rule, a court shall reverse or remand a decision in a contested case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A)  in violation of a constitutional or statutory provision;
(B)  in excess of the agency's statutory authority;
(C)  made through unlawful procedure;
(D)  affected by other error of law;
(E)  not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole;  or
(F)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

**A.    The City has no statutory or substantial right to serve the property.**

No part of AIRW's permitted Facility or development is within the City's corporate limits. 1 AR 66.  Also, the proposed Facility and its discharge are not within the sewer CCN of any retail public utility. *Id*. Instead, the proposed Facility and its discharge are within the City's ETJ, partially within Jonah's district boundaries, and wholly within Jonah's water CCN area.  *Id*.

In general, cities have limited authority within their ETJ. While a city can typically provide utility service within its ETJ, evidence in the record reflects that the City requires property owners to voluntarily annex into the City limits to have access to wastewater services.  That being said, even if the City had desired to serve

AIRW, it could not have done so legally. A portion of AIRW's development is within Jonah's district boundaries. Jonah is a special utility district, a political subdivision of the State of Texas operating under Tex. Water Code Chapter 65, and the holder of water CCN No. 10970, in Williamson County, Texas. As a special utility district, Jonah has the authority to provide water and wastewater service anywhere within its district boundaries. At the time Jonah filed its revised direct testimony in May of 2022, Jonah provided service to approximately 9,000 customers and 30,000 people in its service area.[2] 2 AR 176.

Furthermore, Tex. Water Code § 13.244(c), and 16 TAC § 24.225(c) require the City to secure Jonah's consent to provide service within Jonah's district boundaries. The City is a retail public utility as defined in the Texas Water Code and Commission rules. Tex. Water Code § 13.244(c) requires an entity seeking to provide water or wastewater service to provide the Public Utility Commission evidence that it has received the required consent. Commission rules are more direct, stating in pertinent part "a retail public utility may not provide retail water or sewer utility service within the boundaries of a district that provides the same type of retail water or sewer utility service without the district's consent…." 16 TAC § 24.225(c). Here,

---

[2] As of 2025, Jonah's customer base has grown to approximately 13,500 customers and 35,000 people in its service area.

the Commission found that "[t]he City did not request Jonah's consent to provide wastewater service to the Facility, and Jonah has not given consent for the City to operate within its boundaries." (FOF 52) 1 AR 66. The City failed to demonstrate that service was available because it lacked authority to serve. Consequently, the Commission concluded that AIRW's Application complies with TCEQ's Regionalization Policy and issued the Permit. (COL 10.) 1 AR 66.

**B.      The Commission has clear and unambiguous authority over this matter.**

The parties do not dispute that the Commission has jurisdiction over this matter pursuant to TWC Chapters 5 and 26. 1 AR 66. The parties do not dispute that SOAH has jurisdiction to conduct a hearing and to prepare a PFD in contested cases referred by the Commission under Tex. Gov't Code § 2003.047. *Id.*

**C.      The Commission followed all constitutional and statutory requirements**

The City received notice and due process through the contested case hearing process. The City received notice in accordance with Tex. Water Code § 5.114 and Tex. Water Code § 26.028; Tex. Gov't Code § 2001.051 and Tex. Gov't Code § 2001.052; and 30 TAC § 39.405 and 30 TAC § 39.551. 1 AR 66.

The Commission applied all relevant and applicable, statutory and regulatory, procedural and technical requirements. The ED declared the Application administratively complete on June 19, 2020, and technically complete on October

26, 2020. 1 AR 66. The ED completed the technical review of the Application, prepared a draft permit (Draft Permit) and made the Draft Permit available for public review and comment. *Id*. AIRW published the Notice of Receipt and Intent to Obtain a Water Quality Permit and Notice of Application and Preliminary Decision in accordance with Commission rules. *Id*. The City submitted comments on the Application, and the ED provided his Response to Public Comments on August 6, 2021. *Id*. The Commission referred eight issues to SOAH for a hearing on the merits.

A) Issue A: Whether the Draft Permit is protective of water quality and the Existing Uses of the receiving waters in accordance with applicable TSWQS, including protection of aquatic and terrestrial wildlife;

B) Issue B: Whether the Draft Permit is consistent with the state's Regionalization Policy and demonstration of need for the volume requested in the application for a new discharge permit pursuant to TWC § 26.0282;

C) Issue C: Whether the Draft Permit is protective of the health of the nearby residents;

D) Issue D: Whether the Draft Permit complies with applicable requirements regarding nuisance odors;

E) Issue E: Whether the Application is substantially complete and accurate;

F) Issue F: Whether the Draft Permit complies with the TCEQ's antidegradation policy and procedures;

G) Issue G: Whether the Draft Permit should be altered or denied based on the AIRW's compliance history; and

H) Issue H: Whether the Draft Permit contains sufficient provisions to ensure protection of water quality, including necessary operational requirements.

After two preliminary hearings, the SOAH ALJs conducted a hearing on the merits on May 23-25, 2022. The City participated in all proceedings at SOAH. While the City may not agree with the outcome of the hearing or the Commission's ultimate decision, the record documents and supports all of the Commission's inferences, findings, and conclusions by substantial evidence considering the reliable and probative evidence in the record as a whole. The Commission's final order documents its findings and conclusions, demonstrating the agency's reasoned decision-making forming the reasonable basis for the Commission's decision to issue the Permit to AIRW. Without a deficiency in the process, the district court erred in reversing and remanding the matter back to the Commission.

**D.    The Commission followed proper procedure applying Texas' Regionalization Policy.**

As discussed in Section I. above, the Commission applied all three statutory provisions in Chapter 26 of the Water Code that form Texas' Regionalization Policy as well as the Commission's informal guidance on the topic. The Commission required AIRW to provide documentation of the communications and attempts to reach an agreement with the City regarding wastewater service to the property. AIRW documented four different communications with the City regarding wastewater service:

1. June 21, 2019 email from Georgetown City manager, David Munk stating: "…using our WW will require voluntary annexation." 2 AR 100.

2. January 22, 2020 email from Georgetown Planning Director, Sofia Nelson stating: "Should you desire to connect to the City wastewater system annexation will be required. We do not support a delayed annexation approach at this point." 2 AR 107.

3. February 10, 2020 Email from Georgetown Assistant City Manager, Wayne Reed stating: "We do not desire or require connection to Georgetown wastewater. I understand that you prefer to not connect to the City's public wastewater system. Both in our meeting and in Sofia's e-mail communication with you, we have been clear that should you desire or need to connect to the City's wastewater system you would have annex [submit a petition for voluntary annexation per City's UDC]; Sofia provided you with the pertinent UDC provisions that speak to this. Also, Sofia confirmed that we do not support a delayed annexation approach. **Because you do not want to annex, you can develop in the ETJ with a private water treatment facility.**" (Emphasis added.) 2 AR 107.

4. May 15, 2020 email from Georgetown Assistant City Manager Wayne Reed stating: " …nothing Wes said on our call yesterday should have been construed as the City entertaining providing wastewater service to this project in the ETJ. We have had multiple meetings and communications with Matt Hiles on this topic, have explained our position in detail, and there is no need to revisit this request as the City's position remains the same; annexation will be required in order to receive wastewater service from the City."

Each time the City was clear and consistent in its position that voluntary annexation was required to receive wastewater service to the property. The City's February 2020 email went as far as conveying that AIRW can develop with a private wastewater treatment facility. These communications document the reasonable basis

for the Commission's determination that the City was denying service to AIRW. The Commission also documented the City's failure to secure consent to serve within Jonah's district boundaries, further supporting the Commission's findings regarding regionalization. The Commission acted without prejudice to any of the City's rights. To the contrary, the City's February 2020 email could be construed as the City's acquiescence to issuance of the TPDES Permit and waiver of the City's right to protest it.

### E. The Commission reasonably exercised its discretion to grant AIRW the permit.

Texas' Regionalization Policy is replete with discretionary terms, confirming the Commission's broad discretion to issue the TPDES Permit even when there is a nearby wastewater system. For example, rather than using strict and mandatory terms like "enforce" or "require", Tex. Water Code § 26.003 and Tex. Water Code § 26.081 use the phrase "encourage and promote," which automatically incorporates discretion in the implementation of the state's Regionalization Policy. And, while the last clause of Section 26.003 begins with the stricter term "require", that term is softened by the phrase, "all reasonable methods to implement this policy." Rather than dictating a particular construct or method by which the Commission must implement the policy, the Legislature granted the Commission discretion to determine the means and methods of implementation as long as the methods are reasonable *Id.*

The Legislature granted similar discretionary powers to the Commission in Tex. Water Code § 26.0282, using the term "may" when describing the Commission's authority to deny or alter the terms and conditions of a proposed permit, amendment or renewal based on consideration of need and availability. Tex. Water Code § 26.0282. In accordance with the Code Construction Act, the word "may" "creates discretionary authority or grants permission or a power." Tex. Gov't Code § 311.016(1).

The Commission's discretion is also evident in the applicable guidance. For example, the wastewater permit application instructions required AIRW to provide documentation of need and the availability of wastewater systems within three miles. However, the Regionalization Policy guidance explains that "the presence of a wastewater treatment facility or collection system within three miles of the proposed facility… does not compel connection to the existing facility." 2 AR 98. The Commission must evaluate the facts and circumstances to reach its determination. In this case, the Commission reasonably exercised its discretion when determining that AIRW was not required to connect to the City's system based in part on the City's annexation and development requirements, which would force the developer to annex into the City and develop the property for a different end use. The Commission found that the annexation requirement was tantamount to denial of service. (FOF 42). 1 AR 66.

**F.      The Commission's decision to issue the Permit was not arbitrary or capricious.**

An agency acts arbitrarily or abuses its discretion if it fails to consider a mandatory factor, considers an irrelevant factor, considers appropriate factors but reaches a completely unreasonable result, or fails to follow its own regulations. *Save Our Springs All., Inc. v. Tex. Comm'n on Envtl Quality*, 2025 Tex. LEXIS 306, *15-17. An agency decision may also be considered arbitrary or capricious if the agency failed to follow the clear, unambiguous language of its own regulations; the agency denied the appellant due process so as to prejudice its substantial rights; or the order is not supported by substantial evidence. *Tex. Comm'n on Envtl. Quality v. Friends of Dry Comal Creek*, 669 S.W.3d 506, 517 (Tex. App.- Austin 2023, pet denied). Evidence in the record demonstrates that the Commission considered each of the elements of the wastewater Permit Application. The Commission considered the mandatory, relevant and appropriate factors when making the findings and conclusions that are the basis for its decision to issue the Permit to AIRW. Further, the Commission's final order documents the findings and conclusions. 1 AR 66. Where a finding or conclusion was unnecessary or inappropriate, the Commission excluded it. For example, the Commission deleted findings of fact 53 and 54 as unnecessary. *Id.* Section III also includes the Commission's explanation of its revisions to Findings of Fact 3 and 5. *Id.* This detail, and the Commission's explanation of the changes, documents the Commission's "hard look" at the salient

problems, showing that the Commission genuinely engaged in reasoned decision-making. *Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*, 393 S.W.3d 417 (Tex. App.—Austin 2012, pet. denied).

As a point of comparison, the district court acted arbitrarily and capriciously when it imposed the requirement that AIRW seek and get a formal denial of its annexation waiver from the City Council. This addition of an irrelevant factor to the analysis is not based on any statute, rule or guidance and is well beyond the bounds of discretion the Commission may exercise. For this reason, the district court's arbitrary and capricious decision is reversible error.

### G.    Substantial evidence supports the Commission's final order.

As to the quantum of evidence necessary to constitute substantial evidence, the courts recognize that more than a "scintilla" is required. *McRae v. Lindale Independent School Dist.*, 450 S.W.2d 118, 1970 Tex. App. LEXIS 1967. However, "'substantial evidence' does not mean a large or considerable amount of evidence, but such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Slay v. Tex. Comm'n on Envtl. Quality*, 351 S.W.3d 532, 2011 Tex. App. LEXIS 7278; citing *Pierce v. Underwood*, 487 U.S. 552, 564-65, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988); *Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ). In this case, substantial evidence supports the Commission's final order issuing the Permit to AIRW. The record

consists of hundreds of pages of exhibits, written and live testimony, as well as the Permit Application and the ED's analysis. These documents constitute the body of credible evidence necessary to support the Commission's findings and conclusions. It matters not whether the district court or this court would have reached the same fact conclusion that the Commission reached, but this court should consider whether the action of the Commission in its determination of the facts is reasonably supported by substantial evidence. *McRae v. Lindale Independent School Dist*., 450 S.W.2d 118, 122, 1970 Tex. App. LEXIS 1967, *8-9; citing *City of San Antonio v. Texas Water Commission*, 407 S.W.2d 752, 756 (1966). Here, the Commission's final order is supported by sufficient documentary and testamentary evidence meeting the substantial evidence standard.

## III. There are no other grounds for affirming the trial court's order.

The Commission found that City failed to rebut: the prime facie demonstration that the Draft Permit is protective of water quality and the Existing Uses of the receiving waters in accordance with applicable TSWQS, including protection of aquatic and terrestrial wildlife (FOF 26); the prima facie demonstration that the Draft Permit is protective of the health of nearby residents (FOF 55); the prima facie demonstration that the Application is substantially complete and accurate (FOF 62); the prima facie demonstration that the Draft Permit complies with TCEQ's anti-degradation policy and procedures (FOF 65); and the prima facie demonstration that

the Draft Permit contains sufficient provisions to ensure protection of water quality, including necessary operational requirements (FOF 74). Additionally, the Commission found that the City did not rebut the prima facie demonstration that one or more provisions in the Draft Permit violate a specifically applicable state or federal requirement that relates to a matter referred by TCEQ. 1 AR 66. Although the City appealed all eight issues considered in the contested case hearing, the trial court's final judgment reversed and remanded on a single basis, regionalization. CR 5-17, 730. The Court held that TCEQ erred by determining that the Permit complies with Texas' Regionalization Policy. The court's judgment disposed of all other claims. CR 731.

## CONCLUSION AND PRAYER

Evidence in the record demonstrates that the Commission acted reasonably and within its authority and discretion in granting AIRW the TPDES Permit. Substantial evidence demonstrates that the Permit complies with all applicable statutory and regulatory requirements and with Texas' Regionalization Policy. None of the City's substantial rights were violated, and thus, the district court erred in reversing the Commission's order. For these reasons, Jonah respectfully prays that the Court reverse the district court's judgment and render judgment affirming the Commission's Order in all respects. Jonah further prays the Court grant Jonah all further relief to which it may be entitled.

Respectfully submitted,

_Erin Selvera_

Erin R. Selvera

John J. Carlton
State Bar No. 03817600
john@carltonlawaustin.com
Kelli A. N. Carlton
State Bar No. 15091175
kelli@carltonlawaustin.com
Erin R. Selvera
State Bar No. 24043385
erin@carltonlawaustin.com
THE CARLTON LAW FIRM, P.L.L.C.
4301 Westbank Drive, Suite B-130
Austin, Texas 78746
Telephone: (512) 614-0901
Facsimile: (512) 900-2855
ATTORNEYS FOR JONAH WATER
SPECIAL UTILITY DISTRICT

## CERTIFICATE OF COMPLIANCE

I certify that the Brief of Appellant, Jonah Water Special Utility District contains 6,676 words and therefore complies with the word limit found in Tex. R. App. P. 9.4(i)(2)(B).

_____
Erin R. Selvera

## CERTIFICATE OF SERVICE

I certify that the Brief of Appellant, Jonah Water Special Utility District was electronically filed with the Clerk of the Court using the electronic case filing system of the Court, and that a true and correct copy was served upon counsel for each party of record, listed below, by electronic service or email on May 21, 2025.

**Defendant-Appellant**
**Texas Commission on Environmental Quality:**
Evan Greene
Assistant Solicitor General
Evan.Greene@oag.texas.gov
Sara J. Ferris
Assistant Attorney General
Sara.Ferris@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Telephone: (512) 463-2012
Fax: (512) 320-0911

**Plaintiff-Appellee**
**City of Georgetown, Texas:**
William A. Faulk, III
cfaulk@spencerfane.com
Carlota Hopinks-Baul
chbaul@spencerfane.com
Maris M. Chambers
mchambers@spencerfane.com
SPENCER FANE, LLP
816 Congress Avenue, Suite 1200
Austin, Texas 78701
Telephone: 512-840-4550
Fax: 512-840-4551

Patricia Erlinger Carls
tcarls@tcarlslaw.com
LAW OFFICES OF PATRICIA ERLINGER CARLS

3100 Glenview Ave.
Austin, Texas 78703-1443

**Intervenor Defendants-Appellants:**
**AIRW 2017-7, L.P.; 600 Westinghouse Investments, LLC; and 800**
**Westinghouse Investments, LLC**
Andrew Davis
Andrew@lkcfirm.com
William T. Thompson
will@lkcfirm.com
Todd Disher
todd@lkcfirm.com
Michael C. Cotton
michael@lkcfirm.com
LEHOTSKY KELLER COHN, LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
Telephone: 512-693-8350

Helen S. Gilbert
hgilbert@bartonbensonjones.com
BARTON BENSON JONES, PLLC
7000 North MoPac Expressway, Suite 200
Austin, Texas 78731

Edmond McCarthy
Ed@ermlawfirm.com
MCCARTHY & MCCARTHY, LLP
122 Colorado St. Suite 2399
Austin, TX 78701

_____
Erin R. Selvera

# INDEX TO APPENDIX

1. Final Judgement, December 2, 2024
2. TCEQ's Final Order and TPDES Permit No WQ 0015878001, November 28, 2022
3. Application TPDES Permit
4. TCEQ Regionalization Policy for Wastewater Treatment
5. 16 Tex. Admin. Code § 24.225
6. 30 Tex. Admin. Code § 39.405
7. 30 Tex. Admin. Code § 39.551
8. Tex. Gov't Code § 311.016
9. Tex. Gov't Code § 2001.051
10. Tex. Gov't Code § 2001.052
11. Tex. Gov't Code § 2001.174
12. Tex. Gov't Code § 2003.047
13. Tex. Water Code § 5.114
14. Tex. Water Code § 5.351
15. Tex. Water Code § 13.244
16. Tex. Water Code § 26.003
17. Tex. Water Code § 26.028
18. Tex. Water Code § 26.0282
19. Tex. Water Code § 26.081
20. Tex. Water Code §§ 65.001-65.029

# APPENDIX 1

BRIEF OF APPELLANT JONAH WATER SPECIAL UTILITY DISTRICT        APPENDIX

CAUSE NO. D-1-GN-23-001004

| | | |
|---|---|---|
| CITY OF GEORGETOWN, TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| TEXAS COMMISSION ON | § | |
| ENVIRONMENTAL QUALITY, | § | |
| | § | |
| Defendant. | § | 261ST JUDICIAL DISTRICT |

### FINAL JUDGMENT REVERSING ORDER OF
### TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

This case is an appeal of a final agency order relating to the issuance by the Texas Commission on Environmental Quality ("TCEQ") to Intervenor AIRW 2017-7, L.P. ("AIRW") of a new Texas Pollutant Discharge Elimination System permit (the "Permit") to discharge up to 200,000 gallons per day of treated domestic wastewater from a proposed wastewater treatment facility within the extraterritorial jurisdiction of the plaintiff, City of Georgetown ("City" or "Plaintiff"). On October 31, 2024, this Court held a hearing on the merits of this cause. Having considered the Texas Administrative Procedure Act, pleadings, administrative record, briefing, and argument of counsel, the Court finds that the TCEQ's order under review in this case should be and is hereby **REVERSED AND REMANDED** to Defendant for further proceedings for the following reasons:

1. Defendant erred by determining that the Permit complies with Texas's regionalization policy.

2. Because Intervenor AIRW failed to seek a waiver from Plaintiff's city council, there is no way to know whether the city council would be willing to waive the annexation requirement. It is unreasonable to assume that City staff—who are bound by the city council—speak for the city council, which is not bound and has both the power to waive requirements and the ability to act under political

730

considerations. This means that Defendant should not have determined both that (1) Plaintiff denied Intervenor AIRW service; and (2) connection to Plaintiff's system would cost Intervenor AIRW $20 million.

IT IS ORDERED, ADJUDGED, AND DECREED that TCEQ's order is **REVERSED AND REMANDED TO THE TCEQ FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS ORDER**.

This Judgment is final, disposes of all parties and claims, and is appealable.

~~SIGNED this __ of November, 2024~~.

Date: December 2, 2024

JUDGE PRESIDING
LAURIE EISERLOH
455th District Court



2

AGREED AS TO FORM:

William A. Faulk III
SPENCER FANE, LLP
cfaulk@spencerfane.com
**Counsel for Plaintiff, City of Georgetown**

Sara J. Ferris
Erin K. Snody
OFFICE OF THE ATTORNEY GENERAL
sara.ferris@oag.texas.gov
erin.snody@oag.texas.gov
**Counsel for Defendant Texas Commission on Environmental Quality**

Andrew B. Davis
LEH0TSKY KELLER COHN LLP
andrew@lkcfirm.com
Helen Gilbert
BARTON BENSON JONESPLLC
hgilbert@bartonbensonjones.com
Edmond McCarthy
MCCARTHY & MCCARTHY, LLP
ed@ermlawfirm.com
**Counsel for Intervenors**
**AIRW 2017-7, L.P., 600 Westinghouse Investments, LLC,**
**and 800 Westinghouse Investments, LLC**

John J. Carlton
THE CARLTON LAW FIRM, PLLC
john@carltonlawaustin.com
**Counsel for Intervenor Jonah Water Special Utility District**

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office

On 01/10/2025 10:46:36

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

3

732

# APPENDIX 2

Jon Niermann, *Chairman*
Emily Lindley, *Commissioner*
Bobby Janecka, *Commissioner*
Toby Baker, *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

### November 30, 2022

TO:   Persons on the attached mailing list.

RE:   AIRW 2017-7, L.P.
  TCEQ Docket No. 2021-1214-MWD; SOAH Docket No. 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
  TPDES Permit No. WQ0015878001

## Decision of the Commission on Application.

The Texas Commission on Environmental Quality ("TCEQ" or "Commission") has made a decision to grant the above-referenced application. Enclosed with this letter is a copy of the Commission's order. Unless a Motion for Rehearing ("MFR" or "motion") is timely filed with the chief clerk, this action of the Commission will become final. A MFR is a request for the Commission to review its decision on the matter. Any motion must explain why the Commission should review the decision.

## Deadline for Filing Motion for Rehearing.

A MFR must be received by the chief clerk's office no later than the 25th day after the date that the Commission's order on this application is signed. The date of signature is indicated on the last page of the enclosed order.

Motions may be filed in accordance with the requirements in Senate Bill 1267 (84th Regular Session, effective September 1, 2015) and Texas Government Code § 2001. 146 with the chief clerk electronically at [www.tceq.texas.gov/goto/efilings](www.tceq.texas.gov/goto/efilings) or by filing an original and 7 copies with the Chief Clerk at the following address:

> Laurie Gharis, Chief Clerk
> TCEQ, MC-105
> P.O. Box 13087
> Austin, Texas 78711-3087
> Fax: 512/239-3311

In addition, a copy of the motion must be sent on the same day to each of the individuals on the attached mailing list as indicated by an asterisk (*). A certificate of service stating that copies of the motion were sent to those on the mailing list must also be sent to the chief clerk. The procedures for filing and serving a MFR and responses are located in 30 TAC § 80.272, Texas Governmental Code § 2001.146 as revised by Senate Bill 1267 (84th Regular Session, effective September 1, 2015), and 30 TAC §§ 1.10 and 1.11. The hardcopy filing requirement is waived by the General Counsel pursuant to 30 TAC § 1.10(h).

The written motion must contain (1) the name and representative capacity of the person filing the motion; (2) the style and official docket number assigned by SOAH and official docket number assigned by the Commission; (3) the date of the order; (4) the particular findings of fact or conclusions of law that are the subject of the complaint and any evidentiary or legal ruling claimed to be erroneous; and (5) the legal and factual basis for the claimed error.

Unless the time for the Commission to act on the MFR is extended, the MFR is overruled by operation of law at 5:00 p.m. on the 55th day after the date that the Commission's order on this matter is signed.

If you have any questions or need additional information about the procedures described in this letter, please call the Public Education Program, toll free, at 1-800-687-4040.

Sincerely,

Laurie Gharis
Chief Clerk

LG/mt

Enclosure

AIRW 2017-7, L.P.
TCEQ Docket No. 2021-1214-MWD; SOAH Docket No. 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
TPDES Permit No. WQ0015878001

FOR THE APPLICANT:

*Helen Gilbert, Attorney
Barton Benson Jones PLLC
7000 North Mopac Expressway
Suite 200
Austin, Texas  78731

Matthew Hiles, Vice President
AIRW 2017-7, L.P.
2505 North State Highway 360
Suite 800
Grand Prairie, Texas  75050

Janet Sims, Project Manager
Perkins Engineering Consultants, Inc.
13740 North Highway 183
Suite L6
Austin, Texas  78750

INTERESTED PERSONS:

See attached list.

FOR THE EXECUTIVE DIRECTOR
via electronic mail:

Ryan Vise, Deputy Director
Texas Commission on Environmental
Quality
External Relations Division
Public Education Program MC-108
P.O. Box 13087
Austin, Texas  78711-3087

*Bobby Salehi, Staff Attorney
Texas Commission on Environmental
Quality
Environmental Law Division MC-173
P.O. Box 13087
Austin, Texas  78711-3087

J. Alfonso Martinez, Technical Staff
Texas Commission on Environmental
Quality
Water Quality Division MC-150
P.O. Box 13087
Austin, Texas  78711-3087

FOR PUBLIC INTEREST COUNSEL
via electronic mail:

*Sheldon Wayne, Attorney
Texas Commission on Environmental
Quality
Public Interest Counsel MC-103
P.O. Box 13087
Austin, Texas  78711-3087

FOR THE CHIEF CLERK
via electronic mail:

Laurie Gharis, Chief Clerk
Texas Commission on Environmental
Quality
Office of Chief Clerk MC-105
P.O. Box 13087
Austin, Texas  78711-3087

FOR THE STATE OFFICE OF
ADMINISTRATIVE HEARINGS
via e-Filing:

The Honorable Andrew Lutostanski
The Honorable Katerina DeAngelo
Administrative Law Judge
State Office of Administrative Hearings
P. O. Box 13025
Austin, Texas  78711-3025

*CARLS , PATRICIA ERLINGER
LAW OFFICES OF PATRICIA ERLINGER CARLS
3100 GLENVIEW AVE
AUSTIN TX 78703-1443

*CARLTON , MR JOHN J
THE CARLTON LAW FIRM PLLC
STE B130
4301 WESTBANK DR
AUSTIN TX 78746-6568

*FAULK III , WILLIAM A
SPENCER FANE LLP
STE 1200
816 CONGRESS AVE
AUSTIN TX 78701-2442

*HOPINKS-BAUL , CARLOTA
SPENCER FANE LLP
STE 1200
816 CONGRESS AVE
AUSTIN TX 78701-2442

MARTIN , NATASHA J
GRAVES DOUGHERTY HEARON & MOODY PC
STE 2700
401 CONGRESS AVE
AUSTIN TX 78701-4071

PATTERSON , BARBARA KAY
100 CAMBRIDGE CIR
WACO TX 76712-7561

PATTERSON , GLENN
3651 COUNTY ROAD 110
GEORGETOWN TX 78626-7440

WEBB , JIM C
2929 BELL GIN RD
GEORGETOWN TX 78626-2189

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY



**AN ORDER** GRANTING THE APPLICATION BY AIR-W 2017-7 L.P. FOR TPDES PERMIT NO. WQ0015878001 IN WILLIAMSON COUNTY, TEXAS; SOAH DOCKET NO. 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; TCEQ DOCKET NO. 2021-1214-MWD

On November 16, 2022, the Texas Commission on Environmental Quality (TCEQ or Commission) considered the application of AIR-W 2017-7 L.P. (AIRW) for a new Texas Pollutant Discharge Elimination System (TPDES) Permit No. WQ0015878001 in Williamson County, Texas. A Proposal for Decision (PFD) was presented by Andrew Lutostanski and Katerina DeAngelo, Administrative Law Judges (ALJs) with the State Office of Administrative Hearings (SOAH), who conducted an evidentiary hearing concerning the application on May 23-25, 2022, in Austin, Texas via Zoom videoconferencing. After considering the PFD, the Commission makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

### Application

1. AIRW filed its application (Application) for a new TPDES permit with TCEQ on April 6, 2020.

2. The Application requested authorization to discharge treated domestic wastewater from a proposed plant site, the Rockride Lane Water Resource Reclamation Facility (Facility), to be located approximately 500 feet southeast of the intersection of Rockride Lane (County Road 110) and Westinghouse Road (County Road 111), in Williamson County, Texas 78626. AIRW proposes to build the Facility to serve the Mansions of Georgetown III development, an 880-house subdivision.

3. The treated effluent will be discharged via pipe, thence through a culvert, thence to an unnamed tributary, thence to Mankins Branch, thence to the San Gabriel/North Fork San Gabriel River in Segment No. 1248 of the Brazos River Basin. The unclassified receiving water uses are limited aquatic life use for the unnamed tributary and Mankins Branch (intermittent with perennial pools), and high aquatic life use for Mankins Branch (perennial). The designated uses for Segment No. 1248 are primary contact recreation, public water supply, aquifer protection, and high aquatic life use.

4. The Executive Director (ED) declared the Application administratively complete on June 19, 2020, and technically complete on October 26, 2020.

5. The ED completed the technical review of the Application, prepared a draft permit (Draft Permit) and made it available for public review and comment.

6. AIRW currently owns the site at which the proposed Facility will be located.

7. AIRW, through its affiliate, entered into Non-Standard Service Agreements (NSSAs) with Jonah Water Special Utility District (Jonah) on April 20, 2022, for the provision of retail wastewater services to the development.

8. Under the NSSAs, Jonah will own and operate the Facility once the TPDES permit is issued and transferred to it under 30 Texas Administrative Code section 305.64.

**The Draft Permit**

9. The Draft Permit would authorize a discharge of treated domestic wastewater at a daily average flow not to exceed 200,000 gallons per day (or 0.20 million gallons per day (MGD)).

10. The Facility will have treatment units including aeration basins, a final clarifier, a cloth effluent filter, chemical injection for phosphorus removal, aerated sludge holding and thickening tank, and a chlorine contact chamber. The Facility has not been constructed.

11. The unclassified receiving water uses are limited aquatic life use for the unnamed tributary and Mankins Branch (intermittent with perennial pools), and high aquatic life use for Mankins Branch (perennial). The designated uses for Segment No. 1248 are primary contact recreation, public water supply, aquifer protection, and high aquatic life use.

12. The effluent limitations in the Draft Permit, based on a 30 day average, include: 7 milligram per liter (mg/L) Five-Day Carbonaceous Biochemical Oxygen Demand; 10 mg/L Total Suspended Solids; 2 mg/L Ammonia Nitrogen; 0.5 mg/L Total Phosphorus; a minimum dissolved oxygen (DO) of 4.0 mg/L, pH in the range of 6.0 to 9.0, and Escherichia coli (E. coli) not to exceed 126 colony forming units/most probable number per 100 milliliter.

13. The effluent shall contain a chlorine residual of at least 1.0 mg/L and shall not exceed a chlorine residual of 4.0 mg/L after a detention of at least 20 minutes based on peak flow.

## Notice and Jurisdiction

14. The Notice of Receipt of the Application and Intent to Obtain Water Quality Permit was published on June 28, 2020, in the *Williamson County Sun* in English and, on June 25, 2020, in *El Mundo Newspaper* in Spanish.

15. The Combined Notice of Receipt and Intent to Obtain a Water Quality Permit and Notice of Application and Preliminary Decision was published on December 13, 2020, in the *Williamson County Sun* in English and, on December 17, 2020, in *El Mundo Newspaper* in Spanish.

16. The comment period for the Application closed on January 19, 2021.

17. TCEQ's Office of the Chief Clerk received timely comments from various individuals and the City of Georgetown (the City). The City also timely filed a request for a Contested Case Hearing based upon issues raised during the public comment period.

18. The ED filed his Response to Public Comments on August 6, 2021.

19. On November 3, 2021, the Commission considered the hearing request at its open meeting and, on November 9, 2021, issued an Interim Order, directing that the following eight issues be referred to SOAH, denying all issues not referred, and setting the maximum duration of the hearing at 180 days from the date of the preliminary hearing until the date the PFD is issued by SOAH:

    A) Issue A: Whether the Draft Permit is protective of water quality and the existing uses of the receiving waters in accordance with applicable Texas Surface Water Quality

Standards (TSQWS), including protection of aquatic and terrestrial wildlife;

B) Issue B: Whether the Draft Permit is consistent with the state's regionalization policy and demonstration of need for the volume requested in the application for a new discharge permit pursuant to Texas Water Code section 26.0282;

C) Issue C: Whether the Draft Permit is protective of the health of the nearby residents;

D) Issue D: Whether the Draft Permit complies with applicable requirements regarding nuisance odors;

E) Issue E: Whether the Application is substantially complete and accurate;

F) Issue F: Whether the Draft Permit complies with the TCEQ's antidegradation policy and procedures;

G) Issue G: Whether the Draft Permit should be altered or denied based on the AIRW's compliance history; and

H) Issue H: Whether the Draft Permit contains sufficient provisions to ensure protection of water quality, including necessary operational requirements.

20. On January 16, 2022, notice of the preliminary hearing was published in English in the *Williamson County Sun* and, on January 13, 2022, in Spanish in *El Mundo Newspaper*. The notice included the time, date, and place of the hearing, as well as the matters asserted, in accordance with the applicable statutes and rules.

**Proceedings at SOAH**

21. On February 24, 2022, a preliminary hearing was convened in this case via videoconference by SOAH ALJs Andrew Lutostanski and Ross Henderson. Attorney Helen Gilbert appeared for AIRW; attorney Patricia Carls appeared for the City; attorney Bobby Salehi appeared for the ED; attorney Jennifer Jamison appeared for the Office of Public Interest Counsel (OPIC); Jim Webb appeared for himself; and John Carlton appeared for Jonah.

22. Mr. Webb and Jonah sought party status at the preliminary hearing, and the ALJs granted those requests. Mr. Webb submitted his withdrawal from the proceeding on May 17, 2022.

23. Jurisdiction was noted by the ALJs and the Administrative Record, and AIRW's exhibits AIRW Exhibit 1-7 were admitted.

24. A second preliminary hearing was held via videoconference by SOAH ALJs Lutostanski and Katerina DeAngelo on May 12, 2022. All parties appeared through their respective representatives and the ALJs ruled on all timely-filed motions and objections.

25. On May 23-25, 2022, ALJs Lutostanski and DeAngelo convened the hearing on the merits via videoconference and all parties appeared through their respective representatives. The record closed on June 24, 2022, after the parties filed post-hearing briefs.

## Protection of Water Quality and Existing Uses, Including Aquatic and Terrestrial Wildlife

26. The prima facie demonstration that the Draft Permit is protective of water quality and the existing uses of the receiving waters in accordance with applicable Texas Surface Water Quality Standards (TSWQS), including protection of aquatic and terrestrial wildlife, was not rebutted.

27. TSWQS apply to surface water in the state and are set by the Commission at levels designed to be protective of public health, aquatic resources, terrestrial life, and other environmental and economic resources. The applicable water quality standards are the TSWQS in 30 Texas Administrative Code Chapter 307.

28. The TSWQS consist of general standards, narrative standards, surface water segment-specific numeric standards, numeric standards for toxic substances, and antidegradation review.

29. The TSWQS establish specific uses for each classified water body in the state and also provide numeric criteria for each classified stream.

30. The provisions of the Draft Permit are protective of water quality and are in accordance with the TSWQS.

31. The Draft Permit is protective of water quality and existing uses of the receiving water.

32. The Draft Permit is protective of aquatic and terrestrial wildlife.

## Regionalization

33. To effectuate its policy of encouraging regionalization of wastewater services, TCEQ requires an applicant to provide certain information to allow TCEQ to conduct a regionalization analysis.

34. No part of the Facility or development is within the City's corporate limits.

35. The proposed Facility and its discharge are within the City's extraterritorial jurisdiction.

36. Properties in the City's extraterritorial jurisdiction that desire wastewater services from the City must first submit a petition for voluntary annexation.

37. The ordinance requiring annexation for wastewater services may be waived by the City Council.

38. As part of its Application, AIRW provided email correspondence to and from nearby providers regarding whether they would provide sewer service.

39. AIRW's written communications with nearby providers were sufficient, and AIRW was not required to submit certified letters because the emails provide similar tracking and traceability.

40. AIRW explored securing wastewater services from the City, and the City placed conditions on providing service, including: the Facility site would have to be annexed into the City and comply with the City's land use restrictions.

41. There was no indication that the City was willing to waive the annexation and land use requirements.

42. AIRW received a conditional offer for sewer service from the City. The City denied AIRW's request for service unless AIRW agreed to annexation and land use restrictions.

43. The ED requested from AIRW a cost analysis of expenditures that includes the cost of connecting to the CCN facilities versus the cost of the proposed facility or expansion.

44. Constructing a new plant will cost approximately $300,000 more than connecting to the City's system.

45. Because of the higher property tax rate inside the City than outside it in the unincorporated area and the City's condition of annexation to connect to its system, connecting carries with it an approximately $20 million cost due to diminution in property value.

46. Costs weigh in favor of granting AIRW's application.

47. The evidence fails to show that easements and the delay inherent to acquiring them are impediments to connecting to the City's system.

48. Even if easements were needed, the evidence fails to show that AIRW tried and failed to secure them.

49. There is no regional provider designated for the area where the Facility is proposed to be located.

50. The proposed Facility and its discharge are not within the sewer CCN of any retail public utility.

51. The proposed Facility and its discharge are partially within Jonah's district boundaries and wholly within Jonah's water CCN area.

52. The City did not request Jonah's consent to provide wastewater service to the Facility, and Jonah has not given consent for the City to operate within its boundaries.

53. DELETED

54. DELETED

**Nearby Residents**

55. The prima facie demonstration that the Draft Permit is protective of the health of nearby residents was not rebutted.

56. The Draft Permit contains adequate permit limits and monitoring requirements to protect the health of nearby residents.

57. The monitoring and sampling requirements in the Draft Permit comply with the Commission rules.

58. The Draft Permit contains appropriate effluent limits.

59. The Draft Permit is protective of human health, including those of nearby residents.

**Nuisance Odors**

60. AIRW will control nuisance odors by owning the 150-foot buffer zone from the wastewater treatment plant units to the property line.

61. The evidence failed to show that the discharge will go into any body of water that crosses or abuts any park, playground, or schoolyard within one mile of the point of discharge.

**Completeness and Accuracy of Application**

62. The prima facie demonstration that the Application is substantially complete and accurate was not rebutted.

63. The Application went through both an administrative and a technical review.

64. The Application included all required information and was substantially complete and accurate.

8

## Antidegradation

65. The prima facie demonstration that the Draft Permit complies with TCEQ's antidegradation policy and procedures was not rebutted.

66. The ED performed a Tier 1 and Tier 2 antidegradation review of the receiving waters in accordance with 30 Texas Administrative Code section 307.5.

67. The narrative and numeric criteria to protect existing uses will be maintained throughout the receiving waters; therefore, existing water quality uses will be maintained and protected.

68. The existing water quality uses of the receiving waters of the unnamed tributary of unnamed tributary, Mankins Branch, the San Gabriel/North Fork San Gabriel River in Segment No. 1248 of the Brazos River Basin will not be impaired by the Draft Permit as long as AIRW complies with the Draft Permit, which will satisfy the antidegradation Tier 1 requirements.

69. The Draft Permit will not cause significant degradation of water quality in the receiving waters of the unnamed tributary, Mankins Branch, the San Gabriel/North Fork San Gabriel River in Segment No. 1248 of the Brazos River Basin as long as AIRW complies with the Draft Permit, which will satisfy the antidegradation Tier 2 requirements.

70. The Draft Permit complies with TCEQ's antidegradation policy and procedures.

## Compliance History

71. AIRW's compliance status is unclassified.

72. No evidence was presented that indicated that AIRW's compliance history should alter or result in permit denial.

73. AIRW's compliance history of unclassified does not serve as a basis for alteration or denial of the Draft Permit.

### Operational Requirements

74. The prima facie demonstration that the Draft Permit contains sufficient provisions to ensure protection of water quality, including necessary operational requirements, was not rebutted.

75. The operational requirements in the Draft Permit are sufficient to ensure protection of water quality.

### Transcription Costs

76. Reporting and transcription of the hearing on the merits was warranted because the hearing lasted for three days.

77. All parties fully participated in the hearing by presenting witnesses and cross-examining witnesses; however, Jonah's participation in the hearing was minor and disproportionate to the City and AIRW.

78. Both the City and AIRW participated roughly equally in the hearing and cited to the transcript in their closing arguments; therefore, both sides benefitted from having a transcript.

79. There was no evidence that any party subject to allocation of costs is financially unable to pay a share of the costs.

80. The total cost for recording and transcribing the preliminary hearing and the hearing on the merits was $8,848.75.

81. AIRW and the City should each pay one-half of the transcription costs.

## II. CONCLUSIONS OF LAW

1. TCEQ has jurisdiction over this matter. Tex. Water Code, chs. 5, 26.

2. SOAH has jurisdiction to conduct a hearing and to prepare a PFD in contested cases referred by the Commission under Texas Government Code section 2003.047.

3. Notice was provided in accordance with Texas Water Code sections 5.114 and 26.028; Texas Government Code sections 2001.051 and 2001.052; and 30 Texas Administrative Code sections 39.405 and 39.551.

4. The Application is subject to the requirements in Senate Bill 709, effective September 1, 2015. Tex. Gov't Code § 2003.047(i-1)-(i-3).

5. AIRW's filing of the Administrative Record established a prima facie case that: (1) the Draft Permit meets all state and federal legal and technical requirements; and (2) a permit, if issued consistent with the Draft Permit, would protect human health and safety, the environment, and physical property. Tex. Gov't Code § 2003.047(i-1); 30 Tex. Admin. Code § 80.17.

6. AIRW retains the burden of proof on the issues regarding the sufficiency of the Application and compliance with the necessary statutory and regulatory requirements. 30 Tex. Admin. Code § 80.17(a).

7. The City did not rebut the prima facie demonstration by demonstrating that one or more provisions in the Draft Permit violate a specifically applicable state or federal requirement that relates to a matter referred by TCEQ. Tex. Gov't Code § 2003.047(i-2); 30 Tex. Admin. Code § 80.117(c).

8. The Draft Permit is protective of water quality and the existing uses of the receiving waters in accordance with applicable TSWQS, including protection of aquatic and terrestrial wildlife.

9. The Draft Permit is protective of the health of residents near the proposed Facility and discharge route.

10. The Application demonstrates compliance with TCEQ's regionalization policy. Tex. Water Code §§ 26.003, 26.081(a)-(b), (d); 26.0282.

11. The Application demonstrates a need for the Draft Permit. Tex. Water Code § 26.0282.

12. The Draft Permit contains sufficient provisions to prevent nuisance odors. 30 Tex. Admin. Code §§ 217.38, 309.13(e).

13. The Application is substantially complete and accurate

14. The Draft Permit complies with TCEQ's antidegradation policy. 30 Texas Admin. Code §§ 307.5, 307.6(b)(4).

15. AIRW's compliance history does not raise issues regarding AIRW's ability to comply with the material terms of the Draft Permit or that would warrant altering the terms of the Draft Permit.

16. The Draft Permit contains sufficient provisions, including necessary operational requirements, to ensure protection of water quality.

17. No transcript costs may be assessed against the ED or OPIC because TCEQ's rules prohibit the assessment of any cost to a statutory party who is precluded by law from appealing any ruling, decision, or other act of the Commission. 30 Tex. Admin. Code § 80.23(d)(2).

18. Factors to be considered in assessing transcript costs include: the party who requested the transcript; the financial ability of the party to pay the costs; the extent to which the party participated in the hearing; the relative benefits to the various parties of having a transcript; the budgetary constraints of a state or federal administrative agency participating in the proceeding; and any other factor which is relevant to a just and reasonable assessment of the costs. 30 Tex. Admin. Code § 80.23(d)(1).

19. Considering the factors in 30 Texas Administrative Code section 80.23(d)(1), a reasonable assessment of hearing transcript costs against parties to the contested case proceeding is: one-half to AIRW and one-half to the City.

## III. EXPLAINATION OF CHANGES

1. The Commission determined to adopt the Administrative Law Judges' proposed Order with changes.

2. The Commission determined to amend the second sentence in Finding of Fact #3 based on the Executive Director's Exceptions and agreed to by the Administrative Law Judges to read: "The unclassified receiving water uses are limited aquatic life use for the unnamed tributary and Mankins Branch (intermittent with perennial pools), and high aquatic life use for Mankins Branch (perennial)."

3.    The Commission determined to amend Finding of Fact #51 based on Jonah's Exceptions and agreed to by the Administrative Law Judges to read: "The proposed Facility and its discharge are partially within Jonah's district boundaries and wholly within Jonah's water CCN area."

4.    The Commission determined to delete Findings of Fact #53 and #54 as unnecessary to the Commission's regionalization policy consideration in this case.

**NOW, THEREFORE, BE IT ORDERED BY THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, IN ACCORDANCE WITH THESE FINDINGS OF FACT AND CONCLUSIONS OF LAW, THAT:**

1.    AIRW's Application for Texas Pollutant Discharge Elimination System Permit No. WQ0015878001 is granted as set forth in the Draft Permit.

2.    AIRW and the City must each pay one-half of the transcription costs.

3.    The Commission adopts the ED's Response to Public Comment in accordance with 30 Texas Administrative Code section 50.117.

4.    All other motions, requests for entry of specific Findings of Fact or Conclusions of Law, and any other requests for general or specific relief, if not expressly granted herein, are hereby denied.

5.    The effective date of this Order is the date the Order is final, as provided by Texas Government Code section 2001.144 and 30 Texas Administrative Code section 80.273.

6.    TCEQ's Chief Clerk shall forward a copy of this Order to all parties.

7.    If any provision, sentence, clause, or phrase of this Order is for any reason held to be invalid, the invalidity of any provision shall not affect the validity of the remaining portions of this Order.

ISSUED: November 28, 2022    TEXAS COMMISSION ON
                              ENVIRONMENTAL QUALITY


Jon Niermann, Chairman



TPDES PERMIT NO. WQ0015878001
*[For TCEQ office use only - EPA I.D.*
*No. TX0140244]*

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
P.O. Box 13087
Austin, Texas 78711-3087

## PERMIT TO DISCHARGE WASTES
under provisions of
Section 402 of the Clean Water Act
and Chapter 26 of the Texas Water Code

AIRW 2017-7, L.P.

whose mailing address is

2505 North State Highway 360, Suite 800
Grand Prairie, Texas 75050

is authorized to treat and discharge wastes from the Rockride Lane Water Resource Reclamation Facility, SIC Code 4952

located approximately 500 feet southeast of the intersection of Rockride Lane (County Road 110) and Westinghouse Road (County Road 111), in Williamson County, Texas 78626

via pipe, thence through a culvert, thence to an unnamed tributary, thence to Mankins Branch, thence the San Gabriel/North Fork San Gabriel River in Segment No. 1248 of the Brazos River Basin

only according to effluent limitations, monitoring requirements, and other conditions set forth in this permit, as well as the rules of the Texas Commission on Environmental Quality (TCEQ), the laws of the State of Texas, and other orders of the TCEQ. The issuance of this permit does not grant to the permittee the right to use private or public property for conveyance of wastewater along the discharge route described in this permit. This includes, but is not limited to, property belonging to any individual, partnership, corporation, or other entity. Neither does this permit authorize any invasion of personal rights nor any violation of federal, state, or local laws or regulations. It is the responsibility of the permittee to acquire property rights as may be necessary to use the discharge route.

This permit shall expire at midnight, **five years from the date of issuance.**

ISSUED DATE: November 28, 2022

_____
For the Commission

EFFLUENT LIMITATIONS AND MONITORING REQUIREMENTS

1. During the period beginning upon the date of issuance and lasting through the date of expiration, the permittee is authorized to discharge subject to the following effluent limitations:

The daily average flow of effluent shall not exceed 0.20 million gallons per day (MGD), nor shall the average discharge during any two-hour period (2-hour peak) exceed 556 gallons per minute.

| Effluent Characteristic | Discharge Limitations | | | | Min. Self-Monitoring Requirements | |
|---|---|---|---|---|---|---|
| | Daily Avg | 7-day Avg | Daily Max | Single Grab | Report Daily Avg. & Max. Single Grab | |
| | mg/l (lbs/day) | mg/l | mg/l | mg/l | Measurement Frequency | Sample Type |
| Flow, MGD | Report | N/A | Report | N/A | Continuous | Totalizing Meter |
| Carbonaceous Biochemical Oxygen Demand (5-day) | 7 (12) | 12 | 22 | 32 | One/week | Grab |
| Total Suspended Solids | 10 (17) | 15 | 25 | 35 | One/week | Grab |
| Ammonia Nitrogen | 2 (3.3) | 5 | 10 | 15 | One/week | Grab |
| Total Phosphorus | 0.5 (0.8) | 1 | 2 | 3 | One/week | Grab |
| E. coli, CFU or MPN* per 100 ml | 126 | N/A | N/A | 399 | One/month | Grab |

*CFU or MPN* - colony-forming units or most probable number

2. The effluent shall contain a chlorine residual of at least 1.0 mg/l and shall not exceed a chlorine residual of 4.0 mg/l after a detention time of at least 20 minutes (based on peak flow), and shall be monitored five times per week by grab sample. An equivalent method of disinfection may be substituted only with prior approval of the Executive Director.

3. The pH shall not be less than 6.0 standard units nor greater than 9.0 standard units and shall be monitored once per month by grab sample.

4. There shall be no discharge of floating solids or visible foam in other than trace amounts and no discharge of visible oil.

5. Effluent monitoring samples shall be taken at the following location(s): Following the final treatment unit.

6. The effluent shall contain a minimum dissolved oxygen of 4.0 mg/l and shall be monitored once per week by grab sample.

## DEFINITIONS AND STANDARD PERMIT CONDITIONS

As required by Title 30 Texas Administrative Code (TAC) Chapter 305, certain regulations appear as standard conditions in waste discharge permits. 30 TAC § 305.121 - 305.129 (relating to Permit Characteristics and Conditions) as promulgated under the Texas Water Code (TWC) §§ 5.103 and 5.105, and the Texas Health and Safety Code (THSC) §§ 361.017 and 361.024(a), establish the characteristics and standards for waste discharge permits, including sewage sludge, and those sections of 40 Code of Federal Regulations (CFR) Part 122 adopted by reference by the Commission. The following text includes these conditions and incorporates them into this permit. All definitions in TWC § 26.001 and 30 TAC Chapter 305 shall apply to this permit and are incorporated by reference. Some specific definitions of words or phrases used in this permit are as follows:

1.  Flow Measurements

    a.  Annual average flow - the arithmetic average of all daily flow determinations taken within the preceding 12 consecutive calendar months. The annual average flow determination shall consist of daily flow volume determinations made by a totalizing meter, charted on a chart recorder and limited to major domestic wastewater discharge facilities with one million gallons per day or greater permitted flow.

    b.  Daily average flow - the arithmetic average of all determinations of the daily flow within a period of one calendar month. The daily average flow determination shall consist of determinations made on at least four separate days. If instantaneous measurements are used to determine the daily flow, the determination shall be the arithmetic average of all instantaneous measurements taken during that month. Daily average flow determination for intermittent discharges shall consist of a minimum of three flow determinations on days of discharge.

    c.  Daily maximum flow - the highest total flow for any 24-hour period in a calendar month.

    d.  Instantaneous flow - the measured flow during the minimum time required to interpret the flow measuring device.

    e.  2-hour peak flow (domestic wastewater treatment plants) - the maximum flow sustained for a two-hour period during the period of daily discharge. The average of multiple measurements of instantaneous maximum flow within a two-hour period may be used to calculate the 2-hour peak flow.

    f.  Maximum 2-hour peak flow (domestic wastewater treatment plants) - the highest 2-hour peak flow for any 24-hour period in a calendar month.

2.  Concentration Measurements

    a.  Daily average concentration - the arithmetic average of all effluent samples, composite or grab as required by this permit, within a period of one calendar month, consisting of at least four separate representative measurements.

        i.  For domestic wastewater treatment plants - When four samples are not available in a calendar month, the arithmetic average (weighted by flow) of all values in the previous four consecutive month period consisting of at least four measurements shall be utilized as the daily average concentration.

ii. For all other wastewater treatment plants - When four samples are not available in a calendar month, the arithmetic average (weighted by flow) of all values taken during the month shall be utilized as the daily average concentration.

b. 7-day average concentration - the arithmetic average of all effluent samples, composite or grab as required by this permit, within a period of one calendar week, Sunday through Saturday.

c. Daily maximum concentration - the maximum concentration measured on a single day, by the sample type specified in the permit, within a period of one calendar month.

d. Daily discharge - the discharge of a pollutant measured during a calendar day or any 24-hour period that reasonably represents the calendar day for purposes of sampling. For pollutants with limitations expressed in terms of mass, the daily discharge is calculated as the total mass of the pollutant discharged over the sampling day. For pollutants with limitations expressed in other units of measurement, the daily discharge is calculated as the average measurement of the pollutant over the sampling day.

The daily discharge determination of concentration made using a composite sample shall be the concentration of the composite sample. When grab samples are used, the daily discharge determination of concentration shall be the arithmetic average (weighted by flow value) of all samples collected during that day.

e. Bacteria concentration (*E. coli* or Enterococci) - Colony Forming Units (CFU) or Most Probable Number (MPN) of bacteria per 100 milliliters effluent. The daily average bacteria concentration is a geometric mean of the values for the effluent samples collected in a calendar month. The geometric mean shall be determined by calculating the nth root of the product of all measurements made in a calendar month, where n equals the number of measurements made; or, computed as the antilogarithm of the arithmetic mean of the logarithms of all measurements made in a calendar month. For any measurement of bacteria equaling zero, a substituted value of one shall be made for input into either computation method. If specified, the 7-day average for bacteria is the geometric mean of the values for all effluent samples collected during a calendar week.

f. Daily average loading (lbs/day) - the arithmetic average of all daily discharge loading calculations during a period of one calendar month. These calculations must be made for each day of the month that a parameter is analyzed. The daily discharge, in terms of mass (lbs/day), is calculated as (Flow, MGD x Concentration, mg/l x 8.34).

g. Daily maximum loading (lbs/day) - the highest daily discharge, in terms of mass (lbs/day), within a period of one calendar month.

3. Sample Type

a. Composite sample - For domestic wastewater, a composite sample is a sample made up of a minimum of three effluent portions collected in a continuous 24-hour period or during the period of daily discharge if less than 24 hours, and combined in volumes proportional to flow, and collected at the intervals required by 30 TAC § 319.9 (a). For industrial wastewater, a composite sample is a sample made up of a minimum of three effluent portions collected in a continuous 24-hour period or during the period of daily discharge if less than 24 hours, and combined in volumes proportional to flow, and collected at the intervals required by 30 TAC § 319.9 (b).

b. Grab sample - an individual sample collected in less than 15 minutes.

4. Treatment Facility (facility) - wastewater facilities used in the conveyance, storage, treatment, recycling, reclamation and/or disposal of domestic sewage, industrial wastes, agricultural wastes, recreational wastes, or other wastes including sludge handling or disposal facilities under the jurisdiction of the Commission.

5. The term "sewage sludge" is defined as solid, semi-solid, or liquid residue generated during the treatment of domestic sewage in 30 TAC Chapter 312. This includes the solids that have not been classified as hazardous waste separated from wastewater by unit processes.

6. Bypass - the intentional diversion of a waste stream from any portion of a treatment facility.

## MONITORING AND REPORTING REQUIREMENTS

1. Self-Reporting

Monitoring results shall be provided at the intervals specified in the permit. Unless otherwise specified in this permit or otherwise ordered by the Commission, the permittee shall conduct effluent sampling and reporting in accordance with 30 TAC §§ 319.4 - 319.12. Unless otherwise specified, effluent monitoring data shall be submitted each month, to the Compliance Monitoring Team of the Enforcement Division (MC 224), by the 20th day of the following month for each discharge which is described by this permit whether or not a discharge is made for that month. Monitoring results must be submitted online using the NetDMR reporting system available through the TCEQ website unless the permittee requests and obtains an electronic reporting waiver. Monitoring results must be signed and certified as required by Monitoring and Reporting Requirements No. 10.

As provided by state law, the permittee is subject to administrative, civil and criminal penalties, as applicable, for negligently or knowingly violating the Clean Water Act (CWA); TWC §§ 26, 27, and 28; and THSC § 361, including but not limited to knowingly making any false statement, representation, or certification on any report, record, or other document submitted or required to be maintained under this permit, including monitoring reports or reports of compliance or noncompliance, or falsifying, tampering with or knowingly rendering inaccurate any monitoring device or method required by this permit or violating any other requirement imposed by state or federal regulations.

2. Test Procedures

a. Unless otherwise specified in this permit, test procedures for the analysis of pollutants shall comply with procedures specified in 30 TAC §§ 319.11 - 319.12. Measurements, tests, and calculations shall be accurately accomplished in a representative manner.

b. All laboratory tests submitted to demonstrate compliance with this permit must meet the requirements of 30 TAC § 25, Environmental Testing Laboratory Accreditation and Certification.

3. Records of Results

a. Monitoring samples and measurements shall be taken at times and in a manner so as to be representative of the monitored activity.

b. Except for records of monitoring information required by this permit related to the permittee's sewage sludge use and disposal activities, which shall be retained for a period

of at least five years (or longer as required by 40 CFR Part 503), monitoring and reporting records, including strip charts and records of calibration and maintenance, copies of all records required by this permit, records of all data used to complete the application for this permit, and the certification required by 40 CFR § 264.73(b)(9) shall be retained at the facility site, or shall be readily available for review by a TCEQ representative for a period of three years from the date of the record or sample, measurement, report, application or certification. This period shall be extended at the request of the Executive Director.

c. Records of monitoring activities shall include the following:

   i.  date, time and place of sample or measurement;

   ii. identity of individual who collected the sample or made the measurement.

   iii. date and time of analysis;

   iv. identity of the individual and laboratory who performed the analysis;

   v.  the technique or method of analysis; and

   vi. the results of the analysis or measurement and quality assurance/quality control records.

The period during which records are required to be kept shall be automatically extended to the date of the final disposition of any administrative or judicial enforcement action that may be instituted against the permittee.

4. Additional Monitoring by Permittee

If the permittee monitors any pollutant at the location(s) designated herein more frequently than required by this permit using approved analytical methods as specified above, all results of such monitoring shall be included in the calculation and reporting of the values submitted on the approved self-report form. Increased frequency of sampling shall be indicated on the self-report form.

5. Calibration of Instruments

All automatic flow measuring or recording devices and all totalizing meters for measuring flows shall be accurately calibrated by a trained person at plant start-up and as often thereafter as necessary to ensure accuracy, but not less often than annually unless authorized by the Executive Director for a longer period. Such person shall verify in writing that the device is operating properly and giving accurate results. Copies of the verification shall be retained at the facility site and/or shall be readily available for review by a TCEQ representative for a period of three years.

6. Compliance Schedule Reports

Reports of compliance or noncompliance with, or any progress reports on, interim and final requirements contained in any compliance schedule of the permit shall be submitted no later than 14 days following each schedule date to the Regional Office and the Compliance Monitoring Team of the Enforcement Division (MC 224).

7. Noncompliance Notification

   a. In accordance with 30 TAC § 305.125(9) any noncompliance which may endanger human health or safety, or the environment shall be reported by the permittee to the TCEQ. Except as allowed by 30 TAC § 305.132, report of such information shall be provided orally or by facsimile transmission (FAX) to the Regional Office within 24 hours of becoming aware of the noncompliance. A written submission of such information shall also be provided by the permittee to the Regional Office and the Compliance Monitoring Team of the Enforcement Division (MC 224) within five working days of becoming aware of the noncompliance. For Publicly Owned Treatment Works (POTWs), effective December 21, 2023, the permittee must submit the written report for unauthorized discharges and unanticipated bypasses that exceed any effluent limit in the permit using the online electronic reporting system available through the TCEQ website unless the permittee requests and obtains an electronic reporting waiver. The written submission shall contain a description of the noncompliance and its cause; the potential danger to human health or safety, or the environment; the period of noncompliance, including exact dates and times; if the noncompliance has not been corrected, the time it is expected to continue; and steps taken or planned to reduce, eliminate, and prevent recurrence of the noncompliance, and to mitigate its adverse effects.

   b. The following violations shall be reported under Monitoring and Reporting Requirement 7.a.:

      i. Unauthorized discharges as defined in Permit Condition 2(g).

      ii. Any unanticipated bypass that exceeds any effluent limitation in the permit.

      iii. Violation of a permitted maximum daily discharge limitation for pollutants listed specifically in the Other Requirements section of an Industrial TPDES permit.

   c. In addition to the above, any effluent violation which deviates from the permitted effluent limitation by more than 40% shall be reported by the permittee in writing to the Regional Office and the Compliance Monitoring Team of the Enforcement Division (MC 224) within 5 working days of becoming aware of the noncompliance.

   d. Any noncompliance other than that specified in this section, or any required information not submitted or submitted incorrectly, shall be reported to the Compliance Monitoring Team of the Enforcement Division (MC 224) as promptly as possible. For effluent limitation violations, noncompliances shall be reported on the approved self-report form.

8. In accordance with the procedures described in 30 TAC §§ 35.301 – 35.303 (relating to Water Quality Emergency and Temporary Orders) if the permittee knows in advance of the need for a bypass, it shall submit prior notice by applying for such authorization.

9. Changes in Discharges of Toxic Substances

   All existing manufacturing, commercial, mining, and silvicultural permittees shall notify the Regional Office, orally or by facsimile transmission within 24 hours, and both the Regional Office and the Compliance Monitoring Team of the Enforcement Division (MC 224) in writing within five (5) working days, after becoming aware of or having reason to believe:

a. That any activity has occurred or will occur which would result in the discharge, on a routine or frequent basis, of any toxic pollutant listed at 40 CFR Part 122, Appendix D, Tables II and III (excluding Total Phenols) which is not limited in the permit, if that discharge will exceed the highest of the following "notification levels":

   i. One hundred micrograms per liter (100 µg/L);

   ii. Two hundred micrograms per liter (200 µg/L) for acrolein and acrylonitrile; five hundred micrograms per liter (500 µg/L) for 2,4-dinitrophenol and for 2-methyl-4,6-dinitrophenol; and one milligram per liter (1 mg/L) for antimony;

   iii. Five (5) times the maximum concentration value reported for that pollutant in the permit application; or

   iv. The level established by the TCEQ.

b. That any activity has occurred or will occur which would result in any discharge, on a nonroutine or infrequent basis, of a toxic pollutant which is not limited in the permit, if that discharge will exceed the highest of the following "notification levels":

   i. Five hundred micrograms per liter (500 µg/L);

   ii. One milligram per liter (1 mg/L) for antimony;

   iii. Ten (10) times the maximum concentration value reported for that pollutant in the permit application; or

   iv. The level established by the TCEQ.

10. Signatories to Reports

All reports and other information requested by the Executive Director shall be signed by the person and in the manner required by 30 TAC § 305.128 (relating to Signatories to Reports).

11. All POTWs must provide adequate notice to the Executive Director of the following:

a. Any new introduction of pollutants into the POTW from an indirect discharger which would be subject to CWA § 301 or § 306 if it were directly discharging those pollutants;

b. Any substantial change in the volume or character of pollutants being introduced into that POTW by a source introducing pollutants into the POTW at the time of issuance of the permit; and

c. For the purpose of this paragraph, adequate notice shall include information on:

   i. The quality and quantity of effluent introduced into the POTW; and

   ii. Any anticipated impact of the change on the quantity or quality of effluent to be discharged from the POTW.

## PERMIT CONDITIONS

1. General

    a. When the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in an application or in any report to the Executive Director, it shall promptly submit such facts or information.

    b. This permit is granted on the basis of the information supplied and representations made by the permittee during action on an application, and relying upon the accuracy and completeness of that information and those representations. After notice and opportunity for a hearing, this permit may be modified, suspended, or revoked, in whole or in part, in accordance with 30 TAC Chapter 305, Subchapter D, during its term for good cause including, but not limited to, the following:

        i. Violation of any terms or conditions of this permit;

        ii. Obtaining this permit by misrepresentation or failure to disclose fully all relevant facts; or

        iii. A change in any condition that requires either a temporary or permanent reduction or elimination of the authorized discharge.

    c. The permittee shall furnish to the Executive Director, upon request and within a reasonable time, any information to determine whether cause exists for amending, revoking, suspending or terminating the permit. The permittee shall also furnish to the Executive Director, upon request, copies of records required to be kept by the permit.

2. Compliance

    a. Acceptance of the permit by the person to whom it is issued constitutes acknowledgment and agreement that such person will comply with all the terms and conditions embodied in the permit, and the rules and other orders of the Commission.

    b. The permittee has a duty to comply with all conditions of the permit. Failure to comply with any permit condition constitutes a violation of the permit and the Texas Water Code or the Texas Health and Safety Code, and is grounds for enforcement action, for permit amendment, revocation, or suspension, or for denial of a permit renewal application or an application for a permit for another facility.

    c. It shall not be a defense for a permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity in order to maintain compliance with the conditions of the permit.

    d. The permittee shall take all reasonable steps to minimize or prevent any discharge or sludge use or disposal or other permit violation that has a reasonable likelihood of adversely affecting human health or the environment.

    e. Authorization from the Commission is required before beginning any change in the permitted facility or activity that may result in noncompliance with any permit requirements.

    f. A permit may be amended, suspended and reissued, or revoked for cause in accordance

with 30 TAC §§ 305.62 and 305.66 and TWC§ 7.302. The filing of a request by the permittee for a permit amendment, suspension and reissuance, or termination, or a notification of planned changes or anticipated noncompliance, does not stay any permit condition.

g. There shall be no unauthorized discharge of wastewater or any other waste. For the purpose of this permit, an unauthorized discharge is considered to be any discharge of wastewater into or adjacent to water in the state at any location not permitted as an outfall or otherwise defined in the Other Requirements section of this permit.

h. In accordance with 30 TAC § 305.535(a), the permittee may allow any bypass to occur from a TPDES permitted facility which does not cause permitted effluent limitations to be exceeded or an unauthorized discharge to occur, but only if the bypass is also for essential maintenance to assure efficient operation.

i. The permittee is subject to administrative, civil, and criminal penalties, as applicable, under TWC §§ 7.051 - 7.075 (relating to Administrative Penalties), 7.101 - 7.111 (relating to Civil Penalties), and 7.141 - 7.202 (relating to Criminal Offenses and Penalties) for violations including, but not limited to, negligently or knowingly violating the federal CWA §§ 301, 302, 306, 307, 308, 318, or 405, or any condition or limitation implementing any sections in a permit issued under the CWA § 402, or any requirement imposed in a pretreatment program approved under the CWA §§ 402 (a)(3) or 402 (b)(8).

3. Inspections and Entry

a. Inspection and entry shall be allowed as prescribed in the TWC Chapters 26, 27, and 28, and THSC § 361.

b. The members of the Commission and employees and agents of the Commission are entitled to enter any public or private property at any reasonable time for the purpose of inspecting and investigating conditions relating to the quality of water in the state or the compliance with any rule, regulation, permit or other order of the Commission. Members, employees, or agents of the Commission and Commission contractors are entitled to enter public or private property at any reasonable time to investigate or monitor or, if the responsible party is not responsive or there is an immediate danger to public health or the environment, to remove or remediate a condition related to the quality of water in the state. Members, employees, Commission contractors, or agents acting under this authority who enter private property shall observe the establishment's rules and regulations concerning safety, internal security, and fire protection, and if the property has management in residence, shall notify management or the person then in charge of his presence and shall exhibit proper credentials. If any member, employee, Commission contractor, or agent is refused the right to enter in or on public or private property under this authority, the Executive Director may invoke the remedies authorized in TWC § 7.002. The statement above, that Commission entry shall occur in accordance with an establishment's rules and regulations concerning safety, internal security, and fire protection, is not grounds for denial or restriction of entry to any part of the facility, but merely describes the Commission's duty to observe appropriate rules and regulations during an inspection.

4. Permit Amendment and/or Renewal

a. The permittee shall give notice to the Executive Director as soon as possible of any planned physical alterations or additions to the permitted facility if such alterations or additions would require a permit amendment or result in a violation of permit requirements. Notice shall also be required under this paragraph when:

   i. The alteration or addition to a permitted facility may meet one of the criteria for determining whether a facility is a new source in accordance with 30 TAC § 305.534 (relating to New Sources and New Dischargers); or

   ii. The alteration or addition could significantly change the nature or increase the quantity of pollutants discharged. This notification applies to pollutants that are subject neither to effluent limitations in the permit, nor to notification requirements in Monitoring and Reporting Requirements No. 9; or

   iii. The alteration or addition results in a significant change in the permittee's sludge use or disposal practices, and such alteration, addition, or change may justify the application of permit conditions that are different from or absent in the existing permit, including notification of additional use or disposal sites not reported during the permit application process or not reported pursuant to an approved land application plan.

b. Prior to any facility modifications, additions, or expansions that will increase the plant capacity beyond the permitted flow, the permittee must apply for and obtain proper authorization from the Commission before commencing construction.

c. The permittee must apply for an amendment or renewal at least 180 days prior to expiration of the existing permit in order to continue a permitted activity after the expiration date of the permit. If an application is submitted prior to the expiration date of the permit, the existing permit shall remain in effect until the application is approved, denied, or returned. If the application is returned or denied, authorization to continue such activity shall terminate upon the effective date of the action. If an application is not submitted prior to the expiration date of the permit, the permit shall expire and authorization to continue such activity shall terminate.

d. Prior to accepting or generating wastes which are not described in the permit application or which would result in a significant change in the quantity or quality of the existing discharge, the permittee must report the proposed changes to the Commission. The permittee must apply for a permit amendment reflecting any necessary changes in permit conditions, including effluent limitations for pollutants not identified and limited by this permit.

e. In accordance with the TWC § 26.029(b), after a public hearing, notice of which shall be given to the permittee, the Commission may require the permittee, from time to time, for good cause, in accordance with applicable laws, to conform to new or additional conditions.

f. If any toxic effluent standard or prohibition (including any schedule of compliance specified in such effluent standard or prohibition) is promulgated under CWA § 307(a) for a toxic pollutant which is present in the discharge and that standard or prohibition is more stringent than any limitation on the pollutant in this permit, this permit shall be modified or revoked and reissued to conform to the toxic effluent standard or prohibition. The permittee shall comply with effluent standards or prohibitions established under CWA § 307(a) for toxic pollutants within the time provided in the

regulations that established those standards or prohibitions, even if the permit has not yet been modified to incorporate the requirement.

5. Permit Transfer

   a. Prior to any transfer of this permit, Commission approval must be obtained. The Commission shall be notified in writing of any change in control or ownership of facilities authorized by this permit. Such notification should be sent to the Applications Review and Processing Team (MC 148) of the Water Quality Division.

   b. A permit may be transferred only according to the provisions of 30 TAC § 305.64 (relating to Transfer of Permits) and 30 TAC § 50.133 (relating to Executive Director Action on Application or WQMP update).

6. Relationship to Hazardous Waste Activities

   This permit does not authorize any activity of hazardous waste storage, processing, or disposal that requires a permit or other authorization pursuant to the Texas Health and Safety Code.

7. Relationship to Water Rights

   Disposal of treated effluent by any means other than discharge directly to water in the state must be specifically authorized in this permit and may require a permit pursuant to TWC Chapter 11.

8. Property Rights

   A permit does not convey any property rights of any sort, or any exclusive privilege.

9. Permit Enforceability

   The conditions of this permit are severable, and if any provision of this permit, or the application of any provision of this permit to any circumstances, is held invalid, the application of such provision to other circumstances, and the remainder of this permit, shall not be affected thereby.

10. Relationship to Permit Application

    The application pursuant to which the permit has been issued is incorporated herein; provided, however, that in the event of a conflict between the provisions of this permit and the application, the provisions of the permit shall control.

11. Notice of Bankruptcy

    a. Each permittee shall notify the Executive Director, in writing, immediately following the filing of a voluntary or involuntary petition for bankruptcy under any chapter of Title 11 (Bankruptcy) of the United States Code (11 USC) by or against:

       i. the permittee;

       ii. an entity (as that term is defined in 11 USC, § 101(14)) controlling the permittee or listing the permit or permittee as property of the estate; or

       iii. an affiliate (as that term is defined in 11 USC, § 101(2)) of the permittee.

b. This notification must indicate

    i.   the name of the permittee;

    ii.   the permit number(s);

    iii.   the bankruptcy court in which the petition for bankruptcy was filed; and

    iv.   the date of filing of the petition.

## OPERATIONAL REQUIREMENTS

1. The permittee shall at all times ensure that the facility and all of its systems of collection, treatment, and disposal are properly operated and maintained. This includes, but is not limited to, the regular, periodic examination of wastewater solids within the treatment plant by the operator in order to maintain an appropriate quantity and quality of solids inventory as described in the various operator training manuals and according to accepted industry standards for process control. Process control, maintenance, and operations records shall be retained at the facility site, or shall be readily available for review by a TCEQ representative, for a period of three years.

2. Upon request by the Executive Director, the permittee shall take appropriate samples and provide proper analysis in order to demonstrate compliance with Commission rules. Unless otherwise specified in this permit or otherwise ordered by the Commission, the permittee shall comply with all applicable provisions of 30 TAC Chapter 312 concerning sewage sludge use and disposal and 30 TAC §§ 319.21 - 319.29 concerning the discharge of certain hazardous metals.

3. Domestic wastewater treatment facilities shall comply with the following provisions:

    a. The permittee shall notify the Municipal Permits Team, Wastewater Permitting Section (MC 148) of the Water Quality Division, in writing, of any facility expansion at least 90 days prior to conducting such activity.

    b. The permittee shall submit a closure plan for review and approval to the Municipal Permits Team, Wastewater Permitting Section (MC 148) of the Water Quality Division, for any closure activity at least 90 days prior to conducting such activity. Closure is the act of permanently taking a waste management unit or treatment facility out of service and includes the permanent removal from service of any pit, tank, pond, lagoon, surface impoundment and/or other treatment unit regulated by this permit.

4. The permittee is responsible for installing prior to plant start-up, and subsequently maintaining, adequate safeguards to prevent the discharge of untreated or inadequately treated wastes during electrical power failures by means of alternate power sources, standby generators, and/or retention of inadequately treated wastewater.

5. Unless otherwise specified, the permittee shall provide a readily accessible sampling point and, where applicable, an effluent flow measuring device or other acceptable means by which effluent flow may be determined.

6. The permittee shall remit an annual water quality fee to the Commission as required by 30 TAC Chapter 21. Failure to pay the fee may result in revocation of this permit under TWC § 7.302(b)(6).

7. Documentation

For all written notifications to the Commission required of the permittee by this permit, the permittee shall keep and make available a copy of each such notification under the same conditions as self-monitoring data are required to be kept and made available. Except for information required for TPDES permit applications, effluent data, including effluent data in permits, draft permits and permit applications, and other information specified as not confidential in 30 TAC §§ 1.5(d), any information submitted pursuant to this permit may be claimed as confidential by the submitter. Any such claim must be asserted in the manner prescribed in the application form or by stamping the words confidential business information on each page containing such information. If no claim is made at the time of submission, information may be made available to the public without further notice. If the Commission or Executive Director agrees with the designation of confidentiality, the TCEQ will not provide the information for public inspection unless required by the Texas Attorney General or a court pursuant to an open records request. If the Executive Director does not agree with the designation of confidentiality, the person submitting the information will be notified.

8. Facilities that generate domestic wastewater shall comply with the following provisions; domestic wastewater treatment facilities at permitted industrial sites are excluded.

   a. Whenever flow measurements for any domestic sewage treatment facility reach 75% of the permitted daily average or annual average flow for three consecutive months, the permittee must initiate engineering and financial planning for expansion and/or upgrading of the domestic wastewater treatment and/or collection facilities. Whenever the flow reaches 90% of the permitted daily average or annual average flow for three consecutive months, the permittee shall obtain necessary authorization from the Commission to commence construction of the necessary additional treatment and/or collection facilities. In the case of a domestic wastewater treatment facility which reaches 75% of the permitted daily average or annual average flow for three consecutive months, and the planned population to be served or the quantity of waste produced is not expected to exceed the design limitations of the treatment facility, the permittee shall submit an engineering report supporting this claim to the Executive Director of the Commission.

      If in the judgment of the Executive Director the population to be served will not cause permit noncompliance, then the requirement of this section may be waived. To be effective, any waiver must be in writing and signed by the Director of the Enforcement Division (MC 219) of the Commission, and such waiver of these requirements will be reviewed upon expiration of the existing permit; however, any such waiver shall not be interpreted as condoning or excusing any violation of any permit parameter.

   b. The plans and specifications for domestic sewage collection and treatment works associated with any domestic permit must be approved by the Commission and failure to secure approval before commencing construction of such works or making a discharge is a violation of this permit and each day is an additional violation until approval has been secured.

c.  Permits for domestic wastewater treatment plants are granted subject to the policy of the Commission to encourage the development of area-wide waste collection, treatment, and disposal systems. The Commission reserves the right to amend any domestic wastewater permit in accordance with applicable procedural requirements to require the system covered by this permit to be integrated into an area-wide system, should such be developed; to require the delivery of the wastes authorized to be collected in, treated by or discharged from said system, to such area-wide system; or to amend this permit in any other particular to effectuate the Commission's policy. Such amendments may be made when the changes required are advisable for water quality control purposes and are feasible on the basis of waste treatment technology, engineering, financial, and related considerations existing at the time the changes are required, exclusive of the loss of investment in or revenues from any then existing or proposed waste collection, treatment or disposal system.

9.  Domestic wastewater treatment plants shall be operated and maintained by sewage plant operators holding a valid certificate of competency at the required level as defined in 30 TAC Chapter 30.

10. For Publicly Owned Treatment Works (POTWs), the 30-day average (or monthly average) percent removal for BOD and TSS shall not be less than 85%, unless otherwise authorized by this permit.

11. Facilities that generate industrial solid waste as defined in 30 TAC § 335.1 shall comply with these provisions:

a.  Any solid waste, as defined in 30 TAC § 335.1 (including but not limited to such wastes as garbage, refuse, sludge from a waste treatment, water supply treatment plant or air pollution control facility, discarded materials, discarded materials to be recycled, whether the waste is solid, liquid, or semisolid), generated by the permittee during the management and treatment of wastewater, must be managed in accordance with all applicable provisions of 30 TAC Chapter 335, relating to Industrial Solid Waste Management.

b.  Industrial wastewater that is being collected, accumulated, stored, or processed before discharge through any final discharge outfall, specified by this permit, is considered to be industrial solid waste until the wastewater passes through the actual point source discharge and must be managed in accordance with all applicable provisions of 30 TAC Chapter 335.

c.  The permittee shall provide written notification, pursuant to the requirements of 30 TAC § 335.8(b)(1), to the Corrective Action Section (MC 127) of the Remediation Division informing the Commission of any closure activity involving an Industrial Solid Waste Management Unit, at least 90 days prior to conducting such an activity.

d.  Construction of any industrial solid waste management unit requires the prior written notification of the proposed activity to the Registration and Reporting Section (MC 129) of the Permitting and Registration Support Division. No person shall dispose of industrial solid waste, including sludge or other solids from wastewater treatment processes, prior to fulfilling the deed recordation requirements of 30 TAC § 335.5.

e. The term "industrial solid waste management unit" means a landfill, surface impoundment, waste-pile, industrial furnace, incinerator, cement kiln, injection well, container, drum, salt dome waste containment cavern, or any other structure vessel, appurtenance, or other improvement on land used to manage industrial solid waste.

f. The permittee shall keep management records for all sludge (or other waste) removed from any wastewater treatment process. These records shall fulfill all applicable requirements of 30 TAC § 335 and must include the following, as it pertains to wastewater treatment and discharge:

   i. Volume of waste and date(s) generated from treatment process;
   ii. Volume of waste disposed of on-site or shipped off-site;
   iii. Date(s) of disposal;
   iv. Identity of hauler or transporter;
   v. Location of disposal site; and
   vi. Method of final disposal.

   The above records shall be maintained on a monthly basis. The records shall be retained at the facility site, or shall be readily available for review by authorized representatives of the TCEQ for at least five years.

12. For industrial facilities to which the requirements of 30 TAC § 335 do not apply, sludge and solid wastes, including tank cleaning and contaminated solids for disposal, shall be disposed of in accordance with THSC § 361.

TCEQ Revision 08/2008

**SLUDGE PROVISIONS**

The permittee is authorized to dispose of sludge only at a Texas Commission on Environmental Quality (TCEQ) authorized land application site, co-disposal landfill, wastewater treatment facility, or facility that further processes sludge. **The disposal of sludge by land application on property owned, leased or under the direct control of the permittee is a violation of the permit unless the site is authorized with the TCEQ. This provision does not authorize Distribution and Marketing of Class A or Class AB Sewage Sludge. This provision does not authorize the permittee to land apply sludge on property owned, leased or under the direct control of the permittee.**

**SECTION I.        REQUIREMENTS APPLYING TO ALL SEWAGE SLUDGE LAND APPLICATION**

**A. General Requirements**

1. The permittee shall handle and dispose of sewage sludge in accordance with 30 TAC § 312 and all other applicable state and federal regulations in a manner that protects public health and the environment from any reasonably anticipated adverse effects due to any toxic pollutants that may be present in the sludge.

2. In all cases, if the person (permit holder) who prepares the sewage sludge supplies the sewage sludge to another person for land application use or to the owner or lease holder of the land, the permit holder shall provide necessary information to the parties who receive the sludge to assure compliance with these regulations.

**B. Testing Requirements**

1. Sewage sludge shall be tested once during the term of this permit in accordance with the method specified in both 40 CFR Part 261, Appendix II and 40 CFR Part 268, Appendix I [Toxicity Characteristic Leaching Procedure (TCLP)] or other method that receives the prior approval of the TCEQ for the contaminants listed in 40 CFR Part 261.24, Table 1. Sewage sludge failing this test shall be managed according to RCRA standards for generators of hazardous waste, and the waste's disposition must be in accordance with all applicable requirements for hazardous waste processing, storage, or disposal. Following failure of any TCLP test, the management or disposal of sewage sludge at a facility other than an authorized hazardous waste processing, storage, or disposal facility shall be prohibited until such time as the permittee can demonstrate the sewage sludge no longer exhibits the hazardous waste toxicity characteristics (as demonstrated by the results of the TCLP tests). A written report shall be provided to both the TCEQ Registration and Reporting Section (MC 129) of the Permitting and Registration Support Division and the Regional Director (MC Region 11) within seven (7) days after failing the TCLP Test.

The report shall contain test results, certification that unauthorized waste management has stopped, and a summary of alternative disposal plans that comply with RCRA standards for the management of hazardous waste. The report shall be addressed to: Director, Permitting and Registration Support Division (MC 129), Texas Commission on Environmental Quality, P.O. Box 13087, Austin, Texas 78711-3087. In addition, the permittee shall prepare an annual report on the results of all sludge toxicity testing. This annual report shall be submitted to the TCEQ Regional Office (MC Region 11) and the Compliance Monitoring Team (MC 224) of the Enforcement Division by September 30th of each year. The permittee must submit this annual report using the online electronic reporting system available through the TCEQ website unless the permittee requests and obtains an electronic reporting waiver.

2. Sewage sludge shall not be applied to the land if the concentration of the pollutants exceeds the pollutant concentration criteria in Table 1. The frequency of testing for pollutants in Table 1 is found in Section I.C. of this permit.

TABLE 1

| Pollutant | Ceiling Concentration (Milligrams per kilogram)* |
|---|---|
| Arsenic | 75 |
| Cadmium | 85 |
| Chromium | 3000 |
| Copper | 4300 |
| Lead | 840 |
| Mercury | 57 |
| Molybdenum | 75 |
| Nickel | 420 |
| PCBs | 49 |
| Selenium | 100 |
| Zinc | 7500 |

* Dry weight basis

3. Pathogen Control

All sewage sludge that is applied to agricultural land, forest, a public contact site, or a reclamation site must be treated by one of the following methods to ensure that the sludge meets either the Class A, Class AB or Class B pathogen requirements.

a. For sewage sludge to be classified as Class A with respect to pathogens, the density of fecal coliform in the sewage sludge must be less than 1,000 most probable number (MPN) per gram of total solids (dry weight basis), or the density of Salmonella sp. bacteria in the sewage sludge must be less than three MPN per four grams of total solids (dry weight basis) at the time the sewage sludge is used or disposed. In addition, one of the alternatives listed below must be met:

Alternative 1 - The temperature of the sewage sludge that is used or disposed shall be maintained at or above a specific value for a period of time. See 30 TAC § 312.82(a)(2)(A) for specific information;

Alternative 5 (PFRP) - Sewage sludge that is used or disposed of must be treated in one of the Processes to Further Reduce Pathogens (PFRP) described in 40 CFR Part 503, Appendix B. PFRP include composting, heat drying, heat treatment, and thermophilic aerobic digestion; or

Alternative 6 (PFRP Equivalent) - Sewage sludge that is used or disposed of must be treated in a process that has been approved by the U. S. Environmental Protection Agency as being equivalent to those in Alternative 5.

b.  For sewage sludge to be classified as Class AB with respect to pathogens, the density of fecal coliform in the sewage sludge must be less than 1,000 MPN per gram of total solids (dry weight basis), or the density of *Salmonella* sp. bacteria in the sewage sludge be less than three MPN per four grams of total solids (dry weight basis) at the time the sewage sludge is used or disposed. In addition, one of the alternatives listed below must be met:

Alternative 2 - The pH of the sewage sludge that is used or disposed shall be raised to above 12 std. units and shall remain above 12 std. units for 72 hours.

The temperature of the sewage sludge shall be above 52° Celsius for 12 hours or longer during the period that the pH of the sewage sludge is above 12 std. units.

At the end of the 72-hour period during which the pH of the sewage sludge is above 12 std. units, the sewage sludge shall be air dried to achieve a percent solids in the sewage sludge greater than 50%; or

Alternative 3 - The sewage sludge shall be analyzed for enteric viruses prior to pathogen treatment. The limit for enteric viruses is less than one Plaque-forming Unit per four grams of total solids (dry weight basis) either before or following pathogen treatment. See 30 TAC § 312.82(a)(2)(C)(i-iii) for specific information. The sewage sludge shall be analyzed for viable helminth ova prior to pathogen treatment. The limit for viable helminth ova is less than one per four grams of total solids (dry weight basis) either before or following pathogen treatment. See 30 TAC § 312.82(a)(2)(C)(iv-vi) for specific information; or

Alternative 4 - The density of enteric viruses in the sewage sludge shall be less than one Plaque-forming Unit per four grams of total solids (dry weight basis) at the time the sewage sludge is used or disposed. The density of viable helminth ova in the sewage sludge shall be less than one per four grams of total solids (dry weight basis) at the time the sewage sludge is used or disposed.

c.  Sewage sludge that meets the requirements of Class AB sewage sludge may be classified a Class A sewage sludge if a variance request is submitted in writing that is supported by substantial documentation demonstrating equivalent methods for reducing odors and written approval is granted by the executive director. The executive director may deny the variance request or revoke that approved variance if it is determined that the variance may potentially endanger human health or the environment, or create nuisance odor conditions.

d.  Three alternatives are available to demonstrate compliance with Class B criteria for sewage sludge.

Alternative 1

i.   A minimum of seven random samples of the sewage sludge shall be collected
     within 48 hours of the time the sewage sludge is used or disposed of during each
     monitoring episode for the sewage sludge.

ii.  The geometric mean of the density of fecal coliform in the samples collected shall
     be less than either 2,000,000 MPN per gram of total solids (dry weight basis) or
     2,000,000 Colony Forming Units per gram of total solids (dry weight basis).

Alternative 2 - Sewage sludge that is used or disposed of shall be treated in one of the
Processes to Significantly Reduce Pathogens (PSRP) described in 40 CFR Part 503,
Appendix B, so long as all of the following requirements are met by the generator of
the sewage sludge.

i.   Prior to use or disposal, all the sewage sludge must have been generated from a
     single location, except as provided in paragraph v. below;

ii.  An independent Texas Licensed Professional Engineer must make a certification
     to the generator of a sewage sludge that the wastewater treatment facility
     generating the sewage sludge is designed to achieve one of the PSRP at the
     permitted design loading of the facility. The certification need only be repeated if
     the design loading of the facility is increased. The certification shall include a
     statement indicating the design meets all the applicable standards specified in
     Appendix B of 40 CFR Part 503;

iii. Prior to any off-site transportation or on-site use or disposal of any sewage
     sludge generated at a wastewater treatment facility, the chief certified operator of
     the wastewater treatment facility or other responsible official who manages the
     processes to significantly reduce pathogens at the wastewater treatment facility
     for the permittee, shall certify that the sewage sludge underwent at least the
     minimum operational requirements necessary in order to meet one of the PSRP.
     The acceptable processes and the minimum operational and record keeping
     requirements shall be in accordance with established U.S. Environmental
     Protection Agency final guidance;

iv.  All certification records and operational records describing how the requirements
     of this paragraph were met shall be kept by the generator for a minimum of three
     years and be available for inspection by commission staff for review; and

v.   If the sewage sludge is generated from a mixture of sources, resulting from a
     person who prepares sewage sludge from more than one wastewater treatment
     facility, the resulting derived product shall meet one of the PSRP, and shall meet
     the certification, operation, and record keeping requirements of this paragraph.

Alternative 3 - Sewage sludge shall be treated in an equivalent process that has been
approved by the U.S. Environmental Protection Agency, so long as all of the
following requirements are met by the generator of the sewage sludge.

i.   Prior to use or disposal, all the sewage sludge must have been generated from a
     single location, except as provided in paragraph v. below;

ii. Prior to any off-site transportation or on-site use or disposal of any sewage sludge generated at a wastewater treatment facility, the chief certified operator of the wastewater treatment facility or other responsible official who manages the processes to significantly reduce pathogens at the wastewater treatment facility for the permittee, shall certify that the sewage sludge underwent at least the minimum operational requirements necessary in order to meet one of the PSRP. The acceptable processes and the minimum operational and record keeping requirements shall be in accordance with established U.S. Environmental Protection Agency final guidance;

iii. All certification records and operational records describing how the requirements of this paragraph were met shall be kept by the generator for a minimum of three years and be available for inspection by commission staff for review;

iv. The Executive Director will accept from the U.S. Environmental Protection Agency a finding of equivalency to the defined PSRP; and

v. If the sewage sludge is generated from a mixture of sources resulting from a person who prepares sewage sludge from more than one wastewater treatment facility, the resulting derived product shall meet one of the Processes to Significantly Reduce Pathogens, and shall meet the certification, operation, and record keeping requirements of this paragraph.

In addition to the Alternatives 1 – 3, the following site restrictions must be met if Class B sludge is land applied:

i. Food crops with harvested parts that touch the sewage sludge/soil mixture and are totally above the land surface shall not be harvested for 14 months after application of sewage sludge.

ii. Food crops with harvested parts below the surface of the land shall not be harvested for 20 months after application of sewage sludge when the sewage sludge remains on the land surface for 4 months or longer prior to incorporation into the soil.

iii. Food crops with harvested parts below the surface of the land shall not be harvested for 38 months after application of sewage sludge when the sewage sludge remains on the land surface for less than 4 months prior to incorporation into the soil.

iv. Food crops, feed crops, and fiber crops shall not be harvested for 30 days after application of sewage sludge.

v. Animals shall not be allowed to graze on the land for 30 days after application of sewage sludge.

vi. Turf grown on land where sewage sludge is applied shall not be harvested for 1 year after application of the sewage sludge when the harvested turf is placed on either land with a high potential for public exposure or a lawn.

vii. Public access to land with a high potential for public exposure shall be restricted for 1 year after application of sewage sludge.

viii. Public access to land with a low potential for public exposure shall be restricted for 30 days after application of sewage sludge.

ix. Land application of sludge shall be in accordance with the buffer zone requirements found in 30 TAC § 312.44.

4. Vector Attraction Reduction Requirements

All bulk sewage sludge that is applied to agricultural land, forest, a public contact site, or a reclamation site shall be treated by one of the following Alternatives 1 through 10 for vector attraction reduction.

Alternative 1 - The mass of volatile solids in the sewage sludge shall be reduced by a minimum of 38%.

Alternative 2 - If Alternative 1 cannot be met for an anaerobically digested sludge, demonstration can be made by digesting a portion of the previously digested sludge anaerobically in the laboratory in a bench-scale unit for 40 additional days at a temperature between 30° and 37° Celsius. Volatile solids must be reduced by less than 17% to demonstrate compliance.

Alternative 3 - If Alternative 1 cannot be met for an aerobically digested sludge, demonstration can be made by digesting a portion of the previously digested sludge with percent solids of two percent or less aerobically in the laboratory in a bench-scale unit for 30 additional days at 20° Celsius. Volatile solids must be reduced by less than 15% to demonstrate compliance.

Alternative 4 - The specific oxygen uptake rate (SOUR) for sewage sludge treated in an aerobic process shall be equal to or less than 1.5 milligrams of oxygen per hour per gram of total solids (dry weight basis) at a temperature of 20° Celsius.

Alternative 5 - Sewage sludge shall be treated in an aerobic process for 14 days or longer. During that time, the temperature of the sewage sludge shall be higher than 40° Celsius and the average temperature of the sewage sludge shall be higher than 45° Celsius.

Alternative 6 - The pH of sewage sludge shall be raised to 12 or higher by alkali addition and, without the addition of more alkali shall remain at 12 or higher for two hours and then remain at a pH of 11.5 or higher for an additional 22 hours at the time the sewage sludge is prepared for sale or given away in a bag or other container.

Alternative 7 - The percent solids of sewage sludge that does not contain unstabilized solids generated in a primary wastewater treatment process shall be equal to or greater than 75% based on the moisture content and total solids prior to mixing with other materials. Unstabilized solids are defined as organic materials in sewage sludge that have not been treated in either an aerobic or anaerobic treatment process.

Alternative 8 -    The percent solids of sewage sludge that contains unstabilized solids generated in a primary wastewater treatment process shall be equal to or greater than 90% based on the moisture content and total solids prior to mixing with other materials at the time the sludge is used. Unstabilized solids are defined as organic materials in sewage sludge that have not been treated in either an aerobic or anaerobic treatment process.

Alternative 9 -    i.   Sewage sludge shall be injected below the surface of the land.

 ii.  No significant amount of the sewage sludge shall be present on the land surface within one hour after the sewage sludge is injected.

 iii. When sewage sludge that is injected below the surface of the land is Class A or Class AB with respect to pathogens, the sewage sludge shall be injected below the land surface within eight hours after being discharged from the pathogen treatment process.

Alternative 10-    i.   Sewage sludge applied to the land surface or placed on a surface disposal site shall be incorporated into the soil within six hours after application to or placement on the land.

 ii.  When sewage sludge that is incorporated into the soil is Class A or Class AB with respect to pathogens, the sewage sludge shall be applied to or placed on the land within eight hours after being discharged from the pathogen treatment process.

## C. Monitoring Requirements

Toxicity Characteristic Leaching Procedure      - once during the term of this permit
(TCLP) Test
PCBs                                            - once during the term of this permit

All metal constituents and fecal coliform or *Salmonella* sp. bacteria shall be monitored at the appropriate frequency shown below, pursuant to 30 TAC § 312.46(a)(1):

| Amount of sewage sludge (*) metric tons per 365-day period | Monitoring Frequency |
|---|---|
| 0 to less than 290 | Once/Year |
| 290 to less than 1,500 | Once/Quarter |
| 1,500 to less than 15,000 | Once/Two Months |
| 15,000 or greater | Once/Month |

(*) *The amount of bulk sewage sludge applied to the land (dry wt. basis).*

Representative samples of sewage sludge shall be collected and analyzed in accordance with the methods referenced in 30 TAC § 312.7

Identify each of the analytic methods used by the facility to analyze enteric viruses, fecal coliforms, helminth ova, *Salmonella* sp., and other regulated parameters.

Identify in the following categories (as applicable) the sewage sludge treatment process or processes at the facility: preliminary operations (e.g., sludge grinding and degritting), thickening (concentration), stabilization, anaerobic digestion, aerobic digestion, composting, conditioning, disinfection (e.g., beta ray irradiation, gamma ray irradiation, pasteurization), dewatering (e.g., centrifugation, sludge drying beds, sludge lagoons), heat drying, thermal reduction, and methane or biogas capture and recovery.

Identify the nature of material generated by the facility (such as a biosolid for beneficial use or land-farming, or sewage sludge for disposal at a monofill) and whether the material is ultimately conveyed off-site in bulk or in bags.

**SECTION II.    REQUIREMENTS SPECIFIC TO BULK SEWAGE SLUDGE FOR APPLICATION TO THE LAND MEETING CLASS A, CLASS AB or B PATHOGEN REDUCTION AND THE CUMULATIVE LOADING RATES IN TABLE 2, OR CLASS B PATHOGEN REDUCTION AND THE POLLUTANT CONCENTRATIONS IN TABLE 3**

For those permittees meeting Class A, Class AB or B pathogen reduction requirements and that meet the cumulative loading rates in Table 2 below, or the Class B pathogen reduction requirements and contain concentrations of pollutants below listed in Table 3, the following conditions apply:

**A. Pollutant Limits**

Table 2

| Pollutant | Cumulative Pollutant Loading Rate (pounds per acre)* |
|---|---|
| Arsenic | 36 |
| Cadmium | 35 |
| Chromium | 2677 |
| Copper | 1339 |
| Lead | 268 |
| Mercury | 15 |
| Molybdenum | Report Only |
| Nickel | 375 |
| Selenium | 89 |
| Zinc | 2500 |

Table 3

| Pollutant | Monthly Average Concentration (milligrams per kilogram)* |
|---|---|
| Arsenic | 41 |
| Cadmium | 39 |
| Chromium | 1200 |
| Copper | 1500 |
| Lead | 300 |
| Mercury | 17 |
| Molybdenum | Report Only |
| Nickel | 420 |
| Selenium | 36 |
| Zinc | 2800 |

*Dry weight basis

**B. Pathogen Control**

All bulk sewage sludge that is applied to agricultural land, forest, a public contact site, a reclamation site, shall be treated by either Class A, Class AB or Class B pathogen reduction requirements as defined above in Section I.B.3.

## C. Management Practices

1. Bulk sewage sludge shall not be applied to agricultural land, forest, a public contact site, or a reclamation site that is flooded, frozen, or snow-covered so that the bulk sewage sludge enters a wetland or other waters in the State.

2. Bulk sewage sludge not meeting Class A requirements shall be land applied in a manner which complies with Applicability in accordance with 30 TAC §312.41 and the Management Requirements in accordance with 30 TAC § 312.44.

3. Bulk sewage sludge shall be applied at or below the agronomic rate of the cover crop.

4. An information sheet shall be provided to the person who receives bulk sewage sludge sold or given away. The information sheet shall contain the following information:

   a. The name and address of the person who prepared the sewage sludge that is sold or given away in a bag or other container for application to the land.

   b. A statement that application of the sewage sludge to the land is prohibited except in accordance with the instruction on the label or information sheet.

   c. The annual whole sludge application rate for the sewage sludge application rate for the sewage sludge that does not cause any of the cumulative pollutant loading rates in Table 2 above to be exceeded, unless the pollutant concentrations in Table 3 found in Section II above are met.

## D. Notification Requirements

1. If bulk sewage sludge is applied to land in a State other than Texas, written notice shall be provided prior to the initial land application to the permitting authority for the State in which the bulk sewage sludge is proposed to be applied. The notice shall include:

   a. The location, by street address, and specific latitude and longitude, of each land application site.

   b. The approximate time period bulk sewage sludge will be applied to the site.

   c. The name, address, telephone number, and National Pollutant Discharge Elimination System permit number (if appropriate) for the person who will apply the bulk sewage sludge.

2. The permittee shall give 180 days prior notice to the Executive Director in care of the Wastewater Permitting Section (MC 148) of the Water Quality Division of any change planned in the sewage sludge disposal practice.

## E. Record Keeping Requirements

The sludge documents will be retained at the facility site and/or shall be readily available for review by a TCEQ representative. The person who prepares bulk sewage sludge or a sewage sludge material shall develop the following information and shall retain the information at

the facility site and/or shall be readily available for review by a TCEQ representative for a period of five years. If the permittee supplies the sludge to another person who land applies the sludge, the permittee shall notify the land applier of the requirements for record keeping found in 30 TAC § 312.47 for persons who land apply.

1. The concentration (mg/kg) in the sludge of each pollutant listed in Table 3 above and the applicable pollutant concentration criteria (mg/kg), or the applicable cumulative pollutant loading rate and the applicable cumulative pollutant loading rate limit (lbs/ac) listed in Table 2 above.

2. A description of how the pathogen reduction requirements are met (including site restrictions for Class AB and Class B sludge, if applicable).

3. A description of how the vector attraction reduction requirements are met.

4. A description of how the management practices listed above in Section II.C are being met.

5. The following certification statement:

   "I certify, under penalty of law, that the applicable pathogen requirements in 30 TAC § 312.82(a) or (b) and the vector attraction reduction requirements in 30 TAC § 312.83(b) have been met for each site on which bulk sewage sludge is applied. This determination has been made under my direction and supervision in accordance with the system designed to ensure that qualified personnel properly gather and evaluate the information used to determine that the management practices have been met. I am aware that there are significant penalties for false certification including fine and imprisonment."

6. The recommended agronomic loading rate from the references listed in Section II.C.3. above, as well as the actual agronomic loading rate shall be retained. The person who applies bulk sewage sludge or a sewage sludge material shall develop the following information and shall retain the information at the facility site and/or shall be readily available for review by a TCEQ representative indefinitely. If the permittee supplies the sludge to another person who land applies the sludge, the permittee shall notify the land applier of the requirements for record keeping found in 30 TAC § 312.47 for persons who land apply:

   a. A certification statement that all applicable requirements (specifically listed) have been met, and that the permittee understands that there are significant penalties for false certification including fine and imprisonment. See 30 TAC § 312.47(a)(4)(A)(ii) or 30 TAC § 312.47(a)(5)(A)(ii), as applicable, and to the permittee's specific sludge treatment activities.

   b. The location, by street address, and specific latitude and longitude, of each site on which sludge is applied.

   c. The number of acres in each site on which bulk sludge is applied.

   d. The date and time sludge is applied to each site.

e.  The cumulative amount of each pollutant in pounds/acre listed in Table 2 applied to each site.

f.  The total amount of sludge applied to each site in dry tons.

The above records shall be maintained on-site on a monthly basis and shall be made available to the Texas Commission on Environmental Quality upon request.

## F. Reporting Requirements

The permittee shall report annually to the TCEQ Regional Office (MC Region 11) and Compliance Monitoring Team (MC 224) of the Enforcement Division, by September 30th of each year the following information. The permittee must submit this annual report using the online electronic reporting system available through the TCEQ website unless the permittee requests and obtains an electronic reporting waiver.

1.  Identify in the following categories (as applicable) the sewage sludge treatment process or processes at the facility: preliminary operations (e.g., sludge grinding and degritting), thickening (concentration), stabilization, anaerobic digestion, aerobic digestion, composting, conditioning, disinfection (e.g., beta ray irradiation, gamma ray irradiation, pasteurization), dewatering (e.g., centrifugation, sludge drying beds, sludge lagoons), heat drying, thermal reduction, and methane or biogas capture and recovery.

2.  Identify the nature of material generated by the facility (such as a biosolid for beneficial use or land-farming, or sewage sludge for disposal at a monofill) and whether the material is ultimately conveyed off-site in bulk or in bags.

3.  Results of tests performed for pollutants found in either Table 2 or 3 as appropriate for the permittee's land application practices.

4.  The frequency of monitoring listed in Section I.C. that applies to the permittee.

5.  Toxicity Characteristic Leaching Procedure (TCLP) results.

6.  PCB concentration in sludge in mg/kg.

7.  Identity of hauler(s) and TCEQ transporter number.

8.  Date(s) of transport.

9.  Texas Commission on Environmental Quality registration number, if applicable.

10. Amount of sludge disposal dry weight (lbs/acre) at each disposal site.

11. The concentration (mg/kg) in the sludge of each pollutant listed in Table 1 (defined as a monthly average) as well as the applicable pollutant concentration criteria (mg/kg) listed in Table 3 above, or the applicable pollutant loading rate limit (lbs/acre) listed in Table 2 above if it exceeds 90% of the limit.

12. Level of pathogen reduction achieved (Class A, Class AB or Class B).

13. Alternative used as listed in Section I.B.3.(a. or b.). Alternatives describe how the pathogen reduction requirements are met. If Class B sludge, include information on how site restrictions were met.

14. Identify each of the analytic methods used by the facility to analyze enteric viruses, fecal coliforms, helminth ova, *Salmonella* sp., and other regulated parameters.

15. Vector attraction reduction alternative used as listed in Section I.B.4.

16. Amount of sludge transported in dry tons/year.

17. The certification statement listed in either 30 TAC § 312.47(a)(4)(A)(ii) or 30 TAC § 312.47(a)(5)(A)(ii) as applicable to the permittee's sludge treatment activities, shall be attached to the annual reporting form.

18. When the amount of any pollutant applied to the land exceeds 90% of the cumulative pollutant loading rate for that pollutant, as described in Table 2, the permittee shall report the following information as an attachment to the annual reporting form.

    a. The location, by street address, and specific latitude and longitude.

    b. The number of acres in each site on which bulk sewage sludge is applied.

    c. The date and time bulk sewage sludge is applied to each site.

    d. The cumulative amount of each pollutant (i.e., pounds/acre) listed in Table 2 in the bulk sewage sludge applied to each site.

    e. The amount of sewage sludge (i.e., dry tons) applied to each site.

    The above records shall be maintained on a monthly basis and shall be made available to the Texas Commission on Environmental Quality upon request.

**SECTION III.        REQUIREMENTS APPLYING TO ALL SEWAGE SLUDGE
                     DISPOSED IN A MUNICIPAL SOLID WASTE LANDFILL**

A.  The permittee shall handle and dispose of sewage sludge in accordance with 30 TAC § 330 and all other applicable state and federal regulations to protect public health and the environment from any reasonably anticipated adverse effects due to any toxic pollutants that may be present. The permittee shall ensure that the sewage sludge meets the requirements in 30 TAC § 330 concerning the quality of the sludge disposed in a municipal solid waste landfill.

B.  If the permittee generates sewage sludge and supplies that sewage sludge to the owner or operator of a municipal solid waste landfill (MSWLF) for disposal, the permittee shall provide to the owner or operator of the MSWLF appropriate information needed to be in compliance with the provisions of this permit.

C.  The permittee shall give 180 days prior notice to the Executive Director in care of the Wastewater Permitting Section (MC 148) of the Water Quality Division of any change planned in the sewage sludge disposal practice.

D.  Sewage sludge shall be tested once during the term of this permit in accordance with the method specified in both 40 CFR Part 261, Appendix II and 40 CFR Part 268, Appendix I (Toxicity Characteristic Leaching Procedure) or other method, which receives the prior approval of the TCEQ for contaminants listed in Table 1 of 40 CFR § 261.24. Sewage sludge failing this test shall be managed according to RCRA standards for generators of hazardous waste, and the waste's disposition must be in accordance with all applicable requirements for hazardous waste processing, storage, or disposal.

Following failure of any TCLP test, the management or disposal of sewage sludge at a facility other than an authorized hazardous waste processing, storage, or disposal facility shall be prohibited until such time as the permittee can demonstrate the sewage sludge no longer exhibits the hazardous waste toxicity characteristics (as demonstrated by the results of the TCLP tests). A written report shall be provided to both the TCEQ Registration and Reporting Section (MC 129) of the Permitting and Registration Support Division and the Regional Director (MC Region 11) of the appropriate TCEQ field office within 7 days after failing the TCLP Test.

The report shall contain test results, certification that unauthorized waste management has stopped, and a summary of alternative disposal plans that comply with RCRA standards for the management of hazardous waste. The report shall be addressed to: Director, Permitting and Registration Support Division (MC 129), Texas Commission on Environmental Quality, P. O. Box 13087, Austin, Texas 78711-3087. In addition, the permittee shall prepare an annual report on the results of all sludge toxicity testing. This annual report shall be submitted to the TCEQ Regional Office (MC Region 11) and the Compliance Monitoring Team (MC 224) of the Enforcement Division by September 30 of each year.

E.  Sewage sludge shall be tested as needed, in accordance with the requirements of 30 TAC Chapter 330.

F.  Record Keeping Requirements

The permittee shall develop the following information and shall retain the information for five years.

1. The description (including procedures followed and the results) of all liquid Paint Filter Tests performed.

2. The description (including procedures followed and results) of all TCLP tests performed.

The above records shall be maintained on-site on a monthly basis and shall be made available to the Texas Commission on Environmental Quality upon request.

G. Reporting Requirements

The permittee shall report annually to the TCEQ Regional Office (MC Region 11) and Compliance Monitoring Team (MC 224) of the Enforcement Division by September 30th of each year the following information. The permittee must submit this annual report using the online electronic reporting system available through the TCEQ website unless the permittee requests and obtains an electronic reporting waiver.

1. Identify in the following categories (as applicable) the sewage sludge treatment process or processes at the facility: preliminary operations (e.g., sludge grinding and degritting), thickening (concentration), stabilization, anaerobic digestion, aerobic digestion, composting, conditioning, disinfection (e.g., beta ray irradiation, gamma ray irradiation, pasteurization), dewatering (e.g., centrifugation, sludge drying beds, sludge lagoons), heat drying, thermal reduction, and methane or biogas capture and recovery.

2. Toxicity Characteristic Leaching Procedure (TCLP) results.

3. Annual sludge production in dry tons/year.

4. Amount of sludge disposed in a municipal solid waste landfill in dry tons/year.

5. Amount of sludge transported interstate in dry tons/year.

6. A certification that the sewage sludge meets the requirements of 30 TAC § 330 concerning the quality of the sludge disposed in a municipal solid waste landfill.

7. Identity of hauler(s) and transporter registration number.

8. Owner of disposal site(s).

9. Location of disposal site(s).

10. Date(s) of disposal.

The above records shall be maintained on-site on a monthly basis and shall be made available to the Texas Commission on Environmental Quality upon request.

**SECTION IV.    REQUIREMENTS APPLYING TO SLUDGE TRANSPORTED TO ANOTHER FACILITY FOR FURTHER PROCESSING**

These provisions apply to sludge that is transported to another wastewater treatment facility or facility that further processes sludge. These provisions are intended to allow transport of sludge to facilities that have been authorized to accept sludge. These provisions do not limit the ability of the receiving facility to determine whether to accept the sludge, nor do they limit the ability of the receiving facility to request additional testing or documentation.

## A. General Requirements

1. The permittee shall handle and dispose of sewage sludge in accordance with 30 TAC Chapter 312 and all other applicable state and federal regulations in a manner that protects public health and the environment from any reasonably anticipated adverse effects due to any toxic pollutants that may be present in the sludge.

2. Sludge may only be transported using a registered transporter or using an approved pipeline.

## B. Record Keeping Requirements

1. For sludge transported by an approved pipeline, the permittee must maintain records of the following:

   a.   the amount of sludge transported;

   b.   the date of transport;

   c.   the name and TCEQ permit number of the receiving facility or facilities;

   d.   the location of the receiving facility or facilities;

   e.   the name and TCEQ permit number of the facility that generated the waste; and

   f.   copy of the written agreement between the permittee and the receiving facility to accept sludge.

2. For sludge transported by a registered transporter, the permittee must maintain records of the completed trip tickets in accordance with 30 TAC § 312.145(a)(1)-(7) and amount of sludge transported.

3. The above records shall be maintained on-site on a monthly basis and shall be made available to the TCEQ upon request. These records shall be retained for at least five years.

## C. Reporting Requirements

The permittee shall report the following information annually to the TCEQ Regional Office (MC Region 11) and Compliance Monitoring Team (MC 224) of the Enforcement Division, by September 30th of each year. The permittee must submit this annual report using the online electronic reporting system available through the TCEQ website unless the permittee requests and obtains an electronic reporting waiver.

1. Identify in the following categories (as applicable) the sewage sludge treatment process or processes at the facility: preliminary operations (e.g., sludge grinding and degritting), thickening (concentration), stabilization, anaerobic digestion, aerobic digestion, composting, conditioning, disinfection (e.g., beta ray irradiation, gamma ray irradiation, pasteurization), dewatering (e.g., centrifugation, sludge drying beds, sludge lagoons), heat drying, thermal reduction, and methane or biogas capture and recovery.

2. the annual sludge production;

3. the amount of sludge transported;

4. the owner of each receiving facility;

5. the location of each receiving facility; and

6. the date(s) of disposal at each receiving facility.

TCEQ Revision 10/2019

**OTHER REQUIREMENTS**

1. The permittee shall employ or contract with one or more licensed wastewater treatment facility operators or wastewater system operations companies holding a valid license or registration according to the requirements of 30 TAC Chapter 30, Occupational Licenses and Registrations, and in particular 30 TAC Chapter 30, Subchapter J, Wastewater Operators and Operations Companies.

   This Category C facility must be operated by a chief operator or an operator holding a Class C license or higher. The facility must be operated a minimum of five days per week by the licensed chief operator or an operator holding the required level of license or higher. The licensed chief operator or operator holding the required level of license or higher must be available by telephone or pager seven days per week. Where shift operation of the wastewater treatment facility is necessary, each shift that does not have the on-site supervision of the licensed chief operator must be supervised by an operator in charge who is licensed not less than one level below the category for the facility.

2. The facility is not located in the Coastal Management Program boundary.

3. The permittee shall comply with the requirements of 30 TAC § 309.13(a) through (d). In addition, by ownership of the required buffer zone area, the permittee shall comply with the requirements of 30 TAC § 309.13(e).

4. The permittee shall provide facilities for the protection of its wastewater treatment facility from a 100-year flood.

5. In accordance with 30 TAC § 319.9, a permittee that has at least twelve months of uninterrupted compliance with its bacteria limit may notify the commission in writing of its compliance and request a less frequent measurement schedule. To request a less frequent schedule, the permittee shall submit a written request to the TCEQ Wastewater Permitting Section (MC 148) for each phase that includes a different monitoring frequency. The request must contain all of the reported bacteria values (Daily Avg. and Daily Max/Single Grab) for the twelve consecutive months immediately prior to the request. If the Executive Director finds that a less frequent measurement schedule is protective of human health and the environment, the permittee may be given a less frequent measurement schedule. For this permit, 1/month may be reduced to 1/quarter. **A violation of any bacteria limit by a facility that has been granted a less frequent measurement schedule will require the permittee to return to the standard frequency schedule and submit written notice to the TCEQ Wastewater Permitting Section (MC 148).** The permittee may not apply for another reduction in measurement frequency for at least 24 months from the date of the last violation. The Executive Director may establish a more frequent measurement schedule if necessary to protect human health or the environment.

6. Prior to construction of the treatment facility, the permittee shall submit to the TCEQ Wastewater Permitting Section (MC 148) a summary transmittal letter in accordance with the requirements in 30 TAC § 217.6(d). If requested by the Wastewater Permitting Section, the permittee shall submit plans and specifications and a final engineering design report which comply with 30 TAC Chapter 217, Design Criteria for Domestic Wastewater Systems. The permittee shall clearly show how the treatment system will meet the permitted effluent limitations required on Page 2 of this permit. A copy of the summary transmittal letter shall be available at the plant site for inspection by authorized representatives of the TCEQ.

7. Reporting requirements according to 30 TAC §§ 319.1-319.11 and any additional effluent reporting requirements contained in this permit are suspended from the effective date of the permit until plant startup or discharge from the facility described by this permit, whichever occurs first. The permittee shall provide written notice to the TCEQ Regional Office (MC Region 11) and the Applications Review

and Processing Team (MC 148) of the Water Quality Division at least forty-five (45) days prior to plant startup or anticipated discharge, whichever occurs first, on Notification of Completion Form 20007.

# APPENDIX 3

FILED
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
2/23/2022 4:30 PM
STATE OFFICE OF
ADMINISTRATIVE HEARINGS
Jessie Harbin, CLERK

ACCEPTED
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
2/24/2022 8:14 AM
STATE OFFICE OF
ADMINISTRATIVE HEARINGS
Jessie Harbin, CLERK

# AIRW2017-7, LP
# Rockride Lane Water Resource Reclamation Facility

## TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

### APPLICATION FOR NEW

### TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT

### March 2020



PERKINS ENGINEERING CONSULTANTS, INC.

00001

**AIRW - EXH. 4**

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

# DOMESTIC WASTEWATER PERMIT APPLICATION CHECKLIST

**Complete and submit this checklist with the application.**

APPLICANT: **AIRW2017-7, LP**

PERMIT NUMBER: Click here to enter text

**Indicate if each of the following items is included in your application.**

| | Y | N | | Y | N |
|---|---|---|---|---|---|
| Administrative Report 1.0 | ☒ | ☐ | Original USGS Map | ☒ | ☐ |
| Administrative Report 1.1 | ☒ | ☐ | Affected Landowners Map | ☒ | ☐ |
| SPIF | ☒ | ☐ | Landowner Disk or Labels | ☒ | ☐ |
| Core Data Form | ☒ | ☐ | Buffer Zone Map | ☒ | ☐ |
| Technical Report 1.0 | ☒ | ☐ | Flow Diagram | ☒ | ☐ |
| Technical Report 1.1 | ☒ | ☐ | Site Drawing | ☒ | ☐ |
| Worksheet 2.0 | ☒ | ☐ | Original Photographs | ☒ | ☐ |
| Worksheet 2.1 | ☐ | ☒ | Design Calculations | ☒ | ☐ |
| Worksheet 3.0 | ☐ | ☒ | Solids Management Plan | ☒ | ☐ |
| Worksheet 3.1 | ☐ | ☒ | Water Balance | ☐ | ☒ |
| Worksheet 3.2 | ☐ | ☒ | | | |
| Worksheet 3.3 | ☐ | ☒ | | | |
| Worksheet 4.0 | ☐ | ☒ | | | |
| Worksheet 5.0 | ☐ | ☒ | | | |
| Worksheet 6.0 | ☐ | ☒ | | | |
| Worksheet 7.0 | ☐ | ☒ | | | |

For TCEQ Use Only

Segment Number _____County _____

Expiration Date _____Region _____

Permit Number _____



## TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

## APPLICATION FOR A DOMESTIC WASTEWATER PERMIT
## ADMINISTRATIVE REPORT 1.0

If you have questions about completing this form please contact the Applications Review and Processing Team at 512-239-4671.

## Section 1. Application Fees (Instructions Page 29)

**Indicate the amount submitted for the application fee (check only one).**

| Flow | New/Major Amendment | | Renewal | |
|---|---|---|---|---|
| <0.05 MGD | $350.00 | ☐ | $315.00 | ☐ |
| ≥0.05 but <0.10 MGD | $550.00 | ☐ | $515.00 | ☐ |
| ≥0.10 but <0.25 MGD | $850.00 | ☒ | $815.00 | ☐ |
| ≥0.25 but <0.50 MGD | $1,250.00 | ☐ | $1,215.00 | ☐ |
| ≥0.50 but <1.0 MGD | $1,650.00 | ☐ | $1,615.00 | ☐ |
| ≥1.0 MGD | $2,050.00 | ☐ | $2,015.00 | ☐ |

Minor Amendment (for any flow) $150.00 ☐

**Payment Information:**

| | |
|---|---|
| Mailed | Check/Money Order Number: **9976** |
| | Check/Money Order Amount: **$850** |
| | Name Printed on Check: **W^3 Owner, LP** |
| EPAY | Voucher Number: Click here to enter text. |
| Copy of Payment Voucher enclosed? | Yes ☐ |

## Section 2. Type of Application (Instructions Page 29)

| | | | |
|---|---|---|---|
| ☒ | New TPDES | ☐ | New TLAP |
| ☐ | Major Amendment _with_ Renewal | ☐ | Minor Amendment _with_ Renewal |
| ☐ | Major Amendment _without_ Renewal | ☐ | Minor Amendment _without_ Renewal |
| ☐ | Renewal without changes | ☐ | Minor Modification of permit |

For amendments or modifications, describe the proposed changes: Click here to enter text.

**For existing permits:**

Permit Number: WQ00 Click here to enter text.

EPA I.D. (TPDES only): TX Click here to enter text.

Expiration Date: Click here to enter text.

# Section 3. Facility Owner (Applicant) and Co-Applicant Information (Instructions Page 29)

**A.  The owner of the facility must apply for the permit.**

What is the Legal Name of the entity (applicant) applying for this permit?

**AIRW2017-7, LP**

*(The legal name must be spelled exactly as filed with the Texas Secretary of State, County, or in the legal documents forming the entity.)*

If the applicant is currently a customer with the TCEQ, what is the Customer Number (CN)? You may search for your CN on the TCEQ website at http://www15.tceq.texas.gov/crpub/

CN: **605607753**

What is the name and title of the person signing the application? The person must be an executive official meeting signatory requirements in *30 TAC § 305.44*.

Prefix (Mr., Ms., Miss): **Mr.**

First and Last Name: **Matthew Hiles**

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text.

Title: **Vice President**

**B.  Co-applicant information.** Complete this section only if another person or entity is required to apply as a co-permittee.

What is the Legal Name of the co-applicant applying for this permit?

**N/A**

*(The legal name must be spelled exactly as filed with the TX SOS, with the County, or in the legal documents forming the entity.)*

If the co-applicant is currently a customer with the TCEQ, what is the Customer Number (CN)? You may search for your CN on the TCEQ website at: http://www15.tceq.texas.gov/crpub/

CN: Click here to enter text.

What is the name and title of the person signing the application? The person must be an executive official meeting signatory requirements in *30 TAC § 305.44*.

Prefix (Mr., Ms., Miss): Click here to enter text.

First and Last Name: Click here to enter text.

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text.

Title: Click here to enter text.

Provide a brief description of the need for a co-permittee: Click here to enter text

C. **Core Data Form**

Complete the Core Data Form for each customer and include as an attachment. If the customer type selected on the Core Data Form is **Individual**, complete **Attachment 1** of Administrative Report 1.0.

Attachment: <u>A</u>

## Section 4. Application Contact Information (Instructions Page 30)

This is the person(s) TCEQ will contact if additional information is needed about this application. Provide a contact for administrative questions and technical questions.

A. Prefix (Mr., Ms., Miss): <u>Mr.</u>

First and Last Name: <u>Matthew Hiles</u>

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text

Title: <u>Vice President</u>

Organization Name: <u>AIRW2017-7, LP</u>

Mailing Address: <u>2505 N. State Highway 360, Ste 800</u>

City, State, Zip Code: <u>Grand Prairie, Texas, 75050</u>

Phone No.: <u>(972) 471-8700</u> Ext.: Click here to enter text Fax No.: Click here to enter text

E-mail Address: <u>matth@liveW3.com</u>

Check one or both: ☒ Administrative Contact ☒ Technical Contact

B. Prefix (Mr., Ms., Miss): <u>Ms.</u>

First and Last Name: <u>Janet Sims</u>

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text

Title: <u>Project Manager</u>

Organization Name: <u>Perkins Engineering Consultants, Inc.</u>

Mailing Address: <u>13740 N. Highway 183 #L6</u>

City, State, Zip Code: <u>Austin, Texas 78750</u>

Phone No.: <u>(512) 735-1001</u> Ext.: Click here to enter text Fax No.: Click here to enter text

E-mail Address: <u>jsims@perkinsconsultants.com</u>

Check one or both: ☒ Administrative Contact ☒ Technical Contact

## Section 5. Permit Contact Information (Instructions Page 30)

Provide two names of individuals that can be contacted throughout the permit term.

A. Prefix (Mr., Ms., Miss): <u>Mr.</u>

First and Last Name: **Matthew Hiles**

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text.

Title: **Vice President**

Organization Name: **AIRW2017-7, LP**

Mailing Address: **2505 N. State Highway 360, Ste 800**

City, State, Zip Code: **Grand Prairie, Texas 75050**

Phone No.: **(972) 471-8700** Ext.: Click here to enter text. Fax No.: Click here to enter text.

E-mail Address: **matth@liveW3.com**

**B.** Prefix (Mr., Ms., Miss): **Mr.**

First and Last Name: **Marcus Hiles**

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text.

Title: **CEO**

Organization Name: **AIRW2017-7, LP**

Mailing Address: **2505 N. State Highway 360, Ste 800**

City, State, Zip Code: **Grand Prairie, Texas 75050**

Phone No.: **(972) 471-8700** Ext.: Click here to enter text. Fax No.: Click here to enter text.

E-mail Address: **marcush@liveW3.com**

## Section 6. Billing Information (Instructions Page 30)

The permittee is responsible for paying the annual fee. The annual fee will be assessed to permits *in effect on September 1 of each year.* The TCEQ will send a bill to the address provided in this section. The permittee is responsible for terminating the permit when it is no longer needed (using form TCEQ-20029).

Prefix (Mr., Ms., Miss): **Mr.**

First and Last Name: **Matthew Hiles**

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text.

Title: **Vice President**

Organization Name: **AIRW2017-7, LP**

Mailing Address: **2505 N. State Highway 360, Ste 800**

City, State, Zip Code: **Grand Prairie, Texas 75050**

Phone No.: **(972) 471-8700** Ext.: Click here to enter text. Fax No.: Click here to enter text.

E-mail Address: **matth@liveW3.com**

## Section 7. DMR/MER Contact Information (Instructions Page 31)

Provide the name and complete mailing address of the person delegated to receive and submit Discharge Monitoring Reports (EPA 3320-1) or maintain Monthly Effluent Reports.

Prefix (Mr., Ms., Miss): **Mr.**

First and Last Name: **Abel Bautista**

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text

Title: **Wastewater Compliance Coordinator**

Organization Name: **Aqua Texas**

Mailing Address: **2211 Louetta Road**

City, State, Zip Code: **Spring, Texas 77388**

Phone No.: **(281) 651-0174** Ext.: **54119** Fax No.: Click here to enter text

E-mail Address: **ABautista@AquaAmerica.com**

DMR data is required to be submitted electronically. Create an account at: https://www.tceq.texas.gov/permitting/netdmr/netdmr.html.

# Section 8. Public Notice Information (Instructions Page 31)

A.  **Individual Publishing the Notices**

Prefix (Mr., Ms., Miss): **Ms.**

First and Last Name: **Janet Sims**

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text

Title: **Project Manager**

Organization Name: **Perkins Engineering Consultants, Inc.**

Mailing Address: **13740 N. Highway 183, #L6**

City, State, Zip Code: **Austin, Texas 78750**

Phone No.: **(512) 735-1001** Ext.: Click here to enter text Fax No.: Click here to enter text

E-mail Address: **jsims@perkinsconsultants.com**

B.  **Method for Receiving Notice of Receipt and Intent to Obtain a Water Quality Permit Package**

Indicate by a check mark the preferred method for receiving the first notice and instructions:

☒    E-mail Address

☐    Fax

☐    Regular Mail

C.  **Contact person to be listed in the Notices**

Prefix (Mr., Ms., Miss): **Mr.**

First and Last Name: **Matthew Hiles**

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text

Title: **Vice President**

Organization Name: **AIRW2017-7, LP**

Phone No.: **(972) 471-8700** Ext.: Click here to enter text

E-mail: **matth@liveW3.com**

## D. Public Viewing Information

*If the facility or outfall is located in more than one county, a public viewing place for each county must be provided.*

Public building name: **Georgetown Public Library**

Location within the building: **Reference desk**

Physical Address of Building: **402 West 8th Street**

City: **Georgetown**                    County: **Williamson**

Contact Name: **Librarian**

Phone No.: **(512) 930-3551** Ext.: Click here to enter text

## E. Bilingual Notice Requirements:

This information **is required** for **new, major amendment, and renewal applications**. It is not required for minor amendment or minor modification applications.

This section of the application is only used to determine if alternative language notices will be needed. Complete instructions on publishing the alternative language notices will be in your public notice package.

Please call the bilingual/ESL coordinator at the nearest elementary and middle schools and obtain the following information to determine whether an alternative language notices are required.

1. Is a bilingual education program required by the Texas Education Code at the elementary or middle school nearest to the facility or proposed facility?

   ☒ Yes          ☐ No

   If **no**, publication of an alternative language notice is not required; **skip to** Section 9 below.

2. **Are the students who attend either the elementary school or the middle school enrolled in a bilingual education program at that school?**

   ☒ Yes          ☐ No

3. Do the students at these schools attend a bilingual education program at another location?

   ☐ Yes          ☒ No

**AIRW - EXH. 4**

4. Would the school be required to provide a bilingual education program but the school has waived out of this requirement under 19 TAC §89.1205(g)?

☐ Yes ☐ No **N/A**

5. If the answer is yes to question 1, 2, 3, or 4, public notices in an alternative language are required. Which language is required by the bilingual program? **Spanish**

# Section 9. Regulated Entity and Permitted Site Information (Instructions Page 33)

A. If the site is currently regulated by TCEQ, provide the Regulated Entity Number (RN) issued to this site. RN **This application is for a new facility.**

Search the TCEQ's Central Registry at http://www15.tceq.texas.gov/crpub/ to determine if the site is currently regulated by TCEQ.

B. Name of project or site (the name known by the community where located):

**Rockride Lane Water Resource Reclamation Facility**

C. Owner of treatment facility: **AIRW2017-7, LP**

Ownership of Facility: ☐ Public ☒ Private ☐ Both ☐ Federal

D. Owner of land where treatment facility is or will be:

Prefix (Mr., Ms., Miss):

First and Last Name: **AIRW2017-7, LP**

Mailing Address: **2505 N. State Highway 360, Ste 800**

City, State, Zip Code: **Grand Prairie, Texas 75050**

Phone No.: **(972) 471-8700**     E-mail Address: **matth@liveW3.com**

If the landowner is not the same person as the facility owner or co-applicant, attach a lease agreement or deed recorded easement. See instructions.

Attachment: **N/A**

E. Owner of effluent disposal site:     **Not applicable.**

Prefix (Mr., Ms., Miss): **N/A**

First and Last Name: Click here to enter text.

Mailing Address: Click here to enter text.

City, State, Zip Code: Click here to enter text.

Phone No.: Click here to enter text.     E-mail Address: Click here to enter text.

If the landowner is not the same person as the facility owner or co-applicant, attach a lease agreement or deed recorded easement. See instructions.

Attachment: **Not Applicable**

**F.** Owner of sewage sludge disposal site (if authorization is requested for sludge disposal on property owned or controlled by the applicant):

**Not Applicable**

Prefix (Mr., Ms., Miss): Click here to enter text.

First and Last Name: Click here to enter text.

Mailing Address: Click here to enter text.

City, State, Zip Code: Click here to enter text.

Phone No.: Click here to enter text.  E-mail Address: Click here to enter text.

If the landowner is not the same person as the facility owner or co-applicant, attach a lease agreement or deed recorded easement. See instructions.

Attachment:

## Section 10. TPDES Discharge Information (Instructions Page 34)

**A.** Is the wastewater treatment facility location in the existing permit accurate?

☐ Yes  ☒ No

If **no, or a new permit application**, please give an accurate description:

> **The proposed Rockride Lane Water Resource Reclamation Facility will be located approximately 500 feet southeast of the intersection of Rockride Lane (County Road 110) and Westinghouse Road (County Road 111) in Williamson County, Texas.**

**B.** Are the point(s) of discharge and the discharge route(s) in the existing permit correct?

☐ Yes  ☒ No

If **no, or a new or amendment permit application**, provide an accurate description of the point of discharge and the discharge route to the nearest classified segment as defined in 30 TAC Chapter 307:

> **The discharge route is via a pipe to an unnamed tributary; thence to Mankins Branch; thence to San Gabriel/North Fork San Gabriel River, Segment 1248 of the Brazos River Basin.**

City nearest the outfall(s): **Georgetown**

County in which the outfalls(s) is/are located: **Williamson**

Outfall Latitude: **30.59828**  Longitude: **-97.63385**

**C.** Is or will the treated wastewater discharge to a city, county, or state highway right-of-way, or a flood control district drainage ditch?

☐ Yes  ☒ No

If **yes**, indicate by a check mark if:

☐ Authorization granted  ☐ Authorization pending

For **new and amendment** applications, provide copies of letters that show proof of contact and the approval letter upon receipt.

Attachment: Click here to enter text.

**D.** For all applications involving an average daily discharge of 5 MGD or more, provide the names of all counties located within 100 statute miles downstream of the point(s) of discharge.

**N/A**

## Section 11. TLAP Disposal Information (Instructions Page 36)

**A.** For TLAPs, is the location of the effluent disposal site in the existing permit accurate?

☐ Yes        ☐ No        **Not Applicable.**

If **no, or a new or amendment permit application**, provide an accurate description of the disposal site location:

**B.** City nearest the disposal site: Click here to enter text.

**C.** County in which the disposal site is located: Click here to enter text.

**D.** Disposal Site Latitude: Click here to enter text.        Longitude: Click here to enter text.

**E.** For **TLAPs**, describe the routing of effluent from the treatment facility to the disposal site:

Click here to enter text.

**F.** For **TLAPs**, please identify the nearest watercourse to the disposal site to which rainfall runoff might flow if not contained:

Click here to enter text.

## Section 12. Miscellaneous Information (Instructions Page 37)

**A.** Is the facility located on or does the treated effluent cross American Indian Land?

☐ Yes        ☒ No

**B.** If the existing permit contains an onsite sludge disposal authorization, is the location of the sewage sludge disposal site in the existing permit accurate?

☐ Yes        ☐ No        ☒ Not Applicable

If No, or if a new onsite sludge disposal authorization is being requested in this permit

application, provide an accurate location description of the sewage sludge disposal site.

> Click here to enter text.

**C.** Did any person formerly employed by the TCEQ represent your company and get paid for service regarding this application?

☐ Yes    ☒ No

If yes, list each person formerly employed by the TCEQ who represented your company and was paid for service regarding the application:

> Click here to enter text.

**D.** Do you owe any fees to the TCEQ?

☐ Yes    ☒ No

If **yes**, provide the following information:

Account number: Click here to enter text.    Amount past due: Click here to enter text.

**E.** Do you owe any penalties to the TCEQ?

☐ Yes    ☒ No

If **yes**, please provide the following information:

Enforcement order number: Click here to enter text.    Amount past due:

# Section 13. Attachments (Instructions Page 38)

Indicate which attachments are included with the Administrative Report. Check all that apply:

☐ Lease agreement or deed recorded easement, if the land where the treatment facility is located or the effluent disposal site are not owned by the applicant or co-applicant.

☒ Original full-size USGS Topographic Map with the following information:

**See Attachment B.**

- Applicant's property boundary
- Treatment facility boundary
- Labeled point of discharge for each discharge point (TPDES only)
- Highlighted discharge route for each discharge point (TPDES only)
- Onsite sewage sludge disposal site (if applicable)
- Effluent disposal site boundaries (TLAP only)
- New and future construction (if applicable)
- 1 mile radius information
- 3 miles downstream information (TPDES only)

**AIRW - EXH. 4**

- All ponds.

☐  Attachment 1 for Individuals as co-applicants

☒  Other Attachments. Please specify: Click here to enter text

## Section 14. Signature Page (Instructions Page 39)

*If co-applicants are necessary, each entity must submit an original, separate signature page.*

Permit Number:

Applicant: **AIRW2017-7, LP**

Certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

I further certify that I am authorized under 30 Texas Administrative Code § 305.44 to sign and submit this document, and can provide documentation in proof of such authorization upon request.

Signatory name (typed or printed): **Matthew Hiles**

Signatory title: **Vice President**

Signature: _~~Matthew Hiles~~_ Date: 3/23/20

(Use blue ink)

Subscribed and Sworn to before me by the said _Matthew Hiles_
on this _23rd_ day of _March_, 20 _20_.
My commission expires on the _18_ day of _November_, 20 _21_.

_Nickelle Benson_
Notary Public

NICKELLE BENSON
My Notary ID # 128109766
Expires November 18, 2021

_Tarrant_
County, Texas

**AIRW - EXH. 4**

# DOMESTIC ADMINISTRATIVE REPORT 1.1

The following information is required for new and amendment applications.

## Section 1. Affected Landowner Information (Instructions Page 41)

**A.** Indicate by a check mark that the landowners map or drawing, with scale, includes the following information, as applicable:

**See Attachment C.**

☒ The applicant's property boundaries

☒ The facility site boundaries within the applicant's property boundaries

☒ The distance the buffer zone falls into adjacent properties and the property boundaries of the landowners located within the buffer zone

☒ The property boundaries of all landowners surrounding the applicant's property (Note: if the application is a major amendment for a lignite mine, the map must include the property boundaries of all landowners adjacent to the new facility (ponds).)

☒ The point(s) of discharge and highlighted discharge route(s) clearly shown for one mile downstream

☒ The property boundaries of the landowners located on both sides of the discharge route for one full stream mile downstream of the point of discharge

☐ The property boundaries of the landowners along the watercourse for a one-half mile radius from the point of discharge if the point of discharge is into a lake, bay, estuary, or affected by tides

☐ The boundaries of the effluent disposal site (for example, irrigation area or subsurface drainfield site) and all evaporation/holding ponds within the applicant's property

☐ The property boundaries of all landowners surrounding the effluent disposal site

☐ The boundaries of the sludge land application site (for land application of sewage sludge for beneficial use) and the property boundaries of landowners surrounding the applicant's property boundaries where the sewage sludge land application site is located

☐ The property boundaries of landowners within one-half mile in all directions from the applicant's property boundaries where the sewage sludge disposal site (for example, sludge surface disposal site or sludge monofill) is located

**B.** ☒ Indicate by a check mark that a separate list with the landowners' names and mailing addresses cross-referenced to the landowner's map has been provided.

**C.** Indicate by a check mark in which format the landowners list is submitted:

☐ Readable/Writeable CD     ☒ Four sets of labels

**D.** Provide the source of the landowners' names and mailing addresses: <u>**Williamson County Appraisal District**</u>

**E.** As required by *Texas Water Code § 5.115*, is any permanent school fund land affected by this application?

☐ Yes     ☒ No

00015

**AIRW - EXH. 4**

If **yes**, provide the location and foreseeable impacts and effects this application has on the land(s):

## Section 2. Original Photographs (Instructions Page 44)

Provide original ground level photographs. Indicate with checkmarks that the following information is provided. **See Attachment D.**

☒ At least one original photograph of the new or expanded treatment unit location

☒ At least two photographs of the existing/proposed point of discharge and as much area downstream (photo 1) and upstream (photo 2) as can be captured. If the discharge is to an open water body (e.g., lake, bay), the point of discharge should be in the right or left edge of each photograph showing the open water and with as much area on each respective side of the discharge as can be captured.

☐ At least one photograph of the existing/proposed effluent disposal site

☒ A plot plan or map showing the location and direction of each photograph

## Section 3. Buffer Zone Map (Instructions Page 44)

A. Buffer zone map. Provide a buffer zone map on 8.5 x 11-inch paper with all of the following information. The applicant's property line and the buffer zone line may be distinguished by using dashes or symbols and appropriate labels.

- The applicant's property boundary;     **See Attachment E.**
- The required buffer zone; and
- Each treatment unit; and
- The distance from each treatment unit to the property boundaries.

B. Buffer zone compliance method. Indicate how the buffer zone requirements will be met. Check all that apply.

☒ Ownership

☐ Restrictive easement

☐ Nuisance odor control

☐ Variance

C. Unsuitable site characteristics. Does the facility comply with the requirements regarding unsuitable site characteristic found in 30 TAC § 309.13(a) through (d)?

☒ Yes     ☐ No

00016

**AIRW - EXH. 4**

# Supplemental Permit Information Form

**AIRW - EXH. 4**

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

# SUPPLEMENTAL PERMIT INFORMATION FORM (SPIF)

### FOR AGENCIES REVIEWING DOMESTIC
### TPDES WASTEWATER PERMIT APPLICATIONS

**TCEQ USE ONLY:**

Application type: _____ Renewal _____ Major Amendment _____ Minor Amendment _____ New

County: _____ Segment Number: _____

Admin Complete Date: _____

Agency Receiving SPIF:

_____ Texas Historical Commission                    _____ U.S. Fish and Wildlife

_____ Texas Parks and Wildlife Department            _____ U.S. Army Corps of Engineers

**This form applies to TPDES permit applications only.** (Instructions, Page 53)

The SPIF must be completed as a separate document. The TCEQ will mail a copy of the SPIF to each agency as required by the TCEQ agreement with EPA. If any of the items are not completely addressed or further information is needed, you will be contacted to provide the information before the permit is issued. Each item must be completely addressed.

**Do not refer to a response of any item in the permit application form**. Each attachment must be provided with this form separately from the administrative report of the application. The application will not be declared administratively complete without this form being completed in its entirety including all attachments.

The following applies to all applications:

1. Permittee: **AIRW2017-7, LP**

   Permit No. WQ00 [Click here to enter text]          EPA ID No. TX [Click here to enter text]

   Address of the project (or a location description that includes street/highway, city/vicinity, and county):

   > **The proposed water resource reclamation facility is located approximately 500 feet southeast of the intersection of Rockride Lane (County Road 110) and Westinghouse Road (County Road 111) in Williamson County, Texas.**

Provide the name, address, phone and fax number of an individual that can be contacted to answer specific questions about the property.

Prefix (Mr., Ms., Miss): **Mr.**

First and Last Name: **Matthew Hiles**

Credential (P.E, P.G., Ph.D., etc.): Click here to enter text.

Title: **Vice President**

Mailing Address: **2505 N. State Highway 360, Ste 800**

City, State, Zip Code: **Grand Prairie, Texas 75050**

Phone No.: **(972) 471-8700** Ext.: Click here to enter text. Fax No.: Click here to enter text.

E-mail Address: **matth@liveW3.com**

2. List the county in which the facility is located: **Williamson**

3. If the property is publicly owned and the owner is different than the permittee/applicant, please list the owner of the property.

> **The property is not publicly owned.**

4. Provide a description of the effluent discharge route. The discharge route must follow the flow of effluent from the point of discharge to the nearest major watercourse (from the point of discharge to a classified segment as defined in 30 TAC Chapter 307). If known, please identify the classified segment number.

> **The discharge route is to an unnamed tributary; thence to Mankins Branch; thence to San Gabriel/North Fork San Gabriel River, Segment 1248 of the Brazos River Basin.**

5. Please provide a separate 7.5-minute USGS quadrangle map with the project boundaries plotted and a general location map showing the project area. Please highlight the discharge route from the point of discharge for a distance of one mile downstream. (This map is required in addition to the map in the administrative report).

**See Attachments SPIF-1 and SPIF-2.**

Provide original photographs of any structures 50 years or older on the property.

Does your project involve any of the following? Check all that apply.

☒ Proposed access roads, utility lines, construction easements

☐ Visual effects that could damage or detract from a historic property's integrity

☐ Vibration effects during construction or as a result of project design

☐ Additional phases of development that are planned for the future

☐ Sealing caves, fractures, sinkholes, other karst features

☐ Disturbance of vegetation or wetlands

6. List proposed construction impact (surface acres to be impacted, depth of excavation, sealing of caves, or other karst features):

> **The estimated depth of excavation is 15 to 20 feet for an 8-foot diameter lift station wet well. Treatment plant facilities will be above-grade. Some subgrade compaction may be needed following receipt of geotechnical report, but excavation will generally be limited to the lift station, piping connecting treatment units, shallow buried electrical duct banks, and the outfall pipe. There are no known caves.**

7. Describe existing disturbances, vegetation, and land use:

> **The existing land use is for agricultural purposes.**

THE FOLLOWING ITEMS APPLY ONLY TO APPLICATIONS FOR NEW TPDES PERMITS AND MAJOR AMENDMENTS TO TPDES PERMITS

8. List construction dates of all buildings and structures on the property:

> **No buildings or structures currently exist on property.**

9. Provide a brief history of the property, and name of the architect/builder, if known.

> **The history of the property is not known. It is currently used for agricultural purposes. The site does not have any structures built on it.**

00020

**AIRW - EXH. 4**

**Supplemental Permit Information Form**

- **SPIF-1 General Location Map**
  - **SPIF-2 USGS Map**

WES 20-001

**AIRW - EXH. 4**



**SPIF-1**
**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**GENERAL LOCATION MAP**

00022

**AIRW - EXH. 4**


PERKINS
ENGINEERING
CONSULTANTS,INC.


N

One Mile Downstream
of Discharge

Project
Location

0 ———————————— 1
MILE
SCALE 1:24000

**SPIF-2**
**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**USGS MAP**

00023

**AIRW - EXH. 4**



## DOMESTIC TECHNICAL REPORT 1.0
### The Following Is Required For All Applications
### Renewal, New, And Amendment

## Section 1. Permitted or Proposed Flows (Instructions Page 51)

### A. Existing/Interim I Phase

Design Flow (MGD): Click here to enter text.

2-Hr Peak Flow (MGD): Click here to enter text.

Estimated construction start date: Click here to enter text.

Estimated waste disposal start date: Click here to enter text.

### B. Interim II Phase

Design Flow (MGD): Click here to enter text.

2-Hr Peak Flow (MGD): Click here to enter text.

Estimated construction start date: Click here to enter text.

Estimated waste disposal start date: Click here to enter text.

### C. Final Phase

Design Flow (MGD): **0.20**

2-Hr Peak Flow (MGD): **0.80**

Estimated construction start date: **January 2021**

Estimated waste disposal start date: **October 2021**

### D. Current operating phase: N/A

Provide the startup date of the facility: **N/A**

## Section 2. Treatment Process (Instructions Page 51)

### A. Treatment process description

Provide a detailed description of the treatment process. **Include the type of**

**treatment plant, mode of operation, and all treatment units.** Start with the plant's head works and finish with the point of discharge. Include all sludge processing and drying units. **If more than one phase exists or is proposed in the permit, a description of *each phase* must be provided**. Process description:

The proposed Rockride Lane Water Resource Reclamation Facility is an activated sludge with nitrification process plant operated in the extended aeration mode. The wastewater treatment plant will be a package plant with two aeration basins, a secondary clarifier, chlorine contact basin, effluent filter and an aerated sludge holding/thickening tank.

Port or pipe diameter at the discharge point, in inches: **12**

### B. Treatment Units

In Table 1.0(1), provide the treatment unit type, the number of units, and dimensions (length, width, depth) **of each treatment unit, accounting for *all* phases of operation**.

*Table 1.0(1) – Treatment Units*

| Treatment Unit Type | Number of Units | Dimensions (L x W x D) |
|---|---|---|
| Aeration Basin | 2 | 41' x 14' x 12.5' SWD |
| Secondary Clarifier | 1 | 32' dia. x 10' SWD |
| Chlorine Contact Basin | 1 | 14' x 12'x 9' SWD |
| Effluent Filter | 1 | -- |
| Aerated Sludge Holding/Thickening Tank | 1 | 100,000 gallons |
| | | |
| | | |

### C. Process flow diagrams

Provide flow diagrams for the existing facilities and **each** proposed phase of construction.

**Attachment: F**

00025

**AIRW - EXH. 4**

## Section 3. Site Drawing (Instructions Page 52)

Provide a site drawing for the facility that shows the following:

- The boundaries of the treatment facility;
- The boundaries of the area served by the treatment facility;
- If land disposal of effluent, the boundaries of the disposal site and all storage/holding ponds; and
- If sludge disposal is authorized in the permit, the boundaries of the land application or disposal site.

**Attachment**: <u>G</u>

Provide the name and a description of the area served by the treatment facility.

> **The treatment facility will serve the residents of The Mansions of Georgetown III development.**

## Section 4. Unbuilt Phases (Instructions Page 52)

Is the application for a renewal of a permit that contains an unbuilt phase or phases?

Yes ☐          No ☒

**If yes**, does the existing permit contain a phase that has not been constructed within five years of being authorized by the TCEQ?

Yes ☐          No ☐

**If yes**, provide a detailed discussion regarding the continued need for the unbuilt phase. Failure to provide sufficient justification may result in the Executive Director recommending denial of the unbuilt phase or phases.

> Click here to enter text.

**AIRW - EXH. 4**

## Section 5. Closure Plans (Instructions Page 53)

Have any treatment units been taken out of service permanently, or will any units be taken out of service in the next five years?

Yes ☐          No ☒

**If yes**, was a closure plan submitted to the TCEQ?

Yes ☐          No ☐

**If yes**, provide a brief description of the closure and the date of plan approval.

## Section 6. Permit Specific Requirements (Instructions Page 53)

**For applicants with an existing permit, check the *Other Requirements* or *Special Provisions* of the permit.**

### A. Summary transmittal

Have plans and specifications been approved for the existing facilities and each proposed phase?

Yes ☐     No ☐          **N/A – This is a new permit.**

**If yes**, provide the date(s) of approval for each phase: Click here to enter text.

Provide information, including dates, on any actions taken to meet a requirement or provision pertaining to the submission of a summary transmittal letter. Provide a copy of an approval letter from the TCEQ, if applicable.

### B. Buffer zones

Have the buffer zone requirements been met?

Yes ☐     No ☐          **N/A – This is a new permit.**

Provide information below, including dates, on any actions taken to meet the conditions of the buffer zone. If available, provide any new documentation

00027

**AIRW - EXH. 4**

relevant to maintaining the buffer zones.

> Click here to enter text.

## C. Other actions required by the current permit

Does the *Other Requirements* or *Special Provisions* section in the existing permit require submission of any other information or other required actions? Examples include Notification of Completion, progress reports, soil monitoring data, etc.

Yes ☐        No ☐        **N/A – This is a new permit.**

**If yes**, provide information below on the status of any actions taken to meet the conditions of an *Other Requirement* or *Special Provision*.

## D. Grit and grease treatment

## *1. Acceptance of grit and grease waste*

Does the facility have a grit and/or grease processing facility onsite that treats and decants or accepts transported loads of grit and grease waste that are discharged directly to the wastewater treatment plant prior to any treatment?

Yes ☐        No ☒

 **If No**, stop here and continue with Subsection E. Stormwater Management.

## *2. Grit and grease processing*

Describe below how the grit and grease waste is treated at the facility. In your description, include how and where the grit and grease is introduced to the treatment works and how it is separated or processed. Provide a flow diagram showing how grit and grease is processed at the facility.

00028

**AIRW - EXH. 4**

Click here to enter text.

## *3. Grit disposal*

Does the facility have a Municipal Solid Waste (MSW) registration or permit for grit disposal?

Yes ☐          No ☐

**If No**, contact the TCEQ Municipal Solid Waste team at 512-239-0000. Note: A registration or permit is required for grit disposal. Grit shall not be combined with treatment plant sludge. See the instruction booklet for additional information on grit disposal requirements and restrictions.

Describe the method of grit disposal.

Click here to enter text.

## *4. Grease and decanted liquid disposal*

Note: A registration or permit is required for grease disposal. Grease shall not be combined with treatment plant sludge. For more information, contact the TCEQ Municipal Solid Waste team at 512-239-0000.

Describe how the decant and grease are treated and disposed of after grit separation.

Click here to enter text.

### E. Stormwater management

## *1. Applicability*

Does the facility have a design flow of 1.0 MGD or greater in any phase?

Yes ☐          No ☒

Does the facility have an approved pretreatment program, under 40 CFR Part 403?

Yes ☐        No ☒

**If no to both of the above**, then skip to Subsection F, Other Wastes Received.

## *2. MSGP coverage*

Is the stormwater runoff from the WWTP and dedicated lands for sewage disposal currently permitted under the TPDES Multi-Sector General Permit (MSGP), TXR050000?

Yes ☐        No ☐

**If yes**, please provide MSGP Authorization Number and skip to Subsection F, Other Wastes Received:

TXR05 Click here to enter text or TXRNE Click here to enter text

**If no**, do you intend to seek coverage under TXR050000?

Yes ☐        No ☐

## *3. Conditional exclusion*

Alternatively, do you intend to apply for a conditional exclusion from permitting based TXR050000 (Multi Sector General Permit) Part II B.2 or TXR050000 (Multi Sector General Permit) Part V, Sector T 3(b)?

Yes ☐        No ☐

**If yes**, please explain below then proceed to Subsection F, Other Wastes Received:

Click here to enter text

## *4. Existing coverage in individual permit*

Is your stormwater discharge currently permitted through this individual TPDES or TLAP permit?

Yes ☐        No ☐

**If yes**, provide a description of stormwater runoff management practices at the site that are authorized in the wastewater permit then skip to Subsection F, Other Wastes Received.

00030

**AIRW - EXH. 4**

[Click here to enter text.]

## *5. Zero stormwater discharge*

Do you intend to have no discharge of stormwater via use of evaporation or other means?

Yes ☐          No ☐

**If yes**, explain below then skip to Subsection F. Other Wastes Received.

[Click here to enter text.]

Note: If there is a potential to discharge any stormwater to surface water in the state as the result of any storm event, then permit coverage is required under the MSGP or an individual discharge permit. This requirement applies to all areas of facilities with treatment plants or systems that treat, store, recycle, or reclaim domestic sewage, wastewater or sewage sludge (including dedicated lands for sewage sludge disposal located within the onsite property boundaries) that meet the applicability criteria of above. You have the option of obtaining coverage under the MSGP for direct discharges, (recommended), or obtaining coverage under this individual permit.

## *6. Request for coverage in individual permit*

Are you requesting coverage of stormwater discharges associated with your treatment plant under this individual permit?

Yes ☐          No ☐

**If yes**, provide a description of stormwater runoff management practices at the site for which you are requesting authorization in this individual wastewater permit and describe whether you intend to comingle this discharge with your treated effluent or discharge it via a separate dedicated stormwater outfall. Please also indicate if you intend to divert stormwater to the treatment plant headworks and indirectly discharge it to water in the state.

00031

**AIRW - EXH. 4**

Click here to enter text.

Note: Direct stormwater discharges to waters in the state authorized through this individual permit will require the development and implementation of a stormwater pollution prevention plan (SWPPP) and will be subject to additional monitoring and reporting requirements. Indirect discharges of stormwater via headworks recycling will require compliance with all individual permit requirements including 2-hour peak flow limitations. All stormwater discharge authorization requests will require additional information during the technical review of your application.

## F. Discharges to the Lake Houston Watershed

Does the facility discharge in the Lake Houston watershed?
Yes ☐   No ☒

If yes, a Sewage Sludge Solids Management Plan is required. See Example 5 in the instructions.

## G. Other wastes received including sludge from other WWTPs and septic waste

## *1. Acceptance of sludge from other WWTPs*

Does the facility accept or will it accept sludge from other treatment plants at the facility site?
  Yes ☐   No ☒

**If yes, attach sewage sludge solids management plan. See Example 5 of the instructions.**

In addition, provide the date that the plant started accepting sludge or is anticipated to start accepting sludge, an estimate of monthly sludge acceptance (gallons or millions of gallons), an estimate of the $BOD_5$ concentration of the sludge, and the design $BOD_5$ concentration of the influent from the collection system. Also note if this information has or has not changed since the last permit action.

Click here to enter text.

00032

AIRW - EXH. 4

Note: Permits that accept sludge from other wastewater treatment plants may be required to have influent flow and organic loading monitoring.

## *2. Acceptance of septic waste*

Is the facility accepting or will it accept septic waste?

Yes ☐          No ☒

**If yes**, does the facility have a Type V processing unit?

Yes ☐          No ☒

**If yes**, does the unit have a Municipal Solid Waste permit?

Yes ☐          No ☒

**If yes to any of the above**, provide a the date that the plant started accepting septic waste, or is anticipated to start accepting septic waste, an estimate of monthly septic waste acceptance (gallons or millions of gallons), an estimate of the $BOD_5$ concentration of the septic waste, and the design $BOD_5$ concentration of the influent from the collection system. Also note if this information has or has not changed since the last permit action.

Click here to enter text.

Note: Permits that accept sludge from other wastewater treatment plants may be required to have influent flow and organic loading monitoring.

## *3. Acceptance of other wastes (not including septic, grease, grit, or RCRA, CERCLA or as discharged by IUs listed in Worksheet 6)*

Is the facility accepting or will it accept wastes that are not domestic in nature excluding the categories listed above?

Yes ☐          No ☒

**If yes**, provide the date that the plant started accepting the waste, an estimate how much waste is accepted on a monthly basis (gallons or millions of gallons), a description of the entities generating the waste, and any distinguishing chemical or other physical characteristic of the waste. Also note if this information has or has not changed since the last permit action.

00033

**AIRW - EXH. 4**

Click here to enter text.

## Section 7. Pollutant Analysis of Treated Effluent (Instructions Page 58)

Is the facility in operation?

Yes ☐        No ☒

**If no**, this section is not applicable. Proceed to Section 8.

**If yes**, provide effluent analysis data for the listed pollutants. *Wastewater treatment facilities* complete Table 1.0(2). *Water treatment facilities* discharging filter backwash water, complete Table 1.0(3).

Note: The sample date must be within 1 year of application submission.

*Table 1.0(2) - Pollutant Analysis for Wastewater Treatment Facilities*

| Pollutant | Average Conc. | Max Conc. | No. of Samples | Sample Type | Sample Date/Time |
|---|---|---|---|---|---|
| CBOD$_5$, mg/l | | | | | |
| Total Suspended Solids, mg/l | | | | | |
| Ammonia Nitrogen, mg/l | | | | | |
| Nitrate Nitrogen, mg/l | | | | | |
| Total Kjeldahl Nitrogen, mg/l | | | | | |
| Sulfate, mg/l | | | | | |
| Chloride, mg/l | | | | | |
| Total Phosphorus, mg/l | | | | | |
| pH, standard units | | | | | |
| Dissolved Oxygen*, mg/l | | | | | |
| Chlorine Residual, mg/l | | | | | |
| *E.coli* (CFU/100ml) freshwater | | | | | |
| Entercocci (CFU/100ml) | | | | | |

| Pollutant | Average Conc. | Max Conc. | No. of Samples | Sample Type | Sample Date/Time |
|---|---|---|---|---|---|
| saltwater | | | | | |
| Total Dissolved Solids, mg/l | | | | | |
| Electrical Conductivity, μmohs/cm, † | | | | | |
| Oil & Grease, mg/l | | | | | |
| Alkalinity (CaCO$_3$)*, mg/l | | | | | |

\*TPDES permits only

†TLAP permits only

*Table 1.0(3) - Pollutant Analysis for Water Treatment Facilities*

| Pollutant | Average Conc. | Max Conc. | No. of Samples | Sample Type | Sample Date/Time |
|---|---|---|---|---|---|
| Total Suspended Solids, mg/l | | | | | |
| Total Dissolved Solids, mg/l | | | | | |
| pH, standard units | | | | | |
| Fluoride, mg/l | | | | | |
| Aluminum, mg/l | | | | | |
| Alkalinity (CaCO$_3$), mg/l | | | | | |

# Section 8. Facility Operator (Instructions Page 60)

Facility Operator Name: <u>AQUA Operations OC0000142</u>

Facility Operator's License Classification and Level: <u>--</u>

Facility Operator's License Number: <u>--</u>

# Section 9. Sewage Sludge Management and Disposal (Instructions Page 60)

### A. Sludge disposal method

Identify the current or anticipated sludge disposal method or methods from the

00035

**AIRW - EXH. 4**

following list. Check all that apply.

- ☒ Permitted landfill

- ☐ Permitted or Registered land application site for beneficial use

- ☐ Land application for beneficial use authorized in the wastewater permit

- ☐ Permitted sludge processing facility

- ☐ Marketing and distribution as authorized in the wastewater permit

- ☐ Composting as authorized in the wastewater permit

- ☐ Permitted surface disposal site (sludge monofill)

- ☐ Surface disposal site (sludge monofill) authorized in the wastewater permit

- ☐ Transported to another permitted wastewater treatment plant or permitted sludge processing facility. If you selected this method, a written statement or contractual agreement from the wastewater treatment plant or permitted sludge processing facility accepting the sludge must be included with this application.

- ☐ Other: Click here to enter text.

## B. Sludge disposal site

Disposal site name: **Austin Wastewater Processing Facility**

TCEQ permit or registration number: **2384**

County where disposal site is located: **Travis**

## C. Sludge transportation method

Method of transportation (truck, train, pipe, other): **truck**

Name of the hauler: **Wastewater Transport Services LLC**

Hauler registration number: **24343**

Sludge is transported as a:

Liquid ☐    semi-liquid ☒    semi-solid ☐    solid ☐

00036

**AIRW - EXH. 4**

# Section 10. Permit Authorization for Sewage Sludge Disposal (Instructions Page 60)

### A. Beneficial use authorization

Does the existing permit include authorization for land application of sewage sludge for beneficial use?

Yes ☐    No ☒

**If yes**, are you requesting to continue this authorization to land apply sewage sludge for beneficial use?

Yes ☐    No ☐

**If yes**, is the completed **Application for Permit for Beneficial Land Use of Sewage Sludge (TCEQ Form No. 10451)** attached to this permit application (see the instructions for details)?

Yes ☐    No ☐

### B. Sludge processing authorization

Does the existing permit include authorization for any of the following sludge processing, storage or disposal options?

| | | |
|---|---|---|
| Sludge Composting | Yes ☐ | No ☒ |
| Marketing and Distribution of sludge | Yes ☐ | No ☒ |
| Sludge Surface Disposal or Sludge Monofill | Yes ☐ | No ☒ |
| Temporary storage in sludge lagoons | Yes ☐ | No ☒ |

**If yes** to any of the above sludge options and the applicant is requesting to continue this authorization, is the completed **Domestic Wastewater Permit Application: Sewage Sludge Technical Report (TCEQ Form No. 10056)** attached to this permit application?

Yes ☐    No ☐

# Section 11. Sewage Sludge Lagoons (Instructions Page 61)

Does this facility include sewage sludge lagoons?

Yes ☐    No ☒

If yes, complete the remainder of this section. If no, proceed to Section 12.

### A. Location information

The following maps are required to be submitted as part of the application. For each map, provide the Attachment Number.

00037

**AIRW - EXH. 4**

- Original General Highway (County) Map:

   **Attachment**: Click here to enter text.

- USDA Natural Resources Conservation Service Soil Map:

   **Attachment**: Click here to enter text.

- Federal Emergency Management Map:

   **Attachment**: Click here to enter text.

- Site map:

   **Attachment**: Click here to enter text.

Discuss in a description if any of the following exist within the lagoon area.

Check all that apply.

☐ Overlap a designated 100-year frequency flood plain

☐ Soils with flooding classification

☐ Overlap an unstable area

☐ Wetlands

☐ Located less than 60 meters from a fault

☐ None of the above

**Attachment**: Click here to enter text.

If a portion of the lagoon(s) is located within the 100-year frequency flood plain, provide the protective measures to be utilized including type and size of protective structures:

Click here to enter text.

### B. Temporary storage information

Provide the results for the pollutant screening of sludge lagoons. These results are in addition to pollutant results in Section 7 of Technical Report 1.0.

Nitrate Nitrogen, mg/kg: Click here to enter text.

Total Kjeldahl Nitrogen, mg/kg: Click here to enter text.

Total Nitrogen (=nitrate nitrogen + TKN), mg/kg: Click here to enter text.

Phosphorus, mg/kg: Click here to enter text.

**AIRW - EXH. 4**

Potassium, mg/kg: Click here to enter text.

pH, standard units: Click here to enter text.

Ammonia Nitrogen mg/kg: Click here to enter text.

Arsenic: Click here to enter text.

Cadmium: Click here to enter text.

Chromium: Click here to enter text.

Copper: Click here to enter text.

Lead: Click here to enter text.

Mercury: Click here to enter text.

Molybdenum: Click here to enter text.

Nickel: Click here to enter text.

Selenium: Click here to enter text.

Zinc: Click here to enter text.

Total PCBs: Click here to enter text.

Provide the following information:

Volume and frequency of sludge to the lagoon(s): Click here to enter text.

Total dry tons stored in the lagoons(s) per 365-day period: Click here to enter text.

Total dry tons stored in the lagoons(s) over the life of the unit: Click here to enter text.

### C. Liner information

Does the active/proposed sludge lagoon(s) have a liner with a maximum hydraulic conductivity of $1x10^{-7}$ cm/sec?

Yes ☐    No ☐

**If yes**, describe the liner below.  Please note that a liner is required.

Click here to enter text.

### D. Site development plan

Provide a detailed description of the methods used to deposit sludge in the

AIRW - EXH. 4

lagoon(s):

Click here to enter text.

Attach the following documents to the application.

- Plan view and cross-section of the sludge lagoon(s)

    **Attachment**: Click here to enter text.

- Copy of the closure plan

    **Attachment**: Click here to enter text.

- Copy of deed recordation for the site

    **Attachment**: Click here to enter text.

- Size of the sludge lagoon(s) in surface acres and capacity in cubic feet and gallons

    **Attachment**: Click here to enter text.

- Description of the method of controlling infiltration of groundwater and surface water from entering the site

    **Attachment**: Click here to enter text.

- Procedures to prevent the occurrence of nuisance conditions

    **Attachment**: Click here to enter text.

**E. Groundwater monitoring**

Is groundwater monitoring currently conducted at this site, or are any wells available for groundwater monitoring, or are groundwater monitoring data otherwise available for the sludge lagoon(s)?

Yes ☐    No ☐

If groundwater monitoring data are available, provide a copy. Provide a profile of soil types encountered down to the groundwater table and the depth to the shallowest groundwater as a separate attachment.

Attachment: Click here to enter text.

# Section 12.    Authorizations/Compliance/Enforcement

**AIRW - EXH. 4**

### A. Additional authorizations

Does the permittee have additional authorizations for this facility, such as reuse authorization, sludge permit, etc?

Yes ☐    No ☒

**If yes**, provide the TCEQ authorization number and description of the authorization:

Click here to enter text.

### B. Permittee enforcement status

Is the permittee currently under enforcement for this facility?

Yes ☐    No ☒

Is the permittee required to meet an implementation schedule for compliance or enforcement?

Yes ☐    No ☒

**If yes** to either question, provide a brief summary of the enforcement, the implementation schedule, and the current status:

Click here to enter text.

# Section 13.    RCRA/CERCLA Wastes (Instructions Page 63)

### A. RCRA hazardous wastes

Has the facility received in the past three years, does it currently receive, or will it receive RCRA hazardous waste?

Yes ☐    No ☒

### B. Remediation activity wastewater

Has the facility received in the past three years, does it currently receive, or will it receive CERCLA wastewater, RCRA remediation/corrective action wastewater or other remediation activity wastewater?

Yes ☐    No ☒

### C. Details about wastes received

**If yes** to either Subsection A or B above, provide detailed information concerning these wastes with the application.

Attachment: Click here to enter text.

## Section 14.  Laboratory Accreditation (Instructions Page 64)

All laboratory tests performed must meet the requirements of *30 TAC Chapter 25, Environmental Testing Laboratory Accreditation and Certification*, which includes the following general exemptions from National Environmental Laboratory Accreditation Program (NELAP) certification requirements:

- The laboratory is an in-house laboratory and is:
    - periodically inspected by the TCEQ; or
    - located in another state and is accredited or inspected by that state; or
    - performing work for another company with a unit located in the same site; or
    - performing pro bono work for a governmental agency or charitable organization.
- The laboratory is accredited under federal law.
- The data are needed for emergency-response activities, and a laboratory accredited under the Texas Laboratory Accreditation Program is not available.
- The laboratory supplies data for which the TCEQ does not offer accreditation.

The applicant should review *30 TAC Chapter 25* for specific requirements.

The following certification statement shall be signed and submitted with every application. See the *Signature Page* section in the Instructions, for a list of designated representatives who may sign the certification.

### CERTIFICATION:

I certify that all laboratory tests submitted with this application meet the requirements of *30 TAC Chapter 25, Environmental Testing Laboratory Accreditation and Certification*.

Printed Name: **Matthew Hiles**

Title: **Vice President**

Signature: _____

Date: __3/23/20__

00043

**AIRW - EXH. 4**

# DOMESTIC TECHNICAL REPORT 1.1
## The following is required for new and amendment applications

## Section 1. Justification for Permit (Instructions Page 66)

### A. Justification of permit need

Provide a detailed discussion regarding the need for any phase(s) not currently permitted. Failure to provide sufficient justification may result in the Executive Director recommending denial of the proposed phase(s) or permit.

> **Central Texas is a fast-growing area. The construction of 880 residential housing units in the proposed service is planned to be completed in the next two years. The proposed wastewater treatment facility will provide services to the residential population that is expected to average 2.5 persons per unit. The plant will be designed to support Type I reuse for irrigation throughout the development, minimizing potable water consumption.**

### B. Regionalization of facilities

Provide the following information concerning the potential for regionalization of domestic wastewater treatment facilities:

### 1. Municipally incorporated areas

If the applicant is a city, then Item 1 is not applicable. Proceed to Item 2 Utility CCN areas.

Is any portion of the proposed service area located in an incorporated city?

Yes ☐        No ☒      Not Applicable ☐

**If yes**, within the city limits of: Click here to enter text

**If yes**, attach correspondence from the city.

Attachment: Click here to enter text

If consent to provide service is available from the city, attach a justification for the proposed facility and a cost analysis of expenditures that includes the cost of connecting to the city versus the cost of the proposed facility or expansion attached.

Attachment: Click here to enter text

### 2. Utility CCN areas

AIRW - EXH. 4

Is any portion of the proposed service area located inside another utility's CCN area?

Yes ☐          No ☒

**If yes**, attach a justification for the proposed facility and a cost analysis of expenditures that includes the cost of connecting to the CCN facilities versus the cost of the proposed facility or expansion.

Attachment: Click here to enter text.

## 3. Nearby WWTPs or collection systems

Are there any domestic permitted wastewater treatment facilities or collection systems located within a three-mile radius of the proposed facility?

Yes ☒          No ☐

**If yes**, attach a list of these facilities that includes the permittee's name and permit number, and an area map showing the location of these facilities.

Attachment: <u>H</u>

**If yes**, attach copies of your certified letters to these facilities **and** their response letters concerning connection with their system.

Attachment: Click here to enter text.

Does a permitted domestic wastewater treatment facility or a collection system located within three (3) miles of the proposed facility currently have the capacity to accept or is willing to expand to accept the volume of wastewater proposed in this application?

Yes ☐          No ☒

**If yes**, attach an analysis of expenditures required to connect to a permitted wastewater treatment facility or collection system located within 3 miles versus the cost of the proposed facility or expansion.

Attachment: Click here to enter text.

## Section 2. Organic Loading (Instructions Page 67)

Is this facility in operation?

Yes ☐          No ☒

**If no**, proceed to Item B, Proposed Organic Loading.

AIRW - EXH. 4

**If yes**, provide organic loading information in Item A, Current Organic Loading

### A. Current organic loading

Facility Design Flow (flow being requested in application): <u>N/A</u>

Average Influent Organic Strength or $BOD_5$ Concentration in mg/l: <u>N/A</u>

Average Influent Loading (lbs/day = total average flow X average $BOD_5$ conc. X 8.34): <u>N/A</u>

Provide the source of the average organic strength or $BOD_5$ concentration.

N/A

### B. Proposed organic loading

This table must be completed if this application is for a facility that is not in operation or if this application is to request an increased flow that will impact organic loading.

*Table 1.1(1) – Design Organic Loading*

| Source | Total Average Flow (MGD) | Influent $BOD_5$ Concentration (mg/l) |
|---|---|---|
| Municipality | | |
| Subdivision | **0.20** | **300** |
| Trailer park – transient | | |
| Mobile home park | | |
| School with cafeteria and showers | | |
| School with cafeteria, no showers | | |
| Recreational park, | | |

00046

**AIRW - EXH. 4**

| Source | Total Average Flow (MGD) | Influent BOD$_5$ Concentration (mg/l) |
|---|---|---|
| overnight use | | |
| Recreational park, day use | | |
| Office building or factory | | |
| Motel | | |
| Restaurant | | |
| Hospital | | |
| Nursing home | | |
| Other | | |
| TOTAL FLOW from all sources | 0.20 | |
| AVERAGE BOD$_5$ from all sources | | 300 |

## Section 3. Proposed Effluent Quality and Disinfection (Instructions Page 68)

A. **Existing/Interim I Phase Design Effluent Quality**

Biochemical Oxygen Demand (5-day), mg/l: Click here to enter text.

Total Suspended Solids, mg/l: Click here to enter text.

Ammonia Nitrogen, mg/l: Click here to enter text.

Total Phosphorus, mg/l: Click here to enter text.

Dissolved Oxygen, mg/l: Click here to enter text.

Other: Click here to enter text.

AIRW - EXH. 4

### B. Interim II Phase Design Effluent Quality

Biochemical Oxygen Demand (5-day), mg/l: Click here to enter text.

Total Suspended Solids, mg/l: Click here to enter text.

Ammonia Nitrogen, mg/l: Click here to enter text.

Total Phosphorus, mg/l: Click here to enter text.

Dissolved Oxygen, mg/l: Click here to enter text.

Other: Click here to enter text.

### C. Final Phase Design Effluent Quality

Biochemical Oxygen Demand (5-day), mg/l: **7**

Total Suspended Solids, mg/l: **10**

Ammonia Nitrogen, mg/l: **4**

Total Phosphorus, mg/l: **--**

Dissolved Oxygen, mg/l: **4**

Other: Click here to enter text.

### D. Disinfection Method

Identify the proposed method of disinfection.

☒ Chlorine: **1.0** mg/l after **20** minutes detention time at peak flow

Dechlorination process: Click here to enter text.

☐ Ultraviolet Light: Click here to enter text. seconds contact time at peak flow

☐ Other: Click here to enter text.

## Section 4. Design Calculations (Instructions Page 68)

Attach design calculations and plant features for each proposed phase. Example 4 of the instructions includes sample design calculations and plant features.

**Attachment: I**

AIRW - EXH. 4

# Section 5. Facility Site (Instructions Page 68)

### A. 100-year floodplain

Will the proposed facilities be located <u>above</u> the 100-year frequency flood level?

Yes ☒          No ☐

**If no**, describe measures used to protect the facility during a flood event. Include a site map showing the location of the treatment plant within the 100-year frequency flood level. If applicable, provide the size and types of protective structures.

Click here to enter text.

Provide the source(s) used to determine 100-year frequency flood plain.

FIRM map 48491C0485F

For a new or expansion of a facility, will a wetland or part of a wetland be filled?

Yes ☐          No ☒

**If yes**, has the applicant applied for a US Corps of Engineers 404 Dredge and Fill Permit?

Yes ☐          No ☐

**If yes**, provide the permit number: Click here to enter text.

**If no,** provide the approximate date you anticipate submitting your application to the Corps: Click here to enter text.

### B. Wind rose

Attach a wind rose. **Attachment**: J

# Section 6. Permit Authorization for Sewage Sludge Disposal (Instructions Page 69)

### A. Beneficial use authorization

Are you requesting to include authorization to land apply sewage sludge for beneficial use on property located adjacent to the wastewater treatment facility under the wastewater permit?

Yes ☐          No ☒

**If yes**, attach the completed Application for Permit for Beneficial Land Use of Sewage Sludge (TCEQ Form No. 10451)
    **Attachment**: Click here to enter text.

### B. Sludge processing authorization

Identify the sludge processing, storage or disposal options that will be conducted at the wastewater treatment facility:

☐    Sludge Composting

☐    Marketing and Distribution of sludge

☐    Sludge Surface Disposal or Sludge Monofill

**If any of the above** sludge options are selected, attach a completed DOMESTIC WASTEWATER PERMIT APPLICATION: SEWAGE SLUDGE TECHNICAL REPORT (TCEQ Form No. 10056).
    **Attachment**: Click here to enter text.

## Section 7. Sewage Sludge Solids Management Plan (Instructions Page 69)

Attach a solids management plan to the application.
    Attachment: **K**

The sewage sludge solids management plan must contain the following information:
- Treatment units and processes dimensions and capacities
- Solids generated at 100, 75, 50, and 25 percent of design flow
- Mixed liquor suspended solids operating range at design and projected actual flow
- Quantity of solids to be removed and a schedule for solids removal
- Identification and ownership of the ultimate sludge disposal site
- For facultative lagoons, design life calculations, monitoring well locations and depths, and the ultimate disposal method for the sludge from the facultative lagoon

An example of a sewage sludge solids management plan has been included as Example 5 of the instructions.

00050

**AIRW - EXH. 4**

# DOMESTIC TECHNICAL REPORT WORKSHEET 2.0

## RECEIVING WATERS

### The following is required for all TPDES permit applications

## Section 1. Domestic Drinking Water Supply (Instructions Page 73)

Is there a surface water intake for domestic drinking water supply located within 5 miles downstream from the point or proposed point of discharge?

Yes ☐        No ☒

**If yes**, provide the following:

Owner of the drinking water supply: Click here to enter text.

Distance and direction to the intake: Click here to enter text.

Attach a USGS map that identifies the location of the intake.

**Attachment**: Click here to enter text.

## Section 2. Discharge into Tidally Affected Waters (Instructions Page 73)

Does the facility discharge into tidally affected waters?

**Yes ☐        No ☒**

If yes, complete the remainder of this section. If no, proceed to Section 3.

### A. Receiving water outfall

Width of the receiving water at the outfall, in feet: Click here to enter text.

### B. Oyster waters

Are there oyster waters in the vicinity of the discharge?

Yes ☐        No ☐

**If yes**, provide the distance and direction from outfall(s).

Click here to enter text.

**AIRW - EXH. 4**

### C. Sea grasses

Are there any sea grasses within the vicinity of the point of discharge?

Yes ☐          No ☐

**If yes**, provide the distance and direction from the outfall(s).

Click here to enter text.

## Section 3. Classified Segments (Instructions Page 73)

Is the discharge directly into (or within 300 feet of) a classified segment?

Yes ☐          No ☒

**If yes**, this Worksheet is complete.

**If no**, complete Sections 4 and 5 of this Worksheet.

## Section 4. Description of Immediate Receiving Waters (Instructions Page 75)

Name of the immediate receiving waters: **unnamed tributary**

### A. Receiving water type

Identify the appropriate description of the receiving waters.

☒     Stream

☐     Freshwater Swamp or Marsh

☐     Lake or Pond

Surface area, in acres: Click here to enter text.

Average depth of the entire water body, in feet: Click here to enter text.

Average depth of water body within a 500-foot radius of discharge point, in feet: Click here to enter text.

☐     Man-made Channel or Ditch

☐ Open Bay

☐ Tidal Stream, Bayou, or Marsh

☐ Other, specify: Click here to enter text

### B. Flow characteristics

If a stream, man-made channel or ditch was checked above, provide the following. For existing discharges, check one of the following that best characterizes the area *upstream* of the discharge. For new discharges, characterize the area *downstream* of the discharge (check one).

☒ Intermittent - dry for at least one week during most years

☐ Intermittent with Perennial Pools - enduring pools with sufficient habitat to maintain significant aquatic life uses

☐ Perennial - normally flowing

Check the method used to characterize the area upstream (or downstream for new dischargers).

☐ USGS flow records

☐ Historical observation by adjacent landowners

☐ Personal observation

☒ Other, specify: **USGS map and aerial photos**

### C. Downstream perennial confluences

List the names of all perennial streams that join the receiving water within three miles downstream of the discharge point.

**None**

### D. Downstream characteristics

Do the receiving water characteristics change within three miles downstream of the discharge (e.g., natural or man-made dams, ponds, reservoirs, etc.)?

Yes ☒        No ☐

**If yes**, discuss how.

00053

**AIRW - EXH. 4**

> There are three small ponds downstream of the proposed discharge location. The ponds are approximately 800 feet, half a mile, and one mile downstream of the discharge point.

### E. Normal dry weather characteristics

Provide general observations of the water body during normal dry weather conditions.

> Click here to enter text.

Date and time of observation: Click here to enter text.

Was the water body influenced by stormwater runoff during observations?

Yes ☐　　　No ☐

## Section 5. General Characteristics of the Waterbody (Instructions Page 74)

### A. Upstream influences

Is the immediate receiving water upstream of the discharge or proposed discharge site influenced by any of the following? Check all that apply.

☐ Oil field activities　　　☐ Urban runoff

☐ Upstream discharges　　　☐ Agricultural runoff

☐ Septic tanks　　　☒ Other(s), specify **The unnamed tributary is only influenced by stormwater runoff.**

### B. Waterbody uses

Observed or evidences of the following uses. Check all that apply.

☐ Livestock watering　　　☐ Contact recreation

☐ Irrigation withdrawal　　　☐ Non-contact recreation

☐ Fishing　　　☐ Navigation

AIRW - EXH. 4

☐ Domestic water supply          ☐ Industrial water supply

☐ Park activities                ☐ Other(s), specify Click here to enter text

## C. Waterbody aesthetics

Check one of the following that best describes the aesthetics of the receiving water and the surrounding area.

☐ Wilderness: outstanding natural beauty; usually wooded or unpastured area; water clarity exceptional

☐ Natural Area: trees and/or native vegetation; some development evident (from fields, pastures, dwellings); water clarity discolored

☒ Common Setting: not offensive; developed but uncluttered; water may be colored or turbid

☐ Offensive: stream does not enhance aesthetics; cluttered; highly developed; dumping areas; water discolored

00055

**AIRW - EXH. 4**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT**
**APPLICATION**

| ATTACHMENT | REFERENCE |
|---|---|
| A. Core Data Form | Admin Report 1.0, Section 3.C |
| B. USGS Map | Admin Report 1.0, Section 13 |
| C. Affected Landowner Information | Admin Report 1.1, Section 1 |
| D. Original Photographs | Admin Report 1.1, Section 2 |
| E. Buffer Zone Map | Admin Report 1.1, Section 3 |
| F. Process Flow Diagram | Tech Report 1.0, Section 2.C |
| G. Site Drawing | Tech Report 1.0, Section 3 |
| H. Nearby Collection System | Tech Report 1.1, Section 1.B.3 |
| I. Design Calculation and Plant Features | Tech Report 1.1, Section 4 |
| J. Windrose | Tech Report 1.1, Section 5.B |
| K. Sewage Sludge Solids Management Plan | Tech Report 1.1, Section 7 |

WES 20-001

00056

**AIRW - EXH. 4**

**Attachment A**

**Core Data Form**

**Admin Report 1.0, Section 3.C**

WES 20-001

00057



## TCEQ Core Data Form

For detailed instructions regarding completion of this form, please read the Core Data Form Instructions or call 512-239-5175.

| TCEQ Use Only |
| --- |

## SECTION I: General Information

**1. Reason for Submission** *(If other is checked please describe in space provided.)*

☒ New Permit, Registration or Authorization *(Core Data Form should be submitted with the program application.)*

☐ Renewal *(Core Data Form should be submitted with the renewal form)*  ☐ Other

| 2. Customer Reference Number *(if issued)* | Follow this link to search for CN or RN numbers in Central Registry** | 3. Regulated Entity Reference Number *(if issued)* |
| --- | --- | --- |
| CN **605607753** | | RN |

## SECTION II: Customer Information

| 4. General Customer Information | 5. Effective Date for Customer Information Updates (mm/dd/yyyy) | 01/01/2018 |
| --- | --- | --- |

☐ New Customer  ☐ Update to Customer Information  ☐ Change in Regulated Entity Ownership
☐ Change in Legal Name (Verifiable with the Texas Secretary of State or Texas Comptroller of Public Accounts)

*The Customer Name submitted here may be updated automatically based on what is current and active with the Texas Secretary of State (SOS) or Texas Comptroller of Public Accounts (CPA).*

**6. Customer Legal Name** *(If an individual, print last name first: eg: Doe, John)*    *If new Customer, enter previous Customer below:*

AIRW 2017-7, LP

| 7. TX SOS/CPA Filing Number | 8. TX State Tax ID (11 digits) | 9. Federal Tax ID (9 digits) | 10. DUNS Number *(if applicable)* |
| --- | --- | --- | --- |
| 802720661 | 32063740933 | 82-1668448 | |

**11. Type of Customer:**  ☐ Corporation  ☐ Individual  Partnership: ☐ General ☒ Limited

Government: ☐ City ☐ County ☐ Federal ☐ State ☐ Other   ☐ Sole Proprietorship   ☐ Other:

| 12. Number of Employees | 13. Independently Owned and Operated? |
| --- | --- |
| ☒ 0-20  ☐ 21-100  ☐ 101-250  ☐ 251-500  ☐ 501 and higher | ☒ Yes  ☐ No |

**14. Customer Role** (Proposed or Actual) – *as it relates to the Regulated Entity listed on this form. Please check one of the following:*

☐ Owner   ☐ Operator   ☒ Owner & Operator
☐ Occupational Licensee   ☐ Responsible Party   ☐ Voluntary Cleanup Applicant   ☐ Other:

| 15. Mailing Address: | 2505 N. State Highway 360, Suite 800 | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | City | Grand Prarie | State | TX | ZIP | 75050 | ZIP + 4 |

| 16. Country Mailing Information *(if outside USA)* | 17. E-Mail Address *(if applicable)* |
| --- | --- |
| | MattH@liveW3.com |

| 18. Telephone Number | 19. Extension or Code | 20. Fax Number *(if applicable)* |
| --- | --- | --- |
| ( 972 ) 471-8700 | | ( ) - |

## SECTION III: Regulated Entity Information

**21. General Regulated Entity Information** *(If 'New Regulated Entity" is selected below this form should be accompanied by a permit application)*

☒ New Regulated Entity   ☐ Update to Regulated Entity Name   ☐ Update to Regulated Entity Information

*The Regulated Entity Name submitted may be updated in order to meet TCEQ Agency Data Standards (removal of organizational endings such as Inc, LP, or LLC.)*

**22. Regulated Entity Name** *(Enter name of the site where the regulated action is taking place.)*

Rockride Lane Water Resource Reclamation Facility

00058

| 23. Street Address of the Regulated Entity: (No PO Boxes) | | | | | | | |
|---|---|---|---|---|---|---|---|
| | City | | State | | ZIP | | ZIP + 4 |
| 24. County | Williamson | | | | | | |

Enter Physical Location Description if no street address is provided.

| 25. Description to Physical Location: | The facility will be located approximately 500 feet southeast of the intersection of Rockride Lane (County Road 110) and Westinghouse Road (County Road 111) in Williamson County, Texas 78626. |
|---|---|

| 26. Nearest City | | State | Nearest ZIP Code |
|---|---|---|---|
| Georgetown | | TX | 78626 |

| 27. Latitude (N) In Decimal: | 30.59828 | | 28. Longitude (W) In Decimal: | 97.63385 | |
|---|---|---|---|---|---|
| Degrees | Minutes | Seconds | Degrees | Minutes | Seconds |
| 30 | 35 | 53.81 | 97 | 38 | 1.87 |

| 29. Primary SIC Code (4 digits) | 30. Secondary SIC Code (4 digits) | 31. Primary NAICS Code (5 or 6 digits) | 32. Secondary NAICS Code (5 or 6 digits) |
|---|---|---|---|
| 6552 | | | |

**33. What is the Primary Business of this entity?** (Do not repeat the SIC or NAICS description.)

Developer of real property.

| 34. Mailing Address: | 2505 N. State Highway 360, Suite 800 | | | | | | |
|---|---|---|---|---|---|---|---|
| | City | Grand Prarie | State | TX | ZIP | 75050 | ZIP + 4 |

| 35. E-Mail Address: | matth@liveW3.com |
|---|---|

| 36. Telephone Number | 37. Extension or Code | 38. Fax Number (if applicable) |
|---|---|---|
| ( 972 ) 471-8700 | | ( ) - |

**39. TCEQ Programs and ID Numbers** Check all Programs and write in the permits/registration numbers that will be affected by the updates submitted on this form. See the Core Data Form instructions for additional guidance.

| | | | | |
|---|---|---|---|---|
| ☐ Dam Safety | ☐ Districts | ☐ Edwards Aquifer | ☐ Emissions Inventory Air | ☐ Industrial Hazardous Waste |
| ☐ Municipal Solid Waste | ☐ New Source Review Air | ☐ OSSF | ☐ Petroleum Storage Tank | ☐ PWS |
| ☐ Sludge | ☐ Storm Water | ☐ Title V Air | ☐ Tires | ☐ Used Oil |
| ☐ Voluntary Cleanup | ☒ Waste Water   New | ☐ Wastewater Agriculture | ☐ Water Rights | ☐ Other |

## SECTION IV: Preparer Information

| 40. Name: | Janet Sims | 41. Title: | Project Manager |
|---|---|---|---|
| 42. Telephone Number | 43. Ext./Code | 44. Fax Number | 45. E-Mail Address |
| ( 512 ) 735-1001 | | ( ) - | jsims@perkinsconsultants.com |

## SECTION V: Authorized Signature

46. By my signature below, I certify, to the best of my knowledge, that the information provided in this form is true and complete, and that I have signature authority to submit this form on behalf of the entity specified in Section II, Field 6 and/or as required for the updates to the ID numbers identified in field 39.

| Company: | AIRW 2017-7, LP | | Job Title: | Vice President | |
|---|---|---|---|---|---|
| Name(in Print): | Matthew Hiles | | | Phone: | ( 972 ) 417-8700 |
| Signature: | *Matthew Hiles* | | | Date: | 3/23/20 |

**AIRW - EXH. 4**

**Attachment B**

**USGS Map**

**Admin Report 1.0, Section 13**


PERKINS
ENGINEERING
CONSULTANTS,INC.


N

Three Miles
Downstream of
Discharge

One Mile Downstream
of Discharge

Point of
Discharge

Treatment
Facility
Boundary

Applicant's
Property
Boundary

One Mile
Radius

0                                              1

MILE
SCALE 1:24000

Area with new development

**ATTACHMENT B**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**USGS MAP**

00061

**AIRW - EXH. 4**

**Attachment C**

**Affected Landowner Information**

**Tech Report 1.1, Section 1**

WES 20-001

**AIRW - EXH. 4**

**ATTACHMENT C**
**AIRW2017-7, LP**
**ROCKRIDE LANE WASTEWATER TREATMENT FACILITY**
**NEW TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**AFFECTED LANDOWNER LIST**

1   JONAH WATER SPECIAL UTILITY DIST
    PO BOX 455
    HUTTO, TX 78634-0455

2   ORENDA EDUCATION
    3360 WESTINGHOUSE RD
    GEORGETOWN, TX 78626

3   NELSON HOMESTEAD FAMILY PARTNERSHIP LTD
    3404 GLENVIEW AVE
    AUSTIN, TX 78703-1449

4   ANDERSON BERNARD S TR OF BERNARD & GLADYS
    ANDERSON TRUST
    16233 CAMERON RD
    PFLUGERVILLE, TX 78660

5   722 GUNTER LLC
    6 ORSINGER HILL
    SAN ANTONIO, TX 78230

6   PATTERSON, BARBARA ET AL
    100 CAMBRIDGE CIR
    WACO, TX 76712-7561

7   BAYS, IVA ELIZABETH PATTERSON
    1400 W SOMERS LN
    AXTELL, TX 76624-1177

8   PATTERSON, SAMUEL GLENN
    3651 COUNTY ROAD 110
    GEORGETOWN, TX 78626-7440

9   WEBB, JIMMY C
    2929 BELL GIN RD
    GEORGETOWN, TX 78626-7428

10  KIMBRO, ERNEST W
    PO BOX 301
    KYLE, TX 78640-0301

11  CONTINENTAL HOMES OF TEXAS LP
    10700 PECAN PARK BLVD FOURTH
    FLOOR #400
    AUSTIN, TX 78750-1227

12  ERICKSON, MARTHA J & KIRSTEN P
    MCKERLEY
    604 DUBINA AVE
    GEORGETOWN, TX 78626

00063

**AIRW - EXH. 4**



PERKINS
ENGINEERING
CONSULTANTS,INC.



0 ──────────────── 0.5
MILE
SCALE 1:12,000

One Mile Downstream
of Discharge

9

9

10

8

7

Discharge
Location

6

See Attachment C.2
for Property Labels

5

4

See
Attachment C.2
for
Property Labels

**Applicant's
Property**

Wastewater
Treatment
Facility

**Applicant's
Property**

2

1

2

4

3

**ATTACHMENT C.1
AIRW2017-7, LP
ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY
NEW TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT APPLICATION
AFFECTED LANDOWNER MAP**

00064

**AIRW - EXH. 4**



PERKINS
ENGINEERING
CONSULTANTS,INC.



N

NOT TO SCALE

Applicant's
Property

12
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11
11

No Landowner
Identified

**ATTACHMENT C.2**
**AIRW2017-7, LP**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**AFFECTED LANDOWNER MAP**

00065

**AIRW - EXH. 4**

**Attachment D**

**Original Photographs**

**Admin Report 1.1, Section 2**

WES 20-001

00066



Photograph 1. – Proposed site of facility looking southeast.

**ATTACHMENT D.1**
**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**PHOTOGRAPHS**

00067

**AIRW - EXH. 4**



Photograph 2. – At outfall looking north, downstream.



Photograph 2. – At outfall looking west, upstream.

**ATTACHMENT D.2**
**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**PHOTOGRAPHS**

00068

**AIRW - EXH. 4**

**Attachment E**

**Buffer Zone Map**

**Admin Report 1.1, Section 3**

WES 20-001

00069



PERKINS
ENGINEERING
CONSULTANTS, INC.



N

0          100
1inch = 100 feet
SCALE

Buffer Zone
Area

Facility
Boundary

Effluent
Filter

Secondary
Clarifier

Chlorine
Contact
Basin

150Ft.

Aeration
Basins

Sludge
Holding/Thickening
Tank

Buffer Zone
Area

**ATTACHMENT E**
**AIRW2017-7, LP**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**BUFFER ZONE MAP**

00070

**AIRW - EXH. 4**

**Attachment F**

**Process Flow Diagram**

**Tech Report 1.0, Section 2.C**

**AIRW - EXH. 4**

# ACTIVATED SLUDGE – EXTENDED AERATION PROCESS



**ATTACHMENT F**
**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**PROCESS FLOW DIAGRAM**

00072

**AIRW - EXH. 4**

**Attachment G**

**Site Drawing**

**Tech Report 1.0, Section 3**

WES 20-001

**AIRW - EXH. 4**


PERKINS
ENGINEERING
CONSULTANTS,INC.

N

0          2,000 FT.

SCALE
1 INCH = 1,000 FEET

**Proposed
Service Area**

**ATTACHMENT G
AIRW 2017-7, L.P.
ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY
NEW TEXAS POLLUTANT DISCHARGE ELIMINATION SYSTEM PERMIT APPLICATION
SITE DRAWING**

00074

**AIRW - EXH. 4**

**Attachment H**

**Nearby Collection System**

**Tech Report 1.1, Section 1.B.3**

WES 20-001

00075

**AIRW - EXH. 4**

**AIRW2017-7, LP**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**

**NEARBY WASTEWATER TREATMENT SYSTEMS**

The proposed AIRW2017-7, LP Rockride Lane Water Resource Reclamation Facility (WRRF) is located at the intersection of Westinghouse Road and Rockride Lane in Williamson County, Texas near Georgetown.  The service area for the proposed Rockride Lane WRRF is outside the City of Georgetown city limits and out of the City of Round Rock sewer CCN boundaries.  The nearby wastewater treatment systems are presents on the map below.



**Nearby Wastewater Treatment System Area Map**

Both wastewater collection systems are within three miles of the proposed treatment facility, therefore, staff with the City of Georgetown and the City of Round Rock were contacted.  The correspondence from the cities that indicate service will not be available for the proposed service area are presented as Attachments I.2 and I.3.

00076

**AIRW - EXH. 4**

**Matt Hiles**

| | |
|---|---|
| **From:** | Sofia Nelson <Sofia.Nelson@georgetown.org> |
| **Sent:** | Thursday, January 23, 2020 6:55 PM |
| **To:** | Matt Hiles |
| **Cc:** | Wayne Reed |
| **Subject:** | RE: [EXTERNAL] Mansions and Luxe |

Hi Matt

Thank you for reaching out. We did discuss your request and as a team we determined the following:

1) The development does not appear to be exempt from platting. If you believe you are exempt from platting the City has a legal lot development process in which you can share your reasoning. Should you want to explore this option please let me know and I can get a planner to share this information with you.

2) Should you desire to connect to the City wastewater system annexation will be required. We do not support a delayed annexation approach at this point.

Please let me know if you would like to discuss further.

Sincerely,

Sofia Nelson
Planning Director
City of Georgetown
512.931.7611

**From:** Matt Hiles <MattH@livew3.com>
**Sent:** Wednesday, January 22, 2020 5:34 PM
**To:** Sofia Nelson <Sofia.Nelson@georgetown.org>
**Cc:** Wayne Reed <Wayne.Reed@georgetown.org>
**Subject:** [EXTERNAL] Mansions and Luxe

[EXTERNAL EMAIL]

Sofia,
Please site plan attached showing a 5 acre Park in place of the wastewater treatment plant. Also, please let me know how the discussions went yesterday.
Thanks,
Matt



MATTHEW HILES • EXECUTIVE VICE PRESIDENT
2505 N STATE HWY 360 | SUITE 800
GRAND PRAIRIE, TX 75050
(972) 471-8700
MATTH@LIVEW3.COM

1

00077

**AIRW - EXH. 4**

| | |
|---|---|
| **From:** | Roger Gunderman <RGunderman@mbcengineers.com> |
| **Sent:** | Wednesday, February 19, 2020 4:44 PM |
| **To:** | Matt Hiles |
| **Subject:** | Fwd: Apartment site Sewer service - westinghouse rd/ Cr110 |

Matt,

Please see below. Will this email from the city of Round Rock be sufficient?

Thanks

Roger Gunderman
TBPE Firm # F-784

Begin forwarded message:

> **From:** Chris Perkins <cperkins@roundrocktexas.gov>
> **Date:** February 19, 2020 at 4:35:50 PM CST
> **To:** Roger Gunderman <RGunderman@mbcengineers.com>
> **Subject: RE:  Apartment site Sewer service - westinghouse rd/ Cr110**
>
>
> Roger,
>
> Thank you for reaching out. We have reviewed the property below. It is currently outside of the City of Round Rock's City Limits, ETJ and wastewater CCN. As it stands currently, the City of Round Rock is unable to serve this property with wastewater.
>
> If the development is able to be released from the City of Georgetown's ETJ and is able to get contiguous and annexed into the City of Round Rock City Limits, we could further evaluate the possibility of serving this development with wastewater. All offsite costs associated with bringing wastewater to the site would be on the developer.
>
> Thanks,
>
> Kit Perkins, P.E.
> City of Round Rock
> cperkins@roundrocktexas.gov
> (W) 512-341-3145
>
>
> **From:** Roger Gunderman <RGunderman@mbcengineers.com>
> **Sent:** Friday, February 14, 2020 2:23 PM
> **To:** Chris Perkins <cperkins@roundrocktexas.gov>
> **Subject:** Apartment site Sewer service - westinghouse rd/ Cr110
>
> External Email - Please verify sender authenticity

1

00078

**AIRW - EXH. 4**

Mr. Perkins,

Thank you for returning my call. The screenshot below shows the tract we discussed for Round rock sewer service. Could you please send me a letter verifying if the City of Round Rock will provide wastewater service to this project?

Thanks,



Roger W. Gunderman, P.E.
Vice President
Macina, Bose, Copeland and Associates, Inc.

2

**AIRW - EXH. 4**

TBPE Firm Registration #784 | SBE Certified
TBPLS Firm Registration No. 10011700
1035 Central Parkway North | San Antonio, Texas 78232
210-545-1122 ext. 126 | 210-545-9302 fax
www.mbcengineers.com | rgunderman@mbcengineers.com

00080

**AIRW - EXH. 4**

**Attachment I**

**Design Calculations**

**Tech Report 1.1, Section 4**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**DESIGN CALCULATIONS AND PLANT FEATURES**

**Rockride Lane Water Resource Reclamation Facility**
Activated Sludge Plant Design Features

**Quantity and Quality of WW**

| | | |
|---|---|---|
| Number of Units | 880 | |
| Persons/Unit | 2.5 | |
| Total Population | 2200 | |
| Flow Per Person | 90 | GPCD |
| Average Flow | 0.2 | MGD |
| Peaking Factor | 4 | |
| Peak Flow | 0.8 | MGD |
| BOD | 300 | mg/l |
| NH3-N | 30 | mg/l |

**Aeration**

| | | | |
|---|---|---|---|
| O2 Req TCEQ eq. | 1.63 | lb O2/lb BOD | |
| O2 Req for BOD Ox | 2.2 | lb O2/lb BOD | TCEQ States minimum for extended aeration is 2.2 |
| O2 Req for NH3 Ox | 4.6 | lb O2/lb BOD | Typically used. TCEQ does not state what to use. |

*Atmospheric Pressure Calcs*

| | | |
|---|---|---|
| Temp | 85 | F |
| Temp | 29.4 | C |
| Elevation | 815 | feet |
| Elevation | 0.25 | km |
| Psite | 0.97 | atm |
| Psite | 29.0 | in Hg |
| Pstd | 29.92 | in Hg |

*AOR/SOR Calcs*

| | | | |
|---|---|---|---|
| C* DO Conc. @ Sea Level & 20C | 9.080 | mg/l | Metcalf and Eddy Appendix D |
| Cp DO Conc. @ Site Temp | 7.680 | mg/l | Metcalf and Eddy Appendix D |
| alpha | 0.6 | | Typically 0.5-0.8 |
| beta | 0.98 | | ~0.98 |
| theta | 1.024 | | ~1.024 |
| DO req | 2 | mg/l | |
| AOR/SOR | 0.439 | | |

*AOR Calcs*

| | | |
|---|---|---|
| BOD Loading | 500.4 | PPD |
| NH3 Loading | 50.0 | PPD |
| BOD O2 Req | 1100.9 | lb O2/day |
| NH3-N O2 Req | 230.2 | lb O2/day |
| Total AOR | 1331.1 | lb O2/day |

Prepared by Mark A. Perkins
Texas PE 60329
Perkins Engineering Consultants, Inc.
TBPE Firm F 8699

00082

**AIRW - EXH. 4**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**DESIGN CALCULATIONS AND PLANT FEATURES**

### *Aeration Requirement Calcs*

| | | | |
|---|---|---|---|
| SOR | 3033.7 | lb O2/day | |
| Oxygen Concentraiton | 0.23 | lb O2/lb air | TCEQ 217 |
| Density of Air | 0.075 | lb air/cu ft | TCEQ 217 |
| Transfer Efficiency | 26% | Percent | |
| RAF W/Out Correction Factor | 470 | SCFM | |
| Submergence Correction Factor | 1.56 | | TCEQ 217 |
| RAF W/ Correction Factor | 732.8 | SCFM | |
| | | | |
| Minimum Airflow Rate | **3200.0** | CFM/day lb BOD | TCEQ 217 |
| Aeration Basin Airflow Requirement | **1112.0** | CFM | |

### *Aeration Basin Volume Calcs*

| | | |
|---|---|---|
| TCEQ MAX. Organic Loading | 35 | lb BOD/d/1000cf |
| Aeration Basin Volume Required | **14297.1** | cu ft |
| Aeration Basin Volume Required | 106942.6 | gal |

## Clarifier

| | | | |
|---|---|---|---|
| Minimum DT | 1.8 | hours | |
| Volume of Clarifier | 8021.4 | cu ft | |
| Maximum Surface Loading @ Peak | 1200 | gal/day/sq ft | |
| Maximum Surface Loading @ ADF | 600 | gal/day/sq ft | |
| Area of Clarifier | 666.7 | sq ft | |
| Diameter of Clarifier | 29.1 | ft | |
| Side Water Depth | 12.03 | ft | |

### *Clarifier Minimum Dimensions to Meet TCEQ*

| | | | |
|---|---|---|---|
| Actual Clarifeir Area | **804.2** | sq ft | |
| Actual Diameter of Clarifier | **32** | ft | |
| Actual Side Water Depth | **10** | ft | TCEQ minimum for surface areas larger than 300 sq ft |
| Actual Volume of Clarifier | **8042.5** | cu ft | |
| Actual Surface Loading | **995** | gal/day/sq ft | |
| Actual Detention Time @ Peak | **1.80** | hours | |
| Actual Detention Time @ ADF | **7.2** | hours | |

## Chlorine Disinfection

| | | | |
|---|---|---|---|
| Minimum Contact Time | 20 | min | TCEQ Minimum |
| Chlorine Contact Basin Volume | **1485** | cu feet | |

### *Nitrified/Tertiary Filtration Effluent*

| | | | |
|---|---|---|---|
| Chlorine Concentration for Disinfection | 6 | mg/l | TCEQ minimum |
| Chlorine Demand @ Peak | 40.0 | PPD | |
| Chlorine Demand @ ADF | 10.0 | PPD | |
| Sodium Hypo Cl Concentration | 12.5% | % | |
| Sodium Hypochlorite Usage @ Peak | **13.3** | gal/hr | |
| Sodium Hypochlorite Usage @ Peak | **320.3** | gal/day | |
| Sodium Hypochlorite Usage @ ADF | **3.3** | gal/hr | |
| Sodium Hypochlorite Usage @ ADF | **80.1** | gal/day | |

Prepared by Mark A. Perkins
Texas PE 60329
Perkins Engineering Consultants, Inc.
TBPE Firm F 8699

00083

**AIRW - EXH. 4**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**DESIGN CALCULATIONS AND PLANT FEATURES**

**Aerobic Digester, If Used. Sludge Holding Tank with Decant may be Used**

| | | | | |
|---|---|---|---|---|
| Solids Yield | 0.7 | tons solids/MG | | |
| Max Solids Concentration of WAS | 2% | percent solids | TCEQ Max | |
| Solids @ ADF | 0.14 | tons/day | | |
| Solids @ ADF | 280 | lb/day | | 70 |
| Digester Detention Time | 60 | Days | TCEQ | 140 |
| Solid Accumulation At Digester Detention Time | 16800 | lb solids | | 210 |
| Volume of Solids | 100719 | gal | | |
| Volume of Solids | **13465** | cu ft | | |

**Blower Capacity**

| | | |
|---|---|---|
| Aeration | 1112 | SCFM |
| Airlifts | 40 | SCFM |
| Digester | 404 | SCFM |
| Total Blower Capacity | **1556** | SCFM |
| | | |
| Odor Control Capacity Digester Only | **1712** | SCFM |

**Filtration**

| | | | |
|---|---|---|---|
| Maximum Filtration Rate | 6.5 | gpm/sq ft @ Peak | TCEQ |
| Minimum Filter Surface Area | **85.5** | sq ft | |

Prepared by Mark A. Perkins
Texas PE 60329
Perkins Engineering Consultants, Inc.
TBPE Firm F 8699

00084

**AIRW - EXH. 4**

**ATTACHMENT I**

**AIRW2017-7, LP**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**DESIGN CALCULATIONS AND PLANT FEATURES**

Facility Design Features

    *a. Design Features for Reliability and Operating Flexibility*

The Water Resource Reclamation Facility (WRRF) will be designed heavy-duty protective coatings to prevent corrosion and provide a long, lasting system. Air diffusers will be constructed to allow removal, replacement, and inspection of diffusers without drain the basins. With the small size of this system, temporary pumping and hauling of wastewater can be done for short periods of time if necessary.

    *b. Excessive Inflow or Infiltration*

All treatment units offer approximately 18" freeboard.

The WWRF will only serve the proposed multi-family residential development. The plant will be designed for a peaking factor of four, although the development will have newly constructed gasketed sewer lines and a relatively short collection system, minimizing the potential for inflow and infiltration.

    *c. Power Failure*

A generator will be installed for backup power.

    *d. Equipment Malfunction*

Each major piece of mechanical equipment (pumps, blowers, and chemical feeders) will have redundant units provided. The plant will be designed to operate at capacity with the largest piece of any group of mechanical equipment out of service. The facility design will be tailored to produce effluent of a quality higher than that required by the permit.

    *e. Facility Unit Maintenance & Repair*

All major equipment will be accessible from the working surface above the plant or from ground level beside the plant. No underground confined spaces will require regular access.

00085

**AIRW - EXH. 4**

**Attachment J**

**Wind Rose**

**Tech Report 1.1, Section 5.B**

WES 20-001

00086

AIRW - EXH. 4



**ATTACHMENT J**
**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**WIND ROSE**

00087

**AIRW - EXH. 4**

**Attachment K**

**Sewage Sludge Solids Management Plan**

**Tech Report 1.1, Section 7**

WES 20-001

00088

**AIRW - EXH. 4**

**ATTACHMENT K**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT**
**APPLICATION FOR NEW PERMIT**

**SEWAGE SLUDGE SOLIDS MANAGEMENT PLAN**

- **TREATMENT UNITS AND PROCESS DIMENSIONS**

See Treatment Units presented in Section 3.B of the Technical Report, (form TCEQ-10054) page 2 of 80.

- **PROJECTED SOLIDS GENERATION:**

The table below shows the projected quantity of solids generated at design flow, and at 75%, 50%, and 25% design flow. The proposed Final Phase Design Flow is 0.20 MGD.

| Percent of Design Flow | Dry Pounds Per Day |
|---|---|
| 25% | 70 |
| 50% | 140 |
| 75% | 210 |
| 100% | 280 |

It is expected that sludge can be thickened by decanting to 2-percent solids in the plant's solids holding tank. Hauling frequency will vary based on flows, wasteloads, and thickening efficiency. Quantities shown above are based on an assumed production of 0.7 dry tons of solids per million gallons treated.

- **MLSS RANGE:**

MLSS in the aeration basin is expected to be in the 2,000 to 5,000 mg/l range.

- **OWNERSHIP OF ULTIMATE SLUDGE DISPOSAL SITE:**

Sludge is transported by registered hauler, Wastewater Transport Services LLC, Registration No. 24343.

Ultimate disposal site is to the Austin Wastewater Processing Facility, Permit No. 2384 in Travis County, Texas.

00089

AIRW - EXH. 4

| **From:** | Gordon Cooper |
| **To:** | Janet Sims; matth@liveW3.com |
| **Cc:** | Firoj Vahora |
| **Subject:** | WQ0015878001 AIRW 2017-7,LP - Additional Information and Materials Needed |
| **Date:** | Monday, October 19, 2020 9:08:30 AM |
| **Attachments:** | 15878001_20a_STDS.docx |
| **Importance:** | High |

Ms. Sims,

The TCEQ Water Quality Standards Implementation Team has reviewed the application and is recommending effluent limits for total phosphorus of 0.5 mg/l, based on conditions in the receiving stream.  Please provide a revised list of treatment units, flow diagram, and design calculations to include treatment for total phosphorus. For your convenience I have attached a copy of the memo from the Standards Implementation Team.

To avoid any unnecessary delays in processing the application for the draft permit for the proposed facility, please provide the additional information and materials to me as soon as possible, preferably no later than Monday, October 26, 2020.  Please let me know if additional time will be needed.

Thank you very much,
Gordon Cooper
Environmental Permit Specialist
TCEQ Municipal Wastewater Permits Team
Direct 512-239-1963; FAX 512-239-4430

**AIRW - EXH. 4**

# TCEQ Interoffice Memorandum

**To:**      Municipal Permits Team
Wastewater Permitting Section

**Thru:**    Lili Murphy, Standards Implementation Team Peer Review
Water Quality Assessment Section
Water Quality Division

**From:**    Jenna R. Lueg, Standards Implementation Team
Water Quality Assessment Section
Water Quality Division

**Date:**    6/26/2020

**Subject:**    AIRW 2017-7, L.P.; Permit no. WQ0015878001
New; Application received 4/6/2020

The discharge route for the above referenced permit is via pipe to an unnamed tributary, thence to Mankins Branch, thence the San Gabriel/North Fork San Gabriel River in Segment 1248 of the Brazos River Basin. The designated uses and dissolved oxygen criterion as stated in Appendix A of the Texas Surface Water Quality Standards (30 Texas Administrative Code §307.10) for Segment 1248 are primary contact recreation, public water supply, aquifer protection, high aquatic life use, and 5.0 mg/L dissolved oxygen. The aquifer protection use applies to the contributing, recharge, and transition zones of the Edwards Aquifer. The upper portion of Mankins Branch are in the transition zone.

Based on a nutrient screening, the Standards Implementation team recommends a total phosphorus limit of 0.5 mg/L.

Since the discharge is directly to an unclassified water body, the permit action was reviewed in accordance with 30 Texas Administrative Code §307.4(h) and (l) of the 2018 Texas Surface Water Quality Standards and the TCEQ's implementation procedures for the standards. Based on a receiving water assessment and/or other available information, a preliminary determination of the aquatic life uses in the area of the discharge impact has been performed and the corresponding dissolved oxygen criterion assigned.

Unnamed tributary; limited aquatic life use; 3.0 mg/L dissolved oxygen.
Mankins Branch (intermittent with perennial pools); limited aquatic life use; 3.0 mg/L dissolved oxygen.
Mankins Branch (perennial); high aquatic life use; 5.0 mg/L dissolved oxygen.

In accordance with 30 Texas Administrative Code §307.5 and the TCEQ implementation procedures (June 2010) for the Texas Surface Water Quality Standards, an antidegradation review of the receiving waters was performed. A Tier 1 antidegradation review has preliminarily determined that existing water quality uses will not be impaired by this permit action. Numerical and narrative criteria to protect existing uses will be maintained. A Tier 2 review has

00091

**AIRW - EXH. 4**

preliminarily determined that no significant degradation of water quality is expected Mankins Branch, which has been identified as having high aquatic life use.  Existing uses will be maintained and protected.  The preliminary determination can be reexamined and may be modified if new information is received.

The discharge from this permit action is not expected to have an effect on any federal endangered or threatened aquatic or aquatic dependent species or proposed species or their critical habitat.  This determination is based on the United States Fish and Wildlife Service's (USFWS) biological opinion on the State of Texas authorization of the Texas Pollutant Discharge Elimination System (TPDES; September 14, 1998; October 21, 1998 update).  To make this determination for TPDES permits, TCEQ and EPA only considered aquatic or aquatic dependent species occurring in watersheds of critical concern or high priority as listed in Appendix A of the USFWS biological opinion.  The determination is subject to reevaluation due to subsequent updates or amendments to the biological opinion.  The permit does not require EPA review with respect to the presence of endangered or threatened species.

| From: | Janet Sims |
|---|---|
| To: | Gordon Cooper |
| Cc: | Firoj Vahora; Matthew Hiles - W3 Luxury Living (Matth@Livew3.Com); Mark Perkins |
| Subject: | RE: WQ0015878001 AIRW 2017-7,LP - Additional Information and Materials Needed |
| Date: | Tuesday, October 20, 2020 5:27:07 PM |
| Attachments: | WES Georgetown Tech Rpt p. 2 Rev Oct 20 2020.pdf |
| | Att F - Flow Diagram Rev Oct 20 2020.pdf |
| | Att I - WWTP Calcs Rev Oct 20 2020.pdf |
| | Att K - Sewage Sludge Solids Management Plan.pdf |

Gordon,

As requested attached are the revised documents to the permit application that reflect the proposed treatment processes and treatment units for achieving the recommended 0.5 mg/L total phosphorus effluent limit.

The treatment process for achieving the proposed limit will be chemical addition.

The treatment unit list, flow schematic, and design calculations as well as the sludge handling facilities have been revised.  See attached.

In addition, AIRW 2017-7, LP is designing its system so that the treated effluent can be used for Type I beneficial reuse.  The applicant will submit an application for an Authorization for Reclaimed Water Use upon receiving a signed TPDES permit for the wastewater treatment facility.  The planned use for the reclaimed water is irrigation of landscape within the housing development.  The flow schematic was revised to include information related to diverting flows to a storage tank for beneficial reuse.

If you need additional information or clarification of the information submitted, please do not hesitate to call or contact me.

Thanks,

Janet Sims

Perkins Engineering Consultants, Inc.
Office: (512) 735-1001 | Cell: (512) 695-2468

---

**From:** Gordon Cooper <gordon.cooper@tceq.texas.gov>
**Sent:** Monday, October 19, 2020 9:08 AM
**To:** Janet Sims <jsims@perkinsconsultants.com>; matth@liveW3.com
**Cc:** Firoj Vahora <firoj.vahora@tceq.texas.gov>
**Subject:** WQ0015878001 AIRW 2017-7,LP - Additional Information and Materials Needed
**Importance:** High

Ms. Sims,

The TCEQ Water Quality Standards Implementation Team has reviewed the application and is recommending effluent limits for total phosphorus of 0.5 mg/l, based on conditions in the receiving stream.  Please provide a revised list of treatment units, flow diagram, and design calculations to include treatment for total phosphorus. For your convenience I have attached a copy of the memo from the Standards Implementation Team.

**AIRW - EXH. 4**

To avoid any unnecessary delays in processing the application for the draft permit for the proposed facility, please provide the additional information and materials to me as soon as possible, preferably no later than Monday, October 26, 2020.  Please let me know if additional time will be needed.

Thank you very much,

Gordon Cooper
Environmental Permit Specialist
TCEQ Municipal Wastewater Permits Team
Direct 512-239-1963; FAX 512-239-4430

**AIRW - EXH. 4**

**treatment plant, mode of operation, and all treatment units.** Start with the plant's head works and finish with the point of discharge. Include all sludge processing and drying units. **If more than one phase exists or is proposed in the permit, a description of *each phase* must be provided.** Process description:

> The proposed Rockride Lane Water Resource Reclamation Facility is an activated sludge enhanced secondary with nitrification process plant. The wastewater treatment plant will be a package plant with two aeration basins, a secondary clarifier, chlorine contact basin, effluent filter and an aerated sludge holding/thickening tank.

Port or pipe diameter at the discharge point, in inches: **12**

### B. Treatment Units

In Table 1.0(1), provide the treatment unit type, the number of units, and dimensions (length, width, depth) **of each treatment unit, accounting for *all* phases of operation**.

*Table 1.0(1) – Treatment Units*

| Treatment Unit Type | Number of Units | Dimensions (L x W x D) |
|---|---|---|
| Aeration Basins | 2 | 41' x 14' x 12.5' SWD |
| Secondary Clarifier | 1 | 32' dia. x 11' SWD |
| Chlorine Contact Basin | 1 | 14' x 12'x 9' SWD |
| Effluent Filter | 1 | -- |
| Aerated Sludge Holding/Thickening Tank | 1 | 34,000 gallons |
| | | |
| | | |

### C. Process flow diagrams

Provide flow diagrams for the existing facilities and **each** proposed phase of construction.

Attachment: **F**

## Section 3. Site Drawing (Instructions Page 52)

Provide a site drawing for the facility that shows the following:

# ACTIVATED SLUDGE – EXTENDED AERATION PROCESS



**ATTACHMENT F**
**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**PROCESS FLOW DIAGRAM**

Revised 10/20/20

00096

**AIRW - EXH. 4**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**DESIGN CALCULATIONS AND PLANT FEATURES**

**Rockride Lane Water Resource Reclamation Facility**
Activated Sludge Plant Design Features

**Quantity and Quality of WW**

| | | |
|---|---|---|
| Number of Units | 880 | |
| Persons/Unit | 2.5 | |
| Total Population | 2200 | |
| Flow Per Person | 90 | GPCD |
| Average Flow | 0.2 | MGD |
| Peaking Factor | 4 | |
| Peak Flow | 0.8 | MGD |
| BOD | 300 | mg/l |
| NH3-N | 30 | mg/l |

**Aeration**

| | | | |
|---|---|---|---|
| O2 Req TCEQ eq. | 1.63 | lb O2/lb BOD | |
| O2 Req for BOD Ox | 2.2 | lb O2/lb BOD | TCEQ States minimum for extended aeration is 2.2 |
| O2 Req for NH3 Ox | 4.6 | lb O2/lb BOD | Typically used. TCEQ does not state what to use. |

*Atmospheric Pressure Calcs*

| | | |
|---|---|---|
| Temp | 85 | F |
| Temp | 29.4 | C |
| Elevation | 815 | feet |
| Elevation | 0.25 | km |
| Psite | 0.97 | atm |
| Psite | 29.0 | in Hg |
| Pstd | 29.92 | in Hg |

*AOR/SOR Calcs*

| | | | |
|---|---|---|---|
| C* DO Conc. @ Sea Level & 20C | 9.080 | mg/l | Metcalf and Eddy Appendix D |
| Cp DO Conc. @ Site Temp | 7.680 | mg/l | Metcalf and Eddy Appendix D |
| alpha | 0.6 | | Typically 0.5-0.8 |
| beta | 0.98 | | ~0.98 |
| theta | 1.024 | | ~1.024 |
| DO req | 2 | mg/l | |
| AOR/SOR | 0.439 | | |

*AOR Calcs*

| | | |
|---|---|---|
| BOD Loading | 500.4 | PPD |
| NH3 Loading | 50.0 | PPD |
| BOD O2 Req | 1100.9 | lb O2/day |
| NH3-N O2 Req | 230.2 | lb O2/day |
| Total AOR | 1331.1 | lb O2/day |

Prepared by Mark A. Perkins
Texas PE 60329
Perkins Engineering Consultants, Inc.
TBPE Firm F 8699
Revised 10/20/20

00097

**AIRW - EXH. 4**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**DESIGN CALCULATIONS AND PLANT FEATURES**

*Aeration Requirement Calcs*

| | | | |
|---|---|---|---|
| SOR | 3033.7 | lb O2/day | |
| Oxygen Concentration | 0.23 | lb O2/lb air | TCEQ 217 |
| Density of Air | 0.075 | lb air/cu ft | TCEQ 217 |
| Transfer Efficiency | 26% | Percent | |
| RAF W/Out Correction Factor | 470 | SCFM | |
| Submergence Correction Factor | 1.56 | | TCEQ 217 |
| RAF W/ Correction Factor | 732.8 | SCFM | |
| | | | |
| **Minimum Airflow Rate** | **3200.0** | CFM/day lb BOD | TCEQ 217 |
| Aeration Basin Airflow Requirement | **1112.0** | CFM | |

*Aeration Basin Volume Calcs*

| | | | |
|---|---|---|---|
| TCEQ MAX. Organic Loading | 35 | lb BOD/d/1000cf | |
| Aeration Basin Volume Required | **14297.1** | cu ft | |
| Aeration Basin Volume Required | 106942.6 | gal | |

**Clarifier**

| | | |
|---|---|---|
| Minimum DT | 1.8 | hours |
| Volume of Clarifier | 8021.4 | cu ft |
| Maximum Surface Loading @ Peak | 1200 | gal/day/sq ft |
| Maximum Surface Loading @ ADF | 600 | gal/day/sq ft |
| Area of Clarifier | 666.7 | sq ft |
| Diameter of Clarifier | 29.1 | ft |
| Side Water Depth | 12.03 | ft |

*Clarifier Minimum Dimensions to Meet TCEQ*

| | | |
|---|---|---|
| Actual Clarifeir Area | **804.2** | sq ft |
| Actual Diameter of Clarifier | **32** | ft |
| Actual Side Water Depth | **11** | ft |
| Actual Volume of Clarifier | **8846.7** | cu ft |
| Actual Surface Loading | **995** | gal/day/sq ft |
| Actual Detention Time @ Peak | **1.99** | hours |
| Actual Detention Time @ ADF | **7.9** | hours |

**Chlorine Disinfection**

| | | | |
|---|---|---|---|
| Minimum Contact Time | 20 | min | TCEQ Minimum |
| Chlorine Contact Basin Volume | **1485** | cu feet | |
| | | | |
| Chlorine Concentration for Disinfection | 6 | mg/l | TCEQ minimum |
| Chlorine Demand @ Peak | 40.0 | PPD | |
| Chlorine Demand @ ADF | 10.0 | PPD | |
| Sodium Hypo Cl Concentration | 12.5% | % | |
| Sodium Hypochlorite Usage @ Peak | **1.5** | gal/hr | |
| Sodium Hypochlorite Usage @ Peak | **34.9** | gal/day | |
| Sodium Hypochlorite Usage @ ADF | **0.4** | gal/hr | |
| Sodium Hypochlorite Usage @ ADF | **8.7** | gal/day | |

Prepared by Mark A. Perkins
Texas PE 60329
Perkins Engineering Consultants, Inc.
TBPE Firm F 8699
Revised 10/20/20

00098

**AIRW - EXH. 4**

**ATTACHMENT I**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**DESIGN CALCULATIONS AND PLANT FEATURES**

## Tertiary Filtration

| | | | |
|---|---|---|---|
| Maximum Filtration Rate | 6.5 | gpm/sq ft @ Peak | TCEQ Maximum |
| Minimum Filter Surface Area | **85.5** | sq ft | |

## Phosphorus Removal

### *Ferric Chloride Dosage - Pre-Clarifier*

| | | |
|---|---|---|
| Plant Flow Rate | 0.2 | MGD |
| | 757000 | L/day |
| Estimated Influent Phosphorus | 7 | mg/L |
| Ferric Chloride Soln Strength | 40 | % |
| Density of Ferric Chloride Soln | 1.4 | kg/L |
| Fe Mol. Weight | 55.85 | g/mol |
| FeCL3 Mol. Weight | 162.2 | g/mol |
| P Mol. Weight | 30.97 | g/mol |
| kg FeCL3/L of Ferric Chloride Soln | 0.56 | kg/L |
| kg Fe/L of Ferric Chloride Soln | 0.193 | kg/L |
| Target Dosage | 1.75 | mol Fe/mol P |
| Fe Required | 3.16 | kg Fe/kg P |
| Ferric Chloride Soln Required | 16.37 | L/kg P |
| | 86.7 | L/day |
| Coagulant Dosage Rate | 64.2 | mg/L |

### *Additional Sludge Production*

| | | |
|---|---|---|
| Plant Flow Rate | 0.2 | MGD |
| | 757000 | L/day |
| Estimated Influent Phosphorus | 7 | mg/L |
| Ferric Chloride Soln Strength | 40 | % |
| Density of Ferric Chloride Soln | 1.4 | kg/L |
| Fe Mol. Weight | 55.85 | g/mol |
| FeCL3 Mol. Weight | 162.2 | g/mol |
| P Mol. Weight | 30.97 | g/mol |
| O Mol. Weight | 16 | g/mol |
| H Mol. Weight | 1 | g/mol |
| Target Dosage | 1.75 | mol Fe/mol P |
| Target Chemical Phosphorus Removal | 90 | % |
| | 0.203 | mMol/L |
| Fe added | 0.396 | mMol/L |
| Precipitate in Fe1.6(H2PO4)(OH)3.8 | 0.325 | mMol/L |
| Precipitate in Fe(OH)3 | 0.070 | mMol/L |
| MW of Fe1.6(H2PO4)(OH)3.8 | 250.9 | g/mol |
| MW of Fe(OH)3 | 106.85 | g/mol |
| Sludge as Fe1.6(H2PO4)(OH)3.8 | 51.04 | mg/L |
| Sludge as Fe(OH)3 | 7.49 | mg/L |
| Total Additional Sludge Production | 58.53 | mg/L |
| | 97.6 | lb/day |

Prepared by Mark A. Perkins
Texas PE 60329
Perkins Engineering Consultants, Inc.
TBPE Firm F 8699
Revised 10/20/20

00099

**AIRW - EXH. 4**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION**
**DESIGN CALCULATIONS AND PLANT FEATURES**

*Ferric Chloride Dosage - Post-Clarifier*

| | | |
|---|---|---|
| Plant Flow Rate | 0.2 | MGD |
| | 757000 | L/day |
| Estimated Influent Phosphorus | 0.7 | mg/L |
| Ferric Chloride Soln Strength | 40 | % |
| Density of Ferric Chloride Soln | 1.4 | kg/L |
| Fe Mol. Weight | 55.85 | g/mol |
| FeCL3 Mol. Weight | 162.2 | g/mol |
| P Mol. Weight | 30.97 | g/mol |
| kg FeCl3/L of Ferric Chloride Soln | 0.56 | kg/L |
| kg Fe/L of Ferric Chloride Soln | 0.193 | kg/L |
| Target Dosage | 0.84 | mol Fe/mol P |
| Fe Required | 1.51 | kg Fe/kg P |
| Ferric Chloride Soln Required | 7.86 | L/kg P |
| | 4.2 | L/day |
| Coagulant Dosage Rate | 3.1 | mg/L |

*Total Phosphorus Removal*

| | | |
|---|---|---|
| Estimated Influent Phosphorus | 7 | mg/L |
| Target Chemical Phosphorus Removal - Pre-Clarifier | 90 | % |
| Target Phosphorus Level - Clarifier Effluent | 0.7 | mg/L |
| Target Chemical Phosphorus Removal - Post-Clarifier | 50 | % |
| Target Phosphorus Level - Tertiary Filter Effluent | **0.35** | mg/L |

**Aerated Sludge Holding Tank with Decant Capability**

| | | | |
|---|---|---|---|
| Solids Yield | 0.7 | tons solids/MG | |
| Max Solids Concentration of WAS | 2% | percent solids | TCEQ Max |
| Solids @ ADF | 0.14 | tons/day | |
| Solids @ ADF | 280 | lb/day | |
| Digester Detention Time | 15 | Days | TCEQ |
| Solid Accumulation At Digester Detention Time | 4200 | lb solids | |
| Additional Solids from Coagulant | 98 | lb/day | |
| Additional Solids from Coagulant At Digester Detention | 1464 | lb solids | |
| Total Solids to Dispose | 5664 | lb solids | |
| Volume of Solids | 33959 | gal | |
| Volume of Solids | **4540** | cu ft | |

**Blower Capacity**

| | | |
|---|---|---|
| Aeration | 1112 | SCFM |
| Airlifts | 40 | SCFM |
| Digester | 136 | SCFM |
| Total Blower Capacity | **1288** | SCFM |
| | | |
| Odor Control Capacity Digester Only | **1417** | SCFM |

Prepared by Mark A. Perkins
Texas PE 60329
Perkins Engineering Consultants, Inc.
TBPE Firm F 8699
Revised 10/20/20

00100

**AIRW - EXH. 4**

# ATTACHMENT I

## AIRW2017-7, LP
### ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY
### NEW TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT APPLICATION
### DESIGN CALCULATIONS AND PLANT FEATURES

Facility Design Features

   a.  *Design Features for Reliability and Operating Flexibility*

The Water Resource Reclamation Facility (WRRF) will be designed heavy-duty protective coatings to prevent corrosion and provide a long, lasting system. Air diffusers will be constructed to allow removal, replacement, and inspection of diffusers without drain the basins. With the small size of this system, temporary pumping and hauling of wastewater can be done for short periods of time if necessary.

   b.  *Excessive Inflow or Infiltration*

All basins offer approximately 18" freeboard, and the clarifier offers a 12" freeboard in accordance with TCEQ design criteria.

The WWRF will only serve the proposed multi-family residential development. The plant will be designed for a peaking factor of four, although the development will have newly constructed gasketed sewer lines and a relatively short collection system, minimizing the potential for inflow and infiltration.

   c.  *Power Failure*

A generator will be installed for backup power.

   d.  *Equipment Malfunction*

Each major piece of mechanical equipment (pumps, blowers, and chemical feeders) will have redundant units provided.  The plant will be designed to operate at capacity with the largest piece of any group of mechanical equipment out of service. The facility design will be tailored to produce effluent of a quality higher than that required by the permit.

   e.  *Facility Unit Maintenance & Repair*

All major equipment will be accessible from the working surface above the plant or from ground level beside the plant. No underground confined spaces will require regular access.

00101

**AIRW - EXH. 4**

**ATTACHMENT K**

**AIRW 2017-7, L.P.**
**ROCKRIDE LANE WATER RESOURCE RECLAMATION FACILITY**
**TEXAS POLLUTANT DISHARGE ELIMINATION SYSTEM PERMIT**
**APPLICATION FOR NEW PERMIT**

**SEWAGE SLUDGE SOLIDS MANAGEMENT PLAN**

- **TREATMENT UNITS AND PROCESS DIMENSIONS**

See Treatment Units presented in Section 3.B of the Technical Report, (form TCEQ-10054) page 2 of 80.

- **PROJECTED SOLIDS GENERATION:**

The table below shows the projected quantity of solids generated at design flow, and at 75%, 50%, and 25% design flow. The proposed Final Phase Design Flow is 0.20 MGD.

| Percent of Design Flow | Dry Pounds Per Day |
|---|---|
| 25% | 95 |
| 50% | 189 |
| 75% | 284 |
| 100% | 378 |

It is expected that sludge can be thickened by decanting to 2-percent solids in the plant's solids holding tank. Hauling frequency will vary based on flows, wasteloads, and thickening efficiency. Quantities shown above are based on an assumed production of 0.7 dry tons of solids per million gallons treated with an additional 58.5 mg/L solids produced from the coagulant dosage for phosphorus removal.

- **MLSS RANGE:**

MLSS in the aeration basin is expected to be in the 2,000 to 5,000 mg/l range.

- **OWNERSHIP OF ULTIMATE SLUDGE DISPOSAL SITE:**

Sludge is transported by registered hauler, Wastewater Transport Services LLC, Registration No. 24343.

Ultimate disposal site is to the Austin Wastewater Processing Facility, Permit No. 2384 in Travis County, Texas.

00102

**AIRW - EXH. 4**

**From:** Gordon Cooper
**To:** Janet Sims
**Cc:** Firoj Vahora; Matthew Hiles - W3 Luxury Living (Matth@Livew3.Com); Mark Perkins
**Subject:** RE: Comments to Draft TPDES Permit WQ0015878001
**Date:** Wednesday, January 20, 2021 1:34:17 PM
**Importance:** High

Ms. Sims,

We have received a comment and contested case hearing request from the City of Georgetown regarding regionalization issues.

Based on the comments I am going to need the permittee to provide additional information that includes a justification for the proposed facility and a cost analysis of expenditures that includes the cost of connecting to the CCN facilities versus the cost of the proposed facility or expansion.

Please provide this information to me as soon as possible (preferably by Friday, January 29, 2021) and make sure that this information is also with the application and draft permit at the site that was designated for the public to be able to view and copy the application, draft permit, etc.

Thank you very much,

Gordon Cooper
Environmental Permit Specialist
TCEQ Municipal Wastewater Permits Team
Direct 512-239-1963; FAX 512-239-4430

---

**From:** Janet Sims <jsims@perkinsconsultants.com>
**Sent:** Thursday, November 5, 2020 1:58 PM
**To:** Gordon Cooper <gordon.cooper@tceq.texas.gov>
**Cc:** Firoj Vahora <firoj.vahora@tceq.texas.gov>; Matthew Hiles - W3 Luxury Living (Matth@Livew3.Com) <matth@livew3.com>; Mark Perkins <mperkins@perkinsconsultants.com>
**Subject:** Comments to Draft TPDES Permit WQ0015878001

Gordon,
Thank you for preparing the draft permit so quickly.
Attached are our review comments.
Please do not hesitate to contact me if you have any questions.

Thanks,

Janet Sims | Senior Project Manager

Perkins Engineering Consultants, Inc.
13740 N. Highway 183, Unit L-6
Austin, Texas 78750

00103

**AIRW - EXH. 4**

Office: (512) 735-1001 | Cell: (512) 695-2468
jsims@perkinsconsultants.com | http://www.perkinsconsultants.com/

00104

**AIRW - EXH. 4**



PERKINS
ENGINEERING
CONSULTANTS, INC.
13740 N. Highway 183 #L6
Austin, TX 78750
Office: 512-735-1001
www.perkinsconsultants.com

January 29, 2021


Gordon Cooper
Municipal Wastewater Permit Team (MC 148)
Water Quality Division
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, TX 78711-3087

Re:    AIRW2017-7, L.P. – Rockride Lane Water Resource Reclamation Facility
       Draft Permit WQ0015878001


Dear Mr. Cooper:

As requested, AIRW2017-7, L.P. is submitting additional information to justify the proposed permit for the Rockride Lane Water Resource Reclamation Facility.  An analysis of the costs associated with connecting to the City of Georgetown (City) collection system has been conducted.

As presented in Attachment H of the application submitted on April 6, 2020, correspondence from the City's Planning Director, Ms. Sofia Nelson, to AIRW2017-7, L.P.'s Vice President Matthew Hiles was presented.  Ms. Nelson indicated that in order to connect to the City's collection system, annexation of the property owned by AIRW2017-7, L.P. was required. (See enclosure 1.)

The costs associated with annexation by the City of Georgetown have been estimated to reduce the value of the applicant's developed project by over $20 million. The annexation costs are based on lost value of the property when sold, payment of additional City taxes and fees, and costs to comply with the City's zoning requirements.

It is anticipated that upon completion of the construction of housing units and land improvements the value of the developed site will be between $138,250,000 and $172,800,000. At a city tax rate of $0.41872/ $100, the annual taxes owed to the City will be between $580,600 and $725,750.  The lost value of the property attributable to City taxes alone are estimated to be between $13,000,000 and $18,000,000 under the arrangements proposed by the City as conditions of service.

In addition, the City has informed AIRW2017-7, L.P. that some of the land at the site must be dedicated to uses other than residential.  Commercial uses were suggested.  This requirement is a significant change to the planned development, not consistent with the owner's planned use, and represents further loss of value attributable to the conditions of service proposed by the City.

Although, AIRW2017-7, L.P. agrees that regionalization of wastewater treatment facilities is generally a sound concept, in this situation operating a privately owned wastewater treatment

facility designed to meet very stringent discharge limits is *substantially* less costly than obtaining service from the City. The construction cost of an advanced treatment facility, capable of meeting effluent quality restrictions very similar to those Georgetown must meet at its four dispursed facilities, will be on the order of $5 million. This cost includes a planned storage tank and reuse system for AIRW2017-7, L.P. to capture and reuse as much effluent as practical on its own site for landscape irrigation. The proposed wastewater treatment facility is less than 1/4th of the lost development value that AIRW2017-7 L.P. would incur by obtaining service from Georgetown. This assessment is without impact fees and consideration given to the line extensions that would need to be paid for. While the City has indicated that service can be provided, it has not offered an economically viable option for such service.

AIRW2017-7, L.P. proposes to construct an advanced treatment facility capable of meeting and exceeding the very stringent effluent quality standards established in the draft permit. The effluent is expected to be fully compliant with its permit. AIRW2017-7, L.P. values the highly treated effluent and the quality thereof, and plans to invest approximately $1 million to capture and beneficially reuse the effluent on its own property to the maximum practical extent.

If you have questions about the information presented, please contact me at (512) 735-1001.

Sincerely,

*Janet Sims*

Janet Sims
Perkins Engineering Consultants, Inc.

Cc:     Matthew Hiles, AIRW2017-7, L.P.

**Matt Hiles**

| | |
|---|---|
| **From:** | Sofia Nelson <Sofia.Nelson@georgetown.org> |
| **Sent:** | Thursday, January 23, 2020 6:55 PM |
| **To:** | Matt Hiles |
| **Cc:** | Wayne Reed |
| **Subject:** | RE: [EXTERNAL] Mansions and Luxe |

Hi Matt

Thank you for reaching out. We did discuss your request and as a team we determined the following:

1) The development does not appear to be exempt from platting. If you believe you are exempt from platting the City has a legal lot development process in which you can share your reasoning. Should you want to explore this option please let me know and I can get a planner to share this information with you.

2) Should you desire to connect to the City wastewater system annexation will be required. We do not support a delayed annexation approach at this point.

Please let me know if you would like to discuss further.

Sincerely,

Sofia Nelson
Planning Director
City of Georgetown
512.931.7611

**From:** Matt Hiles <MattH@livew3.com>
**Sent:** Wednesday, January 22, 2020 5:34 PM
**To:** Sofia Nelson <Sofia.Nelson@georgetown.org>
**Cc:** Wayne Reed <Wayne.Reed@georgetown.org>
**Subject:** [EXTERNAL] Mansions and Luxe

[EXTERNAL EMAIL]

Sofia,
Please site plan attached showing a 5 acre Park in place of the wastewater treatment plant. Also, please let me know how the discussions went yesterday.
Thanks,
Matt



LUXURY
LIVING

MATTHEW HILES • EXECUTIVE VICE PRESIDENT
2505 N STATE HWY 360 | SUITE 800
GRAND PRAIRIE, TX 75050
(972) 471-8700
MATTH@LIVEW3.COM

1

00107

**AIRW - EXH. 4**



PERKINS
ENGINEERING
CONSULTANTS, INC.

13740 N. Highway 183 #L6
Austin, TX 78750
Office: 512-735-1001
www.perkinsconsultants.com

February 2, 2021

Gordon Cooper
Municipal Wastewater Permit Team (MC 148)
Water Quality Division
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, TX 78711-3087

Re:     AIRW2017-7, L.P. – Rockride Lane Water Resource Reclamation Facility
        Draft Permit WQ0015878001

Dear Mr. Cooper:

Last week I sent a response to your recent inquiry regarding AIRW2017-7, L.P.'s proposed permit for the Rockride Lane Water Resource Reclamation Facility. The applicant would like to offer additional information to clarify the cost of annexation and thus of obtaining wastewater service from the City of Georgetown (City) at this property, which is not in the City's sewer CCN.

AIRW2017-7, L.P. and its affiliates have developed numerous luxury multi-family properties in Texas. The value of the developed property is largely a function of the annual net operating income produced by the property, divided by a capitalization rate. The capitalization rate, expressed as a percentage, is the ratio of a property's net income to its purchase price, and is a key component in determining the value of the developed project. Capitalization rates in today's market for properties like the one proposed for this site are on the order of 4.0 to 4.5%. The market value of the developed project is thus its net income times the inverse of the capitalization rate, or 22.222 to 25 times its net income.

Since service from Georgetown is dependent on annexation and thus upon payment of the City property tax rates cited in my previous letter, the annual cost of property taxes is an operating expense that would not otherwise be incurred. It is capitalized at this rate and thus affects the value of the project by 22.222 to 25 times the annual property tax amount.

Zoning restrictions and other costs of connection further add to the cost of service to the extent that receiving wastewater service from the City simply is not an economically viable alternative for AIRW2017-7, L.P.

If you have questions about the information presented, please contact me at (512) 735-1001.

Sincerely,

Janet Sims
Perkins Engineering Consultants, Inc.

Cc:     Matthew Hiles, AIRW2017-7, L.P.

00108
AIRW - EXH. 4

# APPENDIX 4

**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY**

(https://www.tceq.texas.gov)

Home (https://www.tceq.texas.gov)  /  Permits, Registrations, and Reporting
(https://www.tceq.texas.gov/permitting)  /  Wastewater Treatment
(https://www.tceq.texas.gov/permitting/wastewater)  /  TCEQ Regionalization Policy for Wastewater Treatment

# TCEQ Regionalization Policy for Wastewater Treatment

**Information for applicants and the public about the requirements associated with regionalization and TCEQ's role in reviewing domestic wastewater permit applications.**

---

**On this page:**

- **What is wastewater regionalization?**
- **When does TCEQ assess for wastewater regionalization?**
- **How has TCEQ decided on wastewater regionalization in the past?**
- **What do I need to provide as an applicant, for TCEQ to assess the need and availability of regionalization during the wastewater permitting process?**
- **How can the public participate in the wastewater permitting process?**

---

## What is wastewater regionalization?

Regionalization is the administrative or physical combination of two or more community wastewater systems for improved planning operation or management.

Texas Water Code (TWC) Section 26.081 provides Texas' regionalization policy for wastewater treatment. It states that TCEQ is to implement a policy to "encourage and promote the development and use of regional and area-wide waste collection, treatment, and disposal systems to serve the waste disposal needs of the citizens of the state and to prevent pollution and maintain and enhance the quality of the water in the state".

In furtherance of that policy TWC Section 26.0282 authorizes TCEQ, when considering issuing a permit to discharge waste, to deny or alter the terms and conditions of a proposed permit based on need and the availability of existing or proposed area-wide or regional waste collection, treatment, and disposal systems.

▲ **Back to top**

## When does TCEQ assess for wastewater regionalization?

TCEQ will assess for the need and availability of regionalization for wastewater during the permitting process. The presence of a wastewater treatment facility or wastewater collection system within three miles of a proposed new wastewater treatment facility or the expansion of an existing facility is <u>not</u> an automatic basis to deny an application or to compel an applicant to connect to an existing facility.

TCEQ may approve new, renewal, and major amendment applications for discharges of wastewater in any of the following situations where:

- There is no wastewater treatment facility or collection system within three miles of the proposed facility.
- The applicant requested service from wastewater treatment facilities within the 3 miles, and the request was denied.
- The applicant can successfully demonstrate that an exception to regionalization should be granted based on costs, affordable rates, and/or other relevant factors.
- The applicant has obtained a Certificate of Convenience and Necessity (CCN) for the service area of the proposed new facility or the proposed expansion of the existing facility.

🔺 **Back to top**

## How has TCEQ decided on wastewater regionalization in the past?

TCEQ has not denied any wastewater permit actions based solely on regionalization, and the agency supports new applicants and existing facilities productively working together to provide quality and cost-effective service. The following concerns related to regionalization were raised during previous wastewater permit actions and subsequent legal proceedings:

- lack of timely and cost-efficient wastewater services within the surrounding area
- lack of detailed cost analysis and comparison
- lack of thorough communication with existing facilities within a three-mile radius
- discharges within the Cibolo Creek Watershed per Title 30 , Texas Administrative Code (30 TAC), Section 351.65

TCEQ has previously included agreed language between the applicant and protestants in the "Other Requirements" section of the proposed permit that contains requirements about future coordination if the existing wastewater provider is able to provide service to proposed area.

🔺 **Back to top**

## What do I need to provide as an applicant, for TCEQ to assess the need and availability of regionalization during the wastewater permitting process?

TCEQ requires that you include justification of permit need in all wastewater permit applications for new facilities and all applications to amend an existing permit. Section 1.1 of the Domestic Technical Report for wastewater permit applications also requires the following information:

GT EXH. 15

1. Determine whether or not there are any permitted domestic wastewater treatment facilities or collection systems within a three-mile radius of the proposed facility.
   - Tools to use:
     - **Wastewater Outfall Map Viewer** 🔗
       **(https://tceq.maps.arcgis.com/apps/webappviewer/index.html? id=d47b9419f42c49dea592203aeda99da1)**
     - **PUC CCN Map Viewer** 🔗
       **(https://www.puc.texas.gov/industry/water/utilities/map.aspx)**
2. Contact any existing permitted domestic wastewater treatment facilities within a three-mile radius to inquire if they currently have the capacity to accept or are willing to expand to accept the volume of wastewater proposed.
   - If an existing facility does have the capacity to accept the proposed wastewater, submit an analysis of expenditures required to connect to the existing facility or collection system versus the cost of constructing and operating the proposed new facility or expansion.
3. Provide copies of all correspondence with the owners and/or operators of any existing permitted domestic wastewater treatment facilities and collection systems within a three-mile radius of the proposed facility.

▲ Back to top

## How can the public participate in the wastewater permitting process?

- **Environmental Permitting: Participating in the Process (/agency/decisions/participation/permitting-participation)**
- **Permits for Municipal Wastewater Treatment Plants: Learning More (/agency/decisions/participation/permitting-participation/municipal-wastewater)**

▲ Back to top

# APPENDIX 5

**16 TAC § 24.225**

This document reflects all regulations in effect as of April 30, 2025

TX - Texas Administrative Code    >    TITLE 16. ECONOMIC REGULATION    >
PART 2. PUBLIC UTILITY COMMISSION OF TEXAS    >    CHAPTER 24. SUBSTANTIVE
RULES APPLICABLE TO WATER AND SEWER SERVICE PROVIDERS    >    SUBCHAPTER
H. CERTIFICATES OF CONVENIENCE AND NECESSITY

## § 24.225. Certificate of Convenience and Necessity Required

(a) Unless otherwise specified, a utility or a water supply or sewer service corporation may not in any way provide retail water or sewer utility service directly or indirectly to the public without first having obtained from the commission a certificate of convenience and necessity (CCN). Except as otherwise provided by this subchapter, a retail public utility may not provide, make available, or extend retail water or sewer utility service to any area to which retail water or sewer utility service is being lawfully provided by another retail public utility without first obtaining a CCN that includes the area in which the consuming facility is located.

(b) A district may not provide services within the certificated service area of a retail public utility or within the boundaries of another district without the retail public utility's or district's consent, unless the district has a CCN to provide retail water or sewer utility service to that area.

(c) Except as otherwise provided by this subchapter, a retail public utility may not provide retail water or sewer utility service within the boundaries of a district that provides the same type of retail water or sewer utility service without the district's consent, unless the retail public utility has a CCN to provide retail water or sewer utility service to that area.

(d) A person that is not a retail public utility, a utility, or a water supply or sewer service corporation that is operating under provisions in accordance with TWC § 13.242(c) may not construct facilities to provide retail water or sewer utility service to more than one service connection that is not on the property owned by the person and that is within the certificated service area of a retail public utility without first obtaining written consent from the retail public utility.

(e) A supplier of wholesale water or sewer service may not require a purchaser to obtain a CCN if the purchaser is not otherwise required by this chapter to obtain a CCN.

## History

**SOURCE:**

The provisions of this § 24.225 adopted to be effective October 17, 2018, 43 TexReg 6826

Annotations

## Research References & Practice Aids

**CROSS-REFERENCES:**

This Chapter cited in 16 TAC § 25.2, (relating to Cross-Reference Transition Provision); 16 TAC § 26.2, (relating to Cross-Reference Transition Provision)

TEXAS ADMINISTRATIVE CODE

End of Document

# APPENDIX 6

## 30 TAC § 39.405

This document reflects all regulations in effect as of April 30, 2025

TX - Texas Administrative Code    >    TITLE 30. ENVIRONMENTAL QUALITY    >
PART 1. TEXAS COMMISSION ON ENVIRONMENTAL QUALITY    >    CHAPTER 39.
PUBLIC NOTICE    >    SUBCHAPTER H. APPLICABILITY AND GENERAL PROVISIONS

## § 39.405. General Notice Provisions

(a) Failure to publish notice. If the Office of the Chief Clerk (chief clerk) prepares a newspaper notice that is required by Subchapters G - J. L. and M of this chapter (relating to Public Notice for Applications for Consolidated Permits; Applicability and General Provisions; Public Notice of Solid Waste Applications; Public Notice of Water Quality Applications and Water Quality Management Plans; Public Notice of Injection Well and Other Specific Applications; and Public Notice for Radioactive Material Licenses) and the applicant does not cause the notice to be published within 45 days of mailing of the notice from the chief clerk, or for Notice of Receipt of Application and Intent to Obtain Permit, within 30 days after the executive director declares the application administratively complete, or fails to submit the copies of notices or affidavit required in subsection (e) of this section, the executive director may cause one of the following actions to occur.

   (1) The chief clerk may cause the notice to be published and the applicant shall reimburse the agency for the cost of publication.

   (2) The executive director may suspend further processing or return the application. If the application is resubmitted within six months of the date of the return of the application, it will be exempt from any application fee requirements.

(b) Electronic mailing lists. The chief clerk may require the applicant to provide necessary mailing lists in electronic form.

(c) Mail or hand delivery. When Subchapters G - L of this chapter require notice by mail, notice by hand delivery may be substituted. Mailing is complete upon deposit of the document, enclosed in a prepaid, properly addressed wrapper, in a post office or official depository of the United States Postal Service. If hand delivery is by courier-receipted delivery, the delivery is complete upon the courier taking possession.

(d) Combined notice. Notice may be combined to satisfy more than one applicable section of this chapter.

(e) Notice and affidavit. When Subchapters G - J and L of this chapter require an applicant to publish notice, the applicant must file a copy of the published notice and a publisher's affidavit with the chief clerk certifying facts that constitute compliance with the requirement. The deadline to file a copy of the published notice which shows the date of publication and the name of the newspaper is ten business days after the last date of publication. The deadline to file the affidavit is 30 calendar days after the last date of publication for each notice. Filing an affidavit certifying facts that constitute compliance with notice requirements creates a rebuttable presumption of compliance with the requirement to publish notice. When the chief clerk publishes notice under subsection (a) of this section, the chief clerk shall file a copy of the published notice and a publisher's affidavit.

(f) Published notice. When this chapter requires notice to be published under this subsection:

   (1) the applicant shall publish notice in the newspaper of largest circulation in the county in which the facility is located or proposed to be located or, if the facility is located or proposed to be located in a municipality, the applicant shall publish notice in any newspaper of general circulation in the municipality;

**(2)** for applications for solid waste permits and injection well permits, the applicant shall publish notice in the newspaper of largest general circulation that is published in the county in which the facility is located or proposed to be located. If a newspaper is not published in the county, the notice must be published in any newspaper of general circulation in the county in which the facility is located or proposed to be located. The requirements of this subsection may be satisfied by one publication if the newspaper is both published in the county and is the newspaper of largest general circulation in the county; and

**(3)** air quality permit applications required by Subchapters H and K of this chapter (relating to Applicability and General Provisions and Public Notice of Air Quality Permit Applications, respectively) to publish notice shall comply with the requirements of § 39.603 of this title (relating to Newspaper Notice).

**(g)** Copy of application. The applicant shall make a copy of the application available for review and copying at a public place in the county in which the facility is located or proposed to be located. If the application is submitted with confidential information marked as confidential by the applicant, the applicant shall indicate in the public file that there is additional information in a confidential file. The copy of the application must comply with the following.

**(1)** A copy of the administratively complete application must be available for review and copying beginning on the first day of newspaper publication of Notice of Receipt of Application and Intent to Obtain Permit and remain available for the publications' designated comment period.

**(2)** A copy of the complete application (including any subsequent revisions to the application) and executive director's preliminary decision must be available for review and copying beginning on the first day of newspaper publication required by this section and remain available until the commission has taken action on the application or the commission refers issues to State Office of Administrative Hearings; and

**(3)** where applicable, for air quality permit applications, the applicant shall also make available the executive director's draft permit, preliminary determination summary and air quality analysis for review and copying beginning on the first day of newspaper publication required by § 39.419 of this title (relating to Notice of Application and Preliminary Decision) and remain available until the commission has taken action on the application or the commission refers issues to State Office of Administrative Hearings.

**(h)** Failure to publish notice of air quality permit applications. If the chief clerk prepares a newspaper notice that is required by Subchapters H and K of this chapter for air quality permit applications and the applicant does not cause the notice to be published within 45 days of mailing of the notice from the chief clerk, or, for Notice of Receipt of Application and Intent to Obtain Permit, within 30 days after the executive director declares the application administratively complete, or fails to submit the copies of notices or affidavit required in subsection (i) of this section, the executive director may cause one of the following actions to occur.

**(1)** The chief clerk may cause the notice to be published and the applicant shall reimburse the agency for the cost of publication.

**(2)** The executive director may suspend further processing or return the application. If the application is resubmitted within six months of the date of the return of the application, it will be exempt from any application fee requirements.

**(i)** Notice and affidavit for air quality permit applications. When Subchapters H and K of this chapter require an applicant for an air quality permit action to publish notice, the applicant must file a copy of the published notice and a publisher's affidavit with the chief clerk certifying facts that constitute compliance with the requirement. The deadline to file a copy of the published notice which shows the date of publication and the name of the newspaper is ten business days after the last date of publication. The deadline to file the affidavit is 30 calendar days after the last date of publication for each notice. Filing an affidavit certifying facts that constitute compliance with notice requirements creates a rebuttable presumption of compliance

with the requirement to publish notice. When the chief clerk publishes notice under subsection (h) of this section, the chief clerk shall file a copy of the published notice and a publisher's affidavit.

(j) For applications filed on or after September 1, 2015, and subject to providing notice as prescribed by Texas Water Code, § 5.115, the commission shall make available on the commission's website notice of administratively complete applications for a permit or license authorized under the Texas Water Code and the Texas Health and Safety Code.

(k) Summary of application. For permit applications that are declared by the executive director to be administratively complete on or after May 1, 2022, the applicant will provide a plain-language summary of the application, no more than two pages long, that will describe the following:

(1) the function of the proposed plant or facility;

(2) the expected output of the proposed plant or facility;

(3) the expected pollutants that may be emitted or discharged by the proposed plant or facility; and

(4) how the applicant will control those pollutants, so that the proposed plant will not have an adverse impact on human health or the environment.

# History

**SOURCE:**

The provisions of this § 39.405 adopted to be effective September 23, 1999, 24 TexReg 8190; amended to be effective August 15, 2002, 27 Texas Reg 7132; amended to be effective November 30, 2005, 30 TexReg 7877; amended to be effective June 24, 2010, 35 TexReg 5198; amended to be effective December 31, 2015, 40 TexReg 9644; amended to be effective May 14, 2020, 45 TexReg 3067; amended to be effective September 16, 2021, 46 TexReg 5784

Annotations

# Research References & Practice Aids

**CROSS-REFERENCES:**

This Section cited in 30 TAC § 39.403, (relating to Applicability); 30 TAC § 39.418, (relating to Notice of Receipt of Application and Intent to Obtain Permit); 30 TAC § 39.501, (relating to Application for Municipal Solid Waste Permit); 30 TAC § 39.605, (relating to Notice to Affected Agencies); 30 TAC § 39.651, (relating to Application for Injection Well Permit); 30 TAC § 39.653, (relating to Application for Production Area Authorization); 30 TAC § 336.811, (relating to Public Meeting); 30 TAC § 39.419, (relating to Notice of Application and Preliminary Decision); 30 TAC § 330.69, (relating to Public Notice for Registrations); 30 TAC § 39.503, (relating to Application for Industrial or Hazardous Waste Facility Permit); 30 TAC § 305.401, (relating to Compliance Plan); 30 TAC § 330.57, (relating to Permit and Registration Applications for Municipal Solid Waste Facilities); 30 TAC § 352.461, (relating to General Notice Provisions); 30 TAC § 39.426, (relating to Alternative Language Requirements).

This Chapter cited in 30 TAC § 33.17, (relating to Public Notice); 30 TAC § 35.25, (relating to Notice and Opportunity for Hearing); 30 TAC § 55.201, (relating to Requests for Reconsideration or Contested Case Hearing); 30 TAC § 106.5, (relating to Public Notice); 30 TAC § 116.111, (relating to General Application); 30 TAC § 116.114, (relating to Application Review Schedule); 30 TAC § 116.116, (relating to Changes to Facilities); 30 TAC § 116.183, (relating to Public Notice Requirements); 30 TAC § 116.312, (relating to Public Notification and Comment Procedures); 30 TAC § 116.740, (relating to Public Notice and Comment); 30 TAC § 281.17, (relating to Notice of Receipt of Application and Declaration of Administrative Completeness); 30 TAC § 305.69, (relating to Solid Waste

Permit Modification at the Request of the Permittee); 30 TAC § 330.65, (relating to Registration for Solid Waste Management Facilities); 30 TAC § 335.23, (relating to Procedures for Case-by-Case Regulation of Hazardous Waste Recycling Activities); 30 TAC § 335.24, (relating to Requirements for Recyclable Materials and Nonhazardous Recyclable Materials); 30 TAC § 335.78, (relating to Special Requirements for Hazardous Waste Generated by Conditionally Exempt Small Quantity Generators); 30 TAC § 335.213, (relating to Standards Applicable to Storers of Materials That Are To Be Used in a Manner That Constitutes Disposal Who Are Not the Ultimate Users); 30 TAC § 335.214, (relating to Standards Applicable to Users of Materials That Are Used in a Manner That Constitutes Disposal); 30 TAC § 335.241, (relating to Applicability and Requirements); 30 TAC § 335.251, (relating to Applicability and Requirements); 30 TAC § 350.135, (relating to Application Requirements); 30 TAC § 91.110, (relating to Public Notice); 30 TAC § 330.69, (relating to Public Notice for Registrations); 30 TAC § 305.62, (relating to Amendments); 30 TAC § 222.33, (relating to Public Notice); 30 TAC § 312.10, (relating to Permit and Registration Applications Processing); 30 TAC § 312.13, (relating to Actions and Notice); 30 TAC § 335.281, (relating to Airbag Waste); 30 TAC § 116.118, (relating to Construction While Permit Amendment Application Pending); 30 TAC § 116.920, (relating to Public Participation for Initial Issuance).

This Subchapter cited in 30 TAC § 39.1, (relating to Applicability); 30 TAC § 39.701, (relating to Applicability); 30 TAC § 330.25, (relating to Relationship with County Licensing System); 30 TAC § 39.411, (relating to Text of Public Notice); 30 TAC § 39.402, (relating to Applicability to Air Quality Permits and Permit Amendments); 30 TAC § 39.405, (relating to General Notice Provisions).

TEXAS ADMINISTRATIVE CODETEXAS ADMINISTRATIVE CODE

End of Document

# APPENDIX 7

## 30 TAC § 39.551

This document reflects all regulations in effect as of April 30, 2025

TX - Texas Administrative Code > TITLE 30. ENVIRONMENTAL QUALITY > PART 1. TEXAS COMMISSION ON ENVIRONMENTAL QUALITY > CHAPTER 39. PUBLIC NOTICE > SUBCHAPTER J. PUBLIC NOTICE OF WATER QUALITY APPLICATIONS AND WATER QUALITY MANAGEMENT PLANS

## § 39.551. Application for Wastewater Discharge Permit, Including Application for the Disposal of Sewage Sludge or Water Treatment Sludge

(a) Applicability. This section applies to applications for wastewater discharge permits, including disposal of sewage sludge or water treatment sludge applications that are declared administratively complete on or after September 1, 1999. This subchapter does not apply to registrations and notifications for sludge disposal under § 312.13 of this title (relating to Actions and Notice).

(b) Notice of receipt of application and intent to obtain permit:

(1) Notice under § 39.418 of this title (relating to Notice of Receipt of Application and Intent to Obtain Permit) is required to be published no later than 30 days after the executive director deems an application administratively complete. This notice must contain the text as required by § 39.411(b)(1) - (9) and (11) of this title (relating to Text of Public Notice). In addition to the requirements of § 39.418 of this title, the chief clerk shall mail notice to the School Land Board if the application will affect lands dedicated to the permanent school fund. The notice shall be in the form required by Texas Water Code, § 5.115(c).

(2) Mailed notice to adjacent or downstream landowners is not required for:

(A) an application to renew a permit;

(B) an application for a new Texas Pollutant Discharge Elimination System (TPDES) permit for a discharge authorized by an existing state permit issued before September 14, 1998 for which the application does not propose any term or condition that would constitute a major amendment to the state permit under § 305.62 of this title (relating to Amendments); or

(C) an application for a new permit or major amendment to a TPDES permit that authorizes the discharges from a municipal separate storm sewer system.

(3) For permits listed in paragraph (2)(C) of this subsection, the executive director will require the applicant to post a copy of the notice of receipt of application and intent to obtain a permit. The notice must be posted within 30 days of the application being declared administratively complete and remain posted until the commission has taken final action on the application. The notice must be posted at a place convenient and readily accessible to the public in the administrative offices of the political subdivision in the county in which the MS4 or discharge is located.

(c) Notice of application and preliminary decision. Notice under § 39.419 of this title (relating to Notice of Application and Preliminary Decision) is required to be published after the chief clerk has mailed the preliminary decision and the Notice of Application and Preliminary Decision to the applicant. This notice must contain the text required by § 39.411(b)(1) - (3), (5) - (7), (9), and (11) and (c)(2) - (6) of this title. In addition to § 39.419 of this title, for all applications except applications to renew permits, the following provisions apply.

(1) The applicant shall publish notice of application and preliminary decision at least once in a newspaper regularly published or circulated within each county where the proposed facility or discharge is located and in each county affected by the discharge. The executive director shall provide to the chief clerk a list of the appropriate counties, and the chief clerk shall provide the list to the applicant.

(2) The chief clerk shall mail notice to the persons listed in § 39.413 of this title (relating to Mailed Notice).

(A) For any application involving an average daily discharge of five million gallons or more, in addition to the persons listed in § 39.413 of this title, the chief clerk shall mail notice to each county judge in the county or counties located within 100 statute miles of the point of discharge who has requested in writing that the commission give notice, and through which water into or adjacent to which waste or pollutants are to be discharged under the permit, flows after the discharge.

(B) If the notice of the receipt of application and intent to obtain a permit was mailed more than two years prior to the time that notice of application and preliminary decision is scheduled by the executive director to be mailed, the applicant must submit an updated landowner map, landowner list, and any associated information for mailing the notice of application and preliminary decision. Notwithstanding this requirement, the Executive Director may require an updated landowner map, landowner list, and any associated information for mailing the notice of the application and preliminary decision if circumstances in the area have significantly changed that warrant updated lists.

(3) The notice must set a deadline to file public comment with the chief clerk that is not less than 30 days after newspaper publication. However, the notice may be mailed to the county judges under paragraph (2) of this subsection no later than 20 days before the deadline to file public comment.

(4) For TPDES permits, the text of the notice shall include:

(A) everything that is required by § 39.411(b)(1) - (3), (5) - (7), (9), and (11) and (c)(2) - (6) of this title;

(B) a general description of the location of each existing or proposed discharge point and the name of the receiving water; and

(C) for applications concerning the disposal of sludge: (i) the use and disposal practices; (ii) the location of the sludge treatment works treating domestic sewage sludge; and (iii) the use and disposal sites known at the time of permit application.

(5) Mailed notice to adjacent or downstream landowners is not required for:

(A) an application to renew a permit;

(B) an application for a new TPDES permit for a discharge authorized by an existing state permit issued before September 14, 1998 for which the application does not propose any term or condition that would constitute a major amendment to the state permit under § 305.62 of this title; or

(C) an application for a new permit or major amendment to a TPDES permit that authorizes the discharges from a municipal separate storm sewer system.

(6) For permits listed in paragraph (5)(C) of this subsection, the executive director will require the applicant to post a copy of the notice of application and preliminary decision. The notice must be posted on or before the first day of published newspaper notice and must remain posted until the commission has taken final action on the application. The notice must be posted at a place convenient and readily accessible to the public in the administrative offices of the political subdivision in the county in which the MS4 or discharge is located.

(d) Notice of application and preliminary decision for certain TPDES permits. For a new TPDES permit for which the discharge is authorized by an existing state permit issued before September 14, 1998, the following shall apply:

**(1)** If the application does not propose any term or condition that would constitute a major amendment to the state permit under § 305.62 of this title, the following mailed and published notice is required.

> **(A)** The applicant shall publish notice of the application and preliminary decision at least once in a newspaper regularly published or circulated within each county where the proposed facility or discharge is located and in each county affected by the discharge. The executive director shall provide to the chief clerk a list of the appropriate counties, and the chief clerk shall provide the list to the applicant.

> **(B)** The chief clerk shall mail notice of the application and preliminary decision, providing an opportunity to submit public comments, to request a public meeting, or to request a public hearing to those listed in § 39.413 of this title.

> **(C)** The notice must set a deadline to file public comment, or to request a public meeting, with the chief clerk that is at least 30 days after newspaper publication.

> **(D)** The text of the notice shall include: (i) everything that is required by § 39.411(b)(1) - (3), (5) - (7), (9), and (11) and (c)(2) - (6) of this title; (ii) a general description of the location of each existing or proposed discharge point and the name of the receiving water; and (iii) for applications concerning the disposal of sludge:

> > **(I)** the use and disposal practices;

> > **(II)** the location of the sludge treatment works treating domestic sewage sludge; and

> > **(III)** the use and disposal sites known at the time of permit application.

**(2)** If the application proposes any term or condition that would constitute a major amendment to the state permit under § 305.62 of this title, the applicant must follow the notice requirements of subsection (b) of this section.

**(e)** Notice for other types of applications. Except as required by subsections (a), (b), and (c) of this section, the following notice is required for certain applications.

**(1)** For an application for a minor amendment to a permit other than a TPDES permit, or for an application for a minor modification of a TPDES permit, under Chapter 305, Subchapter D of this title (relating to Amendments, Renewals, Transfers, Corrections, Revocation, and Suspension of Permits), the chief clerk shall mail notice, that the executive director has determined the application is technically complete and has prepared a draft permit, to the mayor and health authorities for the city or town, and to the county judge and health authorities for the county in which the waste will be discharged. The notice shall state the deadline to file public comment, which shall be no earlier than ten days after mailing notice.

**(2)** For an application for a renewal of a confined animal feeding operation permit which was issued between July 1, 1974, and December 31, 1977, for which the applicant does not propose to discharge into or adjacent to water in the state and does not seek to change materially the pattern or place of disposal, no notice is required.

**(3)** For an application for a minor amendment to a TPDES permit under Chapter 305, Subchapter D of this title, the following requirements apply.

> **(A)** The chief clerk shall mail notice of the application and preliminary decision, providing an opportunity to submit public comments and to request a public meeting to: (i) the mayor and health authorities of the city or town in which the facility is or will be located or in which pollutants are or will be discharged; (ii) the county judge and health authorities of the county in which the facility is or will be located or in which pollutants are or will be discharged; (iii) if applicable, state and federal agencies for which notice is required in 40 Code of Federal Regulations (CFR) § 124.10(c); (iv) if applicable, persons on a mailing list developed and maintained according to *40 CFR § 124.10(c)(1)(ix)*; (v) the applicant; (vi) persons on a relevant mailing list kept under § 39.407 of this

title (relating to Mailing Lists); and (vii) any other person the executive director or chief clerk may elect to include.

**(B)** For TPDES major facility permits as designated by the United States Environmental Protection Agency on an annual basis, notice shall be published in the Texas Register.

**(C)** The text shall meet the requirements in § 39.411(b)(1) - (4)(A), (6), (7), (9), and (11) and (c)(4) - (6) of this title.

**(D)** The notice shall provide at least a 30-day public comment period.

**(E)** The executive director shall prepare a response to all relevant and material or significant public comments received by the commission under § 55.152 of this title (relating to Public Comment Period).

**(f)** Notice of contested case hearing.

**(1)** This subsection applies if an application is referred to the State Office of Administrative Hearings for a contested case hearing under Chapter 80 of this title (relating to Contested Case Hearings).

**(2)** Not less than 30 days before the hearing, the applicant shall publish notice at least once in a newspaper regularly published or circulated in each county where, by virtue of the county's geographical relation to the subject matter of the hearing, a person may reasonably believe persons reside who may be affected by the action that may be taken as a result of the hearing. The executive director shall provide to the chief clerk a list of the appropriate counties.

**(3)** Not less than 30 days before the hearing, the chief clerk shall mail notice to the persons listed in § 39.413 of this title, except that mailed notice to adjacent or downstream landowners is not required for an application to renew a permit.

**(4)** For TPDES permits, the text of notice shall include:

**(A)** everything that is required by § 39.411(d)(1) and (2) of this title;

**(B)** a general description of the location of each existing or proposed discharge point and the name of the receiving water; and

**(C)** for applications concerning the disposal of sludge: (i) the use and disposal practices; (ii) the location of the sludge treatment works treating domestic sewage sludge; and (iii) the use and disposal sites known at the time of permit application.

**(g)** Notice for discharges with a thermal component. For requests for a discharge with a thermal component filed pursuant to Clean Water Act, § 316(a), 40 CFR Part 124, Subsection D, § 124.57(a), public notice, which is in effect as of the date of TPDES program authorization, as amended, is adopted by reference. A copy of 40 CFR Part 124 is available for inspection at the agency's library located at the commission's central office located at 12100 Park 35 Circle, Building A, Austin.

# History

## SOURCE:

The provisions of this § 39.551 adopted to be effective September 23, 1999, 24 TexReg 8190; amended to be effective August 29, 2001, 26 TexReg 6301; amended to be effective December 31, 2009, 34 TexReg 9450; amended to be effective June 24, 2010, 35 TexReg 5198

Annotations

# Research References & Practice Aids

**CROSS-REFERENCES:**

This Chapter cited in 30 TAC § 33.17, (relating to Public Notice); 30 TAC § 35.25, (relating to Notice and Opportunity for Hearing); 30 TAC § 55.201, (relating to Requests for Reconsideration or Contested Case Hearing); 30 TAC § 106.5, (relating to Public Notice); 30 TAC § 116.111, (relating to General Application); 30 TAC § 116.114, (relating to Application Review Schedule); 30 TAC § 116.116, (relating to Changes to Facilities); 30 TAC § 116.183, (relating to Public Notice Requirements); 30 TAC § 116.312, (relating to Public Notification and Comment Procedures); 30 TAC § 116.740, (relating to Public Notice and Comment); 30 TAC § 281.17, (relating to Notice of Receipt of Application and Declaration of Administrative Completeness); 30 TAC § 305.69, (relating to Solid Waste Permit Modification at the Request of the Permittee); 30 TAC § 330.65, (relating to Registration for Solid Waste Management Facilities); 30 TAC § 335.23, (relating to Procedures for Case-by-Case Regulation of Hazardous Waste Recycling Activities); 30 TAC § 335.24, (relating to Requirements for Recyclable Materials and Nonhazardous Recyclable Materials); 30 TAC § 335.78, (relating to Special Requirements for Hazardous Waste Generated by Conditionally Exempt Small Quantity Generators); 30 TAC § 335.213, (relating to Standards Applicable to Storers of Materials That Are To Be Used in a Manner That Constitutes Disposal Who Are Not the Ultimate Users); 30 TAC § 335.214, (relating to Standards Applicable to Users of Materials That Are Used in a Manner That Constitutes Disposal); 30 TAC § 335.241, (relating to Applicability and Requirements); 30 TAC § 335.251, (relating to Applicability and Requirements); 30 TAC § 350.135, (relating to Application Requirements); 30 TAC § 91.110, (relating to Public Notice); 30 TAC § 330.69, (relating to Public Notice for Registrations); 30 TAC § 116.194, (relating to Public Notice and Comment).

This Subchapter cited in 30 TAC § 39.151, (relating to Application for Wastewater Discharge Permit, Including Application for the Disposal of Sewage Sludge or Water Treatment Sludge).

TEXAS ADMINISTRATIVE CODE

# APPENDIX 8

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 3 Legislative Branch (Subts. A — Z) > Subtitle B Legislation (Chs. 311 — 320) > Chapter 311 Code Construction Act (Subchs. A — C) > Subchapter B Construction of Words and Phrases (§§ 311.011 — 311.016)

## Sec. 311.016. "May," "Shall," "Must," Etc.

The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute:

(1) "May" creates discretionary authority or grants permission or a power.

(2) "Shall" imposes a duty.

(3) "Must" creates or recognizes a condition precedent.

(4) "Is entitled to" creates or recognizes a right.

(5) "May not" imposes a prohibition and is synonymous with "shall not."

(6) "Is not entitled to" negates a right.

(7) "Is not required to" negates a duty or condition precedent.

## History

Enacted by Acts 1997, 75th Leg., ch. 220 (S.B. 864), § 1, effective May 23, 1997

Annotations

## Notes to Decisions

Administrative Law: Agency Rulemaking: Rule Application & Interpretation: General Overview

Administrative Law: Governmental Information: Freedom of Information: Defenses & Exemptions: Statutory Exemptions

Administrative Law: Judicial Review: Reviewability: Jurisdiction & Venue

Banking Law: Depository Institutions: General Overview

Business & Corporate Law: Distributorships & Franchises: Terminations: Notice Requirements

Civil Procedure: Justiciability: Mootness: Real Controversy Requirement

Civil Procedure: Jurisdiction: Subject Matter Jurisdiction: General Overview

Civil Procedure: Venue: Forum Non Conveniens

Civil Procedure: Venue: Individual Defendants

Civil Procedure: Venue: Special Venue

Civil Procedure: Pleading & Practice: Pleadings: General Overview

Civil Procedure: Pleading & Practice: Pleadings: Heightened Pleading Requirements: Conditions Precedent

Civil Procedure: Pleading & Practice: Service of Process: Methods: General Overview

Civil Procedure: Pleading & Practice: Service of Process: Methods: Service Upon Agents

Civil Procedure: Counsel: General Overview

Civil Procedure: Counsel: Appointments

Civil Procedure: Judicial Officers: Judges: Successors

Civil Procedure: Discovery: Methods: Expert Witness Discovery

Civil Procedure: Discovery: Misconduct

Civil Procedure: Discovery: Privileged Matters: General Overview

Civil Procedure: Dismissals: Involuntary Dismissals: General Overview

Civil Procedure: Alternative Dispute Resolution: Mediations

Civil Procedure: Pretrial Matters: Consolidation of Actions

Civil Procedure: Trials: Bench Trials

Civil Procedure: Judgments: Entry of Judgments: Enforcement & Execution: Foreign Judgments

Civil Procedure: Judgments: Entry of Judgments: Stays Pending Appeals: Money Judgments

Civil Procedure: Remedies: Costs & Attorney Fees: General Overview

Civil Procedure: Remedies: Costs & Attorney Fees: Attorney Expenses & Fees: Statutory Awards

Civil Procedure: Remedies: Writs: Common Law Writs: Mandamus

Civil Procedure: Sanctions: General Overview

Civil Procedure: Appeals: Appellate Jurisdiction: Interlocutory Orders

Civil Procedure: Appeals: Standards of Review: Abuse of Discretion

Civil Procedure: Appeals: Standards of Review: De Novo Review

Contracts Law: Contract Interpretation

Criminal Law & Procedure: Discovery & Inspection: Discovery by Defendant: Informants: Privilege

Criminal Law & Procedure: Bail: General Overview

Criminal Law & Procedure: Postconviction Proceedings: Sex Offenders: Civil Commitments

Education Law: Administration & Operation: Child Care Facilities

Environmental Law: Hazardous Wastes & Toxic Substances: Asbestos: General Overview

Estate, Gift & Trust Law: Probate: Personal Representatives: Appointment

Estate, Gift & Trust Law: Probate: Procedures in Probate: General Overview

Evidence: Documentary Evidence: Affidavits

Evidence: Testimony: Experts: Qualifications

Family Law: Child Custody: Awards: Nonparents

Family Law: Child Custody: Procedures

Family Law: Child Custody: Visitation: Awards: Third Parties: Grandparents

Family Law: Child Support: Obligations: Enforcement

Family Law: Marital Termination & Spousal Support: Dissolution & Divorce: Property Distribution: Property Settlements

Family Law: Marital Termination & Spousal Support: Spousal Support: Obligations: Periodic Support

Governments: Courts: Authority to Adjudicate

Governments: Courts: Rule Application & Interpretation

Governments: Legislation: Interpretation

Governments: Local Governments: Administrative Boards

Governments: Local Governments: Claims By & Against

Governments: Local Governments: Elections

Governments: Local Governments: Employees & Officials

Governments: Public Improvements: Sanitation & Water

Governments: State & Territorial Governments: Claims By & Against

Governments: State & Territorial Governments: Elections

Healthcare Law: Actions Against Facilities: Standards of Care: Expert Testimony

Insurance Law: Bad Faith & Extracontractual Liability: Remedies: Penalties

Insurance Law: Claims & Contracts: Cancellation & Nonrenewal: Notice Requirements

Insurance Law: Motor Vehicle Insurance: Coverage: No-Fault Coverage: Liens & Subrogation

Insurance Law: Motor Vehicle Insurance: Coverage: No-Fault Coverage: Optional Coverage

Insurance Law: Motor Vehicle Insurance: Coverage: No-Fault Coverage: Personal Injury Protection: Medical Benefits

Insurance Law: Motor Vehicle Insurance: Coverage: No-Fault Coverage: Time Limitations

Labor & Employment Law: Discrimination: Retaliation: Remedies: Backpay & Frontpay

Labor & Employment Law: Wage & Hour Laws: Coverage & Definitions: Prevailing Wages

Labor & Employment Law: Wage & Hour Laws: Statutory Application: Davis-Bacon Act

Public Contracts Law: Labor Laws: Prevailing Wage Standards

Real Property Law: Common Interest Communities: Homeowners Associations

Real Property Law: Landlord & Tenant: Landlord's Remedies & Rights: Eviction Actions: Forcible Entry & Detainer

Real Property Law: Restrictive Covenants: General Overview

Real Property Law: Water Rights: Appropriation Rights

Tax Law: State & Local Taxes: Franchise Tax: Failure to Pay Tax

Tax Law: State & Local Taxes: Real Property Tax: Assessment & Valuation: Valuation

Torts: Malpractice & Professional Liability: Healthcare Providers

Torts: Negligence: Defenses: Comparative Negligence: Multiple Parties: Absent Defendants

Torts: Procedure: Multiple Defendants: Contribution: General Overview

Torts: Public Entity Liability: Liability: State Tort Claims Acts: Procedural Requirements

Transportation Law: Public Transportation

Administrative Law: Agency Rulemaking: Rule Application & Interpretation: General Overview

Appellant was not entitled to relief from the decision terminating his position as a deputy sheriff because the sheriff failed to timely hold a hearing within ten days of receiving appellant's notice of appeal of the decision; Rule 12.04(b) of the Harris County Sheriff's Civil Service Commission Regulations did not provide a consequence for the sheriff's failure to comply with the ten-day deadline. Rule 12.04(b) was not mandatory as it used neither "shall" nor "must" to describe the sheriff's responsibility; either word would indicate that the rule was mandatory under *Tex. Gov't Code Ann. § 311.016(2)-(3). Woychesin v. Harris County Sheriff's Civ. Serv. Comm'n, No. 14-11-00304-CV, 2012 Tex. App. LEXIS 7301 (Tex. App. Houston 14th Dist. Aug. 30, 2012).*

Administrative Law: Governmental Information: Freedom of Information: Defenses & Exemptions: Statutory Exemptions

*Overview: Court concluded that appellant had not shown that trial court abused discretion by declining to order disclosure as it had no obligation to act on its own motion, Tex. Fam. Code Ann. § 261.201(c); nothing in the record showed he requested the required hearing, that he served notice of the hearing on the investigating agency and interested parties.*

- A trial court's authority to order the release of confidential information under *Tex. Fam. Code Ann. § 261.201(b)* or (c) is discretionary. The exception allowing the trial court to disclose confidential information under *Tex. Fam. Code Ann. § 261.201(b)* is discretionary. The trial court may order disclosure — it has permission or a power to do so — but it is not required to do so. *Tex. Gov't Code Ann. § 311.016(1)* states that "may" creates discretionary authority.

Starkey v. Stainton, 652 S.W.3d 80, 2022 Tex. App. LEXIS 1994 (Tex. App. Fort Worth Mar. 24, 2022, no pet.).

### Administrative Law: Judicial Review: Reviewability: Jurisdiction & Venue

Pursuant to *Tex. Gov't Code Ann. § 2001.171*, a child care provider that held a child-care facility license was entitled, as that term was defined under *Tex. Gov't Code Ann. § 311.016*, to judicial review of a decision by the Texas Department of Protective and Regulatory Services (TDPRS) to revoke the license because, given the inconclusive evidence regarding legislative intent, in enacting the TDPRS's 1997 sunset review legislation, the legislature did not intend to prohibit judicial review of contested-case decisions made under Tex. *Hum. Res. Code Ann. § 42.072*. Furthermore, Tex. *Hum. Res. Code Ann. § 42.078*, the administrative penalty section, did not contain the judicial review language that had been deleted from Tex. *Hum. Res. Code Ann. § 42.072*. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 2004 Tex. LEXIS 780 (Tex. 2004).*

### Banking Law: Depository Institutions: General Overview

A party suing a financial institution in Texas must serve process on the institution in accordance with *Tex. Civ. Prac. & Rem. Code Ann. § 17.028*; otherwise, service is ineffective. Service pursuant to § 17.028 is mandatory, rather than permissive. *Bank of N.Y. v. Chesapeake 34771 Land Trust, 456 S.W.3d 628, 2015 Tex. App. LEXIS 439 (Tex. App. El Paso Jan. 16, 2015, no pet.).*

### Business & Corporate Law: Distributorships & Franchises: Terminations: Notice Requirements

While the use of the word "must" created a condition precedent under *Tex. Gov't Code Ann. § 311.016(3)*, based on the franchise termination notice requirement's underlying purpose under Tex. *Occ. Code Ann. § 2301.453* to ensure that a dealership was notified of its statutory rights to protest the termination and obtain a hearing, a car manufacturer's notice was sufficiently compliant as language informing the dealerships of their rights was in an all-caps, boldface notice at the top of the termination letters. *Ultimate Ford, Inc. v. Motor Vehicle Div. of the Tex. DOT, No. 03-09-00548-CV, 2010 Tex. App. LEXIS 7055 (Tex. App. Austin 3d Dist. Aug. 27, 2010).*

### Civil Procedure: Justiciability: Mootness: Real Controversy Requirement

Appeal was moot because, regardless of a district court's decision remanding a water appropriation dispute to the Texas Commission on Water Quality, the Commission had no authority to grant the type of water permits that had been applied for due to a permanent moratorium issued under Tex. *Water Code Ann. § 11.0237(a)*; the use of the phrase "may not" in § 11.0237(a) was dispositive. The permits had been denied by the Commission under Tex. *Water Code Ann. § 11.131(a)*. *Tex. Comm'n on Envtl. Quality v. Galveston Bay Conservation & Pres. Ass'n, 267 S.W.3d 361, 2008 Tex. App. LEXIS 5792 (Tex. App. Corpus Christi July 31, 2008, no pet.).*

### Civil Procedure: Jurisdiction: Subject Matter Jurisdiction: General Overview

Requirement that pre-suit notice "must" be given was mandatory but not jurisdictional. *Park v. Escalera Ranch Owners' Ass'n, 457 S.W.3d 571, 2015 Tex. App. LEXIS 1486 (Tex. App. Austin 3d Dist. Feb. 13, 2015, no pet.).*

### Civil Procedure: Venue: Forum Non Conveniens

In an asbestos case arising from Maine employment, the Texas trial court should have granted a motion by defendant companies to dismiss on the basis of forum non conveniens because all of the factors in the forum non conveniens analysis favored maintaining the action in Maine. Because Tex. *Civ. Prac. & Rem. Code Ann. § 71.051*

used the word "shall," as defined in Tex. *Gov't Code Ann § 311.016(2)*, the trial court abused its discretion by failing to dismiss the action. *In re GE Co., 271 S.W.3d 681, 2008 Tex. LEXIS 1002 (Tex. 2008)*.

## Civil Procedure: Venue: Individual Defendants

*Overview:* The mandatory venue requirement in Tex. *Lab. Code Ann. § 61.062* was a statutory prerequisite to suit, making failure to adhere to it a jurisdictional bar to suit. Therefore, the Texas Workforce Commission's plea to the jurisdiction was granted and the suit was dismissed.

- The statute provides: The suit must be brought in the county of the claimant's residence, Tex. *Lab. Code Ann. § 61.062(d)*. The mandatory venue requirement in *Section 61.062(d) of the Labor Code* is found in the relevant statute and is required by it. The term must in a statute creates a condition precedent, *Tex. Gov't Code Ann. § 311.016(3)*. A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. Section 61.062(d)'s mandatory venue requirement, which provides a suit must be filed in the county of the claimant's residence, creates a condition precedent to suit, and this condition precedent is a statutory prerequisite. Section 61.062(d)'s mandatory venue requirement is a statutory prerequisite to suit.

*Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n, 679 S.W.3d 746, 2023 Tex. App. LEXIS 3062 (Tex. App. Houston 1st Dist. May 9, 2023, no pet.)*.

## Civil Procedure: Venue: Special Venue

*Overview:* The mandatory venue requirement in Tex. *Lab. Code Ann. § 61.062* was a statutory prerequisite to suit, making failure to adhere to it a jurisdictional bar to suit. Therefore, the Texas Workforce Commission's plea to the jurisdiction was granted and the suit was dismissed.

- The statute provides: The suit must be brought in the county of the claimant's residence, Tex. *Lab. Code Ann. § 61.062(d)*. The mandatory venue requirement in *Section 61.062(d) of the Labor Code* is found in the relevant statute and is required by it. The term must in a statute creates a condition precedent, *Tex. Gov't Code Ann. § 311.016(3)*. A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. Section 61.062(d)'s mandatory venue requirement, which provides a suit must be filed in the county of the claimant's residence, creates a condition precedent to suit, and this condition precedent is a statutory prerequisite. Section 61.062(d)'s mandatory venue requirement is a statutory prerequisite to suit.

- In sum, the mandatory venue requirement in *Tex. Lab. Code Ann. 61.062(d)* provides that a suit must be brought in the county of the claimant's residence. The term must creates a condition precedent, which is a statutory prerequisite to suit, *Tex. Gov't Code Ann. § 311.016(3)*; A suit under Section 61.062 is necessarily a suit against a governmental entity because the commission must be named as a defendant, § 61.062(c). Therefore, Section 61.062(d)'s mandatory venue requirement is a statutory prerequisite to suit against a governmental entity, so it is a jurisdictional requirement, *Tex. Gov't Code Ann. § 311.034*. Failure to adhere to the mandatory venue requirement is a jurisdictional bar to suit.

*Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n, 679 S.W.3d 746, 2023 Tex. App. LEXIS 3062 (Tex. App. Houston 1st Dist. May 9, 2023, no pet.)*.

## Civil Procedure: Pleading & Practice: Pleadings: General Overview

Trial court erred in granting a voluntary nonsuit under *Tex. R. Civ. P. 162* in a medical malpractice action after the filing of motions to dismiss under former statute for failure to timely file an expert report; the word "shall," construed in accordance with *Tex. Gov't Code Ann. § 311.016(2)* to impose a mandatory duty, required dismissal with prejudice when an expert report was not timely filed. *Moseley v. Behringer, 184 S.W.3d 829, 2006 Tex. App. LEXIS 406 (Tex. App. Fort Worth Jan. 19, 2006, no pet.).*

**Civil Procedure: Pleading & Practice: Pleadings: Heightened Pleading Requirements: Conditions Precedent**

*Overview:* The mandatory venue requirement in Tex. *Lab. Code Ann. § 61.062* was a statutory prerequisite to suit, making failure to adhere to it a jurisdictional bar to suit. Therefore, the Texas Workforce Commission's plea to the jurisdiction was granted and the suit was dismissed.

- The statute provides: The suit must be brought in the county of the claimant's residence, Tex. *Lab. Code Ann. § 61.062(d)*. The mandatory venue requirement in *Section 61.062(d) of the Labor Code* is found in the relevant statute and is required by it. The term must in a statute creates a condition precedent, *Tex. Gov't Code Ann. § 311.016(3)*. A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. Section 61.062(d)'s mandatory venue requirement, which provides a suit must be filed in the county of the claimant's residence, creates a condition precedent to suit, and this condition precedent is a statutory prerequisite. Section 61.062(d)'s mandatory venue requirement is a statutory prerequisite to suit.

*Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n, 679 S.W.3d 746, 2023 Tex. App. LEXIS 3062 (Tex. App. Houston 1st Dist. May 9, 2023, no pet.).*

**Civil Procedure: Pleading & Practice: Service of Process: Methods: General Overview**

A party suing a financial institution in Texas must serve process on the institution in accordance with *Tex. Civ. Prac. & Rem. Code Ann. § 17.028*; otherwise, service is ineffective. Service pursuant to § 17.028 is mandatory, rather than permissive. *Bank of N.Y. v. Chesapeake 34771 Land Trust, 456 S.W.3d 628, 2015 Tex. App. LEXIS 439 (Tex. App. El Paso Jan. 16, 2015, no pet.).*

**Civil Procedure: Pleading & Practice: Service of Process: Methods: Service Upon Agents**

In the trust's action to quite title to a house, the Texas trial court erred by entering a default judgment against the New York bank because it was not properly served in accordance with *Tex. Civ. Prac. & Rem. Code Ann. § 17.028* which requires service on an agent of the financial institution. Service pursuant to § 17.028 is mandatory, rather than permissive; therefore, the trust did not have the discretion to choose the manner of service. *Bank of N.Y. v. Chesapeake 34771 Land Trust, 456 S.W.3d 628, 2015 Tex. App. LEXIS 439 (Tex. App. El Paso Jan. 16, 2015, no pet.).*

**Civil Procedure: Counsel: General Overview**

Applying *Tex. Gov't Code Ann. § 311.016(1)* to interpret *Tex. R. Civ. P. 12*, "may" denotes discretionary power as to when such a motion can be heard, within the limits otherwise set by the rule. *Air Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d 900, 2003 Tex. App. LEXIS 6031 (Tex. App. Dallas July 16, 2003, no pet.).*

**Civil Procedure: Counsel: Appointments**

Statute 's use of the verb "may" provides a trial court with discretion whether to appoint an amicus attorney. Because the trial court has discretion concerning whether to appoint an amicus attorney, such discretion also applies regarding whether to remove that amicus, absent demonstration of some situation which would create a ministerial duty to remove that amicus attorney. *In re Burrows, No. 06-17-00014-CV, 2017 Tex. App. LEXIS 2299 (Tex. App. Texarkana Mar. 17, 2017)*.

## Civil Procedure: Judicial Officers: Judges: Successors

Although statutory authority granted a former judge authority to file findings of fact from a bench trial held before him despite that his term of office expired, that did not imply a similar grant of authority to the newly elected judge where it was not expressly provided. *AD Villarai, LLC v. Chan II Pak, 519 S.W.3d 132, 2017 Tex. LEXIS 453 (Tex. 2017)*.

Newly elected judge lacked authority to file findings of fact from a trial that was held by the former judge, as the statute granted the former judge authority to file findings after his term of office expired but that did not imply a similar grant of authority to the new judge where it was not expressly provided. *AD Villarai, LLC v. Chan II Pak, 519 S.W.3d 132, 2017 Tex. LEXIS 453 (Tex. 2017)*.

## Civil Procedure: Discovery: Methods: Expert Witness Discovery

Term "may" as used in *Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c)* vested the trial court with discretion to grant a 30-day extension. *In re Covenant Health Sys., 223 S.W.3d 423, 2006 Tex. App. LEXIS 1696 (Tex. App. Amarillo Mar. 1, 2006, no pet.)*.

## Civil Procedure: Discovery: Misconduct

In a dispute before the Texas Public Utility Commission between an electric cooperative and a public service company concerning the provision of electricity to customers, the Commission did not abuse its discretion by failing to imposing sanctions under Tex. *Gov't Code Ann. § 311.016* when the when the public service company was unable to produce all of the information requested during discovery. The lost information was not necessary to the Commission's ultimate resolution of the case. *Lamb County Elec. Coop. v. PUC of Tex., 269 S.W.3d 260, 2008 Tex. App. LEXIS 8381 (Tex. App. Austin 3d Dist. Nov. 7, 2008, no pet.)*.

## Civil Procedure: Discovery: Privileged Matters: General Overview

In an action to terminate parental rights, an exception to confidentiality of information relating to child abuse, stating that the trial court "may" order disclosure, was discretionary. *In re Fulgium, 150 S.W.3d 252, 2004 Tex. App. LEXIS 10175 (Tex. App. Texarkana Nov. 16, 2004, no pet.)*.

## Civil Procedure: Dismissals: Involuntary Dismissals: General Overview

Trial court erred in granting a voluntary nonsuit under *Tex. R. Civ. P. 162* in a medical malpractice action after the filing of motions to dismiss under former statute for failure to timely file an expert report; the word "shall," construed in accordance with *Tex. Gov't Code Ann. § 311.016(2)* to impose a mandatory duty, required dismissal with prejudice when an expert report was not timely filed. *Moseley v. Behringer, 184 S.W.3d 829, 2006 Tex. App. LEXIS 406 (Tex. App. Fort Worth Jan. 19, 2006, no pet.)*.

## Civil Procedure: Alternative Dispute Resolution: Mediations

Husband's assertion that a formal court referral to mediation was required for a mediated settlement agreement (MSA) to be binding was refuted by the language of *Tex. Fam. Code Ann. § 6.602(a)*, which provided that the trial court "may" refer a case for mediation, and was also inconsistent with the public policy and purpose of mediation; the husband failed to preserve his claim of fraud for review by offering evidence. *2016 Tex. App. LEXIS 6335*.

### Civil Procedure: Pretrial Matters: Consolidation of Actions

Statutory probate court did not abuse its discretion under *Tex. Prob. Code Ann. § 5B* when it denied a motion to transfer and consolidate a survival action brought by the administratrix of a decedent's estate, even though a probate proceeding was pending at the time the survival action was filed, because under *Tex. Gov't Code Ann. § 311.016*, the use of the word "may" in *Tex. Prob. Code Ann. § 5B* indicated that the statutory probate court's authority to transfer the survival action was discretionary. *In re Azle Manor, Inc., 83 S.W.3d 410, 2002 Tex. App. LEXIS 6426 (Tex. App. Fort Worth Aug. 28, 2002, no pet.)*.

### Civil Procedure: Trials: Bench Trials

Although statutory authority granted a former judge authority to file findings of fact from a bench trial held before him despite that his term of office expired, that did not imply a similar grant of authority to the newly elected judge where it was not expressly provided. *AD Villarai, LLC v. Chan Il Pak, 519 S.W.3d 132, 2017 Tex. LEXIS 453 (Tex. 2017)*.

Newly elected judge lacked authority to file findings of fact from a trial that was held by the former judge, as the statute granted the former judge authority to file findings after his term of office expired but that did not imply a similar grant of authority to the new judge where it was not expressly provided. *AD Villarai, LLC v. Chan Il Pak, 519 S.W.3d 132, 2017 Tex. LEXIS 453 (Tex. 2017)*.

### Civil Procedure: Judgments: Entry of Judgments: Enforcement & Execution: Foreign Judgments

> **Overview:** Trial court properly recognized the foreign-country judgment because appellants failed to follow the appropriate procedure to enforce the arbitration agreement. Their argument for denial of recognition solely relied on Texas' policy favoring arbitration without citing any relevant authority, *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)(5)*.

- The Uniform Foreign-Country Money Judgment Recognition Act requires a trial court to recognize a foreign-country judgment if it falls within the Act and subsections (b) or (c) do not apply. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(a)*. If subsection (b) applies, a trial court is not permitted to recognize the foreign-country judgment. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(b); Tex. Gov't Code Ann. § 311.016(5)*. To determine whether the Legislature intended a provision to be mandatory or directory, an appellate court considers the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction. However, if one of the grounds under subsection (c) applies, the trial court may, but is not required to, recognize the foreign-country judgment. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c); Tex. Gov't Code Ann. § 311.016(7)*. Thus, whether a foreign-country judgment falls under the Act or the mandatory nonrecognition grounds is first a question of law, which the court reviews de novo. But whether a trial court erred by recognizing or refusing to recognize the foreign-country judgment under one of the permissive grounds should be reviewed for an abuse of discretion. A permissive statute gives a trial court discretion to decide under the framework of the statute.

*Lancaster v. WestCorp Sols., Ltd., 673 S.W.3d 57, 2023 Tex. App. LEXIS 5271 (Tex. App. Corpus Christi July 20, 2023, no pet.)*.

Tex. Gov't Code § 311.016

**Civil Procedure: Judgments: Entry of Judgments: Stays Pending Appeals: Money Judgments**

*Overview:* *Trial court properly recognized the foreign-country judgment because appellants failed to follow the appropriate procedure to enforce the arbitration agreement. Their argument for denial of recognition solely relied on Texas' policy favoring arbitration without citing any relevant authority, Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)(5).*

• The Uniform Foreign-Country Money Judgment Recognition Act requires a trial court to recognize a foreign-country judgment if it falls within the Act and subsections (b) or (c) do not apply. Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(a). If subsection (b) applies, a trial court is not permitted to recognize the foreign-country judgment. Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(b); Tex. Gov't Code Ann. § 311.016(5). To determine whether the Legislature intended a provision to be mandatory or directory, an appellate court considers the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction. However, if one of the grounds under subsection (c) applies, the trial court may, but is not required to, recognize the foreign-country judgment. Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c); Tex. Gov't Code Ann. § 311.016(7). Thus, whether a foreign-country judgment falls under the Act or the mandatory nonrecognition grounds is first a question of law, which the court reviews de novo. But whether a trial court erred by recognizing or refusing to recognize the foreign-country judgment under one of the permissive grounds should be reviewed for an abuse of discretion. A permissive statute gives a trial court discretion to decide under the framework of the statute.

Lancaster v. WestCorp Sols., Ltd., 673 S.W.3d 57, 2023 Tex. App. LEXIS 5271 (Tex. App. Corpus Christi July 20, 2023, no pet.).

**Civil Procedure: Remedies: Costs & Attorney Fees: General Overview**

Under the mandatory attorney-fee provision of Tex. Water Code Ann. § 54.237, attorney fees should have been awarded to a municipal utility district because judgment was entered in its favor to enforce restrictive covenants against homeowners. The court noted that under Tex. Gov't Code Ann. § 311.016, "shall" imposed a duty. Anderson Mill Mun. Util. Dist. v. Robbins, 584 S.W.3d 463, 2005 Tex. App. LEXIS 7482 (Tex. App. Austin 3d Dist. Sept. 8, 2005, no pet.).

**Civil Procedure: Remedies: Costs & Attorney Fees: Attorney Expenses & Fees: Statutory Awards**

Upon request by a prevailing party in an excessive appraisal action under Tex. Tax Code Ann. § 42.25, an award of reasonable attorney's fees is mandatory, not discretionary, under Tex. Tax Code Ann. § 42.29; although "may" generally created discretionary authority under Tex. Gov't Code Ann. § 311.016, the determination of whether a statute required the imposition of attorney's fees did not depend exclusively on whether the statute used the word "may" or "shall"; rather, the determination primarily depended on whether the legislature had bestowed a power to trial courts or an entitlement to litigants. Aaron Rents, Inc. v. Travis Cent. Appraisal Dist., 212 S.W.3d 665, 2006 Tex. App. LEXIS 8058 (Tex. App. Austin 3d Dist. Sept. 8, 2006, no pet.).

**Civil Procedure: Remedies: Writs: Common Law Writs: Mandamus**

*Overview:* *Pursuant to Tex. Fam. Code Ann. § 201.005 and Travis County, Tex., Ct. R. 22.3 the trial court lacked discretion to overrule as untimely relator's objection to the referral to the associate judge because the order did not suffice to provide relator with actual or constructive notice of the referral.*

• The Code Construction Act provides that the term shall, when it appears in statute, imposes a duty. *Tex. Gov't Code § 311.016(2)*. Thus, a trial court has no discretion to overrule a timely objection to the referral to an associate judge under the Family Code and conditionally granted a petition for writ of mandamus to review such an action by the trial court.

> *In re Laurie, 691 S.W.3d 769, 2024 Tex. App. LEXIS 3769 (Tex. App. Austin 3d Dist. May 31, 2024, no pet.)*.

In a tort action arising out of an employee's injuries suffered when he was pinned by a vehicle against a building, the trial court erred by denying the employer's officer's motion for leave to designate responsible third parties under *Tex. Civ. Prac. & Rem. Code Ann. § 33.004*, and there was no adequate remedy by appeal, making mandamus proper. The word "shall" was mandatory. *In re Bustamante, 510 S.W.3d 732, 2016 Tex. App. LEXIS 12506 (Tex. App. San Antonio Nov. 23, 2016, no pet.)*.

## Civil Procedure: Sanctions: General Overview

In a dispute before the Texas Public Utility Commission between an electric cooperative and a public service company concerning the provision of electricity to customers, the Commission did not abuse its discretion by failing to imposing sanctions under *Tex. Gov't Code Ann. § 311.016* when the when the public service company was unable to produce all of the information requested during discovery. The lost information was not necessary to the Commission's ultimate resolution of the case. *Lamb County Elec. Coop. v. PUC of Tex. 269 S.W.3d 260, 2008 Tex. App. LEXIS 8361 (Tex. App. Austin 3d Dist. Nov. 7, 2008, no pet.)*.

## Civil Procedure: Appeals: Appellate Jurisdiction: Interlocutory Orders

*Overview:* *In a case where the appellant filed a joint petition seeking permission to appeal an interlocutory order, the trial court's order did not explain why the trial court reached its conclusion pursuant to Tex. R. Civ. P. 168. Therefore, the appellant⬜s petition did not meet the strict jurisdictional requirements for a permissive appeal.*

• The appellate court's authority to consider a permissive appeal is governed by *Tex. R. Civ. P. 168*, *Tex. Civ. Prac. & Rem. Code Ann. § 51.014*, and *Tex. R. App. P. 28.3*. The first step the petitioner must satisfy is obtaining the trial court's permission to appeal. *Tex. R. Civ. P. 168*; *Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d)*. If the trial court grants permission to appeal, it must state its permission in an order that must identify the controlling question of law as to which there is a substantial ground for difference of opinion, and must state why an immediate appeal may materially advance the ultimate termination of the litigation. *Tex. R. Civ. P. 168*; *Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d)*; *Tex. Gov't Code Ann. § 311.016(3)* Must' creates or recognizes a condition precedent.

> *Mack v. Pittard, No. 04-24-00201-CV, 2024 Tex. App. LEXIS 3880 (Tex. App. San Antonio June 5, 2024)*.

## Civil Procedure: Appeals: Standards of Review: Abuse of Discretion

*Overview:* *Trial court properly recognized the foreign-country judgment because appellants failed to follow the appropriate procedure to enforce the arbitration agreement. Their argument for denial of recognition solely relied on Texas' policy favoring arbitration without citing any relevant authority. Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)(5)*.

- The Uniform Foreign-Country Money Judgment Recognition Act requires a trial court to recognize a foreign-country judgment if it falls within the Act and subsections (b) or (c) do not apply. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(a)*. If subsection (b) applies, a trial court is not permitted to recognize the foreign-country judgment. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(b)*; *Tex. Gov't Code Ann. § 311.016(5)*. To determine whether the Legislature intended a provision to be mandatory or directory, an appellate court considers the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction. However, if one of the grounds under subsection (c) applies, the trial court may, but is not required to, recognize the foreign-country judgment. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)*; *Tex. Gov't Code Ann. § 311.016(7)*. Thus, whether a foreign-country judgment falls under the Act or the mandatory nonrecognition grounds is first a question of law, which the court reviews de novo. But whether a trial court erred by recognizing or refusing to recognize the foreign-country judgment under one of the permissive grounds should be reviewed for an abuse of discretion. A permissive statute gives a trial court discretion to decide under the framework of the statute.

*Lancaster v. WestCorp Sols., Ltd., 673 S.W.3d 57, 2023 Tex. App. LEXIS 5271 (Tex. App. Corpus Christi July 20, 2023, no pet.)*.

Even if plaintiff were correct in asserting her status as a prevailing party in a sexual harassment case, plaintiff did not establish that the trial court abused its discretion in denying her request for attorney fees. *Becerra v. Mikeska Bar-B-Q, Inc. No. 13-10-00668-CV, 2012 Tex. App. LEXIS 2249 (Tex. App. Corpus Christi Mar. 22, 2012)*.

### Civil Procedure: Appeals: Standards of Review: De Novo Review

*Overview:* Trial court properly recognized the foreign-country judgment because appellants failed to follow the appropriate procedure to enforce the arbitration agreement. Their argument for denial of recognition solely relied on Texas' policy favoring arbitration without citing any relevant authority. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)(5)*.

- The Uniform Foreign-Country Money Judgment Recognition Act requires a trial court to recognize a foreign-country judgment if it falls within the Act and subsections (b) or (c) do not apply. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(a)*. If subsection (b) applies, a trial court is not permitted to recognize the foreign-country judgment. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(b)*; *Tex. Gov't Code Ann. § 311.016(5)*. To determine whether the Legislature intended a provision to be mandatory or directory, an appellate court considers the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction. However, if one of the grounds under subsection (c) applies, the trial court may, but is not required to, recognize the foreign-country judgment. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)*; *Tex. Gov't Code Ann. § 311.016(7)*. Thus, whether a foreign-country judgment falls under the Act or the mandatory nonrecognition grounds is first a question of law, which the court reviews de novo. But whether a trial court erred by recognizing or refusing to recognize the foreign-country judgment under one of the permissive grounds should be reviewed for an abuse of discretion. A permissive statute gives a trial court discretion to decide under the framework of the statute.

*Lancaster v. WestCorp Sols., Ltd., 673 S.W.3d 57, 2023 Tex. App. LEXIS 5271 (Tex. App. Corpus Christi July 20, 2023, no pet.)*.

### Contracts Law: Contract Interpretation

*Overview:* In a petition for writ of mandamus challenging the trial court's order appointing an arbitrator, the trial court abused its discretion in appointing an arbitrator of its choosing because the arbitration clause in the sales agreement identified two potential ways for an arbitrator to be selected: by an agreement between the parties or by the AAA.

• In the context of contract interpretation, although generally permissive, the use of "may" can be context-dependent. The dictionary definitions of the words "may" and "shall" are mere general guidelines because they must be read in the context of the written instrument where they are used to ascertain the true intention of the party or parties. *Tex. Gov't Code Ann. § 311.016* provides exception to statutory construction rule construing "may" and "shall" when the context in which the word or phrase appears necessarily requires a different construction. In construing statutes, while the permissive word "may" imports the exercise of discretion, the court is not vested with unlimited discretion, and is required to exercise a sound and legal discretion within the limits created by the circumstances of a particular case.

*In re Highland Homes-Houston, LLC, No. 01-21-00565-CV, 2022 Tex. App. LEXIS 978 (Tex. App. Houston 1st Dist. Feb. 10, 2022).*

### Criminal Law & Procedure: Discovery & Inspection: Discovery by Defendant: Informants: Privilege

Under Tex. *Gov't Code Ann § 311.016(1),* a statute providing that the trial court "may" subpoena the records of a crime stoppers organization concerning a report of criminal activity at defendant's request did not mean the trial court was required to subpoena the records merely at the defendant's request. *Proctor v. State, 319 S.W.3d 175, 2010 Tex. App. LEXIS 4832 (Tex. App. Houston 1st Dist. June 24, 2010),* reh'g denied, *No. 01-08-01041-CR, 2010 Tex. App. LEXIS 7714 (Tex. App. Houston 1st Dist. Aug. 5, 2010)*pet. dism'd *No. PD-1213-10, 2011 Tex. Crim. App. Unpub. LEXIS 69 (Tex. Crim. App. Feb. 2, 2011),* dismissed in part, *No. 01-23-00474-CR, 2024 Tex. App. LEXIS 6689 (Tex. App. Houston 1st Dist. Sept. 5, 2024).*

### Criminal Law & Procedure: Bail: General Overview

Failure to include personal information listed in *Tex. Code Crim. Proc. Ann. art. 17.04(2)(A)*-(D) did not vitiate the legality of defendant's personal bond. In accordance with *Tex. Gov't Code Ann. § 311.016,* the use of the word "shall" in the bond statute created a duty and there was no non-compliance penalty set forth in the statute. *Mitchell v. State, No. 07-07-0380-CR, 2008 Tex. App. LEXIS 9096 (Tex. App. Amarillo Dec. 3, 2008).*

### Criminal Law & Procedure: Postconviction Proceedings: Sex Offenders: Civil Commitments

Tex. *Health & Safety Code Ann. § 841.041(b)(1),* which required the State to file its petition for civil commitment as a sexually violent predator within 90 days of a referral letter, was directory, and not mandatory, and the State substantially complied by filing within 90 days, nonsuiting its case, and refiling the same day as the nonsuit. *In re Lopez, 462 S.W.3d 106, 2015 Tex. App. LEXIS 3506 (Tex. App. Beaumont Apr. 9, 2015, no pet.).*

### Education Law: Administration & Operation: Child Care Facilities

Pursuant to *Tex. Gov't Code Ann. § 2001.171,* a child care provider that held a child-care facility license was entitled, as that term was defined under *Tex. Gov't Code Ann. § 311.016,* to judicial review of a decision by the Texas Department of Protective and Regulatory Services (TDPRS) to revoke the license because, given the inconclusive evidence regarding legislative intent, in enacting the TDPRS's 1997 sunset review legislation, the legislature did not intend to prohibit judicial review of contested-case decisions made under Tex. *Hum. Res. Code Ann. § 42.072.* Furthermore, Tex. *Hum. Res. Code Ann. § 42.078,* the administrative penalty section, did not contain the judicial review language that had been deleted from Tex. *Hum. Res. Code Ann. § 42.072. Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 2004 Tex. LEXIS 780 (Tex. 2004).*

### Environmental Law: Hazardous Wastes & Toxic Substances: Asbestos: General Overview

In an asbestos case arising from Maine employment, the Texas trial court should have granted a motion by defendant companies to dismiss on the basis of forum non conveniens because all of the factors in the forum non conveniens analysis favored maintaining the action in Maine. Because *Tex. Civ. Prac. & Rem. Code Ann. § 71.051* used the word "shall," as defined in *Tex. Gov't Code Ann § 311.016(2)*, the trial court abused its discretion by failing to dismiss the action. *In re GE Co., 271 S.W.3d 681, 2008 Tex. LEXIS 1002 (Tex. 2008)*.

**Estate, Gift & Trust Law: Probate: Personal Representatives: Appointment**

Failure to comply with Tex. Estates Code Ann. § 452.003(2) did not deprive the court of the power to act, because the 180 day term of appointment for temporary administrators was not jurisdictional; there was no indication of legislative intent to make the provision jurisdictional. *Davey v. Margarett Jordan Royalties, Inc., No. 12-13-00002-CV, 2014 Tex. App. LEXIS 8853 (Tex. App. Tyler Aug. 13, 2014)*.

**Estate, Gift & Trust Law: Probate: Procedures in Probate: General Overview**

Statutory probate court did not abuse its discretion under *Tex. Prob. Code Ann. § 5B* when it denied a motion to transfer and consolidate a survival action brought by the administratrix of a decedent's estate, even though a probate proceeding was pending at the time the survival action was filed, because under *Tex. Gov't Code Ann. § 311.016*, the use of the word "may" in *Tex. Prob. Code Ann. § 5B* indicated that the statutory probate court's authority to transfer the survival action was discretionary. *In re Azle Manor, Inc., 83 S.W.3d 410, 2002 Tex. App. LEXIS 6426 (Tex. App. Fort Worth Aug. 28, 2002, no pet.)*.

**Evidence: Documentary Evidence: Affidavits**

*Overview: The grandparents had the burden to overcome the parental presumption imbedded in Tex. Fam. Code Ann. § 153.131, however, there was no evidence of specific acts or omissions of father that demonstrated that an award of custody to him would result in physical or emotional harm to the child.*

- *Tex. Fam. Code Ann. § 153.432*allows a grandparent to file an original suit or a suit for modification requesting possession of or access to a grandchild in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit. *Tex. Fam. Code Ann. § 153.432(a)*, (b). However, the grandparent must execute and attach an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. The court shall deny the relief sought and dismiss the suit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the relief authorized under *Tex. Fam. Code Ann. §§153.433, 153.432(c)*; *Tex. Gov't Code Ann. § 311.016(2)*.

*In re Estep, No. 13-23-00006-CV, 2023 Tex. App. LEXIS 1204 (Tex. App. Corpus Christi Feb. 24, 2023)*;

**Evidence: Testimony: Experts: Qualifications**

Although *Tex. Civ. Prac. & Rem. Code Ann. § 74.402(c)* provides that a court "shall consider" two particular factors in weighing a witness's qualifications, and thus a trial court and an appellate court must consider those factors in assessing a witness's status as an expert. § 74.402(c) does not provide that its factors are mandatory elements that must be proved before a witness can be qualified as an expert. *Heritage Gardens Healthcare Ctr. & Lync Health Care, L.L.C. v. Pearson, No. 05-07-00772-CV, 2008 Tex. App. LEXIS 7283 (Tex. App. Dallas Aug. 29, 2008)*.

In a patient's health care liability case against a nursing home, which was governed by Tex. Civ. Prac. & Rem. Code Ann. ch. 74, the trial court did not abuse its discretion in denying the nursing home's motion to dismiss based on the patient's alleged failure to serve a sufficient expert report where, under the circumstances of the case, the

trial court reasonably could have concluded that the patient's expert was qualified under *Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(3)*, and thus also under *Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(B)*, because: (1) the case concerned allegedly negligent care and monitoring of a patient with chronic urinary problems and a urological device that could become blocked and cause serious health consequences; (2) the expert had substantial training and experience in the field of urology; (3) the expert had treated hundreds of nursing home patients with catheter care problems like the patient; and (4) the expert had worked with nurses throughout his entire professional career, and he knew the standard of care applicable to them when caring for patients like the patient in the instant case. Although the expert had stopped practicing urology about seven years before the events made the basis of the suit, and he was not actively practicing health care in rendering health care services relevant to the claim, the seven-year gap did not automatically disqualify him because a reasonable trial court could conclude that he still possessed substantial training or experience in the area of health care relevant to the patient's claim, pursuant to *Tex. Civ. Prac. & Rem. Code Ann. § 74.402(c)(1)*. *Heritage Gardens Healthcare Ctr. & Lyric Health Care, L.L.C. v. Pearson, No. 05-07-00772-CV, 2008 Tex. App. LEXIS 7283 (Tex. App. Dallas Aug. 29, 2008)*.

### Family Law: Child Custody: Awards: Nonparents

Grandmother had standing to seek access to her grandchild based on evidence that denial of her access to the child would significantly impair his physical health or emotional well-being, *Tex. Fam. Code Ann. § 153.432*; however, the order did not comply with Tex. Fam. Code Ann. § 153.433, which mandated specified factual findings. *In re J.R.W., No. 05-15-01479-CV, 2017 Tex. App. LEXIS 2384 (Tex. App. Dallas Mar. 21, 2017)*, op. withdrawn, *No. 05-15-01479-CV, 2017 Tex. App. LEXIS 7246 (Tex. App. Dallas May 19, 2017)*, op. withdrawn, sub. op., *No. 05-15-01479-CV, 2017 Tex. App. LEXIS 6831 (Tex. App. Dallas July 20, 2017)*.

### Family Law: Child Custody: Procedures

In a suit affecting the parent child relationship, the trial court was directed to issue additional temporary orders stating the specific reason for temporary orders that did not allow a parent possessory conservator to have possession of the child, as required by the standard possession order; because *Tex. Fam. Code Ann. § 153.258* (2014) used the word "shall," the requirement for findings was mandatory. *In re Rangel, No. 04-17-00060-CV, 2017 Tex. App. LEXIS 2659 (Tex. App. San Antonio Mar. 29, 2017)*.

Statute 's use of the verb "may" provides a trial court with discretion whether to appoint an amicus attorney. Because the trial court has discretion concerning whether to appoint an amicus attorney, such discretion also applies regarding whether to remove that amicus, absent demonstration of some situation which would create a ministerial duty to remove that amicus attorney. *In re Burrows, No. 06-17-00014-CV, 2017 Tex. App. LEXIS 2299 (Tex. App. Texarkana Mar. 17, 2017)*.

### Family Law: Child Custody: Visitation: Awards: Third Parties: Grandparents

> **Overview:** The grandparents had the burden to overcome the parental presumption imbedded in *Tex. Fam. Code Ann. § 153.131*, however, there was no evidence of specific acts or omissions of father that demonstrated that an award of custody to him would result in physical or emotional harm to the child.

- *Tex. Fam. Code Ann. § 153.432* allows a grandparent to file an original suit or a suit for modification requesting possession of or access to a grandchild in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit. *Tex. Fam. Code Ann. § 153.432(a)*, (b). However, the grandparent must execute and attach an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. The court

shall deny the relief sought and dismiss the suit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the relief authorized under *Tex. Fam. Code Ann. §§153.433, 153.432(c)*; *Tex. Gov't Code Ann. § 311.016(2)*.

> *In re Esteo, No. 13-23-00006-CV, 2023 Tex. App. LEXIS 1204 (Tex. App. Corpus Christi Feb. 24, 2023)*.

Grandmother had standing to seek access to her grandchild based on evidence that denial of her access to the child would significantly impair his physical health or emotional well-being, *Tex. Fam. Code Ann. § 153.432*; however, the order did not comply with Tex. Fam. Code Ann. § 153.433, which mandated specified factual findings. *In re J.R.W., No. 05-15-01479-CV, 2017 Tex. App. LEXIS 2384 (Tex. App. Dallas Mar. 21, 2017)*, op. withdrawn, *No. 05-15-01479-CV, 2017 Tex. App. LEXIS 7246 (Tex. App. Dallas May 19, 2017)*, op. withdrawn, sub. op., *No. 05-15-01479-CV, 2017 Tex. App. LEXIS 6831 (Tex. App. Dallas July 20, 2017)*.

### Family Law: Child Support: Obligations: Enforcement

In a post-divorce proceeding, the trial court did not abuse its discretion by ordering the husband to pay $800 per month toward the aggregate judgment because the husband had not presented any argument or authority to support a conclusion that the payment term was unreasonable. *In the Interest of R.H.B., 660 S.W.3d 136, 2022 Tex. App. LEXIS 2135 (Tex. App. San Antonio Mar. 30, 2022, no pet.)*.

### Family Law: Marital Termination & Spousal Support: Dissolution & Divorce: Property Distribution: Property Settlements

Husband's assertion that a formal court referral to mediation was required for a mediated settlement agreement (MSA) to be binding was refuted by the language of *Tex. Fam. Code Ann. § 6.602(a)*, which provided that the trial court "may" refer a case for mediation, and was also inconsistent with the public policy and purpose of mediation; the husband failed to preserve his claim of fraud for review by offering evidence. *2016 Tex. App. LEXIS 6335*.

### Family Law: Marital Termination & Spousal Support: Spousal Support: Obligations: Periodic Support

Under *Tex. Fam. Code Ann. § 8.054(b)*, a trial court is not required to award spousal maintenance for an indefinite period when a disabled spouse establishes the existence of a disability; the word "may" gives the trial court discretionary authority, in accordance with *Tex. Gov't Code Ann. § 311.016(1)*, *Stewart v. Stewart, No. 01-04-01126-CV, 2006 Tex. App. LEXIS 3123 (Tex. App. Houston 1st Dist. Apr. 20, 2006)*.

Under *Tex. Fam. Code Ann. § 8.054(b)*, a trial court is not required to award spousal maintenance for an indefinite period when a disabled spouse establishes the existence of a disability; the word "may" in § 8.054(b) gives the trial court discretionary authority, in accordance with *Tex. Gov't Code Ann. § 311.016(1)*, *Stewart v. Stewart, No. 01-04-01126-CV, 2006 Tex. App. LEXIS 3123 (Tex. App. Houston 1st Dist. Apr. 20, 2006)*.

### Governments: Courts: Authority to Adjudicate

*Overview: Court concluded that appellant had not shown that trial court abused discretion by declining to order disclosure as it had no obligation to act on its own motion, Tex. Fam. Code Ann. § 261.201(c); nothing in the record showed he requested the required hearing, that he served notice of the hearing on the investigating agency and interested parties.*

- A trial court's authority to order the release of confidential information under *Tex. Fam. Code Ann. § 261.201(b)* or (c) is discretionary. The exception allowing the trial court to disclose confidential information under *Tex. Fam. Code Ann. § 261.201*](b) is discretionary. The trial court may order disclosureâ‌ it has

permission or a power to do soâ☐ but it is not required to do so. *Tex. Gov't Code Ann. § 311.016(1)* states that "may" creates discretionary authority.

*Starkey v. Stainton, 552 S.W.3d 80, 2022 Tex. App. LEXIS 1994 (Tex. App. Fort Worth Mar. 24, 2022, no pet.).*

## Governments: Courts: Rule Application & Interpretation

When plaintiffs re-filed their suit for maritime claims, the district court abused its discretion by failing to transfer case to the county court where it was pending before it was non-suited as required by Galveston County, Tex., Ct. R. 3.11D; because the Galveston County, Texas, Local Rules were adopted pursuant to *Tex. Gov't Code Ann. § 74.093(a)*, the Texas Code Construction Act applied. Therefore, the Court of Appeals of Texas held the use of the word "shall" in Galveston County, Tex., Ct. R. 3.11D imposed a duty to transfer, limiting the court's discretion in the matter under *Tex. Gov't Code Ann. § 311.016(1)*, (2) . *In re Mike Hooks, Inc., No. 01-12-00503-CV, 2012 Tex. App. LEXIS 7039 (Tex. App. Houston 1st Dist. Aug. 23, 2012).*

## Governments: Legislation: Interpretation

*Overview:* The mandamus seeking to compel the City Council for the City to order a municipal election pursuant to Tex. *Elec. Code Ann. § 3.004(b)* was not moot because the deadline for the City to call the election was Monday, August 19, 2024, and the memorandum opinion was issued in time for the City to act.

- Tex. *Elec. Code Ann. § 3.004* imposes a duty by law. The use of "shall" in the statutory language reflects a mandatory, ministerial duty. *Tex. Gov't Code Ann. § 311.016(2)* states that the statutory language of "shall" imposes a duty.

  *In re Moreno, No. 13-24-00404-CV, 2024 Tex. App. LEXIS 5941 (Tex. App. Corpus Christi Aug. 15, 2024).*

*Overview:* Board of emergency services district had to determine whether the relators' petition to alter the sales tax within the district contained the statutorily required number of signatures. The Board had a ministerial duty to determine whether the petition contained the required number of signatures. Tex. *Health & Safety Code Ann. § 775.0752.*

- The Board, once it has determined that a petition has a valid number of signatures, must place the petition on the ballot. Tex. *Health & Safety Code Ann. § 775.0752(b)* states that the board shall call an election if an appropriate number of qualified voters petition the board to call the election. The plain meaning of this statutory textâ☐ and, in particular, the use of shallâ☐ reflects that the Board has no discretion to deny a petition calling for an election if it contains the requisite signatures. *Tex. Gov't Code Ann. § 311.016(2).* But, as the statute makes clear, the duty to call the election arises only if the petition includes the requisite signatures. While there may be some discretion to be exercised in making that preliminary determination, once it is determined that the requisite signatures were included, the mandatory duty to call the election arises, leaving no room for the exercise of any discretion.

  *In re Rogers, 690 S.W.3d 296, 2024 Tex. LEXIS 386 (Tex. 2024).*

*Overview:* Juvenile court did not abuse its discretion by dismissing case as court lacked jurisdiction to conduct an adjudication hearing over minor due to omission of information required by *Tex. Fam. Code Ann. § 53.04(d)(3)* as minor challenged defective petition for noncompliance with statutory requirements and State did not replead to cure the defect.

• The term "must" when used in a statute creates or recognizes a condition precedent. *Tex. Gov't Code Ann. § 311.016(3)*. Use of the term "must" in a statute at least suggests that a requirement could be jurisdictional.

*In re D.M., 679 S.W.3d 864, 2023 Tex. App. LEXIS 6545 (Tex. App. Houston 1st Dist. Aug. 24, 2023)*, reh'g denied, *No. 01-22-00323-CV, 2023 Tex. App. LEXIS 8962 (Tex. App. Houston 1st Dist. Nov. 30, 2023)*.

**Overview:** Trial court properly recognized the foreign-country judgment because appellants failed to follow the appropriate procedure to enforce the arbitration agreement. Their argument for denial of recognition solely relied on Texas' policy favoring arbitration without citing any relevant authority. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)(5)*.

• The Uniform Foreign-Country Money Judgment Recognition Act requires a trial court to recognize a foreign-country judgment if it falls within the Act and subsections (b) or (c) do not apply. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(a)*. If subsection (b) applies, a trial court is not permitted to recognize the foreign-country judgment. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(b)*; *Tex. Gov't Code Ann. § 311.016(5)*. To determine whether the Legislature intended a provision to be mandatory or directory, an appellate court considers the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction. However, if one of the grounds under subsection (c) applies, the trial court may, but is not required to, recognize the foreign-country judgment. *Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)*; *Tex. Gov't Code Ann. § 311.016(7)*. Thus, whether a foreign-country judgment falls under the Act or the mandatory nonrecognition grounds is first a question of law, which the court reviews de novo. But whether a trial court erred by recognizing or refusing to recognize the foreign-country judgment under one of the permissive grounds should be reviewed for an abuse of discretion. A permissive statute gives a trial court discretion to decide under the framework of the statute.

*Lancaster v. WestCorp Sols., Ltd., 673 S.W.3d 57, 2023 Tex. App. LEXIS 5271 (Tex. App. Corpus Christi July 20, 2023, no pet.)*.

**Overview:** Trial court did not err by granting appellees' motion for summary judgement because appellant was not entitled to a refund for tax years 2010 and 2011 as there was no good cause shown that appellant was entitled to an extension for the application per *Tex. Tax Code Ann. § 31.11(c-1)*. The application was made more than three years after payments.

• The appellate court's role is to interpret and apply the plain meaning of the statute's language and give effect to the legislature's intent. The court takes statutes as it finds them and refrains from rewriting the legislature's text. The legislature granted the governing body of the taxing authority—not the courts—permission to extend the application deadline. *Tex. Tax Code Ann. § 31.11(c-1)*. Further, the legislature made the extension permissive, not mandatory. *Tex. Gov'T Code Ann. § 311.016*. May does not mean shall or must be.

*Sundial Owner's Ass'n v. Nueces Cnty., No. 13-21-00069-CV, 2023 Tex. App. LEXIS 1536 (Tex. App. Corpus Christi Mar. 9, 2023)*.

**Overview:** Trial court did not abuse its discretion by refusing to extend statute of limitations because if emergency order gave trial court discretion to suspend statute of limitations, it was not required to do so, and nothing in record required it to act pursuant to mandatory language to avoid risk to court staff, parties, attorneys, jurors, and public.

• The starting point for the Supreme Court COVID Emergency Order is that the trial court may modify or suspend any deadline. In general, may is a permissive term that gives rise to discretionary authority or

grants permission or a power. *Tex. Gov't Code Ann. § 311.016(1)*. Consistent with the use of this permissive term, Texas courts have interpreted the emergency orders as generally permitting trial courts to extend deadlines rather than requiring them to do so.

*Segovia v. Stebbins, No. 14-21-00078-CV, 2023 Tex. App. LEXIS 847 (Tex. App. Houston 14th Dist. Feb. 9, 2023).*

**Overview:** *In an action for injury resulting in death, the court did not err in granting summary judgment based on the statute of limitations, Tex. Civ. Prac. & Rem. Code Ann. § 16.003, because the warranty deed was filed in public records, and had appellants exercised due diligence, they would have discovered the proper party.*

- Under the terms of the emergency order, a trial court may modify or suspend any deadline. In general, "may" is a permissive term that gives rise to discretionary authority or grants permission or power. *Tex. Gov't Code Ann. § 311.016(1)* (2013). Consistent with the use of this permissive term, Texas courts have interpreted the emergency orders as generally permitting trial courts to extend deadlines rather than requiring them to do so.

*Scott v. Teel, No. 12-22-00142-CV, 2023 Tex. App. LEXIS 169 (Tex. App. Tyler Jan. 11, 2023).*

**Overview:** *In a forcible detainer action, trial court erred in awarding leased premises and attorney's fees to appellee because appellee failed to comply with Tex. Prop. Code Ann. § 24.005(e) in not providing a separate notice to vacate after ten days from first notice, thus, it did not lawfully terminate appellant's tenancy.*

- When the legislature uses the term "may not," the appellate courts generally construe it as synonymous with shall not. *Tex. Gov't Code Ann. § 311.016(5)* provides that unless the context necessarily requires a different construction, may not imposes a prohibition and is synonymous with shall not. Under this plain language, when the lease requires an opportunity to respond to a proposed eviction and *Tex. Prop. Code Ann. § 24.005* thus applies, the landlord must provide a separate, later notice to vacate.

*Mercadel v. Empire Vill. Apts. No. 14-22-00079-CV, 2023 Tex. App. LEXIS 106 (Tex. App. Houston 14th Dist. Jan. 10, 2023).*

**Overview:** *Customer's claim against grocery store was barred by limitations as a result of his failing to exercise appropriate diligence in effecting service of process on store. Trial court did not err by rejecting customer's excuse that COVID-19 pandemic prevented him from effecting service in timely manner. Discovery rule could not save customer's claim.*

- In general, may is a permissive term that gives rise to discretionary authority or grants permission or a power. *Tex. Gov't Code Ann. § 311.016(1)*. Consistent with the use of this permissive term, Texas courts have interpreted the emergency orders as generally permitting trial courts to extend deadlines rather than requiring them to do so. That is, by and large, the order vests trial courts with broad discretion to modify or suspend any deadlines and procedures' prescribed by statute.

*Ramos v. Veracruz Foods, LLC, No. 02-22-00116-CV, 2022 Tex. App. LEXIS 9545 (Tex. App. Fort Worth Dec. 29, 2022).*

**Overview:** *Relator was entitled to habeas relief from a criminal contempt order related to three alleged violations of child-support orders because the contempt order did not satisfy the requirements of Tex. Fam. Code Ann. § 157.166, as it did not contain express findings of the three dates on which relator committed acts constituting criminal contempt.*

- In Texas codes, the word must creates or recognizes a condition precedent unless the context necessarily requires a different construction or the statute itself provides a different construction. *Tex. Gov't Code Ann. § 311.016(3)*. And the ordinary meaning of date, in this context, is the day when an event happened or will happen.

*In re Bilder, No. 05-22-00929-CV, 2022 Tex. App. LEXIS 9191 (Tex. App. Dallas Dec. 16, 2022).*

**Overview:** *In a dispute between a property owner and a property owners' association, the trial court did not err in rendering judgment for the property owners' association because the consequences of the alternative interpretations weighed against a jurisdictional interpretation of Tex. Prop. Code Ann. § 209.007's hearing requirement.*

- In the context of a dispute between property owner and a property owners' association, when there is both an entitlement to and a request for a hearing, the statute provides that the association shall take two actions: it shall (1) hold a hearing within 30 days of its receipt of the owner's request and (2) notify the owner of the date, time, and place of the hearing not later than ten days before the date of the hearing. See id. § 209.007(c). The Code Construction Act explains that "shall" imposes a duty, Tex. Gov't Code Ann. § 311.016(2), and the Texas Supreme Court states that "shall" generally has a mandatory connotation, unless legislative intent suggests otherwise. Courts generally construe a statutory provision as mandatory when the power or duty to which it relates is for the public good.

Dao v. Mission Bend Homeowners Ass'n, 667 S.W.3d 304, 2022 Tex. App. LEXIS 5417 (Tex. App. Houston 1st Dist. Aug. 2, 2022, no pet.).

**Overview:** *Applying Tex. Civ. Prac. & Rem. Code Ann. ch. 74 to a son░ ░s claim against a hospital for negligent treatment of his father was proper because although there was no physician-patient relationship between the hospital and his father, the claim involved a physician-patient relationship between the father and his physicians at the hospital.*

- The word "shall" in a statute imposes a duty. Tex. Gov't Code Ann. § 311.016(2). Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), therefore, imposes a duty on a claimant, not the defendant or the trial court, to file an expert report.

Noel v. Oakbend Med. Ctr., No. 01-21-00206-CV, 2022 Tex. App. LEXIS 5408 (Tex. App. Houston 1st Dist. Aug. 2, 2022).

**Overview:** *In a petition for writ of mandamus challenging the trial court's order appointing an arbitrator, the trial court abused its discretion in appointing an arbitrator of its choosing because the arbitration clause in the sales agreement identified two potential ways for an arbitrator to be selected: by an agreement between the parties or by the AAA.*

- In the context of contract interpretation, although generally permissive, the use of "may" can be context-dependent. The dictionary definitions of the words "may" and "shall" are mere general guidelines because they must be read in the context of the written instrument where they are used to ascertain the true intention of the party or parties. Tex. Gov't Code Ann. § 311.016 provides exception to statutory construction rule construing "may" and "shall" when the context in which the word or phrase appears necessarily requires a different construction. In construing statutes, while the permissive word "may" imports the exercise of discretion, the court is not vested with unlimited discretion, and is required to exercise a sound and legal discretion within the limits created by the circumstances of a particular case.

In re Highland Homes-Houston, LLC, No. 01-21-00585-CV, 2022 Tex. App. LEXIS 978 (Tex. App. Houston 1st Dist. Feb. 10, 2022).

Notice provision in the Texas Premium Finance Act required that notice had to be given by the premium finance company to the defaulting insured prior to cancellation of the policy, which provision was to be read as written rather than with a "substantial compliance" approach that excused minor slip-ups pursuant to the statutory construction rules. Bankdirect Capital Fin., LLC v. Plasma Fab, LLC, 519 S.W.3d 76, 2017 Tex. LEXIS 450 (Tex. 2017).

Statutory language that a complaint must be made under oath makes that provision mandatory, but there is no language that indicates that the verification requirement is jurisdictional or provides that failure to verify the

complaint should result in dismissal. *Reid v. SSB Holdings, Inc., 506 S.W.3d 140, 2016 Tex. App. LEXIS 11484 (Tex. App. Texarkana Oct. 25, 2016, no pet.)*.

Tex. *Health & Safety Code Ann. § 841.041(b)(1)*, which required the State to file its petition for civil commitment as a sexually violent predator within 90 days of a referral letter, was directory, and not mandatory, and the State substantially complied by filing within 90 days, nonsuiting its case, and refiling the same day as the nonsuit. *In re Lopez, 462 S.W.3d 106, 2015 Tex. App. LEXIS 3506 (Tex. App. Beaumont Apr. 9, 2015, no pet.)*.

In the trust's action to quite title to a house, the Texas trial court erred by entering a default judgment against the New York bank because it was not properly served in accordance with *Tex. Civ. Prac. & Rem. Code Ann. § 17.028* which requires service on an agent of the financial institution. Service pursuant to § 17.028 is mandatory, rather than permissive; therefore, the trust did not have the discretion to choose the manner of service. *Bank of N.Y. v. Chesapeake 34771 Land Trust, 456 S.W.3d 628, 2015 Tex. App. LEXIS 439 (Tex. App. El Paso Jan. 16, 2015, no pet.)*.

Failure to comply with Tex. Estates Code Ann. § 452.003(2) did not deprive the court of the power to act, because the 180 day term of appointment for temporary administrators was not jurisdictional; there was no indication of legislative intent to make the provision jurisdictional. *Davey v. Margarett Jordan Royalties, Inc., No. 12-13-00002-CV, 2014 Tex. App. LEXIS 8853 (Tex. App. Tyler Aug. 13, 2014)*.

Court properly denied appellant's second motion for continuance, because the parties agreed to a trial schedule that did not comply with a plain reading of the statute and the record showed that the parties did not agree to a second continuance; "may not" imposed a prohibition and was synonymous with "shall not." *Vazaldua v. Muñoz, No. 13-14-00275-CV, 2014 Tex. App. LEXIS 6701 (Tex. App. Corpus Christi June 20, 2014)*.

In the baseball club's suit for declaratory and injunctive relief to prevent the county from terminating a lease, the trial court did not err by granting the county's plea to the jurisdiction on the basis of governmental immunity; Tex. *Loc. Gov't Code Ann. § 89.004(c)*, which provided that a suit for injunctive relief against a county was an exception to the presentment requirement, was not a clear and unambiguous waiver of the county's immunity from suit. The baseball club erred it analysis of the use of the word "may" which the court held did not establish permission pursuant to *Tex. Gov't Code § 311.016(1)* to file suit against the county. *Amarillo 'Dillas Baseball Club, LLC v. Potter County, No. 07-11-00059-CV, 2012 Tex. App. LEXIS 8539 (Tex. App. Amarillo Oct. 11, 2012)*.

Inclusion of the term "may" in *Tex. R. Civ. P. 203.1(b)* does not impose a mandatory duty on the trial court, but rather indicates that the trial court has discretion in determining whether a witness had waived his or her right to make changes to their deposition testimony by failing to return the revised transcript to the deposition officer within 20 days. *Dickerson v. State Farm Lloyd's Inc., No. 10-11-00071-CV, 2011 Tex. App. LEXIS 6051 (Tex. App. Waco Aug. 3, 2011)*.

While the use of the word "must" created a condition precedent under *Tex. Gov't Code Ann. § 311.016(3)*, based on the franchise termination notice requirement's underlying purpose under Tex. *Occ. Code Ann. § 2301.453* to ensure that a dealership was notified of its statutory rights to protest the termination and obtain a hearing, a car manufacturer's notice was sufficiently compliant as language informing the dealerships of their rights was in an all-caps, boldface notice at the top of the termination letters. *Ultimate Ford, Inc. v. Motor Vehicle Div. of the Tex. DOT, No. 03-09-00548-CV, 2010 Tex. App. LEXIS 7055 (Tex. App. Austin 3d Dist. Aug. 27, 2010)*.

There is no constitutional right to confrontation in a civil proceeding and the statutes and rules cited, including *Tex. R. Civ. P. 183*, *Tex. Civ. Prac. & Rem. Code Ann. § 21.031*, and *Tex. Gov't Code Ann. § 57.002(b)*, all provide that in civil courts the court "may," on its own motion, appoint an interpreter; when the term "may" is used in a statute, it indicates the provision is discretionary, not mandatory, under *Tex. Gov't Code Ann. § 311.016*, and in this case the trial court was permitted, but not required, to appoint an interpreter. *Shren-Yee Cheng v. Zhaoya Wang, 315 S.W.3d 668, 2010 Tex. App. LEXIS 4669 (Tex. App. Dallas June 22, 2010, no pet.)*.

Two-year period for filing suit under Tex. Lab. Code § 21.256 was mandatory but not jurisdictional, and the Texas Supreme Court overruled Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483 (1991) to the extent it held otherwise; while the phrase "may not be brought" makes the provision mandatory, the statute did not indicate that the provision was jurisdictional or that the consequence of noncompliance was dismissal. In re United Servs. Auto. Ass'n, 307 S.W.3d 299, 108 Fair Empl. Prac. Cas. (BNA) 1626, 2010 Tex. LEXIS 282 (Tex. 2010).

Court erred when it denied the county's amended plea to the jurisdiction, because pursuant to Tex. Gov't Code Ann. § 311.034, the trial court was required to dismiss the case for lack of jurisdiction, when the landscaper had not met the statutory prerequisites set forth in Tex. Loc. Gov't Code Ann. § 89.004(a); Tex. Loc. Gov't Code Ann. § 89.004(a) was a notice requirement and statutory prerequisite to suit, and the only presentment of the landscaper's claim to the Commissioners Court occurred over two months after suit was filed. Dallas County v. C. Green Scaping, L.P., 301 S.W.3d 872, 2009 Tex. App. LEXIS 9341 (Tex. App. Dallas Dec. 9, 2009, no pet.).

Summary judgment in favor of the city was proper, because Tex. Loc. Gov't Code Ann. § 143.044(b) granted the city discretionary authority to set conditions resulting in the award of certification pay to some fire fighters meeting the requirements, but not others, and the city ordinance limiting firefighters to receiving either educational incentive pay or certification pay but not both, was applied equally to all firefighters and treated all similarly situated firefighters the same; since the pay supplements authorized by the city were disbursed in a fair, even-handed, and non-discriminatory manner, the ordinance was consistent with the Fire Fighter and Police Officer Civil Service Act. Tex. Loc. Gov't Code Ann. §§ 143.001-143.363. Alexander v. City of Austin, 302 S.W.3d 885, 2009 Tex. App. LEXIS 9003 (Tex. App. Austin 3d Dist. Nov. 20, 2009, no pet.).

Appellate court did not lack jurisdiction to consider the appeal, because the notice of appeal was timely, when there was no indication that the Texas Legislature intended to require plaintiffs to appeal interlocutory orders granting medical liability defendants' motions to dismiss based on the failure to file an adequate expert report; the term "may" created discretionary authority. Burkhart v. Sedgwick Claim Mgmt. Servs., No. 13-08-00351-CV, 2009 Tex. App. LEXIS 6983 (Tex. App. Corpus Christi Aug. 31, 2009).

Tex. Loc. Gov't Code Ann. § 143.057(a) clearly requires that the letter notify the officer of the appeal limitation, and in construing the statute pursuant to Tex. Gov't Code Ann. § 311.016(3), which noted that the term "must" created or recognized a condition precedent, the rest of the Code and its apparent objective also indicate this provision is mandatory; there are two alternative means for officers to appeal: to the commission or to the hearing examiner under Tex. Loc. Gov't Code Ann. §§ 143.053, 143.057, but these two avenues of appeal, however, diverge on the right to further judicial review. If the officer does not know of these limitations, then the officer is unable to properly assess which appeal route to take, and this notice protects the officer's appellate rights, and thus the court holds that the notice provision under § 143.057(a) is mandatory. City of Desoto v. White, 288 S.W.3d 389, 29 I.E.R. Cas. (BNA) 555, 2009 Tex. LEXIS 395 (Tex. 2009).

Failure to include personal information listed in Tex. Code Crim. Proc. Ann. art. 17.04(2)(A)-(D) did not vitiate the legality of defendant's personal bond. In accordance with Tex. Gov't Code Ann. § 311.016, the use of the word "shall" in the bond statute created a duty and there was no non-compliance penalty set forth in the statute. Mitchell v. State, No. 07-07-0380-CR, 2008 Tex. App. LEXIS 9096 (Tex. App. Amarillo Dec. 3, 2008).

Use of the term "may" in Tex. R. Civ. P. 106(b) indicates that the legislature intended to give the courts discretionary authority. Izen v. Sjostrom, No. 14-06-00142-CV, 2007 Tex. App. LEXIS 2586 (Tex. App. Houston 14th Dist. Apr. 3, 2007).

Under Tex. Fam. Code Ann. § 8.054(b), a trial court is not required to award spousal maintenance for an indefinite period when a disabled spouse establishes the existence of a disability; the word "may" gives the trial court discretionary authority, in accordance with Tex. Gov't Code Ann. § 311.016(1). Stewart v. Stewart, No. 01-04-01126-CV, 2006 Tex. App. LEXIS 3123 (Tex. App. Houston 1st Dist. Apr. 20, 2005).

Under Tex. Fam. Code Ann. § 8.054(b), a trial court is not required to award spousal maintenance for an indefinite period when a disabled spouse establishes the existence of a disability; the word "may" in § 8.054(b) gives the trial

court discretionary authority, in accordance with *Tex. Gov't Code Ann. § 311.016(1)*. *Stewart v. Stewart, No. 01-04-01126-CV, 2006 Tex. App. LEXIS 3123 (Tex. App. Houston 1st Dist. Apr. 20, 2005)*.

Trial court erred in granting a voluntary nonsuit under *Tex. R. Civ. P. 162* in a medical malpractice action after the filing of motions to dismiss under former statute for failure to timely file an expert report; the word "shall," construed in accordance with *Tex. Gov't Code Ann. § 311.016(2)* to impose a mandatory duty, required dismissal with prejudice when an expert report was not timely filed. *Moseley v. Behringer, 184 S.W.3d 829, 2006 Tex. App. LEXIS 406 (Tex. App. Fort Worth Jan. 19, 2006, no pet.)*.

Under the mandatory attorney-fee provision of Tex. *Water Code Ann. § 54.237*, attorney fees should have been awarded to a municipal utility district because judgment was entered in its favor to enforce restrictive covenants against homeowners. The court noted that under *Tex. Gov't Code Ann. § 311.016*, "shall" imposed a duty. *Anderson Mill Mun. Util. Dist. v. Robbins, 584 S.W.3d 463, 2005 Tex. App. LEXIS 7482 (Tex. App. Austin 3d Dist. Sept. 8, 2005, no pet.)*.

*Tex. R. Evid. 705(b)* clearly makes certain voir dire on underlying facts or data discretionary in a civil case; the use of the word "may" creates discretionary authority in the trial court, pursuant to *Tex. Gov't Code Ann. § 311.016(1)*. *In re Estate of Trawick, 170 S.W.3d 871, 2005 Tex. App. LEXIS 6568 (Tex. App. Texarkana Aug. 18, 2005, no pet.)*.

Trial court did not err in dismissing the building company's negligence action against an engineering firm without prejudice based on the company's failure to file an affidavit of a third-party professional engineer as required by Tex. *Civ. Prac. & Rem. Code Ann. § 150.002* because the clerk's record on appeal did not contain the documents the company relied upon in support of its assertion that the firm waived its right to seek dismissal, and the specific language in § 150.002(d), which stated "may dismiss with prejudice," gave the trial court discretion to dismiss with or without prejudice. Tex. *Gov't Code Ann. § 311.016*, the Code Construction Act, specifies that "may" creates discretionary authority or grants permission or a power. *Palladian Bldg. Co. v. Nortex Found. Designs, Inc., 165 S.W.3d 430, 2005 Tex. App. LEXIS 3460 (Tex. App. Fort Worth May 5, 2005, no pet.)*.

Use of the word "may" in the Texas Health and Human Services Commission's administrative appeals rule granted hospitals permission to request both informal and formal reviews of disputed calculations of Medicaid reimbursement, 1 Tex. Admin. Code § 355.8063(k)(1)(A), however, there was nothing in the plain language of the rule that compelled the Commission to grant the request. *El Paso County Hosp. Dist. v. Tex. Health & Human Servs. Comm'n, 161 S.W.3d 587, 2005 Tex. App. LEXIS 462 (Tex. App. Austin 3d Dist. Jan. 21, 2005)*, aff'd in part and rev'd in part, *No. 05-0372, 2007 Tex. LEXIS 740 (Tex. Aug. 31, 2007)*.

Given case law and the definition of "shall" in *Tex. Gov't Code Ann. § 311.016(2)* of the Code Construction Act, the requirement of *Tex. Transp. Code Ann. § 724.032(c)* is merely directory. § 724.032(c)(4) contains no specific language specifying the consequences for an officer's failure to forward the written refusal report on time, nor does it suggest that proof of compliance is a predicate to some other action, and the legislature intended the provision to be a housekeeping procedure placed in the statute to further the prompt and orderly conduct of business of the Texas Department of Public Safety and meant it only as a directory requirement. *Tex. Dep't of Pub. Safety v. Perkins, No. 01-04-00093-CV, 2004 Tex. App. LEXIS 10833 (Tex. App. Houston 1st Dist. Dec. 2, 2004)*.

Although the word "shall" is generally construed to be mandatory, it may be and frequently is held to be merely directory. *Parks v. Tex. Dep't of Pub. Safety, No. 01-03-00274-CV, 2004 Tex. App. LEXIS 9365 (Tex. App. Houston 1st Dist. Oct. 21, 2004)*.

As drafted by the legislature, the statutory language of *Tex. Fam. Code Ann. § 9.008* is permissive in nature, and when, as in § 9.008, a statute uses the word "may" it creates discretionary authority or grants permission or a power pursuant to *Tex. Gov't Code Ann. § 311.016(1)*. *Tex. Fam. Code Ann. § 9.008* allows a court to render a clarifying order in conjunction with a motion for contempt, but it does not require the court to do so, and rather, such action by the trial court is discretionary. As indicated by the language of § 9.008(b), a court is not required to issue a clarifying

order even when the court finds the language of the decree too ambiguous to enforce by contempt. *Calhoun v. Ying-Calhoun, No. 01-03-00039-CV, 2004 Tex. App. LEXIS 8983 (Tex. App. Houston 1st Dist. Oct. 7, 2004).*

Under Tex. *Gov't Code Ann. § 311.016(2)*, use of the term "shall" with regard to fixing a date imposes a duty on a court to follow the statute by designating a fixed date. *In the Interest of D.D.M., 116 S.W.3d 224, 2003 Tex. App. LEXIS 6644 (Tex. App. Tyler July 31, 2003, no pet.).*

Applying *Tex. Gov't Code Ann. § 311.016(1)* to interpret *Tex. Prop. Code Ann. § 202.004(c)*, "may" gives the trial court discretion to determine whether to award civil damages for the violation of restrictive covenants. *Air Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d 900, 2003 Tex. App. LEXIS 6031 (Tex. App. Dallas July 16, 2003, no pet.).*

Applying *Tex. Gov't Code Ann. § 311.016(1)* to interpret *Tex. R. Civ. P. 12*, "may" denotes discretionary power as to when such a motion can be heard, within the limits otherwise set by the rule. *Air Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d 900, 2003 Tex. App. LEXIS 6031 (Tex. App. Dallas July 16, 2003, no pet.).*

Where the Code Construction Act applied to the construction of the Local Government Code, and according to the Act, the word "shall" is interpreted to impose a duty, therefore, the Civil Service Commission had a duty to enforce its rules, and when it ordered the sheriff to reinstate the deputy sheriff, that order was nondiscretionary and the sheriff was required to comply. *Sheppard v. Thomas, 101 S.W.3d 577, 2003 Tex. App. LEXIS 1009 (Tex. App. Houston 1st Dist. Jan. 30, 2003, no pet.).*

The use of the word "may" in a statute creates discretionary authority, not mandatory. *In re Azle Manor, Inc., 83 S.W.3d 410, 2002 Tex. App. LEXIS 6426 (Tex. App. Fort Worth Aug. 28, 2002, no pet.).*

Under Tex. *Gov't Code Ann. § 311.016*, when construing a statute, Texas courts adhere to the distinction between permissive terms, such as may, and mandatory terms, such as shall. *Pitts v. Dallas County Bail Bond Bd., 23 S.W.3d 407, 2000 Tex. App. LEXIS 3018 (Tex. App. Amarillo May 8, 2000), cert. denied, 531 U.S. 1151, 121 S. Ct. 1094, 148 L. Ed. 2d 967, 2001 U.S. LEXIS 1208 (U.S. 2001).*

**Governments: Local Governments: Administrative Boards**

Appellant was not entitled to relief from the decision terminating his position as a deputy sheriff because the sheriff failed to timely hold a hearing within ten days of receiving appellant's notice of appeal of the decision; Rule 12.04(b) of the Harris County Sheriff's Civil Service Commission Regulations did not provide a consequence for the sheriff's failure to comply with the ten-day deadline. Rule 12.04(b) was not mandatory as it used neither "shall" nor "must" to describe the sheriff's responsibility; either word would indicate that the rule was mandatory under *Tex. Gov't Code Ann. § 311.016(2)-(3). Woychesin v. Harris County Sheriff's Civ. Serv. Comm'n, No. 14-11-00304-CV, 2012 Tex. App. LEXIS 7301 (Tex. App. Houston 14th Dist. Aug. 30, 2012).*

**Governments: Local Governments: Claims By & Against**

> *Overview:* The mandatory venue requirement in Tex. *Lab. Code Ann. § 61.062* was a statutory prerequisite to suit, making failure to adhere to it a jurisdictional bar to suit. Therefore, the Texas Workforce Commission's plea to the jurisdiction was granted and the suit was dismissed.

- In sum, the mandatory venue requirement in *Tex. Lab. Code Ann. 61.062(d)* provides that a suit must be brought in the county of the claimant's residence. The term must creates a condition precedent, which is a statutory prerequisite to suit. *Tex. Gov't Code Ann. § 311.016(3)*; A suit under Section 61.062 is necessarily a suit against a governmental entity because the commission must be named as a defendant,

§ 61.062(c). Therefore, Section 61.062(d)'s mandatory venue requirement is a statutory prerequisite to suit against a governmental entity, so it is a jurisdictional requirement, *Tex. Gov't Code Ann. § 311.034*. Failure to adhere to the mandatory venue requirement is a jurisdictional bar to suit.

*Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n, 679 S.W.3d 746, 2023 Tex. App. LEXIS 3062 (Tex. App. Houston 1st Dist. May 9, 2023, no pet.)*.

In the baseball club's suit for declaratory and injunctive relief to prevent the county from terminating a lease, the trial court did not err by granting the county's plea to the jurisdiction on the basis of governmental immunity; Tex. *Loc. Gov't Code Ann. § 89.004(c)*, which provided that a suit for injunctive relief against a county was an exception to the presentment requirement, was not a clear and unambiguous waiver of the county's immunity from suit. The baseball club erred it analysis of the use of the word "may" which the court held did not establish permission pursuant to *Tex. Gov't Code § 311.016(1)* to file suit against the county. *Amarillo 'Dillas Baseball Club, LLC v. Potter County, No. 07-11-00059-CV, 2012 Tex. App. LEXIS 8539 (Tex. App. Amarillo Oct. 11, 2012)*.

## Governments: Local Governments: Elections

**Overview:** The mandamus seeking to compel the City Council for the City to order a municipal election pursuant to *Tex. Elec. Code Ann. § 3.004(b)* was not moot because the deadline for the City to call the election was Monday, August 19, 2024, and the memorandum opinion was issued in time for the City to act.

- Tex. *Elec. Code Ann. § 3.004* imposes a duty by law. The use of "shall" in the statutory language reflects a mandatory, ministerial duty. *Tex. Gov't Code Ann. § 311.016(2)* states that the statutory language of "shall" imposes a duty.

*In re Moreno, No. 13-24-00404-CV, 2024 Tex. App. LEXIS 5941 (Tex. App. Corpus Christi Aug. 16, 2024)*.

**Overview:** Board of emergency services district had to determine whether the relators' petition to alter the sales tax within the district contained the statutorily required number of signatures. The Board had a ministerial duty to determine whether the petition contained the required number of signatures. *Tex. Health & Safety Code Ann. § 775.0752*.

- The Board, once it has determined that a petition has a valid number of signatures, must place the petition on the ballot. Tex. *Health & Safety Code Ann. § 775.0752(b)* states that the board shall call an election if an appropriate number of qualified voters petition the board to call the election. The plain meaning of this statutory text□□and, in particular, the use of shall□□reflects that the Board has no discretion to deny a petition calling for an election if it contains the requisite signatures. *Tex. Gov't Code Ann. § 311.016(2)*. But, as the statute makes clear, the duty to call the election arises only if the petition includes the requisite signatures. While there may be some discretion to be exercised in making that preliminary determination, once it is determined that the requisite signatures were included, the mandatory duty to call the election arises, leaving no room for the exercise of any discretion.

*In re Rogers, 690 S.W.3d 296, 2024 Tex. LEXIS 386 (Tex. 2024)*.

## Governments: Local Governments: Employees & Officials

Despite the fact that a letter met all of the other requirements under Tex. *Loc. Gov't Code Ann. § 143.052*, a former police officer's indefinite suspension was properly set aside by a trial court because a city did not deliver a letter

advising the officer that an appeal before a hearing examiner limited his appellate rights, as required by Tex. *Loc. Gov't Code Ann. § 143.057(a)*; moreover, substantial compliance was not permitted where the mandatory language of Tex. *Loc. Gov't Code Ann. § 143.057(a)* was jurisdictional. *City of DeSoto v. White, 232 S.W.3d 379, 2007 Tex. App. LEXIS 6886 (Tex. App. Dallas Aug. 28, 2007)*, rev'd, *286 S.W.3d 389, 29 I.E.R. Cas. (BNA) 555, 2009 Tex. LEXIS 395 (Tex. 2009)*.

### Governments: Public Improvements: Sanitation & Water

Under the mandatory attorney-fee provision of Tex. *Water Code Ann. § 54.237*, attorney fees should have been awarded to a municipal utility district because judgment was entered in its favor to enforce restrictive covenants against homeowners. The court noted that under *Tex. Gov't Code Ann. § 311.016*, "shall" imposed a duty. *Anderson Mill Mun. Util. Dist. v. Robbins, 584 S.W.3d 463, 2005 Tex. App. LEXIS 7482 (Tex. App. Austin 3d Dist. Sept. 8, 2005, no pet.)*.

### Governments: State & Territorial Governments: Claims By & Against

*Overview:* The mandatory venue requirement in Tex. *Lab. Code Ann. § 61.062* was a statutory prerequisite to suit, making failure to adhere to it a jurisdictional bar to suit. Therefore, the Texas Workforce Commission's plea to the jurisdiction was granted and the suit was dismissed.

- In sum, the mandatory venue requirement in *Tex. Lab. Code Ann. 61.062(d)* provides that a suit must be brought in the county of the claimant's residence. The term must creates a condition precedent, which is a statutory prerequisite to suit, *Tex. Gov't Code Ann. § 311.016(3)*; A suit under Section 61.062 is necessarily a suit against a governmental entity because the commission must be named as a defendant, § 61.062(c). Therefore, Section 61.062(d)'s mandatory venue requirement is a statutory prerequisite to suit against a governmental entity, so it is a jurisdictional requirement, *Tex. Gov't Code Ann. § 311.034*. Failure to adhere to the mandatory venue requirement is a jurisdictional bar to suit.

  *Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n, 679 S.W.3d 746, 2023 Tex. App. LEXIS 3062 (Tex. App. Houston 1st Dist. May 9, 2023, no pet.)*.

### Governments: State & Territorial Governments: Elections

*Overview:* Board of emergency services district had to determine whether the relators' petition to alter the sales tax within the district contained the statutorily required number of signatures. The Board had a ministerial duty to determine whether the petition contained the required number of signatures, Tex. *Health & Safety Code Ann. § 775.0752*.

- The Board, once it has determined that a petition has a valid number of signatures, must place the petition on the ballot. Tex. *Health & Safety Code Ann. § 775.0752(b)* states that the board shall call an election if an appropriate number of qualified voters petition the board to call the election. The plain meaning of this statutory text— and, in particular, the use of shall— reflects that the Board has no discretion to deny a petition calling for an election if it contains the requisite signatures. *Tex. Gov't Code Ann. § 311.016(2)*. But, as the statute makes clear, the duty to call the election arises only if the petition includes the requisite signatures. While there may be some discretion to be exercised in making that preliminary determination, once it is determined that the requisite signatures were included, the mandatory duty to call the election arises, leaving no room for the exercise of any discretion.

*In re Rogers, 690 S.W.3d 296, 2024 Tex. LEXIS 386 (Tex. 2024).*

**Healthcare Law: Actions Against Facilities: Standards of Care: Expert Testimony**

***Overview:*** *Applying Tex. Civ. Prac. & Rem. Code Ann. ch. 74 to a son▢▢s claim against a hospital for negligent treatment of his father was proper because although there was no physician-patient relationship between the hospital and his father, the claim involved a physician-patient relationship between the father and his physicians at the hospital.*

- The word "shall" in a statute imposes a duty. *Tex. Gov't Code Ann. § 311.016(2), Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a),* therefore, imposes a duty on a claimant, not the defendant or the trial court, to file an expert report.

*Noel v. Oakbend Med. Ctr., No. 01-21-00206-CV, 2022 Tex. App. LEXIS 5408 (Tex. App. Houston 1st Dist. Aug. 2, 2022).*

Patient's health care liability claim should have been dismissed with prejudice for failure to serve his expert's report on a government hospital within 120 days of the filing of the hospital's answer, *Tex. Civ. Prac. & Rem. Code Ann. § 74.351,* although the report was procured and was served on the original doctor defendant, who had forwarded it to the hospital. When the hospital was later substituted for the doctor, the report was not served or filed. *Univ. of Tex. Health Sci. Ctr. v. Joplin, 525 S.W.3d 772, 2017 Tex. App. LEXIS 4550 (Tex. App. Houston 14th Dist. May 18, 2017, no pet.).*

**Insurance Law: Bad Faith & Extracontractual Liability: Remedies: Penalties**

Appellant insurer's claim twelve percent statutory penalty could be awarded only in a suit to recover personal injury protection (PIP) benefits lacked merit because an insurer's obligation to pay benefits was triggered by statutory deadline; moreover, the plain wording of relevant statute, was not conditioned on recovery of PIP benefits in lawsuit and plain terms of statute did not require lawsuit to recover PIP benefits for person to be entitled either to PIP benefits or statutory penalties. *State Farm Mut. Auto. Ins. Co. v. Rumbaugh, 642 S.W.3d 901, 2022 Tex. App. LEXIS 1060 (Tex. App. Texarkana Feb. 15, 2022, no pet.).*

**Insurance Law: Claims & Contracts: Cancellation & Nonrenewal: Notice Requirements**

Notice provision in the Texas Premium Finance Act required that notice had to be given by the premium finance company to the defaulting insured prior to cancellation of the policy, which provision was to be read as written rather than with a "substantial compliance" approach that excused minor slip-ups pursuant to the statutory construction rules. *Bankdirect Capital Fin., LLC v. Plasma Fab, LLC, 519 S.W.3d 76, 2017 Tex. LEXIS 450 (Tex. 2017).*

**Insurance Law: Motor Vehicle Insurance: Coverage: No-Fault Coverage: Liens & Subrogation**

***Overview:*** *Appellant's claim the twelve percent statutory penalty could be awarded only in a suit to recover personal injury protection (PIP) lacked merit because an insurer's obligation to pay benefits was triggered by statutory deadline under Tex. Ins. Code Ann. § 1952.156 which always was subject to the requirements of Tex. Ins. Code Ann. § 1952.157.*

- Texas statutes have long punished insurers for delays beyond 30 days, and personal injury protection (PIP) benefits were required to be paid periodically as claims for those benefits arose, but not later than the 30th day after the date the insurer received satisfactory proof of a claim. *Tex. Ins. Code Ann. § 1952.156(a).*

The second phrase in *Tex. Ins. Code Ann. § 1952.157(a)*, establishes that, when the insurer fails to pay PIP benefits when due, the person entitled to those benefits may bring an action in contract to recover them, but is not required to do so. *Tex. Ins. Code Ann. §§ 1952.156(a)*, *1952.157(a)*. *Tex. Gov't Code Ann. § 311.015(1)*. In other words, a lawsuit is not required for a person to be entitled to the no-fault PIP benefits because a person is immediately entitled to such benefits once an insurer receives satisfactory proof of the claim.

*State Farm Mut. Auto. Ins. Co. v. Rumbaugh, 642 S.W.3d 901, 2022 Tex. App. LEXIS 1060 (Tex. App. Texarkana Feb. 15, 2022, no pet.).*

**Insurance Law: Motor Vehicle Insurance: Coverage: No-Fault Coverage: Optional Coverage**

*Overview:  Appellant's claim the twelve percent statutory penalty could be awarded only in a suit to recover personal injury protection (PIP) lacked merit because an insurer's obligation to pay benefits was triggered by statutory deadline under Tex. Ins. Code Ann. § 1952.156 which always was subject to the requirements of Tex. Ins. Code Ann. § 1952.157.*

- Texas statutes have long punished insurers for delays beyond 30 days, and personal injury protection (PIP) benefits were required to be paid periodically as claims for those benefits arose, but not later than the 30th day after the date the insurer received satisfactory proof of a claim. *Tex. Ins. Code Ann. § 1952.156(a)*. The second phrase in *Tex. Ins. Code Ann. § 1952.157(a)*, establishes that, when the insurer fails to pay PIP benefits when due, the person entitled to those benefits may bring an action in contract to recover them, but is not required to do so. *Tex. Ins. Code Ann. §§ 1952.156(a)*, *1952.157(a)*. *Tex. Gov't Code Ann. § 311.015(1)*. In other words, a lawsuit is not required for a person to be entitled to the no-fault PIP benefits because a person is immediately entitled to such benefits once an insurer receives satisfactory proof of the claim.

*State Farm Mut. Auto. Ins. Co. v. Rumbaugh, 642 S.W.3d 901, 2022 Tex. App. LEXIS 1060 (Tex. App. Texarkana Feb. 15, 2022, no pet.).*

**Insurance Law: Motor Vehicle Insurance: Coverage: No-Fault Coverage: Personal Injury Protection: Medical Benefits**

*Overview:  Appellant's claim the twelve percent statutory penalty could be awarded only in a suit to recover personal injury protection (PIP) lacked merit because an insurer's obligation to pay benefits was triggered by statutory deadline under Tex. Ins. Code Ann. § 1952.156 which always was subject to the requirements of Tex. Ins. Code Ann. § 1952.157.*

- Texas statutes have long punished insurers for delays beyond 30 days, and personal injury protection (PIP) benefits were required to be paid periodically as claims for those benefits arose, but not later than the 30th day after the date the insurer received satisfactory proof of a claim. *Tex. Ins. Code Ann. § 1952.156(a)*. The second phrase in *Tex. Ins. Code Ann. § 1952.157(a)*, establishes that, when the insurer fails to pay PIP benefits when due, the person entitled to those benefits may bring an action in contract to recover them, but is not required to do so. *Tex. Ins. Code Ann. §§ 1952.156(a)*, *1952.157(a)*, *Tex. Gov't Code Ann. § 311.016(1)*. In other words, a lawsuit is not required for a person to be entitled to the no-fault PIP benefits because a person is immediately entitled to such benefits once an insurer receives satisfactory proof of the claim.

*State Farm Mut. Auto. Ins. Co. v. Rumbaugh*, 642 S.W.3d 901, 2022 Tex. App. LEXIS 1060 (Tex. App. Texarkana Feb. 15, 2022, no pet.).

**Insurance Law: Motor Vehicle Insurance: Coverage: No-Fault Coverage: Time Limitations**

***Overview:*** *Appellant's claim the twelve percent statutory penalty could be awarded only in a suit to recover personal injury protection (PIP) lacked merit because an insurer's obligation to pay benefits was triggered by statutory deadline under Tex. Ins. Code Ann. § 1952.156 which always was subject to the requirements of Tex. Ins. Code Ann. § 1952.157.*

- Texas statutes have long punished insurers for delays beyond 30 days, and personal injury protection (PIP) benefits were required to be paid periodically as claims for those benefits arose, but not later than the 30th day after the date the insurer received satisfactory proof of a claim. *Tex. Ins. Code Ann. § 1952.156(a)*. The second phrase in *Tex. Ins. Code Ann. § 1952.157(a)*, establishes that, when the insurer fails to pay PIP benefits when due, the person entitled to those benefits may bring an action in contract to recover them, but is not required to do so. *Tex. Ins. Code Ann. §§ 1952.156(a)*, *1952.157(a)*. *Tex. Gov't Code Ann. § 311.016(1)*. In other words, a lawsuit is not required for a person to be entitled to the no-fault PIP benefits because a person is immediately entitled to such benefits once an insurer receives satisfactory proof of the claim.

*State Farm Mut. Auto. Ins. Co. v. Rumbaugh*, 642 S.W.3d 901, 2022 Tex. App. LEXIS 1060 (Tex. App. Texarkana Feb. 15, 2022, no pet.).

**Labor & Employment Law: Discrimination: Retaliation: Remedies: Backpay & Frontpay**

Front pay was not capped in a retaliation case because the statute did not limit equitable relief to listed items but rather stated that equitable relief "may" include listed items. *San Antonio Water Sys. v. Nicholas*, 441 S.W.3d 382, 120 Fair Empl. Prac. Cas. (BNA) 903, 2013 Tex. App. LEXIS 13117 (Tex. App. San Antonio Oct. 23, 2013), rev'd, 461 S.W.3d 131, 126 Fair Empl. Prac. Cas. (BNA) 1551, 2015 Tex. LEXIS 344 (Tex. 2015).

**Labor & Employment Law: Wage & Hour Laws: Coverage & Definitions: Prevailing Wages**

***Overview:*** *The court reasoned that while § 2258.022(e) makes a public body's wage determination "final," the body must still act within its statutory authority under § 2258.022(a) for the determination to be valid. A survey incorporating statewide data into its prevailing wage rate determination exceeds the boundaries prescribed for conducting a local survey.*

- A public body shall determine prevailing wage rates by either: (1) conducting a survey of the wages received by classes of workers employed on projects of a character similar to the contract work in the political subdivision of the state in which the public work is to be performed; or (2) using the prevailing wage rate as determined by the United States Department of Labor in accordance with the Davis-Bacon Act (40 U.S.C.S. 276a et seq.) (the statute), and it subsequent amendments. *Tex. Gov't Code § 2258.022(a)(1-2)*. The term "shall" imposes a duty. *Tex. Gov't Code § 311.016(2)*. Changes in the prevailing wage rates law fettered the discretion of public bodies such that they may no longer set wage rates in any fashion they desire. By adding to the statute two specific, alternative methods for determining a prevailing wage rate the legislature intended to change the prior law. Only when absolute discretion— free decision-making without any constraints— is granted are ultra vires suits absolutely barred.

*IBEW, Loc. 278 v. Corpus Christi Indep. Sch. Dist., No. 13-24-00035-CV, 2024 Tex. App. LEXIS 8390 (Tex. App. Corpus Christi Dec. 5, 2024).*

**Labor & Employment Law: Wage & Hour Laws: Statutory Application: Davis-Bacon Act**

*Overview:* *The court reasoned that while § 2258.022(e) makes a public body's wage determination "final," the body must still act within its statutory authority under § 2258.022(a) for the determination to be valid. A survey incorporating statewide data into its prevailing wage rate determination exceeds the boundaries prescribed for conducting a local survey.*

- A public body shall determine prevailing wage rates by either: (1) conducting a survey of the wages received by classes of workers employed on projects of a character similar to the contract work in the political subdivision of the state in which the public work is to be performed; or (2) using the prevailing wage rate as determined by the United States Department of Labor in accordance with the Davis-Bacon Act (40 U.S.C.S. 276a et seq.) (the statute), and it subsequent amendments. *Tex. Gov't Code § 2258.022(a)(1-2).* The term "shall" imposes a duty. *Tex. Gov't Code § 311.016(2).* Changes in the prevailing wage rates law fettered the discretion of public bodies such that they may no longer set wage rates in any fashion they desire. By adding to the statute two specific, alternative methods for determining a prevailing wage rate the legislature intended to change the prior law. Only when absolute discretionâ free decision-making without any constraintsâ is granted are ultra vires suits absolutely barred.

*IBEW, Loc. 278 v. Corpus Christi Indep. Sch. Dist., No. 13-24-00035-CV, 2024 Tex. App. LEXIS 8390 (Tex. App. Corpus Christi Dec. 5, 2024).*

**Public Contracts Law: Labor Laws: Prevailing Wage Standards**

*Overview:* *The court reasoned that while § 2258.022(e) makes a public body's wage determination "final," the body must still act within its statutory authority under § 2258.022(a) for the determination to be valid. A survey incorporating statewide data into its prevailing wage rate determination exceeds the boundaries prescribed for conducting a local survey.*

- A public body shall determine prevailing wage rates by either: (1) conducting a survey of the wages received by classes of workers employed on projects of a character similar to the contract work in the political subdivision of the state in which the public work is to be performed; or (2) using the prevailing wage rate as determined by the United States Department of Labor in accordance with the Davis-Bacon Act (40 U.S.C.S. 276a et seq.) (the statute), and it subsequent amendments. *Tex. Gov't Code § 2258.022(a)(1-2).* The term "shall" imposes a duty. *Tex. Gov't Code § 311.016(2).* Changes in the prevailing wage rates law fettered the discretion of public bodies such that they may no longer set wage rates in any fashion they desire. By adding to the statute two specific, alternative methods for determining a prevailing wage rate the legislature intended to change the prior law. Only when absolute discretionâ free decision-making without any constraintsâ is granted are ultra vires suits absolutely barred.

*IBEW, Loc. 278 v. Corpus Christi Indep. Sch. Dist., No. 13-24-00035-CV, 2024 Tex. App. LEXIS 8390 (Tex. App. Corpus Christi Dec. 5, 2024).*

**Real Property Law: Common Interest Communities: Homeowners Associations**

*Overview: In a dispute between a property owner and a property owners' association, the trial court did not err in rendering judgment for the property owners' association because the consequences of the alternative*

interpretations weighed against a jurisdictional interpretation of *Tex. Prop. Code Ann. § 209.007*'s hearing requirement.

- In the context of a dispute between property owner and a property owners' association, when there is both an entitlement to and a request for a hearing, the statute provides that the association shall take two actions: it shall (1) hold a hearing within 30 days of its receipt of the owner's request and (2) notify the owner of the date, time, and place of the hearing not later than ten days before the date of the hearing. See id. § 209.007(c). The Code Construction Act explains that "shall" imposes a duty, *Tex. Gov't Code Ann. § 311.016(2)*, and the Texas Supreme Court states that "shall" generally has a mandatory connotation, unless legislative intent suggests otherwise. Courts generally construe a statutory provision as mandatory when the power or duty to which it relates is for the public good.

*Dao v. Mission Bend Homeowners Ass'n, 667 S.W.3d 304, 2022 Tex. App. LEXIS 5417 (Tex. App. Houston 1st Dist. Aug. 2, 2022, no pet.).*

## Real Property Law: Landlord & Tenant: Landlord's Remedies & Rights: Eviction Actions: Forcible Entry & Detainer

*Overview: In a forcible detainer action, trial court erred in awarding leased premises and attorney's fees to appellee because appellee failed to comply with* Tex. Prop. Code Ann. § 24.005(e) *in not providing a separate notice to vacate after ten days from first notice, thus, it did not lawfully terminate appellant's tenancy.*

- When the legislature uses the term "may not," the appellate courts generally construe it as synonymous with shall not. *Tex. Gov't Code Ann. § 311.016(5)* provides that unless the context necessarily requires a different construction, may not imposes a prohibition and is synonymous with shall not. Under this plain language, when the lease requires an opportunity to respond to a proposed eviction and *Tex. Prop. Code Ann. § 24.005* thus applies, the landlord must provide a separate, later notice to vacate.

*Mercadel v. Empire Vill. Apts., No. 14-22-00079-CV, 2023 Tex. App. LEXIS 106 (Tex. App. Houston 14th Dist. Jan. 10, 2023).*

## Real Property Law: Restrictive Covenants: General Overview

Applying *Tex. Gov't Code Ann. § 311.016(1)* to interpret *Tex. Prop. Code Ann. § 202.004(c)*, "may" gives the trial court discretion to determine whether to award civil damages for the violation of restrictive covenants. *Air Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d 900, 2003 Tex. App. LEXIS 6031 (Tex. App. Dallas July 16, 2003, no pet.).*

## Real Property Law: Water Rights: Appropriation Rights

Appeal was moot because, regardless of a district court's decision remanding a water appropriation dispute to the Texas Commission on Water Quality, the Commission had no authority to grant the type of water permits that had been applied for due to a permanent moratorium issued under Tex. *Water Code Ann. § 11.0237(a)*; the use of the phrase "may not" in § 11.0237(a) was dispositive. The permits had been denied by the Commission under Tex. *Water Code Ann. § 11.131(a). Tex. Comm'n on Envtl. Quality v. Galveston Bay Conservation & Pres. Ass'n, 267 S.W.3d 361, 2008 Tex. App. LEXIS 5792 (Tex. App. Corpus Christi July 31, 2008, no pet.).*

## Tax Law: State & Local Taxes: Franchise Tax: Failure to Pay Tax

*Overview:* Trial court did not err by granting appellees' motion for summary judgement because appellant was not entitled to a refund for tax years 2010 and 2011 as there was no good cause

*shown that appellant was entitled to an extension for the application per Tex. Tax Code Ann. § 31.11(c-1). The application was made more than three years after payments.*

• The appellate court's role is to interpret and apply the plain meaning of the statute's language and give effect to the legislature's intent. The court takes statutes as it finds them and refrains from rewriting the legislature's text. The legislature granted the governing body of the taxing authority— not the courts— permission to extend the application deadline. Tex. Tax Code Ann. § 31.11(c-1). Further, the legislature made the extension permissive, not mandatory. Tex. Gov'T Code Ann. § 311.016. May does not mean shall or must be.

> Sundial Owner's Ass'n v. Nueces Cnty., No. 13-21-00069-CV, 2023 Tex. App. LEXIS 1536 (Tex. App. Corpus Christi Mar. 9, 2023).

## Tax Law: State & Local Taxes: Real Property Tax: Assessment & Valuation: Valuation

Upon request by a prevailing party in an excessive appraisal action under Tex. Tax Code Ann. § 42.25, an award of reasonable attorney's fees is mandatory, not discretionary, under Tex. Tax Code Ann. § 42.29; although "may" generally created discretionary authority under Tex. Gov't Code Ann § 311.016, the determination of whether a statute required the imposition of attorney's fees did not depend exclusively on whether the statute used the word "may" or "shall"; rather, the determination primarily depended on whether the legislature had bestowed a power to trial courts or an entitlement to litigants. Aaron Rents, Inc. v. Travis Cent. Appraisal Dist., 212 S.W.3d 665, 2006 Tex. App. LEXIS 8068 (Tex. App. Austin 3d Dist. Sept. 8, 2006, no pet.).

## Torts: Malpractice & Professional Liability: Healthcare Providers

Patient's health care liability claim should have been dismissed with prejudice for failure to serve his expert's report on a government hospital within 120 days of the filing of the hospital's answer, Tex. Civ. Prac. & Rem. Code Ann. § 74.351, although the report was procured and was served on the original doctor defendant, who had forwarded it to the hospital. When the hospital was later substituted for the doctor, the report was not served or filed. Univ. of Tex. Health Sci. Ctr. v. Joplin, 525 S.W.3d 772, 2017 Tex. App. LEXIS 4550 (Tex. App. Houston 14th Dist. May 18, 2017, no pet.).

Although Tex. Civ. Prac. & Rem. Code Ann. § 74.402(c) provides that a court "shall consider" two particular factors in weighing a witness's qualifications, and thus a trial court and an appellate court must consider those factors in assessing a witness's status as an expert, § 74.402(c) does not provide that its factors are mandatory elements that must be proved before a witness can be qualified as an expert. Heritage Gardens Healthcare Ctr. & Lyric Health Care, L.L.C. v. Pearson, No. 05-07-00772-CV, 2008 Tex. App. LEXIS 7283 (Tex. App. Dallas Aug. 29, 2008).

In a patient's health care liability case against a nursing home, which was governed by Tex. Civ. Prac. & Rem. Code Ann. ch. 74, the trial court did not abuse its discretion in denying the nursing home's motion to dismiss based on the patient's alleged failure to serve a sufficient expert report where, under the circumstances of the case, the trial court reasonably could have concluded that the patient's expert was qualified under Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(3), and thus also under Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(B), because: (1) the case concerned allegedly negligent care and monitoring of a patient with chronic urinary problems and a urological device that could become blocked and cause serious health consequences; (2) the expert had substantial training and experience in the field of urology; (3) the expert had treated hundreds of nursing home patients with catheter care problems like the patient; and (4) the expert had worked with nurses throughout his entire professional career, and he knew the standard of care applicable to them when caring for patients like the patient in the instant case. Although the expert had stopped practicing urology about seven years before the events made the basis of the suit, and he was not actively practicing health care in rendering health care services relevant

to the claim, the seven-year gap did not automatically disqualify him because a reasonable trial court could conclude that he still possessed substantial training or experience in the area of health care relevant to the patient's claim, pursuant to *Tex. Civ. Prac. & Rem. Code Ann. § 74.402(c)(1)*. *Heritage Gardens Healthcare Ctr. & Lync Health Care, L.L.C. v. Pearson, No. 05-07-00772-CV, 2008 Tex. App. LEXIS 7283 (Tex. App. Dallas Aug. 29, 2008)*.

**Torts: Negligence: Defenses: Comparative Negligence: Multiple Parties: Absent Defendants**

In a tort action arising out of an employee's injuries suffered when he was pinned by a vehicle against a building, the trial court erred by denying the employer's officer's motion for leave to designate responsible third parties under *Tex. Civ. Prac. & Rem. Code Ann. § 33.004*, and there was no adequate remedy by appeal, making mandamus proper. The word "shall" was mandatory. *In re Bustamante, 510 S.W.3d 732, 2016 Tex. App. LEXIS 12506 (Tex. App. San Antonio Nov. 23, 2016, no pet.)*.

**Torts: Procedure: Multiple Defendants: Contribution: General Overview**

In an action arising from a child's drowning death, defendant swimming pool owners were not entitled to mandamus relief after the trial court denied permission for defendants to join the uncle who was supervising the child at the time of the drowning; a post-judgment contribution claim was not precluded and, thus, any error could be corrected on appeal and defendants had an adequate remedy at law. *In re Martin, 147 S.W.3d 453, 2004 Tex. App. LEXIS 4380 (Tex. App. Beaumont May 13, 2004, no pet.)*.

**Torts: Public Entity Liability: Liability: State Tort Claims Acts: Procedural Requirements**

> **Overview:** The mandatory venue requirement in Tex. *Lab. Code Ann. § 61.062* was a statutory prerequisite to suit, making failure to adhere to it a jurisdictional bar to suit. Therefore, the Texas Workforce Commission's plea to the jurisdiction was granted and the suit was dismissed.

- In sum, the mandatory venue requirement in *Tex. Lab. Code Ann. 61.062(d)* provides that a suit must be brought in the county of the claimant's residence. The term must creates a condition precedent, which is a statutory prerequisite to suit. *Tex. Gov't Code Ann. § 311.016(3)*; A suit under Section 61.062 is necessarily a suit against a governmental entity because the commission must be named as a defendant, § 61.062(c). Therefore, Section 61.062(d)'s mandatory venue requirement is a statutory prerequisite to suit against a governmental entity, so it is a jurisdictional requirement, *Tex. Gov't Code Ann. § 311.034*. Failure to adhere to the mandatory venue requirement is a jurisdictional bar to suit.

> *Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n, 679 S.W.3d 746, 2023 Tex. App. LEXIS 3062 (Tex. App. Houston 1st Dist. May 9, 2023, no pet.)*.

**Transportation Law: Public Transportation**

Procurement regulations of the Fort Worth Transportation Authority, which used the word "may," allowed a party in its discretion to seek judicial review of an administrative law judge's decision and deferred to the specific contract to provide a standard of review. *Dallas Area Rapid Transit v. Agent Sys., No. 02-12-00517-CV, 85 U.C.C. Rep. Serv. 2d (CBC) 298, 2014 Tex. App. LEXIS 12797 (Tex. App. Fort Worth Nov. 26, 2014)*.

**Notes to Unpublished Decisions**

**Criminal Law & Procedure: Sentencing: Costs**

Criminal Law & Procedure: Appeals: Procedures: General Overview

Governments: Legislation: Interpretation

**Criminal Law & Procedure: Sentencing: Costs**

*Unpublished decision*: Where defendant pleaded guilty to two charges of aggravated sexual assault of a child, the trial court did not err by imposing court costs for DNA testing and processing an arrest warrant because the imposition of court costs was mandatory. The term "shall" as used in *Tex. Code Crim. Proc. Ann. arts. 42.15, 42.16* imposes a duty. *Martin v. State. No. 14-14-00761-CR, No. 14-14-00762-CR, 2015 Tex. App. LEXIS 12414 (Tex. App. Houston 14th Dist. Dec. 8, 2015)*.

**Criminal Law & Procedure: Appeals: Procedures: General Overview**

*Unpublished decision*: Trial court's order sealing the recorded conversations which were the subject of the State's appeal violated the stay because the appellate court's order expressly directed the trial court to stay all proceedings pending disposition of the appeal or further order of the appellate court; the State is entitled to a stay of all proceedings in a criminal case when it appeals an order under *Tex. Code Crim. Proc. Ann. Art. 44.01* and "proceedings" refers to all proceedings or matters involved in a criminal case. *State v. Villegas, No. 08-15-00002-CR, 2015 Tex. App. LEXIS 2726 (Tex. App. El Paso Mar. 23, 2015)*.

**Governments: Legislation: Interpretation**

*Unpublished decision:* **Overview:** *Defendant had failed to overcome the presumption that the trial court was neutral and detached in its assessment of the defendant's punishment because he did not satisfy the burden of rebutting that presumption as he did not cite any comments or conduct demonstrating that the trial court had refused to consider the full range of punishment.*

*Unpublished decision:*

- *Tex. Gov't Code Ann. § 311.016(1)* provides that the word may creates discretionary authority.

*Vanduran v. State, No. 14-22-00343-CR, 2023 Tex. App. LEXIS 3763 (Tex. App. Houston 14th Dist. June 1, 2023)*, pet. ref'd *No. PD-0390-23, 2023 Tex. Crim. App. LEXIS 540 (Tex. Crim. App. July 26, 2023)*.

*Unpublished decision*: Where defendant pleaded guilty to two charges of aggravated sexual assault of a child, the trial court did not err by imposing court costs for DNA testing and processing an arrest warrant because the imposition of court costs was mandatory. The term "shall" as used in *Tex. Code Crim. Proc. Ann. arts. 42.15, 42.16* imposes a duty. *Martin v. State, No. 14-14-00761-CR, No. 14-14-00762-CR, 2015 Tex. App. LEXIS 12414 (Tex. App. Houston 14th Dist. Dec. 8, 2015)*.

# Research References & Practice Aids

**LAW REVIEWS**

*7 Tex. Wesleyan L. Rev. 89.*

*7 Tex. Wesleyan L. Rev. 157.*

**TREATISES & ANALYTICAL MATERIALS**

*1-4 Dorsaneo, Texas Litigation Guide § 4.03*, Pretrial Practice (Chs. 1-114), Prelitigation Planning (Chs. 1-4), Rules Governing Statutory Construction, Dorsaneo, Texas Litigation Guide.

*25-421 Dorsaneo, Texas Litigation Guide § 421.03*, Administrative Proceedings (Chs. 420-425), ADMINISTRATIVE RULES, Construction of Rules, Dorsaneo, Texas Litigation Guide.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

# APPENDIX 9

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 10 General Government (Subts. A — Z) > Subtitle A Administrative Procedure and Practice (Chs. 2001 — 2050) > Chapter 2001 Administrative Procedure (Subchs. A — Z) > Subchapter C Contested Cases: General Rights and Procedures (§§ 2001.051 — 2001.062)*

## Sec. 2001.051. Opportunity for Hearing and Participation; Notice of Hearing.

In a contested case, each party is entitled to an opportunity:

(1) for hearing after reasonable notice of not less than 10 days; and

(2) to respond and to present evidence and argument on each issue involved in the case.

## History

Enacted by Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1, effective September 1, 1993.

Annotations

## Notes to Decisions

Administrative Law: Agency Adjudication: Decisions: Contents

Administrative Law: Agency Adjudication: Hearings: General Overview

Administrative Law: Agency Adjudication: Hearings: Evidence: Admissibility: General Overview

Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Due Process

Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Statutory Right

Administrative Law: Agency Adjudication: Presiding Officers: Duties & Powers

Administrative Law: Agency Rulemaking: State Proceedings

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies

Administrative Law: Judicial Review: Reviewability: Preservation for Review

Administrative Law: Judicial Review: Standards of Review: General Overview

Administrative Law: Judicial Review: Standards of Review: Substantial Evidence

Civil Procedure: Jurisdiction: Subject Matter Jurisdiction: Jurisdiction Over Actions: General Overview

Constitutional Law: Bill of Rights: Fundamental Rights: Procedural Due Process: Scope of Protection

Energy & Utilities Law: Administrative Proceedings: Public Utility Commissions: General Overview

Energy & Utilities Law: Utility Companies: General Overview

Environmental Law: Air Quality: Preconstruction Permits

Governments: Legislation: Interpretation

Governments: State & Territorial Governments: Claims By & Against

Governments: State & Territorial Governments: Licenses

Public Health & Welfare Law: Social Security: Medicaid: Providers: Payments & Reimbursements

Transportation Law: Private Vehicles: Operator Licenses: General Overview

## Administrative Law: Agency Adjudication: Decisions: Contents

In an appeal arising from a dispute over a highway construction contract between a contractor and the Texas Department of Transportation, the decision of the Department's executive director to reject an administrative law judge's (ALJ's) proposed findings based on credibility was arbitrary and capricious and an abuse of discretion where the ALJ, not the executive director, heard the testimony and observed the demeanor of the witnesses, and where the executive director failed to comply with Tex. Transp. Code Ann. § 201.112(c) by not providing a written statement for each individual change to the ALJ's findings of fact and conclusions of law that explained his rationale for each change, and his changes to particular findings and conclusions proposed by the ALJ suggested he was acting as the Department's factfinder, despite the legislature having delegated that responsibility to the ALJ in § 201.112(b). By failing to comply with the requirement to provide a written statement containing the reason and legal basis for changing the ALJ's findings and conclusions, the executive director's decision in his final order raised serious due process concerns, and without knowing on what facts the executive director relied to make his finding of credible evidence, there was no rational connection between the facts and his decision. Jordan Paving Corp. v. Tex. DOT, No. 03-04-00782-CV, 2009 Tex. App. LEXIS 3678 (Tex. App. Austin 3d Dist. June 3, 2009).

## Administrative Law: Agency Adjudication: Hearings: General Overview

County judge did not allow inadequate notice of a hearing on a club owner's application to renew a beer and wine retailer's on-premises license and after-hours permit for his nightclub because the notice met the requirements of Tex. Gov't Code Ann. §§ 2001.051 and 2001.052, and the original notice contained the date of the hearing, location, and time, cited Tex. Alco. Bev. Code Ann. § 61.42(a)(3) as the basis for refusal of the permit's renewal, and referred to a list of incidents that occurred at or near the nightclub during the two years preceding the date of the notice. Garza v. Tex. Alcoholic Bev. Comm'n, 138 S.W.3d 609, 2004 Tex. App. LEXIS 5709 (Tex. App. Houston 14th Dist. June 24, 2004, no pet.).

Lower court did not err in finding that Texas State Board of Plumbing Examiners did not have to afford appellant plumbers' continuing education program provider a formal contested-case hearing on its request for approval to continue as an education provider because under Tex. Gov't Code Ann. § 2001.051 to § 2001.178, appellant's request did not initiate a contested case and the procedures required by a contested case were not relevant; the statute did not require the board to make its determination after an opportunity for an adjudicative hearing which therefore, did not invoke contested-case procedures. Best & Co. v. State Bd. of Plumbing Examiners, 927 S.W.2d 306, 1996 Tex. App. LEXIS 3275 (Tex. App. Austin 3d Dist. July 31, 1996, no writ).

## Administrative Law: Agency Adjudication: Hearings: Evidence: Admissibility: General Overview

Because Tex. Util. Code Ann. § 39.262(o) authorizes the Texas Public Utility Commission to enforce only stipulations involving a public utility, in accordance with the focus in Tex. Util. Code Ann. § 14.101 on public utilities, the Commission properly declined to consider stipulations pertaining to a transmission-and-distribution electric utility's deregulated affiliates when it determined that a proposed acquisition of the utility was in the public interest. No due process or equal protection violation occurred under U.S. Const. amend. XIV, § 1 or Tex. Const. art. I, §§ 3, 19 with regard to the denial of discovery requests pertaining to the affiliates, which were not involved in the case for purposes of Tex. Gov't Code Ann. § 2001.051 and were not in dispute under Tex. Util. Code Ann. § 14.054(b)(1). Nucor Steel – Tex. v. PUC, 363 S.W.3d 871, 2012 Tex. App. LEXIS 2108 (Tex. App. Austin 3d Dist. Mar. 15, 2012, no pet.).

**Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Due Process**

**Overview:** *The court reasoned that the additional permit requirements ordered by the Commission did not rely on outside-the-record facts, but rather extended existing facility design features that were already considered during the hearing to provide the same level of groundwater protection.*

- In a contested case, the Administrative Procedure Act affords each party an opportunity to respond and to present evidence and argument on each issue involved in the case. Tex. Gov'T Code § 2001.051(2). Due process requires that parties be accorded a full and fair hearing on disputed fact issues. Due process, at minimum, is notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Only one adequate hearing is required in an administrative proceeding. The Texas Railroad Commission has discretion to grant or refuse a further hearing on matters that were already before it in an earlier hearing, and unless there is an abuse of discretion the courts do not interfere.

HR Martin Cnty. Landfill, LLC v. Mabee, No. 01-23-00036-CV, 2024 Tex. App. LEXIS 9040 (Tex. App. Houston 1st Dist. Dec. 31, 2024).

Where appellant overcharged Medicaid for medical supplies, the first amended notice was sufficient to satisfy statutory and due process requirements because it provided appellant notice of the violations, the amount of the overpayments, the extrapolation methodology, and the calculation of the claim of $2,357,115 in overpayments. Personal Care Prods. v. Smith, 578 S.W.3d 262, 2019 Tex. App. LEXIS 5289 (Tex. App. Austin 3d Dist. June 26, 2019, no pet.).

**Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Statutory Right**

In the administrative proceeding that resulted in the Railroad Commission of Texas granting a company a permit to operate a commercial injection well for disposal of oil and gas waste, the Commission did not violate the due process rights of environmentalists who opposed the grant because (1) the Commission did not violate agency procedures in recessing and subsequently reconvening the hearing concerning the application; and (2) the environmentalists were given a fair hearing with ample opportunity to respond and to present evidence and argument on each issue involved in the case, as counsel for the environmentalists appeared at both hearings involved in the case to offer testimony and evidence in support of the environmentalists' position, as well as cross-examine the company's witness. Tex. Citizens for a Safe Future & Clean Water v. R.R. Comm'n, 254 S.W.3d 492, 2007 Tex. App. LEXIS 9502 (Tex. App. Austin 3d Dist. Dec. 6, 2007), rev'd, 336 S.W.3d 619, 2011 Tex. LEXIS 192 (Tex. 2011).

**Administrative Law: Agency Adjudication: Presiding Officers: Duties & Powers**

In an appeal arising from a dispute over a highway construction contract between a contractor and the Texas Department of Transportation, the decision of the Department's executive director to reject an administrative law

judge's (ALJ's) proposed findings based on credibility was arbitrary and capricious and an abuse of discretion where the ALJ, not the executive director, heard the testimony and observed the demeanor of the witnesses, and where the executive director failed to comply with *Tex. Transp. Code Ann. § 201.112(c)* by not providing a written statement for each individual change to the ALJ's findings of fact and conclusions of law that explained his rationale for each change, and his changes to particular findings and conclusions proposed by the ALJ suggested he was acting as the Department's factfinder, despite the legislature having delegated that responsibility to the ALJ in § 201.112(b). By failing to comply with the requirement to provide a written statement containing the reason and legal basis for changing the ALJ's findings and conclusions, the executive director's decision in his final order raised serious due process concerns, and without knowing on what facts the executive director relied to make his finding of credible evidence, there was no rational connection between the facts and his decision. *Jordan Paving Corp. v. Tex. DOT, No. 03-04-00782-CV, 2009 Tex. App. LEXIS 3878 (Tex. App. Austin 3d Dist. June 3, 2009).*

### Administrative Law: Agency Rulemaking: State Proceedings

A decision in favor of a bank was affirmed where the Texas State Banking Board granted the bank permission to change its domicile from one location to another over the objection of competitor banks; the Board's decision did not violate the reasonable notice requirement of the Administrative Procedure and Texas Register Act, former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, (now *Tex. Gov't Code Ann. § 2001.051*) § 13, where the evidence clearly demonstrated that the competitor banks were not surprised by the decision. *Sabine Bank v. State Banking Bd., 630 S.W.2d 523, 1982 Tex. App. LEXIS 4167 (Tex. App. Austin 3d Dist. Mar. 24, 1982),* writ granted No. C-1261 (Tex. 1982), set aside, *639 S.W.2d 303, 1982 Tex. LEXIS 372 (Tex. 1982).*

### Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies

Where an individual challenged the Texas Commission on Environmental Quality's decision to grant a concrete batch plant permit, the individual failed to exhaust administrative remedies because (1) the individual did not request a contested case hearing, (2) a public meeting was not a substitute for a contested case hearing since they were separate and distinct processes which served different purposes, and (3) the question of law exception did not apply. *Rawls v. Tex. Comm'n on Envtl. Quality, No. 11-05-00368CV, 2007 Tex. App. LEXIS 5013 (Tex. App. Eastland June 28, 2007).*

A motion for rehearing is a statutory prerequisite to appeal an administrative agency's decision, and to fulfill the appeal prerequisite, the motion for rehearing must point out errors with particularity and specificity, but need not comply with the technical niceties of pleadings and practice required in court trials; the two-part test for sufficiency requires, first, that the motion identify the agency's objectionable ruling, finding of fact, or conclusion of law and, second, that it state the reason why the agency's action is erroneous; the movant need not brief the law or facts, but cannot assert generally that the conclusions of law are not supported by substantial evidence, as general assertions do not give the agency notice of the deficiencies or the opportunity to address them. *Fox v. Medina, 848 S.W.2d 866, 1993 Tex. App. LEXIS 479 (Tex. App. Corpus Christi Feb. 18, 1993, no writ).*

### Administrative Law: Judicial Review: Reviewability: Preservation for Review

In an action in which the state department of public safety challenged the judgment of the district court, which reversed an administrative decision upholding the suspension of a driver's operator's license under *Tex. Gov't Code Ann. § 2001.051,* the question of whether the record of the administrative proceeding was properly before the court on appeal was answered in the affirmative, as the agency record, including a complete transcript of the administrative proceedings against the driver, was part of the transcript and could be examined as part of the appellate review process under *Tex. R. App. P. 50. Texas Dep't of Pub. Safety v. Raffaelli, 905 S.W.2d 773, 1995 Tex. App. LEXIS 2092 (Tex. App. Texarkana Aug. 30, 1995, no writ).*

**Administrative Law: Judicial Review: Standards of Review: General Overview**

In an action in which the state department of public safety challenged the judgment of the district court, which reversed an administrative decision upholding the suspension of a driver's operator's license under Tex. *Gov't Code Ann. § 2001.051* because there was substantial evidence in the agency record to support the administrative order suspending the driver's license, the trial court erred in setting aside the order. The reviewing court does not substitute its judgment as to the weight of the evidence for that of the state agency, pursuant to Tex. *Gov't Code Ann. § 2001.171*. *Texas Dep't of Pub. Safety v. Raffaelli, 905 S.W.2d 773, 1995 Tex. App. LEXIS 2092 (Tex. App. Texarkana Aug. 30, 1995, no writ)*.

**Administrative Law: Judicial Review: Standards of Review: Substantial Evidence**

In an action in which the state department of public safety challenged the judgment of the district court, which reversed an administrative decision upholding the suspension of a driver's operator's license under Tex. *Gov't Code Ann. § 2001.051* because there was substantial evidence in the agency record to support the administrative order suspending the driver's license, the trial court erred in setting aside the order. The reviewing court does not substitute its judgment as to the weight of the evidence for that of the state agency, pursuant to Tex. *Gov't Code Ann. § 2001.171*. *Texas Dep't of Pub. Safety v. Raffaelli, 905 S.W.2d 773, 1995 Tex. App. LEXIS 2092 (Tex. App. Texarkana Aug. 30, 1995, no writ)*.

**Civil Procedure: Jurisdiction: Subject Matter Jurisdiction: Jurisdiction Over Actions: General Overview**

Trial court erred by granting the Texas Department of Transportation's plea to the jurisdiction on the applicant's declaratory judgment claim, seeking a declaration that the Department erred by failing to hold a contested case hearing under Tex. *Gov't Code Ann. § 2001.051* on the denial of his application to erect an advertising sign, because suits for declaratory relief did not implicate sovereign immunity, as a suit to compel state officers to act within their official capacity did not attempt to subject the State to liability. *Sefzik v. Tex. DOT, 267 S.W.3d 127, 2008 Tex. App. LEXIS 4507 (Tex. App. Corpus Christi June 19, 2008)*, rev'd in part, *355 S.W.3d 618, 2011 Tex. LEXIS 801 (Tex. 2011)*.

**Constitutional Law: Bill of Rights: Fundamental Rights: Procedural Due Process: Scope of Protection**

> ***Overview:*** *The court reasoned that the additional permit requirements ordered by the Commission did not rely on outside-the-record facts, but rather extended existing facility design features that were already considered during the hearing to provide the same level of groundwater protection.*

- In a contested case, the Administrative Procedure Act affords each party an opportunity to respond and to present evidence and argument on each issue involved in the case. *Tex. Gov't Code § 2001.051(2)*. Due process requires that parties be accorded a full and fair hearing on disputed fact issues. Due process, at minimum, is notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Only one adequate hearing is required in an administrative proceeding. The Texas Railroad Commission has discretion to grant or refuse a further hearing on matters that were already before it in an earlier hearing, and unless there is an abuse of discretion the courts do not interfere.

> *HR Martin Cnty. Landfill, LLC v. Mabee, No. 01-23-00036-CV, 2024 Tex. App. LEXIS 9040 (Tex. App. Houston 1st Dist. Dec. 31, 2024)*.

**Energy & Utilities Law: Administrative Proceedings: Public Utility Commissions: General Overview**

Public Utility Commission's utilization of the control-premium panel's report did not violate the due process rights of the customers and the Public Utility Counsel because they failed to specify what additional evidence they would have introduced had they been informed that the Commission would be utilizing the report when ascertaining the value of the utility's stock. *CenterPoint Energy Houston Electric, LLC v. Gulf Coast Coalition of Cities, 252 S.W.3d 1, 2008 Tex. App. LEXIS 2819 (Tex. App. Austin 3d Dist. Apr. 17, 2008)*, aff'd in part and rev'd in part, *344 S.W.3d 349, 2011 Tex. LEXIS 230 (Tex. 2011)*.

### Energy & Utilities Law: Utility Companies: General Overview

Public Utility Commission's utilization of the control-premium panel's report did not violate the due process rights of the customers and the Public Utility Counsel because they failed to specify what additional evidence they would have introduced had they been informed that the Commission would be utilizing the report when ascertaining the value of the utility's stock. *CenterPoint Energy Houston Electric, LLC v. Gulf Coast Coalition of Cities, 252 S.W.3d 1, 2008 Tex. App. LEXIS 2819 (Tex. App. Austin 3d Dist. Apr. 17, 2008)*, aff'd in part and rev'd in part, *344 S.W.3d 349, 2011 Tex. LEXIS 230 (Tex. 2011)*.

### Environmental Law: Air Quality: Preconstruction Permits

Where an individual challenged the Texas Commission on Environmental Quality's decision to grant a concrete batch plant permit, the individual failed to exhaust administrative remedies because (1) the individual did not request a contested case hearing, (2) a public meeting was not a substitute for a contested case hearing since they were separate and distinct processes which served different purposes, and (3) the question of law exception did not apply. *Rawls v. Tex. Comm'n on Envtl. Quality, No. 11-05-00368CV, 2007 Tex. App. LEXIS 5013 (Tex. App. Eastland June 28, 2007)*.

### Governments: Legislation: Interpretation

Former Tex. Rev. Civ. Stat. Ann. art. 6252-13a (now Tex. *Gov't Code Ann. § 2001.051*) was interpreted as always requiring reasonable notice, which may never be less than ten days. *Gibraltar Sav. Asso. v. Franklin Sav. Asso., 617 S.W.2d 322, 1981 Tex. App. LEXIS 3672 (Tex. Civ. App. Austin May 20, 1981, no writ)*.

### Governments: State & Territorial Governments: Claims By & Against

Trial court erred by granting the Texas Department of Transportation's plea to the jurisdiction on the applicant's declaratory judgment claim, seeking a declaration that the Department erred by failing to hold a contested case hearing under Tex. *Gov't Code Ann. § 2001.051* on the denial of his application to erect an advertising sign, because suits for declaratory relief did not implicate sovereign immunity, as a suit to compel state officers to act within their official capacity did not attempt to subject the State to liability. *Sefzik v. Tex. DOT, 267 S.W.3d 127, 2008 Tex. App. LEXIS 4507 (Tex. App. Corpus Christi June 19, 2008)*, rev'd in part, *355 S.W.3d 618, 2011 Tex. LEXIS 891 (Tex. 2011)*.

### Governments: State & Territorial Governments: Licenses

Lower court did not err in finding that Texas State Board of Plumbing Examiners did not have to afford appellant plumbers' continuing education program provider a formal contested-case hearing on its request for approval to continue as an education provider because under Tex. *Gov't Code Ann. § 2001.051* to § 2001.178, appellant's request did not initiate a contested case and the procedures required by a contested case were not relevant; the statute did not require the board to make its determination after an opportunity for an adjudicative hearing which

therefore, did not invoke contested-case procedures. *Best & Co. v. State Bd. of Plumbing Examiners, 927 S.W.2d 306, 1996 Tex. App. LEXIS 3275 (Tex. App. Austin 3d Dist. July 31, 1996, no writ)*.

### Public Health & Welfare Law: Social Security: Medicaid: Providers: Payments & Reimbursements

Where appellant overcharged Medicaid for medical supplies, the first amended notice was sufficient to satisfy statutory and due process requirements because it provided appellant notice of the violations, the amount of the overpayments, the extrapolation methodology, and the calculation of the claim of $2,357,115 in overpayments. *Personal Care Prods. v. Smith, 578 S.W.3d 262, 2019 Tex. App. LEXIS 5289 (Tex. App. Austin 3d Dist. June 26, 2019, no pet.)*.

### Transportation Law: Private Vehicles: Operator Licenses: General Overview

In an action in which the state department of public safety challenged the judgment of the district court, which reversed an administrative decision upholding the suspension of a driver's operator's license under Tex. *Gov't Code Ann. § 2001.051* because there was substantial evidence in the agency record to support the administrative order suspending the driver's license, the trial court erred in setting aside the order. The reviewing court does not substitute its judgment as to the weight of the evidence for that of the state agency, pursuant to Tex. *Gov't Code Ann. § 2001.171. Texas Dep't of Pub. Safety v. Raffaelli, 905 S.W.2d 773, 1995 Tex. App. LEXIS 2092 (Tex. App. Texarkana Aug. 30, 1995, no writ)*.

In an action in which the state department of public safety challenged the judgment of the district court, which reversed an administrative decision upholding the suspension of a driver's operator's license under *Tex. Gov't Code Ann. § 2001.051*, the question of whether the record of the administrative proceeding was properly before the court on appeal was answered in the affirmative, as the agency record, including a complete transcript of the administrative proceedings against the driver, was part of the transcript and could be examined as part of the appellate review process under *Tex. R. App. P. 50. Texas Dep't of Pub. Safety v. Raffaelli, 905 S.W.2d 773, 1995 Tex. App. LEXIS 2092 (Tex. App. Texarkana Aug. 30, 1995, no writ)*.

## Research References & Practice Aids

### LAW REVIEWS

*49 SMU L. Rev. 1177*.

### TREATISES & ANALYTICAL MATERIALS

*25-422 Dorsaneo, Texas Litigation Guide § 422.01*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Application of Act, Dorsaneo, Texas Litigation Guide.

*25-422 Dorsaneo, Texas Litigation Guide § 422.02*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Notice of Hearing—Parties, Dorsaneo, Texas Litigation Guide.

*25-422 Dorsaneo, Texas Litigation Guide § 422.51*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Hearing Preparation, Dorsaneo, Texas Litigation Guide.

*25-422 Dorsaneo, Texas Litigation Guide § 422.100*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Application for More Definite Statement, Dorsaneo, Texas Litigation Guide.

*25-422 Dorsaneo, Texas Litigation Guide § 422.200*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Statutes, Dorsaneo, Texas Litigation Guide.

25-423 Dorsaneo, Texas Litigation Guide § 423.50, Administrative Proceedings (Chs. 420-425), JUDICIAL REVIEW OF CONTESTED CASES, Petition for Judicial Review of Administrative Action in Contested Case, Dorsaneo, Texas Litigation Guide.

25-424 Dorsaneo, Texas Litigation Guide § 424.01, Administrative Proceedings (Chs. 420-425), DIRECT JUDICIAL PROCEEDINGS, Constraints on Direct Judicial Proceedings, Dorsaneo, Texas Litigation Guide.

25-425 Dorsaneo, Texas Litigation Guide § 425.11, Administrative Proceedings (Chs. 420-425), RESOLVING STATE CONTRACT DISPUTES, Administrative Procedure for Contracts Dispute With Texas Building and Procurement Commission and Most Other State Agencies, Dorsaneo, Texas Litigation Guide.

25-425 Dorsaneo, Texas Litigation Guide § 425.20, Administrative Proceedings (Chs. 420-425), RESOLVING STATE CONTRACT DISPUTES, Contract Claims Covered by Transportation Code Section 201.112 and Exempted From Government Code Chapter 2260, Dorsaneo, Texas Litigation Guide.

25-425 Dorsaneo, Texas Litigation Guide § 425.65, Administrative Proceedings (Chs. 420-425), RESOLVING STATE CONTRACT DISPUTES, Contested Case Hearing Under Government Code Chapter 2260, Dorsaneo, Texas Litigation Guide.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved

---

End of Document

# APPENDIX 10

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 10 General Government (Subts. A — Z) > Subtitle A Administrative Procedure and Practice (Chs. 2001 — 2050) > Chapter 2001 Administrative Procedure (Subchs. A — Z) > Subchapter C Contested Cases: General Rights and Procedures (§§ 2001.051 — 2001.062)

## Sec. 2001.052. Contents of Notice.

(a) Notice of a hearing in a contested case must include:

    (1) a statement of the time, place, and nature of the hearing;

    (2) a statement of the legal authority and jurisdiction under which the hearing is to be held;

    (3) a reference to the particular sections of the statutes and rules involved; and

    (4) either:

        (A) a short, plain statement of the factual matters asserted; or

        (B) an attachment that incorporates by reference the factual matters asserted in the complaint or petition filed with the state agency.

(b) If a state agency or other party is unable to state factual matters in detail at the time notice under this section is served, an initial notice may be limited to a statement of the issues involved. On timely written application, a more definite and detailed statement of the facts shall be furnished not less than seven days before the date set for the hearing. In a proceeding in which the state agency has the burden of proof, a state agency that intends to rely on a section of a statute or rule not previously referenced in the notice of hearing must amend the notice, or the complaint or petition, if applicable, to refer to the section of the statute or rule not later than the seventh day before the date set for the hearing. This subsection does not prohibit the state agency from filing an amendment during the hearing of a contested case provided the opposing party is granted a continuance of at least seven days to prepare its case on request of the opposing party.

(c) In a suit for judicial review of a final decision or order of a state agency in a contested case, the state agency's failure to comply with Subsection (a)(3) or (b) shall constitute prejudice to the substantial rights of the appellant under Section 2001.174(2) unless the court finds that the failure did not unfairly surprise and prejudice the appellant or that the appellant waived the appellant's rights.

## History

Enacted by Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1, effective September 1, 1993; Acts 2015, 84th Leg., ch. 625 (S.B. 1267), § 1, effective September 1, 2015; Acts 2017, 85th Leg., ch. 430 (S.B. 1446), § 1, effective September 1, 2017.

Annotations

## Notes

## STATUTORY NOTES

### Amendment Notes

**2015 amendment,** added "factual" in (a)(4) and the first sentence of (b); in (b), in the first sentence, added "of the facts" and substituted "seven days" for "three days" and added the second and third sentences; and added (c).

### Applicability

Acts 2017, 85th Leg., ch. 430 (S.B. 1446), § 6 provides:

The changes in law made by this Act to Sections 2001.052 and 2001.054, Government Code, apply only to an administrative proceeding or contested case that is initiated on or after the effective date of this Act. An administrative proceeding or contested case initiated before the effective date of this Act is governed by the law in effect on the date the proceeding was initiated, and the former law is continued in effect for that purpose.

Acts 2015, 84th Leg., ch. 625 (S.B. 1267), § 11 provides: "The changes in law made by this Act to Chapter 2001, Government Code, apply only to an administrative hearing that is set by the State Office of Administrative Hearings, or another state agency conducting an administrative hearing, on or after the effective date of this Act [September 1, 2015]. A hearing set before the effective date of this Act, or any decision issued or appeal from the hearing, is governed by the law in effect when the hearing was set, and the former law is continued in effect for that purpose."

## Notes to Decisions

Administrative Law: Agency Adjudication: Hearings: General Overview

Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Due Process

Education Law: Faculty & Staff: Discipline & Dismissal: Administrative Proceedings: Due Process

Environmental Law: Natural Resources & Public Lands: Fish & Wildlife Protection

Governments: State & Territorial Governments: Licenses

Public Health & Welfare Law: Social Security: Medicaid: Providers: Payments & Reimbursements

Administrative Law: Agency Adjudication: Hearings: General Overview

Notice of a hearing in a licence revocation proceeding satisfied the requirements of Tex. Gov't Code Ann. § 2001.052(a) because the notice provided the insurance agent with the controlling facts of the case; the notice provided a short, plain statement of the matters that allegedly amounted to fraud. Meyer v. Tex. Dep't of Ins., No. 03-10-00642-CV, 2011 Tex. App. LEXIS 9270 (Tex. App. Austin Nov. 29, 2011).

Department of wildlife had not exceeded its statutory authority by issuing a letter denying a landowner a managed lands deer permit (MLDP) without prior notice and hearing because, at the time of the department's decision, the landowner had no active license or permit that could have been "revoked" or "suspended" by the department's decision. Instead, the department's challenged action amounted to a refusal to issue an original or renewal license, permit, or tag pursuant to Tex. Parks & Wild. Code Ann. § 12.508. Shrieve v. Tex. Parks & Wildlife Dep't, No. 03-04-00640-CV, 2005 Tex. App. LEXIS 3406 (Tex. App. Austin May 5, 2005).

County judge did not allow inadequate notice of a hearing on a club owner's application to renew a beer and wine retailer's on-premises license and after-hours permit for his nightclub because the notice met the requirements of Tex. Gov't Code Ann. §§ 2001.051 and 2001.052, and the original notice contained the date of the hearing, location, and time, cited Tex. Alco. Bev. Code Ann. § 61.42(a)(3) as the basis for refusal of the permit's renewal, and referred to a list of incidents that occurred at or near the nightclub during the two years preceding the date of the notice. Garza v. Tex. Alcoholic Bev. Comm'n, 138 S.W.3d 609, 2004 Tex. App. LEXIS 5709 (Tex. App. Houston 14th Dist. June 24, 2004, no pet.).

Texas Alcoholic Beverage Commission's cancellation of a cabaret's license to sell alcoholic beverages for failure to take affirmative action to stop the breach of the peace did not violate the cabaret's right to due process on the ground that the cabaret had 10 months' notice of continuing violations and that the notice of hearing gave the cabaret proper notice of the allegations regarding the breach of the peace, in accordance with the requirements of Tex. Gov't Code Ann. § 2001.052 of the Texas Administrative Procedures Act, Tex. Gov't Code Ann. § 2001.001 et seq.; the notice was sufficient because it specified the date of the assault, the names of the assailants, and tracked the language of the breach of the peace statute. Texas Alcoholic Beverage Comm'n v. Mini, Inc., 832 S.W.2d 147, 1992 Tex. App. LEXIS 1456 (Tex. App. Houston 14th Dist. 1992, no writ).

### Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Due Process

Where appellant overcharged Medicaid for medical supplies, the first amended notice was sufficient to satisfy statutory and due process requirements because it provided appellant notice of the violations, the amount of the overpayments, the extrapolation methodology, and the calculation of the claim of $2,357,115 in overpayments. Personal Care Prods. v. Smith, 578 S.W.3d 262, 2019 Tex. App. LEXIS 5289 (Tex. App. Austin June 26, 2019, no pet.).

Given the specificity of the state board's pleading against a principal for violating 34 C.F.R. § 300.503 by changing disabled students' IEPs without notifying or involving the parents, the principal was not put on notice as required by due process that the board claimed that the notice that she did give the parents was inadequate because it was not written. Barton v. State Bd. for Educator Certification, 382 S.W.3d 405, 2012 Tex. App. LEXIS 8037 (Tex. App. Texarkana Sept. 24, 2012, no pet.).

### Education Law: Faculty & Staff: Discipline & Dismissal: Administrative Proceedings: Due Process

Given the specificity of the state board's pleading against a principal for violating 34 C.F.R. § 300.503 by changing disabled students' IEPs without notifying or involving the parents, the principal was not put on notice as required by due process that the board claimed that the notice that she did give the parents was inadequate because it was not written. Barton v. State Bd. for Educator Certification, 382 S.W.3d 405, 2012 Tex. App. LEXIS 8037 (Tex. App. Texarkana Sept. 24, 2012, no pet.).

### Environmental Law: Natural Resources & Public Lands: Fish & Wildlife Protection

Department of wildlife had not exceeded its statutory authority by issuing a letter denying a landowner a managed lands deer permit (MLDP) without prior notice and hearing because, at the time of the department's decision, the landowner had no active license or permit that could have been "revoked" or "suspended" by the department's decision. Instead, the department's challenged action amounted to a refusal to issue an original or renewal license, permit, or tag pursuant to Tex. Parks & Wild. Code Ann. § 12.508. Shrieve v. Tex. Parks & Wildlife Dep't, No. 03-04-00640-CV, 2005 Tex. App. LEXIS 3406 (Tex. App. Austin May 5, 2005).

### Governments: State & Territorial Governments: Licenses

Department of wildlife had not exceeded its statutory authority by issuing a letter denying a landowner a managed lands deer permit (MLDP) without prior notice and hearing because, at the time of the department's decision, the landowner had no active license or permit that could have been "revoked" or "suspended" by the department's decision. Instead, the department's challenged action amounted to a refusal to issue an original or renewal license, permit, or tag pursuant to Tex. *Parks & Wild. Code Ann. § 12.508*. *Shrieve v. Tex. Parks & Wildlife Dep't, No. 03-04-00640-CV, 2005 Tex. App. LEXIS 3405 (Tex. App. Austin May 5, 2005)*.

**Public Health & Welfare Law: Social Security: Medicaid: Providers: Payments & Reimbursements**

Where appellant overcharged Medicaid for medical supplies, the first amended notice was sufficient to satisfy statutory and due process requirements because it provided appellant notice of the violations, the amount of the overpayments, the extrapolation methodology, and the calculation of the claim of $2.357,115 in overpayments. *Personal Care Prods. v. Smith, 578 S.W.3d 262, 2019 Tex. App. LEXIS 5289 (Tex. App. Austin June 26, 2019, no pet.)*.

# Research References & Practice Aids

## TREATISES & ANALYTICAL MATERIALS

*25-422 Dorsaneo, Texas Litigation Guide § 422.02*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Notice of Hearing—Parties, Dorsaneo, Texas Litigation Guide.

*25-422 Dorsaneo, Texas Litigation Guide § 422.51*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Hearing Preparation, Dorsaneo, Texas Litigation Guide.

*25-422 Dorsaneo, Texas Litigation Guide § 422.100*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Application for More Definite Statement, Dorsaneo, Texas Litigation Guide.

*25-422 Dorsaneo, Texas Litigation Guide § 422.200*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Statutes, Dorsaneo, Texas Litigation Guide.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

# APPENDIX 11

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 10 General Government (Subts. A — Z) > Subtitle A Administrative Procedure and Practice (Chs. 2001 — 2050) > Chapter 2001 Administrative Procedure (Subchs. A — Z) > Subchapter G Contested Cases: Judicial Review (§§ 2001.171 — 2001.178)*

## Sec. 2001.174. Review Under Substantial Evidence Rule or Undefined Scope of Review.

If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## History

Enacted by *Acts 1993, 73rd Leg, ch. 268 (S.B. 248), § 1*, effective September 1, 1993.

Annotations

## Notes to Decisions

**Administrative Law: Agency Adjudication: Decisions: General Overview**

**Administrative Law: Agency Adjudication: Decisions: Contents**

**Administrative Law: Agency Adjudication: Hearings: General Overview**

**Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Due Process**

**Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Statutory Right**

**Administrative Law: Agency Adjudication: Impartiality: General Overview**

**Administrative Law: Agency Adjudication: Presiding Officers: Administrative Law Judges**

**Administrative Law: Agency Adjudication: Presiding Officers: Duties & Powers**

**Administrative Law: Agency Adjudication: Review of Initial Decisions**

**Administrative Law: Agency Rulemaking: General Overview**

**Administrative Law: Agency Rulemaking: Rule Application & Interpretation: General Overview**

**Administrative Law: Agency Rulemaking: Rule Application & Interpretation: Validity**

**Administrative Law: Judicial Review: Remands & Remittiturs**

**Administrative Law: Judicial Review: Remedies: Declaratory Judgments**

**Administrative Law: Judicial Review: Reviewability: General Overview**

**Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies**

**Administrative Law: Judicial Review: Reviewability: Factual Determinations**

**Administrative Law: Judicial Review: Reviewability: Final Order Requirement**

**Administrative Law: Judicial Review: Reviewability: Jurisdiction & Venue**

**Administrative Law: Judicial Review: Reviewability: Preservation for Review**

**Administrative Law: Judicial Review: Reviewability: Questions of Law**

**Administrative Law: Judicial Review: Standards of Review**

**Administrative Law: Judicial Review: Standards of Review: General Overview**

**Administrative Law: Judicial Review: Standards of Review: Abuse of Discretion**

**Administrative Law: Judicial Review: Standards of Review: Arbitrary & Capricious Review**

**Administrative Law: Judicial Review: Standards of Review: Constitutional Right**

**Administrative Law: Judicial Review: Standards of Review: De Novo Review**

**Administrative Law: Judicial Review: Standards of Review: Exceeding Statutory Authority**

**Administrative Law: Judicial Review: Standards of Review: Rule Interpretation**

**Administrative Law: Judicial Review: Standards of Review: Statutory Interpretation**

**Administrative Law: Judicial Review: Standards of Review: Substantial Evidence**

**Administrative Law: Judicial Review: Standards of Review: Unlawful Procedures**

**Administrative Law: Separation of Powers: Jurisdiction**

**Antitrust & Trade Law: Consumer Protection: Vehicle Warranties: Lemon Laws**

Business & Corporate Law: Distributorships & Franchises: Assignments & Transfers

Business & Corporate Law: Distributorships & Franchises: Causes of Action: Breach of Contract

Business & Corporate Law: Distributorships & Franchises: Terminations: Good Cause

Civil Procedure: Parties: General Overview

Civil Procedure: Parties: Joinder: Necessary Parties

Civil Procedure: Declaratory Judgment Actions: State Judgments: Factors

Civil Procedure: Declaratory Judgment Actions: State Judgments: Scope

Civil Procedure: Declaratory Judgment Actions: State Judgments: Uniform Declaratory Judgment Act

Civil Procedure: Settlements: Settlement Agreements

Civil Procedure: Settlements: Settlement Agreements: Enforcement

Civil Procedure: Pretrial Matters: Continuances

Civil Procedure: Pretrial Matters: Subpoenas

Civil Procedure: Trials: Jury Trials: Right to Jury Trial

Civil Procedure: Appeals: Records on Appeal

Civil Procedure: Appeals: Standards of Review

Civil Procedure: Appeals: Standards of Review: Reversible Errors

Civil Procedure: Appeals: Standards of Review: Substantial Evidence: General Overview

Constitutional Law: Bill of Rights: Fundamental Rights: Search & Seizure: Probable Cause

Constitutional Law: Bill of Rights: Fundamental Rights: Procedural Due Process: Scope of Protection

Constitutional Law: Substantive Due Process: Scope of Protection

Constitutional Law: Equal Protection: Scope of Protection

Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Driving Under the Influence: General Overview

Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Driving Under the Influence: Blood Alcohol & Field Sobriety: Implied Consent: General Overview

Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Driving Under the Influence: Blood Alcohol & Field Sobriety: Implied Consent: Refusals to Submit

Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Driving Under the Influence: Blood Alcohol & Field Sobriety: Procedures

Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Traffic Regulation Violations: Elements

Criminal Law & Procedure: Arrests: Probable Cause

Criminal Law & Procedure: Search & Seizure: Warrantless Searches: Investigative Stops

Criminal Law & Procedure: Search & Seizure: Warrantless Searches: Stop & Frisk: Reasonable Suspicion

Criminal Law & Procedure: Discovery & Inspection: Discovery by Defendant: Report of Examinations & Tests: General Overview

Criminal Law & Procedure: Defenses: Necessity

Education Law: Faculty & Staff: Discipline & Dismissal: Administrative Proceedings: Appeals & Reviews

Education Law: Faculty & Staff: Discipline & Dismissal: Administrative Proceedings: Statutory Procedures

Education Law: Faculty & Staff: Personnel Actions: Transfers

Energy & Utilities Law: Administrative Proceedings: Judicial Review

Energy & Utilities Law: Administrative Proceedings: Judicial Review: General Overview

Energy & Utilities Law: Administrative Proceedings: Judicial Review: Scope & Standards of Review

Energy & Utilities Law: Administrative Proceedings: Public Utility Commissions: General Overview

Energy & Utilities Law: Administrative Proceedings: Public Utility Commissions: Authority

Energy & Utilities Law: Administrative Proceedings: Public Utility Commissions: Judicial Review

Energy & Utilities Law: Administrative Proceedings: Ratemaking

Energy & Utilities Law: Electric Power Industry: Electricity Distribution & Transmission

Energy & Utilities Law: Electric Power Industry: State Regulation

Energy & Utilities Law: Electric Power Industry: State Regulation: General Overview

Energy & Utilities Law: Electric Power Industry: State Regulation: Rate Setting & Tariffs

Energy & Utilities Law: Pooling & Unitization: General Overview

Energy & Utilities Law: Pooling & Unitization: Voluntary Pooling

Energy & Utilities Law: Utility Companies: Buying & Selling of Power

Energy & Utilities Law: Utility Companies: Rates: General Overview

Energy & Utilities Law: Utility Companies: Rates: Ratemaking Factors: General Overview

Energy & Utilities Law: Utility Companies: Rates: Ratemaking Factors: Rate Base

Environmental Law: Air Quality: Enforcement: Administrative Proceedings

Environmental Law: Air Quality: National Ambient Air Quality Standards

Environmental Law: Air Quality: Nonattainment Areas

Environmental Law: Air Quality: Preconstruction Permits

Environmental Law: Air Quality: Prevention of Significant Deterioration

Environmental Law: Hazardous Wastes & Toxic Substances: Treatment, Storage & Disposal

Environmental Law: Litigation & Administrative Proceedings

Environmental Law: Litigation & Administrative Proceedings: Judicial Review

Environmental Law: Solid Wastes

Environmental Law: Solid Wastes: Disposal Planning

Environmental Law: Solid Wastes: Disposal Standards

Environmental Law: Solid Wastes: Municipal Landfills

Environmental Law: Solid Wastes: Permits: General Overview

Environmental Law: Solid Wastes: Permits: Disposal

Evidence: Inferences & Presumptions: Inferences

Evidence: Procedural Considerations: Burdens of Production

Evidence: Procedural Considerations: Burdens of Proof: General Overview

Evidence: Procedural Considerations: Burdens of Proof: Allocation

Evidence: Procedural Considerations: Weight & Sufficiency

Family Law: Family Protection & Welfare: Children: Abuse, Endangerment & Neglect

Family Law: Guardians: General Overview

Governments: Courts: Authority to Adjudicate

Governments: Courts: Creation & Organization

Governments: Legislation: Effect & Operation: Operability

Governments: Legislation: Interpretation

Governments: State & Territorial Governments: Claims By & Against

Governments: State & Territorial Governments: Employees & Officials

Governments: State & Territorial Governments: Gaming & Lotteries

Governments: State & Territorial Governments: Licenses

Governments: State & Territorial Governments: Water Rights

Healthcare Law: Business Administration & Organization: Judicial Review

Healthcare Law: Business Administration & Organization: Judicial Review: General Overview

Healthcare Law: Business Administration & Organization: Judicial Review: Substantial Evidence

Healthcare Law: Business Administration & Organization: Licenses: General Overview

Healthcare Law: Business Administration & Organization: Licenses: Requirements

Healthcare Law: Business Administration & Organization: Licenses: Revocation & Suspension

Insurance Law: Industry Regulation: Insurance Company Operations: General Overview

Insurance Law: Industry Regulation: Insurance Company Operations: Representatives: Agents: Licenses

Insurance Law: Industry Regulation: Joint Underwriting Associations

Insurance Law: Industry Regulation: Rates: Judicial Review

Insurance Law: Industry Regulation: State Insurance Commissioners & Departments: Judicial Review: Standards of Review

Insurance Law: Life Insurance: Accidental Death: General Overview

Insurance Law: Life Insurance: Exclusions: General Overview

Labor & Employment Law: Disability & Unemployment Insurance: Disability Benefits: Coverage & Definitions: Preexisting Conditions

Labor & Employment Law: Disability & Unemployment Insurance: Disability Benefits: Proof: General Overview

Labor & Employment Law: Disability & Unemployment Insurance: Disability Benefits: Proof: Evidence

Labor & Employment Law: Disability & Unemployment Insurance: Disability Benefits: Review

Labor & Employment Law: Wage & Hour Laws: Wage Payments

Pensions & Benefits Law: Governmental Employees: State Pensions

Public Health & Welfare Law: Healthcare: Mental Health Services: Costs

Public Health & Welfare Law: Healthcare: Services for Disabled & Elderly Persons: Care Facilities

Public Health & Welfare Law: Housing & Public Buildings: Accessibility, Construction & Design

Public Health & Welfare Law: Social Security: Medicaid: Coverage: Medical Necessities

Public Health & Welfare Law: Social Security: Medicaid: Providers: Payments & Reimbursements

Public Health & Welfare Law: Social Security: Medicaid: State Plans: Categorically & Medically Needy Claimants

Real Property Law: Brokers: Discipline, Licensing & Regulation

Real Property Law: Inverse Condemnation: Regulatory Takings

Real Property Law: Limited Use Rights: Easements: Public Easements

Real Property Law: Ownership & Transfer: Public Entities

Real Property Law: Water Rights: Appropriation Rights

Real Property Law: Water Rights: Procedure

Torts: Public Entity Liability: Immunity: Sovereign Immunity

Transportation Law: General Overview

Transportation Law: Bridges & Roads: Turnpikes

Transportation Law: Private Vehicles: Operator Licenses: General Overview

Transportation Law: Private Vehicles: Operator Licenses: Revocation & Suspension

Transportation Law: Private Vehicles: Safety Standards: Turn Signals

Transportation Law: Private Vehicles: Traffic Regulation: Speed Limits: Minimum Speeds

Transportation Law: Private Vehicles: Vehicle Registration: General Overview

Transportation Law: Public Transportation

Transportation Law: Rail Transportation: Railroad Commissions

Transportation Law: Rail Transportation: Rates & Tariffs

Workers' Compensation & SSDI: Administrative Proceedings: Claims: General Overview

Workers' Compensation & SSDI: Administrative Proceedings: Judicial Review: General Overview

Workers' Compensation & SSDI: Administrative Proceedings: Judicial Review: Standards of Review: Abuse of Discretion

Workers' Compensation & SSDI: Administrative Proceedings: Judicial Review: Standards of Review: Substantial Evidence

Workers' Compensation & SSDI: Benefit Determinations: Medical Benefits

Workers' Compensation & SSDI: Benefit Determinations: Medical Benefits: General Overview

Workers' Compensation & SSDI: Third Party Actions: Third Party Liability

Administrative Law: Agency Adjudication: Decisions: General Overview

Texas Railroad Commission's rejection of a gas company's fee assessment against residents of outlying areas was not supported by substantial evidence because the Commission's order did not satisfy requirements for findings of fact. *CenterPoint Energy Entex v. R.R. Comm'n, 213 S.W.3d 364, 2006 Tex. App. LEXIS 3516 (Tex. App. Austin 3d Dist. Apr. 28, 2006, no pet.)*.

Administrative Law: Agency Adjudication: Decisions: Contents

In an appeal arising from a dispute over a highway construction contract between a contractor and the Texas Department of Transportation, the decision of the Department's executive director to reject an administrative law judge's (ALJ's) proposed findings based on credibility was arbitrary and capricious and an abuse of discretion where the ALJ, not the executive director, heard the testimony and observed the demeanor of the witnesses, and where the executive director failed to comply with *Tex. Transp. Code Ann. § 201.112(c)* by not providing a written statement for each individual change to the ALJ's findings of fact and conclusions of law that explained his rationale for each change, and his changes to particular findings and conclusions proposed by the ALJ suggested he was acting as the Department's factfinder, despite the legislature having delegated that responsibility to the ALJ in

§ 201.112(b). By failing to comply with the requirement to provide a written statement containing the reason and legal basis for changing the ALJ's findings and conclusions, the executive director's decision in his final order raised serious due process concerns, and without knowing on what facts the executive director relied to make his finding of credible evidence, there was no rational connection between the facts and his decision. *Jordan Paving Corp. v. Tex. DOT, No. 03-04-00782-CV, 2009 Tex. App. LEXIS 3878 (Tex. App. Austin 3d Dist. June 3, 2009).*

### Administrative Law: Agency Adjudication: Hearings: General Overview

Trial court erred in finding that a notice of an enforcement action hearing before the Texas Alcoholic Beverage Commission (TABC) was ineffective because evidence that the TABC sent the notice to the licensee at the address indicated in the TABC's records and that it received a signed green card in return was substantial evidence under Tex. *Alco. Bev. Code Ann. § 11.67(b)* and Tex. *Gov't Code Ann. § 2001.174(2)* for the TABC's finding that the licensee had actual notice; the agency was entitled to resolve conflicts in the evidence, and, here, the evidence could have supported a finding either way. The trial court impermissibly substituted its judgment for that of the agency as the agency's resolution of the issues of any "address problems" and the green card signature was not unreasonable. *Tex. Alcoholic Bev. Comm'n v. AGA Trading, Inc., No. 14-08-00151-CV, 2009 Tex. App. LEXIS 7842 (Tex. App. Houston 14th Dist. Oct. 8, 2009).*

Substantial evidence in the record supported the Texas Natural Resource Conservation Commission's finding that a landfill owner's expansion application was administratively and technically complete because the owner had included all necessary information in the application, and while some witnesses could not independently verify particular documents or exhibits, there was nothing in the record that cast doubt upon the information, and the opponents to the application did not introduce any contrary exhibits to demonstrate that the limited evidence was altered or falsified. Because the application was determined to be administratively and technically complete prior to the contested case hearing, the owner was not required to establish at the contested-case hearing that its application complied with each administrative and technical requirement because it had already done so prior to the hearing. *Citizens Against Landfill Location v. Tex. Comm'n on Envtl. Quality, 169 S.W.3d 258, 2005 Tex. App. LEXIS 3583 (Tex. App. Austin 3d Dist. May 12, 2005, no pet.).*

Trial court did not err in reversing the county civil service commission's holding that the suspended employee could be suspended as the constable's failure to show up at a hearing implicated the suspended employee's substantial rights and prejudiced him; suspended employee was entitled to have an order entered, pursuant to the civil service commission's own rules, nullifying the entire action against him. *Bexar County Civ. Serv. Comm'n v. Casals, 63 S.W.3d 57, 2001 Tex. App. LEXIS 6561 (Tex. App. San Antonio Sept. 28, 2001, no pet.).*

Substantial evidence existed to support administrative law judge's findings that widow was excluded from receiving benefits under insurance policy when evidence showed her dead husband was driving truck that overturned, killing himself and a passenger, and, if husband had survived, he would have been charged with manslaughter. *Nobles v. Employees Ret. Sys. of Texas, 53 S.W.3d 483, 2001 Tex. App. LEXIS 4997 (Tex. App. Austin 3d Dist. July 26, 2001, no pet.).*

### Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Due Process

Pursuant to Tex. *Gov't Code Ann. § 2001.174(2)(F)* the Board of Trustees for the Employees Retirement System of Texas (ERS) acted arbitrarily and capriciously and abused its discretion in terminating a disability retiree's occupational disability retirement benefits, resulting in the retiree's substantial rights being prejudiced, because due process and fundamental principals of fairness dictated that the Board should have provided meaningful notice to the retiree before applying its new 80 percent threshold standard in *34 Tex. Admin. Code § 73.17*, which construed Tex. *Gov't Code Ann. § 814.206(d)*, to his post disability earnings to terminate his benefits; being advised of the Board's construction of "comparable pay" to include its 80 percent threshold standard at the hearing was not sufficient notice to satisfy due process concerns, and a 2005 letter advising the retiree that his benefits had been terminated similarly was not sufficient, and, thus, prior to his hearing, the retiree did not have meaningful notice that

earning 80 percent of his adjusted final annual state salary could cause his benefits to be terminated. *Patton v. Employees Ret. Sys. of Tex., No. 03-07-00170-CV, 2007 Tex. App. LEXIS 9901 (Tex. App. Austin 3d Dist. Dec. 19, 2007).*

## Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Statutory Right

**Overview:** *Tex. Health & Safety Code Ann. § 382.052 required the Texas Commission on Environmental Quality, in reviewing an application under Tex. Health & Safety Code Ann. § 382.05198 for a standard air-quality permit to construct a concrete batch plant near a school, to consider the school's proximity. Substantial evidence showed that it did so.*

- As the language makes clear, *Tex. Gov't Code Ann. § 2001.174* applies in contested cases, and it is not always clear what standard applies in reviewing an uncontested case. The substantial-evidence test evolved as an evidentiary mechanism for determining the arbitrariness and invalidity of agency orders. In the absence of statutory guidance, Texas courts have ruled inconsistently on whether the substantial-evidence analysis applies to an agency record that has not been developed through contested-case or other trial-like processes.

Boerne to Bergheim Coal. for Clean Envâ□□t v. Tex. Comm'n on Envâ□□t *Quality, 2022 Tex. App. LEXIS 5932 (August 16, 2022).*

## Administrative Law: Agency Adjudication: Impartiality: General Overview

Granting of a certificate of convenience and necessity to the power and light company was proper where the application adequately addressed the factors of probable improvement of service or lowering of costs to consumers; further, the evidence supported that the individuals had notice of ex parte communications and an opportunity to address them, Tex. *Gov't Code Ann. §§ 2001.061, 2001.174. Hammack v. PUC, No. 03-02-00232-CV, 2003 Tex. App. LEXIS 8980 (Tex. App. Austin 3d Dist. Oct. 23, 2003), op. withdrawn, sub. op., 131 S.W.3d 713, 2004 Tex. App. LEXIS 3396 (Tex. App. Austin 3d Dist. Apr. 15, 2004).*

## Administrative Law: Agency Adjudication: Presiding Officers: Administrative Law Judges

**Overview:** By reading the required statutory and Miranda warnings, including under *Tex. Transp. Code Ann. § 724.015,* officers did all that was necessary under Texas law; officers were not required to inform arrested persons that having an attorney present was not an option in deciding whether to submit to a breath test, even where a defendant became confused.

- Pursuant to *Tex. Gov't Code Ann. § 2001.174,* the appellate court reviews a legal determination by the administrative law judge de novo and reviews any findings of fact for support by substantial evidence.

*Tex. Dep't of Pub. Safety v. Bruce, 694 S.W.3d 822, 2024 Tex. App. LEXIS 2691 (Tex. App. Houston 14th Dist. Apr. 18, 2024, no pet.).*

## Administrative Law: Agency Adjudication: Presiding Officers: Duties & Powers

In an appeal arising from a dispute over a highway construction contract between a contractor and the Texas Department of Transportation, the decision of the Department's executive director to reject an administrative law judge's (ALJ's) proposed findings based on credibility was arbitrary and capricious and an abuse of discretion where the ALJ, not the executive director, heard the testimony and observed the demeanor of the witnesses, and

where the executive director failed to comply with *Tex. Transp. Code Ann. § 201.112(c)* by not providing a written statement for each individual change to the ALJ's findings of fact and conclusions of law that explained his rationale for each change, and his changes to particular findings and conclusions proposed by the ALJ suggested he was acting as the Department's factfinder, despite the legislature having delegated that responsibility to the ALJ in § 201.112(b). By failing to comply with the requirement to provide a written statement containing the reason and legal basis for changing the ALJ's findings and conclusions, the executive director's decision in his final order raised serious due process concerns, and without knowing on what facts the executive director relied to make his finding of credible evidence, there was no rational connection between the facts and his decision. *Jordan Paving Corp. v. Tex. DOT, No. 03-04-00782-CV, 2009 Tex. App. LEXIS 3876 (Tex. App. Austin 3d Dist. June 3, 2009).*

### Administrative Law: Agency Adjudication: Review of Initial Decisions

*Overview: Substantial evidence supported the Texas Commission on Environmental Quality's conclusion that a partnership▢ ▢despite having contracted out the day-to-day running of a coal mine▢ ▢remained responsible for the overall operation of the mine and was its "operator" under 30 Tex. Admin. Code § 305.2(24).*

- The APA provides that a court reviewing an agency decision after a contested case may affirm the agency decision in whole or in part. *Tex. Gov't Code Ann. § 2001.174(1).*

*Tex. Comm'n on Env't Quality v. Maverick Cnty., 642 S.W.3d 537, 2022 Tex. LEXIS 150 (Tex. 2022).*

Texas Commission on Environmental Quality's (TCEQ) findings were not erroneous because (1) substantial evidence supported TCEQ's alterations of administrative law judges' findings and conclusions, and (2) substantial evidence supported TCEQ's findings that there were no reasonable available alternatives to injection wells. *Dyer v. Tex. Comm'n on Envtl. Quality, No. 03-17-00499-CV, 86 Env't Rep. Cas. (BNA) 6259, 2019 Tex. App. LEXIS 4171 (Tex. App. Austin 3d Dist. May 22, 2019), op. withdrawn, sub. op., 639 S.W.3d 721, 2019 Tex. App. LEXIS 9023 (Tex. App. Austin 3d Dist. Oct. 11, 2019).*

Board's changes to the administrative law judge's conclusions of law were not arbitrary or capricious because it was reasonable for the Board to determine that the educator crossed the bounds of the proper educator-student relationship, and the Board provided a specific reason and legal basis for its modifications. *State Bd. for Educator Certification v. Montalvo, No. 03-13-00370-CV, 2015 Tex. App. LEXIS 12025 (Tex. App. Austin 3d Dist. Nov. 24, 2015).*

By expressly excluding a decision on a disqualification for a foul from appeal, *Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.08(b)* makes other decisions on disqualification of racehorses appealable by implication; thus, an owner whose horses were disqualified for wearing the wrong saddle cloth numbers had a right to an administrative appeal, and his request for declaratory relief under *Tex. Civ. Prac. & Rem. Code Ann. § 37.004* fell within the ultra vires exception to sovereign immunity. The trial court lacked subject matter jurisdiction to make further rulings on the merits until the owner exhausted administrative remedies as provided in *Tex. Rev. Civ. Stat. Ann. art. 179e, §§ 3.02, 3.08* and *Tex. Gov't Code Ann. § 2001.174. Tex. Racing Comm'n v. Marquez, No. 03-09-00635-CV, 2011 Tex. App. LEXIS 6653 (Tex. App. Austin 3d Dist. Aug. 19, 2011).*

Agency was in violation of takings clause when it ordered what amounted to a physical taking of appellant's cables and facilities; the order was beyond the authority of the agency, thus the court was statutorily required under *Tex. Gov't Code Ann. § 2001.174(2)(B)* to reverse or remand the cause in order to prevent the impairment of substantial rights of the complaining party. *GTE Southwest, Inc. v. PUC, 10 S.W.3d 7, 1999 Tex. App. LEXIS 5199 (Tex. App. Austin 3d Dist. July 15, 1999, no pet.).*

### Administrative Law: Agency Rulemaking: General Overview

Texas Railroad Commission's rejection of a gas company's fee assessment against residents of outlying areas was not supported by substantial evidence because the Commission's order did not satisfy requirements for findings of fact. *CenterPoint Energy Entex v. R.R. Comm'n, 213 S.W.3d 364, 2006 Tex. App. LEXIS 3516 (Tex. App. Austin 3d Dist. Apr. 28, 2006, no pet.).*

### Administrative Law: Agency Rulemaking: Rule Application & Interpretation: General Overview

Text of 30 Tex. Admin. Code § 330.56(d)(4)(J) is clear, but even if the court found that the text of this rule was ambiguous, the court had to to give serious deference to the agency's reasonable interpretation. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012),* op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012).*

*16 Tex. Admin. Code § 25.263(l)(3)* was held to be invalid as it was inconsistent with the legislature's intent, expressed in Tex. Util. Code Ann. ch. 39 of the Texas Public Utility Regulatory Act, that utilities could fully recover their net, verifiable, nonmitigable stranded costs incurred in purchasing power and providing electric generation service, that existed on the last day of the freeze period (December 31, 2001). A two- or three-year gap in recovery of carrying costs would not have permitted the companies full recovery of their stranded costs as the legislature envisioned. *Centerpoint Energy, Inc. v. PUC of Tex., No. 03-0396, 2004 Tex. LEXIS 540 (Tex. June 18, 2004),* reh'g denied, op. withdrawn, sub. op., *143 S.W.3d 81, 2004 Tex. LEXIS 881 (Tex. 2004).*

### Administrative Law: Agency Rulemaking: Rule Application & Interpretation: Validity

It was improper to indefinitely suspend a pharmacist's license as a reciprocal sanction because the board engaged in ad hoc rulemaking when it applied a general policy requiring the reciprocal sanction without regard to any other factor identified in the applicable regulation and without regard to whether the rationale underlying the policy was actually implicated by the pharmacist's individual circumstances. *Tex. State Bd. of Pharm. v. Witcher, 447 S.W.3d 520, 2014 Tex. App. LEXIS 11989 (Tex. App. Austin 3d Dist. Oct. 31, 2014, no pet.).*

Enforced suspension of appellee's pharmacist license by the Texas State Board of Pharmacy concurrently with the suspension of her North Carolina license resulted from the improper application of a "rule" as that term was defined in the Administrative Procedure Act (APA), *Tex. Gov't Code Ann. § 2001.003(6).* The Board's informally announced reciprocal-sanctions policy was invalid under *Tex. Gov't Code Ann. § 2001.174(2),* because it not adopted in accordance with the APA's rulemaking procedures. *Tex. State Bd. of Pharm. v. Witcher, No. 03-12-00560-CV, 2013 Tex. App. LEXIS 5482 (Tex. App. Austin 3d Dist. May 3, 2013),* op. withdrawn, sub. op., *447 S.W.3d 520, 2014 Tex. App. LEXIS 11989 (Tex. App. Austin 3d Dist. Oct. 31, 2014).*

### Administrative Law: Judicial Review: Remands & Remittiturs

*Overview: Substantial evidence supported agency's conclusion, pursuant to Tex. Gov't Code Ann. § 2001.174, that claimant was not entitled to accidental-death benefits because it was reasonable inference that decedent did not have normal use of his mental or physical faculties because of drugs in his body and that this substantially contributed to his death.*

- The substantial evidence standard of review authorizes reversal or remand of an agency decision that prejudices the appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, or (5) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174.*

*Emps. Ret. Sys. v. Walker, No. 03-21-00321-CV, 2022 Tex. App. LEXIS 6922 (Tex. App. Austin 3d Dist. Sept. 14, 2022).*

**Overview:** *In appeal arising out of suit for judicial review of administrative order, administrative decision was clearly unwarranted exercise of discretion because plaintiff's substantial rights were prejudiced. It was forced to attend three-day hearing and use its resources trying case when dispute had already been settled by Tex. R. Civ. P. 11 agreement.*

- In a suit for judicial review of an agency action, the appellate court is empowered to issue only a general remand when the court find error that prejudices an appellant's substantial rights. Courts generally are not authorized to dictate how an agency conducts its review of remanded issues or decides them. *Tex. Gov't Code Ann. § 2001.174(2).*

*Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex., No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022).*

Tex. *Occ. Code Ann. § 1051.703(a)* of the Architecture Practice Act did not categorically preclude licensed engineers from preparing comprehensive building plans and specifications for the class of public works projects identified in that section, nor did Tex. *Occ. Code Ann. § 1051.601* categorically exempt licensed engineers from the Act's requirements. Instead, the enforcement matter at issue depended on whether preparation of the engineers' particular building plans and specifications was within the scope and practice of engineering as defined by the Engineering Practice Act; because the record was insufficiently developed to determine that issue as a matter of law, summary disposition was not appropriate, and therefore the district court did not abuse its discretion in reversing the Board's decision and remanding the case for further proceedings. *Rogers v. Tex. Bd. of Architectural Examiners (In re Rogers), 390 S.W.3d 377, 2011 Tex. App. LEXIS 6110 (Tex. App. Austin 3d Dist. Aug. 3, 2011; no pet.).*

Basis of the business owner's declaratory-judgment action was simply that the Texas Department of Licensing and Regulation (Department) had no authority to regulate eyebrow threading because eyebrow threading did not constitute the practice of cosmetology, and although she presented several constitutional arguments as to how the Department's actions affected her individually, she made no broad constitutional challenge to the entire statutory scheme; her constitutional arguments could be asserted under the Administrative Procedure Act (APA), and because the relief the owner sought under the Uniform Declaratory Judgment Act would be considered "redundant" of her APA judicial-review claim, she failed to invoke the district court's subject-matter jurisdiction to grant such relief, and the district court should have dismissed those claims. *Kuntz v. Khan, No. 03-10-00160-CV, 2010 Tex. App. LEXIS 7252 (Tex. App. Austin 3d Dist. Aug. 31, 2010),* op. withdrawn, sub. op., reh'g denied, *No. 03-10-00160-CV, 2011 Tex. App. LEXIS 446 (Tex. App. Austin 3d Dist. Jan. 21, 2011).*

Tex. *Gov't Code Ann. § 2001.174* expressly authorizes courts reviewing agency decisions to affirm in whole or in part, and requires courts to reverse or remand for further proceedings when an agency's errors deprive a party of substantial rights; an affirmance in part with a remand necessarily implies that the issues affirmed are resolved and that the remaining issues will be disposed of in some other way; otherwise, if a remand to an agency necessarily meant that all issues were subject to being re-litigated, there would be no point in the court affirming any portion of the agency ruling and no reason for the legislature to have included affirmance in part as an option for the court. *Freightliner Corp. v. Motor Vehicle Bd. of the Tex. DOT, 255 S.W.3d 356, 2008 Tex. App. LEXIS 3191 (Tex. App. Austin 3d Dist. May 1, 2008, no pet.).*

While Tex. *Gov't Code Ann. § 2001.174(2)* requires a reviewing court to reverse or remand a case for further proceedings in the face of agency error, it must be read in conjunction with Tex. *Gov't Code Ann. § 2001.174(1)*; reading these two sections together, a court does not construe Tex. *Gov't Code Ann. § 2001.174(2)* as a limitation on the court's ability in Tex. *Gov't Code Ann. § 2001.174(1)* to affirm an agency decision in whole or in part; instead, a reviewing court may affirm part of an agency's order while also reversing part of that same order. *Granek v. Tex. State Bd. of Med. Examiners, No. 03-07-00380-CV, 2008 Tex. App. LEXIS 2025 (Tex. App. Austin 3d Dist. Mar. 19, 2008).*

Remand for further administrative proceedings was proper under the primary jurisdiction doctrine after a trial court erred in denying a manufacturer's plea to the jurisdiction in a dealership transfer case; however, the remand order could not require the agency to act. *Ford Motor Co. v. Butnaru, 157 S.W.3d 142, 2005 Tex. App. LEXIS 465 (Tex. App. Austin 3d Dist. Jan. 21, 2005, no pet.)*.

Pursuant to Tex. *Water Code Ann. §§ 11.021(a)*, *11.022*, *11.121*, and *11.046(c)*, the Texas Commission on Environmental Quality incorrectly concluded that the city's effluent remained private groundwater that could be diverted without an appropriation permit; notwithstanding the city's stated intent not to abandon its effluent, the physical reality of the city's reuse project was that the effluent was abandoned to the public domain once the city discharged it into the San Marcos River where it was admittedly commingled and diluted by that state watercourse. *City of San Marcos v. Tex. Comm'n on Envtl. Quality, 128 S.W.3d 264, 2004 Tex. App. LEXIS 96 (Tex. App. Austin 3d Dist. Jan. 8, 2004, no pet.)*.

Tex. *Gov't Code Ann. § 2001.174(2)(D)* provides a catchall ground for reversal or remand to provide a remedy for one who has suffered an adverse administrative determination affected by some legal error other than those described in the other subcategories; such other error could conceivably occur during the administrative proceedings or afterward. *Tex. Dep't of Pub. Safety v. Story, 115 S.W.3d 588, 2003 Tex. App. LEXIS 6040 (Tex. App. Waco July 9, 2003, no pet.)*.

According to Tex. *Gov't Code Ann. § 2001.174(2)*, if the reviewing court finds any of the six categories of error listed and determines that such error prejudiced the substantial rights of the party seeking review, the court must reverse or remand the case for further proceedings: this means that the reviewing court may reverse the administrative law judge's decision and render judgment in favor of the party seeking review, or reverse the ALJ's decision and remand the cause for further proceedings. *Tex. Dep't of Pub. Safety v. Story, 115 S.W.3d 588, 2003 Tex. App. LEXIS 6040 (Tex. App. Waco July 9, 2003, no pet.)*.

In applying Tex. *Gov't Code Ann. § 2001.174(2)(D)*, the parties agreed that the reviewing court based its decision on an event which occurred after the ALJ rendered her decision. The statute encompassed events occurring after rendition of the ALJ's decision. *Tex. Dep't of Pub. Safety v. Story, 115 S.W.3d 588, 2003 Tex. App. LEXIS 6040 (Tex. App. Waco July 9, 2003, no pet.)*.

Trial court remanded for reconsideration the penalty of cancelling a bar's mixed beverage and late hours permits because two of the grounds for revocation of the license were not supported by substantial evidence, the determination did not require further evidence, and the appellate court found that the agency did not abuse its discretion in denying an evidentiary hearing pursuant to Tex. *Gov't Code Ann. § 2001.174(2)*. *Allen-Burch, Inc. v. Tex. Alcoholic Bev. Comm'n, 104 S.W.3d 345, 2003 Tex. App. LEXIS 3945 (Tex. App. Dallas May 7, 2003, no pet.)*.

Trial court was not authorized to reverse and vacate the public utilities commission's order where the commission exceeded its statutory authority in conducting transmission cost of service proceedings; rather, the trial court should have reversed and remanded the commission's order. *PUC of Tex. v. City Pub. Serv. Bd. of San Antonio, No. 03-02-00547-CV, 2003 Tex. App. LEXIS 3475 (Tex. App. Austin 3d Dist. Apr. 24, 2003)*, op. withdrawn, sub. op., *109 S.W.3d 130, 2003 Tex. App. LEXIS 4933 (Tex. App. Austin 3d Dist. June 12, 2003)*.

**Administrative Law: Judicial Review: Remedies: Declaratory Judgments**

Business owner could not bring claims for declaratory relief under *Tex. Civ. Prac. & Rem. Code Ann. § 37.004* against state agency regarding practicing cosmetology without a license as the owner had already sought judicial review of the agency decision under *Tex. Gov't Code Ann. § 2001.174*; the remedy would be redundant as the basis for both claims was that eyebrow threading did not fall within the definition of cosmetology in Tex. *Occ. Code Ann. § 1602.002(a)*, a proper basis for a claim for judicial review under *Tex. Gov't Code Ann. § 2001.174(2)(A)* & (B). *Kuntz v. Khan, No. 03-10-00160-CV, 2011 Tex. App. LEXIS 446 (Tex. App. Austin 3d Dist. Jan. 21, 2011)*.

## Administrative Law: Judicial Review: Reviewability: General Overview

Declaratory judgment action against the Texas State Board of Public Accountancy claiming that the Board's standards and principles were so unconstitutionally vague that they did not sufficiently identify what constituted a violation was redundant as auditors, who had their professional certificates revoked or suspended, had filed an administrative appeal under Tex. Occ. Code Ann. § 901.556(a). *Tex. State Bd. of Pub. Accountancy v. Bass, No. 03-09-00251-CV, 2011 Tex. App. LEXIS 294 (Tex. App. Austin 3d Dist. Jan. 14, 2011).*

Tex. *Water Code Ann. § 36.253* expressly incorporates *Tex. Gov't Code Ann. § 2001.174* and makes it applicable to appeals from orders made by groundwater districts. *In re Edwards Aquifer Auth., 217 S.W.3d 581, 2006 Tex. App. LEXIS 8934 (Tex. App. San Antonio Oct. 18, 2006),* reh'g denied, *No. 04-06-00254-CV, 2006 Tex. App. LEXIS 11291 (Tex. App. San Antonio Dec. 5, 2006).*

By refusing to strike the Edwards Aquifer Authority's jury demand and setting landowners' appeal of the Authority's permitting decision for a jury trial, a trial court failed to apply the law correctly and fundamentally altered the nature of the judicial review prescribed by statute because the Authority had a clear right to proceed to a final determination without a jury, pursuant to Tex. *Water Code Ann. § 36.253* and *Tex. Gov't Code Ann. § 2001.174* and *Tex. Gov't Code Ann. § 2001.175(e). In re Edwards Aquifer Auth., 217 S.W.3d 581, 2006 Tex. App. LEXIS 8934 (Tex. App. San Antonio Oct. 18, 2006),* reh'g denied, *No. 04-06-00254-CV, 2006 Tex. App. LEXIS 11291 (Tex. App. San Antonio Dec. 5, 2006).*

Under Tex. *Gov't Code Ann. § 2001.174*, the appellate court had to reverse when a substantial right had been prejudiced because the administrative decision was affected by an error of law; the administrative law judge erred in applying the law to the facts as she found them where no necessity justification existed at the time of the driver's arrest because his drive back to the scene was not in avoidance of any imminent harm. *Tex. Dep't of Pub. Safety v. Moore, 175 S.W.3d 270, 2004 Tex. App. LEXIS 4401 (Tex. App. Houston 1st Dist. May 13, 2004, no pet.).*

## Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies

In a medical license suspension case, the court erred by denying a doctor's motion for rehearing because the doctor timely filed a motion for rehearing giving the Board fair notice that he was dissatisfied with its conclusions that he failed to practice medicine in a manner consistent with public health and welfare and failed to treat a patient according to the generally accepted standard of care. *Johnson v. Tex. Med. Bd., No. 03-08-00006-CV, 2010 Tex. App. LEXIS 845 (Tex. App. Austin 3d Dist. Feb. 5, 2010).*

## Administrative Law: Judicial Review: Reviewability: Factual Determinations

Although certain facts found by the Texas Real Estate Commission in a licensee's disciplinary proceeding were disputed by the licensee, as they were irrelevant the Commission's ultimate conclusions of law were not based on them and the licensee's substantial rights were not prejudiced. *Garcia v. Tex. Real Estate Comm'n, No. 03-14-00349-CV, 2016 Tex. App. LEXIS 5638 (Tex. App. Austin 3d Dist. May 27, 2016).*

Examiner's recommendations constitute a part of "the record as a whole" that is the object of judicial review when a court considers substantial-evidence questions under Tex. *Gov't Code Ann. § 2001.174*, and may be considered in light of the pertinent evidence; but such recommendations are only entitled to such value as they intrinsically command when agency decisionmakers depart from them. *Exxon Corp. v. Railroad Comm'n, 993 S.W.2d 704, 142 Oil & Gas Rep. 165, 1999 Tex. App. LEXIS 1818 (Tex. App. Austin 3d Dist. Mar. 18, 1999, no pet.).*

Pursuant to the former Texas Administrative Procedure and Texas Register Act, Tex. Rev. Civ. Stat. Ann. § 19(e)(5), the evidence was sufficient for the Texas Water Commission (Commission) to deny applicant permits to construct and operate a hazardous waste facility, where the applicant proposed to store hazardous slurry in a salt dome cavern, where the applicant could not guarantee that the slurry would maintain proper contact with the cavern

walls, where the salt dome was structurally unstable, and where tow aquifers were located above the salt dome. *United Resource Recovery, Inc. v. Texas Water Com., 815 S.W.2d 797, 1991 Tex. App. LEXIS 2034 (Tex. App. Austin 3d Dist. Aug. 14, 1991, no writ).*

Trial court's provision of the alcohol permit application number in its judgment and finding that there was no late hours application did not constitute "judgment" within the meaning of former Tex. Rev. Civ. Stat. Ann. art. 6252-13a (now *Tex. Gov't Code Ann. § 2001.174*); the trial court's action did not constitute a substitution of its judgment for that of the County Judge, who had acted in an administrative capacity in reviewing an application for beer and wine licenses. *Alegna v. Texas Alcoholic Beverage Com., 731 S.W.2d 723, 1987 Tex. App. LEXIS 7422 (Tex. App. Houston 14th Dist. May 28, 1987, no writ).*

Though a suspension hearing for a dentist's license contained some irregularities, especially the in and out presence of the overseeing board's members who were involved in decision-making regarding the dentist's license, the appeals court upheld the board's determination to suspend the dentist's license for two years in the absence of a demonstration that there was no substantial justice and fair play; former Tex. Rev. Civ. Stat. Ann. art. 6252-13A, § 19(e) (now *Tex. Gov't Code Ann. § 2001.174*) required reversal if there was unlawful procedure resulting in prejudice to substantial rights. *1985 Tex. App. LEXIS 6216.*

**Administrative Law: Judicial Review: Reviewability: Final Order Requirement**

Because it was unclear whether Texas law would allow plaintiff landowners' inverse condemnation suit for a regulatory groundwater taking, and they had not pursued compensation in state court, their Fifth Amendment takings claim against defendant water district's directors was not ripe and was dismissed without prejudice. *Coates v. Hall, 512 F. Supp. 2d 770, 2007 U.S. Dist. LEXIS 17168 (W.D. Tex. 2007).*

**Administrative Law: Judicial Review: Reviewability: Jurisdiction & Venue**

> ***Overview:*** *In a case where the appellant argued that the trial court erred in reversing the administrative decision and reinstating the appellee's Security Identification Direct Access badge, the appellant failed to challenge the trial court's ruling that the Houston Airport System hearing officer's finding was not free from legal error.*

- In most administrative proceedings, a party dissatisfied with an administrative final order may appeal the decision by filing suit in a trial court for review under the substantial-evidence rule. *Tex. Gov't Code Ann. § 2001.174*

  *City of Houston v. Waldhoff, No. 01-22-00825-CV, 2023 Tex. App. LEXIS 6025 (Tex. App. Houston 1st Dist. Aug. 10, 2023).*

Fact that a nurse's suit for judicial review included a constitutional challenge to the procedure the Texas Board of Nursing followed in the underlying contested case did not excuse the nurse from compliance with the jurisdictional prerequisites to bringing suit for judicial review. *Otlena v. Tex. Bd. of Nursing, No. 03-14-00251-CV, 2015 Tex. App. LEXIS 8363 (Tex. App. Austin 3d Dist. Aug. 11, 2015).*

In an appeal concerning a rate supervision order issued by the Texas Commissioner of Insurance, which revoked an insurer's ability to file and use its insurance rates without prior approval from the Texas Department of Insurance, there was nothing in the order to suggest that it was not a final, completed agency action, where the only means of challenging the Commissioner's supervision order was to seek judicial review of the order, and, accordingly, the appellate court and the district court had jurisdiction to address the insurer's claims under Tex. Ins. Code Ann. ch. 36. Furthermore, several of the insurer's claims—that the actions for which the Commissioner placed it under supervision were not "rating practices," that the supervision order was arbitrary and capricious, that the

Commissioner acted outside his authority in issuing the supervision order, and that its due process rights were violated—did not require review of an administrative record, and all were authorized grounds for reversal or remand of a decision under the Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.051-.178. *Texas Dep't of Ins. v. State Farm Lloyds, 260 S.W.3d 233, 2008 Tex. App. LEXIS 5563 (Tex. App. Austin 3d Dist. July 24, 2008, no pet.).*

Remand for further administrative proceedings was proper under the primary jurisdiction doctrine after a trial court erred in denying a manufacturer's plea to the jurisdiction in a dealership transfer case; however, the remand order could not require the agency to act. *Ford Motor Co. v. Butnaru, 157 S.W.3d 142, 2005 Tex. App. LEXIS 465 (Tex. App. Austin 3d Dist. Jan. 21, 2005, no pet.).*

When providing an independent right to judicial review in Tex. *Gov't Code Ann. § 2001.171* of the Texas Administrative Procedure Act, the legislature has necessarily understood that state agencies will be sued in court by persons exercising that right, that contested-case decisions of those agencies will be judicially reviewed under the standards set forth in Tex. *Gov't Code Ann. § 2001.174*, and that the challenged administrative decisions will be either affirmed, reversed, or remanded as provided by § 2001.174. Therefore, Tex. *Gov't Code Ann. § 2001.171* provides a limited waiver of sovereign immunity. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 2004 Tex. LEXIS 780 (Tex. 2004).*

Reviewing court has no authority under former Tex. Rev. Civ. Stat. Ann. art. 6252-13a § 19(e) or § 19(d)(2) (now *Tex. Gov't Code Ann. § 2001.174*) to retain jurisdiction of an appeal after it has already determined that errors of the administrative agency have substantially prejudiced the rights of the appellant. *Railroad Com. of Texas v. Home Transp. Co., 654 S.W.2d 432, 1983 Tex. LEXIS 326 (Tex. 1983).*

**Administrative Law: Judicial Review: Reviewability: Preservation for Review**

Fact that a nurse's suit for judicial review included a constitutional challenge to the procedure the Texas Board of Nursing followed in the underlying contested case did not excuse the nurse from compliance with the jurisdictional prerequisites to bringing suit for judicial review. *Otieno v. Tex. Bd. of Nursing, No. 03-14-00251-CV, 2015 Tex. App. LEXIS 8363 (Tex. App. Austin 3d Dist. Aug. 11, 2015).*

**Administrative Law: Judicial Review: Reviewability: Questions of Law**

Though a suspension hearing for a dentist's license contained some irregularities, especially the in and out presence of the overseeing board's members who were involved in decision-making regarding the dentist's license, the appeals court upheld the board's determination to suspend the dentist's license for two years in the absence of a demonstration that there was no substantial justice and fair play; former Tex. Rev. Civ. Stat. Ann. art. 6252-13A, § 19(e) (now *Tex. Gov't Code Ann. § 2001.174*) required reversal if there was unlawful procedure resulting in prejudice to substantial rights. *1985 Tex. App. LEXIS 6216.*

**Administrative Law: Judicial Review: Standards of Review**

**Overview:** *Under Tex. Gov't Code Ann. § 2001.174(2), the appellee did not satisfy her burden to show her substantial rights were prejudiced by the decision to suspend her license because she failed to explain how she was prejudiced by the delay in proceedings, how her due process rights were violated, or how she was denied her right to her day in court.*

- Under *Tex. Gov't Code Ann. § 2001.174(2)*, one of the conditions that must be satisfied is that the agency's challenged findings, inferences, conclusions, or decisions must prejudice a party's substantial rights.

*Tex. Dep't of Pub. Safety v. Zabroky, No. 04-22-00162-CV, 2023 Tex. App. LEXIS 148 (Tex. App. San Antonio Jan. 11, 2023).*

*Overview: There was a reasonable basis for the Texas Medical Board's conclusion that a physician's medical recordkeeping violated board rules when the ALJ found that the physician failed to document a genital examination, did not adequately document trigger point injections, and failed to clearly document his rationale for discontinuing two pain medications.*

- An appellate court cannot substitute its judgment for that of the agency by reweighing the evidence on questions related to the agency's decision. Tex. Gov't Code Ann. § 2001.174.

*Leonard v. Tex. Med. Bd., 656 S.W.3d 456, 2022 Tex. App. LEXIS 7960 (Tex. App. El Paso Oct. 26, 2022, no pet.).*

*Overview: Tex. Health & Safety Code Ann. § 382.052 required the Texas Commission on Environmental Quality, in reviewing an application under Tex. Health & Safety Code Ann. § 382.05198 for a standard air-quality permit to construct a concrete batch plant near a school, to consider the school's proximity. Substantial evidence showed that it did so.*

- As the language makes clear, Tex. Gov't Code Ann. § 2001.174 applies in contested cases, and it is not always clear what standard applies in reviewing an uncontested case. The substantial-evidence test evolved as an evidentiary mechanism for determining the arbitrariness and invalidity of agency orders. In the absence of statutory guidance, Texas courts have ruled inconsistently on whether the substantial-evidence analysis applies to an agency record that has not been developed through contested-case or other trial-like processes.

Boerne to Bergheim Coal. for Clean Envä___ t v. Tex. Comm'n on Envä___ t *Quality, 2022 Tex. App. LEXIS 5932 (August 16, 2022).*

Because Tex. Gov't Code Ann. § 2001.174 prohibits a court from substituting its judgment for a state agency's judgment on the weight of the evidence on questions committed to agency discretion, the trial court did not have the authority to reduce the Texas Alcoholic Beverage Commission's sanction suspending the bar's permit. *CJSA, Ltd. v. Texas Alcoholic Bev. Comm'n, No. 04-99-00862-CV, No. 04-00-00513-CV, 2001 Tex. App. LEXIS 1674 (Tex. App. San Antonio Mar. 14, 2001).*

Under the Administrative Procedure Act, specifically Tex. Gov't Code Ann. § 2001.174, a reviewing court acts in an appellate capacity and may not substitute its judgment for that of the agency. *Cash Am. Int'l, Inc. v. Bennett, 35 S.W.3d 12, 2000 Tex. LEXIS 82 (Tex. 2000).*

**Administrative Law: Judicial Review: Standards of Review: General Overview**

Two cities were properly denied party status in a contested case to consider the Texas Commission on Environmental Quality's issuance of a permit for appellant to operate a municipal solid-waste transfer station, because neither city sufficiently demonstrated that any legally protected interests would likely be affected by issuance of the permit or how those interests were not common to members of the general public. Therefore, the trial court erred in reversing the Commission's final order because the Commission did not commit any reversible error in denying party status to the cities and issuing the permit. *Tex. Comm'n on Envtl. Quality v. City of Aledo, No. 03-13-00113-CV, 2015 Tex. App. LEXIS 6940 (Tex. App. Austin 3d Dist. July 8, 2015).*

Where the Texas Railroad Commission entered a final order cancelling an extension of time to plug inactive wells, the Commission's legal conclusion regarding the meaning of the term "operations" in the unit agreement was not in erroneous. The plain language of the unit agreement limited the scope of unit operations to those activities that were taken in connection with producing oil and gas; appellant's testing and repair work that was performed on inactive wells did not constitute good-faith endeavors to produce oil and gas. *Roland Oil Co. v. R.R. Comm'n of Tex., No. 03-12-00247-CV, 2015 Tex. App. LEXIS 1906 (Tex. App. Austin 3d Dist. Feb. 27, 2015).*

Where the Texas Railroad Commission entered a final order cancelling an extension of time to plug inactive wells, the Commission correctly determined that the unit agreement's force majeure clause was not triggered by the

Commission's order of severance that required appellant to stop production because it was within appellant's reasonable control. The only reasonable interpretation of the force majeure clause was that any potential triggering event had to be beyond the party's reasonable control. *Roland Oil Co. v. R.R. Comm'n of Tex., No. 03-12-00247-CV, 2015 Tex. App. LEXIS 1906 (Tex. App. Austin 3d Dist. Feb. 27, 2015)*.

There is no provision in *Tex. Gov't Code Ann. § 2001.174(2)* for a reviewing court to render a different judgment from an administrative law judge's (ALJ) decision or to modify an order of the ALJ. *Tex. Dep't of Pub. Safety v. Hudson, No. 05-10-01129-CV, 2012 Tex. App. LEXIS 1148 (Tex. App. Dallas Feb. 13, 2012)*.

Record contained evidence regarding groundwater flow that a reasonable mind could accept as supporting the conclusion that the flow was north-northeast, and absent prejudice to the group's substantial rights, reversal of the order was not warranted. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012)*, op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012)*.

Court could not see how a group's rights were prejudiced by the addition of extra groundwater-monitoring wells to monitor a stratum that was not required to be monitored, and the Texas Commission on Environmental Quality has the authority, under *Tex. Gov't Code Ann. §§ 2001.060, 2001.062(d)*, 30 Tex. Admin. Code § 80.259, and case law, to add special provisions to municipal-solid-waste permits after the evidentiary hearing has concluded so long as the decision to add the special provisions does not prejudice substantial rights. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012)*, op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012)*.

Group claimed, for purposes of *Tex. Gov't Code Ann. § 2001.174(2)(E)*, that its substantial rights had been prejudiced by the addition of extra groundwater monitoring wells, but the court did not see how the group was harmed by the adoption of a permit that provided more monitoring than was required; the company's groundwater-monitoring system as originally submitted, without additional monitoring, complied with *30 Tex. Admin. Code § 330.231(a)*. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012)*, op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012)*.

Driver's license suspension was proper because the facts established probable cause that the licensee was operating a motor vehicle in a public place while intoxicated for purposes of *Tex. Transp. Code Ann. § 724.042*; witnesses at an accident scene reported that a pickup had rear-ended another vehicle and driven away, a license plate at the scene was matched to the licensee's pickup, which was later found abandoned with front end damage, and according to the licensee's wife, the licensee called her to pick him up near the site of the abandoned pickup. After the wife drive the licensee to the sheriff's office, a trooper and others observed the licensee and detected an odor of an alcoholic beverage on his breath. *Tex. Dep't of Pub. Safety v. Allen, No. 07-10-0271-CV, 2011 Tex. App. LEXIS 4268 (Tex. App. Amarillo June 3, 2011)*.

There was sufficient evidence for the administrative judge to uphold the suspension of the driver's license, because the driver was speeding and veering back and forth, an odor of alcohol emanated from inside the car, the driver's eyes were bloodshot and glassy, the driver's speech was slurred, the driver was unable to complete the one-leg-stand test and he exhibited six clues of intoxication on the walk-and-turn test, and the driver displayed clues of intoxication on the horizontal gaze nystagmus test and the vertical nystagmus test. *Tex. Dep't of Pub. Safety v. Williams, 303 S.W.3d 356, 2009 Tex. App. LEXIS 9708 (Tex. App. El Paso Dec. 23, 2009, no pet.)*.

Court erred in agreeing with the Texas Department of Insurance that self-funded plans were not insurers under Texas law, because the stop-loss insurance was reinsurance, when the companies did not make coverage decisions with respect to individuals insured by the plans and had no contractual relationship with the individuals insured by the plans and could not be sued by them, all losses were handled by the plans and then sent to the companies for indemnification, and since the stop-loss insurance sold to self-funded plans was reinsurance, *28 Tex.*

Admin. Code §§ 3.4002 and 3.4004(e)(2)(J) and former Tex. Ins. Code Ann. art. 3.42 did not apply to the companies. Am. Nat'l Ins. Co. v. Tex. Dep't of Ins., No. 03-08-00535-CV, 2009 Tex. App. LEXIS 9647 (Tex. App. Austin 3d Dist. Dec. 16, 2009), op. withdrawn, sub. op., 364 S.W.3d 299, 2010 Tex. App. LEXIS 3005 (Tex. App. Austin 3d Dist. Apr. 22, 2010).

For purposes of Tex. Transp. Code Ann. § 724.042, there was substantial evidence to support the administrative law judge's findings that probable cause existed to stop and arrest a driver, that probable cause existed to believe that he was operating a motor vehicle in a public place while intoxicated, and that he was placed under arrest and was requested to submit to the taking of a breath specimen and refused to do so; thus, the trial court erred to the extent it substituted its judgment for the administrative law judge on those matters, for purposes of Tex. Gov't Code Ann. § 2001.174, and the error prejudiced the Texas Department of Public Safety's substantial rights. The court affirmed the suspension of the driver's license by the administrative law judge. Tex. Dep't of Pub. Safety v. Woods, No. 03-09-00014-CV, 2009 Tex. App. LEXIS 6133 (Tex. App. Austin 3d Dist. Aug. 6, 2009).

Administrative suspension of an operator's license was not subject to reversal based on a clerical error made by an administrative law judge (ALJ) because it did not affect an operator's substantial rights; the ALJ relied on an improper date of arrest. Tex. Dep't of Pub. Safety v. Gonzales, 276 S.W.3d 88, 2008 Tex. App. LEXIS 7985 (Tex. App. San Antonio Oct. 22, 2008, no pet.).

Motorist was incorrect that, because the trial court made no findings or conclusions, its decision had to be affirmed on any theory finding support in the evidence. Reviewing courts reviewing administrative decisions, like the suspension of the motorist's license under Tex. Transp. Code Ann. § 724.042, had to comply with Tex. Gov't Code Ann. § 2001.174. Tex. Dep't of Pub. Safety v. Perkins, No. 01-04-00093-CV, 2004 Tex. App. LEXIS 10833 (Tex. App. Houston 1st Dist. Dec. 2, 2004).

In connection with a hearing to review the suspension of a motorist's driver's license, the motorist failed to object to the introduction of an officer's report on the ground that the officer was absent, and thus, the motorist waived this issue, but assuming that a supervisor's report and intoxilyzer record were improperly admitted, the admission of the officer's report rendered any such error harmless because the primary source of the evidence relevant to and supporting the factual issues before the administrative law judge was the officer's report. Most of the information in the supervisor's report and intoxilyzer record was also reported in the officer's report, and thus the motorist was not prejudiced by the error, if any, pursuant to Tex. Gov't Code Ann. § 2001.174. Reisel v. Tex. Dep't of Pub. Safety, No. 04-04-00002-CV, 2004 Tex. App. LEXIS 8596 (Tex. App. San Antonio Sept. 29, 2004).

Trial court did not err in limiting a state medical board of examiner's consideration to the administrative law judge record on remand; the instructions did not conflict with the provision of Tex. Gov't Code Ann. § 2001.174 of the Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.001-.902. Tex. State Bd. of Med. Examiners v. Dunn, No. 03-03-00180-CV, 2003 Tex. App. LEXIS 9833 (Tex. App. Austin 3d Dist. Nov. 20, 2003).

Administrative error will not be grounds for reversal or remand unless the appellant's substantive rights have been prejudiced under Tex. Gov't Code Ann. § 2001.174(2).. BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).

Appellate review under Tex. Gov't Code Ann. § 2001.174(f), ensures that an agency does not act arbitrarily or without regard to the facts. BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).

Under Tex. Gov't Code Ann. § 2001.174, an appellate court reviews the legal conclusions of the Motor Vehicle Board of the Texas Department of Transportation for errors of law, and the court reviews the board's findings of fact for support by substantial evidence. BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).

Because contested-case hearings before the Motor Vehicle Board of the Texas Department of Transportation are heard under the APA without a specified standard of review, the substantial evidence rule applies under Tex. Gov't

Code Ann. § 2001.174. *BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).*

When the trial court entertains a suit for judicial review of a department of insurance decision that is brought under *Tex. Ins. Code Ann. §§ 36.201-.05* and *Tex. Gov't Code Ann. §§ 2001.171,.174*, the trial court is authorized to reverse the case under *Tex. Gov't Code Ann. § 2001.174(2)(A)* and (D), if the agency's findings, inferences, conclusions, or decisions are characterized by abuse of discretion, in violation of a statutory provision, or affected by another error of law. *Serv. Lloyds Ins. Co. v. Montemayor, 108 S.W.3d 454, 2003 Tex. App. LEXIS 4318 (Tex. App. Austin 3d Dist. May 22, 2003, no pet.).*

To secure a reversal a party needs to show that the agency committed an error of law and relating prejudice to the appellant's substantial rights under Tex. *Gov't Code Ann. § 2001.174*; where there is an error of law, it does not necessarily follow that there is also demonstrable prejudice to substantial rights. *DOT v. Jones Bros. Dirt & Paving Contrs., 24 S.W.3d 893, 2000 Tex. App. LEXIS 4920 (Tex. App. Austin 3d Dist. July 27, 2000)*, rev'd, *92 S.W.3d 477, 2002 Tex. LEXIS 101 (Tex. 2002).*

In reviewing administrative license suspension decisions under the substantial evidence standard in *Tex. Transp. Code Ann. § 524.041* and *Tex. Gov't. Code Ann. § 2001.174*, the reviewing court may not substitute its judgment for that of the agency. The issue for the court is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action as shown by a "scintilla" of evidence. *Mireles v. Texas Dep't of Pub. Safety, 9 S.W.3d 128, 1999 Tex. LEXIS 125 (Tex. 1999).*

The Administrative Procedure Act (Act), Tex. *Gov't Code Ann. § 2001.174*, which empowered the Board of Trustees of the Employees Retirement System of Texas to prepare coverage specifications made under the Act, was construed in a manner that entitled the trustees' interpretation of policy exclusions to be given judicial respect regarding any uncertainty where the interpretation was reasonable; the finding that an optometrist's "vision therapy treatments" fell within the policy exclusion of "orthoptics or visual training" was held to be reasonable. *McMullen v. Employees Retirement Sys., 935 S.W.2d 189, 1996 Tex. App. LEXIS 5142 (Tex. App. Austin 3d Dist. Nov. 20, 1996, no writ).*

**Administrative Law: Judicial Review: Standards of Review: Abuse of Discretion**

In appeal arising out of suit for judicial review of administrative order, administrative decision was clearly unwarranted exercise of discretion because plaintiff's substantial rights were prejudiced. It was forced to attend three-day hearing and use its resources trying case when dispute had already been settled by the agreement. *Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex., No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022).*

Administrative law judge (ALJ) did not err in quashing the driver's subpoena of the arresting officer in the administrative license suspension proceeding, because the ALJ's application of the 150-mile limit in *Tex. R. Civ. P. 176.3* was not an abuse of discretion; the ALJ was expressly authorized to consider the Texas Rules of Civil Procedure. *Hodge v. Tex. Dep't of Pub. Safety, No. 01-12-00259-CV, 2012 Tex. App. LEXIS 10526 (Tex. App. Houston 1st Dist. Dec. 20, 2012)*, op. withdrawn, sub. op., *No. 01-12-00259-CV, 2013 Tex. App. LEXIS 11086 (Tex. App. Houston 1st Dist. Aug. 29, 2013).*

Texas Commission on Environmental Quality's conclusion that a coalition was not an affected person was made through improper procedure, was affected by error of law, and was an abuse of discretion under *Tex. Gov't Code Ann. § 2001.174(2)(C)*, (D), (F); the court reversed. *Bosque River Coalition v. Tex. Comm'n on Envtl. Quality, 347 S.W.3d 366, 2011 Tex. App. LEXIS 6043 (Tex. App. Austin 3d Dist. Aug. 2, 2011)*, pet. withdrawn *No. 11-0737, 2013 Tex. LEXIS 74 (Tex. Feb. 1, 2013)*, rev'd, *413 S.W.3d 403, 2013 Tex. LEXIS 773 (Tex. 2013).*

Because coalition members' property was along the creek in close proximity to the dairy in question, discharges into water would impact them differently from the general public; to the extent the Texas Commission on Environmental

Quality's denial of the coalition's hearing request was based on an implied determination that the dairy's contributions of waste to the creek under the amended permit would have no impact on water quality, the denial was an abuse of discretion. *Bosque River Coalition v. Tex. Comm'n on Envtl. Quality, 347 S.W.3d 366, 2011 Tex. App. LEXIS 6043 (Tex. App. Austin 3d Dist. Aug. 2, 2011)*, pet. withdrawn *No. 11-0737, 2013 Tex. LEXIS 74 (Tex. Feb. 1, 2013)*, rev'd, *413 S.W.3d 403, 2013 Tex. LEXIS 773 (Tex. 2013)*.

When the trial court entertains a suit for judicial review of a department of insurance decision that is brought under *Tex. Ins. Code Ann. §§ 36.201-.05* and *Tex. Gov't Code Ann. §§ 2001.171,.174*, the trial court is authorized to reverse the case under *Tex. Gov't Code Ann. § 2001.174(2)(A)* and (D), if the agency's findings, inferences, conclusions, or decisions are characterized by abuse of discretion, in violation of a statutory provision, or affected by another error of law. *Serv. Lloyds Ins. Co. v. Montemayor, 106 S.W.3d 454, 2003 Tex. App. LEXIS 4318 (Tex. App. Austin 3d Dist. May 22, 2003, no pet.)*.

Since the Texas Legislature had expressed no intent that the Texas Department of Public Safety (DPS) be penalized for the failure of an officer to submit a report within the five-day deadline of *Tex. Transp. Code Ann. § 724.032(c)(4)*, the failure of an officer to comply with the statute did not render the report inadmissible at an administrative hearing, and the judgment that the evidence was insufficient to authorize suspension of the driver's license was reversed and remanded because the erroneous exclusion of exhibits prejudiced the DPS's substantial rights since the administrative law judge denied the DPS the opportunity to satisfy its evidentiary burden at the license suspension hearing. *Tex. Dep't of Pub. Safety v. Kimbrough, 106 S.W.3d 747, 2003 Tex. App. LEXIS 3566 (Tex. App. Fort Worth Apr. 24, 2003, no pet.)*.

Under the Administrative Procedure Act, specifically Tex. *Gov't Code Ann. § 2001.174*, a reviewing court acts in an appellate capacity and may not substitute its judgment for that of the agency. *Cash Am. Int'l, Inc. v. Bennett, 35 S.W.3d 12, 2000 Tex. LEXIS 82 (Tex. 2000)*.

**Administrative Law: Judicial Review: Standards of Review: Arbitrary & Capricious Review**

>   ***Overview:*** *The court reasoned that the additional permit requirements ordered by the Commission did not rely on outside-the-record facts, but rather extended existing facility design features that were already considered during the hearing to provide the same level of groundwater protection.*

- A court reviews the Texas Railroad Commission's decision in a contested case under the substantial evidence standard of review codified in the Administrative Procedure Act. *Tex. Gov't Code § 2001.174*; Tex. *Nat. Res. Code § 102.111*. This is a limited standard of review that gives significant deference to the agency in its field of expertise. The reviewing court may reverse the Commission's decision only if the appealing party's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole or are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code § 2001.174(2)(E)-(F)*. Judicial review of the Commission's decision is based on the administrative record. Tex. *Nat. Res. Code § 102.111*.

>   *HR Martin Cnty. Landfill, LLC v. Mabee, No. 01-23-00036-CV, 2024 Tex. App. LEXIS 9040 (Tex. App. Houston 1st Dist. Dec. 31, 2024)*.

>   ***Overview:*** *By reading the required statutory and Miranda warnings, including under Tex. Transp. Code Ann. § 724.015, officers did all that was necessary under Texas law; officers were not required to inform arrested persons that having an attorney present was not an option in deciding whether to submit to a breath test, even where a defendant became confused.*

- On appeal of an administrative driver's license suspension to county court, review is based on the substantial evidence rule. 1 Tex. Admin. Code § 159.37(d). In reviewing a decision under the substantial evidence rule, a court may not substitute its judgment for that of the state agency on the weight of the evidence. Tex. Gov't Code Ann. § 2001.174. The court should reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure;(D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2).

Tex. Dep't of Pub. Safety v. Bruce, 694 S.W.3d 822, 2024 Tex. App. LEXIS 2691 (Tex. App. Houston 14th Dist. Apr. 18, 2024, no pet.).

**Overview:** In a water pollution case, substantial evidence supported appellee's findings of appellant's violation of Tex. Water Code Ann. § 26.121(a)(2) because the investigator observed stockpiles of mined rocks, excavation equipment, and a pump with a hose that extended from the pit to the creek.

- The appellate court reviews the Texas Commission on Environmental Quality's (TCEQ) orders under the substantial evidence rule to determine whether the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions violate a constitutional or statutory provision; in excess of the agency's statutory authority; made through unlawful procedure; affected by other error of law; not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2)(A)-(F); Tex. Water Code Ann. § 7.064. The court's inquiry into whether an agency's decision meets this standard considers whether the evidence supports the agency's determination, asking not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

Tex. Architectural Aggregate, Inc. v. Tex. Comm'n on Env't Quality, No. 03-22-00169-CV, 2023 Tex. App. LEXIS 9152 (Tex. App. Austin 3d Dist. Dec. 7, 2023).

**Overview:** Because the Texas Commission on Environmental Quality failed to justify its deviation from its policy of adhering to earlier permit limits, it acted arbitrarily and capriciously.

- Under Texas law, the only issue for a reviewing court to decide is whether the Commission's action is invalid, arbitrary, or unreasonable. Tex. Health & Safety Code Ann. § 382.032(e). Texas courts interpret this statute to incorporate the standard of review under the Texas Administrative Procedure Act (APA). Under the Texas APA, a court shall reverse or remand the case if the agency's findings, inferences, conclusions, or decisions are, inter alia, not reasonably supported by substantial evidence or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. §§ 2001.174(2)(E),(F). Whether that standard is met is a question of law reviewed de novo. Whether the Commission failed to follow its own rules presents a question of law and is therefore subject to de novo review.

Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality, 86 F.4th 653, 53 Envtl. L. Rep. 20176, 2023 U.S. App. LEXIS 30309 (5th Cir. 2023).

**Overview:** *Court denied appellant's motion to take judicial notice because the trial court considered former Tex. Water Code Ann. § 13.254(a-5) not as evidence but as legal authority and other documents were not admitted in the underlying administrative proceeding, per Tex. Gov't Code Ann. § 2001.175(c).*

- Judicial review of the Public Utility Commission's final order is by the substantial evidence standard of review. ex. Water Code Ann. §§ 13.002(16) and 13.381. Under this standard, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence or questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174. The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness. But the reviewing court must reverse or remand the case to the state agency for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2).

HMW Special Util. Dist. & Montgomery Counties v. PUC of Tex., No. 03-21-00234-CV, 2023 Tex. App. LEXIS 1190 (Tex. App. Austin 3d Dist. Feb. 24, 2023).

**Overview:** *Substantial evidence supported Texas Railroad Commission's decision that appellee was not affected person with standing to challenge waste disposal well permit applications, under 16 Tex. Admin. Code § 3.9(5)(E)(ii), because evidence was such that reasonable minds could differ regarding whether waste injected into disposal wells would migrate.*

- In addition to the traditional substantial evidence standard, an agency decision shall be reversed if it is in violation of a constitutional or statutory provision, is affected by other error of law, or is arbitrary and capricious. Tex. Gov't Code Ann. § 2001.174(2)(A), (D)-(F). However, these bases for reversal of an agency decision still require the challenging party to demonstrate that the agency decision has prejudiced its substantial rights. Courts have determined that an agency acts arbitrarily when it does not appear that the agency has engaged in reasoned decision making, or when the agency's action or decision denies a party due process.

R.R. Comm'n of Tex. v. Apache Corp., No. 07-22-00014-CV, 2023 Tex. App. LEXIS 1052 (Tex. App. Amarillo Feb. 21, 2023), review granted, vacated, dismissed, No. 23-0264, 2024 Tex. LEXIS 166 (Tex. Feb. 23, 2024).

**Overview:** *The Texas Commissioner of Education erred in reversing a school board's termination of a teacher's continuing employment contract for anti-immigrant remarks. The board's conclusions of law on good cause under Tex. Educ. Code Ann. §§ 21.154(4), 21.156(a) satisfied Tex. Educ. Code Ann. § 21.259(a)(1), (d), and substantial evidence supported them.*

- In reviewing a district court's judgment on appeal from a decision of the Texas Commissioner of Education, an appellate court focuses on the decision of the Commissioner. The appellate court may not reverse the decision of the Commissioner unless the decision was not supported by substantial evidence or unless the Commissioner's conclusions of law are erroneous. Tex. Educ. Code Ann. § 21.307(f). Under substantial-evidence review, the appellate court shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2).

*Clark v. Fort Worth Indep. Sch. Dist.*, No. 03-21-00275-CV, 2023 Tex. App. LEXIS 430 (Tex. App. Austin 3d Dist. Jan. 25, 2023).

**Overview:** *Under Tex. Gov't Code Ann. § 2001.174(2), the appellee did not satisfy her burden to show her substantial rights were prejudiced by the decision to suspend her license because she failed to explain how she was prejudiced by the delay in proceedings, how her due process rights were violated, or how she was denied her right to her day in court.*

- In an appeal from an agency's final order, both the trial court and the appellate court must review the agency's decision under the substantial evidence rule codified in the Administrative Procedure Act, *Tex. Gov't Code Ann. § 2001.174*. Under this rule, the appellate court must reverse or remand an agency decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

*Tex. Dep't of Pub. Safety v. Zabroky*, No. 04-22-00162-CV, 2023 Tex. App. LEXIS 146 (Tex. App. San Antonio Jan. 11, 2023).

**Overview:** *Order issued by Board of Texas Department of Motor Vehicles denying appellant's protest of appellee's application to establish new automobile dealership in Austin, Texas was proper because order complied with Tex. Gov't Code Ann. § 2301.711(b)(3)'s requirement that Board give the reasons for denial.*

- An appellate court reviews the of the Texas Department of Motor Vehicles' final order and its good cause determination under the substantial evidence rule. Tex. *Occ. Code Ann. § 2301.751(a); Tex. Gov't Code Ann. § 2001.174(2)(A)*. This standard requires that we reverse or remand a case for further proceedings in the following circumstances: If substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:(A) in violation of a constitutional or statutory provision;(B) in excess of the agency's statutory authority;(C) made through unlawful procedure;(D) affected by other error of law;(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

*Cont'l Imps., Inc. v. Mercedes-Benz USA, LLC*, No. 03-21-00377-CV, 2023 Tex. App. LEXIS 64 (Tex. App. Austin 3d Dist. Jan. 6, 2023).

**Overview:** *County court erred when it reversed decision finding probable cause existed to arrest defendant for operating a motor vehicle on a public roadway while intoxicated, Tex. Transp. Code Ann. § 724.042(2), because substantial evidence supported that finding, including that defendant was speeding, and had glassy eyes, poor balance, and slurred speech.*

- Judicial review of administrative license-suspension decisions is governed by a substantial evidence standard. When reviewing an administrative decision under the substantial evidence rule, the reviewing court may affirm the administrative decision in whole or in part. *Tex. Gov't Code Ann. § 2001.174(1)*. However, it must reverse or remand the case if the challenger's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (A) in violation of a constitutional or statutory provision, (B) in excess of the agency's statutory authority, (C) made through an unlawful procedure, (D) affected by other error of law, (E) not reasonably supported by substantial evidence when considering the reliable and probative evidence in the record as a whole, or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. § 2001.174(2).

*Tex. Dep't of Pub. Safety v. Ford*, No. 01-22-00102-CV, 2022 Tex. App. LEXIS 9551 (Tex. App. Houston 1st Dist. Dec. 29, 2022).

**Overview:** *Texas Commission on Environmental Quality (TCEQ) correctly approved the city's application for a permit to discharge treated wastewater into a country creek under Tex. Water Code Ann. § 26.027(a)-(b), as substantial evidence supported TCEQ's conclusion that Tier 1 standard was met as city's proposed discharge would not impact existing aquatic life.*

- The Administrative Procedure Act governs appellate review of agency decisions; generally a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174.* Nonetheless, a court may reverse or remand an agency order if the substantial rights of a party are prejudiced by administrative findings or decisions that are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2).*

*Tex. Comm'n on Envtl. Quality v. Save Our Springs Alliance*, 668 S.W.3d 710, 2022 A.M.C. 445, 2022 Tex. App. LEXIS 9053 (Tex. App. El Paso Dec. 13, 2022, no pet.).

**Overview:** *Appellants had not shown the Board prejudiced its substantial rights as to the Tex. Occ. Code Ann. § 2301.468 claim by adopting the ALJ's conclusion as the record showed the Board considered all the evidence presented at the hearing, weighed the evidence, and reached a reasonable conclusion— appellant failed to prove unreasonable discrimination.*

- The highly deferential substantial evidence standard of the Texas Administrative Procedure Act (APA) governs our judicial review of the Board's final order. *Tex. Gov't Code Ann. § 2001.174.* The APA authorizes reversal or remand of an agency's decision that prejudices an appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision; (2) exceed the agency's statutory authority; (3) were made through unlawful procedure; (4) are affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(A)-(D), (F).*

*New World Car Nissan, Inc. v. Hyundai Motor Am.*, 656 S.W.3d 754, 2022 Tex. App. LEXIS 8681 (Tex. App. El Paso Nov. 29, 2022, no pet.).

**Overview:** *There was a reasonable basis for the Texas Medical Board's conclusion that a physician's medical recordkeeping violated board rules when the ALJ found that the physician failed to document a genital examination, did not adequately document trigger point injections, and failed to clearly document his rationale for discontinuing two pain medications.*

- An appellate court may reverse or remand an agency's decision if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174.* This is essentially a rational-basis test in which the appellate court determines whether the agency's order finds reasonable support in the record as a matter of law. The party challenging the order has the burden of demonstrating a lack of substantial evidence. Because the focus is on the agency's decision, the appellate court gives no deference to the trial court's judgment. A reviewing court cannot substitute its judgment for that of the agency by considering the weight of the evidence on

questions related to the agency's decision. § 2001.174. In short, the appellate court may reverse the agency's findings and conclusions only if there is no reasonable basis in the evidence for them.

Leonard v. Tex. Med. Bd., 656 S.W.3d 456, 2022 Tex. App. LEXIS 7960 (Tex. App. El Paso Oct. 26, 2022, no pet.).

**Overview:** *Trial court erred in reversing Commissioner's order granting appellant's permit application because appellees failed to establish that requested information was necessary to fair adjudication of the case and failed to demonstrate exactly how lack of information impaired presentation of case on merits to the point that unjust result was real threat.*

- There are also narrow circumstances in which an agency decision can be reversed as arbitrary and capricious even though it is supported by substantial evidence. *Tex. Gov't Code Ann. § 2001.174(2)(F)*. The finding of an act, which is supported by substantial evidence, to be arbitrary and capricious must be based on a violation of due process or some other unfair or unreasonable conduct that shocks the conscience.

Tex. Comm'n on Env't Quality v. Friends of Dry Comal Creek, No. 03-21-00204-CV, 2022 Tex. App. LEXIS 7254 (Tex. App. Austin 3d Dist. Sept. 29, 2022), op. withdrawn, sub. op., 669 S.W.3d 505, 2023 Tex. App. LEXIS 2127 (Tex. App. Austin 3d Dist. Mar. 31, 2023).

**Overview:** *Because an insurance carrier took final action on a medical bill and request for reconsideration, the provider requested medical fee dispute resolution, and the bill and request were timely filed, the provider did not forfeit its right to reimbursement for failure to timely submit a claim for payment, Tex. Lab. Code Ann. § 408.027(a).*

- An appellate court's review of a State Office of Administrative Hearings order is governed by the substantial evidence rule. *Tex. Gov't Code Ann. § 2001.174*, Texas Workers' Compensation Act, Tex. *Lab. Code Ann. § 410.255(b)*. Under that standard, the court of appeals must reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*. When applying the substantial evidence rule, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174*. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.

Facility Ins. Corp. v. Patients Med. Ctr., No. 03-17-00666-CV, 2022 Tex. App. LEXIS 6823 (Tex. App. Austin 3d Dist. Sept. 8, 2022).

**Overview:** *Texas Commission on Environmental Quality did not err in its findings that competitor's proposed discharge point was not within regional area as defined by 30 Tex. Admin. Code § 351.61(2) as, in part, § 351.61(2) intended to limit regional area to vicinity of five cities and air force base, and substantial evidence supported Commission's findings.*

- An appellate court's review of the Texas Commission on Environmental Quality's final order is governed by *Tex. Gov't Code Ann. § 2001.174. Tex. Gov't Code Ann. § 2001.174*. That standard requires that the court reverse or remand a case for further proceedings only if substantial rights of appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions: (A) violate constitutional or statutory provisions, (B) exceed the agency's statutory authority, (C) were made through unlawful procedure, (D) are affected by other error of law, (E) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) are arbitrary or capricious or characterized by abuse of discretion of clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(A)-(F)*.

*City of Schertz v. Tex. Comm'n on Env't Quality, 653 S.W.3d 468, 2022 Tex. App. LEXIS 6448 (Tex. App. Amarillo Aug. 26, 2022, no pet.).*

**Overview:** *A horse trainer disciplined after horses tested positive for a prohibited substance failed to show the disciplinary order was improper, as he did not point to evidence showing how the Texas Racing Commission's failure to follow its published procedures affected the accuracy of positive test results or otherwise prejudiced his substantial rights.*

- Judicial review of a Texas Racing Commission order is under the substantial evidence rule. Tex. *Occ. Code Ann. § 2023.009(a)*. Under this standard, a reviewing court shall reverse and remand the case if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*. The reviewing court presumes the agency's order, findings, inferences, conclusions, and decisions are valid, and the burden is on the contestant to demonstrate otherwise. Whether an agency's order satisfies this standard is a question of law. The Court of Appeals of Texas applies this analysis without deference to the trial court's judgment.

*Keard v. Tex. Racing Comm'n, No. 03-21-00037-CV, 2022 Tex. App. LEXIS 6410 (Tex. App. Austin 3d Dist. Aug. 26, 2022).*

**Overview:** *In appeal arising out of suit for judicial review of administrative order, administrative decision was clearly unwarranted exercise of discretion because plaintiff's substantial rights were prejudiced. It was forced to attend three-day hearing and use its resources trying case when dispute had already been settled by Tex. R. Civ. P. 11 agreement.*

- Final orders of the Railroad Commission of Texas are deemed to be prima facie valid and are subject to review under the substantial evidence rule. The substantial evidence rule, as codified in the Administrative Procedure Act (APA), requires reversal or remand if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, (5) are not reasonably supported by substantial evidence, or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*. The appellate court applies this analysis without deference to the district court's judgment.

*Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex., No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022).*

**Overview:** *Substantial evidence supported the Texas Commission on Environmental Quality's conclusion that a partnership — despite having contracted out the day-to-day running of a coal mine — remained responsible for the overall operation of the mine and was its "operator" under 30 Tex. Admin. Code § 305.2(24).*

- Courts reviewing agency action under the Administrative Procedure Act may reverse or remand agency orders, and: shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

*Tex. Comm'n on Env't Quality v. Maverick Cnty., 642 S.W.3d 537, 2022 Tex. LEXIS 150 (Tex. 2022).*

**Overview:** *Tex. Health & Safety Code Ann. § 382.052 required the Texas Commission on Environmental Quality, in reviewing an application under Tex. Health & Safety Code Ann. § 382.05198 for a standard air-quality permit to construct a concrete batch plant near a school, to consider the school's proximity. Substantial evidence showed that it did so.*

- Judicial review of administrative agency decisions is generally governed by the Texas Administrative Procedure Act, *Tex. Gov't Code Ann. §§ 2001.001-2001.902*, which addresses contested-case proceedings and the framework of the substantial-evidence test. If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(E)*, (F).

> Boerne to Bergheim Coal. for Clean Env̄ ̄t v. Tex. Comm'n on Env̄ ̄t *Quality, 2022 Tex. App. LEXIS 5932 (August 16, 2022)*.

**Overview:** *In a dispute over a wastewater discharge permit, substantial evidence supported the Texas Commission on Environmental Qualitȳ s findings of fact that the application was complete under 30 Tex. Admin. Code 305.45 because the evidence demonstrated that it was standard practice for TCEQ to impose sampling requirements on future discharged.*

- An appellate court reviews the the Texas Commission on Environmental Quality (TCEQ) order under the substantial evidence rule to determine whether the Permit Contestants substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code § 2001.174(2)(A)-(F)*. The appellate court's inquiry into whether an agency's decision meets the substantial evidence standard considers whether the evidence supports the agency's determination, asking not whether the decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

> Tex. Comm̄ n on Env̄ ̄t *Quality v. Maverick Cnty. 2022 Tex. App. LEXIS 5169 (July 27, 2022)*.

In a dispute between an applicant for renewal of a landfarming permit and the Railroad Commission of Texas, an ALJ erred by refusing to remove a hearing from the calendar after the parties filed a joint motion to dismiss the hearing setting pursuant to an attached *Tex. R. Civ. P. 11* agreement, conducting the hearing, and denying the permit. Contrary to the Commission's position, the agreement required the applicant to take certain actions to obtain the permit and was enforceable. *Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex., No. 03-19-00070-CV, 2021 Tex. App. LEXIS 1017 (Tex. App. Austin 3d Dist. Feb. 10, 2021)*, op. withdrawn, sub. op., reh'g denied, *No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022)*.

In adopting an administrative law judge's (ALJ) decision in a Texas Lemon Law hearing unchanged and issuing its final order without enforcing the requirement of former 34 Tex. Admin. Code § 215.206 that the vehicle be present at the hearing, the Motor Vehicle Division of the Texas Department of Motor Vehicles failed to follow the unambiguous language of its own rule and acted arbitrarily and capriciously such that the manufacturer's substantial rights were prejudiced when it was denied the opportunity to present its full defense, including inspection

and testing of the vehicle by the ALJ. *Winnebago Indus. v. Tex. DMV, No. 03-12-00760-CV, 2014 Tex. App. LEXIS 3836 (Tex. App. Austin 3d Dist. Apr. 10, 2014).*

Public Utility Commission was arbitrary and capricious in deciding not to allow rate-case expenses from earlier proceedings without prior Commissioner approval where it departed from prior Commission practice without explaining the reason for its change in position, made findings of fact and conclusions of law without adequate support in the record, and failed to give notice before the hearing of its intention to implement a new requirement. *Oncor Elec. Delivery Co. LLC v. Puc of Tex., 406 S.W.3d 253, 2013 Tex. App. LEXIS 7334 (Tex. App. Austin 3d Dist. June 14, 2013, no pet.).*

Public Utility Commission of Texas' finding that it was appropriate to limit the amount that the telecommunications provider should refund to the amount of overcharges to the county hospital district and order a partial refund was arbitrary and capricious, *16 Tex. Admin. Code § 26.27*; l]this imitation prejudiced the substantial rights of the district, *Tex. Gov't Code Ann. § 2001.174(2). Harris County Hosp. Dist. v. PUC of Tex., No. 03-10-00647-CV, 2012 Tex. App. LEXIS 5707 (Tex. App. Austin 3d Dist. July 13, 2012).*

Texas Commission on Environmental Quality (TCEQ) was required to make findings that supported its determinations that the statutory requirements, for purposes of Tex. *Health & Safety Code Ann. § 361.002* and *Tex. Gov't Code Ann. § 2001.141(b)*, (d), for approving a permit application had been met, and TCEQ made 200 findings supporting its decision to grant the permit; given this, and that substantial evidence supported a finding that there were no springs near the proposed landfill, the court would have subjected the order to a hypertechnical standard of review if the court found the order to be arbitrary and capricious because TCEQ failed to make a negative finding of fact concerning the existence of springs. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012),* op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012).*

Texas Commission on Environmental Quality's findings did not conflict with its decision to grant a landfill permit, the company complied with rule requirements of the rule, and conclusions that the proposed groundwater-monitoring system would adequately monitor the groundwater and will protect the groundwater, human health, and the environment was also arbitrary or capricious. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012),* op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012).*

To the extent the Texas Commission on Environmental Quality denied a coalition's hearing request based on the premise that an amended permit would be more protective of the environment than the current one, the Commission acted arbitrarily by relying on a factor that was irrelevant to the standing of the coalition's to obtain a hearing. *Bosque River Coalition v. Tex. Comm'n on Envtl. Quality, 347 S.W.3d 366, 2011 Tex. App. LEXIS 6043 (Tex. App. Austin 3d Dist. Aug. 2, 2011),* pet. withdrawn *No. 11-0737, 2013 Tex. LEXIS 74 (Tex. Feb. 1, 2013),* rev'd, *413 S.W.3d 403, 2013 Tex. LEXIS 773 (Tex. 2013).*

Because the court did not find that *28 Tex. Admin. Code § 134.1* was vague, the court overruled an operator's claims that the application or misapplication of § 134.1 to its reimbursement claim caused the final order rejecting its claim to be arbitrary and based on an error of law, for purposes of Tex. *Gov't Code Ann. § 2001.174(2)(D),* (F). *Vista Healthcare, Inc. v. Tex. Mut. Ins. Co., 324 S.W.3d 264, 2010 Tex. App. LEXIS 7046 (Tex. App. Austin 3d Dist. Aug. 26, 2010, no pet.).*

In a highway construction contract dispute, although *Tex. Transp. Code Ann. § 201.112* gave the executive director of the Texas Department of Transportation broad discretion to make changes to the proposed findings of fact and conclusions of law of the administrative law judge (ALJ), the executive director could not ignore the evidence; where the ALJ, and not the executive director, heard the testimony and observed the demeanor of the witnesses, and in the absence of independent evidence in the record to support the executive director's credibility choice, the executive director's decision to reject the ALJ's findings based on credibility was arbitrary and capricious under *Tex.*

Gov't Code Ann. § 2001.174, State v. Mid-South Pavers, Inc., 246 S.W.3d 711, 2007 Tex. App. LEXIS 9905 (Tex. App. Austin 3d Dist. Dec. 19, 2007, no pet.).

Doctor's due process rights were not violated when the State Board of Medical Examiners revoked his license because the record failed to show that the presence of two doctors that served on the disciplinary panel unduly influenced the Board's final decision and there was no record that ex parte communications took place; further, the Board's conclusions were not arbitrary or capricious under Tex. Gov't Code Ann. § 2001.174 where there was no evidence that the Board based its decision on peer review evidence pursuant to Tex. Occ. Code Ann. § 151.003(2) or that the doctor was harmed by such evidence under Tex. R. App. P. 44.1. Chalifoux v. Tex. State Bd. of Med. Examiners, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006).

Decision of the Texas State Board of Medical Examiners to revoke a doctor's license was not arbitrary or capricious under Tex. Gov't Code Ann. § 2001.174(2)(F); there was no evidence that the Board considered peer-review evidence in reaching its final decision, and its conclusions were explicitly based on its findings and the evidence presented at the hearing. Chalifoux v. Tex. State Bd. of Med. Exam'rs, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 4738 (Tex. App. Austin 3d Dist. June 2, 2006), op. withdrawn, sub. op., No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006).

Professional disciplinary action against a doctor, based on stale allegations of improper touching of a female patient's breasts, resulted in a due process violation that caused actual prejudice to the doctor's substantial rights, and the action was therefore arbitrary and capricious under Tex. Gov't Code Ann. § 2001.174(2)(A); staleness was not a significant concern as to another patient's complaints, however, because contemporaneous documentary evidence of the complaints existed. Granek v. Tex. State Bd. of Med. Exam'rs, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005, no pet.).

Appellate review under Tex. Gov't Code Ann. § 2001.174(f), ensures that an agency does not act arbitrarily or without regard to the facts. BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).

Trial court was not free to substitute its judgment for the judgment of the prison, through its disciplinary commission, on the weight of the evidence, and, thus, the disciplinary conviction and fine imposed on the inmate for the damage the inmate caused to state property during a riot had to be upheld because the hearing captain's finding the inmate committed the damage was not arbitrary or capricious. Warriner v. Tex. Dep't of Crim. Justice - Institutional Div., No. 13-01-678-CV, 2002 Tex. App. LEXIS 6410 (Tex. App. Corpus Christi Aug. 29, 2002).

Appellate court must reverse an order of the Texas Railroad Commission if the commission's action was arbitrary, capricious, or an abuse of discretion pursuant to Tex. Gov't Code Ann. § 2001.174. An agency decision is arbitrary when its final order denies parties due process of law or fails to demonstrate a connection between the agency decision and the factors that are made relevant to that decision by the applicable statutes and regulations; a court reviewing a decision for arbitrariness should consider all relevant factors and may not substitute its judgment for that of the agency. Occidental Permian, Ltd. v. R.R. Comm'n, 47 S.W.3d 801, 149 Oil & Gas Rep. 321, 2001 Tex. App. LEXIS 3583 (Tex. App. Austin 3d Dist. May 31, 2001, no pet.).

Under the Administrative Procedure Act, specifically Tex. Gov't Code Ann. § 2001.174, a reviewing court acts in an appellate capacity and may not substitute its judgment for that of the agency. Cash Am. Int'l, Inc. v. Bennett, 35 S.W.3d 12, 2000 Tex. LEXIS 82 (Tex. 2000).

Under the Texas Administrative Procedures Act, Tex. Gov't Code Ann. § 2001.174(2), the trial court has the authority to reverse an agency determination if it finds that the substantive rights of the appellant are prejudiced due to a constitutional or statutory violation, the decision was made unlawfully or affected by an error of law, not supported by substantial evidence, or was found to be arbitrary or capricious. Dep't of Pub. Safety v. Breazeale, No. 14-97-01357-CV, 1999 Tex. App. LEXIS 7131 (Tex. App. Houston 14th Dist. Sept. 23, 1999).

Courts are entitled to review agency decisions under the former Administrative Procedure and Texas Register Act, *Tex. Rev. Civ. Stat. Ann. art. 6252-13a § 19 (e)*, and may reverse an administrative order if it lacks substantial evidence supporting it or if it is arbitrary and capricious. *City of Alvin v. Public Util. Comm'n, 876 S.W.2d 346, 1993 Tex. App. LEXIS 2381 (Tex. App. Austin 3d Dist. Aug. 25, 1993)*, vacated, *893 S.W.2d 450, 1994 Tex. LEXIS 161 (Tex. 1994)*.

Order of the Texas Railroad Commission, directing appellant company to backfill and compact certain sludge pits and to dispose of all oil or oil by-products located in them, was not arbitrary and capricious under former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e)(6) because the fact that appellant controlled the pits for 23 years was not legally irrelevant, nor was it inherently arbitrary to proceed against only appellant even though other potentially liable parties existed; while the pits had been conveyed to appellant by a corporation that had disposed of sludge in the pits, and appellant subsequently had released its interest in the pits to another party, the harm caused by the joint tortfeasors was indivisible, and thus the Commission could choose to proceed against only one of them. *Lone Star Salt Water Disposal Co. v. Railroad Comm'n of Texas, 800 S.W.2d 924, 115 Oil & Gas Rep. 166, 1990 Tex. App. LEXIS 3123 (Tex. App. Austin 3d Dist. Oct. 31, 1990, no writ)*.

Utility commission's failure to set forth findings of fact and conclusions of law in its rate order, as required by the Administrative Procedure and Texas Register Act, *Tex. Rev. Civ. Stat. Ann. art. 16(b)*, constituted an arbitrary and capricious omission. *Consumers Water, Inc. v. Public Utility Com., 774 S.W.2d 719, 1989 Tex. App. LEXIS 2127 (Tex. App. Austin 3d Dist. June 28, 1989, no writ)*.

Trial court erred by reversing dentistry board's order revoking dentist license because the members of the board were in a better position to determine the relevance and materiality of the State's expert witness than the reviewing judge unendowed with evaluation evidence or expertise. *Texas State Bd. of Dental Examiners v. Silagi, 766 S.W.2d 280, 1989 Tex. App. LEXIS 207 (Tex. App. El Paso Jan. 5, 1989, no writ)*.

## Administrative Law: Judicial Review: Standards of Review: Constitutional Right

**Overview**: *Because an insurance carrier took final action on a medical bill and request for reconsideration, the provider requested medical fee dispute resolution, and the bill and request were timely filed, the provider did not forfeit its right to reimbursement for failure to timely submit a claim for payment, Tex. Lab. Code Ann. § 408.027(a).*

- An appellate court's review of a State Office of Administrative Hearings order is governed by the substantial evidence rule. *Tex. Gov't Code Ann. § 2001.174*, Texas Workers' Compensation Act, Tex. *Lab. Code Ann. § 410.255(b)*. Under that standard, the court of appeals must reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*. When applying the substantial evidence rule, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174*. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.

*Facility Ins. Corp. v. Patients Med. Ctr., No. 03-17-00666-CV, 2022 Tex. App. LEXIS 6823 (Tex. App. Austin 3d Dist. Sept. 8, 2022)*.

## Administrative Law: Judicial Review: Standards of Review: De Novo Review

**Overview:** *Because the Texas Commission on Environmental Quality failed to justify its deviation from its policy of adhering to earlier permit limits, it acted arbitrarily and capriciously.*

- Under Texas law, the only issue for a reviewing court to decide is whether the Commission's action is invalid, arbitrary, or unreasonable. Tex. *Health & Safety Code Ann. § 382.032(e)*. Texas courts interpret this statute to incorporate the standard of review under the Texas Administrative Procedure Act (APA). Under the Texas APA, a court shall reverse or remand the case if the agency's findings, inferences, conclusions, or decisions are, inter alia, not reasonably supported by substantial evidence or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. §§ 2001.174(2)(E)*,(F). Whether that standard is met is a question of law reviewed de novo. Whether the Commission failed to follow its own rules presents a question of law and is therefore subject to de novo review.

    *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality, 86 F.4th 653, 53 Envtl. L. Rep. 20176, 2023 U.S. App. LEXIS 30309 (5th Cir. 2023).*

**Overview:** *Substantial evidence supported the administrative law judge's findings that appellee abused a child because pursuant to Tex. Fam. Code Ann. § 261.001, the record contained substantial evidence that appellee committed abuse of the child as it was defined at the time the restraint occurred.*

- Substantial evidence analysis is comprised of two inquiries: (1) whether the agency made findings of underlying facts that logically support the ultimate facts and legal conclusions establishing the legal authority for the agency's decision or action and, in turn, (2) whether the findings of underlying fact are reasonably supported by the evidence presented. The second inquiry, or the crux of the substantial evidence review, is highly deferential to the agency's determination. Substantial evidence as used in this context does not mean a large or considerable amount of evidence. Rather, the evidence may even preponderate against the agency's finding, requiring only such relevant evidence as a reasonable mind might accept as adequate to support a finding of fact. The finder of fact determines the credibility of the witnesses and the weight to be given to their testimony, and the appellate court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174(1)*. In contrast, the first inquiry, concerning the extent to which the underlying facts found by the agency logically support its ultimate decision or action, may entail questions of law that we review de novo.

*Tex. HHS Comm'n v. Davis, No. 07-21-00092-CV, 2022 Tex. App. LEXIS 1321 (Tex. App. Amarillo Feb. 23, 2022).*

While the Administrative Procedures Act is deferential toward agency decisions and expressly prohibits a reviewing court from substituting its own judgment for the decision of the state agency on questions committed to agency discretion, questions of law are not left to agency discretion and are therefore subject to de novo review under Tex. *Gov't Code Ann. § 2001.174 DOT v. Jones Bros. Dirt & Paving Contrs. 24 S.W.3d 893, 2000 Tex. App. LEXIS 4920 (Tex. App. Austin 3d Dist. July 27, 2000)*, rev'd, *92 S.W.3d 477, 2002 Tex. LEXIS 101 (Tex. 2002)*.

## Administrative Law: Judicial Review: Standards of Review: Exceeding Statutory Authority

Texas Commission on Environmental Quality violated Tex. *Health & Safety Code Ann. § 361.0832(f)* and exceeded its statutory authority by failing to explain in its order why it rejected the administrative law judge's findings that all of the landfill's operations be conducted during the recommended operating hours, Heritage on the San Gabriel Homeowners Ass?n v. *Tex. Comm'n on Envtl. Quality, 393 S.W.3d 417, 2012 Tex. App. LEXIS 10767 (Tex. App. Austin 2012, no pet.).*

Basis of the business owner's declaratory-judgment action was simply that the Texas Department of Licensing and Regulation (Department) had no authority to regulate eyebrow threading because eyebrow threading did not constitute the practice of cosmetology, and although she presented several constitutional arguments as to how the Department's actions affected her individually, she made no broad constitutional challenge to the entire statutory scheme; her constitutional arguments could be asserted under the Administrative Procedure Act (APA), and

because the relief the owner sought under the Uniform Declaratory Judgment Act would be considered "redundant" of her APA judicial-review claim, she failed to invoke the district court's subject-matter jurisdiction to grant such relief, and the district court should have dismissed those claims. *Kuntz v. Khan, No. 03-10-00160-CV, 2010 Tex. App. LEXIS 7252 (Tex. App. Austin 3d Dist. Aug. 31, 2010),* op. withdrawn, sub. op., reh'g denied, *No. 03-10-00160-CV, 2011 Tex. App. LEXIS 446 (Tex. App. Austin 3d Dist. Jan. 21, 2011).*

## Administrative Law: Judicial Review: Standards of Review: Rule Interpretation

Under the administrative rule, the company's programs, including those funded with the settlement money, were programs implemented under that rule, and the Public Utility Commission, by limiting the company's bonus based on the specific source of funds expended on the programs, adopted an interpretation that was contrary to the rule, such that the court reversed. *CenterPoint Energy Houston Elec., LLC v. PUC of Tex., 408 S.W.3d 910, 2013 Tex. App. LEXIS 10363 (Tex. App. Austin 3d Dist. Aug. 16, 2013, no pet.).*

## Administrative Law: Judicial Review: Standards of Review: Statutory Interpretation

Texas Commission of Licensing and Regulation complied with *Tex. Gov't Code Ann. § 2001.058(e)* by specifying the reason and legal basis for its modifications to the ALJ's findings and conclusions and its decision was supported by substantial evidence and made through lawful procedure. *Tex. Gov't Code Ann. §§ 2001.058(e),* .174; the Commission expressly addressed and made findings in its decisions to the statutory factors in the *Occupation Code. Tex. Dep't of Licensing & Regulation v. Thompson, 2013 Tex. App. LEXIS 8832 (Tex. App. Austin July 18 2013).*

## Administrative Law: Judicial Review: Standards of Review: Substantial Evidence

*Overview:* The court reasoned that the additional permit requirements ordered by the Commission did not rely on outside-the-record facts, but rather extended existing facility design features that were already considered during the hearing to provide the same level of groundwater protection.

- A court reviews the Texas Railroad Commission's decision in a contested case under the substantial evidence standard of review codified in the Administrative Procedure Act. *Tex. Gov't Code § 2001.174;* Tex. *Nat. Res. Code § 102.111.* This is a limited standard of review that gives significant deference to the agency in its field of expertise. The reviewing court may reverse the Commission's decision only if the appealing party's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole or are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code § 2001.174(2)(E)-(F).* Judicial review of the Commission's decision is based on the administrative record. Tex. *Nat. Res. Code § 102.111.*

- A court applying the substantial evidence standard of review may not substitute its judgment for that of the agency on the weight of the evidence on questions committed to agency discretion. Administrative Procedure Act, *Tex. Gov't Code § 2001.174.* Substantial evidence review is "highly deferential"a the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it. Substantial evidence in this sense does not mean a large or considerable amount of evidence but only more than a mere scintilla or such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact. The evidence may even preponderate against the decision of the agency and nonetheless amount to substantial evidence.

*HR Martin Cnty. Landfill, LLC v. Mabee, No. 01-23-00036-CV, 2024 Tex. App. LEXIS 9040 (Tex. App. Houston 1st Dist. Dec. 31, 2024).*

Tex. Gov't Code § 2001.174

*Overview:* By reading the required statutory and Miranda warnings, including under *Tex. Transp. Code Ann. § 724.015*, officers did all that was necessary under Texas law; officers were not required to inform arrested persons that having an attorney present was not an option in deciding whether to submit to a breath test, even where a defendant became confused.

- On appeal of an administrative driver's license suspension to county court, review is based on the substantial evidence rule. 1 Tex. Admin. Code § 159.37(d). In reviewing a decision under the substantial evidence rule, a court may not substitute its judgment for that of the state agency on the weight of the evidence. *Tex. Gov't Code Ann. § 2001.174*. The court should reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure;(D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

- Pursuant to *Tex. Gov't Code Ann. § 2001.174*, the appellate court reviews a legal determination by the administrative law judge de novo and reviews any findings of fact for support by substantial evidence.

*Tex. Dep't of Pub. Safety v. Bruce, 694 S.W.3d 822, 2024 Tex. App. LEXIS 2691 (Tex. App. Houston 14th Dist. Apr. 18, 2024, no pet.)*.

Where a stipulation and evidence was introduced both for and against a rate increase, sufficient evidence supported the Public Utilities Commission's finding under former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e)(5). *1993 Tex. App. LEXIS 349*.

Texas Motor Vehicle Commission's (commission) final order in favor of franchisee concerning a franchise agreement of a motorcycle dealership was properly reversed because the commission did not have statutory authority to adjudicate claims between franchisors and franchisees or to order payment by the franchisor to the franchisee. *1993 Tex. App. LEXIS 44*.

Where respondent cancelled several permits to sell alcoholic beverages because petitioner had been intoxicated on the licensed premises, the trial court abused its discretion when it set aside respondent's administrative decisions when respondent's decision was supported by substantial evidence as required by former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19. *1979 Tex. App. LEXIS 3891*.

Texas Commission on Environmental Quality (TCEQ) did not err by granting appellee's application for permits to construct injection wells for the disposal of non-hazardous industrial waste, because the evidence in the record supported its changed findings in the proposal for decision concerning the migration of fluids and pressure at the well. TCEQ's changes to the proposal for decision were specifically listed and accompanied by an explanation of the basis of the amendment; substantial evidence supported its finding that there were very few other available options for disposing of industrial waste within the county. *2019 Tex. App. LEXIS 9023*.

*Overview:* In a water pollution case, substantial evidence supported appellee's findings of appellant's violation of Tex. *Water Code Ann. § 26.121(a)(2)* because the investigator observed stockpiles of mined rocks, excavation equipment, and a pump with a hose that extended from the pit to the creek.

- The appellate court reviews the Texas Commission on Environmental Quality's (TCEQ) orders under the substantial evidence rule to determine whether the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions violate a constitutional or statutory provision; in excess of the agency's statutory authority; made through unlawful procedure;

affected by other error of law; not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(A)–(F)*; Tex. *Water Code Ann. § 7.064*. The court's inquiry into whether an agency's decision meets this standard considers whether the evidence supports the agency's determination, asking not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

*Tex. Architectural Aggregate, Inc. v. Tex. Comm'n on Env't Quality, No. 03-22-00169-CV, 2023 Tex. App. LEXIS 9152 (Tex. App. Austin 3d Dist. Dec. 7, 2023).*

*Overview:* *Because the Texas Commission on Environmental Quality failed to justify its deviation from its policy of adhering to earlier permit limits, it acted arbitrarily and capriciously.*

- Under Texas law, the only issue for a reviewing court to decide is whether the Commission's action is invalid, arbitrary, or unreasonable. Tex. *Health & Safety Code Ann. § 382.032(e)*. Texas courts interpret this statute to incorporate the standard of review under the Texas Administrative Procedure Act (APA). Under the Texas APA, a court shall reverse or remand the case if the agency's findings, inferences, conclusions, or decisions are, inter alia, not reasonably supported by substantial evidence or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. §§ 2001.174(2)(E),(F)*. Whether that standard is met is a question of law reviewed de novo. Whether the Commission failed to follow its own rules presents a question of law and is therefore subject to de novo review.

*Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality, 86 F.4th 653, 53 Envtl. L. Rep. 20176, 2023 U.S. App. LEXIS 30309 (5th Cir. 2023).*

*Overview:* *Appellee's final order adopting the ALJ decision did not fail to consider a mandated factor of 40 Tex. Admin. Code § 97.602(b)(2), as post-survey corrective efforts made under a Texas Health and Human Services Commission-mandated plan of correction were not required to be considered in determining whether a penalty was warranted.*

- The Administrative Procedure Act provides for judicial review by a Travis County District Court. *Tex. Gov't Code Ann. §§ 2001.171, 2001.176(b)(1)*. Because the scope of judicial review is not defined under Texas Health and Human Services Commission's regulations, 40 Tex. Admin. Code § 97.601(h), the substantial evidence standard applies. *Tex. Gov't Code Ann. § 2001.174*.

*All By Grace Home Health Care, Inc. v. Tex. HHS Comm'n, No. 08-22-00223-CV, 2023 Tex. App. LEXIS 6134 (Tex. App. El Paso Aug. 14, 2023).*

*Overview:* *There was substantial evidence for the Board of the Texas Department of Motor Vehicles to conclude that the programs violated Tex. Occ. Code Ann. § 2301.467(a)(1) because the expert found that the survey results did not reliably measure customer satisfaction and could not reveal anything more than the customers' responses to specific questions.*

- The appellate court reviews the Final Order under the substantial-evidence rule, which is found in the Administrative Procedure Act (APA). *Tex. Gov't Code Ann. §§ 2001.002, 2001.174*; Tex. *Occ. Code Ann. § 2301.751(a)*, (c); Under the rule, the court must reverse or remand an agency decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or

decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. In conducting this review, the court may not substitute it's judgment for the judgment of the state agency on the weight of the evidence. The agency's decision is presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. The true test under the substantial-evidence rule is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency. Under substantial-evidence review, the appellate court must uphold agency findings of fact so long as more than a mere scintilla of evidence supports them. The evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence, requiring that we uphold the finding of fact under attack.

*Star Houston, Inc. v. Volvo Cars of N. Am., LLC, 673 S.W.3d 644, 2023 Tex. App. LEXIS 3610 (Tex. App. Austin 3d Dist. May 25, 2023, no pet.).*

**Overview:** *ALJ's finding under Tex. Transp. Code Ann. § 724.042 that the police officer had reasonable suspicion to stop defendant was reasonable and supported by substantial evidence because the police officer testified that defendant had a cell phone in his hand the cell phone was somewhere in front of defendant where the officer saw it.*

- A person whose driver's license is suspended following an administrative hearing is entitled to judicial review of that decision. *Tex. Transp. Code Ann. § 524.041(a)*. These decisions are reviewed under the substantial evidence standard, and the reviewing court may affirm the administrative decision in whole or in part. *Tex. Gov't Code Ann. § 2001.174(1)*. The reviewing court must reverse or remand the case if the appellant's substantial rights were prejudiced because, among other enumerated reasons, the administrative findings, inferences, conclusions, or decisions were not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. *Tex. Gov't Code Ann. § 2001.174(2)(E)*.

- The substantial evidence standard requires the reviewing court to decide not whether the ALJ's order was correct, but only whether the record demonstrates some reasonable basis for the agency's action. Administrative orders by state agencies are presumed valid and supported by substantial evidence; the party contesting the decision has the burden to prove otherwise. The reviewing court must affirm the ALJ's decision if more than a scintilla of evidence supports it, even if the evidence preponderates against the decision, and may not substitute its own judgment on the weight of the evidence on questions committed to the state agency's discretion. *Tex. Gov't Code Ann. § 2001.174*.

*Tex. Dep't of Pub. Safety v. Bryan, No. 13-21-00396-CV, 2023 Tex. App. LEXIS 2993 (Tex. App. Corpus Christi May 4, 2023).*

**Overview:** *An arbitrator's award under Tex. Ins. Code. Ann. § 1467.083 was proper because although a doctor was reimbursed only $1,672.07 for seemingly complex and life-saving medical care, there was at least some evidence to support the award, such as from the benchmarking database used to make reimbursement determinations.*

- The appellate court reviews de novo a trial court's substantial evidence review. The only issue to consider under substantial evidence review is whether there was some reasonable basis for the complained-of decision — not whether the decision was correct. In fact, an administrative decision may be sustained even if the evidence preponderates against it. *Tex. Gov't Code Ann. § 2001.174*. In other words, a party seeking to overturn a decision under substantial evidence review faces a formidable burden of proof — the decision must be upheld if there is any evidence to support it. A reviewing court must affirm the decision even if there is only more than a mere scintilla of evidence to support the decision. Thus, a court may not substitute its judgment for that of the deciding entity on the weight of the evidence. A court

reviewing for substantial evidence may not substitute its judgment for that of the agency on controverted issues of fact because the question to be determined is strictly one of law.

*Michael Nazarian MD Assoc. LLC v. Aetna Life Ins. Co., No. 02-22-00109-CV, 2023 Tex. App. LEXIS 2796 (Tex. App. Fort Worth Apr. 27, 2023).*

**Overview:** *ALJ's administrative order suspending appellee's driver's license under Tex. Transp. Code Ann. § 524.022 was affirmed because appellee did not raise his arguments before the ALJ at the administrative hearing, and, thus, he waived his arguments for consideration by the county court on appeal.*

- A person whose driver's license is suspended following an administrative hearing is entitled to judicial review of the decision. Tex. Transp. Code Ann. § 524.041(a). Judicial review of such decisions is governed by the substantial evidence rule. Under this standard, reviewing courts must determine whether the ALJ's findings are supported by substantial evidence or whether the order is invalid for some other reason. Tex. Gov't Code Ann. § 2001.174. Whether substantial evidence supports an administrative order is a question of law. The dispositive issue for the reviewing court is not whether the ALJ's order is correct, but whether the record demonstrates some reasonable basis for the ALJ's action.

*Tex. Dep't of Pub. Safety v. Cuellar, No. 01-22-00085-CV, 2023 Tex. App. LEXIS 1461 (Tex. App. Houston 1st Dist. Mar. 7, 2023).*

**Overview:** *Court denied appellant's motion to take judicial notice because the trial court considered former Tex. Water Code Ann. § 13.254(a-5) not as evidence but as legal authority and other documents were not admitted in the underlying administrative proceeding, per Tex. Gov't Code Ann. § 2001.175(c).*

- Judicial review of the Public Utility Commission's final order is by the substantial evidence standard of review. ex. Water Code Ann. §§ 13.002(16) and 13.381. Under this standard, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence or questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174. The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness. But the reviewing court must reverse or remand the case to the state agency for further proceedings: if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2).

*HMW Special Util. Dist. & Montgomery Counties v. PUC of Tex., No. 03-21-00234-CV, 2023 Tex. App. LEXIS 1190 (Tex. App. Austin 3d Dist. Feb. 24, 2023).*

**Overview:** *Substantial evidence supported Texas Railroad Commission's decision that appellee was not affected person with standing to challenge waste disposal well permit applications, under 16 Tex. Admin. Code § 3.9(5)(E)(ii), because evidence was such that reasonable minds could differ regarding whether waste injected into disposal wells would migrate.*

- In addition to the traditional substantial evidence standard, an agency decision shall be reversed if it is in violation of a constitutional or statutory provision, is affected by other error of law, or is arbitrary and capricious. Tex. Gov't Code Ann. § 2001.174(2)(A), (D)-(F). However, these bases for reversal of an agency decision still require the challenging party to demonstrate that the agency decision has prejudiced its substantial rights. Courts have determined that an agency acts arbitrarily when it does not appear that the agency has engaged in reasoned decision making, or when the agency's action or decision denies a party due process.

*R.R. Comm'n of Tex. v. Apache Corp., No. 07-22-00014-CV, 2023 Tex. App. LEXIS 1052 (Tex. App. Amarillo Feb. 21, 2023),* review granted, vacated, dismissed, *No. 23-0264, 2024 Tex. LEXIS 166 (Tex. Feb. 23, 2024).*

**Overview:** *The Texas Commissioner of Education erred in reversing a school board's termination of a teacher's continuing employment contract for anti-immigrant remarks. The board's conclusions of law on good cause under Tex. Educ. Code Ann. §§ 21.154(4), 21.156(a) satisfied Tex. Educ. Code Ann. § 21.259(a)(1), (d), and substantial evidence supported them.*

- In reviewing a district court's judgment on appeal from a decision of the Texas Commissioner of Education, an appellate court focuses on the decision of the Commissioner. The appellate court may not reverse the decision of the Commissioner unless the decision was not supported by substantial evidence or unless the Commissioner's conclusions of law are erroneous. *Tex. Educ. Code Ann. § 21.307(f).* Under substantial-evidence review, the appellate court shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2).*

*Clark v. Fort Worth Indep. Sch. Dist., No. 03-21-00275-CV, 2023 Tex. App. LEXIS 430 (Tex. App. Austin 3d Dist. Jan. 25, 2023).*

**Overview:** *Under Tex. Gov't Code Ann. § 2001.174(2), the appellee did not satisfy her burden to show her substantial rights were prejudiced by the decision to suspend her license because she failed to explain how she was prejudiced by the delay in proceedings, how her due process rights were violated, or how she was denied her right to her day in court.*

- In an appeal from an agency's final order, both the trial court and the appellate court must review the agency's decision under the substantial evidence rule codified in the Administrative Procedure Act, *Tex. Gov't Code Ann. § 2001.174.* Under this rule, the appellate court must reverse or remand an agency decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2).*

*Tex. Dep't of Pub. Safety v. Zabroky, No. 04-22-00162-CV, 2023 Tex. App. LEXIS 146 (Tex. App. San Antonio Jan. 11, 2023).*

**Overview:** *Order issued by Board of Texas Department of Motor Vehicles denying appellant's protest of appellee's application to establish new automobile dealership in Austin, Texas was proper because order complied with Tex. Gov't Code Ann. § 2301.711(b)(3)'s requirement that Board give the reasons for denial.*

- An appellate court reviews the of the Texas Department of Motor Vehicles' final order and its good cause determination under the substantial evidence rule. Tex. *Occ. Code Ann. § 2301.751(a); Tex. Gov't Code Ann. § 2001.174(2)(A).* This standard requires that we reverse or remand a case for further proceedings in the following circumstances: If substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:(A) in violation of a constitutional or statutory provision;(B) in excess of the agency's statutory authority;(C) made through unlawful procedure;(D) affected by other error of law;(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or(F) arbitrary or capricious or

characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

*Cont'l Imps., Inc. v. Mercedes-Benz USA, LLC, No. 03-21-00377-CV, 2023 Tex. App. LEXIS 64 (Tex. App. Austin 3d Dist. Jan. 6, 2023).*

**Overview**: *County court erred when it reversed decision finding probable cause existed to arrest defendant for operating a motor vehicle on a public roadway while intoxicated, Tex. Transp. Code Ann. § 724.042(2), because substantial evidence supported that finding, including that defendant was speeding, and had glassy eyes, poor balance, and slurred speech.*

- Judicial review of administrative license-suspension decisions is governed by a substantial evidence standard. When reviewing an administrative decision under the substantial evidence rule, the reviewing court may affirm the administrative decision in whole or in part. *Tex. Gov't Code Ann. § 2001.174(1)*. However, it must reverse or remand the case if the challenger's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (A) in violation of a constitutional or statutory provision, (B) in excess of the agency's statutory authority, (C) made through an unlawful procedure, (D) affected by other error of law, (E) not reasonably supported by substantial evidence when considering the reliable and probative evidence in the record as a whole, or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. § 2001.174(2).

- Whether substantial evidence supports an administrative order is a question of law. The dispositive issue for the reviewing court is not whether the administrative order was correct, but whether the record demonstrates some reasonable basis for the administrative action. The court must presume that the agency's decision is supported by substantial evidence. Furthermore, the reviewing court must affirm the administrative decision if more than a scintilla of evidence supports it and may affirm even if the evidence preponderates against it. A court applying the substantial evidence standard of review may not substitute its judgment for that of the administrative law judge with regard to the weight or credibility of the evidence. *Tex. Gov't Code § 2001.174*.

*Tex. Dep't of Pub. Safety v. Ford, No. 01-22-00102-CV, 2022 Tex. App. LEXIS 9551 (Tex. App. Houston 1st Dist. Dec. 29, 2022).*

**Overview**: *Texas Commission on Environmental Quality (TCEQ) correctly approved the city's application for a permit to discharge treated wastewater into a country creek under Tex. Water Code Ann. § 26.027(a)-(b), as substantial evidence supported TCEQ's conclusion that Tier 1 standard was met as city's proposed discharge would not impact existing aquatic life.*

- The Administrative Procedure Act governs appellate review of agency decisions; generally a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174*. Nonetheless, a court may reverse or remand an agency order if the substantial rights of a party are prejudiced by administrative findings or decisions that are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

*Tex. Comm'n on Envtl. Quality v. Save Our Springs Alliance, 665 S.W.3d 710, 2022 A.M.C. 445, 2022 Tex. App. LEXIS 9053 (Tex. App. El Paso Dec. 13, 2022, no pet.).*

**Overview**: *Appellants had not shown the Board prejudiced its substantial rights as to the Tex. Occ. Code Ann. § 2301.468 claim by adopting the ALJ's conclusion as the record showed the Board considered all the evidence presented at the hearing, weighed the evidence, and reached a reasonable conclusion◌̇ ◌̇ appellant failed to prove unreasonable discrimination.*

- The highly deferential substantial evidence standard of the Texas Administrative Procedure Act (APA) governs our judicial review of the Board's final order. *Tex. Gov't Code Ann. § 2001.174*. The APA authorizes reversal or remand of an agency's decision that prejudices an appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision; (2) exceed the agency's statutory authority; (3) were made through unlawful procedure; (4) are affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(A)-(D), (F)*.

- Under highly deferential substantial evidence standard, the appellate court cannot substitute our judgment on the weight of the evidence for that of the agency. *Tex. Gov't Code Ann. § 2001.174*. The APA authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to establish whether they are reasonably supported by substantial evidence, considering the reliable and probative evidence in the record as a whole. The appellate court must presume the agency's decision is supported by substantial evidence, and although evidence in the record may preponderate against the agency's decision, it may nevertheless amount to substantial evidence. The test is not whether the agency reached the correct conclusion, but whether a reasonable basis exists in the record to support the agency's action. The appellate court will affirm the agency's action if the evidence is such that reasonable minds could have reached the same conclusion. Accordingly, a reviewing court may not set aside an agency order merely because testimony was conflicting or disputed or because it did not compel the result reached by the agency. Therefore, reviewing courts need only be concerned with the reasonableness of the administrative order, not its correctness.

*New World Car Nissan, Inc. v. Hyundai Motor Am.*, 658 S.W.3d 754, 2022 Tex. App. LEXIS 8681 (Tex. App. El Paso Nov. 29, 2022, no pet.).

**Overview:** *There was a reasonable basis for the Texas Medical Board's conclusion that a physician's medical recordkeeping violated board rules when the ALJ found that the physician failed to document a genital examination, did not adequately document trigger point injections, and failed to clearly document his rationale for discontinuing two pain medications.*

- An appellate court may reverse or remand an agency's decision if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174*. This is essentially a rational-basis test in which the appellate court determines whether the agency's order finds reasonable support in the record as a matter of law. The party challenging the order has the burden of demonstrating a lack of substantial evidence. Because the focus is on the agency's decision, the appellate court gives no deference to the trial court's judgment. A reviewing court cannot substitute its judgment for that of the agency by considering the weight of the evidence on questions related to the agency's decision. § 2001.174. In short, the appellate court may reverse the agency's findings and conclusions only if there is no reasonable basis in the evidence for them.

*Leonard v. Tex. Med. Bd.*, 656 S.W.3d 456, 2022 Tex. App. LEXIS 7960 (Tex. App. El Paso Oct. 26, 2022, no pet.).

**Overview:** *Trial court erred in reversing Commissioner's order granting appellant's permit application because appellees failed to establish that requested information was necessary to fair adjudication of the case and failed to demonstrate exactly how lack of information impaired presentation of case on merits to the point that unjust result was real threat.*

- The scope of judicial review of agency decisions under the substantial-evidence rule is set forth in the Administrative Procedure Act (APA), *Tex. Gov't Code Ann. § 2001.174*. Under the substantial evidence

rule appellate courts review the evidence as a whole to determine if it is such that reasonable minds could have reached the same conclusion as the agency in the disputed action. An appellate court may not substitute its judgment for that of the agency and may only consider the record on which the agency based its decision.

- There are also narrow circumstances in which an agency decision can be reversed as arbitrary and capricious even though it is supported by substantial evidence. *Tex. Gov't Code Ann. § 2001.174(2)(F).* The finding of an act, which is supported by substantial evidence, to be arbitrary and capricious must be based on a violation of due process or some other unfair or unreasonable conduct that shocks the conscience.

*Tex. Comm'n on Env't Quality v. Friends of Dry Comal Creek, No. 03-21-00204-CV, 2022 Tex. App. LEXIS 7254 (Tex. App. Austin 3d Dist. Sept. 29, 2022),* op. withdrawn, sub. op., *669 S.W.3d 506, 2023 Tex. App. LEXIS 2127 (Tex. App. Austin 3d Dist. Mar. 31, 2023).*

**Overview:** *Substantial evidence supported agency's conclusion, pursuant to Tex. Gov't Code Ann. § 2001.174, that claimant was not entitled to accidental-death benefits because it was reasonable inference that decedent did not have normal use of his mental or physical faculties because of drugs in his body and that this substantially contributed to his death.*

- The substantial evidence standard of review authorizes reversal or remand of an agency decision that prejudices the appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, or (5) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174.*

- The substantial evidence standard of review authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. *Tex. Gov't Code Ann. § 2001.174(2)(e).* Under this deferential standard, reviewing courts presume that the agency's order is supported by substantial evidence, and appellant bears the burden of proving otherwise. The burden is a heavy one — even showing that the evidence preponderates against the agency's decision will not be enough to overcome it, if there is some reasonable basis in the record for the action taken by the agency. The reviewing court's ultimate concern is the reasonableness of the agency's order, not its correctness. The crux of a substantial evidence analysis is whether the agency's factual findings are reasonable in light of the evidence from which they were purportedly inferred. Therefore, if there is evidence to support either affirmative or negative findings on a specific matter, the decision of the agency must be upheld.

*Emps. Ret. Sys. v. Walker, No. 03-21-00321-CV, 2022 Tex. App. LEXIS 6922 (Tex. App. Austin 3d Dist. Sept. 14, 2022).*

**Overview:** *Because an insurance carrier took final action on a medical bill and request for reconsideration, the provider requested medical fee dispute resolution, and the bill and request were timely filed, the provider did not forfeit its right to reimbursement for failure to timely submit a claim for payment, Tex. Lab. Code Ann. § 408.027(e).*

- An appellate court's review of a State Office of Administrative Hearings order is governed by the substantial evidence rule. *Tex. Gov't Code Ann. § 2001.174,* Texas Workers' Compensation Act, Tex. *Lab. Code Ann. § 410.255(b).* Under that standard, the court of appeals must reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2).* When applying the substantial evidence rule, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on

questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174*. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.

*Facility Ins. Corp. v. Patients Med. Ctr., No. 03-17-00666-CV, 2022 Tex. App. LEXIS 6823 (Tex. App. Austin 3d Dist. Sept. 8, 2022).*

**Overview:** *Texas Commission on Environmental Quality did not err in its findings that competitor's proposed discharge point was not within regional area as defined by 30 Tex. Admin. Code § 351.61(2) as, in part, § 351.61(2) intended to limit regional area to vicinity of five cities and air force base, and substantial evidence supported Commission's findings.*

- Under the substantial evidence rule identified in *Tex. Gov't Code Ann. § 2001.174(2)(E)*, appellate courts review the evidence as a whole to determine if reasonable minds could have reached the same conclusion as the agency. In so doing, a court may not substitute its judgment for that of the agency and may only consider the record on which the agency based its decision. Because substantial evidence means more than a mere scintilla, the record evidence may preponderate against the agency's decision but nonetheless meet the substantial evidence rule. The court presumes the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise.

- Under Section 2001.174(2) of the APA, *Tex. Gov't Code Ann. § 2001.174(2)*, not only must the agency's challenged findings, inferences, conclusions, or decisions' be faulty as a matter of law, they must also prejudice the substantial rights of the appellant.

*City of Schertz v. Tex. Comm'n on Env't Quality, 653 S.W.3d 468, 2022 Tex. App. LEXIS 6448 (Tex. App. Amarillo Aug. 26, 2022, no pet.).*

**Overview:** *A horse trainer disciplined after horses tested positive for a prohibited substance failed to show the disciplinary order was improper, as he did not point to evidence showing how the Texas Racing Commission's failure to follow its published procedures affected the accuracy of positive test results or otherwise prejudiced his substantial rights.*

- Judicial review of a Texas Racing Commission order is under the substantial evidence rule. Tex. *Occ. Code Ann. § 2023.009(a)*. Under this standard, a reviewing court shall reverse and remand the case if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*. The reviewing court presumes the agency's order, findings, inferences, conclusions, and decisions are valid, and the burden is on the contestant to demonstrate otherwise. Whether an agency's order satisfies this standard is a question of law. The Court of Appeals of Texas applies this analysis without deference to the trial court's judgment.

- "Substantial evidence" review within the meaning of *Tex. Gov't Code Ann. § 2001.174(2)(e)* is essentially a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record. Under this deferential standard, the reviewing court presumes the agency's order is supported by substantial evidence and the burden is on the contestant to show otherwise. Substantial evidence does not mean a large or considerable amount of evidence but requires only such relevant evidence as a reasonable mind might accept as adequate to support a finding of fact. In fact, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.

*Kearl v. Tex. Racing Comm'n, No. 03-21-00037-CV, 2022 Tex. App. LEXIS 6410 (Tex. App. Austin 3d Dist. Aug. 26, 2022).*

**Overview:** *For purposes under Tex. Ins. Code. Ann. § 1467.088(a), the information provided by appellant constituted more than scintilla of evidence to support arbitrator's decision that its final settlement offer of $2,822.76 was closer to the reasonable amount for the provided out-of-network emergency medical services than was appellee's final offer.*

- The appellate court reviews de novo a trial court's substantial evidence review. The only issue to consider under substantial evidence review is whether there was some reasonable basis for the complained-of decision — not whether the decision was correct. In fact, an administrative decision may be sustained even if the evidence preponderates against it. *Tex. Gov't Code Ann. § 2001.174.* In other words, a party seeking to overturn a decision under substantial evidence review faces a formidable burden of proof — the decision must be upheld if there is any evidence to support it. A reviewing court must affirm the decision even if there is only more than a mere scintilla of evidence to support the decision. Thus, a court may not substitute its judgment for that of the deciding entity on the weight of the evidence.

*Aetna Life Ins. Co. v. Michael Nazarian MD Assoc. LLC, 653 S.W.3d 752, 2022 Tex. App. LEXIS 5827 (Tex. App. Fort Worth Aug. 11, 2022),* reh'g denied, *No. 02-21-00377-CV, 2022 Tex. App. LEXIS 7313 (Tex. App. Fort Worth Sept. 29, 2022).*

**Overview:** *Substantial evidence supported the Board of Nursing's finding that the nurse failed to timely complete a stat lab draw as ordered for patient 1 because under Tex. Occ. Code Ann. § 301.452(b), although she reviewed the printout orders for patient 1, she failed to take the lab draw until the following morning.*

- When reviewing an agency decision under the substantial evidence standard, appellate courts consider the reliable and probative evidence in the record as a whole. *Tex. Gov't Code Ann. § 2001.174(2)(E).* Appellate courts may not substitute their judgment for that of the agency and may only consider the record on which the agency based its decision. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency. The crux of a substantial evidence analysis is whether the agency's factual findings are reasonable in light of the evidence from which they were purportedly inferred. Appellate courts presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden to prove otherwise is on an appellant. Therefore, if there is evidence to support either affirmative or negative findings on a specific matter, the decision of the agency must be upheld. Finally, the agency's decision should be reversed only if the party challenging the decision demonstrates that the absence of substantial evidence has prejudiced that party's substantial rights.

*Williams v. Tex. Bd. of Nursing, No. 03-21-00089-CV, 2022 Tex. App. LEXIS 3658 (Tex. App. Austin 3d Dist. June 1, 2022).*

**Overview:** *In appeal arising out of suit for judicial review of administrative order, administrative decision was clearly unwarranted exercise of discretion because plaintiff's substantial rights were prejudiced. It was forced to attend three-day hearing and use its resources trying case when dispute had already been settled by Tex. R. Civ. P. 11 agreement.*

- Final orders of the Railroad Commission of Texas are deemed to be prima facie valid and are subject to review under the substantial evidence rule. The substantial evidence rule, as codified in the Administrative Procedure Act (APA), requires reversal or remand if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, (5) are not reasonably supported by substantial evidence, or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2).* The appellate court applies this analysis without deference to the district court's judgment.

*Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex., No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022).*

*Overview: Substantial evidence supported the administrative law judge's findings that appellee abused a child because pursuant to Tex. Fam. Code Ann. § 261.001, the record contained substantial evidence that appellee committed abuse of the child as it was defined at the time the restraint occurred.*

- When reviewing an agency decision under the substantial evidence standard, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174. Whether the agency's order satisfies the substantial evidence standard is a question of law. Substantial evidence review is, in essence, a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record. To meet the substantial evidence standard, one must show such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact. The appellate court presumes that the order is supported by substantial evidence.

Tex. HHS Comm'n v. Davis, No. 07-21-00092-CV, 2022 Tex. App. LEXIS 1321 (Tex. App. Amarillo Feb. 23, 2022).

*Overview: Substantial evidence supported the administrative law judge's findings that appellee abused a child because pursuant to Tex. Fam. Code Ann. § 261.001, the record contained substantial evidence that appellee committed abuse of the child as it was defined at the time the restraint occurred.*

- When reviewing an agency decision under the substantial evidence standard, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174. Whether the agency's order satisfies the substantial evidence standard is a question of law. Substantial evidence review is, in essence, a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record. To meet the substantial evidence standard, one must show such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact. The appellate court presumes that the order is supported by substantial evidence.

Tex. HHS Comm'n v. Davis, No. 07-21-00092-CV, 2022 Tex. App. LEXIS 1321 (Tex. App. Amarillo Feb. 23, 2022).

*Overview: Substantial evidence supported the Texas Commission on Environmental Quality's conclusion that a partnership — despite having contracted out the day-to-day running of a coal mine — remained responsible for the overall operation of the mine and was its "operator" under 30 Tex. Admin. Code § 305.2(24).*

- When applying the substantial-evidence rule, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.

Tex. Comm'n on Env't Quality v. Maverick Cnty., 642 S.W.3d 537, 2022 Tex. LEXIS 150 (Tex. 2022).

*Overview: Tex. Health & Safety Code Ann. § 382.052 required the Texas Commission on Environmental Quality, in reviewing an application under Tex. Health & Safety Code Ann. § 382.05198 for a standard air-quality permit to construct a concrete batch plant near a school, to consider the school's proximity. Substantial evidence showed that it did so.*

- Judicial review of administrative agency decisions is generally governed by the Texas Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.001-2001.902, which addresses contested-case proceedings and the framework of the substantial-evidence test. If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by

abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(E)*, (F).

Boerne to Bergheim Coal. for Clean Envā⬜ t v. Tex. Comm'n on Envā⬜ t *Quality, 2022 Tex. App. LEXIS 5932 (August 16, 2022)*.

***Overview:*** *In a dispute over a wastewater discharge permit, substantial evidence supported the Texas Commission on Environmental Qualityā⬜ s findings of fact that the application was complete under 30 Tex. Admin. Code 305.45 because the evidence demonstrated that it was standard practice for TCEQ to impose sampling requirements on future discharged.*

- An appellate court reviews the the Texas Commission on Environmental Quality (TCEQ) order under the substantial evidence rule to determine whether the Permit Contestants substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code § 2001.174(2)(A)-(F)*. The appellate court's inquiry into whether an agency's decision meets the substantial evidence standard considers whether the evidence supports the agency's determination, asking not whether the decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

Tex. Commā⬜ n on Envā⬜ t *Quality v. Maverick Cnty., 2022 Tex. App. LEXIS 5169 (July 27, 2022)*.

Agency's order revoking the appellant's dealer's license was affirmed because he had not presented the court with argument or evidence in the record that defeated the presumption that the agency's final order or the agency's director's order denying the motion for rehearing was supported by substantial evidence. The appellant did not identify any particular finding of fact, conclusion of law, evidentiary or legal ruling, or legal or factual basis that was erroneous. *Atkins v. Tex. DMV, No. 03-19-00964-CV, 2021 Tex. App. LEXIS 9342 (Tex. App. Austin 3d Dist. Nov. 18, 2021)*.

Texas Medical Board properly found that the former diagnostic radiologist's best interests would not have been served by the reissuance of his medical license because he did not understand the ethical issues that led to the revocation of his license, and did not demonstrate that the risk of further disciplinary proceedings would be minimized if he returned to practice. *Clayton v. Tex. Med. Bd., No. 14-19-00359-CV, 2021 Tex. App. LEXIS 1077 (Tex. App. Houston 14th Dist. Feb. 11, 2021)*.

Evidence did not show that the Texas Medical Board's "best interests of the public" determination lacked substantial evidence because the public's best interests would not have been served by the reissuance of the former diagnostic radiologist's medical license. The Board reasonably concluded that the radiologist had engaged in a pattern of questionable financial behavior that continued well after his convictions and the completion of his prison sentence and supervised release. *Clayton v. Tex. Med. Bd., No. 14-19-00359-CV, 2021 Tex. App. LEXIS 1077 (Tex. App. Houston 14th Dist. Feb. 11, 2021)*.

Court erred in reversing the commission's revocation of appellee's real estate license after he pled guilty to felony theft of government property, because the commission based its determination on facts that were not supported by substantial evidence in the record, and the commission's modifications of the proposal for decision were not supported by substantial evidence. *Tex. Real Estate Comm'n v. Riekers, No. 14-18-00287-CV, 2020 Tex. App. LEXIS 1820 (Tex. App. Houston 14th Dist. Mar. 3, 2020)*.

Texas State Board of Dental Examiners' (Board) sanctions against the dentist were based in part on its consideration of two conclusions of law that lacked supported by substantial evidence, i.e., the conclusions were made in error, and the Board's existing sanctions were affected by other error of law and, accordingly, the appellate court had to remand the case for further proceedings; the evidence provided a reasonable basis for the Board's determination that the dentist failed to treat Patient 1 according to the standard of care in the practice of dentistry when he did not obtain the written informed consent for the procedure performed. *Harrison v. Tex. State Bd. of Dental Examiners, No. 03-18-00229-CV, 2020 Tex. App. LEXIS 566 (Tex. App. Austin 3d Dist. Jan. 23, 2020).*

Where appellant overcharged Medicaid for medical supplies, substantial evidence supported the district court's decision affirming an administrative order requiring appellant to repay $2,165,115 in overpayments because three witnesses testified that the Texas Health and Human Services Commission was entitled to recover an extrapolated overpayment. *Personal Care Prods. v. Smith, 578 S.W.3d 262, 2019 Tex. App. LEXIS 5289 (Tex. App. Austin 3d Dist. June 26, 2019, no pet.).*

Texas Commission on Environmental Quality's (TCEQ) findings were not erroneous because (1) substantial evidence supported TCEQ's alterations of administrative law judges' findings and conclusions, and (2) substantial evidence supported TCEQ's findings that there were no reasonable available alternatives to injection wells. *Dyer v. Tex. Comm'n on Envtl. Quality, No. 03-17-00499-CV, 86 Env't Rep. Cas. (BNA) 6259, 2019 Tex. App. LEXIS 4171 (Tex. App. Austin 3d Dist. May 22, 2019),* op. withdrawn, sub. op., *639 S.W.3d 721, 2019 Tex. App. LEXIS 9023 (Tex. App. Austin 3d Dist. Oct. 11, 2019).*

Texas Medical Board did not err in revoking appellant's license to practice medicine based on violations of the Medical Practice Act because 1) it did not hold him strictly liable for the actions of the advanced practice nurses (APNs) at pain management clinics, but for his failure to adequately supervise them to ensure that treatment of patients met the standard of care; 2) substantial evidence supported the Board's finding that one of the pain clinics was not owned or operated by an APN and thus was not exempt from certification; 3) the administrative law judge did not err in admitting a physician's opinion testimony as to the standard of care; 4) appellant was not deprived of due process since the factual allegations in the Board's petition and the opportunity to depose the physician before the hearing provided appellant with ample notice of the standard of care. *Cotropia v. Tex. Med. Bd., No. 03-18-00232-CV, 2018 Tex. App. LEXIS 6829 (Tex. App. Austin 3d Dist. Aug. 28, 2018).*

Public Utility Commission of Texas was authorized to alter the ALJs' proposed capital structure for a public utility company, because the alteration was supported by substantial evidence as provided by expert witnesses; PUC's imposition of a 49 percent debt to 51 percent equity capital structure was consistent with its prior precedent for vertically integrated utilities. Substantial evidence supported PUC's determination that the public utility company's annual incentive program included significant financial-based goals that justified the exclusion of half of the company's request for reasonable and necessary costs. *Southwestern Pub. Serv. Co. v. PUC, No. 07-17-00146-CV, 2018 Tex. App. LEXIS 2991 (Tex. App. Amarillo Apr. 26, 2018).*

Foster mother's hearsay objection to a written report regarding her neglect of foster children in her care was rejected because, even without the report, substantial evidence supported the finding that she failed to report a major incident and allowed an unqualified care-giver to supervise the children, making any error harmless. *R. P. v. Tex. Dep't of Family & Protective Servs., No. 03-16-00308-CV, 2017 Tex. App. LEXIS 297 (Tex. App. Austin 3d Dist. Jan. 13, 2017).*

Trial court did not err in affirming the administrative law judge's decision to suspend appellant's license under the implied consent law, because there was substantial evidence that the officer had reasonable suspicion to conduct a traffic stop to investigate appellant for disorderly conduct or violating the city's noise ordinance; the officer personally observed appellant playing loud music from a vehicle around 3:00 a.m. after having received a noise complaint. *Rodriguez v. Tex. Dep't of Pub. Safety, No. 09-15-00147-CV, 2016 Tex. App. LEXIS 13780 (Tex. App. Beaumont Dec. 29, 2016).*

Texas Health and Human Services Commission's (HHSC) decision denying the claimant's exceptional circumstances request for a custom power wheelchair with an integrated standing feature was not supported by substantial evidence and was arbitrary and capricious where the evidence reflected in the HHSC's findings of fact did not constitute substantial evidence and statements in the Texas Medicaid and Healthcare Partnership's denial letter were either irrelevant to the determination or were factually incorrect assertions that were contradicted by the express language in the claimant's documentation. The HHSC presented no testimony from a physician to contradict the documentary evidence and the testimony of the claimant's care providers. Tex. HHS Comm'n v. Lukefahr, No. 03-15-00325-CV, 2016 Tex. App. LEXIS 10855 (Tex. App. Austin 3d Dist. Oct. 6, 2016).

Board properly approved the proposed modification of the franchise agreement because the board did consider the most recent data but also properly examined data from recent years, and appellant failed to show the board's findings or decision were arbitrary or capricious or otherwise reversibly erroneous under Tex. Gov't Code Ann. § 2001.174(2). Sweeten Truck Ctr., L.C. v. Volvo Trucks N. Am., No. 03-16-00068-CV, 2016 Tex. App. LEXIS 10069 (Tex. App. Austin 3d Dist. Sept. 13, 2016).

Reasonable basis existed to support the ALJ's findings regarding the officer's request for a breath specimen from the deaf driver and the driver's refusal to provide it as the officer's request was clearly conveyed in writing, which the driver understood; the driver's license suspension should have been upheld, and was supported by substantial evidence. Tex. Dep't of Pub. Safety v. Littlepage, No. 03-14-00194-CV, 2016 Tex. App. LEXIS 7244 (Tex. App. Austin 3d Dist. July 8, 2016).

There was substantial evidence to support the Texas Real Estate Commission's findings of fact and conclusions of law in a licensee's disciplinary proceeding, including that the licensee did not obtain the necessary consent to act as an intermediary between the two parties, that he received compensation from both sides, and that he failed to maintain and produce accurate records. Garcia v. Tex. Real Estate Comm'n, No. 03-14-00349-CV, 2016 Tex. App. LEXIS 5636 (Tex. App. Austin 3d Dist. May 27, 2016).

Statute did not apply and the trial court had authority under Tex. Lab. Code Ann. § 61.062 to reverse and set aside the Texas Workforce Commission's (TWC) decision and render judgment, but did not have the authority to remand to the TWC for further proceedings, and the trial court erred by remanding the claim here for a determination of the amount of wages due to the employee. Tex-Fin, Inc. v. Ducharme, 492 S.W.3d 430, 2016 Tex. App. LEXIS 4316 (Tex. App. Houston 14th Dist. Apr. 26, 2016, no pet.).

Pursuant to substantial evidence review, agency did not exceed its lawful discretion in denying a claim for occupational-disability retirement benefits, because the court could not find that the agency construed and applied the occupational disability definition unreasonably or inconsistently; construction and application of Tex. Gov't Code Ann. § 811.001(12) lied within the expertise of the agency, which was charged with administering state employee insurance and retirement benefits. Employees Ret. Sys. of Tex. v. Garcia, 454 S.W.3d 121, 2014 Tex. App. LEXIS 13502 (Tex. App. Austin 3d Dist. Dec. 18, 2014), reh'g denied, No. 15-0090, 2015 Tex. LEXIS 1034 (Tex. Nov. 13, 2015).

Finding was supported by the administrative record, because the name of the dentist's employer was not a fact on which any of the conclusions of law were based and correcting the name of the employer would not otherwise change the outcome; substantial rights were not prejudiced if an irrelevant finding was not supported by substantial evidence, and the ultimate concern was the reasonableness of the agency's order, not its correctness. McIntosh v. Tex. State Bd. of Dental Examiners, No. 07-12-00196-CV, 2014 Tex. App. LEXIS 2751 (Tex. App. Amarillo Mar. 10, 2014), cert. denied, 574 U.S. 1027, 135 S. Ct. 722, 190 L. Ed. 2d 442, 2014 U.S. LEXIS 8009 (U.S. 2014).

In an administrative license suspension proceeding, substantial evidence supported the judge's decision that a trooper had reasonable suspicion to stop the driver's vehicle because he was committing a traffic offense by driving a vehicle whose taillamps failed to illuminate the rear license plate. Tex. Dep't of Pub. Safety v. Flanagan, No. 03-12-00733-CV, 2014 Tex. App. LEXIS 1713 (Tex. App. Austin 3d Dist. Feb. 14, 2014).

Substantial evidence supported the decision of the Texas Insurance Commissioner revoking an insurance agent's license, because he engaged in fraudulent acts or practices with regard to the sale of universal leases and unauthorized annuity transactions. *Zaal v. Tex. Dep't of Ins., No. 03-11-00512-CV, 2013 Tex. App. LEXIS 13296 (Tex. App. Austin 3d Dist. Oct. 29, 2013).*

Administrative Procedure Act provisions governing substantial-evidence did not authorize monetary relief sought by a workers' compensation insurance carrier against a health care provider relating to stop-loss reimbursement, and monetary relief had not been awarded incident to reversing and remanding an administrative order. *Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co., 416 S.W.3d 11, 2013 Tex. App. LEXIS 12172 (Tex. App. Austin 3d Dist. Sept. 27, 2013, no pet.).*

ALJ's administrative decision was supported by substantial evidence and the record demonstrated some reasonable basis for the ALJ's action, and the County Court at Law improperly re-weighed the evidence and substituted its judgment for that of the ALJ when the driver appealed from the ALJ's administrative determination. *Tex. Dep't of Pub. Safety v. Castro, 406 S.W.3d 782, 2013 Tex. App. LEXIS 9107 (Tex. App. El Paso July 24, 2013, no pet.).*

Texas Alcoholic Beverage Commission properly suspended the licensee's alcoholic beverage permit and license for five days, because substantial evidence supported the conclusion that the third party was an employee, agent, or servant for purposes of establishing a violation of Tex. *Alco. Bev. Code Ann. § 104.01(4)*, when the focus was whether there was substantial evidence to support the determination that the third party was an employee, agent, or servant for purposes of establishing a violation. *Villatoro v. Tex. Alcoholic Bev. Comm'n, No. 05-12-00444-CV, 2013 Tex. App. LEXIS 6780 (Tex. App. Dallas June 3, 2013).*

Administrative law judge's finding that the deputy had reasonable suspicion to stop the driver was not reasonably supported by substantial evidence and therefore it erred by suspending the driver's license under *Tex. Transp. Code Ann. §§ 524.022*, .041, because the evidence only showed that the driver was observed driving slowly on a highway at 1:40 a.m; the record was silent regarding the deputy's training and experience and was silent as to the characteristics of the area in which the driver was observed driving. In addition, there was no evidence that the deputy stopped the driver because he was concerned for her safety, as there was no evidence she was alone in her vehicle, that there were any other vehicles sharing the roadway with the driver, or that driving slowly was inherently unsafe; the deputy stated in his report that he had reasonable suspicion to contact that driver only because he observed her vehicle traveling 40 m.p.h. in a 65 m.p.h. posted zone. *Peters v. Tex. Dep't of Pub. Safety, 404 S.W.3d 1, 2013 Tex. App. LEXIS 2798 (Tex. App. Houston 1st Dist. Mar. 19, 2013, no pet.).*

In a case relating to the revocation of a doctor's license, a finding that a kyphoplasty constituted a "spine surgery" was reasonably supported by substantial evidence where there was testimony from other physicians that the procedure constituted a surgery. The doctor's performance of this procedure violated an agreed order whereby he was prohibited from being present at or performing "spine surgery." *Baker v. Tex. Med. Bd., No. 03-12-00313-CV, 2013 Tex. App. LEXIS 1259 (Tex. App. Austin 3d Dist. Feb. 6, 2013).*

Trial court erred by reversing the administrative decision allowing the suspension of the driver's license because substantial evidence supported that decision, as the officer testified multiple times that he saw the driver on the road and then enter the parking lot and that he saw the driver in the vehicle's driver's seat when it was parked under a light in the parking lot; when the driver approached the officer, he saw that the driver was intoxicated and therefore had reasonable suspicion or probable cause to detain the driver and administer field sobriety tests. The officer's report, which bore the seal and signature of the Texas Department of Public Safety's custodian of records, corroborated the officer's testimony that the driver did not provide a breath sample on request and that he refused to provide a post-arrest breath sample. *Tex. Dep't of Pub. Safety v. Perez, No. 13-12-00216-CV, 2013 Tex. App. LEXIS 659 (Tex. App. Corpus Christi Jan. 24, 2013).*

Where a subcontractor filed a claim alleging that unforeseen conditions caused it to incur additional costs to complete foundation drilling work on a highway construction contract, substantial evidence under *Tex. Gov't Code*

Ann. § 2001.174(2)(E) supported the Texas Department of Transportation's decision that (1) the site conditions were not significantly different; (2) the contract provided that casing was required to prevent caving and water intrusion; and therefore, (3) the subcontractor was not entitled to damages. *Granite Constr. Co. v. Tex. DOT, No. 03-11-00436-CV, 2012 Tex. App. LEXIS 9706 (Tex. App. Austin 3d Dist. Nov. 20, 2012).*

Agreed Final Judgment purported to find facts (that the city had met the criteria for issuance of a permit) and to render judgment granting a permit, and *Tex. Gov't Code Ann. § 2001.174* did not empower courts to take such action, which went beyond their limited authority in a substantial-evidence review, and having concluded that there was error prejudicing substantial rights of the city's, the court's only options were to reverse or remand the case for further proceedings; accordingly, the district court's Agreed Final Judgment, which had the effect of rendering a specific judgment, contravened the direct restriction on the special statutory jurisdiction delegated to the court in its substantial-evidence review, and because the judgment violated the separation-of-powers doctrine of the Texas Constitution, *Tex. Const. art. II, § 1*, it was void and its rendition was fundamental error. *Save Our Springs Alliance, Inc. v. City of Kyle, 382 S.W.3d 540, 2012 Tex. App. LEXIS 7548 (Tex. App. Austin 3d Dist. Aug. 30, 2012, no pet.).*

Group's substantial rights were not prejudiced by the addition of the special provision to the landfill application, because the appellate court could not see how the group had been harmed by the Texas Commission on Environmental Quality adopting a permit that provided more groundwater monitoring than was required by the administrative rules, when the permit not only satisfied the rules' requirements that groundwater from the uppermost aquifer be monitored, as it must, but it also provided for extra monitoring of groundwater that the evidence showed was not in the uppermost aquifer. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012).*

Trial court exceeded its authority when it modified an administrative law judge's (ALJ) decision that a driver's license was suspended for 2 years under *Tex. Transp. Code Ann. § 724.035(a)* and stated that the suspension was for 180 days. *Tex. Dep't of Pub. Safety v. Hudson, No. 05-10-01129-CV, 2012 Tex. App. LEXIS 1148 (Tex. App. Dallas Feb. 13, 2012).*

Even if the court assumed the record contained no evidence regarding a special provision, the court could reverse on substantial-evidence grounds if a group's substantial rights were prejudiced under *Tex. Gov't Code Ann. § 2001.174(2)*, but the group failed to show this. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012)*, op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012).*

Although a group was correct that a company did not raise adding a special provision to its groundwater monitoring plan until after the proposal for decision had been submitted, and thus the company did not formally introduce the provision, the court's task was to review the order of the Texas Commission on Environmental Quality to see if substantial evidence supported the order, considering the evidence in the record as a whole, for purposes of *Tex. Gov't Code Ann. § 2001.174(2)(E)*; the administrative law judge considered the provision in reaching findings and conclusions, such that the provision was part of the record as a whole under *Tex. Gov't Code Ann. § 2001.060(1)*, (2), (5), (*City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012)*, op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012).*

Texas Commission on Environmental Quality (TCEQ) was required to make findings that supported its determinations that the statutory requirements, for purposes of Tex. *Health & Safety Code Ann. § 361.002* and *Tex. Gov't Code Ann. § 2001.141(b)*, (d), for approving a permit application had been met, and TCEQ made 200 findings supporting its decision to grant the permit; given this, and that substantial evidence supported a finding that there were no springs near the proposed landfill, the court would have subjected the order to a hypertechnical standard of review if the court found the order to be arbitrary and capricious because TCEQ failed to make a negative finding of fact concerning the existence of springs. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012)*, op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012).*

There was sufficient evidence for the Texas Commission on Environmental Quality to find that a company met the requirements in its search for springs and there were none in the landfill's vicinity. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012)*, op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012)*.

Both the administrative law judge and the Texas Commission on Environmental Quality agreed that an aquifer was a regional one, and the conclusion was supported by substantial evidence. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 1108 (Tex. App. Austin 3d Dist. Feb. 10, 2012)*, op. withdrawn, sub. op., *No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012)*.

Insurance agent's license was properly revoked because the insurance agent's statement to clients that when they wanted out of a universal lease program, a leasing agent would buy back the timeshare for the amount of the investment proved to be untrue; substantial evidence under *Tex. Gov't Code Ann. § 2001.174(2)(E)* supported the finding that the insurance agent acted recklessly with respect to the truth or falsity of the representations. *Meyer v. Tex. Dep't of Ins., No. 03-10-00642-CV, 2011 Tex. App. LEXIS 9270 (Tex. App. Austin 3d Dist. Nov. 23, 2011)*.

Legislature granted the Texas State Board of Medical Examiners (Board) the power to protect the public interest by regulating those physicians who were granted the privilege of practicing medicine, Tex. *Occ. Code Ann. § 151.003*; the legislature also provided that the Board's decision to revoke a physician's license was subject to the substantial-evidence standard of review, *Tex. Gov't Code Ann. § 2001.174*, and the lack of a trial de novo (either a bench or jury trial) for license-revocation appeals by physicians was rationally related to the legitimate governmental purpose of conservation of judicial resources. *Scally v. Tex. State Bd. of Med. Examiners, 351 S.W.3d 434, 2011 Tex. App. LEXIS 6117 (Tex. App. Austin 3d Dist. Aug. 4, 2011)*, cert. denied, *568 U.S. 1256, 133 S. Ct. 1646, 185 L. Ed. 2d 627, 2013 U.S. LEXIS 2528 (U.S. 2013)*.

Court's use of the term "substantial-evidence review" in this opinion was intended in the narrower sense to refer only to a determination of whether the agency order was reasonably supported by substantial evidence considering the reliable evidence as a whole. *Bosque River Coalition v. Tex. Comm'n on Envtl. Quality, 347 S.W.3d 366, 2011 Tex. App. LEXIS 6043 (Tex. App. Austin 3d Dist. Aug. 2, 2011)*, pet. withdrawn *No. 11-0737, 2013 Tex. LEXIS 74 (Tex. Feb. 1, 2013)*, rev'd, *413 S.W.3d 403, 2013 Tex. LEXIS 773 (Tex. 2013)*.

Because a coalition never had the opportunity to develop an evidentiary record before the Texas Commission on Environmental Quality through contested-case or adjudicative processes, substantial-evidence review was inapplicable and unavailable. *Bosque River Coalition v. Tex. Comm'n on Envtl. Quality, 347 S.W.3d 366, 2011 Tex. App. LEXIS 6043 (Tex. App. Austin 3d Dist. Aug. 2, 2011)*, pet. withdrawn *No. 11-0737, 2013 Tex. LEXIS 74 (Tex. Feb. 1, 2013)*, rev'd, *413 S.W.3d 403, 2013 Tex. LEXIS 773 (Tex. 2013)*.

Dismissal of the teacher's request for assault leave by the Texas Commissioner of Education was supported by substantial evidence, because the teacher submitted her request for assault leave under *Tex. Educ. Code Ann. § 22.003(b)* 720 days after the date of the incident, and reasonable minds could have reached the same conclusion; since the Texas Education Code did not expressly define the scope of judicial review of decisions made by the Texas Commissioner of Education, the substantial-evidence standard applied. *Poole v. Karnack Indep. Sch. Dist., 344 S.W.3d 440, 2011 Tex. App. LEXIS 3456 (Tex. App. Austin 3d Dist. May 5, 2011, no pet.)*.

Substantial evidence under *Tex. Gov't Code Ann. § 2001.174* supported the administrative suspension of appellee's driver's license under *Tex. Transp. Code Ann. §§ 724.035, 724.042*, because he was stopped for speeding, had trouble maintaining balance, refused to provide a breath or blood specimen, and admitted to ingesting hydrocodone, a controlled substance. *Tex. Dep't of Pub. Safety v. Greathouse, No. 10-10-00355-CV, 2011 Tex. App. LEXIS 2119 (Tex. App. Waco Mar. 23, 2011)*.

Although the formal posture was an appeal of a transportation department order determining that its engineer did not commit gross error in denying a company additional compensation, to which the court applied the substantial evidence standard under *Tex. Gov't Code Ann. § 2001.174*, these inquiries turned on pure questions of law that the

court reviewed de novo. *CCE, Ltd. v. Tex. DOT, No. 03-10-00072-CV, 2011 Tex. App. LEXIS 1567 (Tex. App. Austin 3d Dist. Mar. 2, 2011)*.

Where a deputy observed a pickup truck make a right turn so wide that it caused the front driver's side tire to go onto the grassy area of the road, the deputy had reasonable suspicion to stop appellee's vehicle because he committed a traffic violation under *Tex. Transp. Code Ann. §§ 545.051(a), 545.101(a)*; based on the strong odor of an alcoholic beverage emitting from appellee, his admission that he was drinking beer, and his poor performance on field sobriety tests, the deputy had probable cause to arrest appellee for driving while intoxicated. Because the requirements of *Tex. Transp. Code Ann. § 524.035(a)(1), (2)* were met, the Texas Department of Public Safety's decision to suspend appellee's driver's license was supported by substantial evidence under *Tex. Gov't Code Ann. § 2001.174*. *Tex. Dep't of Pub. Safety v. Garza, No. 13-10-00330-CV, 2010 Tex. App. LEXIS 9523 (Tex. App. Corpus Christi Dec. 2, 2010)*.

Trial court erred in overturning an administrative decision suspending appellee's driver's license based on appellee's refusal to submit a breath specimen; the administrative law judge chose to credit the statements by the arresting officer in the officer's report over the testimony of appellee, and there was sufficient evidence in the record to support the findings as reasonable and supported by substantial evidence. *Tex. Dep't of Pub. Safety v. Gutierrez, No. 04-10-00107-CV, 2010 Tex. App. LEXIS 7567 (Tex. App. San Antonio Sept. 15, 2010)*.

Suspension of a driver's license for refusal to submit to a breath test under *Tex. Transp. Code Ann. § 724.035* was supported by substantial evidence because even if the officer's sworn report was inadmissible under *Tex. R. Evid. 503(b)* based on a lack of a signature, the admissible evidence demonstrated the four elements required to uphold the suspension; that evidence included the DIC-24 form, under *Tex. Transp. Code Ann. § 724.032*, which indicated refusal to submit to the breath test and was signed by the driver. *Tex. Dep't of Pub. Safety v. Guajardo, No. 13-09-00468-CV, 2010 Tex. App. LEXIS 6000 (Tex. App. Corpus Christi July 29, 2010)*.

Substantial evidence supported the suspension of the minor's driver's license, because the minor was properly advised of the consequences set forth under *Tex. Transp. Code Ann. § 724.015* and he voluntarily refused to submit a specimen at the officer's request, and since the officer was not required to give the minor the notice of suspension before requesting a specimen, any irregularity on the notice of suspension did not affect the voluntariness of the minor's refusal to submit a specimen for purposes of *Tex. Transp. Code Ann. § 724.042*. *Tex. Dep't of Pub. Safety v. Henson, No. 14-09-00010-CV, 2010 Tex. App. LEXIS 3478 (Tex. App. Houston 14th Dist. May 11, 2010)*.

Motorist argued that at least one half of the license plate was working and that the officer could see the license plate when he turned on his headlights, and while the court could concede the rear license plate was barely illuminated, nothing suggested the plate was clearly legible at a distance of 50 feet from the rear under *Tex. Transp. Code Ann. § 547.322(f)*; the court does not rewrite the statute to say the plate must be legible if a police officer is driving behind a suspect with his lights on because the statute's purpose may also be to ensure officers on foot and potential witnesses are able to see the license plate, and in any event, even had the motorist presented conflicting evidence on this point, the court would still have been unable to disregard the administrative law judge's factual determinations, for purposes of *Tex. Gov't Code Ann. § 2001.174*. *Tex. Dep't of Pub. Safety v. Eller, No. 06-09-00053-CV, 2009 Tex. App. LEXIS 8473 (Tex. App. Texarkana Nov. 4, 2009)*.

Trial court erred in finding that a notice of an enforcement action hearing before the Texas Alcoholic Beverage Commission (TABC) was ineffective because evidence that the TABC sent the notice to the licensee at the address indicated in the TABC's records and that it received a signed green card in return was substantial evidence under Tex. *Alco. Bev. Code Ann. § 11.67(b)* and *Tex. Gov't Code Ann. § 2001.174(2)* for the TABC's finding that the licensee had actual notice; the agency was entitled to resolve conflicts in the evidence, and, here, the evidence could have supported a finding either way. The trial court impermissibly substituted its judgment for that of the agency as the agency's resolution of the issues of any "address problems" and the green card signature was not unreasonable. *Tex. Alcoholic Bev. Comm'n v. AGA Trading, Inc., No. 14-08-00151-CV, 2009 Tex. App. LEXIS 7842 (Tex. App. Houston 14th Dist. Oct. 8, 2009)*.

Driver was parked in his usual parking space behind the building where he worked, he did not have a foot on the brake and had not turned on the headlights, and the car was in park and the front seat was reclined to better accommodate him sleeping, and this would have made it difficult if not impossible for the driver to enable the vehicle's use for its intended purpose of driving, rather than a source of air conditioning; thus, the driver did not take an action to affect the functioning of his vehicle in a manner that would enable the vehicle's use, such that the finding that probable cause existed to believe that the driver was operating his vehicle while intoxicated, for purposes of *Tex. Transp. Code Ann. § 724.042*, was not supported by substantial evidence, for purposes of *Tex. Gov't Code Ann. § 2001.174(2)*, and the court affirmed the reversal of the suspension of the driver's license under *Tex. Transp. Code Ann. § 724.035*. *Tex. Dep't of Pub. Safety v. Allocca, No. 03-08-00624-CV, 2009 Tex. App. LEXIS 7039 (Tex. App. Austin 3d Dist. Aug. 31, 2009)*, op. withdrawn, sub. op., *301 S.W.3d 364, 2009 Tex. App. LEXIS 8781 (Tex. App. Austin 3d Dist. Nov. 13, 2009)*.

Decision of an ALJ administratively suspending a driver's license was supported by substantial evidence, Tex. *Gov't Code Ann. § 2001.174(2)(E)*, including that it took the driver more than 20 seconds to get his door open and exit the car, he was swaying, had red, bloodshot eyes, had a strong odor of alcohol coming from his mouth, and admitted coming from a bar where he had had eight or nine drinks. *Tex. Dep't of Pub. Safety v. Dishman, No. 04-08-00711-CV, 2009 Tex. App. LEXIS 3052 (Tex. App. San Antonio May 6, 2009)*.

Under the substantial evidence standard of review, it was determined that driving privileges were properly suspended because there was probable cause to believe that a driver was operating a motor vehicle in a public place under *Tex. Transp. Code Ann. § 724.042(2)(A)*; the public had unrestricted access to a private road, and it did not matter that travelers were infrequent or that the road had not been converted to a county road. *Tex. Dep't of Pub. Safety v. Castro, No. 04-08-00687-CV, 2009 Tex. App. LEXIS 3198 (Tex. App. San Antonio Apr. 29, 2009)*.

Substantial evidence supported the Texas State Board of Dental Examiners' order that the dentist pay restitution to a patient as she improperly allowed her assistants to perform non-delegable dental work on the patient. The district court erred when it reversed the Board's restitution order because the Board did not make adjudicative findings contrary to the ALJ's findings. *Tex. State Bd. of Dental Examiners v. Brown, 281 S.W.3d 692, 2009 Tex. App. LEXIS 2247 (Tex. App. Corpus Christi Apr. 2, 2009)*, reh'g denied, *No. 13-06-547-CV, 2009 Tex. App. LEXIS 4932 (Tex. App. Corpus Christi Apr. 30, 2009)*.

Texas State Board of Dental Examiners' conclusion that the dentist practiced dentistry in a manner that constituted dishonorable conduct as defined in *22 Tex. Admin. Code Ann. § 108.9(6)* was supported by the administrative law judge's findings that the dentist allowed her non-dentist employees to adjust occlusion on a patient's teeth and failed to keep adequate medical records where a patient's chart contained neither a written review of medical history, a medical exam, radiographs and findings, a treatment plan, or a written formal consent nor an explanation why that chart was incomplete. *Tex. State Bd. of Dental Examiners v. Brown, 281 S.W.3d 692, 2009 Tex. App. LEXIS 2247 (Tex. App. Corpus Christi Apr. 2, 2009)*, reh'g denied, *No. 13-06-547-CV, 2009 Tex. App. LEXIS 4932 (Tex. App. Corpus Christi Apr. 30, 2009)*.

Substantial evidence supported the Texas State Board of Dental Examiners' conclusion that the dentist practiced dentistry in a manner that constituted dishonorable conduct as defined in *22 Tex. Admin. Code Ann. § 108.9(6)* where the dentist offered to show a teenaged patient and her mother the scars on her breasts from surgery. *Tex. State Bd. of Dental Examiners v. Brown, 281 S.W.3d 692, 2009 Tex. App. LEXIS 2247 (Tex. App. Corpus Christi Apr. 2, 2009)*, reh'g denied, *No. 13-06-547-CV, 2009 Tex. App. LEXIS 4932 (Tex. App. Corpus Christi Apr. 30, 2009)*.

Application approval did not violate both the laws of trespass and the constitutional restrictions against taking property without just compensation, because approving the application for authority to use a well to inject and dispose of salt water below the surface neither took property from the adjoining land owners nor authorized a trespass, and evidence appeared of record supporting the ruling and the ruling comported with the law. *Berkley v. R.R. Comm'n of Tex., 282 S.W.3d 240, 177 Oil & Gas Rep. 889, 2009 Tex. App. LEXIS 2312 (Tex. App. Amarillo Mar. 31, 2009, no pet.)*.

While bloodshot eyes, an odor of alcohol, and unsteady balance were all symptoms of intoxication, those facts did not, without more, give rise to probable cause to believe the driver was driving while intoxicated. As the rest of the evidence did not support the conclusion that the driver was driving while intoxicated, the administrative law judge's decision to suspend the driver's operator's license was not reasonably supported by substantial evidence. *Tex. Dep't of Pub. Safety v. Gilfeather, No. 2-07-459-CV, 2009 Tex. App. LEXIS 1502 (Tex. App. Fort Worth Mar. 5, 2009)*, op. withdrawn, sub. op., *293 S.W.3d 875, 2009 Tex. App. LEXIS 6144 (Tex. App. Fort Worth Aug. 6, 2009)*.

Final order of the Public Utility Commission of Texas, which reconciled an electric utility company's eligible fuel expenses and revenues for a certain time period, was upheld on appeal as a reasonable remedy within the Commission's statutory authority; the Commission's final order was found to have reasonably required the utility company to account for all revenues it collected after December 31, 2001, that were directly attributable to the generation of electricity through that date, and reasonably required it to reconcile all fuel revenues it received and expenses it incurred after that date, to serve customers who were not yet switched to a retail electric provider; the Commission reconciliation methodology was found to have been proper and reasonably interpreted the Texas Legislature's directive to conduct a final reconciliation by accounting for all revenues associated with the expenses of providing bundled service during the reconciliation period; a reasonable basis existed for the Commission's decision to discount approximately $ 2.7 million in fuel costs and that the decision was supported by substantial evidence; and the Commission was found to have properly delineated and applied its reasonableness or prudence standard of review, which took into account, among other things, changes in the market. Aep Tex. N. Co. v. Public Util. Comm?n of *Tex., 297 S.W.3d 435, 2009 Tex. App. LEXIS 7064 (Tex. App. Austin 2009, no pet.)*.

Trial court erred in reversing an administrative law judge's (ALJ) decision to suspend a motorist's driver's license pursuant to *Tex. Transp. Code Ann. § 724.035*, after the motorist refused to give a breath specimen test, because there was substantial evidence supporting the administrative order as required by *Tex. Transp. Code Ann. § 524.041* and *Tex. Gov't Code Ann. § 2001.174*; a court may not substitute its judgment for that of the ALJ. *Tex. Dep't of Pub. Safety v. Escobedo, No. 13-07-00498-CV, 2008 Tex. App. LEXIS 5651 (Tex. App. Corpus Christi July 29, 2008)*.

Because the Texas Railroad Commission's final order was consistent with the statutes and rules authorizing the Commission to regulate oil and gas waste, including under Tex. *Nat. Res. Code Ann. § 91.101* and Tex. *Water Code Ann. § 26.131(a)*, and the Commission's final order finding a company's permit violation was supported by substantial evidence under Tex. *Nat. Res. Code Ann. § 85.241* and *Tex. Gov't Code Ann. § 2001.174*, the court affirmed the judgment affirming the Commission's final order. *Osage Envtl. v. R.R. Comm'n of Tex., No. 03-08-00005-CV, 36 Envtl. L. Rep. 20196, 2008 Tex. App. LEXIS 5558 (Tex. App. Austin 3d Dist. July 24, 2008)*.

Judgment suspending driver's license for 180 days was affirmed where the totality of circumstances was substantial evidence of probable cause for the driver's arrest for driving while intoxicated. The record showed that the driver drove past a roadblock, that he had a strong alcoholic odor, that he had bloodshot eyes, that he admitted drinking an alcoholic beverage, that he was extremely argumentative, and that he refused to take field sobriety tests. *Gault v. Tex. Dep't of Pub. Safety, No. 11-06-00201-CV, 2008 Tex. App. LEXIS 5465 (Tex. App. Eastland July 24, 2008)*.

There was substantial evidence in the record to support the Texas State Board of Public Accountancy's conclusion that a certificate holder had presented himself as an accountant while his certificate was suspended; the record did not support the holder's claim that he misunderstood the effect of a 1999 order suspending his certificate to practice public accountancy; the holder had committed violations in the past, and he was found to be not fit to practice public accountancy under Tex. *Occ. Code Ann. § 901.502(11)*. *Rogers v. State Bd. of Pub. Accountancy, 310 S.W.3d 1, 2008 Tex. App. LEXIS 2961 (Tex. App. Austin 3d Dist. Apr. 24, 2008, no pet.)*.

District court erred in reversing the decision of the administrative law judge (ALJ), which revoked the driver's operating license for two years, because substantial evidence supported the ALJ's reasonable suspicion determination, when the ALJ was presented with evidence from the officer that the license plate light was not working when he pulled the driver over and that the license plate was not clearly legible from fifty feet, and there was sufficient evidence to uphold the decision of the ALJ that the officer had probable cause to believe that the

driver was operating a motor vehicle in a public place while intoxicated; the officer noticed that the driver's license plate as not properly illuminated, the driver admitted he had drunk four beers, and evidence presented at the administrative hearing included the officer's report stating that the driver had slurred speech, bloodshot eyes, and an odor of an alcoholic beverage on his person. *Tex. Dep't of Pub. Safety v. Harris, No. 06-07-00085-CV, 2007 Tex. App. LEXIS 9819 (Tex. App. Texarkana Dec. 18, 2007)*.

Revocation of a respiratory care practitioner's certificate for taking a drug from an intravenous bag for personal use was properly upheld as an administrative law judge's (ALJ) decision was supported by substantial evidence pursuant to Tex. *Gov't Code Ann. § 2001.174(2)(F)*, affirmative findings as to each 25 Tex. Admin. Code § 123.14(f)(4) factor were unnecessary, and a negative inference could be drawn from the practitioner's invoking the Fifth Amendment, which was done improperly as a blanket assertion rather than in response to a particular question. *Andrews v. Tex. Dep't of Health, No. 03-06-00234-CV, 2007 Tex. App. LEXIS 1129 (Tex. App. Austin 3d Dist. Feb. 15, 2007)*.

Where an officer initiated a traffic stop and smelled alcohol, appellee admitted that she had just left a bar where she had consumed alcohol; in the license suspension proceeding, the judge's finding that the police had probable cause to arrest appellee for DWI was supported by substantial evidence under Tex. *Gov't Code Ann. § 2001.174*; the admission of unqualified testimony from a police officer concerning the horizontal gaze nystagmus test was harmless. *Tex. Dep't of Pub. Safety v. Bishop, No. 03-06-00054-CV, 2007 Tex. App. LEXIS 360 (Tex. App. Austin 3d Dist. Jan. 22, 2007)*.

Trial court erred in reversing the suspension of a driver's license by an administrative law judge (ALJ) because substantial evidence supported the ALJ's finding under *Tex. Transp. Code Ann. § 724.042* that the driver voluntarily refused to submit to a breath test; although the driver claimed he was misled about the consequences of refusal, the ALJ, as the sole trier of fact under *Tex. Gov't Code Ann. § 2001.174*, was free to disbelieve the driver. *Tex. Dep't of Pub. Safety v. Patel, No. 13-05-775-CV, 2006 Tex. App. LEXIS 9720 (Tex. App. Corpus Christi Nov. 9, 2006)*, reh'g denied, *No. 13-05-775-CV, 2006 Tex. App. LEXIS 11114 (Tex. App. Corpus Christi Dec. 7, 2006)*.

Trial court did not apply the law properly in setting review of an administrative permitting decision of the Edwards Aquifer Authority under the substantial evidence de novo rule because Tex. *Water Code Ann. § 36.253* required the Authority's permitting decisions to be reviewed under the substantial evidence rule by a judge sitting without a jury; judicial review under the substantial evidence rule encompassed the constitutional issues raised by the landowners challenging the Authority's decision. *In re Edwards Aquifer Auth. 217 S.W.3d 581, 2006 Tex. App. LEXIS 8934 (Tex. App. San Antonio Oct. 18, 2006)*, reh'g denied, *No. 04-05-00254-CV, 2006 Tex. App. LEXIS 11291 (Tex. App. San Antonio Dec. 5, 2006)*.

Texas Racing Commission's decision to modify the ALJ's conclusion and impose the steward's initial penalty of disqualifying the horse and the loss of the purse due the use of ipratropium, a prohibited Class 3 drug, was within the Commission's authority under Tex. *Gov't Code Ann. § 2001.058(e)*, and the "loss of purse" penalty was expressly authorized by the Texas Racing Act, Tex. *Rev. Civ. Stat. Ann. art. 179e*, and the Commission's rules, guidelines, and zero-drug tolerance policy; further, the burden of proof was correctly placed on the owner and at the appropriate standard because nothing in the Tex. *Rev. Civ. Stat. Ann. art. 179e* states that the burden of proof should be placed on the agency. *Pierce v. Tex. Racing Comm'n, 212 S.W.3d 745, 2006 Tex. App. LEXIS 9062 (Tex. App. Austin 3d Dist. Oct. 17, 2006, no pet.)*.

Trial court did not err in affirming the suspension of the driver's license where although the ALJ found that the driver had operated a watercraft while intoxicated, this was an obvious clerical error which did not negate the administrative order, and the decision was supported by substantial evidence, Tex. *Gov't Code Ann. § 2001.174*. *Goldstein v. Tex. Dep't of Pub. Safety, No. 04-06-00142-CV, 2006 Tex. App. LEXIS 11285 (Tex. App. San Antonio Oct. 11, 2006)*.

Trial court's conclusion that the state motor vehicle board's findings of fact that a motor vehicle distributor engaged in business as a dealer in Texas were not supported by substantial evidence, and that the board's conclusions of

law that the distributor violated statutory prohibitions, were affected by error of law, was upheld where the undisputed facts were that, in response to a Texas city's solicitation, the distributor sold and delivered two buses to the city in New Mexico and that, from there, the city paid for the buses to be brought into Texas; there was no evidence that the distributor ever physically crossed the New Mexico border into Texas related to the transaction, and, under *Tex. Bus. & Com. Code Ann. § 2.401*, legal title to the buses passed in New Mexico because the agreement of the parties required the distributor to deliver the buses in New Mexico. *Motor Vehicle Bd. v. Prevost Car (US), Inc., No. 03-04-00373-CV, 2006 Tex. App. LEXIS 8461 (Tex. App. Austin 3d Dist. Sept. 26, 2006)*.

Texas Railroad Commission's findings regarding the gas utility's costs to acquire its predecessor were supported by substantial evidence as required under Tex. *Gov't Code Ann. § 2001.174* and Tex. *Util. Code Ann. § 105.001*; further, the Commission did not err by including the gas utility's costs in acquiring its predecessor as a known and measurable change" in its gas rate award because nothing in Tex. *Util. Code Ann. § 103.055* prohibited the Commission from accounting for additional expenses as a "known and measurable change" simply because they were known to a utility at the time of its updated rate request. *City of Port Neches v. R.R. Comm'n of Tex., 212 S.W.3d 565, 2006 Tex. App. LEXIS 6936 (Tex. App. Austin 3d Dist. Aug. 4, 2006, no pet.)*.

"Substantial evidence" under Tex. *Gov't Code Ann § 2001.174(2)(E)* supported a finding that a doctor violated the standard of care in assessing the possibility of a cerebrospinal fluid (CSF) leak because he had the patient lie down, which minimized the possibility of the patient experiencing the classic symptoms of a CSF leak; his claim that his discharge decision was not based solely on his observation of the patient after she was lying down for two hours was insufficient to overcome the presumption that the finding was supported by substantial evidence. *Chalifoux v. Tex. State Bd. of Med. Exam'rs, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 4738 (Tex. App. Austin 3d Dist. June 2, 2006)*, op. withdrawn, sub. op., *No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006)*.

"Substantial evidence" under Tex. *Gov't Code Ann § 2001.174(2)(E)* supported a finding that a doctor violated the standard of care by discharging a patient from the hospital when she had suffered a postsurgery seizure and had other preseizure symptoms, and her Dilantin level was 3.9 at the time of her discharge; the doctor admitted the Dilantin level was sub-therapeutic, and another doctor testified that the treatment fell below the standard of care. *Chalifoux v. Tex. State Bd. of Med. Exam'rs, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 4738 (Tex. App. Austin 3d Dist. June 2, 2006)*, op. withdrawn, sub. op., *No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006)*.

Texas Railroad Commission's rejection of a gas company's fee assessment against residents of outlying areas was not supported by substantial evidence because the Commission's order did not satisfy requirements for findings of fact. *CenterPoint Energy Entex v. R.R. Comm'n, 213 S.W.3d 364, 2006 Tex. App. LEXIS 3518 (Tex. App. Austin 3d Dist. Apr. 28, 2006, no pet.)*.

License suspension was reinstated because the Texas Department of Public Safety produced more than a scintilla of evidence on the factors set forth in *Tex. Transp. Code Ann. § 724.042*, when the driver was properly stopped for violation of *Tex. Transp. Code Ann. § 545.104(a)*, and the officer smelled alcohol on the driver's breath, noticed that the driver's eyes were bloodshot and his speech was slurred. *Tex. Dep't of Pub. Safety v. Shellberg, No. 13-04-100-CV, 2005 Tex. App. LEXIS 6644 (Tex. App. Corpus Christi Aug. 18, 2005)*.

Trial court did not err in affirming an agency decision that found that no vacancy existed, for purposes of Tex. *Nat. Res. Code Ann. § 51.172(5)*; the agency was free to consider evidence other than the evidence provided by two surveys, and substantial evidence supported the ruling pursuant to *Tex. Gov't Code Ann. § 2001.174(2)(E)* of the Administrative Procedure Act. *Dixon v. Dewhurst, 169 S.W.3d 515, 2005 Tex. App. LEXIS 6100 (Tex. App. Texarkana Aug. 4, 2005, no pet.)*.

Doctor's failure to attend a patient in the emergency room was properly found to be a failure to practice medicine in an acceptable professional manner consistent with public health and welfare, in violation of Tex. *Occ. Code Ann. § 164.051(a)(6)*, and unprofessional or dishonorable conduct that was likely to injure the public, in violation of Tex.

Occ. Code Ann. §§ 164.051(a)(1), 164.052(a)(5), where the Texas State Board of Medical Examiners' expert testified that, based on her review of relevant medical records, the doctor's care and treatment of the patient did not meet the standard of care and was a professional failure to practice medicine consistent with the public health and welfare, and where, because patients were considered members of the public, the expert's testimony, which was unchallenged on appeal, also supported the Board's conclusion that the doctor committed unprofessional conduct that was likely to injure the public. Furthermore, because the hospital's disciplinary action against the doctor was directed to the same conduct, there was substantial evidence to support discipline under Tex. Occ. Code Ann. § 164.051(a)(7). Granek v. Tex. State Bd. of Med Examiners, No. 03-03-00698-CV, 2005 Tex. App. LEXIS 6232 (Tex. App. Austin 3d Dist. Aug. 3, 2005), sub. op., op. withdrawn, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005).

Texas State Board of Medical Examiners' conclusion that disciplinary grounds existed for a doctor's improper contact with a female patient was supported by its findings, conclusions and evidence, in accordance with Tex. Gov't Code Ann. § 2001.174(2)(E), where even though the patient was somewhat confused and inconsistent regarding the details of her surroundings when the incidents occurred, she testified unequivocally that the doctor touched her breasts despite her attempts to shield herself with magazines. The administrative law judge heard the patient's testimony firsthand, was able to observe her and her demeanor, and concluded that she made a credible witness, and the appellate court could not second-guess such credibility determinations in the guise of a substantial-evidence inquiry. Granek v. Tex. State Bd. of Med. Examiners, No. 03-03-00698-CV, 2005 Tex. App. LEXIS 6232 (Tex. App. Austin 3d Dist. Aug. 3, 2005), sub. op., op. withdrawn, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005).

Appellate court could not modify an order of the Motor Vehicle Board of the Texas Department of Transportation to include findings of fact and conclusions of law favorable to the dealer in its franchise dispute with a motor home manufacturer because under Tex. Occ. Code Ann. §§ 2301.001, 2301.151, and Tex. Gov't Code Ann. § 2001.174(2)(E), the court could only review the order to determine if they are reasonably supported by substantial evidence. Further, the order complied with Tex. Occ. Code Ann. § 2301.711(a). Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd., 179 S.W.3d 589, 2005 Tex. App. LEXIS 5952 (Tex. App. Austin 3d Dist. July 28, 2005, no pet.).

Statute governing license suspension appeals is the touchstone in deciding which standard of review should apply: the statute specifically requires the reviewing court to use the substantial evidence rule. Because a court applying the substantial evidence standard of review may not substitute its judgment for that of the administrative law judge as to the weight of the evidence, the equally plausible but opposite inferences construct can not be part of the substantial evidence rule. Dep't of Pub. Safety v. Hirschman, 169 S.W.3d 331, 2005 Tex. App. LEXIS 4579 (Tex. App. Waco June 15, 2005, no pet.).

At the license suspension hearing, the arresting officer testified that the driver's vehicle was moving erratically, the officer smelled alcohol coming from the interior of the vehicle, and the driver failed sobriety tests; there was substantial evidence to support the administrative finding that there was reasonable suspicion to stop and probable cause to arrest the driver for driving while intoxicated. The trial court erred by reversing the administrative decision to suspend her driver's license, because she refused to provide a breath sample. Tex. Dep't of Pub. Safety v. Leath, No. 07-03-0450-CV, 2005 Tex. App. LEXIS 3927 (Tex. App. Amarillo May 18, 2005).

Substantial evidence in the record supported the Texas Natural Resource Conservation Commission's finding that a landfill owner's expansion application was administratively and technically complete because the owner had included all necessary information in the application, and while some witnesses could not independently verify particular documents or exhibits, there was nothing in the record that cast doubt upon the information, and the opponents to the application did not introduce any contrary exhibits to demonstrate that the limited evidence was altered or falsified. Because the application was determined to be administratively and technically complete prior to the contested case hearing, the owner was not required to establish at the contested-case hearing that its application complied with each administrative and technical requirement because it had already done so prior to the hearing. Citizens Against Landfill Location v. Tex. Comm'n on Envtl. Quality, 169 S.W.3d 258, 2005 Tex. App. LEXIS 3583 (Tex. App. Austin 3d Dist. May 12, 2005, no pet.).

Decision of the Public Utility Commission of Texas (PUC) to use the electric company's original overstated estimate of its transmission system capital costs for a particular interconnection project was not supported by substantial evidence as required by Tex. Util. Code Ann. § 15.001 of the Public Utility Regulatory Act (PURA), Tex. Util. Code Ann. §§ 11.001-64.158, and Tex. Gov't Code Ann. § 2001.174(2)(E). The electric company's witness had reduced his estimate on rebuttal due to the fact that new technology increased the capacity of existing transmission facilities and eliminated the need to construct certain new projects; therefore no reasonable basis existed for the PUC's use of the original estimate. Reliant Energy, Inc. v. PUC, 153 S.W.3d 174, 2004 Tex. App. LEXIS 11280 (Tex. App. Austin 3d Dist. Dec. 16, 2004, no pet.).

Texas Department of Public Safety properly suspended an individual's driver's license for his refusal to give a breath specimen after he was arrested for suspicion of DWI. On review, the county court ruled that substantial evidence existed to affirm the administrative decision suspending his driver's license, and that the individual failed to prove that the administrative decision prejudiced his substantial rights. Parks v. Tex. Dep't of Pub. Safety, No. 01-03-00274-CV, 2004 Tex. App. LEXIS 9365 (Tex. App. Houston 1st Dist. Oct. 21, 2004).

Substantial evidence pursuant to Tex. Gov't Code Ann. § 2001.174 supported an order of the Public Utility Commission of Texas that raised the fuel factor component of the price-to-beat for an affiliated retail electric provider (AREP) because the Commission linked the measurement of the adequacy of the fuel factor to reflect significant changes in market price and the mechanism to correct inadequacies, and concluded that the New York Mercantile Exchange (NYMEX) was sufficient for both tasks, and because the Commission did not err in barring the order's opponents from presenting relevant evidence under Tex. R. Evid. 401 where evidence regarding the AREP's purchase price and any windfall profits resulting from the fuel-factor adjustment did not bear on whether the NYMEX index had changed the requisite amount. Furthermore, the fuel-factor increase did not violate a set limit on the price-to-beat under Tex. Util. Code Ann. § 39.202 because the adjustments under § 39.202(l) were not limited by § 39.202(p). City of Alvin v. PUC of Tex., 143 S.W.3d 872, 2004 Tex. App. LEXIS 7685 (Tex. App. Austin 3d Dist. Aug. 26, 2004, no pet.).

Court rejected a motorist's claim that field sobriety tests were inadmissible in connection with the administrative suspension of the motorist's license where, considering the standard of review under Tex. Transp. Code Ann. § 524.041 and Tex. Gov't Code Ann. § 2001.174, the court found that there was more than a scintilla of evidence to support an administrative law judge's inference that the officer acted in the following order regardless of the time notations entered on the officer's report: (1) that the officer stopped the motorist, (2) noticed signs of intoxication, (3) asked the motorist what and where the motorist had been drinking, (4) administered field sobriety tests, (5) arrested the motorist, and (6) then read the motorist his Miranda rights. Hesskew v. Tex. Dep't of Pub. Safety, 144 S.W.3d 189, 2004 Tex. App. LEXIS 6972 (Tex. App. Tyler July 30, 2004, no pet.).

The district court's judgment upholding the Board's second order was affirmed (1) suspending the doctor's medical license until he could show that he was safe and competent to practice medicine, (2) setting forth the minimum terms and conditions with which the doctor had to comply to make that showing, and (3) imposing an administrative penalty on the doctor where the record revealed ample evidence that the doctor over-administered anesthesia to the patient, failed to properly monitor her while she was sedated, and failed to properly respond when the patient went into respiratory arrest. Berezoski v. Tex. State Bd. of Med. Examiners, No. 03-03-00735-CV, 2004 Tex. App. LEXIS 6255 (Tex. App. Austin 3d Dist. July 15, 2004).

Revocation of a doctor's medical license was supported by substantial evidence where there was scientific evidence that two of the doctor's urine samples tested positive for cocaine, and one expert witness definitively testified that the tests foreclosed the possibility of ingestion by inadvertent passive exposure. Hinkley v. Tex. State Bd. of Med. Exam'rs, 140 S.W.3d 737, 2004 Tex. App. LEXIS 5078 (Tex. App. Austin 3d Dist. June 10, 2004, no pet.).

Sufficient evidence supported a two-year administrative license suspension where the driver had prior offenses and the officer's report indicated that the driver exhibited a number of traits consistent with intoxication. The officer's report was properly admitted, even though his name was omitted from the introductory portion of the affidavit. Tex.

*Dep't of Pub. Safety v. Salinas, No. 04-03-00576-CV, 2004 Tex. App. LEXIS 4257 (Tex. App. San Antonio May 12, 2004).*

Where substantial evidence supported the findings that an insurance licensee wrongfully paid premiums from another business account, paid bonuses or compensation for referring new business, offered to rebate premiums, and paid unlicensed persons for the services of an agent, revocation of an insurance license was proper. *Murphy v. Comm'r of Ins., No. 03-02-00676-CV, 2003 Tex. App. LEXIS 10156 (Tex. App. Austin 3d Dist. Dec. 4, 2003).*

Appellate review under Tex. *Gov't Code Ann. § 2001.174(f),* ensures that an agency does not act arbitrarily or without regard to the facts. *BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).*

Under Tex. *Gov't Code Ann. § 2001.174(f),* the evidentiary test of a decision of the Motor Vehicle Board of the Texas Department of Transportation is whether the evidence in its entirety is sufficient that reasonable minds could have reached the conclusion the agency must have reached to justify the disputed action. *BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).*

Under Tex. *Gov't Code Ann. § 2001.174,* an appellate court reviews the legal conclusions of the Motor Vehicle Board of the Texas Department of Transportation for errors of law, and the court reviews the board's findings of fact for support by substantial evidence. *BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).*

Because contested-case hearings before the Motor Vehicle Board of the Texas Department of Transportation are heard under the APA without a specified standard of review, the substantial evidence rule applies under Tex. *Gov't Code Ann. § 2001.174. BMW of N. Am., L.L.C. v. Motor Vehicle Bd., 115 S.W.3d 722, 2003 Tex. App. LEXIS 6923 (Tex. App. Austin 3d Dist. Aug. 14, 2003, no pet.).*

Substantial evidence supported a decision by the Texas Racing Commission to impose penalties under Tex. *Rev. Civ. Stat. Ann. art. 179e, § 3.07(b)* on a horse owner and trainer whose racing horse tested positive for prohibited drug; although the Commission's rules did not set forth any procedures for handling a urine sample that was inadvertently returned, the Commission acted reasonably in storing and resending the sample for testing, and the integrity of that sample had not been compromised. *Keeton v. Tex. Racing Comm'n, No. 03-03-00049-CV, 2003 Tex. App. LEXIS 6925 (Tex. App. Austin 3d Dist. Aug. 14, 2003).*

Substantial evidence supported the decision of an administrative law judge to suspend the driver's license of an individual arrested for operating a motor vehicle in a public place while intoxicated. *Tex. Dep't of Pub. Safety v. Hernandez, No. 13-02-293-CV, 2003 Tex. App. LEXIS 6333 (Tex. App. Corpus Christi July 24, 2003).*

Public utility commission properly denied an energy corporation's request for a rate increase to recover additional sums from its share in the construction of a nuclear power plant where the corporation failed to present a prima facie case that the additional cost of the plant's construction above the adjusted definitive cost estimate was prudent. *Entergy Gulf States, Inc. v. PUC, 112 S.W.3d 208, 2003 Tex. App. LEXIS 5940 (Tex. App. Austin 3d Dist. July 11, 2003, no pet.).*

In reviewing the Texas Commissioner of Insurance's decision denying the applicant a local recording agent's license under the substantial evidence rule, *Tex. Gov't Code Ann. § 2001.174,* the Commissioner's consideration of two 25-year-old felony convictions that involved the defrauding of elderly victims through the sale of an unauthorized insurance product was not erroneous under Tex. *Occ. Code Ann. §§ 53.021,*.022 and substantial evidence existed demonstrating that the applicant failed to make restitution and failed to provide letters of recommendation from prosecutors, law enforcement, and correctional officers, as required by Tex. *Occ. Code Ann. § 53.023(a)(6)(A)* and (b); thus, there was ample evidence in the record to support the Commissioner's decision denying the applicant a local recording agent's license. *Smith v. Montemayor, No. 03-02-00466-CV, 2003 Tex. App. LEXIS 5099 (Tex. App. Austin 3d Dist. June 19, 2003).*

Pursuant to Tex. Gov't Code Ann. § 2001.174, the district court's judgment affirming the Texas Commission on Environmental Quality's order granting the landfill operator a permit to build and operate a municipal landfill facility was proper because there was substantial evidence to support the findings and conclusions that: (1) the operator's groundwater-monitoring plan was sufficient; (2) a fault with displacement in the Holocene time did not exist within 200 feet of the proposed landfill; (3) the landfill liner's integrity would not be compromised; (4) the operator's floodplain analysis provided an accurate delineation of the 100-year floodplain; (5) the operator adequately demonstrated the effects of its proposed project on flood conditions with respect to soil-cover operations; and (6) the project would not significantly alter natural drainage. Coalition for Long Point Preservation v. Tex. Comm'n on Envtl. Quality, 106 S.W.3d 363, 2003 Tex. App. LEXIS 3987 (Tex. App. Austin 3d Dist. May 8, 2003, no pet.).

Under Tex. Gov't Code Ann. § 2001.174, when reviewing an administrative decision, the reviewing court must reverse or remand the case for further proceedings if the appellant's substantial rights are prejudiced because the administrative decision is not reasonably supported by substantial evidence. Tex. Dep't of Pub. Safety v. Mitchell, No. 2-01-398-CV, 2003 Tex. App. LEXIS 3407 (Tex. App. Fort Worth Apr. 17, 2003).

Texas Government Code, in providing only substantial-evidence review, specifically Tex. Gov't Code Ann. § 2001.174, does not deny equal protection of the laws under U. S. Const. amend. XIV, § 1, and Tex. Const. art. I, § 3. Pretzer v. Motor Vehicle Bd., 125 S.W.3d 23, 2003 Tex. App. LEXIS 277 (Tex. App. Austin 3d Dist. Jan. 15, 2003), aff'd in part and rev'd in part, 138 S.W.3d 908, 2004 Tex. LEXIS 193 (Tex. 2004).

Since statute making an inmate liable for intentional damage to state property did not specify a judicial standard of review, the "substantial evidence" standard of review applied and dictated that disciplinary conviction and fine imposed on inmate for property damage inmate caused during riot be supported by evidence that amounted to "only more than a mere scintilla" in order to uphold the prison's disciplinary action against the inmate. Warriner v. Tex. Dep't of Crim. Justice - Institutional Div., No. 13-01-678-CV, 2002 Tex. App. LEXIS 6410 (Tex. App. Corpus Christi Aug. 29, 2002).

Substantial evidence supported administrative law judge's decision to uphold the driver's suspension of the driver's license as the evidence showed the driver was driving while intoxicated, that reasonable suspicion supported the detention of the driver to investigate the accident the driver had been in, that probable cause existed to arrest the driver for driving while intoxicated, and that the suspension of his license was warranted. Tex. Dep't of Pub. Safety v. Celedon, No. 13-01-557-CV, 2002 Tex. App. LEXIS 6409 (Tex. App. Corpus Christi Aug. 29, 2002).

Trial court did not err in reversing the county civil service commission's holding that the suspended employee could be suspended as the constable's failure to show up at a hearing implicated the suspended employee's substantial rights and prejudiced him; suspended employee was entitled to have an order entered, pursuant to the civil service commission's own rules, nullifying the entire action against him. Bexar County Civ. Serv. Comm'n v. Casals, 63 S.W.3d 57, 2001 Tex. App. LEXIS 6561 (Tex. App. San Antonio Sept. 28, 2001, no pet.).

Substantial evidence existed to support administrative law judge's findings that widow was excluded from receiving benefits under insurance policy when evidence showed her dead husband was driving truck that overturned, killing himself and a passenger, and, if husband had survived, he would have been charged with manslaughter. Nobles v. Employees Ret. Sys. of Texas, 53 S.W.3d 483, 2001 Tex. App. LEXIS 4997 (Tex. App. Austin 3d Dist. July 26, 2001, no pet.).

Motor vehicle board's decision to grant a new franchisee's application for an auto-dealer license was based on substantial evidence within the meaning of Tex. Gov't Code Ann. § 2001.174(2)(E) where the evidence supported the elements of good cause under former Tex. Rev. Stat. Ann. art. 4413(36), § 4.06(c). Graff Chevrolet Co. v. Texas Motor Vehicle Bd., 60 S.W.3d 154, 2001 Tex. App. LEXIS 3896 (Tex. App. Austin 3d Dist. June 14, 2001, no pet.).

Under the substantial evidence rule of Tex. Gov't Code Ann. § 2001.174, the court erred in reversing a license suspension decision by the Texas Department of Public Safety; the administrative law judge did not err in finding, pursuant to Tex. Transp. Code Ann. § 524.035(a)(2), that the officer had probable cause to arrest defendant for

driving while intoxicated. *State Dep't of Pub. Safety v. Boeck, No. 13-99-812-CV, No. 13-99-00812-CV, 2001 Tex. App. LEXIS 2785 (Tex. App. Corpus Christi Apr. 26, 2001).*

Because a regional groundwater district was not a state agency with statewide jurisdiction, the Administrative Procedures Act did not apply, except that the substantial evidence rule contained in *Tex. Gov't Code Ann. § 2001.174* was made applicable under Tex. *Water Code Ann. § 36.253* for purposes of judicial review of district actions. *S. Plains Lamesa R.R. v. High Plains Underground Water Conservation Dist. No. 1, 52 S.W.3d 770, 2001 Tex. App. LEXIS 2497 (Tex. App. Amarillo Apr. 17, 2001, no pet.).*

Party appealing an agency's decision bears the burden of showing a lack of substantial evidence. The evidence in the record may actually weigh by a preponderance against the agency's decision, yet satisfy the substantial evidence standard. *H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 151 Oil & Gas Rep. 265, 2000 Tex. App. LEXIS 7557 (Tex. App. Austin 3d Dist. Nov. 9, 2000, no pet.).*

Reviewing court may not substitute its judgment for that of a state agency on questions committed to agency discretion. *H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 151 Oil & Gas Rep. 265, 2000 Tex. App. LEXIS 7557 (Tex. App. Austin 3d Dist. Nov. 9, 2000, no pet.).*

Under the substantial evidence standard of review applied to final orders of the Railroad Commission pursuant to Tex. *Gov't Code Ann. § 2001.174*, the proper test is whether the evidence in its entirety is sufficient that reasonable minds could have reached the conclusion that the Commission must have reached to justify the disputed action. The issue is whether the Commission acted arbitrarily and without regard to the facts. *H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 151 Oil & Gas Rep. 265, 2000 Tex. App. LEXIS 7557 (Tex. App. Austin 3d Dist. Nov. 9, 2000, no pet.).*

Final orders of the Railroad Commission are deemed to be prima facie valid and subject to review under the substantial evidence rule. An appellate court reviews the Commission's legal conclusions for errors of law and its findings of fact for support by substantial evidence. Tex. *Gov't Code Ann. § 2001.174. H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 151 Oil & Gas Rep. 265, 2000 Tex. App. LEXIS 7557 (Tex. App. Austin 3d Dist. Nov. 9, 2000, no pet.).*

When applying the substantial evidence standard of review under Tex. *Gov't Code Ann. § 2001.174(2)(E)*, a court may not substitute its judgment for the agency; the issue is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action. Substantial evidence requires more than a mere scintilla of evidence; the evidence may preponderate against the agency's decision and still be substantial evidence *Texas Dep't of Pub. Safety v. Favela, No. 03-99-00742-CV, 2000 Tex. App. LEXIS 6538 (Tex. App. Austin 3d Dist. Oct. 5, 2000).*

Under *Tex. Gov't Code Ann. 2001.174* a reviewing court must reverse and remand for further administrative proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. *Central Power & Light Co. v. PUC of Texas, 36 S.W.3d 547, 2000 Tex. App. LEXIS 4905 (Tex. App. Austin 3d Dist. July 27, 2000, no pet.).*

Under the Texas Administrative Procedures Act, Tex. *Gov't Code Ann. § 2001.174(2)*, the trial court has the authority to reverse an agency determination if it finds that the substantive rights of the appellant are prejudiced due to a constitutional or statutory violation, the decision was made unlawfully or affected by an error of law, not supported by substantial evidence, or was found to be arbitrary or capricious. *Dep't of Pub. Safety v. Breazeale, No. 14-97-01357-CV, 1999 Tex. App. LEXIS 7131 (Tex. App. Houston 14th Dist. Sept. 23, 1999).*

The standard of review of an agency decision is set out in Tex. *Gov't. Code Ann. § 2001.174*; a court may reverse the agency's decision only if the substantial rights of the appellant had been prejudiced; here, a railroad commission could reasonably have concluded that a well operator received actual notice of the hearing and that his failure to appear was due to conscious indifference rather than accident or mistake. *Anderson v. Railroad Comm'n, 963*

S.W.2d 217, 139 Oil & Gas Rep. 382, 1998 Tex. App. LEXIS 1329 (Tex. App. Austin 3d Dist. Mar. 5, 1998), pet. filed No. 04-1522.

Where a decedent dry-fired a gun several times, someone then replaced the clip in the gun without the decedent's knowledge, and the decedent fired the gun again, killing himself, the decision of the Board of Trustees of the Employees Retirement System of Texas that decedent's death was not accidental and denying the beneficiary recovery under the insurance policy was not supported by substantial evidence as required under Tex. Gov't Code Ann. § 2001.174. Butler v. Group Life & Health Ins. Co., 962 S.W.2d 296, 1998 Tex. App. LEXIS 858 (Tex. App. Austin 3d Dist. Feb. 12, 1998, no pet.).

Where death benefits were denied by the Board of Trustees of the Employees Retirement System of Texas on the basis that the death was not accidental and was caused by the decedent's intentional act, the decision was reviewed on the basis of the substantial evidence standard pursuant to Tex. Gov't Code Ann. § 2001.174 and Tex. Ins. Code Ann. art. 3.50-2, § 4B(d). Butler v. Group Life & Health Ins. Co., 962 S.W.2d 296, 1998 Tex. App. LEXIS 858 (Tex. App. Austin 3d Dist. Feb. 12, 1998, no pet.).

Substantial evidence was before the Board of Trustees of the Employees Retirement System of Texas to support its finding that air travel or flight caused decedent's runway accident and that this was a risk contemplated by the aviation exclusion in the accidental death benefits provision of the public employees life insurance plan; the standard of judicial review of the board's order was that provided for cases of "substantial evidence" review under the terms of the Administrative Procedures Act, specifically Tex. Gov't Code § 2001.174, and because its order was supported by substantial evidence and was not arbitrary or capricious, the district court erred in not affirming the decision of the board to deny accidental death benefits to decedent's spouse. Board of Trustees of the Emples. Retirement Sys. v. Benge, 942 S.W.2d 742, 1997 Tex. App. LEXIS 1519 (Tex. App. Austin 3d Dist. Mar. 27, 1997, no writ).

The Administrative Procedure Act (Act), Tex. Gov't Code Ann. § 2001.174, which empowered the Board of Trustees of the Employees Retirement System of Texas to prepare coverage specifications made under the Act, was construed in a manner that entitled the trustees' interpretation of policy exclusions to be given judicial respect regarding any uncertainty where the interpretation was reasonable; the finding that an optometrist's "vision therapy treatments" fell within the policy exclusion of "orthoptics or visual training" was held to be reasonable. McMullen v. Employees Retirement Sys., 935 S.W.2d 189, 1996 Tex. App. LEXIS 5142 (Tex. App. Austin 3d Dist. Nov. 20, 1996, no writ).

Under Tex. Gov't Code Ann. § 2001.174(2)(E) the court was not required to reverse the Texas Department of Agriculture order imposing administrative penalties on an aerial crop-dusting service because the service's substantial rights were not prejudiced where the agency decision finding that the service had violated a regulation by spraying an automobile with pesticide was reasonably supported by substantial evidence. Lauderdale v. Texas Dep't of Agric. 923 S.W.2d 834, 1996 Tex. App. LEXIS 2221 (Tex. App. Austin 3d Dist. May 29, 1996, no writ).

A decision of the Texas Railroad Commission was upheld on appeal where the decision was supported by substantial evidence because, under the substantial evidence standard of review pursuant to Tex. Gov't Code § 2001.174, the review of a decision of a state agency that fell within the agency's authority required the court to give significant deference to the agency in its field of expertise and did not allow the court to substitute its judgment for that of the agency. Railroad Comm'n v. Torch Operating Co., 912 S.W.2d 790, 131 Oil & Gas Rep. 128, 1995 Tex. LEXIS 162 (Tex. 1995).

Appellate court review is governed by 2001.174(2)(E) of the Administrative Procedure Act ("APA"), Tex. Gov't Code Ann. § 2001.174, under which appellate courts review for substantial evidence questions committed to an agency's discretion and challenged by the parties on appeal; in conducting a substantial evidence review, appellate courts determine whether the evidence as a whole is such that reasonable minds could have reached the same conclusion as the agency in the disputed action. Texas Educ. Agency v. Goodrich Indep. Sch. Dist., 898 S.W.2d 954, 1995 Tex. App. LEXIS 1038 (Tex. App. Austin 3d Dist. May 17, 1995, no writ).

Although there was evidence that doctor charged more than other doctors for the services rendered or that doctor charged for services that other doctors would not charge for, the evidence was insufficient to support a finding of flagrant or persistent overcharging; the court held that doctor's evidence that he sent an enormous amount of time with the patients because of their complicated cases showed that the charges were not excessive and was not refuted. *Texas State Bd. of Medical Examiners v. Birenbaum, 891 S.W.2d 333, 1995 Tex. App. LEXIS 44 (Tex. App. Austin 3d Dist. Jan. 11, 1995, no writ).*

In reviewing the findings of the hearings examiner, both the trial court and the appellate court must employ the substantial evidence standard; an appellant bears the burden to prove that the findings, inferences, conclusions, and decisions of the administrative agency are not supported by substantial evidence, and in making the determination, the trial and appellate courts must review all the evidence presented; to sustain the burden under this standard, the appellant must show that no substantial evidence existed at the time of the hearing to support the order, and the court may not substitute its judgment for the agency's as to the weight of evidence on questions committed to the discretion of the agency but may reverse the decision if the administrative findings, inferences, conclusions, or decisions 1) violate constitutional or statutory provisions, 2) exceed the statutory authority of the agency, 3) rely on unlawful procedure, 4) are affected by other error of law, 5) are not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole, or 6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; substantial evidence is more than a scintilla, but may be less than a preponderance, and if reasonable minds could have reached the conclusion of the administrator, the court must uphold the decision. *Fox v. Medina, 848 S.W.2d 865, 1993 Tex. App. LEXIS 479 (Tex. App. Corpus Christi Feb. 18, 1993, no writ).*

Substantial evidence existed, under former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e)(5), in the form of expert witness testimony, to support appellant's commission's order denying appellee's request for an amendment to the allocation formula of the field rules of an oil field. *V-F Petroleum v. A.K. Guthrie Operating Co., 792 S.W.2d 508, 118 Oil & Gas Rep. 341, 1990 Tex. App. LEXIS 1868 (Tex. App. Austin 3d Dist. May 30, 1990, no writ).*

Where the Texas State Board of Pharmacy revoked a pharmacist license held by an individual and his pharmacy, the revocation was improper; the Board's conclusions of law were not fairly supported by its findings of underlying fact, as there was no evidence that filled prescriptions did not have a therapeutic purpose. *Texas State Bd. of Pharmacy v. Seely, 764 S.W.2d 806, 1988 Tex. App. LEXIS 3416 (Tex. App. Austin 3d Dist. Dec. 21, 1988, no writ).*

Substantial evidence test under the Administrative Procedure and Texas Register Act, former Tex. Rev. Civ. Stat. Ann. art. 6252-13a (now *Tex. Gov't Code Ann. § 2001.174*) must be applied to judicial review of decisions of the Texas State Board of Dental Examiners to determine if there was some reasonable basis for petitioner's action; on review the appellate court erroneously disregarded this test when it applied a test based on due process consideration. *Texas State Bd. of Dental Examiners v. Sizemore, 759 S.W.2d 114, 1988 Tex. LEXIS 80 (Tex. 1988), cert. denied, 490 U.S. 1080, 109 S. Ct. 2100, 104 L. Ed. 2d 662, 1989 U.S. LEXIS 2554 (U.S. 1989).*

Pursuant to Tex. *Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e)* (now Tex. *Gov't Code Ann. § 2001.174*), a reviewing court is only allowed to reverse a Texas Board of Medical Examiners decision in the absence of substantial evidence and only if the absence had prejudiced the substantial rights of the physician. *Balla v. Texas State Bd. of Medical Examiners, 693 S.W.2d 715, 1985 Tex. App. LEXIS 6827 (Tex. App. Dallas May 31, 1985, no writ).*

The Texas Administrative Procedure and Texas Register Act, former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e)(5) (now *Tex. Gov't Code Ann. § 2001.174*), authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; in applying the test, a court is prohibited from substituting its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion; a reviewing court may reverse an agency decision because of the absence of substantial evidence only if such absence has prejudiced substantial rights of the litigant. *Texas Health Facilities Com. v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 1984 Tex. LEXIS 319 (Tex. 1984).*

Trial court's order sustaining a determination by the Texas Real Estate Commission suspending a real estate broker's license for breach of an alleged promise to a buyer to pay for the fencing of a lot if purchased was reversed where the record did not support the requisite elements of fraud by substantial evidence as required by the Administrative Procedure and Texas Register Act, former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e)(5) and ordinary breach of contract did not constitute fraud. *Texas Real Estate Com. v. Hinde, 627 S.W.2d 537, 1982 Tex. App. LEXIS 3815 (Tex. App. Fort Worth Jan. 28, 1982, no writ).*

**Administrative Law: Judicial Review: Standards of Review: Unlawful Procedures**

**Overview:** In a water pollution case, substantial evidence supported appellee's findings of appellant's violation of Tex. *Water Code Ann. § 26.121(a)(2)* because the investigator observed stockpiles of mined rocks, excavation equipment, and a pump with a hose that extended from the pit to the creek.

- The appellate court reviews the Texas Commission on Environmental Quality's (TCEQ) orders under the substantial evidence rule to determine whether the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions violate a constitutional or statutory provision; in excess of the agency's statutory authority; made through unlawful procedure; affected by other error of law; not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(A)-(F);* Tex. *Water Code Ann. § 7.064.* The court's inquiry into whether an agency's decision meets this standard considers whether the evidence supports the agency's determination, asking not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

*Tex. Architectural Aggregate, Inc. v. Tex. Comm'n on Env't Quality, No. 03-22-00169-CV, 2023 Tex. App. LEXIS 9152 (Tex. App. Austin 3d Dist. Dec. 7, 2023).*

**Overview:** Under *Tex. Gov't Code Ann. § 2001.174(2),* the appellee did not satisfy her burden to show her substantial rights were prejudiced by the decision to suspend her license because she failed to explain how she was prejudiced by the delay in proceedings, how her due process rights were violated, or how she was denied her right to her day in court.

- In an appeal from an agency's final order, both the trial court and the appellate court must review the agency's decision under the substantial evidence rule codified in the Administrative Procedure Act, *Tex. Gov't Code Ann. § 2001.174.* Under this rule, the appellate court must reverse or remand an agency decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2).*

*Tex. Dep't of Pub. Safety v. Zabroky, No. 04-22-00162-CV, 2023 Tex. App. LEXIS 148 (Tex. App. San Antonio Jan. 11, 2023).*

**Overview:** Appellants had not shown the Board prejudiced its substantial rights as to the Tex. *Occ. Code Ann. § 2301.468* claim by adopting the ALJ's conclusion as the record showed the Board considered all the evidence presented at the hearing, weighed the evidence, and reached a reasonable conclusion— appellant failed to prove unreasonable discrimination.

• The highly deferential substantial evidence standard of the Texas Administrative Procedure Act (APA) governs our judicial review of the Board's final order. Tex. Gov't Code Ann. § 2001.174. The APA authorizes reversal or remand of an agency's decision that prejudices an appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision; (2) exceed the agency's statutory authority; (3) were made through unlawful procedure; (4) are affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2)(A)-(D), (F).

New World Car Nissan, Inc. v. Hyundai Motor Am., 658 S.W.3d 754, 2022 Tex. App. LEXIS 8681 (Tex. App. El Paso Nov. 29, 2022, no pet.);

**Overview:** *Because an insurance carrier took final action on a medical bill and request for reconsideration, the provider requested medical fee dispute resolution, and the bill and request were timely filed, the provider did not forfeit its right to reimbursement for failure to timely submit a claim for payment, Tex. Lab. Code Ann. § 408.027(a).*

• An appellate court's review of a State Office of Administrative Hearings order is governed by the substantial evidence rule. Tex. Gov't Code Ann. § 2001.174, Texas Workers' Compensation Act, Tex. Lab. Code Ann. § 410.255(b). Under that standard, the court of appeals must reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2). When applying the substantial evidence rule, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.

Facility Ins. Corp. v. Patients Med. Ctr., No. 03-17-00666-CV, 2022 Tex. App. LEXIS 5823 (Tex. App. Austin 3d Dist. Sept. 8, 2022).

**Overview:** *In appeal arising out of suit for judicial review of administrative order, administrative decision was clearly unwarranted exercise of discretion because plaintiff's substantial rights were prejudiced. It was forced to attend three-day hearing and use its resources trying case when dispute had already been settled by Tex. R. Civ. P. 11 agreement.*

• Final orders of the Railroad Commission of Texas are deemed to be prima facie valid and are subject to review under the substantial evidence rule. The substantial evidence rule, as codified in the Administrative Procedure Act (APA), requires reversal or remand if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, (5) are not reasonably supported by substantial evidence, or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2). The appellate court applies this analysis without deference to the district court's judgment.

Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex., No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022).

**Overview:** *Substantial evidence supported the Texas Commission on Environmental Quality's conclusion that a partnership☐ despite having contracted out the day-to-day running of a coal mine☐☐ remained responsible for the overall operation of the mine and was its "operator" under* 30 Tex. Admin. Code § 305.2(24).

- Courts reviewing agency action under the Administrative Procedure Act may reverse or remand agency orders, and: shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2).

Tex. Comm'n on Env't Quality v. Maverick Cnty., 642 S.W.3d 537, 2022 Tex. LEXIS 150 (Tex. 2022).

**Overview:** *In a dispute over a wastewater discharge permit, substantial evidence supported the Texas Commission on Environmental Quality☐ s findings of fact that the application was complete under* 30 Tex. Admin. Code 305.45 *because the evidence demonstrated that it was standard practice for TCEQ to impose sampling requirements on future discharged.*

- An appellate court reviews the the Texas Commission on Environmental Quality (TCEQ) order under the substantial evidence rule to determine whether the Permit Contestants substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code § 2001.174(2)(A)-(F). The appellate court's inquiry into whether an agency's decision meets the substantial evidence standard considers whether the evidence supports the agency's determination, asking not whether the decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

Tex. Comm☐n on Env☐t Quality v. Maverick Cnty., 2022 Tex. App. LEXIS 5169 (July 27, 2022).

Texas Commission on Environmental Quality's conclusion that a coalition was not an affected person was made through improper procedure, was affected by error of law, and was an abuse of discretion under Tex. Gov't Code Ann. § 2001.174(2)(C), (D), (F); the court reversed. Bosque River Coalition v. Tex. Comm'n on Envtl. Quality, 347 S.W.3d 366, 2011 Tex. App. LEXIS 6043 (Tex. App. Austin 3d Dist. Aug. 2, 2011), pet. withdrawn No. 11-0737, 2013 Tex. LEXIS 74 (Tex. Feb. 1, 2013), rev'd, 413 S.W.3d 403, 2013 Tex. LEXIS 773 (Tex. 2013).

**Administrative Law: Separation of Powers: Jurisdiction**

Agreed Final Judgment purported to find facts (that the city had met the criteria for issuance of a permit) and to render judgment granting a permit, and Tex. Gov't Code Ann. § 2001.174 did not empower courts to take such action, which went beyond their limited authority in a substantial-evidence review, and having concluded that there was error prejudicing substantial rights of the city's, the court's only options were to reverse or remand the case for further proceedings; accordingly, the district court's Agreed Final Judgment, which had the effect of rendering a specific judgment, contravened the direct restriction on the special statutory jurisdiction delegated to the court in its substantial-evidence review, and because the judgment violated the separation-of-powers doctrine of the Texas Constitution, Tex. Const. art. II, § 1, it was void and its rendition was fundamental error. Save Our Springs Alliance, Inc. v. City of Kyle, 382 S.W.3d 540, 2012 Tex. App. LEXIS 7548 (Tex. App. Austin 3d Dist. Aug. 30, 2012, no pet.).

Although appellee acknowledged that appellant owned 100 percent of the leasehold oil and gas estate, and that he had the right "to inject saltwater under the tract produced from the tract" to benefit that lease tract, resolution of appellant's complaint turned on construction of the deeds in appellee's chain of title—specifically, the parameters of the "surface estate" conveyed through those instruments. Thus, it was the sort of issue that was beyond the Texas Railroad Commission's jurisdiction under 16 Tex. Admin. Code § 3.9. Rosenthal v. R.R. Comm'n, No. 03-09-00015-CV, 2009 Tex. App. LEXIS 6522 (Tex. App. Austin 3d Dist. Aug. 20, 2009).

## Antitrust & Trade Law: Consumer Protection: Vehicle Warranties: Lemon Laws

In adopting an administrative law judge's (ALJ) decision in a Texas Lemon Law hearing unchanged and issuing its final order without enforcing the requirement of former 34 Tex. Admin. Code § 215.206 that the vehicle be present at the hearing, the Motor Vehicle Division of the Texas Department of Motor Vehicles failed to follow the unambiguous language of its own rule and acted arbitrarily and capriciously such that the manufacturer's substantial rights were prejudiced when it was denied the opportunity to present its full defense, including inspection and testing of the vehicle by the ALJ. Winnebago Indus. v. Tex. DMV, No. 03-12-00760-CV, 2014 Tex. App. LEXIS 3836 (Tex. App. Austin 3d Dist. Apr. 10, 2014).

## Business & Corporate Law: Distributorships & Franchises: Assignments & Transfers

Remand for further administrative proceedings was proper under the primary jurisdiction doctrine after a trial court erred in denying a manufacturer's plea to the jurisdiction in a dealership transfer case; however, the remand order could not require the agency to act. Ford Motor Co. v. Butnaru, 157 S.W.3d 142, 2005 Tex. App. LEXIS 465 (Tex. App. Austin 3d Dist. Jan. 21, 2005, no pet.).

## Business & Corporate Law: Distributorships & Franchises: Causes of Action: Breach of Contract

In a dispute under a franchise agreement between the manufacturer and the dealer, the agency did not err in concluding that the dealer's sales performance did not amount to a breach of the agreement because the manufacturer did not present any evidence to establish that the dealer failed to substantially fulfill its requirements; and the agency did not err in concluding that the dealer did not breach the agreement by willfully falsifying its tax returns as there was no evidence establishing that the dealer acted with evil intent or legal malice. Therefore, the manufacturer failed to show good cause for terminating the franchise agreement. Nissan N. Am., Inc. v. Tex. DMV, 592 S.W.3d 480, 2019 Tex. App. LEXIS 10136 (Tex. App. Texarkana Nov. 22, 2019, no pet.).

## Business & Corporate Law: Distributorships & Franchises: Terminations: Good Cause

In a dispute under a franchise agreement between the manufacturer and the dealer, the agency did not err in concluding that the dealer's sales performance did not amount to a breach of the agreement because the manufacturer did not present any evidence to establish that the dealer failed to substantially fulfill its requirements; and the agency did not err in concluding that the dealer did not breach the agreement by willfully falsifying its tax returns as there was no evidence establishing that the dealer acted with evil intent or legal malice. Therefore, the manufacturer failed to show good cause for terminating the franchise agreement. Nissan N. Am., Inc. v. Tex. DMV, 592 S.W.3d 480, 2019 Tex. App. LEXIS 10136 (Tex. App. Texarkana Nov. 22, 2019, no pet.).

## Civil Procedure: Parties: General Overview

Redundant remedies doctrine did not bar challenges to licensing regulations by unlicensed individuals in the business of eyebrow threading, even if some of them could seek substantive relief through the administrative process, because there was no administrative action pending against one of the individuals. Patel v. Tex. Dep't of

Licensing And Regulation, 464 S.W.3d 369, 2012 Tex. App. LEXIS 6187 (Tex. App. Austin 3d Dist. July 25, 2012), rev'd, 469 S.W.3d 69, 2015 Tex. LEXIS 617 (Tex. 2015).

## Civil Procedure: Parties: Joinder: Necessary Parties

Where one of the pooled unit's property owners sought to dissolve the gas pooling unit as moot, but, on appeal, failed to provide a party, who was originally an intervenor but was a party under the definition provided for in Tex. Gov't Code Ann. § 2001.003(4), with service of a copy of the petition for judicial review, the complaining owner did not meet a necessary condition on which its right to seek judicial review of the Texas Railroad Commission's order depended and, thus, the complaining owner did not prove its right to the relief it sought from the trial court; pursuant to Tex. Gov't Code Ann. § 2001.174, the trial court had no choice but to affirm the order of the Commission denying the complaining owner's request to dissolve the pooling unit and it did affirm that order. Helton v. R.R. Comm'n, 126 S.W.3d 111, 164 Oil & Gas Rep. 1057, 2003 Tex. App. LEXIS 4832 (Tex. App. Houston 1st Dist. June 5, 2003, no pet.).

## Civil Procedure: Declaratory Judgment Actions: State Judgments: Factors

**Overview:** Appeal from the judgment of trial court failed because the APA applied to appellant's appeal of the cease-and-desist order and he was therefore required to file his petition for review not later than the 30th day after the date the decision or order that was the subject of complaint was final and appealable under Tex. Gov't Code Ann. § 2001.176(a).

- The Uniform Declaratory Judgment Act (UDJA) does not enlarge a trial court's jurisdiction, but is merely a procedural device for deciding cases already within a court's jurisdiction. A litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit. Moreover, under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels. The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA. The avenue applicable here is Tex. Gov't Code Ann. § 2001.174, which allows state courts to reverse or remand existing agency orders, but not enjoin future ones. Thus, the test for redundancy under the Administrative Procedure Act (APA) is whether the declaration sought goes beyond reversal of an agency order.

    Gonzalez v. State Medical Bd., No. 03-22-00205-CV, 2023 Tex. App. LEXIS 8250 (Tex. App. Austin 3d Dist. Oct. 31, 2023).

## Civil Procedure: Declaratory Judgment Actions: State Judgments: Scope

**Overview:** Appeal from the judgment of trial court failed because the APA applied to appellant's appeal of the cease-and-desist order and he was therefore required to file his petition for review not later than the 30th day after the date the decision or order that was the subject of complaint was final and appealable under Tex. Gov't Code Ann. § 2001.176(a).

- The Uniform Declaratory Judgment Act (UDJA) does not enlarge a trial court's jurisdiction, but is merely a procedural device for deciding cases already within a court's jurisdiction. A litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit. Moreover, under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels. The focus of the doctrine is on the initiation of the case,

that is, whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA. The avenue applicable here is *Tex. Gov't Code Ann. § 2001.174*, which allows state courts to reverse or remand existing agency orders, but not enjoin future ones. Thus, the test for redundancy under the Administrative Procedure Act (APA) is whether the declaration sought goes beyond reversal of an agency order.

*Gonzalez v. State Medical Bd., No. 03-22-00205-CV, 2023 Tex. App. LEXIS 8250 (Tex. App. Austin 3d Dist. Oct. 31, 2023).*

Business owner could not bring claims for declaratory relief under *Tex. Civ. Prac. & Rem. Code Ann. § 37.004* against state agency regarding practicing cosmetology without a license as the owner had already sought judicial review of the agency decision under *Tex. Gov't Code Ann. § 2001.174*; the remedy would be redundant as the basis for both claims was that eyebrow threading did not fall within the definition of cosmetology in Tex. *Occ. Code Ann. § 1602.002(a)*, a proper basis for a claim for judicial review under *Tex. Gov't Code Ann. § 2001.174(2)(A)* & (B). *Kuntz v. Khan, No. 03-10-00160-CV, 2011 Tex. App. LEXIS 446 (Tex. App. Austin 3d Dist. Jan. 21, 2011).*

Declaratory judgment action against the Texas State Board of Public Accountancy claiming that the Board's standards and principles were so unconstitutionally vague that they did not sufficiently identify what constituted a violation was redundant as auditors, who had their professional certificates revoked or suspended, had filed an administrative appeal under Tex. *Occ. Code Ann. § 901.556(a). Tex. State Bd. of Pub. Accountancy v. Bass, No. 03-09-00251-CV, 2011 Tex. App. LEXIS 294 (Tex. App. Austin 3d Dist. Jan. 14, 2011).*

In a case where a power agency sought judicial review of a final order from the Public Utility Commission of Texas under Tex. *Util. Code Ann. § 15.001* and Tex. *Gov't Code Ann. § 2001.174*, declaratory relief on the ground of jurisdiction was redundant and unnecessary since the issue was already raised. *Tex. Mun. Power Agency v. PUC of Tex., 260 S.W.3d 647, 2008 Tex. App. LEXIS 5555 (Tex. App. Austin 3d Dist. July 24, 2008, no pet.).*

## Civil Procedure: Declaratory Judgment Actions: State Judgments: Uniform Declaratory Judgment Act

**Overview:** Appeal from the judgment of trial court failed because the APA applied to appellant's appeal of the cease-and-desist order and he was therefore required to file his petition for review not later than the 30th day after the date the decision or order that was the subject of complaint was final and appealable under *Tex. Gov't Code Ann. § 2001.176(a)*.

- The Uniform Declaratory Judgment Act (UDJA) does not enlarge a trial court's jurisdiction, but is merely a procedural device for deciding cases already within a court's jurisdiction. A litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit. Moreover, under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels. The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA. The avenue applicable here is *Tex. Gov't Code Ann. § 2001.174*, which allows state courts to reverse or remand existing agency orders, but not enjoin future ones. Thus, the test for redundancy under the Administrative Procedure Act (APA) is whether the declaration sought goes beyond reversal of an agency order.

*Gonzalez v. State Medical Bd., No. 03-22-00205-CV, 2023 Tex. App. LEXIS 8250 (Tex. App. Austin 3d Dist. Oct. 31, 2023).*

Trial court lacked jurisdiction over appellant's Uniform Declaratory Judgments Act claims under the redundant remedies doctrine because appellant had an Administrative Procedure Act suit pending in the trial court. The trial court did not err in granting the Railroad Commission's plea to the jurisdiction or in failing to grant declaratory relief.

*Optimal Utils., Inc. v. Smitherman*, No. 13-16-00385-CV, 2017 Tex. App. LEXIS 7621 (Tex. App. Corpus Christi Aug. 10, 2017), reh'g denied, No. 13-16-00385-CV, 2017 Tex. App. LEXIS 12004 (Tex. App. Corpus Christi Sept. 15, 2017).

## Civil Procedure: Settlements: Settlement Agreements

In appeal arising out of suit for judicial review of administrative order, administrative decision was clearly unwarranted exercise of discretion because plaintiff's substantial rights were prejudiced. It was forced to attend three-day hearing and use its resources trying case when dispute had already been settled by the agreement. *Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex.*, No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022).

## Civil Procedure: Settlements: Settlement Agreements: Enforcement

In a dispute between an applicant for renewal of a landfarming permit and the Railroad Commission of Texas, an ALJ erred by refusing to remove a hearing from the calendar after the parties filed a joint motion to dismiss the hearing setting pursuant to an attached Tex. R. Civ. P. 11 agreement, conducting the hearing, and denying the permit. Contrary to the Commission's position, the agreement required the applicant to take certain actions to obtain the permit and was enforceable. *Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex.*, No. 03-19-00070-CV, 2021 Tex. App. LEXIS 1017 (Tex. App. Austin 3d Dist. Feb. 10, 2021), op. withdrawn, sub. op., reh'g denied, No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022).

## Civil Procedure: Pretrial Matters: Continuances

In an administrative hearing to contest appellant's suspension of his driver's license, the ALJ acted within his discretion in granting an oral motion for continuance filed by the Texas Department of Public Safety as a response to late production of discovery; appellant did not show that the ruling granting a continuance prejudiced his substantial rights. For example, appellant did not assert that the continuance deprived him of evidence or meritorious defenses that he otherwise would have presented; and appellant did not claim that he was prejudiced by the Department's discovery mistake or its late production of the correct offense report. *Tex. Dep't of Pub. Safety v. Gonzalez*, 555 S.W.3d 714, 2018 Tex. App. LEXIS 4965 (Tex. App. Houston 1st Dist. July 3, 2018, no pet.).

## Civil Procedure: Pretrial Matters: Subpoenas

When a driver contested the suspension of the driver's license, it was not an abuse of discretion for an administrative law judge to quash the driver's subpoena of an arresting officer because the subpoena's return of service did not comply with Tex. R. Civ. P. 176.5(b), as the officer did not personally execute the return to indicate the officer accepted service, and the return did not state the officer was served by an alternative means. *Curry v. Tex. Dep't of Pub. Safety*, 472 S.W.3d 346, 2015 Tex. App. LEXIS 8153 (Tex. App. Houston 1st Dist. Aug. 4, 2015, no pet.).

## Civil Procedure: Trials: Jury Trials: Right to Jury Trial

By refusing to strike the Edwards Aquifer Authority's jury demand and setting landowners' appeal of the Authority's permitting decision for a jury trial, a trial court failed to apply the law correctly and fundamentally altered the nature of the judicial review prescribed by statute because the Authority had a clear right to proceed to a final determination without a jury, pursuant to Tex. Water Code Ann. § 36.253 and Tex. Gov't Code Ann. § 2001.174 and Tex. Gov't Code Ann. § 2001.175(e). *In re Edwards Aquifer Auth.*, 217 S.W.3d 581, 2006 Tex. App. LEXIS 6934

*[Tex. App. San Antonio Oct. 18, 2006]*, reh'g denied, *No. 04-06-00254-CV, 2006 Tex. App. LEXIS 11291 [Tex. App. San Antonio Dec. 5, 2006]*.

## Civil Procedure: Appeals: Records on Appeal

In a suit involving a utility rate increase, although *Tex. R. App. P. 54(a)* precluded appellate court from considering a late-filed statement of facts, it did not require affirming a judgment as a matter of course because the statement of facts was not mandatory for appeal under *Tex. R. App. P. 50(a)*; the appellate court was obligated to address every issue under Tex. R. App. P. 90(a), and some issues did not require reference to a statement of facts; and while an appellate court generally could not determine whether an agency finding was supported by "substantial evidence" without reviewing the administrative record pursuant to *Tex. Gov't Code Ann. § 2001.174(2)(E)*, that would not preclude the appellate court from addressing issues, such as those involving legal error, that did not require a statement of facts. *Office of Pub. Util. Counsel v. Public Util. Comm'n, 878 S.W.2d 598, 1994 Tex. LEXIS 125 [Tex. 1994]*.

## Civil Procedure: Appeals: Standards of Review

***Overview:*** *Substantial evidence supported the Texas Commission on Environmental Quality's conclusion that a partnership*◻ ◻*despite having contracted out the day-to-day running of a coal mine*◻ ◻*remained responsible for the overall operation of the mine and was its "operator" under* 30 Tex. Admin. Code § 305.2(24).

- The Supreme Court of Texas does not read *Tex. Gov't Code Ann. § 2001.174(1)* to obligate courts of appeals to reach all issues raised by the parties regardless of whether the issues are necessary to dispose of the appeal.

*Tex. Comm'n on Env't Quality v. Maverick Cnty., 642 S.W.3d 537, 2022 Tex. LEXIS 150 [Tex. 2022]*.

## Civil Procedure: Appeals: Standards of Review: Reversible Errors

***Overview:*** An arbitrator's award under Tex. Ins. Code. Ann. § 1467.083 was proper because although a doctor was reimbursed only $1,672.07 for seemingly complex and life-saving medical care, there was at least some evidence to support the award, such as from the benchmarking database used to make reimbursement determinations.

- *Tex. Gov't Code Ann. § 2001.174* requires reversal if an appellant's substantial rights were prejudiced by an agency decision.

*Michael Nazarian MD Assoc. LLC v. Aetna Life Ins. Co., No. 02-22-00109-CV, 2023 Tex. App. LEXIS 2796 [Tex. App. Fort Worth Apr. 27, 2023]*.

## Civil Procedure: Appeals: Standards of Review: Substantial Evidence: General Overview

In employing a substantial evidence standard of review, the appellate court determined trial court erred in reversing the decision of the ALJ suspending the driver's privileges to drive; the prosecutor's decisions to dismiss the criminal charges did not amount to an acquittal. *Tex. Dep't of Pub. Safety v. Nielsen, 102 S.W.3d 313, 2003 Tex. App. LEXIS 2427 [Tex. App. Beaumont Mar. 20, 2003, no pet.]*.

Where a driver was asked to provide a breath sample to the investigating officer, and attempted to do so, but her attempts were unsuccessful solely due to her intoxication, under *Tex. Penal Code Ann. § 8.04(a)*, the driver could not successfully argue that the initial stop of her car was not supported by reasonable suspicion, under *Tex. Gov't*

Code Ann. § 2001.174(2)(D) and 1 Tex. Admin. Code § 159.37(a), because substantial evidence supported the findings that reasonable suspicion existed for the police officer to stop her for driving under the influence when the sole basis of the call of another motorist following the driver. *Malkowsky v. Texas Dep't of Pub. Safety*, 53 S.W.3d 873, 2001 Tex. App. LEXIS 5554 (Tex. App. Houston 1st Dist. Aug. 15, 2001, no pet.).

In a suit involving a utility rate increase, although *Tex. R. App. P. 54(a)* precluded appellate court from considering a late-filed statement of facts, it did not require affirming a judgment as a matter of course because the statement of facts was not mandatory for appeal under *Tex. R. App. P. 50(a)*; the appellate court was obligated to address every issue under Tex. R. App. P. 90(a), and some issues did not require reference to a statement of facts; and while an appellate court generally could not determine whether an agency finding was supported by "substantial evidence" without reviewing the administrative record pursuant to *Tex. Gov't Code Ann. § 2001.174(2)(E)*, that would not preclude the appellate court from addressing issues, such as those involving legal error, that did not require a statement of facts. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 878 S.W.2d 598, 1994 Tex. LEXIS 125 (Tex. 1994).

### Constitutional Law: Bill of Rights: Fundamental Rights: Search & Seizure: Probable Cause

Administrative law judge's (ALJ) suspension of a driver's license was supported by substantial evidence where the arresting officer surmised in his sworn report that the driver had been driving while intoxicated because he emitted a strong odor of alcohol, had glassy eyes and slurred speech, and his movements were slowed and staggered, and where the record revealed that the driver admitted to drinking a few beers before the accident. That gave the officer reasonable suspicion to investigate the driver further, and the officer's reasonable suspicion evolved into probable cause when he observed five out of the six points of the horizontal gaze nystagmus test and the driver refused to provide a breath specimen. *Tex. Dep't of Pub. Safety v. Burrer*, No. 04-03-00896-CV, 2005 Tex. App. LEXIS 3534 (Tex. App. San Antonio May 11, 2005).

### Constitutional Law: Bill of Rights: Fundamental Rights: Procedural Due Process: Scope of Protection

Professional disciplinary action against a doctor, based on stale allegations of improper touching of a female patient's breasts, resulted in a due process violation that caused actual prejudice to the doctor's substantial rights, and the action was therefore arbitrary and capricious under Tex. *Gov't Code Ann. § 2001.174(2)(A)*; staleness was not a significant concern as to another patient's complaints, however, because contemporaneous documentary evidence of the complaints existed. *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005, no pet.).

Medical board did not deny a physician due process regarding a disciplinary hearing that took place six years after the incidents at issue because under Tex. *Gov't Code Ann. § 2001.174(2)(A)*, because he failed to establish actual prejudice, and neither party cited any Texas case addressing the degree or nature of delay in an agency disciplinary action that would give rise to constitutionally significant prejudice. Witness's reliance on notes established actual prejudice. *Granek v. Tex. State Bd. of Med. Examiners*, No. 03-03-00698-CV, 2005 Tex. App. LEXIS 3396 (Tex. App. Austin 3d Dist. May 5, 2005), op. withdrawn, sub. op., No. 03-03-00698-CV, 2005 Tex. App. LEXIS 6232 (Tex. App. Austin 3d Dist. Aug. 3, 2005).

### Constitutional Law: Substantive Due Process: Scope of Protection

In a case in which a water conservancy association contested the approval of Amendment 1318C, which resulted in the issuance by the Texas Commission on Environmental Quality (TCEQ) of Certificate of Adjudication No. 14-1318C, the association failed to establish the violation of a constitutionally protected property right by an arbitrary use of power by TCEQ. Therefore, the association's point of error asserting that its due process rights were violated was overruled. *Concho River Basin Water Conservancy Ass'n v. Tex. Comm'n on Envtl. Quality*, No. 07-12-00302-CV, 2013 Tex. App. LEXIS 14622 (Tex. App. Amarillo Dec. 3, 2013).

**Constitutional Law: Equal Protection: Scope of Protection**

Texas Government Code, in providing only substantial-evidence review, specifically Tex. Gov't Code Ann. § 2001.174, does not deny equal protection of the laws under U.S. Const. amend. XIV, § 1, and Tex. Const. art. I, § 3. Pretzer v. Motor Vehicle Bd., 125 S.W.3d 23, 2003 Tex. App. LEXIS 277 (Tex. App. Austin 3d Dist. Jan. 16, 2003), aff'd in part and rev'd in part, 138 S.W.3d 908, 2004 Tex. LEXIS 193 (Tex. 2004).

**Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Driving Under the Influence: General Overview**

At the license suspension hearing, the arresting officer testified that the driver's vehicle was moving erratically, the officer smelled alcohol coming from the interior of the vehicle, and the driver failed sobriety tests; there was substantial evidence to support the administrative finding that there was reasonable suspicion to stop and probable cause to arrest the driver for driving while intoxicated. The trial court erred by reversing the administrative decision to suspend her driver's license, because she refused to provide a breath sample. Tex. Dep't of Pub. Safety v. Leath, No. 07-03-0450-CV, 2005 Tex. App. LEXIS 3927 (Tex. App. Amarillo May 18, 2005).

Administrative law judge's (ALJ) suspension of a driver's license was supported by substantial evidence where the arresting officer surmised in his sworn report that the driver had been driving while intoxicated because he emitted a strong odor of alcohol, had glassy eyes and slurred speech, and his movements were slowed and staggered, and where the record revealed that the driver admitted to drinking a few beers before the accident. That gave the officer reasonable suspicion to investigate the driver further, and the officer's reasonable suspicion evolved into probable cause when he observed five out of the six points of the horizontal gaze nystagmus test and the driver refused to provide a breath specimen. Tex. Dep't of Pub. Safety v. Burrer, No. 04-03-00896-CV, 2005 Tex. App. LEXIS 3534 (Tex. App. San Antonio May 11, 2005).

The holder of a driver's license that was suspended following his arrest for driving while intoxicated was not entitled to have the suspension lifted by a trial court on the basis of breath test results that were admitted into evidence by an administrative law judge even after the Department of Public Safety failed to timely respond to the holder's discovery request for the breath test documentation; while recognizing that the request had been directed to the wrong address, the court stated that the requirements imposed by Tex. Gov't Code Ann. § 2001.174(2) for reversal of the suspension were not met and that the holder failed to show that the suspension violated his substantive rights, given that he was free to request a continuance after receiving the documentation only two days before the suspension hearing. Department of Pub. 944 S.W.2d 493, 1997 Tex. App. LEXIS 1984.

Substantial evidence supported the decision of an administrative law judge to suspend the driver's license of an individual arrested for operating a motor vehicle in a public place while intoxicated. Tex. Dep't of Pub. Safety v. Hernandez, No. 13-02-293-CV, 2003 Tex. App. LEXIS 6333 (Tex. App. Corpus Christi July 24, 2003).

Under the substantial evidence rule of Tex. Gov't Code Ann. § 2001.174, the court erred in reversing a license suspension decision by the Texas Department of Public Safety; the administrative law judge did not err in finding, pursuant to Tex. Transp. Code Ann. § 524.035(a)(2), that the officer had probable cause to arrest defendant for driving while intoxicated. State Dep't of Pub. Safety v. Boeck, No. 13-99-812-CV, No. 13-99-00812-CV, 2001 Tex. App. LEXIS 2785 (Tex. App. Corpus Christi Apr. 26, 2001).

**Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Driving Under the Influence: Blood Alcohol & Field Sobriety: Implied Consent: General Overview**

Texas Department of Public Safety properly suspended an individual's driver's license for his refusal to give a breath specimen after he was arrested for suspicion of DWI. On review, the county court ruled that substantial

evidence existed to affirm the administrative decision suspending his driver's license, and that the individual failed to prove that the administrative decision prejudiced his substantial rights. *Parks v. Tex. Dep't of Pub. Safety, No. 01-03-00274-CV, 2004 Tex. App. LEXIS 9365 (Tex. App. Houston 1st Dist. Oct. 21, 2004)*.

**Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Driving Under the Influence: Blood Alcohol & Field Sobriety: Implied Consent: Refusals to Submit**

Trial court erred when it reversed an administrative license suspension based on the driver's refusal to provide a blood sample; the officer had reasonable suspicion to stop the driver, whose vehicle was on the sidewalk; although the ALJ erroneously wrote that the refusal was for a breath rather than a blood sample, the error was not prejudicial. *Tex. Dep't of Pub. Safety v. Rezaee, No. 09-15-00353-CV, 2016 Tex. App. LEXIS 11394 (Tex. App. Beaumont Oct. 20, 2016)*.

Trial court erred by reversing a decision of an ALJ to suspend the driver's license after he refused to consent to a blood test where substantial evidence supported the ALJ's finding that the officer had reasonable suspicion to stop the driver, Substantial evidence supported the ALJ's finding that probable cause existed to arrest the driver for operating a vehicle in a public place while intoxicated, and the trial court erred by reversing the ALJ's decision based on a later blood test showing the driver was not intoxicated because the test was not introduced into evidence. *Tex. Dep't of Pub. Safety v. McHugh, No. 03-13-00261-CV, 2014 Tex. App. LEXIS 11733 (Tex. App. Austin 3d Dist. Oct. 24, 2014)*.

**Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Driving Under the Influence: Blood Alcohol & Field Sobriety: Procedures**

*Tex. Transp. Code Ann. § 524.035* contained no requirement that the Texas Department of Public Safety had to prove compliance with Tex. Transp. Code Ann. § 724.017 to sustain its suspension of a license; the driver did not show that the ALJ violated § 724.017 by its decision to sustain the suspension of her driver's license, and the Forensic Alcohol Analysis Report constituted substantial evidence supporting the finding that the driver operated a motor vehicle with an alcohol concentration of 0.08 grams or greater. *Stowers v. Tex. Dep't of Pub. Safety, 465 S.W.3d 257, 2015 Tex. App. LEXIS 3533 (Tex. App. Houston 1st Dist. Apr. 9, 2015, no pet.)*.

**Criminal Law & Procedure: Criminal Offenses: Vehicular Crimes: Traffic Regulation Violations: Elements**

Texas Department of Public Safety's petition to suspend appellee's driver's license after she was arrested for driving while intoxicated was properly denied where there was substantial evidence to support a finding that the Department failed to meet its burden to establish reasonable suspicion to stop or contact appellee because the officer who initiated the traffic stop did not testify that he believed appellee's driving of her car onto an improved shoulder was not for any of the reasons enumerated in *Tex. Transp. Code Ann. § 545.058(a)*, and the officer's testimony that he believed that appellee's driving was unsafe was a conclusory statement, as he did not provide any explanation or basis for his conclusion that her driving was unsafe. *Tex. Dep't of Pub. Safety v. Taunton, No. 01-18-00565-CV, 2019 Tex. App. LEXIS 7195 (Tex. App. Houston 1st Dist. Aug. 15, 2019)*.

**Criminal Law & Procedure: Arrests: Probable Cause**

There was substantial evidence to support an administrative law judge's decision authorizing the suspension of a driver's license under *Tex. Transp. Code Ann. § 524.012(b)(1)* because there was a reasonable suspicion to stop a vehicle based on a failure to stop at a red light, there was probable cause to arrest due to an odor of alcohol and signs of intoxication, and the driver's blood alcohol was above the legal limit. *Tex. Dep't of Pub. Safety v. Caruana, No. 03-08-00659-CV, 2012 Tex. App. LEXIS 7125 (Tex. App. Austin 3d Dist. Aug. 23, 2012)*.

## Criminal Law & Procedure: Search & Seizure: Warrantless Searches: Investigative Stops

Substantial evidence, under Tex. Gov't Code Ann. § 2001.174(2)(E), supported an administrative law judge's (ALJ) determination that a police officer had reasonable suspicion to stop a driver, under Tex. Transp. Code Ann. § 524.035(a), because (1) the officer could have reasonably concluded that the driver had committed a traffic offense each time she traveled onto the shoulder, under Tex. Transp. Code Ann. § 545.058(a); (2) the officer could have reasonably concluded that the driver's conduct in driving on the shoulder three times negated application of any of the seven statutory reasons permitting a one-time driving on the shoulder; and (3) conflicting evidence existed before the ALJ. Tex. Dep't of Pub. Safety v. Riley, No. 2-07-417-CV, 2008 Tex. App. LEXIS 6049 (Tex. App. Fort Worth Aug. 7, 2008).

## Criminal Law & Procedure: Search & Seizure: Warrantless Searches: Stop & Frisk: Reasonable Suspicion

Substantial evidence supported an administrative law judge's decision suspending the driver's license of a motorcycle driver who had refused a police officer's request to provide a breath or blood specimen where the officer had reasonable suspicion to detain the driver to investigate whether he was driving while intoxicated (DWI), as the officer smelled alcohol on the driver's breath and observed the driver's bloodshot eyes after he stopped the driver for speeding; the driver also did not preserve a complaint that there was an unreasonable delay in the DWI investigation, as he did not assert that complaint at the administrative hearing, and there was thus no constitutional violation arguable on appeal that prejudiced his substantial rights. Tex. Dep't of Pub. Safety v. Rabideau, No. 06-19-00017-CV, 2019 Tex. App. LEXIS 6039 (Tex. App. Texarkana July 17, 2019).

Officer had reasonable suspicion to stop defendant, and therefore the trial court erred by reversing the administrative law judge's decision that the officer had a reasonable belief that defendant was speeding, where the officer's observation that defendant was traveling at a high rate of speed over the posted speed limit of 45 mph provided him with reasonable suspicion to initiate the traffic stop. Tex. Dep't of Pub. Safety v. Kuhn, No. 06-15-00083-CV, 2016 Tex. App. LEXIS 2879 (Tex. App. Texarkana Mar. 22, 2016).

In an administrative license suspension proceeding, substantial evidence supported the judge's decision that a trooper had reasonable suspicion to stop the driver's vehicle because he was committing a traffic offense by driving a vehicle whose taillamps failed to illuminate the rear license plate. Tex. Dep't of Pub. Safety v. Flanagan, No. 03-12-00733-CV, 2014 Tex. App. LEXIS 1713 (Tex. App. Austin 3d Dist. Feb. 14, 2014).

## Criminal Law & Procedure: Discovery & Inspection: Discovery by Defendant: Report of Examinations & Tests: General Overview

The holder of a driver's license that was suspended following his arrest for driving while intoxicated was not entitled to have the suspension lifted by a trial court on the basis of breath test results that were admitted into evidence by an administrative law judge even after the Department of Public Safety failed to timely respond to the holder's discovery request for the breath test documentation; while recognizing that the request had been directed to the wrong address, the court stated that the requirements imposed by Tex. Gov't Code Ann. § 2001.174(2) for reversal of the suspension were not met and that the holder failed to show that the suspension violated his substantive rights, given that he was free to request a continuance after receiving the documentation only two days before the suspension hearing. Department of Pub. 944 S.W.2d 493, 1997 Tex. App. LEXIS 1984.

## Criminal Law & Procedure: Defenses: Necessity

Under Tex. Gov't Code Ann. § 2001.174, the appellate court had to reverse when a substantial right had been prejudiced because the administrative decision was affected by an error of law; the administrative law judge erred in applying the law to the facts as she found them where no necessity justification existed at the time of the driver's

arrest because his drive back to the scene was not in avoidance of any imminent harm. *Tex. Dep't of Pub. Safety v. Moore, 175 S.W.3d 270, 2004 Tex. App. LEXIS 4401 (Tex. App. Houston 1st Dist. May 13, 2004, no pet.).*

**Education Law: Faculty & Staff: Discipline & Dismissal: Administrative Proceedings: Appeals & Reviews**

*Overview: The Texas Commissioner of Education erred in reversing a school board's termination of a teacher's continuing employment contract for anti-immigrant remarks. The board's conclusions of law on good cause under Tex. Educ. Code Ann. §§ 21.154(4), 21.156(a) satisfied Tex. Educ. Code Ann. § 21.259(a)(1), (d), and substantial evidence supported them.*

- In reviewing a district court's judgment on appeal from a decision of the Texas Commissioner of Education, an appellate court focuses on the decision of the Commissioner. The appellate court may not reverse the decision of the Commissioner unless the decision was not supported by substantial evidence or unless the Commissioner's conclusions of law are erroneous. *Tex. Educ. Code Ann. § 21.307(f)*. Under substantial-evidence review, the appellate court shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2).*

*Clark v. Fort Worth Indep. Sch. Dist., No. 03-21-00275-CV, 2023 Tex. App. LEXIS 430 (Tex. App. Austin 3d Dist. Jan. 25, 2023).*

**Education Law: Faculty & Staff: Discipline & Dismissal: Administrative Proceedings: Statutory Procedures**

Substantial evidence supported a school board's decision that a principal's reassignment to assistant principal did not require that she receive the quasi-due-process rights of the Term Contract Nonrenewal Act, because the position of principal was in "the same professional capacity" as assistant principal under *Tex. Educ. Code Ann. § 21.206(b). Jenkins v. Crosby Indep. Sch. Dist., 537 S.W.3d 142, 2017 Tex. App. LEXIS 5428 (Tex. App. Austin 3d Dist. June 15, 2017, no pet.).*

**Education Law: Faculty & Staff: Personnel Actions: Transfers**

Substantial evidence supported a school board's decision that a principal's reassignment to assistant principal did not require that she receive the quasi-due-process rights of the Term Contract Nonrenewal Act, because the position of principal was in "the same professional capacity" as assistant principal under *Tex. Educ. Code Ann. § 21.206(b). Jenkins v. Crosby Indep. Sch. Dist., 537 S.W.3d 142, 2017 Tex. App. LEXIS 5428 (Tex. App. Austin 3d Dist. June 15, 2017, no pet.).*

**Energy & Utilities Law: Administrative Proceedings: Judicial Review**

In an appeal arising from an oil and gas case, the Railroad Commission's dismissal of the gas corporation's forced-pooling applications was supported by substantial evidence because there was a reasonable basis for the Commission's fact finding and conclusion that the gas corporation's voluntary pooling offers were not fair and reasonable based on a 10% charge for risk being unreasonably low according to the expert's uncontroverted testimony. *Ammonite Oil & Gas Corp. v. R.R. Comm'n of Tex., 672 S.W.3d 33, 2021 Tex. App. LEXIS 8649 (Tex. App. San Antonio Oct. 27, 2021),* aff'd, *698 S.W.3d 196, 2024 Tex. LEXIS 544 (Tex. 2024).*

## Energy & Utilities Law: Administrative Proceedings: Judicial Review: General Overview

Where one of the pooled unit's property owners sought to dissolve the gas pooling unit as moot, but, on appeal, failed to provide a party, who was originally an intervenor but was a party under the definition provided for in Tex. Gov't Code Ann. § 2001.003(4), with service of a copy of the petition for judicial review, the complaining owner did not meet a necessary condition on which its right to seek judicial review of the Texas Railroad Commission's order depended and, thus, the complaining owner did not prove its right to the relief it sought from the trial court; pursuant to Tex. Gov't Code Ann. § 2001.174, the trial court had no choice but to affirm the order of the Commission denying the complaining owner's request to dissolve the pooling unit and it did affirm that order. Helton v. R.R. Comm'n, 126 S.W.3d 111, 164 Oil & Gas Rep. 1057, 2003 Tex. App. LEXIS 4832 (Tex. App. Houston 1st Dist. June 5, 2003, no pet.).

Under the substantial evidence standard of review applied to final orders of the Railroad Commission pursuant to Tex. Gov't Code Ann. § 2001.174, the proper test is whether the evidence in its entirety is sufficient that reasonable minds could have reached the conclusion that the Commission must have reached to justify the disputed action. The issue is whether the Commission acted arbitrarily and without regard to the facts. H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 151 Oil & Gas Rep. 265, 2000 Tex. App. LEXIS 7557 (Tex. App. Austin 3d Dist. Nov. 9, 2000, no pet.).

Final orders of the Railroad Commission are deemed to be prima facie valid and subject to review under the substantial evidence rule. An appellate court reviews the Commission's legal conclusions for errors of law and its findings of fact for support by substantial evidence. Tex. Gov't Code Ann. § 2001.174. H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 151 Oil & Gas Rep. 265, 2000 Tex. App. LEXIS 7557 (Tex. App. Austin 3d Dist. Nov. 9, 2000, no pet.).

## Energy & Utilities Law: Administrative Proceedings: Judicial Review: Scope & Standards of Review

*Overview: Court denied appellant's motion to take judicial notice because the trial court considered former Tex. Water Code Ann. § 13.254(a-5) not as evidence but as legal authority and other documents were not admitted in the underlying administrative proceeding, per Tex. Gov't Code Ann. § 2001.175(c).*

- Judicial review of the Public Utility Commission's final order is by the substantial evidence standard of review. ex. Water Code Ann. §§ 13.002(15) and 13.381. Under this standard, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence or questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174. The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness. But the reviewing court must reverse or remand the case to the state agency for further proceedings: if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2).

HMW Special Util. Dist. & Montgomery Counties v. PUC of Tex., No. 03-21-00234-CV, 2023 Tex. App. LEXIS 1190 (Tex. App. Austin 3d Dist. Feb. 24, 2023).

Public Utility Commission did not err in dismissing the landowner's claim for failure to state a claim for which relief could be granted as there was no violation by the utility or its staff, Commission rules, or Public Utility Regulatory Act concerning the utility's tree trimming. Jasinski v. PUC of Tex., No. 03-16-00725-CV, 2017 Tex. App. LEXIS 5378 (Tex. App. Austin 3d Dist. June 14, 2017)

Court properly upheld the commission's final order restricting the costs the utility could recover because the commission's challenged legal conclusions about the utility's recovery of unrecovered costs, including implementation costs and interest, were reasonable. *Entergy Tex., Inc. v. PUC of Tex., No. 03-14-00709-CV, 2016 Tex. App. LEXIS 2436 (Tex. App. Austin 3d Dist. Mar. 9, 2016).*

**Energy & Utilities Law: Administrative Proceedings: Public Utility Commissions: General Overview**

Decision of the Public Utility Commission of Texas (PUC) to use the electric company's original overstated estimate of its transmission system capital costs for a particular interconnection project was not supported by substantial evidence as required by Tex. *Util. Code Ann. § 15.001* of the Public Utility Regulatory Act (PURA), Tex. *Util. Code Ann. §§ 11.001-64.158,* and Tex. *Gov't Code Ann. § 2001.174(2)(E).* The electric company's witness had reduced his estimate on rebuttal due to the fact that new technology increased the capacity of existing transmission facilities and eliminated the need to construct certain new projects; therefore no reasonable basis existed for the PUC's use of the original estimate. *Reliant Energy, Inc. v. PUC, 153 S.W.3d 174, 2004 Tex. App. LEXIS 11280 (Tex. App. Austin 3d Dist. Dec. 16, 2004, no pet.).*

Substantial evidence pursuant to *Tex. Gov't Code Ann. § 2001.174* supported an order of the Public Utility Commission of Texas that raised the fuel factor component of the price-to-beat for an affiliated retail electric provider (AREP) because the Commission linked the measurement of the adequacy of the fuel factor to reflect significant changes in market price and the mechanism to correct inadequacies, and concluded that the New York Mercantile Exchange (NYMEX) was sufficient for both tasks, and because the Commission did not err in barring the order's opponents from presenting relevant evidence under *Tex. R. Evid. 401* where evidence regarding the AREP's purchase price and any windfall profits resulting from the fuel-factor adjustment did not bear on whether the NYMEX index had changed the requisite amount. Furthermore, the fuel-factor increase did not violate a set limit on the price-to-beat under Tex. *Util. Code Ann. § 39.202* because the adjustments under § 39.202(l) were not limited by § 39.202(p). *City of Alvin v. PUC of Tex., 143 S.W.3d 872, 2004 Tex. App. LEXIS 7685 (Tex. App. Austin 3d Dist. Aug. 26, 2004, no pet.).*

Granting of a certificate of convenience and necessity to the power and light company was proper where the application adequately addressed the factors of probable improvement of service or lowering of costs to consumers; further, the evidence supported that the individuals had notice of ex parte communications and an opportunity to address them, Tex. *Gov't Code Ann. §§ 2001.061, 2001.174, Hammack v. PUC, No. 03-02-00232-CV, 2003 Tex. App. LEXIS 8980 (Tex. App. Austin 3d Dist. Oct. 23, 2003),* op. withdrawn, sub. op., *131 S.W.3d 713, 2004 Tex. App. LEXIS 3396 (Tex. App. Austin 3d Dist. Apr. 15, 2004).*

There are two requirements that the Texas Public Utility Commission must meet in order to consider a non-unanimous settlement stipulation (NUS) as part of its final order; first, the commission must afford any non-stipulating party the opportunity to be heard on the merits of the stipulation and, second, the commission must make an independent finding, on the merits, that the terms of the stipulation are fair, just and reasonable, and are supported by evidence in the record; the second requirement reflects the rule that an agency's decision, whether or not based on an NUS, must be supported by substantial evidence. *City of Somerville v. Public Util. Comm'n, 865 S.W.2d 557, 1993 Tex. App. LEXIS 2992 (Tex. App. Austin 3d Dist. Nov. 3, 1993),* vacated, *865 S.W.2d 557, 1993 Tex. App. LEXIS 3265 (Tex. App. Austin 3d Dist. Dec. 8, 1993),* overruled, *Public Util. Comm'n v. GTE-Southwest, 901 S.W.2d 401, 1995 Tex. LEXIS 45 (Tex. 1995).*

In an action involving a grant of an amended certificate of convenience and necessity, the trial court upheld defendant's grant to the applicant when the applicant was under no duty to present evidence that it studied alternative routes and thus plaintiff was not prejudiced within the meaning of former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e), *Frost v. Public Utility Com., 672 S.W.2d 883, 1984 Tex. App. LEXIS 5627 (Tex. App. Austin 3d Dist. June 6, 1984, no writ).*

**Energy & Utilities Law: Administrative Proceedings: Public Utility Commissions: Authority**

Public Utility Commission of Texas' finding that it was appropriate to limit the amount that the telecommunications provider should refund to the amount of overcharges to the county hospital district and order a partial refund was arbitrary and capricious, *16 Tex. Admin. Code § 26.27*; l]this limitation prejudiced the substantial rights of the district, *Tex. Gov't Code Ann. § 2001.174(2)*. *Harris County Hosp. Dist. v. PUC of Tex., No. 03-10-00647-CV, 2012 Tex. App. LEXIS 5707 (Tex. App. Austin 3d Dist. July 13, 2012)*.

In a case where a power agency sought judicial review of a final order from the Public Utility Commission of Texas under Tex. *Util. Code Ann. § 15.001* and Tex. *Gov't Code Ann. § 2001.174*, declaratory relief on the ground of jurisdiction was redundant and unnecessary since the issue was already raised. *Tex. Mun. Power Agency v. PUC of Tex., 260 S.W.3d 647, 2008 Tex. App. LEXIS 5555 (Tex. App. Austin 3d Dist. July 24, 2008, no pet.)*.

**Energy & Utilities Law: Administrative Proceedings: Public Utility Commissions: Judicial Review**

***Overview:*** *Court denied appellant's motion to take judicial notice because the trial court considered former Tex. Water Code Ann. § 13.254(a-5) not as evidence but as legal authority and other documents were not admitted in the underlying administrative proceeding, per Tex. Gov't Code Ann. § 2001.175(c).*

- Judicial review of the Public Utility Commission's final order is by the substantial evidence standard of review. ex. *Water Code Ann. §§ 13.002(16)* and *13.381*. Under this standard, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence or questions committed to agency discretion, *Tex. Gov't Code Ann. § 2001.174*. The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness. But the reviewing court must reverse or remand the case to the state agency for further proceedings: if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

*HMW Special Util. Dist. & Montgomery Counties v. PUC of Tex., No. 03-21-00234-CV, 2023 Tex. App. LEXIS 1190 (Tex. App. Austin 3d Dist. Feb. 24, 2023)*.

Texas Public Utility Commission's finding that an electric utility's decision to continue to complete construction of a power plant was within the range of options a reasonable utility manager would have chosen under the same or similar circumstances was arbitrary and capricious because the utility did not meet its burden of proving that a reasonable utility manager, having investigated all relevant factors and alternatives at the time the decision was made, would have found that the decision to continue construction was reasonably prudent. *Tex. Indus. Energy Consumers v. PUC of Tex., 608 S.W.3d 817, 2018 Tex. App. LEXIS 5126 (Tex. App. Austin 3d Dist. July 10, 2018)*, rev'd, *620 S.W.3d 418, 2021 Tex. LEXIS 247 (Tex. 2021)*.

Public Utility Commission of Texas was authorized to alter the ALJs' proposed capital structure for a public utility company, because the alteration was supported by substantial evidence as provided by expert witnesses; PUC's imposition of a 49 percent debt to 51 percent equity capital structure was consistent with its prior precedent for vertically integrated utilities. Substantial evidence supported PUC's determination that the public utility company's annual incentive program included significant financial-based goals that justified the exclusion of half of the company's request for reasonable and necessary costs. *Southwestern Pub. Serv. Co. v. PUC, No. 07-17-00146-CV, 2018 Tex. App. LEXIS 2991 (Tex. App. Amarillo Apr. 26, 2018)*.

Substantial evidence supported the Public Utility Commission's findings and conclusions that the contract reflected a conveyance of capacity because it could have reasonably determined that the electric company had paid not only for the variable "energy" costs of the power it took but the public service company's fixed costs of making its generation assets available. In addition, the Commission's application of the Former Fuel Rule § 23.23(b)(2)(B)(iv),

16 Tex. Admin. Code § 23.23 (1995), repealed by 24 Tex. Reg. 4998 (1999) (current version at  16 Tex. Admin. Code § 25.236 (2010)), to those facts to conclude that the electric company's purchases had a "capacity" component was reasonable and not plainly erroneous or inconsistent with the rule.  City of El Paso v. PUC of Tex., 344 S.W.3d 609, 2011 Tex. App. LEXIS 5040 (Tex. App. Austin 3d Dist. July 1, 2011, no pet.).

## Energy & Utilities Law: Administrative Proceedings: Ratemaking

Texas Railroad Commission's adoption of a non-publicly traded gas utility's rate adjustment mechanism did not violate the procedural requirements of the Administrative Procedure Act because the substantive aspects of the adjustment mechanism were fully reviewed in a contested-case hearing, during which witnesses were permitted to, and did, present testimony both in favor of and opposed to the adjustment mechanism. Moreover, there was testimony regarding additional procedural requirements recommended for inclusion in the adjustment mechanism, and all parties had the opportunity to present additional testimony in that regard or to challenge the testimony provided. State Agencies & Insts. of Higher Educ. v. R.R. Comm'n of Tex., 421 S.W.3d 690, 2014 Tex. App. LEXIS 566 (Tex. App. Austin 3d Dist. Jan. 17, 2014, no pet.).

## Energy & Utilities Law: Electric Power Industry: Electricity Distribution & Transmission

Public Utility Commission did not err in dismissing the landowner's claim for failure to state a claim for which relief could be granted as there was no violation by the utility or its staff, Commission rules, or Public Utility Regulatory Act concerning the utility's tree trimming. Jasinski v. PUC of Tex., No. 03-16-00725-CV, 2017 Tex. App. LEXIS 5378 (Tex. App. Austin 3d Dist. June 14, 2017).

## Energy & Utilities Law: Electric Power Industry: State Regulation

Court properly upheld the commission's final order restricting the costs the utility could recover because the commission's challenged legal conclusions about the utility's recovery of unrecovered costs, including implementation costs and interest, were reasonable. Entergy Tex. Inc. v. PUC of Tex. No. 03-14-00709-CV, 2016 Tex. App. LEXIS 2436 (Tex. App. Austin 3d Dist. Mar. 9, 2016).

## Energy & Utilities Law: Electric Power Industry: State Regulation: General Overview

16 Tex. Admin. Code § 25.263(l)(3) was held to be invalid as it was inconsistent with the legislature's intent, expressed in Tex. Util. Code Ann. ch. 39 of the Texas Public Utility Regulatory Act, that utilities could fully recover their net, verifiable, nonmitigable stranded costs incurred in purchasing power and providing electric generation service, that existed on the last day of the freeze period (December 31, 2001). A two- or three-year gap in recovery of carrying costs would not have permitted the companies full recovery of their stranded costs as the legislature envisioned. Centerpoint Energy, Inc. v. PUC of Tex., No. 03-0396, 2004 Tex. LEXIS 540 (Tex. June 18, 2004), reh'g denied, op. withdrawn, sub. op., 143 S.W.3d 81, 2004 Tex. LEXIS 681 (Tex. 2004).

Granting of a certificate of convenience and necessity to the power and light company was proper where the application adequately addressed the factors of probable improvement of service or lowering of costs to consumers; further, the evidence supported that the individuals had notice of ex parte communications and an opportunity to address them. Tex. Gov't Code Ann. §§ 2001.061, 2001.174. Hammack v. PUC, No. 03-02-00232-CV, 2003 Tex. App. LEXIS 8980 (Tex. App. Austin 3d Dist. Oct. 23, 2003), op. withdrawn, sub. op., 131 S.W.3d 713, 2004 Tex. App. LEXIS 3396 (Tex. App. Austin 3d Dist. Apr. 15, 2004).

## Energy & Utilities Law: Electric Power Industry: State Regulation: Rate Setting & Tariffs

Final order of the Public Utility Commission of Texas, which reconciled an electric utility company's eligible fuel expenses and revenues for a certain time period, was upheld on appeal as a reasonable remedy within the Commission's statutory authority; the Commission's final order was found to have reasonably required the utility company to account for all revenues it collected after December 31, 2001, that were directly attributable to the generation of electricity through that date, and reasonably required it to reconcile all fuel revenues it received and expenses it incurred after that date, to serve customers who were not yet switched to a retail electric provider; the Commission reconciliation methodology was found to have been proper and reasonably interpreted the Texas Legislature's directive to conduct a final reconciliation by accounting for all revenues associated with the expenses of providing bundled service during the reconciliation period; a reasonable basis existed for the Commission's decision to discount approximately $ 2.7 million in fuel costs and that the decision was supported by substantial evidence; and the Commission was found to have properly delineated and applied its reasonableness or prudence standard of review, which took into account, among other things, changes in the market. Aep Tex. N. Co. v. Public Util. Comm?n of Tex., 297 S.W.3d 435, 2009 Tex. App. LEXIS 7064 (Tex. App. Austin 2009, no pet.).

## Energy & Utilities Law: Pooling & Unitization: General Overview

Where one of the pooled unit's property owners sought to dissolve the gas pooling unit as moot, but, on appeal, failed to provide a party, who was originally an intervenor but was a party under the definition provided for in Tex. Gov't Code Ann. § 2001.003(4), with service of a copy of the petition for judicial review, the complaining owner did not meet a necessary condition on which its right to seek judicial review of the Texas Railroad Commission's order depended and, thus, the complaining owner did not prove its right to the relief it sought from the trial court; pursuant to Tex. Gov't Code Ann. § 2001.174, the trial court had no choice but to affirm the order of the Commission denying the complaining owner's request to dissolve the pooling unit and it did affirm that order. Helton v. R.R. Comm'n, 126 S.W.3d 111, 164 Oil & Gas Rep. 1057, 2003 Tex. App. LEXIS 4832 (Tex. App. Houston 1st Dist. June 5, 2003, no pet.).

## Energy & Utilities Law: Pooling & Unitization: Voluntary Pooling

In an appeal arising from an oil and gas case, the Railroad Commission's dismissal of the gas corporation's forced-pooling applications was supported by substantial evidence because there was a reasonable basis for the Commission's fact finding and conclusion that the gas corporation's voluntary pooling offers were not fair and reasonable based on a 10% charge for risk being unreasonably low according to the expert's uncontroverted testimony. Ammonite Oil & Gas Corp. v. R.R. Comm'n of Tex., 672 S.W.3d 33, 2021 Tex. App. LEXIS 8649 (Tex. App. San Antonio Oct. 27, 2021), aff'd, 698 S.W.3d 198, 2024 Tex. LEXIS 544 (Tex. 2024).

## Energy & Utilities Law: Utility Companies: Buying & Selling of Power

Substantial evidence supported the Public Utility Commission's findings and conclusions that the contract reflected a conveyance of capacity because it could have reasonably determined that the electric company had paid not only for the variable "energy" costs of the power it took but the public service company's fixed costs of making its generation assets available. In addition, the Commission's application of the Former Fuel Rule § 23.23(b)(2)(B)(iv), 16 Tex. Admin. Code § 23.23 (1995), repealed by 24 Tex. Reg. 4998 (1999) (current version at 16 Tex. Admin. Code § 25.236 (2010)), to those facts to conclude that the electric company's purchases had a "capacity" component was reasonable and not plainly erroneous or inconsistent with the rule. City of El Paso v. PUC of Tex., 344 S.W.3d 609, 2011 Tex. App. LEXIS 5040 (Tex. App. Austin 3d Dist. July 1, 2011, no pet.).

Public utility commission properly determined that a utility company could recover costs incurred before the commencement of commercial operations at a wind farm in a fuel reconciliation proceeding, where a prior settlement order was ambiguous as to the recovery of those costs. Substantial evidence supporting the determination included testimony from a company expert that pre-commercial wind-energy costs should be treated the same as other purchased power costs that were included in reconcilable fuel expense. Cities of Abilene, San

Angelo, & Vernon v. PUC, 146 S.W.3d 742, 2004 Tex. App. LEXIS 8453 (Tex. App. Austin 3d Dist. Sept. 23, 2004, no pet.).

## Energy & Utilities Law: Utility Companies: Rates: General Overview

Railroad commission's decision to base a gas corporation's rates on a statewide basis was reasonable and based on substantial evidence, given the factors analyzed, despite a city's evidence based on its distribution system. City of Dallas v. R.R. Comm'n of Tex., No. 03-06-00580-CV, 2008 Tex. App. LEXIS 8479 (Tex. App. Austin 3d Dist. Nov. 6, 2008).

## Energy & Utilities Law: Utility Companies: Rates: Ratemaking Factors: General Overview

Public Utility Commission was arbitrary and capricious in deciding not to allow rate-case expenses from earlier proceedings without prior Commissioner approval where it departed from prior Commission practice without explaining the reason for its change in position, made findings of fact and conclusions of law without adequate support in the record, and failed to give notice before the hearing of its intention to implement a new requirement. Oncor Elec. Delivery Co. LLC v. Puc of Tex., 406 S.W.3d 253, 2013 Tex. App. LEXIS 7334 (Tex. App. Austin 3d Dist. June 14, 2013, no pet.).

Texas Railroad Commission's findings regarding the gas utility's costs to acquire its predecessor were supported by substantial evidence as required under Tex. Gov't Code Ann. § 2001.174 and Tex. Util. Code Ann. § 105.001; further, the Commission did not err by including the gas utility's costs in acquiring its predecessor as a known and measurable change" in its gas rate award because nothing in Tex. Util. Code Ann. § 103.055 prohibited the Commission from accounting for additional expenses as a "known and measurable change" simply because they were known to a utility at the time of its updated rate request. City of Port Neches v. R.R. Comm'n of Tex., 212 S.W.3d 565, 2006 Tex. App. LEXIS 6936 (Tex. App. Austin 3d Dist. Aug. 4, 2006, no pet.).

## Energy & Utilities Law: Utility Companies: Rates: Ratemaking Factors: Rate Base

Texas Public Utility Commission's finding that an electric utility's decision to continue to complete construction of a power plant was within the range of options a reasonable utility manager would have chosen under the same or similar circumstances was arbitrary and capricious because the utility did not meet its burden of proving that a reasonable utility manager, having investigated all relevant factors and alternatives at the time the decision was made, would have found that the decision to continue construction was reasonably prudent. Tex. Indus. Energy Consumers v. PUC of Tex., 608 S.W.3d 817, 2018 Tex. App. LEXIS 5126 (Tex. App. Austin 3d Dist. July 10, 2018), rev'd, 620 S.W.3d 418, 2021 Tex. LEXIS 247 (Tex. 2021).

## Environmental Law: Air Quality: Enforcement: Administrative Proceedings

Texas Commission on Environmental Quality did not err under Tex. Health & Safety Code Ann. § 382.0518(b)(1) in excluding as not relevant evidence that the best available control technology (BACT) analysis for an air quality permit applicant's coal-fueled power plant should have included consideration of integrated gasification combined cycle (IGCC) where the Commission had appropriately drawn the line between what constituted a control technology that could be applied to the applicant's proposed plant and what constituted a redesign of the proposed plant. An IGCC process was significantly different from the pulverized coal power plant proposed by the applicant, and because an opponent of the application had offered no evidence that IGCC was a process that could be applied to the proposed pulverized coal power plant, it had failed to meet its burden. Blue Skies Alliance v. Tex. Comm'n on Envtl. Quality, No. 07-07-0306-CV, 2009 Tex. App. LEXIS 596 (Tex. App. Amarillo Jan. 29, 2009), op. withdrawn, sub. op., 283 S.W.3d 525, 2009 Tex. App. LEXIS 2534 (Tex. App. Amarillo Apr. 14, 2009).

Texas Commission on Environmental Quality did not err in issuing an air quality permit to an applicant seeking to build a pulverized coal power plant because although opponents of the permit argued that an application had to be denied or that an offset had to be obtained when any downwind contribution was made to a national ambient air quality standards (NAAQS) ozone exceedance, both the federal and state interpretation of the "cause or contribute to" standard for a violation of NAAQS will tolerate some insignificant level of contribution to a downwind NAAQS ozone exceedance. Moreover, the Commission's decision of whether the applicant's proposed facility would have a significant impact on particular nonattainment areas applied only to the present case and did not create a rule or policy of general applicability that any downwind impact on a nonattainment area that was less than what was measurable by monitor would be deemed insignificant. *Blue Skies Alliance v. Tex. Comm'n on Envtl. Quality, No. 07-07-0306-CV, 2009 Tex. App. LEXIS 596 (Tex. App. Amarillo Jan. 29, 2009)*, op. withdrawn, sub. op., *263 S.W.3d 525, 2009 Tex. App. LEXIS 2534 (Tex. App. Amarillo Apr. 14, 2009)*.

**Environmental Law: Air Quality: National Ambient Air Quality Standards**

Texas Commission on Environmental Quality did not err in issuing an air quality permit to an applicant seeking to build a pulverized coal power plant because although opponents of the permit argued that an application had to be denied or that an offset had to be obtained when any downwind contribution was made to a national ambient air quality standards (NAAQS) ozone exceedance, both the federal and state interpretation of the "cause or contribute to" standard for a violation of NAAQS will tolerate some insignificant level of contribution to a downwind NAAQS ozone exceedance. Moreover, the Commission's decision of whether the applicant's proposed facility would have a significant impact on particular nonattainment areas applied only to the present case and did not create a rule or policy of general applicability that any downwind impact on a nonattainment area that was less than what was measurable by monitor would be deemed insignificant. *Blue Skies Alliance v. Tex. Comm'n on Envtl. Quality, No. 07-07-0306-CV, 2009 Tex. App. LEXIS 596 (Tex. App. Amarillo Jan. 29, 2009)*, op. withdrawn, sub. op., *263 S.W.3d 525, 2009 Tex. App. LEXIS 2534 (Tex. App. Amarillo Apr. 14, 2009)*.

**Environmental Law: Air Quality: Nonattainment Areas**

Texas Commission on Environmental Quality properly approved an application for an air quality permit necessary for an applicant to build a pulverized coal power plant where far more than substantial evidence supported its finding that the proposed plant would not significantly contribute to the national ambient air quality standards ozone nonattainment of the areas at issue because, among other things, there was no record evidence identified by an opponent of the application of what, if any, impact the applicant's less than 0.03 ppb ozone contribution would have on the ozone nonattainment areas, and the opponent also failed to identify any evidence of the extent to which a less than 0.03 ppb ozone increase in an ozone nonattainment area would adversely impact the health of residents of the nonattainment area. The Commission's decision of whether the applicant's proposed facility would have a significant impact on the nonattainment areas at issue applied only to the present case and did not create a rule or policy of general applicability that any downwind impact on a nonattainment area that was less than what was measurable by monitor would be deemed insignificant. *Blue Skies Alliance v. Tex. Comm'n on Envtl. Quality, 263 S.W.3d 525, 2009 Tex. App. LEXIS 2534 (Tex. App. Amarillo Apr. 14, 2009, no pet.)*.

**Environmental Law: Air Quality: Preconstruction Permits**

Texas Commission on Environmental Quality properly approved an application for an air quality permit necessary for an applicant to build a pulverized coal power plant where far more than substantial evidence supported its finding that the proposed plant would not significantly contribute to the national ambient air quality standards ozone nonattainment of the areas at issue because, among other things, there was no record evidence identified by an opponent of the application of what, if any, impact the applicant's less than 0.03 ppb ozone contribution would have on the ozone nonattainment areas, and the opponent also failed to identify any evidence of the extent to which a less than 0.03 ppb ozone increase in an ozone nonattainment area would adversely impact the health of residents of the nonattainment area. The Commission's decision of whether the applicant's proposed facility would have a

significant impact on the nonattainment areas at issue applied only to the present case and did not create a rule or policy of general applicability that any downwind impact on a nonattainment area that was less than what was measurable by monitor would be deemed insignificant. *Blue Skies Alliance v. Tex. Comm'n on Envtl. Quality, 283 S.W.3d 525, 2009 Tex. App. LEXIS 2534 (Tex. App. Amarillo Apr. 14, 2009, no pet.).*

### Environmental Law: Air Quality: Prevention of Significant Deterioration

Texas Commission on Environmental Quality did not err under Tex. *Health & Safety Code Ann. § 382.0518(b)(1)* in excluding as not relevant evidence that the best available control technology (BACT) analysis for an air quality permit applicant's coal-fueled power plant should have included consideration of integrated gasification combined cycle (IGCC) where the Commission had appropriately drawn the line between what constituted a control technology that could be applied to the applicant's proposed plant and what constituted a redesign of the proposed plant. An IGCC process was significantly different from the pulverized coal power plant proposed by the applicant, and because an opponent of the application had offered no evidence that IGCC was a process that could be applied to the proposed pulverized coal power plant, it had failed to meet its burden. *Blue Skies Alliance v. Tex. Comm'n on Envtl. Quality, No. 07-07-0306-CV, 2009 Tex. App. LEXIS 596 (Tex. App. Amarillo Jan. 29, 2009),* op. withdrawn, sub. op., *283 S.W.3d 525, 2009 Tex. App. LEXIS 2534 (Tex. App. Amarillo Apr. 14, 2009).*

### Environmental Law: Hazardous Wastes & Toxic Substances: Treatment, Storage & Disposal

Determination by the Texas Commission on Environmental Quality that the waste generator violated waste-handling regulations was not subject to reversal because the commission did not violate the owner's due process rights; in assessing a penalty, err by modifying the findings without legal or factual justification in the record; or impermissibly try to resolve the "paradox of no documentation" through ad hoc rulemaking in an enforcement proceeding rather than formal rulemaking. *McHaney v. Tex. Comm'n on Envtl. Quality, No. 03-13-00280-CV, 2015 Tex. App. LEXIS 1903 (Tex. App. Austin 3d Dist. Feb. 27, 2015).*

Pursuant to the former Texas Administrative Procedure and Texas Register Act, Tex. Rev. Civ. Stat. Ann. § 19(e)(5), the evidence was sufficient for the Texas Water Commission (Commission) to deny applicant permits to construct and operate a hazardous waste facility, where the applicant proposed to store hazardous slurry in a salt dome cavern, where the applicant could not guarantee that the slurry would maintain proper contact with the cavern walls, where the salt dome was structurally unstable, and where tow aquifers were located above the salt dome. *United Resource Recovery, Inc. v. Texas Water Com., 815 S.W.2d 797, 1991 Tex. App. LEXIS 2034 (Tex. App. Austin 3d Dist. Aug. 14, 1991, no writ).*

### Environmental Law: Litigation & Administrative Proceedings

Texas Commission on Environmental Quality did not act in contravention of applicable statutes or Commission rules when it issued a registration authorizing a "Type V Transfer Station" rather than a permit because the solid waste management activities the Commission authorized in the registration were within the scope of those that *30 Tex. Admin. Code § 330.9(b)(3)* allowed to be authorized by registration. *Citizens Against the Landfill in Hempstead v. Tex. Comm'n on Envtl. Quality, No. 03-14-00718-CV, 2016 Tex. App. LEXIS 3743 (Tex. App. Austin 3d Dist. Apr. 13, 2016).*

### Environmental Law: Litigation & Administrative Proceedings: Judicial Review

> *Overview:* In a water pollution case, substantial evidence supported appellee's findings of appellant's violation of Tex. *Water Code Ann. § 26.121(a)(2)* because the investigator observed stockpiles of mined rocks, excavation equipment, and a pump with a hose that extended from the pit to the creek.

- The appellate court reviews the Texas Commission on Environmental Quality's (TCEQ) orders under the substantial evidence rule to determine whether the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions violate a constitutional or statutory provision; in excess of the agency's statutory authority; made through unlawful procedure; affected by other error of law; not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(A)-(F)*; Tex. *Water Code Ann. § 7.064*. The court's inquiry into whether an agency's decision meets this standard considers whether the evidence supports the agency's determination, asking not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

*Tex. Architectural Aggregate, Inc. v. Tex. Comm'n on Env't Quality, No. 03-22-00169-CV, 2023 Tex. App. LEXIS 9152 (Tex. App. Austin 3d Dist. Dec. 7, 2023)*.

**Overview:** *In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. Tex. *Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist., No. 04-21-00087-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022)*.

**Overview:** *Texas Commission on Environmental Quality did not err in its findings that competitor's proposed discharge point was not within regional area as defined by 30 Tex. Admin. Code § 351.61(2) as, in part, § 351.61(2) intended to limit regional area to vicinity of five cities and air force base, and substantial evidence supported Commission's findings.*

- An appellate court's review of the Texas Commission on Environmental Quality's final order is governed by *Tex. Gov't Code Ann. § 2001.174*. *Tex. Gov't Code Ann. § 2001.174*, That standard requires that the court reverse or remand a case for further proceedings only if substantial rights of appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions: (A) violate constitutional or statutory provisions, (B) exceed the agency's statutory authority, (C) were made through unlawful procedure, (D) are affected by other error of law, (E) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) are arbitrary or capricious or characterized by abuse of discretion of clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(A)-(F)*.

*City of Schertz v. Tex. Comm'n on Env't Quality, 653 S.W.3d 468, 2022 Tex. App. LEXIS 6448 (Tex. App. Amarillo Aug. 26, 2022, no pet.)*.

**Overview:** *In a dispute over a wastewater discharge permit, substantial evidence supported the Texas Commission on Environmental Qualityâ s findings of fact that the application was complete under 30 Tex. Admin. Code 305.45 because the evidence demonstrated that it was standard practice for TCEQ to impose sampling requirements on future discharged.*

• An appellate court reviews the the Texas Commission on Environmental Quality (TCEQ) order under the substantial evidence rule to determine whether the Permit Contestants substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code § 2001.174(2)(A)-(F)*. The appellate court's inquiry into whether an agency's decision meets the substantial evidence standard considers whether the evidence supports the agency's determination, asking not whether the decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

Tex. Comm___n on Env___l *Quality v. Maverick Cnty., 2022 Tex. App. LEXIS 5169 (July 27, 2022)*.

Texas Commission on Environmental Quality (TCEQ) did not err by granting appellee's application for permits to construct injection wells for the disposal of non-hazardous industrial waste, because the evidence in the record supported its changed findings in the proposal for decision concerning the migration of fluids and pressure at the well. TCEQ's changes to the proposal for decision were specifically listed and accompanied by an explanation of the basis of the amendment; substantial evidence supported its finding that there were very few other available options for disposing of industrial waste within the county. *2019 Tex. App. LEXIS 9023*.

Two cities were properly denied party status in a contested case to consider the Texas Commission on Environmental Quality's issuance of a permit for appellant to operate a municipal solid-waste transfer station, because neither city sufficiently demonstrated that any legally protected interests would likely be affected by issuance of the permit or how those interests were not common to members of the general public. Therefore, the trial court erred in reversing the Commission's final order because the Commission did not commit any reversible error in denying party status to the cities and issuing the permit. *Tex. Comm'n on Envtl. Quality v. City of Aledo, No. 03-13-00113-CV, 2015 Tex. App. LEXIS 6940 (Tex. App. Austin 3d Dist. July 6, 2015)*.

Because Tex. *Health and Safety Code Ann. § 361.0832* of the Texas Solid Waste Disposal Act, Tex. *Health and Safety Code Ann. §§ 361.001-.754*, provides standards detailing when the Texas Natural Resources Conservation Commission (commission) may properly overturn the findings, conclusions, and ultimate findings of a hearing examiner, Tex. *Gov't. Code Ann. § 2001.174(2)* of the Texas Administrative Procedures Act governs the court's review of the commission's decision. *Hunter Indus. Facilities v. Texas Natural Resource Conservation Comm'n, 910 S.W.2d 96, 1995 Tex. App. LEXIS 2515 (Tex. App. Austin 3d Dist. Oct. 11, 1995, no writ)*.

Order of the Texas Railroad Commission, directing appellant company to backfill and compact certain sludge pits and to dispose of all oil or oil by-products located in them, was not arbitrary and capricious under former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e)(6) because the fact that appellant controlled the pits for 23 years was not legally irrelevant, nor was it inherently arbitrary to proceed against only appellant even though other potentially liable parties existed; while the pits had been conveyed to appellant by a corporation that had disposed of sludge in the pits, and appellant subsequently had released its interest in the pits to another party, the harm caused by the joint tortfeasors was indivisible, and thus the Commission could choose to proceed against only one of them. *Lone Star Salt Water Disposal Co. v. Railroad Comm'n of Texas, 800 S.W.2d 924, 115 Oil & Gas Rep. 166, 1990 Tex. App. LEXIS 3123 (Tex. App. Austin 3d Dist. Oct. 31, 1990, no writ)*.

**Environmental Law: Solid Wastes**

Texas Commission on Environmental Quality did not act in contravention of applicable statutes or Commission rules when it issued a registration authorizing a "Type V Transfer Station" rather than a permit because the solid waste management activities the Commission authorized in the registration were within the scope of those that 30

*Tex. Admin. Code § 330.9(b)(3)* allowed to be authorized by registration. *Citizens Against the Landfill in Hempstead v. Tex. Comm'n on Envtl. Quality, No. 03-14-00718-CV, 2016 Tex. App. LEXIS 3743 (Tex. App. Austin 3d Dist. Apr. 13, 2016)*.

## Environmental Law: Solid Wastes: Disposal Planning

**Overview:** *In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist., No. 04-21-00087-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022)*.

## Environmental Law: Solid Wastes: Disposal Standards

**Overview:** *In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist., No. 04-21-00087-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022)*.

## Environmental Law: Solid Wastes: Municipal Landfills

**Overview:** *In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist., No. 04-21-00087-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022).*

Texas Commission on Environmental Quality did not abuse its discretion in approving the expansion of a municipal solid-waste landfill to increase the height of allowable waste disposal by 50 to 75 feet from its existing height of 720 feet, despite odors affecting the neighbors, because odor was not a specifically delineated factor for land-use-compatibility determinations in *30 Tex. Admin. Code § 330.61, .53. Northeast Neighbors Coalition v. Tex. Comm'n on Envtl. Quality, No. 03-11-00277-CV, 2013 Tex. App. LEXIS 4064 (Tex. App. Austin 3d Dist. Mar. 28, 2013).*

Texas Commission on Environmental Quality (TCEQ) violated Tex. *Health & Safety Code Ann. § 361.0832* when it expanded a landfill's operating hours and overturned an administrative law judge's (ALJ) findings with no explanation of its reasoning or grounds for so deciding. The appellate court was unable to substitute its judgment for that of the TCEQ by affirming the ALJ's decision; rather, the options were to reverse or to remand the case to the agency for further proceedings. *Heritage v. Tex. Comm'n on Envtl. Quality & Williamson County, No. 03-11-00129-CV, 2012 Tex. App. LEXIS 6460 (Tex. App. Austin 3d Dist. July 31, 2012),* op. withdrawn, sub. op., reh'g denied, *393 S.W.3d 417, 2012 Tex. App. LEXIS 10767 (Tex. App. Austin 3d Dist. Dec. 28, 2012).*

**Environmental Law: Solid Wastes: Permits: General Overview**

Texas Commission on Environmental Quality (TCEQ) violated Tex. *Health & Safety Code Ann. § 361.0832* when it expanded a landfill's operating hours and overturned an administrative law judge's (ALJ) findings with no explanation of its reasoning or grounds for so deciding. The appellate court was unable to substitute its judgment for that of the TCEQ by affirming the ALJ's decision; rather, the options were to reverse or to remand the case to the agency for further proceedings. *Heritage v. Tex. Comm'n on Envtl. Quality & Williamson County, No. 03-11-00129-CV, 2012 Tex. App. LEXIS 6460 (Tex. App. Austin 3d Dist. July 31, 2012),* op. withdrawn, sub. op., reh'g denied, *393 S.W.3d 417, 2012 Tex. App. LEXIS 10767 (Tex. App. Austin 3d Dist. Dec. 28, 2012).*

Substantial evidence in the record supported the Texas Natural Resource Conservation Commission's finding that a landfill owner's expansion application was administratively and technically complete because the owner had included all necessary information in the application, and while some witnesses could not independently verify particular documents or exhibits, there was nothing in the record that cast doubt upon the information, and the opponents to the application did not introduce any contrary exhibits to demonstrate that the limited evidence was altered or falsified. Because the application was determined to be administratively and technically complete prior to the contested case hearing, the owner was not required to establish at the contested-case hearing that its application complied with each administrative and technical requirement because it had already done so prior to the hearing. *Citizens Against Landfill Location v. Tex. Comm'n on Envtl. Quality, 169 S.W.3d 258, 2005 Tex. App. LEXIS 3583 (Tex. App. Austin 3d Dist. May 12, 2005, no pet.).*

Pursuant to Tex. *Gov't Code Ann. § 2001.174,* the district court's judgment affirming the Texas Commission on Environmental Quality's order granting the landfill operator a permit to build and operate a municipal landfill facility was proper because there was substantial evidence to support the findings and conclusions that: (1) the operator's groundwater-monitoring plan was sufficient; (2) a fault with displacement in the Holocene time did not exist within 200 feet of the proposed landfill; (3) the landfill liner's integrity would not be compromised; (4) the operator's floodplain analysis provided an accurate delineation of the 100-year floodplain; (5) the operator adequately demonstrated the effects of its proposed project on flood conditions with respect to soil-cover operations; and (6) the project would not significantly alter natural drainage. *Coalition for Long Point Preservation v. Tex. Comm'n on Envtl. Quality, 106 S.W.3d 363, 2003 Tex. App. LEXIS 3987 (Tex. App. Austin 3d Dist. May 8, 2003, no pet.).*

**Environmental Law: Solid Wastes: Permits: Disposal**

Tex. Gov't Code § 2001.174

*Overview: In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist. No. 04-21-00067-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022).*

Texas Commission on Environmental Quality did not abuse its discretion in approving the expansion of a municipal solid-waste landfill to increase the height of allowable waste disposal by 50 to 75 feet from its existing height of 720 feet, despite odors affecting the neighbors, because odor was not a specifically delineated factor for land-use-compatibility determinations in *30 Tex. Admin. Code § 330.61*, .53. *Northeast Neighbors Coalition v. Tex. Comm'n on Envtl. Quality, No. 03-11-00277-CV, 2013 Tex. App. LEXIS 4064 (Tex. App. Austin 3d Dist. Mar. 28, 2013).*

Group's substantial rights were not prejudiced by the addition of the special provision to the landfill application, because the appellate court could not see how the group had been harmed by the Texas Commission on Environmental Quality adopting a permit that provided more groundwater monitoring than was required by the administrative rules, when the permit not only satisfied the rules' requirements that groundwater from the uppermost aquifer be monitored, as it must, but it also provided for extra monitoring of groundwater that the evidence showed was not in the uppermost aquifer. *City of Jacksboro v. Two Bush Cmty. Action Group, No. 03-10-00860-CV, 2012 Tex. App. LEXIS 5243 (Tex. App. Austin 3d Dist. June 28, 2012).*

Texas Commission on Environmental Quality violated Tex. *Health & Safety Code Ann. § 361.0832(l)* and exceeded its statutory authority by failing to explain in its order why it rejected the administrative law judge's findings that all of the landfill's operations be conducted during the recommended operating hours, Heritage on the San Gabriel Homeowners Ass?n v. *Tex. Comm'n on Envtl. Quality, 393 S.W.3d 417, 2012 Tex. App. LEXIS 10767 (Tex. App. Austin 2012, no pet.).*

### Evidence: Inferences & Presumptions: Inferences

*Overview: Substantial evidence supported the Board of Nursing's finding that the nurse failed to timely complete a stat lab draw as ordered for patient 1 because under Tex. Occ. Code Ann. § 301.452(b), although she reviewed the printout orders for patient 1, she failed to take the lab draw until the following morning.*

- When reviewing an agency decision under the substantial evidence standard, appellate courts consider the reliable and probative evidence in the record as a whole. *Tex. Gov't Code Ann. § 2001.174(2)(E)*. Appellate courts may not substitute their judgment for that of the agency and may only consider the record on which the agency based its decision. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency. The crux of a substantial evidence analysis is whether the agency's factual findings are reasonable in light of the evidence from which they were purportedly inferred. Appellate courts presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden to prove otherwise is on an appellant. Therefore, if there is evidence to support either affirmative or negative findings on a specific matter, the decision of the agency must be upheld. Finally, the agency's decision should be reversed only if the party challenging the decision demonstrates that the absence of substantial evidence has prejudiced that party's substantial rights.

*Williams v. Tex. Bd. of Nursing, No. 03-21-00089-CV, 2022 Tex. App. LEXIS 3658 (Tex. App. Austin 3d Dist. June 1, 2022).*

## Evidence: Procedural Considerations: Burdens of Production

**Overview:** *A horse trainer disciplined after horses tested positive for a prohibited substance failed to show the disciplinary order was improper, as he did not point to evidence showing how the Texas Racing Commission's failure to follow its published procedures affected the accuracy of positive test results or otherwise prejudiced his substantial rights.*

- The APA requires a showing that unlawful procedure prejudiced the appellant's substantial rights. *Tex. Gov't Code Ann. § 2001.174(2).*

*Kearl v. Tex. Racing Comm'n, No. 03-21-00037-CV, 2022 Tex. App. LEXIS 6410 (Tex. App. Austin 3d Dist. Aug. 26, 2022).*

## Evidence: Procedural Considerations: Burdens of Proof: General Overview

Texas Racing Commission's decision to modify the ALJ's conclusion and impose the steward's initial penalty of disqualifying the horse and the loss of the purse due the use of ipratropium, a prohibited Class 3 drug, was within the Commission's authority under Tex. *Gov't Code Ann. § 2001.058(e)*, and the "loss of purse" penalty was expressly authorized by the Texas Racing Act, Tex. *Rev. Civ. Stat. Ann. art. 179e*, and the Commission's rules, guidelines, and zero-drug tolerance policy; further, the burden of proof was correctly placed on the owner and at the appropriate standard because nothing in the Tex. *Rev. Civ. Stat. Ann. art. 179e* states that the burden of proof should be placed on the agency. *Fierce v. Tex. Racing Comm'n, 212 S.W.3d 745, 2006 Tex. App. LEXIS 9062 (Tex. App. Austin 3d Dist. Oct. 17, 2006, no pet.).*

Party appealing an agency's decision bears the burden of showing a lack of substantial evidence. The evidence in the record may actually weigh by a preponderance against the agency's decision, yet satisfy the substantial evidence standard. *H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 151 Oil & Gas Rep. 265, 2000 Tex. App. LEXIS 7557 (Tex. App. Austin 3d Dist. Nov. 9, 2000, no pet.).*

## Evidence: Procedural Considerations: Burdens of Proof: Allocation

**Overview:** *There was a reasonable basis for the Texas Medical Board's conclusion that a physician's medical recordkeeping violated board rules when the ALJ found that the physician failed to document a genital examination, did not adequately document trigger point injections, and failed to clearly document his rationale for discontinuing two pain medications.*

- An appellate court may reverse or remand an agency's decision if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174.* This is essentially a rational-basis test in which the appellate court determines whether the agency's order finds reasonable support in the record as a matter of law. The party challenging the order has the burden of demonstrating a lack of substantial evidence. Because the focus is on the agency's decision, the appellate court gives no deference to the trial court's judgment. A reviewing court cannot substitute its judgment for that of the agency by considering the weight of the evidence on questions related to the agency's decision. § 2001.174. In short, the appellate court may reverse the agency's findings and conclusions only if there is no reasonable basis in the evidence for them.

*Leonard v. Tex. Med. Bd., 656 S.W.3d 456, 2022 Tex. App. LEXIS 7960 (Tex. App. El Paso Oct. 26, 2022, no pet.).*

**Overview:** *A horse trainer disciplined after horses tested positive for a prohibited substance failed to show the disciplinary order was improper, as he did not point to evidence showing how the Texas Racing Commission's failure to follow its published procedures affected the accuracy of positive test results or otherwise prejudiced his substantial rights.*

- "Substantial evidence" review within the meaning of *Tex. Gov't Code Ann. § 2001.174(2)(e)* is essentially a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record. Under this deferential standard, the reviewing court presumes the agency's order is supported by substantial evidence and the burden is on the contestant to show otherwise. Substantial evidence does not mean a large or considerable amount of evidence but requires only such relevant evidence as a reasonable mind might accept as adequate to support a finding of fact. In fact, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.

*Keard v. Tex. Racing Comm'n, No. 03-21-00037-CV, 2022 Tex. App. LEXIS 6410 (Tex. App. Austin 3d Dist. Aug. 26, 2022).*

## Evidence: Procedural Considerations: Weight & Sufficiency

**Overview:** *Substantial evidence supported the administrative law judge's findings that appellee abused a child because pursuant to Tex. Fam. Code Ann. § 261.001, the record contained substantial evidence that appellee committed abuse of the child as it was defined at the time the restraint occurred.*

- When reviewing an agency decision under the substantial evidence standard, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174.* Whether the agency's order satisfies the substantial evidence standard is a question of law. Substantial evidence review is, in essence, a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record. To meet the substantial evidence standard, one must show such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact. The appellate court presumes that the order is supported by substantial evidence.

*Tex. HHS Comm'n v. Davis, No. 07-21-00092-CV, 2022 Tex. App. LEXIS 1321 (Tex. App. Amarillo Feb. 23, 2022).*

## Family Law: Family Protection & Welfare: Children: Abuse, Endangerment & Neglect

Foster mother's hearsay objection to a written report regarding her neglect of foster children in her care was rejected because, even without the report, substantial evidence supported the finding that she failed to report a major incident and allowed an unqualified care-giver to supervise the children, making any error harmless. *R. P. v. Tex. Dep't of Family & Protective Servs., No. 03-16-00308-CV, 2017 Tex. App. LEXIS 297 (Tex. App. Austin 3d Dist. Jan. 13, 2017).*

## Family Law: Guardians: General Overview

Medicaid applicant who, through her guardian, applied for nursing-facility Medicaid benefits under 1 Tex. Admin. Code §§ 358.600-.623, was not entitled to benefits for the month of March 2009 because, on March 1, 2009, at 12:01 a.m., her bank balance was $2,239, exceeding the $2,000 eligibility threshold, *1 Tex. Admin. Code § 358.435. Henson v. Tex. HHS Comm'n, No. 03-13-00621-CV, 2015 Tex. App. LEXIS 11416 (Tex. App. Austin 3d Dist. Nov. 5, 2015).*

**Governments: Courts: Authority to Adjudicate**

Under the Texas Administrative Procedures Act, Tex. *Gov't Code Ann. § 2001.174(2)*, the trial court has the authority to reverse an agency determination if it finds that the substantive rights of the appellant are prejudiced due to a constitutional or statutory violation, the decision was made unlawfully or affected by an error of law, not supported by substantial evidence, or was found to be arbitrary or capricious. *Dep't of Pub. Safety v. Breazeale, No. 14-97-01357-CV, 1999 Tex. App. LEXIS 7131 (Tex. App. Houston 14th Dist. Sept. 23, 1999)*.

**Governments: Courts: Creation & Organization**

> **Overview:** The APA's motion for rehearing requirement applies to DMV license revocation proceedings because the governing statutes do not expressly exempt such proceedings from the APA. AFLOA failed to meet this jurisdictional prerequisite by not filing a subsequent motion for rehearing after the DMV's Order on Rehearing modified the initial order.

- Parties may seek judicial review of proceedings under Tex. *Occ. Code § 2301.001* in a county district courts or the Court of Appeals. Tex. *Occ. Code § 2301.751 (a)*. If a party seeks review in the trial court before seeking review in the Court of Appeals, the trial court sits as a reviewing court and may not hear additional evidence. *Tex. Gov't Code § 2001.174*.

   *AFLOA, LLC v. Tex. DMV, No. 15-24-00003-CV, 2025 Tex. App. LEXIS 191 (Tex. App. Austin 3d Dist. Jan. 16, 2025)*.

**Governments: Legislation: Effect & Operation: Operability**

Where the Railroad Commission of Texas and a motor carrier challenged a ruling which denied the commission an opportunity to correct defects in an order, the order could be corrected; the Texas constitution's prohibition against retroactive laws did not apply to procedural or remedial statutes. *Railroad Com. v. Merchants Fast Motor Lines, Inc., 545 S.W.2d 198, 1976 Tex. App. LEXIS 3326 (Tex. Civ. App. Austin Nov. 17, 1976)*, writ granted No. B-6594 (Tex. 1977), rev'd, *573 S.W.2d 502, 1978 Tex. LEXIS 409 (Tex. 1978)*.

**Governments: Legislation: Interpretation**

*Overview: Substantial evidence supported the Texas Commission on Environmental Quality's conclusion that a partnershipâ  despite having contracted out the day-to-day running of a coal mineâ  remained responsible for the overall operation of the mine and was its "operator" under 30 Tex. Admin. Code § 305.2(24).*

- The Supreme Court of Texas does not read *Tex. Gov't Code Ann. § 2001.174(1)* to obligate courts of appeals to reach all issues raised by the parties regardless of whether the issues are necessary to dispose of the appeal.

*Tex. Comm'n on Env't Quality v. Maverick Cnty., 642 S.W.3d 537, 2022 Tex. LEXIS 150 (Tex. 2022)*.

Texas Government Code, in providing only substantial-evidence review, specifically Tex. *Gov't Code Ann. § 2001.174*, does not deny equal protection of the laws under *U. S. Const. amend. XIV*, § 1, and *Tex. Const. art. I, § 3. Pretzer v. Motor Vehicle Bd., 125 S.W.3d 23, 2003 Tex. App. LEXIS 277 (Tex. App. Austin 3d Dist. Jan. 16, 2003)*, aff'd in part and rev'd in part, *138 S.W.3d 908, 2004 Tex. LEXIS 193 (Tex. 2004)*.

**Governments: State & Territorial Governments: Claims By & Against**

*Overview:* Appeal from the judgment of trial court failed because the APA applied to appellant's appeal of the cease-and-desist order and he was therefore required to file his petition for review not later than the 30th day after the date the decision or order that was the subject of complaint was final and appealable under *Tex. Gov't Code Ann. § 2001.176(a)*.

• The Uniform Declaratory Judgment Act (UDJA) does not enlarge a trial court's jurisdiction, but is merely a procedural device for deciding cases already within a court's jurisdiction. A litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit. Moreover, under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels. The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA. The avenue applicable here is *Tex. Gov't Code Ann. § 2001.174*, which allows state courts to reverse or remand existing agency orders, but not enjoin future ones. Thus, the test for redundancy under the Administrative Procedure Act (APA) is whether the declaration sought goes beyond reversal of an agency order.

*Gonzalez v. State Medical Bd., No. 03-22-00205-CV, 2023 Tex. App. LEXIS 8250 (Tex. App. Austin 3d Dist. Oct. 31, 2023).*

When providing an independent right to judicial review in Tex. *Gov't Code Ann. § 2001.171* of the Texas Administrative Procedure Act, the legislature has necessarily understood that state agencies will be sued in court by persons exercising that right, that contested-case decisions of those agencies will be judicially reviewed under the standards set forth in Tex. *Gov't Code Ann. § 2001.174*, and that the challenged administrative decisions will be either affirmed, reversed, or remanded as provided by § 2001.174. Therefore, Tex. *Gov't Code Ann. § 2001.171* provides a limited waiver of sovereign immunity. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 2004 Tex. LEXIS 780 (Tex. 2004).*

## Governments: State & Territorial Governments: Employees & Officials

State employee who remained employed in her secretarial job at a community college from the time of her 2002 injury until 2008, was not disabled under the Employees Retirement System of Texas group disability plan because the plan provided that an employee was deemed not to be disabled if employed and compensated in any manner, and the objective evidence of her disability all pre-dated her leaving her employment. *Trejo v. Bd. of Trs. of the Emples. Ret. Sys., No. 03-14-00060-CV, 2016 Tex. App. LEXIS 36 (Tex. App. Austin 3d Dist. Jan. 6, 2016).*

## Governments: State & Territorial Governments: Gaming & Lotteries

By expressly excluding a decision on a disqualification for a foul from appeal, *Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.08(b)* makes other decisions on disqualification of racehorses appealable by implication; thus, an owner whose horses were disqualified for wearing the wrong saddle cloth numbers had a right to an administrative appeal, and his request for declaratory relief under *Tex. Civ. Prac. & Rem. Code Ann. § 37.004* fell within the ultra vires exception to sovereign immunity. The trial court lacked subject matter jurisdiction to make further rulings on the merits until the owner exhausted administrative remedies as provided in *Tex. Rev. Civ. Stat. Ann. art. 179e, §§ 3.02, 3.08* and *Tex. Gov't Code Ann. § 2001.174. Tex. Racing Comm'n v. Marquez, No. 03-09-00635-CV, 2011 Tex. App. LEXIS 6653 (Tex. App. Austin 3d Dist. Aug. 19, 2011).*

Substantial evidence supported a decision by the Texas Racing Commission to impose penalties under Tex. *Rev. Civ. Stat. Ann. art. 179e, § 3.07(b)* on a horse owner and trainer whose racing horse tested positive for prohibited drug; although the Commission's rules did not set forth any procedures for handling a urine sample that was inadvertently returned, the Commission acted reasonably in storing and resending the sample for testing, and the

integrity of that sample had not been compromised. *Keeton v. Tex. Racing Comm'n, No. 03-03-00049-CV, 2003 Tex. App. LEXIS 6925 (Tex. App. Austin 3d Dist. Aug. 14, 2003)*.

**Governments: State & Territorial Governments: Licenses**

Texas Commission of Licensing and Regulation complied with *Tex. Gov't Code Ann. § 2001.058(e)* by specifying the reason and legal basis for its modifications to the ALJ's findings and conclusions and its decision was supported by substantial evidence and made through lawful procedure. *Tex. Gov't Code Ann. §§ 2001.058(e)*, .174; the Commission expressly addressed and made findings in its decisions to the statutory factors in the *Occupation Code. Tex. Dep't of Licensing & Regulation v. Thompson, 2013 Tex. App. LEXIS 8832 (Tex. App. Austin July 18 2013)*.

Texas Alcoholic Beverage Commission properly suspended the licensee's alcoholic beverage permit and license for five days, because substantial evidence supported the conclusion that the third party was an employee, agent, or servant for purposes of establishing a violation of Tex. *Alco. Bev. Code Ann. § 104.01(4)*, when the focus was whether there was substantial evidence to support the determination that the third party was an employee, agent, or servant for purposes of establishing a violation. *Villatoro v. Tex. Alcoholic Bev. Comm'n, No. 05-12-00444-CV, 2013 Tex. App. LEXIS 6780 (Tex. App. Dallas June 3, 2013)*.

Enforced suspension of appellee's pharmacist license by the Texas State Board of Pharmacy concurrently with the suspension of her North Carolina license resulted from the improper application of a "rule" as that term was defined in the Administrative Procedure Act (APA), *Tex. Gov't Code Ann. § 2001.003(6)*. The Board's informally announced reciprocal-sanctions policy was invalid under *Tex. Gov't Code Ann. § 2001.174(2)*, because it not adopted in accordance with the APA's rulemaking procedures. *Tex. State Bd. of Pharm. v. Witcher, No. 03-12-00560-CV, 2013 Tex. App. LEXIS 5482 (Tex. App. Austin 3d Dist. May 3, 2013)*, op. withdrawn, sub. op., *447 S.W.3d 520, 2014 Tex. App. LEXIS 11989 (Tex. App. Austin 3d Dist. Oct. 31, 2014)*.

Though a suspension hearing for a dentist's license contained some irregularities, especially the in and out presence of the overseeing board's members who were involved in decision-making regarding the dentist's license, the appeals court upheld the board's determination to suspend the dentist's license for two years in the absence of a demonstration that there was no substantial justice and fair play; former Tex. Rev. Civ. Stat. Ann. art. 6252-13A, § 19(e) (now *Tex. Gov't Code Ann. § 2001.174*) required reversal if there was unlawful procedure resulting in prejudice to substantial rights. *1985 Tex. App. LEXIS 6216*.

Order canceling a business's mixed beverage, late hours, and beverage cartage permits and denying its application to renew its food and beverage certificate did not prejudice the business's rights within the meaning of *Tex. Gov't Code Ann § 2001.174*. Making false statements on the application was not a minor violation as to which the penalty was unreasonable. *Melmat, Inc. v. Tex. Alcoholic Bev. Comm'n, No. 05-10-00912-CV, 2012 Tex. App. LEXIS 1553 (Tex. App. Dallas Feb. 29, 2012)*.

Substantial rights of a business were not prejudiced, for purposes of *Tex. Gov't Code Ann. § 2001.174(2)*, by a rehearing on the cancellation of its liquor license: a rehearing was not essential to due process in administrative proceedings, and different treatment from other violators was insufficient to establish discrimination. *Melmat, Inc. v. Tex. Alcoholic Bev. Comm'n, 362 S.W.3d 211, 2012 Tex. App. LEXIS 1550 (Tex. App. Dallas Feb. 29, 2012, no pet.)*.

In a medical license suspension case, the court erred by denying a doctor's motion for rehearing because the doctor timely filed a motion for rehearing giving the Board fair notice that he was dissatisfied with its conclusions that he failed to practice medicine in a manner consistent with public health and welfare and failed to treat a patient according to the generally accepted standard of care. *Johnson v. Tex. Med. Bd., No. 03-05-00006-CV, 2010 Tex. App. LEXIS 845 (Tex. App. Austin 3d Dist. Feb. 5, 2010)*.

There was substantial evidence in the record to support the Texas State Board of Public Accountancy's conclusion that a certificate holder had presented himself as an accountant while his certificate was suspended; the record did not support the holder's claim that he misunderstood the effect of a 1999 order suspending his certificate to practice public accountancy; the holder had committed violations in the past, and he was found to be not fit to practice public accountancy under Tex. Occ. Code Ann. § 901.502(11). Rogers v. State Bd. of Pub. Accountancy, 310 S.W.3d 1, 2008 Tex. App. LEXIS 2961 (Tex. App. Austin 3d Dist. Apr. 24, 2008, no pet.).

Trial court's conclusion that the state motor vehicle board's findings of fact that a motor vehicle distributor engaged in business as a dealer in Texas were not supported by substantial evidence, and that the board's conclusions of law that the distributor violated statutory prohibitions, were affected by error of law, was upheld where the undisputed facts were that, in response to a Texas city's solicitation, the distributor sold and delivered two buses to the city in New Mexico and that, from there, the city paid for the buses to be brought into Texas; there was no evidence that the distributor ever physically crossed the New Mexico border into Texas related to the transaction, and, under Tex. Bus. & Com. Code Ann. § 2.401, legal title to the buses passed in New Mexico because the agreement of the parties required the distributor to deliver the buses in New Mexico. Motor Vehicle Bd. v. Prevost Car (US), Inc., No. 03-04-00373-CV, 2006 Tex. App. LEXIS 8461 (Tex. App. Austin 3d Dist. Sept. 26, 2006).

Trial court erred by concluding that cancellation of a permittee's mixed beverage permits was an inappropriate penalty for a single violation where, in addition to the permittee's selling of an alcoholic beverage to a patron who exhibited obvious signs of intoxication, the Texas Alcoholic Beverage Commission had assessed administrative penalties against the permittee for seven separate violations of the Texas Alcoholic Beverage Code (ABC); because the repeated violations evidenced a disregard for the provisions of the ABC and the sanctions imposed by the Commission, the Commission had not acted arbitrarily or capriciously or abused its discretion by canceling the permittee's mixed beverage and late night permits. Tex. Alcoholic Bev. Comm'n v. Quintana, 225 S.W.3d 200, 2005 Tex. App. LEXIS 9968 (Tex. App. El Paso Nov. 30, 2005, no pet.).

Doctor's failure to attend a patient in the emergency room was properly found to be a failure to practice medicine in an acceptable professional manner consistent with public health and welfare, in violation of Tex. Occ. Code Ann. § 164.051(a)(6), and unprofessional or dishonorable conduct that was likely to injure the public, in violation of Tex. Occ. Code Ann. §§ 164.051(a)(1), 164.052(a)(5), where the Texas State Board of Medical Examiners' expert testified that, based on her review of relevant medical records, the doctor's care and treatment of the patient did not meet the standard of care and was a professional failure to practice medicine consistent with the public health and welfare, and where, because patients were considered members of the public, the expert's testimony, which was unchallenged on appeal, also supported the Board's conclusion that the doctor committed unprofessional conduct that was likely to injure the public. Furthermore, because the hospital's disciplinary action against the doctor was directed to the same conduct, there was substantial evidence to support discipline under Tex. Occ. Code Ann. § 164.051(a)(7). Granek v. Tex. State Bd. of Med. Examiners, No. 03-03-00698-CV, 2005 Tex. App. LEXIS 6232 (Tex. App. Austin 3d Dist. Aug. 3, 2005), sub. op., op. withdrawn, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005).

Texas State Board of Medical Examiners' conclusion that disciplinary grounds existed for a doctor's improper contact with a female patient was supported by its findings, conclusions and evidence, in accordance with Tex. Gov't Code Ann. § 2001.174(2)(E), where even though the patient was somewhat confused and inconsistent regarding the details of her surroundings when the incidents occurred, she testified unequivocally that the doctor touched her breasts despite her attempts to shield herself with magazines. The administrative law judge heard the patient's testimony firsthand, was able to observe her and her demeanor, and concluded that she made a credible witness, and the appellate court could not second-guess such credibility determinations in the guise of a substantial-evidence inquiry. Granek v. Tex. State Bd. of Med. Examiners, No. 03-03-00698-CV, 2005 Tex. App. LEXIS 6232 (Tex. App. Austin 3d Dist. Aug. 3, 2005), sub. op., op. withdrawn, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005).

Revocation of a doctor's medical license was supported by substantial evidence where there was scientific evidence that two of the doctor's urine samples tested positive for cocaine, and one expert witness definitively

testified that the tests foreclosed the possibility of ingestion by inadvertent passive exposure. *Hinkley v. Tex. State Bd. of Med. Exam'rs, 140 S.W.3d 737, 2004 Tex. App. LEXIS 5078 (Tex. App. Austin 3d Dist. June 10, 2004, no pet.)*.

Trial court remanded for reconsideration the penalty of cancelling a bar's mixed beverage and late hours permits because two of the grounds for revocation of the license were not supported by substantial evidence, the determination did not require further evidence, and the appellate court found that the agency did not abuse its discretion in denying an evidentiary hearing pursuant to Tex. *Gov't Code Ann. § 2001.174(2)*. *Allen-Burch, Inc. v. Tex. Alcoholic Bev. Comm'n, 104 S.W.3d 345, 2003 Tex. App. LEXIS 3945 (Tex. App. Dallas May 7, 2003, no pet.)*.

Contrary to the trial court's findings, the officer's testimony, that the driver admitted to drinking, had slurred speech, blood shot eyes, an odor of intoxication, and unsteadiness, was sufficient to support the ALJ findings, and the appellate court ordered the suspension of the driver's license to be reinstated. *Tex. Dep't of Pub. Safety v. Gutierrez, No. 04-02-00836-CV, 2003 Tex. App. LEXIS 2989 (Tex. App. San Antonio Apr. 9, 2003)*.

Motor vehicle board's decision to grant a new franchisee's application for an auto-dealer license was based on substantial evidence within the meaning of *Tex. Gov't Code Ann. § 2001.174(2)(E)* where the evidence supported the elements of good cause under former Tex. Rev. Stat. Ann. art. 4413(36), § 4.06(c). *Graff Chevrolet Co. v. Texas Motor Vehicle Bd., 60 S.W.3d 154, 2001 Tex. App. LEXIS 3896 (Tex. App. Austin 3d Dist. June 14, 2001, no pet.)*.

Texas Alcoholic Beverage Commission exceeded its authority under former Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(e) (now *Tex. Gov't Code Ann. § 2001.174*) when it declined to renew a liquor license pursuant to Tex. *Alco. Bev. Code Ann. § 11.46(3)*, (8) and (10) where the record failed to show that the retailer posed a threat to the general welfare or would continue to conduct itself contrary to the law. *Texas Alcoholic Beverage Com. v. Wines of Germany & World, Inc., 691 S.W.2d 817, 1985 Tex. App. LEXIS 6940 (Tex. App. Houston 1st Dist. May 30, 1985, no writ)*.

Texas State Board of Medical Examiner's decision to revoke doctor's license to practice was an abuse of discretion under the Administrative Procedure and Texas Register Act, former Tex. Rev. Civ. Stat. Ann. art. 6252-13a (now *Tex. Gov't Code Ann. § 2001.174*), because it was not based on unlawful procedure. Board of Med. *Exmnrs. v. Nacol, 696 S.W.2d 687, 1985 Tex. App. LEXIS 7359 (Tex. App. Beaumont 1985, no writ)*.

**Governments: State & Territorial Governments: Water Rights**

Senior water rights holder did not show the Texas Commission on Environmental Quality wrongly calculated carriage loss because substantial evidence supported the reasonableness and reliability of an expert's calculation of stream losses. *R.E. Janes Gravel Co. v. Tex. Comm'n on Envtl. Quality, 522 S.W.3d 506, 2016 Tex. App. LEXIS 13279 (Tex. App. Houston 14th Dist. Dec. 15, 2016, no pet.)*.

Pursuant to Tex. *Water Code Ann. §§ 11.021(a)*, *11.022*, *11.121*, and *11.046(c)*, the Texas Commission on Environmental Quality incorrectly concluded that the city's effluent remained private groundwater that could be diverted without an appropriation permit; notwithstanding the city's stated intent not to abandon its effluent, the physical reality of the city's reuse project was that the effluent was abandoned to the public domain once the city discharged it into the San Marcos River where it was admittedly commingled and diluted by that state watercourse. *City of San Marcos v. Tex. Comm'n on Envtl. Quality, 128 S.W.3d 264, 2004 Tex. App. LEXIS 96 (Tex. App. Austin 3d Dist. Jan. 8, 2004, no pet.)*.

**Healthcare Law: Business Administration & Organization: Judicial Review**

Order of the Texas Medical Board revoking a doctor's license to practice medicine was not void based on the failure of the administrative law judge to send a copy of his proposal for decision (PFD) to either the doctor or his counsel

because there was no indication of how the doctor's not having an opportunity to file initial objections to the PFD prejudiced his substantial rights; the doctor attended the contested-case hearing but offered no testimony and submitted no evidence in opposition to the Board's request to suspend his license, and the administrative record contained considerable testimony supporting the Board's allegations that served as the basis for its decision to revoke the doctor's license. Mitchell v. Tex. Med. Bd., No. 03-13-00502-CV, 2015 Tex. App. LEXIS 3658 (Tex. App. Austin 3d Dist. Apr. 15, 2015), cert. denied, 577 U.S. 1104, 136 S. Ct. 910, 193 L. Ed. 2d 793, 2016 U.S. LEXIS 823 (U.S. 2016).

### Healthcare Law: Business Administration & Organization: Judicial Review: General Overview

Doctor's failure to attend a patient in the emergency room was properly found to be a failure to practice medicine in an acceptable professional manner consistent with public health and welfare, in violation of Tex. Occ. Code Ann. § 164.051(a)(6), and unprofessional or dishonorable conduct that was likely to injure the public, in violation of Tex. Occ. Code Ann. §§ 164.051(a)(1), 164.052(a)(5), where the Texas State Board of Medical Examiners' expert testified that, based on her review of relevant medical records, the doctor's care and treatment of the patient did not meet the standard of care and was a professional failure to practice medicine consistent with the public health and welfare, and where, because patients were considered members of the public, the expert's testimony, which was unchallenged on appeal, also supported the Board's conclusion that the doctor committed unprofessional conduct that was likely to injure the public. Furthermore, because the hospital's disciplinary action against the doctor was directed to the same conduct, there was substantial evidence to support discipline under Tex. Occ. Code Ann. § 164.051(a)(7). Granek v. Tex. State Bd. of Med. Examiners, No. 03-03-00698-CV, 2005 Tex. App. LEXIS 6232 (Tex. App. Austin 3d Dist. Aug. 3, 2005), sub. op., op. withdrawn, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005).

Texas State Board of Medical Examiners' conclusion that disciplinary grounds existed for a doctor's improper contact with a female patient was supported by its findings, conclusions and evidence, in accordance with Tex. Gov't Code Ann. § 2001.174(2)(E), where even though the patient was somewhat confused and inconsistent regarding the details of her surroundings when the incidents occurred, she testified unequivocally that the doctor touched her breasts despite her attempts to shield herself with magazines. The administrative law judge heard the patient's testimony firsthand, was able to observe her and her demeanor, and concluded that she made a credible witness, and the appellate court could not second-guess such credibility determinations in the guise of a substantial-evidence inquiry. Granek v. Tex. State Bd. of Med. Examiners, No. 03-03-00698-CV, 2005 Tex. App. LEXIS 6232 (Tex. App. Austin 3d Dist. Aug. 3, 2005), sub. op., op. withdrawn, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005).

In reviewing the administrative decision of the Texas State Board of Medical Examiners, the court used the substantial evidence scope of review defined under Tex. Gov't Code Ann. § 2001.174(2)(E), of the Administrative Procedure Act. Texas Bd. of Med. Exmrs. v. Scheffey, 949 S.W.2d 431, 1997 Tex. App. LEXIS 3458 (Tex. App. Austin 1997, no writ).

### Healthcare Law: Business Administration & Organization: Judicial Review: Substantial Evidence

Substantial evidence under Tex. Gov't Code Ann. § 2001.174(E) supported the Texas State Board of Dental Examiners' exercise of its authority under Tex. Occ. Code Ann. §§ 254.001, 263.002(a) to revoke a dentist's license for unprofessional billing practices in violation of Tex. Occ. Code Ann. § 259.008(1). Although an administrative law judge recommended suspension, the Board was empowered to reject the recommendation and adequately explained its reasoning that the dentist's disciplinary history should have been given more weight as an aggravating factor. Froemming v. Tex. State Bd. of Dental Examiners, 380 S.W.3d 787, 2012 Tex. App. LEXIS 4406 (Tex. App. Austin 3d Dist. June 1, 2012, no pet.).

Revocation of an osteopathic doctor's license to practice medicine in Texas by the State Board of Medical Examiners was supported by substantial evidence under Tex. Gov't Code Ann. § 2001.174 because the complaint

provided proper notice under Tex. Occ. Code Ann. § 164.005 and the evidence showed specific allegations of wrongdoing. Chalifoux v. Tex. State Bd. of Med. Examiners, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006).

### Healthcare Law: Business Administration & Organization: Licenses: General Overview

Professional disciplinary action against a doctor, based on stale allegations of improper touching of a female patient's breasts, resulted in a due process violation that caused actual prejudice to the doctor's substantial rights, and the action was therefore arbitrary and capricious under Tex. Gov't Code Ann. § 2001.174(2)(A); staleness was not a significant concern as to another patient's complaints, however, because contemporaneous documentary evidence of the complaints existed. Granek v. Tex. State Bd. of Med. Exam'rs, 172 S.W.3d 761, 2005 Tex. App. LEXIS 6954 (Tex. App. Austin 3d Dist. Aug. 26, 2005, no pet.).

The district court's judgment upholding the Board's second order was affirmed (1) suspending the doctor's medical license until he could show that he was safe and competent to practice medicine, (2) setting forth the minimum terms and conditions with which the doctor had to comply to make that showing, and (3) imposing an administrative penalty on the doctor where the record revealed ample evidence that the doctor over-administered anesthesia to the patient, failed to properly monitor her while she was sedated, and failed to properly respond when the patient went into respiratory arrest. Berezoski v. Tex. State Bd. of Med. Examiners, No. 03-03-00735-CV, 2004 Tex. App. LEXIS 6255 (Tex. App. Austin 3d Dist. July 15, 2004).

### Healthcare Law: Business Administration & Organization: Licenses: Requirements

Texas Medical Board properly found that the former diagnostic radiologist's best interests would not have been served by the reissuance of his medical license because he did not understand the ethical issues that led to the revocation of his license, and did not demonstrate that the risk of further disciplinary proceedings would be minimized if he returned to practice. Clayton v. Tex. Med. Bd., No. 14-19-00359-CV, 2021 Tex. App. LEXIS 1077 (Tex. App. Houston 14th Dist. Feb. 11, 2021).

Evidence did not show that the Texas Medical Board's "best interests of the public" determination lacked substantial evidence because the public's best interests would not have been served by the reissuance of the former diagnostic radiologist's medical license. The Board reasonably concluded that the radiologist had engaged in a pattern of questionable financial behavior that continued well after his convictions and the completion of his prison sentence and supervised release. Clayton v. Tex. Med. Bd., No. 14-19-00359-CV, 2021 Tex. App. LEXIS 1077 (Tex. App. Houston 14th Dist. Feb. 11, 2021).

Texas Medical Board did not err in revoking appellant's license to practice medicine based on violations of the Medical Practice Act because 1) it did not hold him strictly liable for the actions of the advanced practice nurses (APNs) at pain management clinics, but for his failure to adequately supervise them to ensure that treatment of patients met the standard of care; 2) substantial evidence supported the Board's finding that one of the pain clinics was not owned or operated by an APN and thus was not exempt from certification; 3) the administrative law judge did not err in admitting a physician's opinion testimony as to the standard of care; 4) appellant was not deprived of due process since the factual allegations in the Board's petition and the opportunity to depose the physician before the hearing provided appellant with ample notice of the standard of care. Cotropia v. Tex. Med. Bd., No. 03-18-00232-CV, 2018 Tex. App. LEXIS 6829 (Tex. App. Austin 3d Dist. Aug. 28, 2018).

### Healthcare Law: Business Administration & Organization: Licenses: Revocation & Suspension

Order of the Texas Medical Board revoking a doctor's license to practice medicine was not void based on the failure of the administrative law judge to send a copy of his proposal for decision (PFD) to either the doctor or his counsel because there was no indication of how the doctor's not having an opportunity to file initial objections to the PFD

prejudiced his substantial rights; the doctor attended the contested-case hearing but offered no testimony and submitted no evidence in opposition to the Board's request to suspend his license, and the administrative record contained considerable testimony supporting the Board's allegations that served as the basis for its decision to revoke the doctor's license. *Mitchell v. Tex. Med. Bd., No. 03-13-00502-CV, 2015 Tex. App. LEXIS 3668 (Tex. App. Austin 3d Dist. Apr. 15, 2015),* cert. denied, *577 U.S. 1104, 136 S. Ct. 910, 193 L. Ed. 2d 793, 2016 U.S. LEXIS 823 (U.S. 2016).*

In a case relating to the revocation of a doctor's license, a finding that a kyphoplasty constituted a "spine surgery" was reasonably supported by substantial evidence where there was testimony from other physicians that the procedure constituted a surgery. The doctor's performance of this procedure violated an agreed order whereby he was prohibited from being present at or performing "spine surgery." *Baker v. Tex. Med. Bd., No. 03-12-00313-CV, 2013 Tex. App. LEXIS 1259 (Tex. App. Austin 3d Dist. Feb. 6, 2013).*

Substantial evidence under *Tex. Gov't Code Ann. § 2001.174(E)* supported the Texas State Board of Dental Examiners' exercise of its authority under Tex. *Occ. Code Ann. §§ 254.001, 263.002(a)* to revoke a dentist's license for unprofessional billing practices in violation of Tex. *Occ. Code Ann. § 259.008(1).* Although an administrative law judge recommended suspension, the Board was empowered to reject the recommendation and adequately explained its reasoning that the dentist's disciplinary history should have been given more weight as an aggravating factor. *Froemming v. Tex. State Bd. of Dental Examiners, 380 S.W.3d 787, 2012 Tex. App. LEXIS 4406 (Tex. App. Austin 3d Dist. June 1, 2012, no pet.).*

Legislature granted the Texas State Board of Medical Examiners (Board) the power to protect the public interest by regulating those physicians who were granted the privilege of practicing medicine, Tex. *Occ. Code Ann. § 151.003;* the legislature also provided that the Board's decision to revoke a physician's license was subject to the substantial-evidence standard of review, *Tex. Gov't Code Ann. § 2001.174,* and the lack of a trial de novo (either a bench or jury trial) for license-revocation appeals by physicians was rationally related to the legitimate governmental purpose of conservation of judicial resources. *Scally v. Tex. State Bd. of Med. Examiners, 351 S.W.3d 434, 2011 Tex. App. LEXIS 6117 (Tex. App. Austin 3d Dist. Aug. 4, 2011),* cert. denied, *568 U.S. 1256, 133 S. Ct. 1646, 185 L. Ed. 2d 627, 2013 U.S. LEXIS 2528 (U.S. 2013).*

Substantial evidence supported the Texas State Board of Dental Examiners' order that the dentist pay restitution to a patient as she improperly allowed her assistants to perform non-delegable dental work on the patient. The district court erred when it reversed the Board's restitution order because the Board did not make adjudicative findings contrary to the ALJ's findings. *Tex. State Bd. of Dental Examiners v. Brown, 281 S.W.3d 692, 2009 Tex. App. LEXIS 2247 (Tex. App. Corpus Christi Apr. 2, 2009),* reh'g denied, *No. 13-06-547-CV, 2009 Tex. App. LEXIS 4932 (Tex. App. Corpus Christi Apr. 30, 2009).*

Texas State Board of Dental Examiners' conclusion that the dentist practiced dentistry in a manner that constituted dishonorable conduct as defined in *22 Tex. Admin. Code Ann. § 108.9(6)* was supported by the administrative law judge's findings that the dentist allowed her non-dentist employees to adjust occlusion on a patient's teeth and failed to keep adequate medical records where a patient's chart contained neither a written review of medical history, a medical exam, radiographs and findings, a treatment plan, or a written formal consent nor an explanation why that chart was incomplete. *Tex. State Bd. of Dental Examiners v. Brown, 281 S.W.3d 692, 2009 Tex. App. LEXIS 2247 (Tex. App. Corpus Christi Apr. 2, 2009),* reh'g denied, *No. 13-06-547-CV, 2009 Tex. App. LEXIS 4932 (Tex. App. Corpus Christi Apr. 30, 2009).*

Substantial evidence supported the Texas State Board of Dental Examiners' conclusion that the dentist practiced dentistry in a manner that constituted dishonorable conduct as defined in *22 Tex. Admin. Code Ann. § 108.9(6)* where the dentist offered to show a teenaged patient and her mother the scars on her breasts from surgery. *Tex. State Bd. of Dental Examiners v. Brown, 281 S.W.3d 692, 2009 Tex. App. LEXIS 2247 (Tex. App. Corpus Christi Apr. 2, 2009),* reh'g denied, *No. 13-06-547-CV, 2009 Tex. App. LEXIS 4932 (Tex. App. Corpus Christi Apr. 30, 2009).*

Texas State Board of Medical Examiners had a final order to enforce because (1) a district court did not reverse and remand the entire case to the Board, under Tex. Gov't Code Ann. § 2001.174(1), because the district court reversed only that portion of the amended final order imposing an administrative penalty against a doctor and affirmed the Board's order in all other respects; (2) by affirming the Board's order in all other respects, the district court confirmed that, with the exception of the administrative penalty, the Board's amended final order, which imposed a three-year probated license suspension, was valid and remained in full force and effect; (3) because the Board chose to accept the district court's judgment and take no further action regarding the administrative penalty, there was nothing for the Board to change; and (4) the Board could not have issued another final order even if it had wanted to do so because Tex. Gov't Code Ann. § 2001.1775 expressly precluded an agency from modifying its findings or decision in a contested case after proceedings for judicial review have begun. Granek v. Tex. State Bd. of Med. Examiners, No. 03-07-00380-CV, 2008 Tex. App. LEXIS 2025 (Tex. App. Austin 3d Dist. Mar. 19, 2008).

Revocation of a respiratory care practitioner's certificate for taking a drug from an intravenous bag for personal use was properly upheld as an administrative law judge's (ALJ) decision was supported by substantial evidence pursuant to Tex. Gov't Code Ann. § 2001.174(2)(F), affirmative findings as to each 25 Tex. Admin. Code § 123.14(f)(4) factor were unnecessary, and a negative inference could be drawn from the practitioner's invoking the Fifth Amendment, which was done improperly as a blanket assertion rather than in response to a particular question. Andrews v. Tex. Dep't of Health, No. 03-06-00234-CV, 2007 Tex. App. LEXIS 1129 (Tex. App. Austin 3d Dist. Feb. 15, 2007).

Doctor's due process rights were not violated when the State Board of Medical Examiners revoked his license because the record failed to show that the presence of two doctors that served on the disciplinary panel unduly influenced the Board's final decision and there was no record that ex parte communications took place; further, the Board's conclusions were not arbitrary or capricious under Tex. Gov't Code Ann. § 2001.174 where there was no evidence that the Board based its decision on peer review evidence pursuant to Tex. Occ. Code Ann. § 151.003(2) or that the doctor was harmed by such evidence under Tex. R. App. P. 44.1. Chalifoux v. Tex. State Bd. of Med. Examiners, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006).

Revocation of an osteopathic doctor's license to practice medicine in Texas by the State Board of Medical Examiners was supported by substantial evidence under Tex. Gov't Code Ann. § 2001.174 because the complaint provided proper notice under Tex. Occ. Code Ann. § 164.005 and the evidence showed specific allegations of wrongdoing. Chalifoux v. Tex. State Bd. of Med. Examiners, No. 03-05-00320-CV, 2005 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006).

Decision of the Texas State Board of Medical Examiners to revoke a doctor's license was not arbitrary or capricious under Tex. Gov't Code Ann. § 2001.174(2)(F); there was no evidence that the Board considered peer-review evidence in reaching its final decision, and its conclusions were explicitly based on its findings and the evidence presented at the hearing. Chalifoux v. Tex. State Bd. of Med. Exam'rs, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 4738 (Tex. App. Austin 3d Dist. June 2, 2006), op. withdrawn, sub. op., No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006).

"Substantial evidence" under Tex. Gov't Code Ann. § 2001.174(2)(E) supported a finding that a doctor violated the standard of care in assessing the possibility of a cerebrospinal fluid (CSF) leak because he had the patient lie down, which minimized the possibility of the patient experiencing the classic symptoms of a CSF leak; his claim that his discharge decision was not based solely on his observation of the patient after she was lying down for two hours was insufficient to overcome the presumption that the finding was supported by substantial evidence. Chalifoux v. Tex. State Bd. of Med. Exam'rs, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 4738 (Tex. App. Austin 3d Dist. June 2, 2006), op. withdrawn, sub. op., No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9598 (Tex. App. Austin 3d Dist. Nov. 1, 2006).

"Substantial evidence" under Tex. Gov't Code Ann. § 2001.174(2)(E) supported a finding that a doctor violated the standard of care by discharging a patient from the hospital when she had suffered a postsurgery seizure and had other preseizure symptoms, and her Dilantin level was 3.9 at the time of her discharge; the doctor admitted the

Dilantin level was sub-therapeutic, and another doctor testified that the treatment fell below the standard of care. *Chailloux v. Tex. State Bd. of Med. Exam'rs, No. 03-05-00320-CV, 2006 Tex. App. LEXIS 4738 (Tex. App. Austin 3d Dist. June 2, 2006)*, op. withdrawn; sub. op., *No. 03-05-00320-CV, 2006 Tex. App. LEXIS 9596 (Tex. App. Austin 3d Dist. Nov. 1, 2006)*.

### Insurance Law: Industry Regulation: Insurance Company Operations: General Overview

Where substantial evidence supported the findings that an insurance licensee wrongfully paid premiums from another business account, paid bonuses or compensation for referring new business, offered to rebate premiums, and paid unlicensed persons for the services of an agent, revocation of an insurance license was proper. *Murphy v. Comm'r of Ins., No. 03-02-00676-CV, 2003 Tex. App. LEXIS 10156 (Tex. App. Austin 3d Dist. Dec. 4, 2003)*

In reviewing the Texas Commissioner of Insurance's decision denying the applicant a local recording agent's license under the substantial evidence rule, *Tex. Gov't Code Ann. § 2001.174*, the Commissioner's consideration of two 25-year-old felony convictions that involved the defrauding of elderly victims through the sale of an unauthorized insurance product was not erroneous under Tex. *Occ. Code Ann. §§ 53.021*, .022 and substantial evidence existed demonstrating that the applicant failed to make restitution and failed to provide letters of recommendation from prosecutors, law enforcement, and correctional officers, as required by Tex. *Occ. Code Ann. § 53.023(a)(6)(A)* and (b); thus, there was ample evidence in the record to support the Commissioner's decision denying the applicant a local recording agent's license. *Smith v. Montemayor, No. 03-02-00466-CV, 2003 Tex. App. LEXIS 5099 (Tex. App. Austin 3d Dist. June 19, 2003)*.

### Insurance Law: Industry Regulation: Insurance Company Operations: Representatives: Agents: Licenses

Substantial evidence supported the decision of the Texas Insurance Commissioner revoking an insurance agent's license, because he engaged in fraudulent acts or practices with regard to the sale of universal leases and unauthorized annuity transactions. *Zaal v. Tex. Dep't of Ins., No. 03-11-00512-CV, 2013 Tex. App. LEXIS 13296 (Tex. App. Austin 3d Dist. Oct. 29, 2013)*.

### Insurance Law: Industry Regulation: Joint Underwriting Associations

In a case in which the Commissioner of the Texas Department of Insurance upheld a decision of the Texas Medical Liability Insurance Underwriting Association (JUA) that informed an orthopedic surgeon that he had to pay a surcharge in order to renew his professional liability insurance policy, the Commissioner's order was supported by substantial evidence because, by basing the calculation of a surcharge on a policyholder's claim history, the JUA's schedule produced rates that reflected an increase in the risk of insuring a particular policyholder, which was consistent with the statutory requirements that individualized rates be based on plans measuring variations in hazards or expenses. *Scheffey v. Geeslin, No. 03-04-00811-CV, 2006 Tex. App. LEXIS 1137 (Tex. App. Austin 3d Dist. Feb. 15, 2006)*.

### Insurance Law: Industry Regulation: Rates: Judicial Review

In an appeal concerning a rate supervision order issued by the Texas Commissioner of Insurance, which revoked an insurer's ability to file and use its insurance rates without prior approval from the Texas Department of Insurance, there was nothing in the order to suggest that it was not a final, completed agency action, where the only means of challenging the Commissioner's supervision order was to seek judicial review of the order, and, accordingly, the appellate court and the district court had jurisdiction to address the insurer's claims under Tex. Ins. Code Ann. ch. 36. Furthermore, several of the insurer's claims—that the actions for which the Commissioner placed it under supervision were not "rating practices," that the supervision order was arbitrary and capricious, that the Commissioner acted outside his authority in issuing the supervision order, and that its due process rights were

violated—did not require review of an administrative record, and all were authorized grounds for reversal or remand of a decision under the Administrative Procedure Act, *Tex. Gov't Code Ann. §§ 2001.051-.178. Texas Dep't of Ins. v. State Farm Lloyds, 260 S.W.3d 233, 2008 Tex. App. LEXIS 5563 (Tex. App. Austin 3d Dist. July 24, 2008, no pet.).*

## Insurance Law: Industry Regulation: State Insurance Commissioners & Departments: Judicial Review: Standards of Review

In a case in which the Commissioner of the Texas Department of Insurance upheld a decision of the Texas Medical Liability Insurance Underwriting Association (JUA) that informed an orthopedic surgeon that he had to pay a surcharge in order to renew his professional liability insurance policy, the Commissioner's order was supported by substantial evidence because, by basing the calculation of a surcharge on a policyholder's claim history, the JUA's schedule produced rates that reflected an increase in the risk of insuring a particular policyholder, which was consistent with the statutory requirements that individualized rates be based on plans measuring variations in hazards or expenses. *Scheffey v. Geeslin, No. 03-04-00811-CV, 2008 Tex. App. LEXIS 1137 (Tex. App. Austin 3d Dist. Feb. 15, 2008).*

## Insurance Law: Life Insurance: Accidental Death: General Overview

Where a decedent dry-fired a gun several times, someone then replaced the clip in the gun without the decedent's knowledge, and the decedent fired the gun again, killing himself, the decision of the Board of Trustees of the Employees Retirement System of Texas that decedent's death was not accidental and denying the beneficiary recovery under the insurance policy was not supported by substantial evidence as required under Tex. *Gov't Code Ann. § 2001.174, Butler v. Group Life & Health Ins. Co., 962 S.W.2d 296, 1998 Tex. App. LEXIS 858 (Tex. App. Austin 3d Dist. Feb. 12, 1998, no pet.).*

## Insurance Law: Life Insurance: Exclusions: General Overview

Substantial evidence existed to support administrative law judge's findings that widow was excluded from receiving benefits under insurance policy when evidence showed her dead husband was driving truck that overturned, killing himself and a passenger, and, if husband had survived, he would have been charged with manslaughter. *Nobles v. Employees Ret. Sys. of Texas, 53 S.W.3d 483, 2001 Tex. App. LEXIS 4997 (Tex. App. Austin 3d Dist. July 26, 2001, no pet.).*

Substantial evidence was before the Board of Trustees of the Employees Retirement System of Texas to support its finding that air travel or flight caused decedent's runway accident and that this was a risk contemplated by the aviation exclusion in the accidental death benefits provision of the public employees life insurance plan; the standard of judicial review of the board's order was that provided for cases of "substantial evidence" review under the terms of the Administrative Procedures Act, specifically Tex. *Gov't Code § 2001.174*, and because its order was supported by substantial evidence and was not arbitrary or capricious, the district court erred in not affirming the decision of the board to deny accidental death benefits to decedent's spouse. *Board of Trustees of the Emples. Retirement Sys. v. Benge, 942 S.W.2d 742, 1997 Tex. App. LEXIS 1519 (Tex. App. Austin 3d Dist. Mar. 27, 1997, no writ).*

## Labor & Employment Law: Disability & Unemployment Insurance: Disability Benefits: Coverage & Definitions: Preexisting Conditions

In a case involving an exception to a preexisting-condition exclusion, substantial evidence, as required by Tex. *Gov't Code Ann. §§ 815.511(f), 2001.174* supported interpreting the exclusion to require that an employee be actively at work for six consecutive months after disability coverage began, rather than for six consecutive months

at any time before becoming disabled. *Schneider v. Employees Ret. Sys. of Tex., No. 03-05-00178-CV, 2009 Tex. App. LEXIS 2276 (Tex. App. Austin 3d Dist. Apr. 3, 2009)*.

In a former employee's action for disability benefits, substantial evidence, as required by *Tex. Gov't Code Ann. §§ 815.511(f), 2001.174* supported a determination that the employee was not entitled to a waiver of a preexisting-condition exclusion because the evidence showed that the employee was not "actively at work" during the relevant time period. Medical records indicated that the employee had surgery at the beginning of the relevant time period and by the end was interpreting only one or two hours a week; there was no evidence showing whether the employee took paid vacation time or sick leave in the months after the surgery. *Schneider v. Employees Ret. Sys. of Tex., No. 03-05-00178-CV, 2009 Tex. App. LEXIS 2276 (Tex. App. Austin 3d Dist. Apr. 3, 2009)*.

**Labor & Employment Law: Disability & Unemployment Insurance: Disability Benefits: Proof: General Overview**

Application for occupational disability retirement benefits was properly denied where a reasonable basis existed for the conclusion of the Employees Retirement System of Texas Board of Trustees (Board) that the applicant's at-work injury was not the primary cause of his disability; the Board's order and the relevant findings and conclusions that the applicant was not entitled to benefits because his preexisting condition was the primary cause of his disability were supported by substantial evidence because: (1) the applicant had reported problems with his lower back prior to the at-work injury; (2) the applicant had repeated problems with his cervical spine prior to the injury; (3) the applicant had more degeneration in his spine than would be expected for someone his age; and (4) both the applicant's neurosurgeon and the medical board agreed that the injury that the applicant sustained at work would not have been disabling without his preexisting condition. *Larimore v. Employees Ret. Sys. of Tex., No. 03-04-00220-CV, 2006 Tex. App. LEXIS 512 (Tex. App. Austin 3d Dist. Jan. 20, 2006)*, op. withdrawn, sub. op., *208 S.W.3d 511, 2006 Tex. App. LEXIS 2246 (Tex. App. Austin 3d Dist. Mar. 24, 2006)*.

**Labor & Employment Law: Disability & Unemployment Insurance: Disability Benefits: Proof: Evidence**

State employee who remained employed in her secretarial job at a community college from the time of her 2002 injury until 2008, was not disabled under the Employees Retirement System of Texas group disability plan because the plan provided that an employee was deemed not to be disabled if employed and compensated in any manner, and the objective evidence of her disability all pre-dated her leaving her employment. *Trejo v. Bd. of Trs. of the Emples. Ret. Sys., No. 03-14-00060-CV, 2016 Tex. App. LEXIS 36 (Tex. App. Austin 3d Dist. Jan. 6, 2016)*.

**Labor & Employment Law: Disability & Unemployment Insurance: Disability Benefits: Review**

Application for occupational disability retirement benefits was properly denied where a reasonable basis existed for the conclusion of the Employees Retirement System of Texas Board of Trustees (Board) that the applicant's at-work injury was not the primary cause of his disability; the Board's order and the relevant findings and conclusions that the applicant was not entitled to benefits because his preexisting condition was the primary cause of his disability were supported by substantial evidence because: (1) the applicant had reported problems with his lower back prior to the at-work injury; (2) the applicant had repeated problems with his cervical spine prior to the injury; (3) the applicant had more degeneration in his spine than would be expected for someone his age; and (4) both the applicant's neurosurgeon and the medical board agreed that the injury that the applicant sustained at work would not have been disabling without his preexisting condition. *Larimore v. Employees Ret. Sys. of Tex., No. 03-04-00220-CV, 2006 Tex. App. LEXIS 512 (Tex. App. Austin 3d Dist. Jan. 20, 2006)*, op. withdrawn, sub. op., *208 S.W.3d 511, 2006 Tex. App. LEXIS 2246 (Tex. App. Austin 3d Dist. Mar. 24, 2006)*.

**Labor & Employment Law: Wage & Hour Laws: Wage Payments**

Statute did not apply and the trial court had authority under Tex. *Lab. Code Ann. § 61.062* to reverse and set aside the Texas Workforce Commission's (TWC) decision and render judgment, but did not have the authority to remand to the TWC for further proceedings, and the trial court erred by remanding the claim here for a determination of the amount of wages due to the employee. *Tex-Fin, Inc. v. Ducharme, 492 S.W.3d 430, 2016 Tex. App. LEXIS 4316 (Tex. App. Houston 14th Dist. Apr. 26, 2016, no pet.)*.

**Pensions & Benefits Law: Governmental Employees: State Pensions**

Pursuant to substantial evidence review, agency did not exceed its lawful discretion in denying a claim for occupational-disability retirement benefits, because the court could not find that the agency construed and applied the occupational disability definition unreasonably or inconsistently; construction and application of *Tex. Gov't Code Ann. § 811.001(12)* lied within the expertise of the agency, which was charged with administering state employee insurance and retirement benefits. *Employees Ret. Sys. of Tex. v. Garcia, 454 S.W.3d 121, 2014 Tex. App. LEXIS 13502 (Tex. App. Austin 3d Dist. Dec. 18, 2014)*, reh'g denied, *No. 15-0090, 2015 Tex. LEXIS 1034 (Tex. Nov. 13, 2015)*.

Pursuant to Tex. *Gov't Code Ann. § 2001.174(2)(F)*, the Board of Trustees for the Employees Retirement System of Texas (ERS) acted arbitrarily and capriciously and abused its discretion in terminating a disability retiree's occupational disability retirement benefits, resulting in the retiree's substantial rights being prejudiced, because due process and fundamental principals of fairness dictated that the Board should have provided meaningful notice to the retiree before applying its new 80 percent threshold standard in *34 Tex. Admin. Code § 73.17*, which construed Tex. *Gov't Code Ann. § 814.208(d)*, to his post disability earnings to terminate his benefits; being advised of the Board's construction of "comparable pay" to include its 80 percent threshold standard at the hearing was not sufficient notice to satisfy due process concerns, and a 2005 letter advising the retiree that his benefits had been terminated similarly was not sufficient, and, thus, prior to his hearing, the retiree did not have meaningful notice that earning 80 percent of his adjusted final annual state salary could cause his benefits to be terminated. *Patton v. Employees Ret. Sys. of Tex., No. 03-07-00170-CV, 2007 Tex. App. LEXIS 9901 (Tex. App. Austin 3d Dist. Dec. 19, 2007)*.

**Public Health & Welfare Law: Healthcare: Mental Health Services: Costs**

Decision by the Department of Aging and Disability Services finding that intermediate care facilities for individuals with intellectual disabilities were liable for underpaying a statutory quality assurance fee for a three-year period under Tex. *Health & Safety Code Ann. § 252.202* was not authorized by statute or Department rules. *S. Concepts, Inc. v. Tex. Dep't of Aging & Disability Servs. No. 03-17-00712-CV, 2018 Tex. App. LEXIS 9078 (Tex. App. Austin 3d Dist. Nov. 7, 2018)*.

**Public Health & Welfare Law: Healthcare: Services for Disabled & Elderly Persons: Care Facilities**

Decision by the Department of Aging and Disability Services finding that intermediate care facilities for individuals with intellectual disabilities were liable for underpaying a statutory quality assurance fee for a three-year period under Tex. *Health & Safety Code Ann. § 252.202* was not authorized by statute or Department rules. *S. Concepts, Inc. v. Tex. Dep't of Aging & Disability Servs., No. 03-17-00712-CV, 2018 Tex. App. LEXIS 9078 (Tex. App. Austin 3d Dist. Nov. 7, 2018)*.

**Public Health & Welfare Law: Housing & Public Buildings: Accessibility, Construction & Design**

Tex. *Occ. Code Ann. § 1051.703(a)* of the Architecture Practice Act did not categorically preclude licensed engineers from preparing comprehensive building plans and specifications for the class of public works projects identified in that section, nor did Tex. *Occ. Code Ann. § 1051.601* categorically exempt licensed engineers from the

Act's requirements. Instead, the enforcement matter at issue depended on whether preparation of the engineers' particular building plans and specifications was within the scope and practice of engineering as defined by the Engineering Practice Act; because the record was insufficiently developed to determine that issue as a matter of law, summary disposition was not appropriate, and therefore the district court did not abuse its discretion in reversing the Board's decision and remanding the case for further proceedings. *Rogers v. Tex. Bd. of Architectural Examiners (In re Rogers), 390 S.W.3d 377, 2011 Tex. App. LEXIS 6110 (Tex. App. Austin 3d Dist. Aug. 3, 2011, no pet.).*

## Public Health & Welfare Law: Social Security: Medicaid: Coverage: Medical Necessities

Texas Health and Human Services Commission's (HHSC) decision denying the claimant's exceptional circumstances request for a custom power wheelchair with an integrated standing feature was not supported by substantial evidence and was arbitrary and capricious where the evidence reflected in the HHSC's findings of fact did not constitute substantial evidence and statements in the Texas Medicaid and Healthcare Partnership's denial letter were either irrelevant to the determination or were factually incorrect assertions that were contradicted by the express language in the claimant's documentation. The HHSC presented no testimony from a physician to contradict the documentary evidence and the testimony of the claimant's care providers. *Tex. HHS Comm'n v. Lukefahr, No. 03-15-00325-CV, 2016 Tex. App. LEXIS 10855 (Tex. App. Austin 3d Dist. Oct. 6, 2016).*

## Public Health & Welfare Law: Social Security: Medicaid: Providers: Payments & Reimbursements

Where appellant overcharged Medicaid for medical supplies, substantial evidence supported the district court's decision affirming an administrative order requiring appellant to repay $2,165,115 in overpayments because three witnesses testified that the Texas Health and Human Services Commission was entitled to recover an extrapolated overpayment. *Personal Care Prods. v. Smith, 578 S.W.3d 262, 2019 Tex. App. LEXIS 5289 (Tex. App. Austin 3d Dist. June 26, 2019, no pet.).*

## Public Health & Welfare Law: Social Security: Medicaid: State Plans: Categorically & Medically Needy Claimants

Medicaid applicant who, through her guardian, applied for nursing-facility Medicaid benefits under 1 Tex. Admin. Code §§ 358.600-.623, was not entitled to benefits for the month of March 2009 because, on March 1, 2009, at 12:01 a.m., her bank balance was $2,239, exceeding the $2,000 eligibility threshold. *1 Tex. Admin. Code § 358.435, Henson v. Tex. HHS Comm'n, No. 03-13-00621-CV, 2015 Tex. App. LEXIS 11416 (Tex. App. Austin 3d Dist. Nov. 5, 2015).*

## Real Property Law: Brokers: Discipline, Licensing & Regulation

There was substantial evidence to support the Texas Real Estate Commission's findings of fact and conclusions of law in a licensee's disciplinary proceeding, including that the licensee did not obtain the necessary consent to act as an intermediary between the two parties, that he received compensation from both sides, and that he failed to maintain and produce accurate records. *Garcia v. Tex. Real Estate Comm'n, No. 03-14-00349-CV, 2016 Tex. App. LEXIS 5638 (Tex. App. Austin 3d Dist. May 27, 2016).*

Although certain facts found by the Texas Real Estate Commission in a licensee's disciplinary proceeding were disputed by the licensee, as they were irrelevant the Commission's ultimate conclusions of law were not based on them and the licensee's substantial rights were not prejudiced. *Garcia v. Tex. Real Estate Comm'n, No. 03-14-00349-CV, 2016 Tex. App. LEXIS 5638 (Tex. App. Austin 3d Dist. May 27, 2016).*

## Real Property Law: Inverse Condemnation: Regulatory Takings

Because it was unclear whether Texas law would allow plaintiff landowners' inverse condemnation suit for a regulatory groundwater taking, and they had not pursued compensation in state court, their Fifth Amendment takings claim against defendant water district's directors was not ripe and was dismissed without prejudice. *Coates v. Hall, 512 F. Supp. 2d 770, 2007 U.S. Dist. LEXIS 17168 (W.D. Tex. 2007)*.

## Real Property Law: Limited Use Rights: Easements: Public Easements

*Overview:* *The court reasoned that the additional permit requirements ordered by the Commission did not rely on outside-the-record facts, but rather extended existing facility design features that were already considered during the hearing to provide the same level of groundwater protection.*

- A court reviews the Texas Railroad Commission's decision in a contested case under the substantial evidence standard of review codified in the Administrative Procedure Act. *Tex. Gov't Code § 2001.174*; Tex. *Nat. Res. Code § 102.111*. This is a limited standard of review that gives significant deference to the agency in its field of expertise. The reviewing court may reverse the Commission's decision only if the appealing party's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole or are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code § 2001.174(2)(E)-(F)*. Judicial review of the Commission's decision is based on the administrative record. Tex. *Nat. Res. Code § 102.111*.

*HR Martin Cnty. Landfill, LLC v. Mabee, No. 01-23-00036-CV, 2024 Tex. App. LEXIS 9040 (Tex. App. Houston 1st Dist. Dec. 31, 2024)*.

## Real Property Law: Ownership & Transfer: Public Entities

Although appellee acknowledged that appellant owned 100 percent of the leasehold oil and gas estate, and that he had the right "to inject saltwater under the tract produced from the tract" to benefit that lease tract, resolution of appellant's complaint turned on construction of the deeds in appellee's chain of title—specifically, the parameters of the "surface estate" conveyed through those instruments. Thus, it was the sort of issue that was beyond the Texas Railroad Commission's jurisdiction under *16 Tex. Admin. Code § 3.9*. *Rosenthal v. R.R. Comm'n, No. 03-09-00015-CV, 2009 Tex. App. LEXIS 6522 (Tex. App. Austin 3d Dist. Aug. 20, 2009)*.

## Real Property Law: Water Rights: Appropriation Rights

Senior water rights holder did not show the Texas Commission on Environmental Quality wrongly calculated carriage loss because substantial evidence supported the reasonableness and reliability of an expert's calculation of stream losses. *R.E. Janes Gravel Co. v. Tex. Comm'n on Envtl. Quality, 522 S.W.3d 506, 2016 Tex. App. LEXIS 13279 (Tex. App. Houston 14th Dist. Dec. 15, 2016, no pet.)*.

## Real Property Law: Water Rights: Procedure

*Overview:* *In a water pollution case, substantial evidence supported appellee's findings of appellant's violation of Tex. Water Code Ann. § 26.121(a)(2) because the investigator observed stockpiles of mined rocks, excavation equipment, and a pump with a hose that extended from the pit to the creek.*

- The appellate court reviews the Texas Commission on Environmental Quality's (TCEQ) orders under the substantial evidence rule to determine whether the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions violate a constitutional or statutory provision; in excess of the agency's statutory authority; made through unlawful procedure; affected by other error of law; not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)(A)-(F)*; Tex. *Water Code Ann. § 7.064*. The court's inquiry into whether an agency's decision meets this standard considers whether the evidence supports the agency's determination, asking not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for the decision. The contestant bears the burden to overcome the presumption that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence.

   *Tex. Architectural Aggregate, Inc. v. Tex. Comm'n on Env't Quality, No. 03-22-00169-CV, 2023 Tex. App. LEXIS 9152 (Tex. App. Austin 3d Dist. Dec. 7, 2023).*

**Overview:** *Court denied appellant's motion to take judicial notice because the trial court considered former Tex. Water Code Ann. § 13.254(a-5) not as evidence but as legal authority and other documents were not admitted in the underlying administrative proceeding, per* *Tex. Gov't Code Ann. § 2001.175(c)*.

- Judicial review of the Public Utility Commission's final order is by the substantial evidence standard of review. ex. *Water Code Ann. §§ 13.002(16)* and *13.381*. Under this standard, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence or questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174*. The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness. But the reviewing court must reverse or remand the case to the state agency for further proceedings: if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

*HMW Special Util. Dist. & Montgomery Counties v. PUC of Tex., No. 03-21-00234-CV, 2023 Tex. App. LEXIS 1190 (Tex. App. Austin 3d Dist. Feb. 24, 2023).*

**Torts: Public Entity Liability: Immunity: Sovereign Immunity**

**Overview:** *Appeal from the judgment of trial court failed because the APA applied to appellant's appeal of the cease-and-desist order and he was therefore required to file his petition for review not later than the 30th day after the date the decision or order that was the subject of complaint was final and appealable under* *Tex. Gov't Code Ann. § 2001.176(a)*.

- The Uniform Declaratory Judgment Act (UDJA) does not enlarge a trial court's jurisdiction, but is merely a procedural device for deciding cases already within a court's jurisdiction. A litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit. Moreover, under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels. The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA. The avenue applicable here is *Tex. Gov't Code Ann. § 2001.174*, which allows state courts to reverse or remand existing agency orders, but not

enjoin future ones. Thus, the test for redundancy under the Administrative Procedure Act (APA) is whether the declaration sought goes beyond reversal of an agency order.

Gonzalez v. State Medical Bd., No. 03-22-00205-CV, 2023 Tex. App. LEXIS 8250 (Tex. App. Austin 3d Dist. Oct. 31, 2023).

## Transportation Law: General Overview

Where a subcontractor filed a claim alleging that unforeseen conditions caused it to incur additional costs to complete foundation drilling work on a highway construction contract, substantial evidence under Tex. Gov't Code Ann. § 2001.174(2)(E) supported the Texas Department of Transportation's decision that (1) the site conditions were not significantly different; (2) the contract provided that casing was required to prevent caving and water intrusion; and therefore, (3) the subcontractor was not entitled to damages. Granite Constr. Co. v. Tex. DOT, No. 03-11-00436-CV, 2012 Tex. App. LEXIS 9706 (Tex. App. Austin 3d Dist. Nov. 20, 2012).

In a highway construction contract dispute, although Tex. Transp. Code Ann. § 201.112 gave the executive director of the Texas Department of Transportation broad discretion to make changes to the proposed findings of fact and conclusions of law of the administrative law judge (ALJ), the executive director could not ignore the evidence; where the ALJ, and not the executive director, heard the testimony and observed the demeanor of the witnesses, and in the absence of independent evidence in the record to support the executive director's credibility choice, the executive director's decision to reject the ALJ's findings based on credibility was arbitrary and capricious under Tex. Gov't Code Ann. § 2001.174. State v. Mid-South Pavers, Inc., 246 S.W.3d 711, 2007 Tex. App. LEXIS 9905 (Tex. App. Austin 3d Dist. Dec. 19, 2007, no pet.).

## Transportation Law: Bridges & Roads: Turnpikes

In a toll violation case arising from an order under Tex. Transp. Code Ann. §§ 284.201, 284.202(a) and an administrative adjudication hearing procedure under Tex. Transp. Code Ann. § 284.204, the alleged violator was not entitled to a trial de novo, even though the appeal hinged on a question of law. The procedure was created by a commissioner court order and was consistent with the substantial evidence standard in Tex. Gov't Code Ann § 2001.174; it did not prevent the trial court from considering questions of law. Enter. Leasing Co. v. Harris County Toll Rd. Auth., 356 S.W.3d 85, 2011 Tex. App. LEXIS 1962 (Tex. App. Houston 1st Dist. Mar. 17, 2011), reh'g denied, No. 01-09-00271-CV, 2011 Tex. App. LEXIS 10296 (Tex. App. Houston 1st Dist. May 25, 2011).

## Transportation Law: Private Vehicles: Operator Licenses: General Overview

Where an officer initiated a traffic stop and smelled alcohol, appellee admitted that she had just left a bar where she had consumed alcohol; in the license suspension proceeding, the judge's finding that the police had probable cause to arrest appellee for DWI was supported by substantial evidence under Tex. Gov't Code Ann. § 2001.174; the admission of unqualified testimony from a police officer concerning the horizontal gaze nystagmus test was harmless. Tex. Dep't of Pub. Safety v. Bishop, No. 03-06-00054-CV, 2007 Tex. App. LEXIS 360 (Tex. App. Austin 3d Dist. Jan. 22, 2007).

Trial court erred in reversing the suspension of a driver's license by an administrative law judge (ALJ) because substantial evidence supported the ALJ's finding under Tex. Transp. Code Ann. § 724.042 that the driver voluntarily refused to submit to a breath test; although the driver claimed he was misled about the consequences of refusal, the ALJ, as the sole trier of fact under Tex. Gov't Code Ann. § 2001.174, was free to disbelieve the driver. Tex. Dep't of Pub. Safety v. Patel, No. 13-05-775-CV, 2006 Tex. App. LEXIS 9720 (Tex. App. Corpus Christi Nov. 9, 2006), reh'g denied, No. 13-05-775-CV, 2006 Tex. App. LEXIS 11114 (Tex. App. Corpus Christi Dec. 7, 2006).

Trial court did not err in affirming the suspension of the driver's license where although the ALJ found that the driver had operated a watercraft while intoxicated, this was an obvious clerical error which did not negate the administrative order, and the decision was supported by substantial evidence, Tex. Gov't Code Ann. § 2001.174. Goldstein v. Tex. Dep't of Pub. Safety, No. 04-06-00142-CV, 2006 Tex. App. LEXIS 11265 (Tex. App. San Antonio Oct. 11, 2006).

In a review under Tex. Gov't Code Ann § 2001.174(2)(E), the trial court erred in reversing a license suspension; reasonable suspicion was unnecessary for an initial contact between officers and the driver because the driver stopped his vehicle on the side of a public roadway entirely on his own volition and the officers made contact with him to see if he was in need of assistance; substantial evidence supported a finding of probable cause to arrest the driver because his breath smelled strongly of alcohol, he had bloodshot eyes, his speech was slurred, he admitted that he consumed six beers, and he failed every field sobriety test. Tex. Dep't of Pub. Safety v. Svoboda, No. 04-05-00796-CV, 2006 Tex. App. LEXIS 5266 (Tex. App. San Antonio June 21, 2006).

Substantial evidence, as required by Tex. Transp. Code Ann. § 524.043 and Tex. Gov't Code Ann § 2001.174, supported a license suspension, even though the underlying accident occurred in an apartment parking lot, because the lot was ungated and open to the public and thus was a "public place." Tex. Dep't of Pub. Safety v. Briggs, No. 03-05-00331-CV, 2006 Tex. App. LEXIS 1129 (Tex. App. Austin 3d Dist. Feb. 9, 2006).

License suspension was reinstated because the Texas Department of Public Safety produced more than a scintilla of evidence on the factors set forth in Tex. Transp. Code Ann. § 724.042, when the driver was properly stopped for violation of Tex. Transp. Code Ann. § 545.104(a), and the officer smelled alcohol on the driver's breath, noticed that the driver's eyes were bloodshot and his speech was slurred. Tex. Dep't of Pub. Safety v. Shellberg, No. 13-04-100-CV, 2005 Tex. App. LEXIS 6644 (Tex. App. Corpus Christi Aug. 18, 2005).

Statute governing license suspension appeals is the touchstone in deciding which standard of review should apply: the statute specifically requires the reviewing court to use the substantial evidence rule. Because a court applying the substantial evidence standard of review may not substitute its judgment for that of the administrative law judge as to the weight of the evidence, the equally plausible but opposite inferences construct can not be part of the substantial evidence rule. Dep't of Pub. Safety v. Hirschman, 169 S.W.3d 331, 2005 Tex. App. LEXIS 4579 (Tex. App. Waco June 15, 2005, no pet.).

At the license suspension hearing, the arresting officer testified that the driver's vehicle was moving erratically, the officer smelled alcohol coming from the interior of the vehicle, and the driver failed sobriety tests; there was substantial evidence to support the administrative finding that there was reasonable suspicion to stop and probable cause to arrest the driver for driving while intoxicated. The trial court erred by reversing the administrative decision to suspend her driver's license, because she refused to provide a breath sample. Tex. Dep't of Pub. Safety v. Leath, No. 07-03-0450-CV, 2005 Tex. App. LEXIS 3927 (Tex. App. Amarillo May 18, 2005).

Administrative law judge's (ALJ) suspension of a driver's license was supported by substantial evidence where the arresting officer surmised in his sworn report that the driver had been driving while intoxicated because he emitted a strong odor of alcohol, had glassy eyes and slurred speech, and his movements were slowed and staggered, and where the record revealed that the driver admitted to drinking a few beers before the accident. That gave the officer reasonable suspicion to investigate the driver further, and the officer's reasonable suspicion evolved into probable cause when he observed five out of the six points of the horizontal gaze nystagmus test and the driver refused to provide a breath specimen. Tex. Dep't of Pub. Safety v. Burrer, No. 04-03-00896-CV, 2005 Tex. App. LEXIS 3534 (Tex. App. San Antonio May 11, 2005).

Texas Department of Public Safety properly suspended an individual's driver's license for his refusal to give a breath specimen after he was arrested for suspicion of DWI. On review, the county court ruled that substantial evidence existed to affirm the administrative decision suspending his driver's license, and that the individual failed to prove that the administrative decision prejudiced his substantial rights. Parks v. Tex. Dep't of Pub. Safety, No. 01-03-00274-CV, 2004 Tex. App. LEXIS 9365 (Tex. App. Houston 1st Dist. Oct. 21, 2004).

Department of Public Safety was not obligated to prove compliance with a 15-minute observation period before admitting a breath test at a license-revocation hearing because no fact issue was raised with respect to the particular requirement; thus, the breath test was properly admitted, and the trial court erred in reversing the license suspension. *Tex. Dep't of Pub. Safety v. Barrera, No. 13-03-145-CV, 2004 Tex. App. LEXIS 5346 (Tex. App. Corpus Christi June 17, 2004).*

Under Tex. *Gov't Code Ann. § 2001.174*, the appellate court had to reverse when a substantial right had been prejudiced because the administrative decision was affected by an error of law; the administrative law judge erred in applying the law to the facts as she found them where no necessity justification existed at the time of the driver's arrest because his drive back to the scene was not in avoidance of any imminent harm. *Tex. Dep't of Pub. Safety v. Moore, 175 S.W.3d 270, 2004 Tex. App. LEXIS 4401 (Tex. App. Houston 1st Dist. May 13, 2004, no pet.).*

Substantial evidence supported the decision of an administrative law judge to suspend the driver's license of an individual arrested for operating a motor vehicle in a public place while intoxicated. *Tex. Dep't of Pub. Safety v. Hernandez, No. 13-02-293-CV, 2003 Tex. App. LEXIS 6333 (Tex. App. Corpus Christi July 24, 2003).*

Since the Texas Legislature had expressed no intent that the Texas Department of Public Safety (DPS) be penalized for the failure of an officer to submit a report within the five-day deadline of *Tex. Transp. Code Ann. § 724.032(c)(4)*, the failure of an officer to comply with the statute did not render the report inadmissible at an administrative hearing, and the judgment that the evidence was insufficient to authorize suspension of the driver's license was reversed and remanded because the erroneous exclusion of exhibits prejudiced the DPS's substantial rights since the administrative law judge denied the DPS the opportunity to satisfy its evidentiary burden at the license suspension hearing. *Tex. Dep't of Pub. Safety v. Kimbrough, 106 S.W.3d 747, 2003 Tex. App. LEXIS 3566 (Tex. App. Fort Worth Apr. 24, 2003, no pet.).*

Under the substantial evidence rule of *Tex. Gov't. Code Ann. § 2001.174*, the court erred in reversing a license suspension decision by the Texas Department of Public Safety; the administrative law judge did not err in finding, pursuant to *Tex. Transp. Code Ann. § 524.035(a)(2)*, that the officer had probable cause to arrest defendant for driving while intoxicated. *State Dep't of Pub. Safety v. Boeck, No. 13-99-812-CV, No. 13-99-00812-CV, 2001 Tex. App. LEXIS 2785 (Tex. App. Corpus Christi Apr. 26, 2001).*

In reviewing administrative license suspension decisions under the substantial evidence standard in *Tex. Transp. Code Ann. § 524.041* and *Tex. Gov't. Code Ann. § 2001.174*, the reviewing court may not substitute its judgment for that of the agency. The issue for the court is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action as shown by a "scintilla" of evidence. *Mireles v. Texas Dep't of Pub. Safety, 9 S.W.3d 128, 1999 Tex. LEXIS 125 (Tex. 1999).*

**Transportation Law: Private Vehicles: Operator Licenses: Revocation & Suspension**

*Overview:* *By reading the required statutory and Miranda warnings, including under Tex. Transp. Code Ann. § 724.015, officers did all that was necessary under Texas law; officers were not required to inform arrested persons that having an attorney present was not an option in deciding whether to submit to a breath test, even where a defendant became confused.*

- On appeal of an administrative driver's license suspension to county court, review is based on the substantial evidence rule. 1 Tex. Admin. Code § 159.37(d). In reviewing a decision under the substantial evidence rule, a court may not substitute its judgment for that of the state agency on the weight of the evidence. *Tex. Gov't Code Ann. § 2001.174.* The court should reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure;(D) affected by other error of law; (E)

not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*.

*Tex. Dep't of Pub. Safety v. Bruce, 694 S.W.3d 822, 2024 Tex. App. LEXIS 2691 (Tex. App. Houston 14th Dist. Apr. 18, 2024, no pet.)*.

**Overview:**       ALJ's finding under *Tex. Transp. Code Ann. § 724.042* that the police officer had reasonable suspicion to stop defendant was reasonable and supported by substantial evidence because the police officer testified that defendant had a cell phone in his hand the cell phone was somewhere in front of defendant where the officer saw it.

- A person whose driver's license is suspended following an administrative hearing is entitled to judicial review of that decision. *Tex. Transp. Code Ann. § 524.041(a)*. These decisions are reviewed under the substantial evidence standard, and the reviewing court may affirm the administrative decision in whole or in part. *Tex. Gov't Code Ann. § 2001.174(1)*. The reviewing court must reverse or remand the case if the appellant's substantial rights were prejudiced because, among other enumerated reasons, the administrative findings, inferences, conclusions, or decisions were not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. *Tex. Gov't Code Ann. § 2001.174(2)(E)*.

*Tex. Dep't of Pub. Safety v. Bryan, No. 13-21-00396-CV, 2023 Tex. App. LEXIS 2993 (Tex. App. Corpus Christi May 4, 2023)*.

**Overview:** ALJ's administrative order suspending appellee's driver's license under *Tex. Transp. Code Ann. § 524.022* was affirmed because appellee did not raise his arguments before the ALJ at the administrative hearing, and, thus, he waived his arguments for consideration by the county court on appeal.

- A person whose driver's license is suspended following an administrative hearing is entitled to judicial review of the decision. *Tex. Transp. Code Ann. § 524.041(a)*. Judicial review of such decisions is governed by the substantial evidence rule. Under this standard, reviewing courts must determine whether the ALJ's findings are supported by substantial evidence or whether the order is invalid for some other reason. *Tex. Gov't Code Ann. § 2001.174*. Whether substantial evidence supports an administrative order is a question of law. The dispositive issue for the reviewing court is not whether the ALJ's order is correct, but whether the record demonstrates some reasonable basis for the ALJ's action.

*Tex. Dep't of Pub. Safety v. Cuellar, No. 01-22-00085-CV, 2023 Tex. App. LEXIS 1461 (Tex. App. Houston 1st Dist. Mar. 7, 2023)*.

Texas Department of Public Safety's petition to suspend appellee's driver's license after she was arrested for driving while intoxicated was properly denied where there was substantial evidence to support a finding that the Department failed to meet its burden to establish reasonable suspicion to stop or contact appellee because the officer who initiated the traffic stop did not testify that he believed appellee's driving of her car onto an improved shoulder was not for any of the reasons enumerated in *Tex. Transp. Code Ann. § 545.058(a)*, and the officer's testimony that he believed that appellee's driving was unsafe was a conclusory statement, as he did not provide any explanation or basis for his conclusion that her driving was unsafe. *Tex. Dep't of Pub. Safety v. Taunton, No. 01-18-00565-CV, 2019 Tex. App. LEXIS 7195 (Tex. App. Houston 1st Dist. Aug. 15, 2019)*.

Substantial evidence supported an administrative law judge's decision suspending the driver's license of a motorcycle driver who had refused a police officer's request to provide a breath or blood specimen where the officer had reasonable suspicion to detain the driver to investigate whether he was driving while intoxicated (DWI), as the officer smelled alcohol on the driver's breath and observed the driver's bloodshot eyes after he stopped the driver for speeding; the driver also did not preserve a complaint that there was an unreasonable delay in the DWI investigation, as he did not assert that complaint at the administrative hearing, and there was thus no constitutional

violation arguable on appeal that prejudiced his substantial rights. *Tex. Dep't of Pub. Safety v. Rabideau, No. 06-19-00017-CV, 2019 Tex. App. LEXIS 6039 (Tex. App. Texarkana July 17, 2019)*.

Suspension order was proper because the interaction between the troopers and the driver began as a consensual encounter, and therefore reasonable suspicion or probable cause was not a requisite to the interaction: there was more than a scintilla of evidence to have allowed the administrative law judge to infer that the driver had operated his vehicle while legally intoxicated; and the suspension order was reasonable and did not impair the driver's substantial rights. *Cardoza v. Tex. Dep't of Pub. Safety, No. 04-18-00410-CV, 2019 Tex. App. LEXIS 1431 (Tex. App. San Antonio Feb. 27, 2019)*.

In an administrative hearing to contest appellant's suspension of his driver's license, the ALJ acted within his discretion in granting an oral motion for continuance filed by the Texas Department of Public Safety as a response to late production of discovery; appellant did not show that the ruling granting a continuance prejudiced his substantial rights. For example, appellant did not assert that the continuance deprived him of evidence or meritorious defenses that he otherwise would have presented; and appellant did not claim that he was prejudiced by the Department's discovery mistake or its late production of the correct offense report. *Tex. Dep't of Pub. Safety v. Gonzalez, 555 S.W.3d 714, 2018 Tex. App. LEXIS 4965 (Tex. App. Houston 1st Dist. July 3, 2018, no pet.)*.

Trial court did not err in affirming the administrative law judge's decision to suspend appellant's license under the implied consent law, because there was substantial evidence that the officer had reasonable suspicion to conduct a traffic stop to investigate appellant for disorderly conduct or violating the city's noise ordinance; the officer personally observed appellant playing loud music from a vehicle around 3:00 a.m. after having received a noise complaint. *Rodriguez v. Tex. Dep't of Pub. Safety, No. 09-15-00147-CV, 2016 Tex. App. LEXIS 13780 (Tex. App. Beaumont Dec. 29, 2016)*.

Trial court erred when it reversed an administrative license suspension based on the driver's refusal to provide a blood sample; the officer had reasonable suspicion to stop the driver, whose vehicle was on the sidewalk; although the ALJ erroneously wrote that the refusal was for a breath rather than a blood sample, the error was not prejudicial. *Tex. Dep't of Pub. Safety v. Rezaee, No. 09-15-00353-CV, 2016 Tex. App. LEXIS 11394 (Tex. App. Beaumont Oct. 20, 2016)*.

Reasonable basis existed to support the ALJ's findings regarding the officer's request for a breath specimen from the deaf driver and the driver's refusal to provide it as the officer's request was clearly conveyed in writing, which the driver understood; the driver's license suspension should have been upheld, and was supported by substantial evidence. *Tex. Dep't of Pub. Safety v. Littlepage, No. 03-14-00194-CV, 2016 Tex. App. LEXIS 7244 (Tex. App. Austin 3d Dist. July 8, 2016)*.

Officer had reasonable suspicion to stop defendant, and therefore the trial court erred by reversing the administrative law judge's decision that the officer had a reasonable belief that defendant was speeding, where the officer's observation that defendant was traveling at a high rate of speed over the posted speed limit of 45 mph provided him with reasonable suspicion to initiate the traffic stop. *Tex. Dep't of Pub. Safety v. Kuhn, No. 06-15-00083-CV, 2016 Tex. App. LEXIS 2879 (Tex. App. Texarkana Mar. 22, 2016)*.

When a driver contested the suspension of the driver's license, it was not an abuse of discretion for an administrative law judge to quash the driver's subpoena of an arresting officer because the subpoena's return of service did not comply with *Tex. R. Civ. P. 176.5(b)*, as the officer did not personally execute the return to indicate the officer accepted service, and the return did not state the officer was served by an alternative means. *Curry v. Tex. Dep't of Pub. Safety, 472 S.W.3d 346, 2015 Tex. App. LEXIS 8153 (Tex. App. Houston 1st Dist. Aug. 4, 2015, no pet.)*.

*Tex. Transp. Code Ann. § 524.035* contained no requirement that the Texas Department of Public Safety had to prove compliance with Tex. Transp. Code Ann. § 724.017 to sustain its suspension of a license; the driver did not show that the ALJ violated § 724.017 by its decision to sustain the suspension of her driver's license, and the Forensic Alcohol Analysis Report constituted substantial evidence supporting the finding that the driver operated a

motor vehicle with an alcohol concentration of 0.08 grams or greater. *Slowers v. Tex. Dep't of Pub. Safety, 465 S.W.3d 257, 2015 Tex. App. LEXIS 3533 (Tex. App. Houston 1st Dist. Apr. 9, 2015, no pet.).*

Trial court erred by reversing a decision of an ALJ to suspend the driver's license after he refused to consent to a blood test where substantial evidence supported the ALJ's finding that the officer had reasonable suspicion to stop the driver. Substantial evidence supported the ALJ's finding that probable cause existed to arrest the driver for operating a vehicle in a public place while intoxicated, and the trial court erred by reversing the ALJ's decision based on a later blood test showing the driver was not intoxicated because the test was not introduced into evidence. *Tex. Dep't of Pub. Safety v. McHugh, No. 03-13-00261-CV, 2014 Tex. App. LEXIS 11733 (Tex. App. Austin 3d Dist. Oct. 24, 2014).*

Evidence was sufficient to suspend a driver's license because it supported findings that there was reasonable suspicion to stop the driver for speeding, probable cause to arrest him for driving while intoxicated after observing that he had red, glassy eyes and administering field sobriety tests, and, based on the officer's testimony, that the driver refused to provide a breath specimen after being warned of the consequences. *Tex. Dep't of Pub. Safety v. Narvaez, No. 13-14-00114-CV, 2014 Tex. App. LEXIS 11588 (Tex. App. Corpus Christi Oct. 23, 2014).*

Where the Texas Department of Public Safety appealed a trial court's judgment reversing an administrative law judge's (ALJ) decision to suspend a driver's license pursuant to *Tex. Transp. Code Ann. §724.035*, a peace officer's report was admissible under the business records exception to the hearsay rule, *Tex. R. Evid. 803(8)(C)*, even if the report was unsworn. The ALJ acted within his discretion in admitting the report and the administrative decision was supported by substantial evidence. *Tex. Dep't of Pub. Safety v. Todd, No. 05-13-01198-CV, 2014 Tex. App. LEXIS 6455 (Tex. App. Dallas June 12, 2014).*

Administrative law judge's finding that the deputy had reasonable suspicion to stop the driver was not reasonably supported by substantial evidence and therefore it erred by suspending the driver's license under *Tex. Transp. Code Ann. §§ 524.022, .041*, because the evidence only showed that the driver was observed driving slowly on a highway at 1:40 a.m; the record was silent regarding the deputy's training and experience and was silent as to the characteristics of the area in which the driver was observed driving. In addition, there was no evidence that the deputy stopped the driver because he was concerned for her safety, as there was no evidence she was alone in her vehicle, that there were any other vehicles sharing the roadway with the driver, or that driving slowly was inherently unsafe; the deputy stated in his report that he had reasonable suspicion to contact that driver only because he observed her vehicle traveling 40 m.p.h. in a 65 m.p.h. posted zone. *Peters v. Tex. Dep't of Pub. Safety, 404 S.W.3d 1, 2013 Tex. App. LEXIS 2798 (Tex. App. Houston 1st Dist. Mar. 19, 2013, no pet.).*

Trial court erred by reversing the administrative decision allowing the suspension of the driver's license because substantial evidence supported that decision, as the officer testified multiple times that he saw the driver on the road and then enter the parking lot and that he saw the driver in the vehicle's driver's seat when it was parked under a light in the parking lot; when the driver approached the officer, he saw that the driver was intoxicated and therefore had reasonable suspicion or probable cause to detain the driver and administer field sobriety tests. The officer's report, which bore the seal and signature of the Texas Department of Public Safety's custodian of records, corroborated the officer's testimony that the driver did not provide a breath sample on request and that he refused to provide a post-arrest breath sample. *Tex. Dep't of Pub. Safety v. Perez, No. 13-12-00216-CV, 2013 Tex. App. LEXIS 659 (Tex. App. Corpus Christi Jan. 24, 2013).*

Administrative law judge (ALJ) did not err in quashing the driver's subpoena of the arresting officer in the administrative license suspension proceeding, because the ALJ's application of the 150-mile limit in *Tex. R. Civ. P. 176.3* was not an abuse of discretion; the ALJ was expressly authorized to consider the Texas Rules of Civil Procedure. *Hodge v. Tex. Dep't of Pub. Safety, No. 01-12-00259-CV, 2012 Tex. App. LEXIS 10526 (Tex. App. Houston 1st Dist. Dec. 20, 2012), op. withdrawn, sub. op., No. 01-12-00259-CV, 2013 Tex. App. LEXIS 11086 (Tex. App. Houston 1st Dist. Aug. 29, 2013).*

There was substantial evidence to support an administrative law judge's decision authorizing the suspension of a driver's license under *Tex. Transp. Code Ann. § 524.012(b)(1)* because there was a reasonable suspicion to stop a vehicle based on a failure to stop at a red light, there was probable cause to arrest due to an odor of alcohol and signs of intoxication, and the driver's blood alcohol was above the legal limit. *Tex. Dep't of Pub. Safety v. Caruana, No. 03-08-00659-CV, 2012 Tex. App. LEXIS 7125 (Tex. App. Austin 3d Dist. Aug. 23, 2012).*

Trial court exceeded its authority when it modified an administrative law judge's (ALJ) decision that a driver's license was suspended for 2 years under *Tex. Transp. Code Ann. § 724.035(a)* and stated that the suspension was for 180 days. *Tex. Dep't of Pub. Safety v. Hudson, No. 05-10-01129-CV, 2012 Tex. App. LEXIS 1148 (Tex. App. Dallas Feb. 13, 2012).*

Driver's license suspension was proper because the facts established probable cause that the licensee was operating a motor vehicle in a public place while intoxicated for purposes of *Tex. Transp. Code Ann. § 724.042;* witnesses at an accident scene reported that a pickup had rear-ended another vehicle and driven away, a license plate at the scene was matched to the licensee's pickup, which was later found abandoned with front end damage, and according to the licensee's wife, the licensee called her to pick him up near the site of the abandoned pickup. After the wife drive the licensee to the sheriff's office, a trooper and others observed the licensee and detected an odor of an alcoholic beverage on his breath. *Tex. Dep't of Pub. Safety v. Allen, No. 07-10-0271-CV, 2011 Tex. App. LEXIS 4268 (Tex. App. Amarillo June 3, 2011).*

Substantial evidence under *Tex. Gov't Code Ann. § 2001.174* supported the administrative suspension of appellee's driver's license under *Tex. Transp. Code Ann. §§ 724.035, 724.042,* because he was stopped for speeding, had trouble maintaining balance, refused to provide a breath or blood specimen, and admitted to ingesting hydrocodone, a controlled substance. *Tex. Dep't of Pub. Safety v. Greathouse, No. 10-10-00355-CV, 2011 Tex. App. LEXIS 2119 (Tex. App. Waco Mar. 23, 2011).*

Where a deputy observed a pickup truck make a right turn so wide that it caused the front driver's side tire to go onto the grassy area of the road, the deputy had reasonable suspicion to stop appellee's vehicle because he committed a traffic violation under *Tex. Transp. Code Ann. §§ 545.051(a), 545.101(a);* based on the strong odor of an alcoholic beverage emitting from appellee, his admission that he was drinking beer, and his poor performance on field sobriety tests, the deputy had probable cause to arrest appellee for driving while intoxicated. Because the requirements of *Tex. Transp. Code Ann. § 524.035(a)(1),* (2) were met, the Texas Department of Public Safety's decision to suspend appellee's driver's license was supported by substantial evidence under *Tex. Gov't Code Ann. § 2001.174. Tex. Dep't of Pub. Safety v. Garza, No. 13-10-00330-CV, 2010 Tex. App. LEXIS 9523 (Tex. App. Corpus Christi Dec. 2, 2010).*

Suspension of a driver's license for refusal to submit to a breath test under *Tex. Transp. Code Ann § 724.035* was supported by substantial evidence because even if the officer's sworn report was inadmissible under *Tex. R. Evid. 803(8)* based on a lack of a signature, the admissible evidence demonstrated the four elements required to uphold the suspension; that evidence included the DIC-24 form, under *Tex. Transp. Code Ann. § 724.032,* which indicated refusal to submit to the breath test and was signed by the driver. *Tex. Dep't of Pub. Safety v. Guajardo, No. 13-09-00468-CV, 2010 Tex. App. LEXIS 6000 (Tex. App. Corpus Christi July 29, 2010).*

Substantial evidence supported the suspension of the minor's driver's license, because the minor was properly advised of the consequences set forth under *Tex. Transp. Code Ann. § 724.015* and he voluntarily refused to submit a specimen at the officer's request, and since the officer was not required to give the minor the notice of suspension before requesting a specimen, any irregularity on the notice of suspension did not affect the voluntariness of the minor's refusal to submit a specimen for purposes of *Tex. Transp. Code Ann. § 724.042. Tex. Dep't of Pub. Safety v. Henson, No. 14-09-00010-CV, 2010 Tex. App. LEXIS 3478 (Tex. App. Houston 14th Dist. May 11, 2010).*

There was sufficient evidence for the administrative judge to uphold the suspension of the driver's license, because the driver was speeding and veering back and forth, an odor of alcohol emanated from inside the car, the driver's

eyes were bloodshot and glassy, the driver's speech was slurred, the driver was unable to complete the one-leg-stand test and he exhibited six clues of intoxication on the walk-and-turn test, and the driver displayed clues of intoxication on the horizontal gaze nystagmus test and the vertical nystagmus test. Tex. Dep't of Pub. Safety v. Williams, 303 S.W.3d 356, 2009 Tex. App. LEXIS 9708 (Tex. App. El Paso Dec. 23, 2009, no pet.).

Driver's license revocation under Tex. Transp. Code Ann. § 724.035 was not supported by substantial evidence, as required by Tex. Transp. Code Ann. §§ 524.002(b), 724.047 and Tex. Gov't Code Ann. § 2001.174, that the licensee actually operated his vehicle while intoxicated. He was asleep when an officer approached him, and although the engine was running, he was parked in his usual space behind the building where he worked, did not have a foot on the brake, and had not turned on the headlights; also, the car was in park and the front seat was reclined. Tex. Dep't of Pub. Safety v. Allocca, 301 S.W.3d 364, 2009 Tex. App. LEXIS 8781 (Tex. App. Austin 3d Dist. Nov. 13, 2009, no pet.).

Decision of an ALJ administratively suspending a driver's license was supported by substantial evidence, Tex. Gov't Code Ann. § 2001.174(2)(E), including that it took the driver more than 20 seconds to get his door open and exit the car, he was swaying, had red, bloodshot eyes, had a strong odor of alcohol coming from his mouth, and admitted coming from a bar where he had had eight or nine drinks. Tex. Dep't of Pub. Safety v. Dishman, No. 04-08-00711-CV, 2009 Tex. App. LEXIS 3052 (Tex. App. San Antonio May 6, 2009).

Under the substantial evidence standard of review, it was determined that driving privileges were properly suspended because there was probable cause to believe that a driver was operating a motor vehicle in a public place under Tex. Transp. Code Ann. § 724.042(2)(A); the public had unrestricted access to a private road, and it did not matter that travelers were infrequent or that the road had not been converted to a county road. Tex. Dep't of Pub. Safety v. Castro, No. 04-08-00687-CV, 2009 Tex. App. LEXIS 3198 (Tex. App. San Antonio Apr. 29, 2009).

While bloodshot eyes, an odor of alcohol, and unsteady balance were all symptoms of intoxication, those facts did not, without more, give rise to probable cause to believe the driver was driving while intoxicated. As the rest of the evidence did not support the conclusion that the driver was driving while intoxicated, the administrative law judge's decision to suspend the driver's operator's license was not reasonably supported by substantial evidence. Tex. Dep't of Pub. Safety v. Gilfeather, No. 2-07-459-CV, 2009 Tex. App. LEXIS 1502 (Tex. App. Fort Worth Mar. 5, 2009), op. withdrawn, sub. op., 293 S.W.3d 875, 2009 Tex. App. LEXIS 6144 (Tex. App. Fort Worth Aug. 6, 2009).

Administrative suspension of an operator's license was not subject to reversal based on a clerical error made by an administrative law judge (ALJ) because it did not affect an operator's substantial rights; the ALJ relied on an improper date of arrest. Tex. Dep't of Pub. Safety v. Gonzales, 276 S.W.3d 88, 2008 Tex. App. LEXIS 7985 (Tex. App. San Antonio Oct. 22, 2008, no pet.).

Suspension of an operator's license was improper because an officer did not have reasonable suspicion for a stop under Tex. Transp. Code Ann. § 724.042 since slow driving alone was not enough to show that the operator was impeding traffic, there was no violation of San Antonio, Tex., Code of Ordinances § 19-133 since the conditions were foggy and rainy, and an investigatory stop was not proper based on the operator's weaving since the officer did not testify that he suspected that defendant was intoxicated or that the operator's driving was unsafe. Tex. Dep't of Pub. Safety v. Gonzales, 276 S.W.3d 88, 2008 Tex. App. LEXIS 7985 (Tex. App. San Antonio Oct. 22, 2008, no pet.).

Although a clerical error relating to the date that an operator was stopped did not prejudice his substantial rights, a suspension of the operator's license was not warranted because there was no reasonable suspicion for an officer's decision to stop him for driving 20 miles under the posted speed limit. There was no evidence that the operator was impeding traffic under Tex. Transp. Code Ann. § 545.363(a) since slow driving in and of itself was not enough to show a violation, the fact that the operator drifted in his own lane of travel did not justify the investigatory stop where the officer did not state that he suspected that the operator was intoxicated or that the driving was unsafe, and driving 10 miles an hour or more below the posted speed limit did not constitute a per se violation of San Antonio, Tex., Code of Ordinances § 19-133 because the ordinance was concerned with the maximum reasonable, safe,

and prudent speed limit; there was no testimony regarding what a reasonable speed would have been under the weather conditions present at the time of the stop. Tex. Dep't of Pub. Safety v. Gonzales, No. 04-07-00702-CV, 2008 Tex. App. LEXIS 6327 (Tex. App. San Antonio Aug. 20, 2008), reh'g denied, op. withdrawn, sub. op., 276 S.W.3d 88, 2008 Tex. App. LEXIS 7985 (Tex. App. San Antonio Oct. 22, 2008).

Trial court erred in reversing an administrative law judge's (ALJ) decision to suspend a motorist's driver's license pursuant to Tex. Transp. Code Ann. § 724.035, after the motorist refused to give a breath specimen test, because there was substantial evidence supporting the administrative order as required by Tex. Transp. Code Ann. § 524.041 and Tex. Gov't Code Ann. § 2001.174; a court may not substitute its judgment for that of the ALJ. Tex. Dep't of Pub. Safety v. Escobedo, No. 13-07-00498-CV, 2008 Tex. App. LEXIS 5651 (Tex. App. Corpus Christi July 29, 2008).

Judgment suspending driver's license for 180 days was affirmed where the totality of circumstances was substantial evidence of probable cause for the driver's arrest for driving while intoxicated. The record showed that the driver drove past a roadblock, that he had a strong alcoholic odor, that he had bloodshot eyes, that he admitted drinking an alcoholic beverage, that he was extremely argumentative, and that he refused to take field sobriety tests. Gault v. Tex. Dep't of Pub. Safety, No. 11-06-00201-CV, 2008 Tex. App. LEXIS 5465 (Tex. App. Eastland July 24, 2008).

**Transportation Law: Private Vehicles: Safety Standards: Turn Signals**

***Overview:*** *ALJ's administrative order suspending appellee's driver's license under Tex. Transp. Code Ann. § 524.022 was affirmed because appellee did not raise his arguments before the ALJ at the administrative hearing, and, thus, he waived his arguments for consideration by the county court on appeal.*

- A person whose driver's license is suspended following an administrative hearing is entitled to judicial review of the decision. Tex. Transp. Code Ann. § 524.041(a). Judicial review of such decisions is governed by the substantial evidence rule. Under this standard, reviewing courts must determine whether the ALJ's findings are supported by substantial evidence or whether the order is invalid for some other reason. Tex. Gov't Code Ann. § 2001.174. Whether substantial evidence supports an administrative order is a question of law. The dispositive issue for the reviewing court is not whether the ALJ's order is correct, but whether the record demonstrates some reasonable basis for the ALJ's action.

Tex. Dep't of Pub. Safety v. Cuellar, No. 01-22-00085-CV, 2023 Tex. App. LEXIS 1461 (Tex. App. Houston 1st Dist. Mar. 7, 2023).

**Transportation Law: Private Vehicles: Traffic Regulation: Speed Limits: Minimum Speeds**

Suspension of an operator's license was improper because an officer did not have reasonable suspicion for a stop under Tex. Transp. Code Ann. § 724.042 since slow driving alone was not enough to show that the operator was impeding traffic, there was no violation of San Antonio, Tex., Code of Ordinances § 19-133 since the conditions were foggy and rainy, and an investigatory stop was not proper based on the operator's weaving since the officer did not testify that he suspected that defendant was intoxicated or that the operator's driving was unsafe. Tex. Dep't of Pub. Safety v. Gonzales, 276 S.W.3d 88, 2008 Tex. App. LEXIS 7985 (Tex. App. San Antonio Oct. 22, 2008, no pet.).

Although a clerical error relating to the date that an operator was stopped did not prejudice his substantial rights, a suspension of the operator's license was not warranted because there was no reasonable suspicion for an officer's decision to stop him for driving 20 miles under the posted speed limit. There was no evidence that the operator was impeding traffic under Tex. Transp. Code Ann. § 545.363(a) since slow driving in and of itself was not enough to show a violation, the fact that the operator drifted in his own lane of travel did not justify the investigatory stop where the officer did not state that he suspected that the operator was intoxicated or that the driving was unsafe, and driving 10 miles an hour or more below the posted speed limit did not constitute a per se violation of San Antonio,

Tex., Code of Ordinances § 19-133 because the ordinance was concerned with the maximum reasonable, safe, and prudent speed limit; there was no testimony regarding what a reasonable speed would have been under the weather conditions present at the time of the stop. *Tex. Dep't of Pub. Safety v. Gonzales, No. 04-07-00702-CV, 2008 Tex. App. LEXIS 6327 (Tex. App. San Antonio Aug. 20, 2008)*, reh'g denied, op. withdrawn, sub. op., *276 S.W.3d 88, 2008 Tex. App. LEXIS 7985 (Tex. App. San Antonio Oct. 22, 2008)*.

### Transportation Law: Private Vehicles: Vehicle Registration: General Overview

Motor vehicle board's decision to grant a new franchisee's application for an auto-dealer license was based on substantial evidence within the meaning of *Tex. Gov't Code Ann. § 2001.174(2)(E)* where the evidence supported the elements of good cause under former Tex. Rev. Stat. Ann. art. 4413(36), § 4.06(c). *Graff Chevrolet Co. v. Texas Motor Vehicle Bd., 60 S.W.3d 154, 2001 Tex. App. LEXIS 3896 (Tex. App. Austin 3d Dist. June 14, 2001, no pet.)*.

### Transportation Law: Public Transportation

In a breach of contract action relating to the installation of validating fare boxes in buses, the trial court properly conducted a trial de novo; the statute requiring substantial evidence of an administrative law judge's decision did not apply to Dallas Area Rapid Transit because it was a state agency. *Dallas Area Rapid Transit v. Agent Sys., No. 02-12-00517-CV, 85 U.C.C. Rep. Serv. 2d (CBC) 298, 2014 Tex. App. LEXIS 12797 (Tex. App. Fort Worth Nov. 26, 2014)*.

### Transportation Law: Rail Transportation: Railroad Commissions

*Overview: In appeal arising out of suit for judicial review of administrative order, administrative decision was clearly unwarranted exercise of discretion because plaintiff's substantial rights were prejudiced. It was forced to attend three-day hearing and use its resources trying case when dispute had already been settled by Tex. R. Civ. P. 11 agreement.*

- Final orders of the Railroad Commission of Texas are deemed to be prima facie valid and are subject to review under the substantial evidence rule. The substantial evidence rule, as codified in the Administrative Procedure Act (APA), requires reversal or remand if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, (5) are not reasonably supported by substantial evidence, or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*. The appellate court applies this analysis without deference to the district court's judgment.

*Vergo Patio Gardens, Inc. v. R.R. Comm'n of Tex., No. 03-19-00070-CV, 2022 Tex. App. LEXIS 2612 (Tex. App. Austin 3d Dist. Apr. 22, 2022)*.

Where the Texas Railroad Commission entered a final order cancelling an extension of time to plug inactive wells, the Commission's legal conclusion regarding the meaning of the term "operations" in the unit agreement was not in erroneous. The plain language of the unit agreement limited the scope of unit operations to those activities that were taken in connection with producing oil and gas; appellant's testing and repair work that was performed on inactive wells did not constitute good-faith endeavors to produce oil and gas. *Roland Oil Co. v. R.R. Comm'n of Tex., No. 03-12-00247-CV, 2015 Tex. App. LEXIS 1906 (Tex. App. Austin 3d Dist. Feb. 27, 2015)*.

Where the Texas Railroad Commission entered a final order cancelling an extension of time to plug inactive wells, the Commission correctly determined that the unit agreement's force majeure clause was not triggered by the

Commission's order of severance that required appellant to stop production because it was within appellant's reasonable control. The only reasonable interpretation of the force majeure clause was that any potential triggering event had to be beyond the party's reasonable control. *Roland Oil Co. v. R.R. Comm'n of Tex., No. 03-12-00247-CV, 2015 Tex. App. LEXIS 1906 (Tex. App. Austin 3d Dist. Feb. 27, 2015).*

### Transportation Law: Rail Transportation: Rates & Tariffs

Texas Railroad Commission's findings regarding the gas utility's costs to acquire its predecessor were supported by substantial evidence as required under Tex. *Gov't Code Ann. § 2001.174* and Tex. *Util. Code Ann. § 105.001;* further, the Commission did not err by including the gas utility's costs in acquiring its predecessor as a known and measurable change" in its gas rate award because nothing in Tex. *Util. Code Ann. § 103.055* prohibited the Commission from accounting for additional expenses as a "known and measurable change" simply because they were known to a utility at the time of its updated rate request. *City of Port Neches v. R.R. Comm'n of Tex., 212 S.W.3d 565, 2006 Tex. App. LEXIS 6936 (Tex. App. Austin 3d Dist. Aug. 4, 2006, no pet.).*

### Workers' Compensation & SSDI: Administrative Proceedings: Claims: General Overview

Pursuant to administrative standard of review, imposition of monetary penalties and non-monetary sanctions against the doctor were proper because the doctor had violated *28 Tex. Admin. Code § 130.1,* the penalties were based on the doctor's actions and events for which he was legally responsible, and there was no prohibition against pursuing both monetary penalties and non-monetary sanctions in a single proceeding. *2015 Tex. App. LEXIS 2504.*

### Workers' Compensation & SSDI: Administrative Proceedings: Judicial Review: General Overview

Tex. *Lab. Code Ann. § 413.016(a)* "refunds" may arise from excessive reimbursement occurring due to a subsequently reversed administrative order in a workers' compensation medical-fee dispute, in part because such coverage was contemplated by the regime under Tex. *Lab. Code Ann §§ 413.031, 402.073, 408.027,* and *Tex. Gov't Code Ann §§ 2001.174(2), 2001.176(b)(3).* Therefore, the medical-fee-dispute-resolution process supplants judicial jurisdiction to award refunds. *Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co., No. 03-11-00641-CV, No. 03-11-642-CV, 2013 Tex. App. LEXIS 6853 (Tex. App. Austin 3d Dist. June 6, 2013),* op. withdrawn, sub. op., *416 S.W.3d 11, 2013 Tex. App. LEXIS 12172 (Tex. App. Austin 3d Dist. Sept. 27, 2013).*

Pursuant to administrative standard of review, imposition of monetary penalties and non-monetary sanctions against the doctor were proper because the doctor had violated *28 Tex. Admin. Code § 130.1,* the penalties were based on the doctor's actions and events for which he was legally responsible, and there was no prohibition against pursuing both monetary penalties and non-monetary sanctions in a single proceeding. *2015 Tex. App. LEXIS 2504.*

### Workers' Compensation & SSDI: Administrative Proceedings: Judicial Review: Standards of Review: Abuse of Discretion

*Overview: Because an insurance carrier took final action on a medical bill and request for reconsideration, the provider requested medical fee dispute resolution, and the bill and request were timely filed, the provider did not forfeit its right to reimbursement for failure to timely submit a claim for payment, Tex. Lab. Code Ann. § 408.027(a).*

+ An appellate court's review of a State Office of Administrative Hearings order is governed by the substantial evidence rule. *Tex. Gov't Code Ann. § 2001.174,* Texas Workers' Compensation Act, Tex. *Lab. Code Ann. § 410.255(b).* Under that standard, the court of appeals must reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, not reasonably supported by substantial evidence considering the reliable and probative evidence in the record

as a whole, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Tex. Gov't Code Ann. § 2001.174(2)*. When applying the substantial evidence rule, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion. *Tex. Gov't Code Ann. § 2001.174*. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency.

*Facility Ins. Corp. v. Patients Med. Ctr., No. 03-17-00666-CV, 2022 Tex. App. LEXIS 6823 (Tex. App. Austin 3d Dist. Sept. 8, 2022)*.

## Workers' Compensation & SSDI: Administrative Proceedings: Judicial Review: Standards of Review: Substantial Evidence

Even if the administrative law judge (ALJ) erred in concluding that the original medical bill was complete, the conclusion would not have prejudiced an insurance carrier's substantial rights, and, therefore, the court of appeals was not authorized to reverse or remand the ALJ's decision; the carrier took final action by making a payment and denying the rest of the charges, that triggered the provider's right to request reconsideration and medical fee dispute resolution. *Facility Ins. Corp. v. Patients Med. Ctr., No. 03-17-00666-CV, 2022 Tex. App. LEXIS 6823 (Tex. App. Austin 3d Dist. Sept. 8, 2022)*.

## Workers' Compensation & SSDI: Benefit Determinations: Medical Benefits

Even if the administrative law judge (ALJ) erred in concluding that the original medical bill was complete, the conclusion would not have prejudiced an insurance carrier's substantial rights, and, therefore, the court of appeals was not authorized to reverse or remand the ALJ's decision; the carrier took final action by making a payment and denying the rest of the charges, that triggered the provider's right to request reconsideration and medical fee dispute resolution. *Facility Ins. Corp. v. Patients Med. Ctr., No. 03-17-00666-CV, 2022 Tex. App. LEXIS 6823 (Tex. App. Austin 3d Dist. Sept. 8, 2022)*.

## Workers' Compensation & SSDI: Benefit Determinations: Medical Benefits: General Overview

Administrative Procedure Act provisions governing substantial-evidence did not authorize monetary relief sought by a workers' compensation insurance carrier against a health care provider relating to stop-loss reimbursement, and monetary relief had not been awarded incident to reversing and remanding an administrative order. *Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co., 416 S.W.3d 11, 2013 Tex. App. LEXIS 12172 (Tex. App. Austin 3d Dist. Sept. 27, 2013, no pet.)*.

## Workers' Compensation & SSDI: Third Party Actions: Third Party Liability

In workers' compensation medical-fee disputes, the insurer's explanations of benefits (EOBs) did not provide substantial evidence supporting the hospital's waiver argument because the EOBs did not violate the applicable rule, as interpreted by the Texas Department of Insurance's Division of Workers' Compensation. *Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co., No. 03-11-00641-CV, No. 03-11-642-CV, 2013 Tex. App. LEXIS 6853 (Tex. App. Austin 3d Dist. June 6, 2013)*, op. withdrawn, sub. op., *416 S.W.3d 11, 2013 Tex. App. LEXIS 12172 (Tex. App. Austin 3d Dist. Sept. 27, 2013)*.

*Tex. Lab. Code Ann. § 413.016(a)* "refunds" may arise from excessive reimbursement occurring due to a subsequently reversed administrative order in a workers' compensation medical-fee dispute, in part because such coverage was contemplated by the regime under *Tex. Lab. Code Ann. §§ 413.031, 402.073, 408.027*, and *Tex. Gov't Code Ann. §§ 2001.174(2), 2001.176(b)(3)*. Therefore, the medical-fee-dispute-resolution process supplants

judicial jurisdiction to award refunds. *Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co., No. 03-11-00641-CV, No. 03-11-642-CV, 2013 Tex. App. LEXIS 6853 (Tex. App. Austin 3d Dist. June 6, 2013)*, op. withdrawn, sub. op., *416 S.W.3d 11, 2013 Tex. App. LEXIS 12172 (Tex. App. Austin 3d Dist. Sept. 27, 2013)*.

## Opinion Notes

**Attorney General Opinions**

**Officer May Use Affidavit.**

Since administrative hearings are not limited to the strict rules of evidence, introduction of an officer's affidavit at an administrative hearing on suspending a driver's license under Article 802f, Vernon's Texas Penal Code, is not error so long as there is an opportunity for a trial de novo in the county court. 1973 Tex. Op. Att'y Gen. H-164, *1973 Tex. AG LEXIS 136*.

## Research References & Practice Aids

**LAW REVIEWS**

*47 Baylor L. Rev. 989*.

*47 Baylor L. Rev. 1201*.

*50 Baylor L. Rev. 65*.

*49 SMU L. Rev. 901*.

*50 SMU L. Rev. 1173*.

*52 SMU L. Rev. 1105*.

*34 Houston Lawyer 28*.

*65 Tex. B. J. 598*, ARTICLE: ADMINISTRATIVE LICENSE REVOCATION HEARINGS: A DWI SPECIALIST'S PRIMER FOR THE GENERAL PRACTITIONER, By Doug Murphy and J. Gary Trichter, July, 2002, Copyright (c) 2002 by State Bar of Texas, Texas Bar Journal.

**TREATISES & ANALYTICAL MATERIALS**

*25-422 Dorsaneo, Texas Litigation Guide § 422.04*, Administrative Proceedings (Chs. 420-425), CONTESTED CASES, Evidence, Dorsaneo, Texas Litigation Guide.

*25-423 Dorsaneo, Texas Litigation Guide § 423.03*, Administrative Proceedings (Chs. 420-425), JUDICIAL REVIEW OF CONTESTED CASES, Method of Judicial Review, Dorsaneo, Texas Litigation Guide.

*25-423 Dorsaneo, Texas Litigation Guide § 423.05*, Administrative Proceedings (Chs. 420-425), JUDICIAL REVIEW OF CONTESTED CASES, Judgment of the Court, Dorsaneo, Texas Litigation Guide.

*25-423 Dorsaneo, Texas Litigation Guide § 423.50*, Administrative Proceedings (Chs. 420-425), JUDICIAL REVIEW OF CONTESTED CASES, Petition for Judicial Review of Administrative Action in Contested Case, Dorsaneo, Texas Litigation Guide.

25-423 Dorsaneo, Texas Litigation Guide § 423.100, Administrative Proceedings (Chs. 420-425), JUDICIAL REVIEW OF CONTESTED CASES, Petition—Judicial Review Under Substantial Evidence Rule, Dorsaneo, Texas Litigation Guide.

25-424 Dorsaneo, Texas Litigation Guide § 424.01, Administrative Proceedings (Chs. 420-425), DIRECT JUDICIAL PROCEEDINGS, Constraints on Direct Judicial Proceedings, Dorsaneo, Texas Litigation Guide.

25-425 Dorsaneo, Texas Litigation Guide § 425.20, Administrative Proceedings (Chs. 420-425), RESOLVING STATE CONTRACT DISPUTES, Contract Claims Covered by Transportation Code Section 201.112 and Exempted From Government Code Chapter 2260, Dorsaneo, Texas Litigation Guide.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

# APPENDIX 12

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

**Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 10 General Government (Subts. A — Z) > Subtitle A Administrative Procedure and Practice (Chs. 2001 — 2050) > Chapter 2003 State Office of Administrative Hearings (Subchs. A — Z) > Subchapter C Staff and Administration (§§ 2003.041 — 2003.057)**

## Sec. 2003.047. Hearings for Texas Commission on Environmental Quality.

**(a)** The office shall perform contested case hearings for the Texas Commission on Environmental Quality.

**(b)** The office shall conduct hearings relating to contested cases before the commission, other than a hearing conducted by one or more commissioners. The commission by rule may delegate to the office the responsibility to hear any other matter before the commission if consistent with the responsibilities of the office.

**(c)** The office may contract with qualified individuals to serve as temporary administrative law judges as necessary.

**(d)** To be eligible to preside at a hearing on behalf of the commission, an administrative law judge, regardless of temporary or permanent status, must be licensed to practice law in this state and have the expertise necessary to conduct hearings regarding technical or other specialized subjects that may come before the commission.

**(e)** In referring a matter for hearing, the commission shall provide to the administrative law judge a list of disputed issues. The commission shall specify the date by which the administrative law judge is expected to complete the proceeding and provide a proposal for decision to the commission. The administrative law judge may extend the proceeding if the administrative law judge determines that failure to grant an extension would deprive a party of due process or another constitutional right. The administrative law judge shall establish a docket control order designed to complete the proceeding by the date specified by the commission.

**(e-1)** This subsection applies only to a matter referred under *Section 5.556, Water Code.* Each issue referred by the commission must have been raised by an affected person in a comment submitted by that affected person in response to a permit application in a timely manner. The list of issues submitted under Subsection (e) must:

    **(1)** be detailed and complete; and

    **(2)** contain either:

        **(A)** only factual questions; or

        **(B)** mixed questions of fact and law.

**(e-2)** For a matter referred under *Section 5.556 or 5.557, Water Code,* the administrative law judge must complete the proceeding and provide a proposal for decision to the commission not later than the earlier of:

    **(1)** the 180th day after the date of the preliminary hearing; or

    **(2)** the date specified by the commission.

**(e-3)** The deadline specified by Subsection (e-2) or (e-6), as applicable, may be extended:

(1) by agreement of the parties with the approval of the administrative law judge; or

(2) by the administrative law judge if the judge determines that failure to extend the deadline would unduly deprive a party of due process or another constitutional right.

(e-4) For the purposes of Subsection (e-3)(2), a political subdivision has the same constitutional rights as an individual.

(e-5) This subsection applies only to a matter referred under Section 5.557, Water Code. The administrative law judge may not hold a preliminary hearing until after the executive director has issued a response to public comments under Section 5.555, Water Code.

(e-6) For a matter pertaining to an application described by Section 11.122(b-1), Water Code, the administrative law judge must complete the proceeding and provide a proposal for decision to the commission not later than the 270th day after the date the matter was referred to the office.

(f) Except as otherwise provided by this subsection, the scope of the hearing is limited to the issues referred by the commission. On the request of a party, the administrative law judge may consider an issue that was not referred by the commission if the administrative law judge determines that:

(1) the issue is material;

(2) the issue is supported by evidence; and

(3) there are good reasons for the failure to supply available information regarding the issue during the public comment period.

(g) The scope of permissible discovery is limited to:

(1) any matter reasonably calculated to lead to the discovery of admissible evidence regarding any issue referred to the administrative law judge by the commission or that the administrative law judge has agreed to consider; and

(2) the production of documents:

(A) reviewed or relied on in preparing application materials or selecting the site of the proposed facility; or

(B) relating to the ownership of the applicant or the owner or operator of the facility or proposed facility.

(h) The commission by rule shall:

(1) provide for subpoenas and commissions for depositions; and

(2) require that discovery be conducted in accordance with the Texas Rules of Civil Procedure, except that the commission by rule shall determine the level of discovery under Rule 190, Texas Rules of Civil Procedure, appropriate for each type of case considered by the commission, taking into account the nature and complexity of the case.

(i) The office and the commission jointly shall adopt rules providing for certification to the commission of an issue that involves an ultimate finding of compliance with or satisfaction of a statutory standard the determination of which is committed to the discretion or judgment of the commission by law. The rules must address, at a minimum, the issues that are appropriate for certification and the procedure to be used in certifying the issue. Each agency shall publish the jointly adopted rules.

(i-1) In a contested case regarding a permit application referred under Section 5.556 or 5.557, Water Code, the filing with the office of the application, the draft permit prepared by the executive director of the commission, the preliminary decision issued by the executive director, and other sufficient supporting documentation in the administrative record of the permit application establishes a prima facie demonstration that:

(1) the draft permit meets all state and federal legal and technical requirements; and

(2) a permit, if issued consistent with the draft permit, would protect human health and safety, the environment, and physical property.

(i-2)A party may rebut a demonstration under Subsection (i-1) by presenting evidence that:

(1) relates to a matter referred under Section 5.557, Water Code, or an issue included in a list submitted under Subsection (e) in connection with a matter referred under Section 5.556, Water Code; and

(2) demonstrates that one or more provisions in the draft permit violate a specifically applicable state or federal requirement.

(i-3)If in accordance with Subsection (i-2) a party rebuts a presumption established under Subsection (i-1), the applicant and the executive director may present additional evidence to support the draft permit.

(j) An administrative law judge hearing a case on behalf of the commission, on the judge's own motion or on motion of a party and after notice and an opportunity for a hearing, may impose appropriate sanctions as provided by Subsection (k) against a party or its representative for:

(1) filing a motion or pleading that is groundless and brought:

(A) in bad faith;

(B) for the purpose of harassment; or

(C) for any other improper purpose, such as to cause unnecessary delay or needless increase in the cost of the proceeding;

(2) abuse of the discovery process in seeking, making, or resisting discovery; or

(3) failure to obey an order of the administrative law judge or the commission.

(k) A sanction imposed under Subsection (j) may include, as appropriate and justified, issuance of an order:

(1) disallowing further discovery of any kind or of a particular kind by the offending party;

(2) charging all or any part of the expenses of discovery against the offending party or its representatives;

(3) holding that designated facts be considered admitted for purposes of the proceeding;

(4) refusing to allow the offending party to support or oppose a designated claim or defense or prohibiting the party from introducing designated matters in evidence;

(5) disallowing in whole or in part requests for relief by the offending party and excluding evidence in support of those requests; and

(6) striking pleadings or testimony, or both, in whole or in part.

(l) After hearing evidence and receiving legal argument, an administrative law judge shall make findings of fact, conclusions of law, and any ultimate findings required by statute, all of which shall be separately stated. The administrative law judge shall make a proposal for decision to the commission and shall serve the proposal for decision on all parties. An opportunity shall be given to each party to file exceptions to the proposal for decision and briefs related to the issues addressed in the proposal for decision. The commission shall consider and act on the proposal for decision.

(m) Except as provided in Section 361.0832, Health and Safety Code, the commission shall consider the proposal for decision prepared by the administrative law judge, the exceptions of the parties, and the briefs and argument of the parties. The commission may amend the proposal for decision, including any finding of fact, but any such amendment thereto and order shall be based solely on the record made before the administrative law judge. Any such amendment by the commission shall be accompanied by an explanation of the basis of the amendment. The commission may also refer the matter back to the administrative law judge to reconsider any findings and conclusions set forth in the proposal for decision or take additional

evidence or to make additional findings of fact or conclusions of law. The commission shall serve a copy of the commission's order, including its finding of facts and conclusions of law, on each party.

**(n)** The provisions of Chapter 2001 shall apply to contested case hearings for the commission to the extent not inconsistent with this section.

**(o)** An administrative law judge hearing a case on behalf of the commission may not, without the agreement of all parties, issue an order referring the case to an alternative dispute resolution procedure if the commission has already conducted an unsuccessful alternative dispute resolution procedure. If the commission has not already conducted an alternative dispute resolution procedure, the administrative law judge shall consider the commission's recommendation in determining whether to issue an order referring the case to the procedure.

## History

Enacted by Acts 1995, 74th Leg., ch. 106 (S.B. 12), § 1, effective September 1, 1995; am. Acts 1997, 75th Leg., ch. 934 (S.B. 694), § 5, effective September 1, 1997; am. Acts 1999, 76th Leg., ch. 1350 (H.B. 801), § 6, effective September 1, 1999; Acts 2015, 84th Leg., ch. 116 (S.B. 709), § 1, effective September 1, 2015; Acts 2015, 84th Leg., ch. 228 (H.B. 2154), §§ 6, 7, effective September 1, 2015; Acts 2017, 85th Leg., ch. 429 (S.B. 1430), § 2, effective September 1, 2017; Acts 2017, 85th Leg., ch. 1097 (H.B. 3735), § 6, effective September 1, 2017.

Annotations

## Notes

### STATUTORY NOTES

#### Editor's Notes

A former 2003.047, Utility Division, as added by Acts 1995, 74th Leg., ch. 765 (S.B. 373), § 1.35, was renumbered as Section 2003.049 by Acts 1997, 75th Leg., ch. 165 (S.B. 898), § 31.01(49), effective September 1, 1997.

#### Amendment Notes

**2015 amendment,** by ch. 116, added (e-1) through (e-5), (i-1), (i-2), and (i-3).

**2015 amendment,** by ch. 228, rewrote the section heading, which read: "Natural Resource Conservation Division"; in (a), deleted "establish a natural resource conservation division to" after "office shall" and substituted "Texas Commission on Environmental Quality" for "Texas Natural Resource Conservation Commission"; substituted "office" for "division" throughout (b); and in (c), deleted the former first two sentences, which read: "Only an administrative law judge in the division may conduct a hearing on behalf of the commission. An administrative law judge in the division may conduct hearings for other state agencies as time allows" and deleted "transfer an administrative law judge to the division on a permanent or temporary basis and may" after "office may."

#### Applicability

Acts 2015, 84th Leg., ch. 116 (S.B. 709), § 5provides:

"(a) The changes in law made by this Act apply only to:

(1) a permit application that is filed with the Texas Commission on Environmental Quality on or after the effective date of this Act [September 1, 2015]; or

(2) a judicial proceeding initiated on or after the effective date of this Act that challenges an act or decision of the Texas Commission on Environmental Quality made during a permit proceeding.

(b) A permit application filed or a judicial proceeding initiated before the effective date of this Act is governed by the law in effect when the permit application was filed or the judicial proceeding was initiated, and the former law is continued in effect for that purpose.

(c) Notwithstanding Subsection (a), the changes in law made by this Act do not apply to:

(1) a permit application:

(A) filed after the effective date of this Act; and

(B) that is substantially similar to a permit application for which a draft permit has been issued and that was:

(i) filed before the effective date of this Act; and

(ii) withdrawn at the request of the permit applicant; or

(2) a judicial proceeding:

(A) initiated after the effective date of this Act; and

(B) that is substantially similar to a judicial proceeding initiated before the effective date of this Act that has been dismissed at the request of the permit applicant.

(d) Not later than January 1, 2016, the Texas Commission on Environmental Quality shall adopt rules to implement the changes in law made by this Act. For an application filed after the effective date of this Act but before the adoption of rules to implement the changes in law made by this Act, the commission shall provide sufficient notice to the applicant and other participants in the permit proceeding that the changes in law made by this Act apply to the proceeding."

Acts 2017, 85th Leg., ch. 429 (S.B. 1430), § 3 provides:

The changes in law made by this Act apply only to an application for an amendment to a water right that is filed with the Texas Commission on Environmental Quality on or after the effective date of this Act. An application filed with the commission before the effective date of this Act is governed by the law as it existed immediately before the effective date of this Act, and that law is continued in effect for that purpose.

Acts 2017, 85th Leg., ch. 1097 (H.B. 3735), § 8 provides:

The changes in law made by this Act apply only to an application for a new or amended water right received by the Texas Commission on Environmental Quality on or after the effective date of this Act. An application received before the effective date of this Act is governed by the law in effect on the date the application was received, and the former law is continued in effect for that purpose.

## Notes to Decisions

Administrative Law: Agency Adjudication: Decisions: General Overview

Administrative Law: Agency Adjudication: Decisions: Contents

Administrative Law: Agency Adjudication: Hearings: General Overview

Administrative Law: Agency Adjudication: Hearings: Evidence

Administrative Law: Agency Adjudication: Review of Initial Decisions

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies

**Environmental Law: Air Quality: Enforcement: Administrative Proceedings**

**Environmental Law: Litigation & Administrative Proceedings**

**Environmental Law: Litigation & Administrative Proceedings: General Overview**

**Environmental Law: Solid Wastes: Permits: Disposal**

**Environmental Law: Water Quality**

**Evidence: Procedural Considerations: Burdens of Proof: Allocation**

**Governments: State & Territorial Governments: Water Rights**

## Administrative Law: Agency Adjudication: Decisions: General Overview

Agency's modification under *Tex. Gov't Code Ann. § 2003.047(m)* of an administrative law judge's penalty recommendations was not arbitrary because the agency had broad discretion in interpreting its own internal guidelines and explained the reasons for the changes, as to which the record contained supporting evidence. *Slay v. Tex. Comm'n on Envtl. Quality, 351 S.W.3d 532, 2011 Tex. App. LEXIS 7278 (Tex. App. Austin Aug. 31, 2011, no pet.).*

## Administrative Law: Agency Adjudication: Decisions: Contents

*Overview: In a dispute over a wastewater discharge permit, substantial evidence supported the Texas Commission on Environmental Quality's findings of fact that the application was complete under 30 Tex. Admin. Code 305.45 because the evidence demonstrated that it was standard practice for TCEQ to impose sampling requirements on future discharged.*

- *Tex. Gov't Code Ann. § 2003.047(m)* is a self-contained grant of authority specifically crafted for Texas Commission on Environmental Quality (TCEQ). *Tex. Gov't Code Ann. § 2001.058(e)* is a much narrower grant. TCEQ cannot be subject to both, it possesses the broad authority that *Tex. Gov't Code Ann. § 2003.047(m)* specifically grants to it, not the narrow authority of *Tex. Gov't Code Ann. § 2001.058(e).*

    Tex. Comm'n on Envt't *Quality v. Maverick Cnty. 2022 Tex. App. LEXIS 5169 (July 27, 2022).*

## Administrative Law: Agency Adjudication: Hearings: General Overview

Texas Natural Resource Conservation Commission was not now precluded from holding that petitions to appoint a watermaster for two river basin district were insufficient after referring the matter to the State Office of Administrative hearings for a hearing. *City of San Angelo v. Tex. Natural Res. Conservation Comm'n, 92 S.W.3d 624, 2002 Tex. App. LEXIS 8537 (Tex. App. Austin Dec. 5, 2002, no pet.).*

## Administrative Law: Agency Adjudication: Hearings: Evidence

In proceedings on an application for an injection well permit, the Texas Commission on Environmental Quality (TCEQ) did not act arbitrarily and capriciously concerning the Railroad Commission's decision to rescind a no-harm letter under *Tex. Gov't Code Ann. § 2003.047(m)* because granting appellants' requests to reopen the record would have caused undue delay. TCEQ was permitted to approve the application, despite recission of the letter. *2019 Tex. App. LEXIS 9023.*

**Administrative Law: Agency Adjudication: Review of Initial Decisions**

*Overview: In a dispute over a wastewater discharge permit, substantial evidence supported the Texas Commission on Environmental Qualitẏs findings of fact that the application was complete under 30 Tex. Admin. Code 305.45 because the evidence demonstrated that it was standard practice for TCEQ to impose sampling requirements on future discharged.*

- Tex. Gov't Code Ann. § 2003.047(m)is a self-contained grant of authority specifically crafted for Texas Commission on Environmental Quality (TCEQ). Tex. Gov't Code Ann. § 2001.058(e) is a much narrower grant. TCEQ cannot be subject to both, it possesses the broad authority that Tex. Gov't Code Ann. § 2003.047(m) specifically grants to it, not the narrow authority of Tex. Gov't Code Ann. § 2001.058(e).

Tex. Commȧn on Envȧt Quality v. Maverick Cnty, 2022 Tex. App. LEXIS 5169 (July 27, 2022).

Texas Commission on Environmental Quality did not improperly change administrative law judges' findings and conclusions because (1) substantial evidence supported the changes, and (2) no substantial rights were prejudiced. Dyer v. Tex. Comm'n on Envtl. Quality, No. 03-17-00499-CV, 86 Env't Rep. Cas. (BNA) 6259, 2019 Tex. App. LEXIS 4171 (Tex. App. Austin May 22, 2019), op. withdrawn, sub. op., 639 S.W.3d 721, 2019 Tex. App. LEXIS 9023 (Tex. App. Austin Oct. 11, 2019).

Substantial evidence supported a determination that a permit application for landfill expansion complied with groundwater monitoring requirements, and any error in requiring an administrative law judge to delete some findings and conclusions therefore was harmless; moreover, confusion in the hearing record is not a prerequisite for remand. Travis County v. Tex. Comm'n on Envtl. Quality, No. 07-12-00457-CV, 2014 Tex. App. LEXIS 4624 (Tex. App. Amarillo Apr. 29, 2014).

**Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies**

Because a trial court lacks subject matter jurisdiction to consider the appeal of an administrative agency's decision pursuant to Tex. Gov't Code Ann. § 2001.171, unless the appellant has exhaust all available administrative remedies, the trial court lacked jurisdiction to consider an environmental group's appeal of the decision of the Texas Natural Resource Conservation Commission, which approved an application authorizing a river authority to issue bonds, because the environmental group failed to follow the process established for affected persons to participate in certain agency decisions that is contained in Tex. Gov't Code Ann. § 2003.047(b), when neither the environmental group nor any of its members requested a contested hearing within 30 days following notice of the river authority's application, which was published in several newspapers as required by Tex. Water. Code Ann. § 11.132(d)(1), (3). Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth., 96 S.W.3d 519, 2002 Tex. App. LEXIS 7756 (Tex. App. Austin Oct. 31, 2002, no pet.).

**Environmental Law: Air Quality: Enforcement: Administrative Proceedings**

*Overview:* Because the Texas Commission on Environmental Quality failed to justify its deviation from its policy of adhering to earlier permit limits, it acted arbitrarily and capriciously.

- Under Texas law, the Texas Commission on Environmental Quality may amend a proposal for decision, including any finding of fact, when it deems appropriate, but its amendments must be based on the record, and the Commission must explain the basis of the amendments. Tex. Gov't Code Ann. § 2003.047(m).

*Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality, 66 F.4th 653, 53 Envtl. L. Rep. 20176, 2023 U.S. App. LEXIS 30309 (5th Cir. 2023)*, sub. op., op. withdrawn, reh'g denied, *92 F.4th 1150, 2024 U.S. App. LEXIS 3777 (5th Cir. 2024).*

**Environmental Law: Litigation & Administrative Proceedings**

*Overview:* Texas Commission on Environmental Quality (TCEQ) correctly approved the city's application for a permit to discharge treated wastewater into a country creek under Tex. *Water Code Ann. § 26.027(a)-(b)*, as substantial evidence supported TCEQ's conclusion that Tier 1 standard was met as city's proposed discharge would not impact existing aquatic life.

- *Tex. Gov't Code Ann. § 2003.047* does not elaborate on the type of evidence the protesting party must present to rebut the Texas Commission on Environmental Quality's (TCEQ's) prima facie case. The concept of a prima facie case, however, is not a new one, and the Court of Appeals of Texas agrees with the ALJ that if the protesting party does not present any controverting evidence to rebut the TCEQ's prima facie demonstration, the ALJ's inquiry would stop there.

*Tex. Comm'n on Envtl. Quality v. Save Our Springs Alliance, 668 S.W.3d 710, 2022 A.M.C. 445, 2022 Tex. App. LEXIS 9053 (Tex. App. El Paso Dec. 13, 2022, no pet.).*

*Overview:* In a dispute over a wastewater discharge permit, substantial evidence supported the Texas Commission on Environmental Quality's findings of fact that the application was complete under *30 Tex. Admin. Code 305.45* because the evidence demonstrated that it was standard practice for TCEQ to impose sampling requirements on future discharged.

- *Tex. Gov't Code Ann. § 2003.047(m)* is a self-contained grant of authority specifically crafted for Texas Commission on Environmental Quality (TCEQ). *Tex. Gov't Code Ann. § 2001.058(e)* is a much narrower grant. TCEQ cannot be subject to both, it possesses the broad authority that *Tex. Gov't Code Ann. § 2003.047(m)* specifically grants to it, not the narrow authority of *Tex. Gov't Code Ann. § 2001.058(e)*.

Tex. Comm'n on Env't *Quality v. Maverick Cnty., 2022 Tex. App. LEXIS 5169 (July 27, 2022).*

Texas Commission on Environmental Quality (TCEQ) did not err by granting appellee's application for permits to construct injection wells for the disposal of non-hazardous industrial waste, because the evidence in the record supported its changed findings in the proposal for decision concerning the migration of fluids and pressure at the well. TCEQ's changes to the proposal for decision were specifically listed and accompanied by an explanation of the basis of the amendment; substantial evidence supported its finding that there were very few other available options for disposing of industrial waste within the county, *2019 Tex. App. LEXIS 9023*.

**Environmental Law: Litigation & Administrative Proceedings: General Overview**

Substantial evidence supported a determination that a permit application for landfill expansion complied with groundwater monitoring requirements, and any error in requiring an administrative law judge to delete some findings and conclusions therefore was harmless; moreover, confusion in the hearing record is not a prerequisite for remand. *Travis County v. Tex. Comm'n on Envtl. Quality, No. 07-12-00457-CV, 2014 Tex. App. LEXIS 4624 (Tex. App. Amarillo Apr. 29, 2014).*

**Environmental Law: Solid Wastes: Permits: Disposal**

In proceedings on an application for an injection well permit, the Texas Commission on Environmental Quality (TCEQ) did not act arbitrarily and capriciously concerning the Railroad Commission's decision to rescind a no-harm

letter under *Tex. Gov't Code Ann. § 2003.047(m)* because granting appellants' requests to reopen the record would have caused undue delay. TCEQ was permitted to approve the application, despite recission of the letter. *2019 Tex. App. LEXIS 9023.*

Texas Commission on Environmental Quality (TCEQ) did not err by granting appellee's application for permits to construct injection wells for the disposal of non-hazardous industrial waste, because the evidence in the record supported its changed findings in the proposal for decision concerning the migration of fluids and pressure at the well. TCEQ's changes to the proposal for decision were specifically listed and accompanied by an explanation of the basis of the amendment; substantial evidence supported its finding that there were very few other available options for disposing of industrial waste within the county. *2019 Tex. App. LEXIS 9023.*

## Environmental Law: Water Quality

*Overview: Texas Commission on Environmental Quality (TCEQ) correctly approved the city's application for a permit to discharge treated wastewater into a country creek under Tex. Water Code Ann. § 26.027(a)-(b), as substantial evidence supported TCEQ's conclusion that Tier 1 standard was met as city's proposed discharge would not impact existing aquatic life.*

- *Tex. Gov't Code Ann. § 2003.047*does not elaborate on the type of evidence the protesting party must present to rebut the Texas Commission on Environmental Quality's (TCEQ's) prima facie case. The concept of a prima facie case, however, is not a new one, and the Court of Appeals of Texas agrees with the ALJ that if the protesting party does not present any controverting evidence to rebut the TCEQ's prima facie demonstration, the ALJ's inquiry would stop there.

*Tex. Comm'n on Envtl. Quality v. Save Our Springs Alliance, 668 S.W.3d 710, 2022 A.M.C. 445, 2022 Tex. App. LEXIS 9053 (Tex. App. El Paso Dec. 13, 2022, no pet.).*

## Evidence: Procedural Considerations: Burdens of Proof: Allocation

*Overview: Texas Commission on Environmental Quality (TCEQ) correctly approved the city's application for a permit to discharge treated wastewater into a country creek under Tex. Water Code Ann. § 26.027(a)-(b), as substantial evidence supported TCEQ's conclusion that Tier 1 standard was met as city's proposed discharge would not impact existing aquatic life.*

- *Tex. Gov't Code Ann. § 2003.047*does not elaborate on the type of evidence the protesting party must present to rebut the Texas Commission on Environmental Quality's (TCEQ's) prima facie case. The concept of a prima facie case, however, is not a new one, and the Court of Appeals of Texas agrees with the ALJ that if the protesting party does not present any controverting evidence to rebut the TCEQ's prima facie demonstration, the ALJ's inquiry would stop there.

*Tex. Comm'n on Envtl. Quality v. Save Our Springs Alliance, 668 S.W.3d 710, 2022 A.M.C. 445, 2022 Tex. App. LEXIS 9053 (Tex. App. El Paso Dec. 13, 2022, no pet.).*

## Governments: State & Territorial Governments: Water Rights

Because a trial court lacks subject matter jurisdiction to consider the appeal of an administrative agency's decision pursuant to Tex. *Gov't Code Ann. § 2001.171*, unless the appellant has exhaust all available administrative remedies, the trial court lacked jurisdiction to consider an environmental group's appeal of the decision of the Texas Natural Resource Conservation Commission, which approved an application authorizing a river authority to issue bonds, because the environmental group failed to follow the process established for affected persons to participate in certain agency decisions that is contained in Tex. *Gov't Code Ann. § 2003.047(b)*, when neither the environmental group nor any of its members requested a contested hearing within 30 days following notice of the

river authority's application, which was published in several newspapers as required by Tex. *Water Code Ann. § 11.132(d)(1)*, (3). *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, *96 S.W.3d 519, 2002 Tex. App. LEXIS 7756 (Tex. App. Austin Oct. 31, 2002, no pet.)*.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

---

End of Document

# APPENDIX 13

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis®  >  Water Code  >  Title 2 Water Administration (Subts. A — F)  >  Subtitle A Executive Agencies (Chs. 5 — 10)  >  Chapter 5 Texas Commission on Environmental Quality (Subchs. A — R)  >  Subchapter D General Powers and Duties of the Commission (§§ 5.101 — 5.136)*

## Sec. 5.114. Applications and Other Documents.

Applications and other documents to be filed with the commission for final action under this code shall be filed with the executive director and handled in the manner provided by this code.

## History

Am. Acts 1985, 69th Leg., ch. 795 (S.B. 249), § 1.001, effective September 1, 1985.

Annotations

## Research References & Practice Aids

**Hierarchy Notes:**

*Tex. Water Code Title 2, Subtit. A, Ch. 5*

*Tex. Water Code Title 2, Subtit. A, Ch. 5, Subch. D*

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

**End of Document**

# APPENDIX 14

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 2 Water Administration (Subts. A — F) > Subtitle A Executive Agencies (Chs. 5 — 10) > Chapter 5 Texas Commission on Environmental Quality (Subchs. A — R) > Subchapter I Judicial Review (§§ 5.351 — 5.357)*

## Sec. 5.351. Judicial Review of Commission Acts.

(a) A person affected by a ruling, order, decision, or other act of the commission may file a petition to review, set aside, modify, or suspend the act of the commission.

(b) A person affected by a ruling, order, or decision of the commission must file a petition within 30 days after the effective date of the ruling, order, or decision. A person affected by an act other than a ruling, order, or decision must file a petition within 30 days after the date the commission performed the act.

(c) Notwithstanding Subsection (b) or another provision of law to the contrary, a person affected by a ruling, order, or decision on a matter delegated to the executive director under Section 5.122 or other law may, after exhausting any administrative remedies, file a petition to review, set aside, modify, or suspend the ruling, order, or decision not later than the 30th day after:

   (1) the effective date of the ruling, order, or decision; or

   (2) if the executive director's ruling, order, or decision is appealed to the commission as authorized by Section 5.122(b) or other law, the earlier of:

      (A) the date the commission denies the appeal; or

      (B) the date the appeal is overruled by operation of law in accordance with commission rules.

## History

Am. Acts 1985, 69th Leg., ch. 795 (S.B. 249), § 1.001, effective September 1, 1985; Acts 2017, 85th Leg., ch. 1065 (H.B. 3177), § 2, effective September 1, 2017; Acts 2021, 87th Leg., ch. 174 (S.B. 211), § 4, effective September 1, 2021.

Annotations

## Notes

**Amendment Notes**

**2017 amendment,** added (c).

**The 2021 amendment** substituted "a petition" for "his petition" in the first and second sentences of (b); and added "or another provision of law to the contrary" in the introductory language of (c).

## Notes to Decisions

Administrative Law: Agency Adjudication: Hearings: General Overview

Administrative Law: Judicial Review: Reviewability: General Overview

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies

Administrative Law: Judicial Review: Reviewability: Final Order Requirement

Administrative Law: Judicial Review: Reviewability: Jurisdiction & Venue

Administrative Law: Judicial Review: Reviewability: Standing

Administrative Law: Judicial Review: Standards of Review: Substantial Evidence

Administrative Law: Separation of Powers: Constitutional Controls: Nondelegation Doctrine

Civil Procedure: Justiciability: Exhaustion of Remedies: Administrative Remedies

Civil Procedure: Jurisdiction: Jurisdictional Sources: General Overview

Environmental Law: Air Quality: State Implementation Plans

Environmental Law: Hazardous Wastes & Toxic Substances: Resource Conservation & Recovery Act: Enforcement: Citizen Suits

Environmental Law: Litigation & Administrative Proceedings: Judicial Review

Environmental Law: Litigation & Administrative Proceedings: Jurisdiction & Procedure

Environmental Law: Solid Wastes: Disposal Planning

Environmental Law: Solid Wastes: Disposal Standards

Environmental Law: Solid Wastes: Municipal Landfills

Environmental Law: Solid Wastes: Permits: General Overview

Environmental Law: Solid Wastes: Permits: Disposal

Environmental Law: Water Quality: General Overview

Environmental Law: Water Quality: Clean Water Act: Discharge Permits: Public Participation

Governments: Legislation: Statutes of Limitations: General Overview

Governments: Public Improvements: Financing

Governments: Public Improvements: Sanitation & Water

Real Property Law: Eminent Domain Proceedings: Valuation

### Real Property Law: Water Rights: Procedure

### Administrative Law: Agency Adjudication: Hearings: General Overview

Pleas to the jurisdiction were properly granted in a case where two objectors filed actions relating to a decision to grant a wastewater discharge permit because they were untimely under Tex. Water Code Ann. § 5.351; moreover, the provisions of the Texas Administrative Procedure Act did not apply instead because a commission's decision approving the application was not a final decision in a contested case under Tex. Gov't Code Ann. § 2001.171. West v. Tex. Comm'n on Envtl. Quality, No. 03-07-00455-CV, No. 03-07-00456-CV, 2008 Tex. App. LEXIS 3967 (Tex. App. Austin May 29, 2008), op. withdrawn, sub. op., reh'g denied, 260 S.W.3d 256, 2008 Tex. App. LEXIS 5821 (Tex. App. Austin July 31, 2008).

Farmer was not entitled to a contested case hearing on a poultry company's application to the Texas Natural Resource Conservation Commission for a permit to enact a new waste management scheme where the farmer was not likely to be affected. Collins v. Tex. Natural Res. Conservation Comm'n, 94 S.W.3d 876, 2002 Tex. App. LEXIS 9259 (Tex. App. Austin Dec. 31, 2002, no pet.).

### Administrative Law: Judicial Review: Reviewability: General Overview

Applicant seeking judicial review of a Texas Commission on Environmental Quality executive director's decision or act of returning an application as administratively incomplete must avail himself of the provisions set out in Tex. Water Code Ann. § 5.351 and Tex. Health & Safety Code § 361.321. Tex. Comm'n on Envtl. Quality v. Kelsoe, 286 S.W.3d 91, 2009 Tex. App. LEXIS 3014 (Tex. App. Austin Apr. 30, 2009, no pet.).

Applicant's request for judicial review was untimely because it was not filed within 30 days after the executive director's decision that the application was incomplete. The applicant's motion to overturn the director's return of the application did not extend the time to seek judicial review. Tex. Comm'n on Envtl. Quality v. Kelsoe, 286 S.W.3d 91, 2009 Tex. App. LEXIS 3014 (Tex. App. Austin Apr. 30, 2009, no pet.).

### Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies

Coalition's petition for judicial review of agency order invoked district court's jurisdiction despite the fact that the coalition's motion for rehearing was still pending before the agency; Tex. Water Code Ann. § 5.351(b) required coalition to file its petition before the time expired for disposition of the motion for rehearing. Heat Energy Advanced Tech. v. West Dallas Coalition for Envtl. Justice, 962 S.W.2d 288, 1998 Tex. App. LEXIS 855 (Tex. App. Austin Feb. 12, 1998, no pet.).

### Administrative Law: Judicial Review: Reviewability: Final Order Requirement

District court erred in deciding an appeal; given the clear absence of a right to judicial review of an agency's decision not to promulgate rules under the Administrative Procedures Act, Tex. Water Code Ann. § 5.351 did not provide a right to judicial review of the denial a petition for rulemaking by the Texas Commission on Environmental Quality. Tex. Comm'n on Envtl. Quality v. Bonser-Lain, 2014 Tex. App. LEXIS 7875 (Tex. App.—Austin July 23, 2014).

Agency letter was not an agency action or inaction that was reviewable under the statute, because the letter was nothing more than a status update regarding license requirements and milestones. Tex. Comm'n on Envtl. Quality & Waste Control Specialists LLC v. Sierra Club, No. 03-12-00625-CV, 2014 Tex. App. LEXIS 2648 (Tex. App. Austin Mar. 7, 2014).

Landowners' appeal pursuant to Tex. Water Code Ann. § 21.451 of an order from the Texas Water Quality Board (Board) granting a town preliminary approval for a proposed processing plant was premature, where the order was not a final order, and where the Board's letter to the town's mayor expressly stated that no final action could be taken until a state agency approved the town's plans and specifications. *Payne v. Texas Water Quality Board, 483 S.W.2d 63, 1972 Tex. App. LEXIS 2914 (Tex. Civ. App. Dallas June 6, 1972, no writ)*.

### Administrative Law: Judicial Review: Reviewability: Jurisdiction & Venue

Because Tex. *Water Code Ann. § 5.351(a)* does not limit appeals to "parties," as the Administrative Procedure Act does, two cities were entitled to appeal the decision of the Texas Commission on Environmental Quality granting appellant a permit to operate a municipal solid-waste transfer station despite the fact that the cities were not admitted as parties in the contested case. Therefore, the district court had subject matter jurisdiction over the cities' petition for judicial review. *Tex. Comm'n on Envtl. Quality v. City of Aledo, No. 03-13-00113-CV, 2015 Tex. App. LEXIS 6940 (Tex. App. Austin July 8, 2015)*.

In a challenge to the grant of a wastewater discharge permit, because the challenging environmental activist club (and other individuals) did not file their petitions for judicial review within the time period required in Tex. *Water Code Ann. § 5.351*, the district court properly granted the Texas Commission on Environmental Quality's pleas to the jurisdiction and dismissed the suits. And contrary to the assertions of the club and the individuals, the plain language of the water code did not limit the right to judicial review of Commission decisions only to contested cases. *West v. Tex. Comm'n on Envtl. Quality, 260 S.W.3d 256, 2008 Tex. App. LEXIS 5821 (Tex. App. Austin July 31, 2008, no pet.)*.

County water authority's challenge to the order of the state Board of Water Engineers, rejecting said authority's application to appropriate a certain amount of water per annum with necessary storage space in a state reservoir, was time-barred pursuant to former Tex. Rev. Civ. Stat. Ann. art. 7477, § 12 (now Tex. *Water Code Ann. § 5.351*). *Northeast Tarrant County Water Authority v. Board of Water Engineers, 367 S.W.2d 720, 1963 Tex. App. LEXIS 2098 (Tex. Civ. App. Austin Apr. 24, 1963, no writ)*.

### Administrative Law: Judicial Review: Reviewability: Standing

Former owner of land that sued the Texas Natural Resource Conservation Commission seeking judicial review of a decision by the commission that approved a project of the United States Bureau of Reclamation that would affect the land did not have standing to challenge the commission's decision because she had transferred the land to family members and had no ownership interest in the land at the time that she filed the suit. *Elizondo v. Texas Natural Resource Conservation Comm'n, 974 S.W.2d 928, 1998 Tex. App. LEXIS 5026 (Tex. App. Austin Aug. 13, 1998, no pet.)*.

Tex. *Water Code Ann. § 5.351(a)* provides that a person affected by a ruling, order, decision, or other act of the department may file a petition to review, set aside, modify, or suspend the act of the department; the judicial review provisions of the Texas Administrative Procedure and Texas Register Act and the Water Code should be read in conjunction and harmony with each other. *Hooks v. Texas Dep't of Water Resources, 611 S.W.2d 417, 1981 Tex. LEXIS 298 (Tex. 1981)*.

### Administrative Law: Judicial Review: Standards of Review: Substantial Evidence

Decision allowing a utility district to purchase an owner's detention pond for $37,551 was upheld based on substantial evidence that the owner's claimed purchase price of $800,000 was not supported by documents and did not occur between unrelated parties; the court rejected the owner's claim that it was entitled to trial de novo. *Ranna & Co., LLC v. Tex. Comm'n on Envtl. Quality, No. 03-16-00724-CV, 2018 Tex. App. LEXIS 3690 (Tex. App. Austin May 24, 2018)*.

## Administrative Law: Separation of Powers: Constitutional Controls: Nondelegation Doctrine

For purposes of the nondelegation doctrine, the Texas Commission on Environmental Quality (TCEQ) is a public entity, and hence the heightened scrutiny applied to a private delegation is inapplicable, considering that: (1) TCEQ is subject to the Texas Sunset Act, and unless continued in existence as provided in Chapter 5 of the Texas Water Code, TCEQ is abolished and the chapter would expire; (2) TCEQ is composed of three members appointed by the governor, with the advice and consent of the senate; (3) each member of TCEQ is an officer of the state, as the term is used in the constitution, and each member shall take the official oath of office; (4) TCEQ must comply with *Tex. Gov't Code Ann. § 2001.004*, by indexing and making available for public inspection all rules and other written statements of policy or interpretations formulated, adopted, or used by the commission in the discharge of its functions, and all final orders, decisions, and opinions; (5) the financial transactions of TCEQ are subject to audit by the state auditor in accordance with Tex. Gov't Code Ann. ch. 321; (6) TCEQ shall have a seal bearing the words Texas Natural Resources Conservation Commission (now TCEQ) encircling the oak and olive branches common to other official seals; (7) the TCEQ Operating Fund is established in the treasury; (8) judicial review of TCEQ acts is allowed; and (9) the Texas Water Code does not waive TCEQ's sovereign immunity from suit. *State v. Rhine, 255 S.W.3d 745, 2008 Tex. App. LEXIS 3221 (Tex. App. Fort Worth May 1, 2008)*, aff'd, *297 S.W.3d 301, 2009 Tex. Crim. App. LEXIS 1307 (Tex. Crim. App. Sept. 23, 2009)*.

## Civil Procedure: Justiciability: Exhaustion of Remedies: Administrative Remedies

Because environmental issues relating to the construction of a wastewater treatment facility fell within the exclusive jurisdiction of the Texas Commission on Environmental Quality and required exhaustion of administrative remedies, the trial court did not err in granting a plea to the jurisdiction without allowing an opportunity to amend the pleadings. *Bishop v. Chappell Hill Serv. Co., No. 01-14-00360-CV, 2015 Tex. App. LEXIS 7990 (Tex. App. Houston 1st Dist. July 30, 2015)*.

## Civil Procedure: Jurisdiction: Jurisdictional Sources: General Overview

In a water regulation action, the lower court committed error when it sustained the plea of privilege to defendant and permit the cause of action to change venue when it was originally filed properly in the jurisdiction of plaintiff's residency under former Tex. Water Code Ann. § 21.451 see now Tex. *Water Code Ann. § 5.351*, *Gambill v. Ponder, 494 S.W.2d 808, 1973 Tex. LEXIS 266 (Tex. 1973)*.

## Environmental Law: Air Quality: State Implementation Plans

Provision requiring service within 30 days was in the same statute requiring suit to be filed within 30 days of the Texas Commission on Environmental Quality's ruling; because the company sought judicial review of matters specifically governed by the Clean Air Act, the specific judicial review statute in that act controlled over the general judicial review statute in the Water Code. *AC Interests L.P. v. Tex. Comm'n on Envtl. Quality, 521 S.W.3d 58, 2016 Tex. App. LEXIS 1448 (Tex. App. Houston 1st Dist. Feb. 11, 2016)*, rev'd, *543 S.W.3d 703, 2018 Tex. LEXIS 252 (Tex. 2018)*.

## Environmental Law: Hazardous Wastes & Toxic Substances: Resource Conservation & Recovery Act: Enforcement: Citizen Suits

Because no part of the Texas Water Code's statutory scheme or a Texas Commission on Environmental Quality order had been challenged by plaintiff nearby property owner in its citizen suit against defendants, current or former

owners, operators or entities in control of underground petroleum storage tanks, that factor weighed against Burford abstention. *K-7 Enters. L.P. v. Jester, 562 F. Supp. 2d 819, 2007 U.S. Dist. LEXIS 44696 (E.D. Tex. 2007)*.

**Environmental Law: Litigation & Administrative Proceedings: Judicial Review**

*Overview: In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist., No. 04-21-00087-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022)*.

By appealing a decision of the Texas Commission on Environmental Quality (TCEQ) to grant an electric company's wastewater discharge permit application, the permit challengers were asking the courts to adjudicate the merits of the application and the factual bases for TCEQ's decision, and the trial court correctly determined that it lacked subject-matter jurisdiction to do that because TCEQ had exclusive original jurisdiction over the dispute, and the challengers did not exhaust all of their administrative remedies prior to resorting to judicial review; the challengers were required to demonstrate that they were affected persons and to fully participate in a contested case hearing before seeking judicial review of the merits of the permit. *Sierra Club v. Tex. Comm'n on Envtl. Quality, No. 03-14-00130-CV, 2016 Tex. App. LEXIS 3244 (Tex. App. Austin Mar. 31, 2016)*.

Provision requiring service within 30 days was in the same statute requiring suit to be filed within 30 days of the Texas Commission on Environmental Quality's ruling; because the company sought judicial review of matters specifically governed by the Clean Air Act, the specific judicial review statute in that act controlled over the general judicial review statute in the Water Code, *AC Interests L.P. v. Tex. Comm'n on Envtl. Quality, 521 S.W.3d 58, 2016 Tex. App. LEXIS 1448 (Tex. App. Houston 1st Dist. Feb. 11, 2016)*, rev'd, *543 S.W.3d 703, 2018 Tex. LEXIS 252 (Tex. 2018)*.

Landowner received notice required by Tex. *Water Code Ann. §§ 5.115(b)*, *5.552*, *5.553*, and *26.028(a)*, of a city's application for renewal of a wastewater discharge permit, because notice was published in the newspaper when the application was complete, when technical review was complete and preliminary approval given, and when the permit was issued. Having failed to exhaust administrative remedies, he could not seek judicial review. *Kunze v. Tex. Comm'n on Envtl. Quality, No. 03-13-00851-CV, 2015 Tex. App. LEXIS 8570 (Tex. App. Austin Aug. 14, 2015)*.

District court erred in deciding an appeal; given the clear absence of a right to judicial review of an agency's decision not to promulgate rules under the Administrative Procedures Act, Tex. *Water Code Ann. § 5.351* did not provide a right to judicial review of the denial a petition for rulemaking by the *Texas Commission on Environmental Quality*. *Tex. Comm'n on Envtl. Quality v. Bonser-Lain, 2014 Tex. App. LEXIS 7875 (Tex. App.—Austin July 23, 2014)*.

To obtain judicial review of the February 9, 2010 order, a trustee was required to file his petition within 30 days after that date under Tex. *Water Code Ann. § 5.351*, but he did not do so, and he could not save his waived complaints by seeking judicial review from the denial of his motion to overturn; the trustee did not invoke the trial court's jurisdiction and his complaint was properly dismissed. *Hendricks v. Tex. Comm'n on Envtl. Quality, No. 03-10-00758-CV, 2011 Tex. App. LEXIS 4595 (Tex. App. Austin June 15, 2011).*

In a case in which a trial court affirmed an order of the Texas Commission on Environmental Quality that denied a city's request for a contested case hearing to oppose a dairy's application for a major amendment to its concentrated animal feed operation (CAFO) permit, substantial evidence supported the Commission's determination that the city was not an "affected person" for purposes of the permit application, and therefore its decision to deny the city's hearing request, because: (1) the Commission had before it competent evidence that modifications to the dairy's management of its wastewater and manure required by the proposed permit would actually reduce, rather than increase, the likelihood that pollutants from the dairy would be discharged into the watershed; (2) there was competent evidence that the more stringent waste application requirements imposed by the proposed permit would reduce the amount of phosphorus runoff from waste application fields; (3) the proposed permit required the dairy to bring its operations into compliance with the new rules regulating CAFOs; (4) the proposed amendment required changes in the land application of manure and wastewater from the dairy; and (5) the city did not establish either that granting the permit would increase its water treatment costs or that denying it would reduce them. The Commission properly rejected the city's argument that the city would be adversely affected by its granting the permit. *City of Waco v. Tex. Comm'n on Envtl. Quality, No. 03-09-00005-CV, 2010 Tex. App. LEXIS 7692 (Tex. App. Austin Sept. 17, 2010),* sub. op., op. withdrawn, *346 S.W.3d 781, 2011 Tex. App. LEXIS 4644 (Tex. App. Austin June 17, 2011).*

When a decision is issued under 30 Tex. Admin. Code ch. 213 by the Executive Director of the Texas Commission on Environmental Quality, Tex. *Water Code Ann. § 5.351(b)* requires a petition for judicial review contesting that decision to be filed within 30 days of the date of issuance of that decision, unless the Commission expressly stays the effective date of the decision. *City of Austin v. Tex. Comm'n on Envtl. Quality, 303 S.W.3d 379, 2009 Tex. App. LEXIS 9861 (Tex. App. Austin Dec. 31, 2009, no pet.).*

Because a city filed a suit challenging the approval under 30 Tex. Admin. Code ch. 213 of a water pollution abatement plan by the Texas Commission on Environmental Quality more than 30 days after the Commission's executive director approved the application, the suit was untimely under Tex. *Water Code Ann. § 5.351(b),* and the district court lacked jurisdiction over the suit as provided in *Tex. Gov't Code Ann. § 311.034;* the Commission's denial of the city's motion to overturn the decision was not a final and appealable order and, therefore, was not a ruling subject to judicial review under § 5.351(a). *City of Austin v. Tex. Comm'n on Envtl. Quality, 303 S.W.3d 379, 2009 Tex. App. LEXIS 9861 (Tex. App. Austin Dec. 31, 2009, no pet.).*

Texas Commission on Environmental Quality's (TCEQ) director's determination that an applicant's solid waste landfill permit application was not complete was not a failure to act under Tex. *Water Code Ann. § 5.352* allowing the applicant to seek mandamus under Tex. *Water Code Ann. § 5.357.* Rather, he was required to appeal the decision within 30 days pursuant to Tex. *Water Code Ann. § 5.351* and Tex. *Health & Safety Code Ann. § 361.321.* *Tex. Comm'n on Envtl. Quality v. Kelsoe, No. 03-07-00720-CV, 2009 Tex. App. LEXIS 1768 (Tex. App. Austin Mar. 11, 2009),* op. withdrawn, sub. op., *286 S.W.3d 91, 2009 Tex. App. LEXIS 3014 (Tex. App. Austin Apr. 30, 2009).*

Texas Commission on Environmental Quality's (TCEQ) director's authority to determine administrative completeness of a solid waste landfill permit application was not delegated by TCEQ through rule or order but rather was statutorily granted by the legislature under Tex. *Water Code Ann. § 5.552(a).* Therefore, Tex. *Water Code Ann. § 5.122(b)* did not apply to an applicant whose application was returned as incomplete; rather, he was required to appeal the decision within 30 days pursuant to Tex. *Water Code Ann. § 5.351* and Tex. *Health & Safety Code Ann. § 361.321.* *Tex. Comm'n on Envtl. Quality v. Kelsoe, No. 03-07-00720-CV, 2009 Tex. App. LEXIS 1768 (Tex. App. Austin Mar. 11, 2009),* op. withdrawn, sub. op., *286 S.W.3d 91, 2009 Tex. App. LEXIS 3014 (Tex. App. Austin Apr. 30, 2009).*

Pleas to the jurisdiction were properly granted in a case where two objectors filed actions relating to a decision to grant a wastewater discharge permit because they were untimely under Tex. *Water Code Ann. § 5.351*; moreover, the provisions of the Texas Administrative Procedure Act did not apply instead because a commission's decision approving the application was not a final decision in a contested case under *Tex. Gov't Code Ann. § 2001.171*. *West v. Tex. Comm'n on Envtl. Quality, No. 03-07-00455-CV, No. 03-07-00456-CV, 2008 Tex. App. LEXIS 3967 (Tex. App. Austin May 29, 2008)*, op. withdrawn, sub. op., reh'g denied, *260 S.W.3d 256, 2008 Tex. App. LEXIS 5821 (Tex. App. Austin July 31, 2008)*.

Former owner of land that sued the Texas Natural Resource Conservation Commission seeking judicial review of a decision by the commission that approved a project of the United States Bureau of Reclamation that would affect the land did not have standing to challenge the commission's decision because she had transferred the land to family members and had no ownership interest in the land at the time that she filed the suit. *Elizondo v. Texas Natural Resource Conservation Comm'n, 974 S.W.2d 928, 1998 Tex. App. LEXIS 5026 (Tex. App. Austin Aug. 13, 1998, no pet.)*.

## Environmental Law: Litigation & Administrative Proceedings: Jurisdiction & Procedure

After issuance of a new environmental compliance history rating, a suit for judicial review of an unsatisfactory compliance history rating became moot; no continuing detrimental consequences were shown, and no exception to mootness applied. Absent a justiciable controversy, declaratory relief was unavailable and a challenge to agency rules likewise was moot. *A. I. Divestitures, Inc. v. Tex. Commission on Environmental Quality, No. 03-15-00814-CV, 2016 Tex. App. LEXIS 5787 (Tex. App. Austin June 2, 2016)*.

By appealing a decision of the Texas Commission on Environmental Quality (TCEQ) to grant an electric company's wastewater discharge permit application, the permit challengers were asking the courts to adjudicate the merits of the application and the factual bases for TCEQ's decision, and the trial court correctly determined that it lacked subject-matter jurisdiction to do that because TCEQ had exclusive original jurisdiction over the dispute, and the challengers did not exhaust all of their administrative remedies prior to resorting to judicial review; the challengers were required to demonstrate that they were affected persons and to fully participate in a contested case hearing before seeking judicial review of the merits of the permit. *Sierra Club v. Tex. Comm'n on Envtl. Quality, No. 03-14-00130-CV, 2016 Tex. App. LEXIS 3244 (Tex. App. Austin Mar. 31, 2016)*.

Because environmental issues relating to the construction of a wastewater treatment facility fell within the exclusive jurisdiction of the Texas Commission on Environmental Quality and required exhaustion of administrative remedies, the trial court did not err in granting a plea to the jurisdiction without allowing an opportunity to amend the pleadings. *Bishop v. Chappell Hill Serv. Co., No. 01-14-00360-CV, 2015 Tex. App. LEXIS 7990 (Tex. App. Houston 1st Dist. July 30, 2015)*.

Because Tex. *Water Code Ann. § 5.351(a)* does not limit appeals to "parties," as the Administrative Procedure Act does, two cities were entitled to appeal the decision of the Texas Commission on Environmental Quality granting appellant a permit to operate a municipal solid-waste transfer station despite the fact that the cities were not admitted as parties in the contested case. Therefore, the district court had subject matter jurisdiction over the cities' petition for judicial review. *Tex. Comm'n on Envtl. Quality v. City of Aledo, No. 03-13-00113-CV, 2015 Tex. App. LEXIS 6940 (Tex. App. Austin July 6, 2015)*.

In a case in which a trial court affirmed an order of the Texas Commission on Environmental Quality that denied a city's request for a contested case hearing to oppose a dairy's application for a major amendment to its concentrated animal feed operation (CAFO) permit, substantial evidence supported the Commission's determination that the city was not an "affected person" for purposes of the permit application, and therefore its decision to deny the city's hearing request, because: (1) the Commission had before it competent evidence that modifications to the dairy's management of its wastewater and manure required by the proposed permit would actually reduce, rather than increase, the likelihood that pollutants from the dairy would be discharged into the watershed; (2) there was competent evidence that the more stringent waste application requirements imposed by

the proposed permit would reduce the amount of phosphorus runoff from waste application fields; (3) the proposed permit required the dairy to bring its operations into compliance with the new rules regulating CAFOs; (4) the proposed amendment required changes in the land application of manure and wastewater from the dairy; and (5) the city did not establish either that granting the permit would increase its water treatment costs or that denying it would reduce them. The Commission properly rejected the city's argument that the city would be adversely affected by its granting the permit. *City of Waco v. Tex. Comm'n on Envtl. Quality, No. 03-09-00005-CV, 2010 Tex. App. LEXIS 7692 (Tex. App. Austin Sept. 17, 2010)*, sub. op., op. withdrawn, *346 S.W.3d 781, 2011 Tex. App. LEXIS 4644 (Tex. App. Austin June 17, 2011)*.

## Environmental Law: Solid Wastes: Disposal Planning

**Overview:** *In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist., No. 04-21-00087-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022)*.

## Environmental Law: Solid Wastes: Disposal Standards

**Overview:** *In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist., No. 04-21-00087-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022)*.

## Environmental Law: Solid Wastes: Municipal Landfills

*Overview: In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*. *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex. Gov't Code Ann. § 2001.174*, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

*Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist. No. 04-21-00067-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022).*

## Environmental Law: Solid Wastes: Permits: General Overview

Texas Commission on Environmental Quality's (TCEQ) director's determination that an applicant's solid waste landfill permit application was not complete was not a failure to act under Tex. *Water Code Ann. § 5.352* allowing the applicant to seek mandamus under Tex. *Water Code Ann. § 5.357*. Rather, he was required to appeal the decision within 30 days pursuant to Tex. *Water Code Ann. § 5.351* and Tex. *Health & Safety Code Ann. § 361.321*. *Tex. Comm'n on Envtl. Quality v. Kelsoe, No. 03-07-00720-CV, 2009 Tex. App. LEXIS 1768 (Tex. App. Austin Mar. 11, 2009), op. withdrawn, sub. op., 286 S.W.3d 91, 2009 Tex. App. LEXIS 3014 (Tex. App. Austin Apr. 30, 2009).*

Texas Commission on Environmental Quality's (TCEQ) director's authority to determine administrative completeness of a solid waste landfill permit application was not delegated by TCEQ through rule or order but rather was statutorily granted by the legislature under Tex. *Water Code Ann. § 5.552(a)*. Therefore, Tex. *Water Code Ann. § 5.122(b)* did not apply to an applicant whose application was returned as incomplete; rather, he was required to appeal the decision within 30 days pursuant to Tex. *Water Code Ann. § 5.351* and Tex. *Health & Safety Code Ann. § 361.321*. *Tex. Comm'n on Envtl. Quality v. Kelsoe, No. 03-07-00720-CV, 2009 Tex. App. LEXIS 1768 (Tex. App. Austin Mar. 11, 2009), op. withdrawn, sub. op., 286 S.W.3d 91, 2009 Tex. App. LEXIS 3014 (Tex. App. Austin Apr. 30, 2009).*

Farmer was not entitled to a contested case hearing on a poultry company's application to the Texas Natural Resource Conservation Commission for a permit to enact a new waste management scheme where the farmer was not likely to be affected. *Collins v. Tex. Natural Res. Conservation Comm'n, 94 S.W.3d 876, 2002 Tex. App. LEXIS 9259 (Tex. App. Austin Dec. 31, 2002, no pet.).*

## Environmental Law: Solid Wastes: Permits: Disposal

*Overview: In an interlocutory appeal of a declaratory judgment action, the trial court lacked jurisdiction over the district's Texas Uniform Declaratory Judgments Act (UDJA) under the redundant remedy doctrine because the substantive relief sought by the district in the administrative appeal and its UDJA action was the same.*

- Under the Solid Waste Disposal Act, the U.S. Legislature provided a statutory remedy of judicial review of a Texas Commission on Environmental Quality final order on a permit application for a municipal solid waste landfill in a contested case. Tex. *Health & Safety Code Ann. § 361.321(a)*; Tex. *Water Code Ann. § 5.351*, *Tex. Gov't Code Ann. § 2001.171*, authorizes an aggrieved party who has exhausted all administrative remedies within a state agency to seek judicial review of a final decision in a contested case. Under *Tex.*

Gov't Code Ann. § 2001.174, in a judicial appeal of an administrative order, a court may affirm or reverse the agency decision in whole or in part or may remand the case for further proceedings before the agency.

Post Oak Clean Green, Inc. v. Guadalupe Cnty. Groundwater Conservation Dist., No. 04-21-00087-CV, 2022 Tex. App. LEXIS 7531 (Tex. App. San Antonio Oct. 12, 2022).

## Environmental Law: Water Quality: General Overview

In a challenge to the grant of a wastewater discharge permit, because the challenging environmental activist club (and other individuals) did not file their petitions for judicial review within the time period required in Tex. Water Code Ann. § 5.351, the district court properly granted the Texas Commission on Environmental Quality's pleas to the jurisdiction and dismissed the suits. And contrary to the assertions of the club and the individuals, the plain language of the water code did not limit the right to judicial review of Commission decisions only to contested cases. West v. Tex. Comm'n on Envtl. Quality, 260 S.W.3d 256, 2008 Tex. App. LEXIS 5821 (Tex. App. Austin July 31, 2008, no pet.).

Because no part of the Texas Water Code's statutory scheme or a Texas Commission on Environmental Quality order had been challenged by plaintiff nearby property owner in its citizen suit against defendants, current or former owners, operators or entities in control of underground petroleum storage tanks, that factor weighed against Burford abstention. K-7 Enters., L.P. v. Jester, 562 F. Supp. 2d 819, 2007 U.S. Dist. LEXIS 44696 (E.D. Tex. 2007).

## Environmental Law: Water Quality: Clean Water Act: Discharge Permits: Public Participation

Landowner received notice required by Tex. Water Code Ann. §§ 5.115(b), 5.552, 5.553, and 26.028(a), of a city's application for renewal of a wastewater discharge permit, because notice was published in the newspaper when the application was complete, when technical review was complete and preliminary approval given, and when the permit was issued. Having failed to exhaust administrative remedies, he could not seek judicial review. Kunze v. Tex. Comm'n on Envtl. Quality, No. 03-13-00851-CV, 2015 Tex. App. LEXIS 8570 (Tex. App. Austin Aug. 14, 2015).

## Governments: Legislation: Statutes of Limitations: General Overview

County water authority's challenge to the order of the state Board of Water Engineers, rejecting said authority's application to appropriate a certain amount of water per annum with necessary storage space in a state reservoir, was time-barred pursuant to former Tex. Rev. Civ. Stat. Ann. art. 7477, § 12 (now Tex. Water Code Ann. § 5.351). Northeast Tarrant County Water Authority v. Board of Water Engineers, 367 S.W.2d 720, 1963 Tex. App. LEXIS 2098 (Tex. Civ. App. Austin Apr. 24, 1963, no writ).

## Governments: Public Improvements: Financing

To obtain judicial review of the February 9, 2010 order, a trustee was required to file his petition within 30 days after that date under Tex. Water Code Ann. § 5.351, but he did not do so, and he could not save his waived complaints by seeking judicial review from the denial of his motion to overturn; the trustee did not invoke the trial court's jurisdiction and his complaint was properly dismissed. Hendricks v. Tex. Comm'n on Envtl. Quality, No. 03-10-00758-CV, 2011 Tex. App. LEXIS 4595 (Tex. App. Austin June 15, 2011).

## Governments: Public Improvements: Sanitation & Water

Agency letter was not an agency action or inaction that was reviewable under the statute, because the letter was nothing more than a status update regarding license requirements and milestones. *Tex. Comm'n on Envtl. Quality & Waste Control Specialists LLC v. Sierra Club, No. 03-12-00625-CV, 2014 Tex. App. LEXIS 2648 (Tex. App. Austin Mar. 7, 2014).*

## Real Property Law: Eminent Domain Proceedings: Valuation

Decision allowing a utility district to purchase an owner's detention pond for $37,551 was upheld based on substantial evidence that the owner's claimed purchase price of $800,000 was not supported by documents and did not occur between unrelated parties; the court rejected the owner's claim that it was entitled to trial de novo. *Ranna & Co., LLC v. Tex. Comm'n on Envtl. Quality, No. 03-16-00724-CV, 2018 Tex. App. LEXIS 3690 (Tex. App. Austin May 24, 2018).*

## Real Property Law: Water Rights: Procedure

Declining to abstain under a Burford analysis from deciding an Endangered Species Act case was not an abuse of discretion, in light of the apparent lack of a state remedy for state water permitting and regulatory practices that caused harm to endangered whooping cranes. *Aransas Project v. Shaw, 775 F.3d 641, 2014 U.S. App. LEXIS 24866 (5th Cir. Tex. 2014).*

# Research References & Practice Aids

### LAW REVIEWS

*52 SMU L. Rev. 1105.*

*56 SMU L. Rev. 1925.*

### Hierarchy Notes:

*Tex. Water Code Title 2, Subtit. A, Ch. 5*

*Tex. Water Code Title 2, Subtit. A, Ch. 5, Subch. i*

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

# APPENDIX 15

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 2 Water Administration (Subts. A — F) > Subtitle B Water Rights (Chs. 11 — 14) > Chapter 13 Water Rates and Services (Subchs. A — N) > Subchapter G Certificates of Convenience and Necessity (§§ 13.241 — 13.258)*

## Sec. 13.244. Application; Maps and Other Information; Evidence and Consent.

(a) Except as provided by Section 13.258, to obtain a certificate of public convenience and necessity or an amendment to a certificate, a public utility or water supply or sewer service corporation shall submit to the utility commission an application for a certificate or for an amendment as provided by this section.

(b) Each public utility and water supply or sewer service corporation shall file with the utility commission a map or maps showing all its facilities and illustrating separately facilities for production, transmission, and distribution of its services, and each certificated retail public utility shall file with the utility commission a map or maps showing any facilities, customers, or area currently being served outside its certificated areas.

(c) Each applicant for a certificate or for an amendment shall file with the utility commission evidence required by the utility commission to show that the applicant has received the required consent, franchise, or permit of the proper municipality or other public authority.

(d) An application for a certificate of public convenience and necessity or for an amendment to a certificate must contain:

(1) a description of the proposed service area by:

(A) a metes and bounds survey certified by a licensed state land surveyor or a registered professional land surveyor;

(B) the Texas State Plane Coordinate System;

(C) verifiable landmarks, including a road, creek, or railroad line; or

(D) if a recorded plat of the area exists, lot and block number;

(2) a description of any requests for service in the proposed service area;

(3) a capital improvements plan, including a budget and estimated timeline for construction of all facilities necessary to provide full service to the entire proposed service area;

(4) a description of the sources of funding for all facilities;

(5) to the extent known, a description of current and projected land uses, including densities;

(6) a current financial statement of the applicant;

(7) according to the tax roll of the central appraisal district for each county in which the proposed service area is located, a list of the owners of each tract of land that is:

(A) at least 50 acres; and

(B) wholly or partially located within the proposed service area; and

(8) any other item required by the utility commission.

(e) The executive director of the utility commission, at the discretion of the executive director of the utility commission or on the request of the certificate holder, may make a correction to a certificate of public convenience and necessity, without observing formal amendment procedures, by reissuing the certificate or issuing an endorsement to the certificate. The executive director of the utility commission shall notify the certificate holder that the correction has been made and ensure that the reissued certificate or endorsement is recorded in the commission's records. The executive director of the utility commission may make a correction under this subsection only:

    (1) to correct a clerical or typographical error;

    (2) to change the name of an incorporated certificate holder on a certificate if:

        (A) an amendment to the certificate holder's articles of incorporation or certificate of formation, as applicable, is filed with the secretary of state that only changes the name of the certificate holder; and

        (B) the certificate holder provides verification from the secretary of state to the utility commission that the amendment only changed the name of the certificate holder;

    (3) to correct a mapping error in a certificate to reflect the metes and bounds of the certificated area; or

    (4) to correct another similar nonsubstantive error or matter if authorized by the utility commission by rule.

(f) The executive director of the utility commission may not make a correction under Subsection (e)(3) unless the certificate holder:

    (1) submits to the executive director of the utility commission a written agreement between the certificate holder and any other retail water or sewer service provider whose service area is directly affected by the correction; and

    (2) provides notice of the correction to any water or sewer service customers whose retail service is directly affected by the correction.

# History

Enacted by Acts 1985, 69th Leg., ch. 795 (S.B. 249), § 3.005, effective September 1, 1985; am. *Acts 1989, 71st Leg., ch. 567 (H.B. 1808), § 23*, effective September 1, 1989; am. *Acts 1995, 74th Leg., ch. 76 (S.B. 959), § 11.286*, effective September 1, 1995; am. *Acts 2005, 79th Leg., ch. 1145 (H.B. 2876), § 4*, effective September 1, 2005; am. *Acts 2013, 83rd Leg., ch. 170 (H.B. 1600), § 2.44*, effective September 1, 2013; am. *Acts 2013, 83rd Leg., ch. 171 (S.B. 567), § 44*, effective September 1, 2013; *Acts 2017, 85th Leg., ch. 148 (S.B. 1842), § 2*, effective September 1, 2017; *Acts 2023, 88th Leg., ch. 1083 (S.B. 893), § 1*, effective June 18, 2023.

Annotations

# Notes

**STATUTORY NOTES**

**Amendment Notes**

**2005 amendment,** rewrote (a), which read: "A public utility or water supply or sewer service corporation shall submit to the commission an application to obtain a certificate of public convenience and necessity or an amendment of a certificate."; substituted "Each" for "On request by the commission, each," in (b); added "or for an amendment" after "certificate" in (c); and added (d).

**2013 amendment,** by chs. 170 and 171, added "utility" before "commission" wherever it appears in (a), (b), (c), and (d)(8).

**2017 amendment,** added "Except as provided by Section 13.258" in (a); and made a stylistic stage.

**The 2023 amendment** added (e) and (f).

**Applicability**

*Acts 2017, 85th Leg., ch. 948 (S.B. 1842), § 6* provides: "The change in law made by this Act applies only to an application for an amendment of a certificate of public convenience and necessity filed on or after the effective date of this Act. An application filed before the effective date of this Act is governed by the law in effect on the date the application is filed, and the former law is continued in effect for that purpose."

Acts 2005, 79th Leg., ch. 1145 (H.B. 2876), § 15 provides:

"The changes in law made by this Act apply only to:

(1) an application for a certificate of public convenience and necessity or for an amendment to a certificate of public convenience and necessity submitted to the Texas Commission on Environmental Quality on or after January 1, 2006; and

(2) a proceeding to amend or revoke a certificate of public convenience and necessity initiated on or after January 1, 2006."

# Research References & Practice Aids

**Hierarchy Notes:**

*Tex. Water Code Title 2, Subtit. B, Ch. 13, Subch. 2*

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

# APPENDIX 16

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

***Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 2 Water Administration (Subts. A — F) > Subtitle D Water Quality Control (Chs. 26 — 34) > Chapter 26 Water Quality Control (Subchs. A — M) > Subchapter A Administrative Provisions (§§ 26.001 — 26.003)***

## Sec. 26.003. Policy of This Subchapter.

It is the policy of this state and the purpose of this subchapter to maintain the quality of water in the state consistent with the public health and enjoyment, the propagation and protection of terrestrial and aquatic life, and the operation of existing industries, taking into consideration the economic development of the state; to encourage and promote the development and use of regional and areawide waste collection, treatment, and disposal systems to serve the waste disposal needs of the citizens of the state; and to require the use of all reasonable methods to implement this policy.

## History

Am. Acts 1977, 65th Leg., ch. 870 (S.B. 1139), § 1, effective September 1, 1977; am. *Acts 2001, 77th Leg., ch. 965 (H.B. 2912), § 1.26*, effective September 1, 2001.

Annotations

## Notes to Decisions

**Environmental Law: Water Quality: Clean Water Act: Discharge Permits: General Overview**

In overruling an administrative law judge (ALJ) and approving a proposed water treatment center, the Texas Commission on Environmental Quality reasonably exercised its discretion in denying a hearing on the issue of need; moreover, the Commission adequately explained a decision that was supported by substantial evidence, in light of the ALJ's use of an incorrect standard to measure the possible antidegradation of water quality. *Wood v. Tex. Comm'n on Envtl. Quality, No. 13-13-00189-CV, 2014 Tex. App. LEXIS 13822 (Tex. App. Corpus Christi Dec. 30, 2014)*, reh'g denied, op. withdrawn, sub. op., *No. 13-13-00189-CV, 2015 Tex. App. LEXIS 2139 (Tex. App. Corpus Christi Mar. 5, 2015)*.

## Research References & Practice Aids

**LAW REVIEWS**

*38 Hous. L. Rev. 1521*.

*26 Tex. Tech L. Rev. 187*.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

**End of Document**

# APPENDIX 17

## _Tex. Water Code § 26.028_

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

_Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 2 Water Administration (Subts. A — F) > Subtitle D Water Quality Control (Chs. 26 — 34) > Chapter 26 Water Quality Control (Subchs. A — M) > Subchapter B General Powers and Duties (§§ 26.011 — 26.053)_

## Sec. 26.028. Action on Application.

**(a)** Notice of an application for a permit, permit amendment, or permit renewal shall be given to the persons who in the judgment of the commission may be affected by the application, except as provided by this section.

**(b)** For any application involving an average daily discharge of five million gallons or more, the notice shall be given:

**(1)** not later than 20 days before the date on which the commission acts on the application; and

**(2)** to each county judge in the county or counties located within 100 statute miles of the point of discharge who have requested in writing that the commission give that notice and through which water, into or adjacent to which waste or pollutants are to be discharged under the permit, flows after the discharge.

**(c)** Except as otherwise provided by this section, the commission, on the motion of a commissioner, or on the request of the executive director or any affected person, shall hold a public hearing on the application for a permit, permit amendment, or renewal of a permit.

**(d)** Notwithstanding any other provision of this chapter, the commission, at a regular meeting without the necessity of holding a public hearing, may approve an application to renew or amend a permit if:

**(1)** the applicant is not applying to:

**(A)** increase significantly the quantity of waste authorized to be discharged; or

**(B)** change materially the pattern or place of discharge;

**(2)** the activities to be authorized by the renewed or amended permit will maintain or improve the quality of waste authorized to be discharged;

**(3)** for NPDES permits, notice and the opportunity to request a public meeting shall be given in compliance with NPDES program requirements, and the commission shall consider and respond to all timely received and significant public comment; and

**(4)** the commission determines that an applicant's compliance history under the method for using compliance history developed by the commission under Section 5.754 raises no issues regarding the applicant's ability to comply with a material term of its permit.

**(e)** In considering an applicant's compliance history under Subsection (d)(4), the commission shall consider as evidence of compliance information regarding the applicant's implementation of an environmental management system at the facility for which the permit, permit amendment, or permit renewal is sought. In this subsection, "environmental management system" has the meaning assigned by Section 5.127.

**(f)** Notice of an application under Subsection (d) shall be mailed to the mayor and health authorities for the city or town, and the county judge and health authorities for the county in which the waste is or will be

discharged, at least 10 days before the commission meeting, and they may present information to the commission on the application.

(g) An application to renew a permit for a confined animal feeding operation which was issued between July 1, 1974, and December 31, 1977, may be set for consideration and may be acted on by the commission at a regular meeting without the necessity of holding a public hearing if the applicant does not seek to discharge into or adjacent to water in the state and does not seek to change materially the pattern or place of disposal.

(h) For the purposes of Subsection (c), the commission may act on the application without holding a public hearing if all of the following conditions are met:

(1) not less than 30 days before the date of action on the application by the commission, the applicant has published the commission's notice of the application at least once in a newspaper regularly published or circulated within each county where the proposed facility or discharge is located and in each county affected by the discharge;

(2) not less than 30 days before the date of action on the application by the commission, the applicant has served or mailed the commission's notice of the application to persons who in the judgment of the commission may be affected, including the county judges as required by Subsection (b). As part of his application the applicant shall submit an affidavit which lists the names and addresses of the persons who may be affected by the application and includes the source of the list;

(3) within 30 days after the date of the newspaper publication of the commission's notice, neither a commissioner, the executive director, nor an affected person who objects to the application has requested a public hearing.

## History

Am. Acts 1977, 65th Leg., ch. 870 (S.B. 1139), § 1, effective September 1, 1977; am. Acts 1979, 66th Leg., ch. 781 (H.B. 1794), § 1, effective August 27, 1979; am. Acts 1981, 67th Leg., ch. 828 (H.B. 1349), § 6, effective June 17, 1981; am. Acts 1985, 69th Leg., ch. 795 (S.B. 249), § 5.012, effective September 1, 1985; am. Acts 1999, 76th Leg., ch. 795 (H.B. 1479), § 1, effective September 1, 1999; am. Acts 2001, 77th Leg., ch. 965 (H.B. 2912), § 16.05, effective September 1, 2001; am. Acts 2001, 77th Leg., ch. 1161 (H.B. 2997), § 2, effective September 1, 2001; am. Acts 2011, 82nd Leg., ch. 1021 (H.B. 2694), § 4.13, effective September 1, 2011.

Annotations

## Notes

**STATUTORY NOTES**

**1999 Note:**

Ch. 795 takes effect September 1, 1999, and applies only to an application to renew or amend a wastewater discharge permit under Chapter 26, Water Code, that was filed on or after that date. Acts 1999, 76th Leg., ch. 795, § 2

**2001 Note:**

The changes in law made by Acts 2001, 77th Leg., ch. 1161 by amending Section 26.028, Water Code, apply only to an application for a permit, permit modification, permit amendment, permit revision, permit reopening, or permit renewal that is filed with the Texas Natural Resource Conservation Commission on or after the date on which the

commission publishes in the Texas Register the final rules adopted under *Section 5.127, Water Code*, as added by *Acts 2001, 77th Leg., ch. 1161. Acts 2001, 77th Leg., ch. 1161; § 7(b)*.

## Amendment Notes

**2011 amendment,** substituted "using" for "evaluating" in (d)(4).

# Notes to Decisions

Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Statutory Right

Civil Procedure: Justiciability: Standing: Third Party Standing

Environmental Law: Litigation & Administrative Proceedings: Judicial Review

Environmental Law: Litigation & Administrative Proceedings: Jurisdiction & Procedure

Environmental Law: Water Quality: General Overview

Environmental Law: Water Quality: Clean Water Act: Discharge Permits: Public Participation

Environmental Law: Water Quality: Clean Water Act: Discharge Permits: State Water Quality Certifications

### Administrative Law: Agency Adjudication: Hearings: Right to Hearing: Statutory Right

Texas Commission on Environmental Quality did not abuse its discretion in denying an interested party a contested case hearing on a dairy owner's application for an amended water-quality permit, because the proposed amended permit did not seek to significantly increase or materially change the authorized discharge of waste. The proposed amendment purported to conform to numerous regulatory changes and aimed to reduce the risk of runoff from waste application fields by expanding buffer zones and strictly managing nutrients applied to the soil. *Tex. Comm'n on Envtl. Quality v. Bosque River Coalition, 413 S.W.3d 403, 2013 Tex. LEXIS 775 (Tex. 2013)*.

### Civil Procedure: Justiciability: Standing: Third Party Standing

City could be affected or injured by a dairy's permit amendment application involving concentrated animal feeding operations, even if the proposed amendment was more protective than the current permit, notwithstanding the exemption under Tex. *Water Code Ann. § 26.028(d)* for applications seeking to improve water quality. *City of Waco v. Tex. Comm'n on Envtl. Quality, 346 S.W.3d 781, 2011 Tex. App. LEXIS 4644 (Tex. App. Austin June 17, 2011)*, pet. withdrawn *No. 11-0729, 2013 Tex. LEXIS 83 (Tex. Feb. 1, 2013)*, rev'd, *413 S.W.3d 409, 2013 Tex. LEXIS 604 (Tex. 2013)*.

### Environmental Law: Litigation & Administrative Proceedings: Judicial Review

By appealing a decision of the Texas Commission on Environmental Quality (TCEQ) to grant an electric company's wastewater discharge permit application, the permit challengers were asking the courts to adjudicate the merits of the application and the factual bases for TCEQ's decision, and the trial court correctly determined that it lacked subject-matter jurisdiction to do that because TCEQ had exclusive original jurisdiction over the dispute, and the challengers did not exhaust all of their administrative remedies prior to resorting to judicial review; the challengers were required to demonstrate that they were affected persons and to fully participate in a contested case hearing

before seeking judicial review of the merits of the permit. *Sierra Club v. Tex. Comm'n on Envtl. Quality, No. 03-14-00130-CV, 2016 Tex. App. LEXIS 3244 (Tex. App. Austin Mar. 31, 2016).*

Landowner received notice required by Tex. *Water Code Ann. §§ 5.115(b)*, *5.552*, *5.553*, and *26.028(a)*, of a city's application for renewal of a wastewater discharge permit, because notice was published in the newspaper when the application was complete, when technical review was complete and preliminary approval given, and when the permit was issued. Having failed to exhaust administrative remedies, he could not seek judicial review. *Kunze v. Tex. Comm'n on Envtl. Quality, No. 03-13-00851-CV, 2015 Tex. App. LEXIS 8570 (Tex. App. Austin Aug. 14, 2015).*

### Environmental Law: Litigation & Administrative Proceedings: Jurisdiction & Procedure

By appealing a decision of the Texas Commission on Environmental Quality (TCEQ) to grant an electric company's wastewater discharge permit application, the permit challengers were asking the courts to adjudicate the merits of the application and the factual bases for TCEQ's decision, and the trial court correctly determined that it lacked subject-matter jurisdiction to do that because TCEQ had exclusive original jurisdiction over the dispute, and the challengers did not exhaust all of their administrative remedies prior to resorting to judicial review; the challengers were required to demonstrate that they were affected persons and to fully participate in a contested case hearing before seeking judicial review of the merits of the permit. *Sierra Club v. Tex. Comm'n on Envtl. Quality, No. 03-14-00130-CV, 2016 Tex. App. LEXIS 3244 (Tex. App. Austin Mar. 31, 2016).*

### Environmental Law: Water Quality: General Overview

Texas Commission on Environmental Quality did not abuse its discretion in denying an interested party a contested case hearing on a dairy owner's application for an amended water-quality permit, because the proposed amended permit did not seek to significantly increase or materially change the authorized discharge of waste. The proposed amendment purported to conform to numerous regulatory changes and aimed to reduce the risk of runoff from waste application fields by expanding buffer zones and strictly managing nutrients applied to the soil. *Tex. Comm'n on Envtl. Quality v. Bosque River Coalition, 413 S.W.3d 403, 2013 Tex. LEXIS 773 (Tex. 2013).*

### Environmental Law: Water Quality: Clean Water Act: Discharge Permits: Public Participation

Landowner received notice required by Tex. *Water Code Ann. §§ 5.115(b)*, *5.552*, *5.553*, and *26.028(a)*, of a city's application for renewal of a wastewater discharge permit, because notice was published in the newspaper when the application was complete, when technical review was complete and preliminary approval given, and when the permit was issued. Having failed to exhaust administrative remedies, he could not seek judicial review. *Kunze v. Tex. Comm'n on Envtl. Quality, No. 03-13-00851-CV, 2015 Tex. App. LEXIS 8570 (Tex. App. Austin Aug. 14, 2015).*

Evidence supported the Texas Environmental Quality Commission's (Commission) determination that the proposed amended permit did not seek to significantly increase or materially change the authorized discharge of waste or foreclose Commission discretion to consider the amended application at a regular meeting rather than after a contested case hearing; the city's request for a contested case hearing on the dairy's s application for an amended permit was denied, *30 Tex. Admin. Code § 55.201(b)(4)*, Tex. *Water Code Ann. § 26.028(d)*, *Tex. Comm'n on Envtl. Quality v. City of Waco, 413 S.W.3d 409, 2013 Tex. LEXIS 604 (Tex. 2013)*, reh'g denied, *No. 11-0729, 2013 Tex. LEXIS 1011 (Tex. Nov. 22, 2013).*

### Environmental Law: Water Quality: Clean Water Act: Discharge Permits: State Water Quality Certifications

Evidence supported the Texas Environmental Quality Commission's (Commission) determination that the proposed amended permit did not seek to significantly increase or materially change the authorized discharge of waste or foreclose Commission discretion to consider the amended application at a regular meeting rather than after a contested case hearing; the city's request for a contested case hearing on the dairy's s application for an amended permit was denied. *30 Tex. Admin. Code § 55.201(b)(4)*, Tex. *Water Code Ann. § 26.028(d)*. *Tex. Comm'n on Envtl. Quality v. City of Waco, 413 S.W.3d 409, 2013 Tex. LEXIS 604 (Tex. 2013)*, reh'g denied, *No. 11-0729, 2013 Tex. LEXIS 1011 (Tex. Nov. 22, 2013)*.

## Research References & Practice Aids

### LAW REVIEWS

*47 Baylor L. Rev. 989*.

*53 SMU L. Rev. 965*.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

# APPENDIX 18

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 2 Water Administration (Subts. A — F) > Subtitle D Water Quality Control (Chs. 26 — 34) > Chapter 26 Water Quality Control (Subchs. A — M) > Subchapter B General Powers and Duties (§§ 26.011 — 26.053)*

## Sec. 26.0282. Consideration of Need and Regional Treatment Options.

In considering the issuance, amendment, or renewal of a permit to discharge waste, the commission may deny or alter the terms and conditions of the proposed permit, amendment, or renewal based on consideration of need, including the expected volume and quality of the influent and the availability of existing or proposed areawide or regional waste collection, treatment, and disposal systems not designated as such by commission order pursuant to provisions of this subchapter. This section is expressly directed to the control and treatment of conventional pollutants normally found in domestic wastewater.

## History

Enacted by Acts 1989, 71st Leg., ch. 757 (H.B. 1332), § 1, effective September 1, 1989.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

# APPENDIX 19

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 2 Water Administration (Subts. A — F) > Subtitle D Water Quality Control (Chs. 26 — 34) > Chapter 26 Water Quality Control (Subchs. A — M) > Subchapter C Regional and Area-wide Systems (§§ 26.081 — 26.087)*

## Sec. 26.081. Regional or Area-Wide Systems; General Policy.

(a) The legislature finds and declares that it is necessary to the health, safety, and welfare of the people of this state to implement the state policy to encourage and promote the development and use of regional and area-wide waste collection, treatment, and disposal systems to serve the waste disposal needs of the citizens of the state and to prevent pollution and maintain and enhance the quality of the water in the state.

(b) Within any standard metropolitan statistical area in the state, the commission is authorized to implement this policy in the manner and in accordance with the procedure provided in Sections 26.081 through 26.086 of this code.

(c) In those portions of the state which are not within a standard metropolitan statistical area, the commission shall observe this state policy by encouraging interested and affected persons to cooperate in developing and using regional and area-wide systems. The commission may not use the procedure specified in Sections 26.081 through 26.086 of this code in these areas to implement this policy. However, this does not affect or diminish any authority which the commission may otherwise have and exercise under other provisions of this chapter.

(d) The term "standard metropolitan statistical area," as used in this section, means an area consisting of a county or one or more contiguous counties which is officially designated as such by the United States Office of Management and Budget or its successor in this function.

## History

Am. Acts 1977, 65th Leg., ch. 870 (S.B. 1139), § 1, effective September 1, 1977; am. Acts 1985, 69th Leg., ch. 795 (S.B. 249), § 1.093, effective September 1, 1985.

Annotations

## Notes to Decisions

Civil Procedure: Eminent Domain Proceedings: Process

Governments: Public Improvements: Sanitation & Water

Civil Procedure: Eminent Domain Proceedings: Process

In a case in which a utility district exercised its power of eminent domain to acquire a 3.287 acre tract of land located just beyond the district's borders, the district's decision to build its own wastewater treatment facility, rather than pay for the expansion of a wastewater treatment plant operated by a county utility district, was not an issue to

be decided by a jury in the condemnation proceeding; the implementation of the State's policy was the responsibility of the administrative agency — the Texas Commission on Environmental Quality — and was not delegated to juries considering individual condemnation proceedings. *Zboyan v. Far Hills Util. Dist.*, 221 S.W.3d 924, 2007 Tex. App. LEXIS 3190 (Tex. App. Beaumont Apr. 26, 2007, no pet.).

## Governments: Public Improvements: Sanitation & Water

In a case in which a utility district exercised its power of eminent domain to acquire a 3.287 acre tract of land located just beyond the district's borders, the district's decision to build its own wastewater treatment facility, rather than pay for the expansion of a wastewater treatment plant operated by a county utility district, was not an issue to be decided by a jury in the condemnation proceeding; the implementation of the State's policy was the responsibility of the administrative agency — the Texas Commission on Environmental Quality — and was not delegated to juries considering individual condemnation proceedings. *Zboyan v. Far Hills Util. Dist.*, 221 S.W.3d 924, 2007 Tex. App. LEXIS 3190 (Tex. App. Beaumont Apr. 26, 2007, no pet.).

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

# APPENDIX 20

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter A General Provisions (§ 65.001)*

## Sec. 65.001. Definitions.

In this chapter:

(1) "District" means a special utility district operating under this chapter.

(2) "Board" means the board of directors of a district.

(3) "Director" means a member of the board of directors of a district.

(4) "Commission" means the Texas Natural Resource Conservation Commission.

(5) "Executive director" means the executive director of the Texas Natural Resource Conservation Commission.

(6) "Public agency" means any city, the United States and its agencies, the State of Texas and its agencies, and any district or authority created under Article XVI, Section 59, or Article III, Sections 52(b)(1) and (2), of the Texas Constitution.

(7) "City" means any incorporated city or town.

(8) "Extraterritorial jurisdiction" means the extraterritorial jurisdiction of a city as determined under Chapter 42, Local Government Code.

(9) "Sole expense" means the actual cost of relocating, raising, lowering, rerouting, changing grade, or altering the construction to provide comparable replacement without enhancing the facility, after deducting the net salvage value derived from the old facility.

(10) "Water supply or sewer service corporation" means any member-owned, member-controlled, nonprofit water supply or sewer service corporation created and operating under Chapter 67, that:

(A) provides water supply services to noncontiguous subdivisions in two or more counties, at least one of which counties has a population greater than 3.3 million; or

(B) is providing the services of a water supply or sewer service corporation under a certificate of convenience and necessity issued by the commission or a predecessor agency.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. Acts 1985, 69th Leg., ch. 795 (S.B. 249), § 1.153, effective September 1, 1985; am. *Acts 1987, 70th Leg., ch. 149 (S.B. 896), § 47*, effective September 1, 1987; am. Acts 1991, 72nd Leg., 1st C.S., ch. 3 (S.B. 2), § 1.082, effective August 12, 1991; am. *Acts 1997, 75th Leg., ch. 474 (H.B. 2851), § 1*, effective September 1, 1997; am. *Acts 1999, 76th Leg., ch. 62 (S.B. 1368), § 18.67*, effective September 1, 1999; am. *Acts 1999, 76th Leg., ch. 320 (H.B. 1069), § 1*, effective August 30, 1999; am. *Acts 2001, 77th Leg., ch. 669 (H.B. 2810), § 150*, effective September 1, 2001.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.011. Creation of District.

A special utility district may be created under and subject to the authority, conditions, and restrictions of, and is considered a conservation and reclamation district under *Article XVI, Section 59, of the Texas Constitution.*

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

**Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)**

## Sec. 65.012. Purposes of District.

A district may be created:

(1) to purchase, own, hold, lease, and otherwise acquire sources of water supply; to build, operate, and maintain facilities for the transportation of water; and to sell water to towns, cities, and other political subdivisions of this state, to private business entities, and to individuals;

(2) for the establishment, operation, and maintenance of fire-fighting facilities to perform all fire-fighting activities within the district; or

(3) for the protection, preservation, and restoration of the purity and sanitary condition of water within the district.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. *Acts 2003, 78th Leg., ch. 494 (H.B. 1014), § 1*, effective June 20, 2003.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved

End of Document

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.013. Composition of District.

(a) A district may include the area in all or part of any one or more counties including all or part of any cities and other public agencies.

(b) The land composing a district is not required to be contiguous, but may consist of separate bodies of land separated by land that is not included in the district.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.014. Certified Resolution Seeking Creation of District.

(a) If creation of a district is proposed by a water supply or sewer service corporation, a certified copy of a resolution requesting creation must be filed with the commission.

(b) The resolution shall be signed by the president and secretary of the board of directors of a water supply or sewer service corporation and shall state that the water supply or sewer service corporation, acting through its board of directors, has found that it is necessary and desirable for the water supply or sewer service corporation to be converted into a district.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. *Acts 1999, 76th Leg., ch. 320 (H.B. 1069), § 2*, effective August 30, 1999.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)

## Sec. 65.015. Contents of Resolution.

In addition to the requirements stated in Section 65.014, the resolution shall:

(1) describe the boundaries of the proposed district by metes and bounds or by lot and block number, if there is a recorded map or plat and survey of the area, or by any other commonly recognized means in a certificate attached to the resolution executed by a registered professional engineer;

(2) state the general nature of the services presently performed by the water supply or sewer service corporation, the general nature of the services proposed to be provided by the district, and the necessity for the services provided by the district;

(3) include a name of the district that is generally descriptive of the location of the district followed by the words special utility district, but may not be the same name as any other district in the same county;

(4) include the names of not less than five and not more than 11 qualified persons to serve as the initial board of directors of the district; and

(5) specify each purpose for which the district is being established.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. Acts 1999, 76th Leg., ch. 320 (H.B. 1069), § 2, effective August 30, 1999; am. Acts 2003, 78th Leg., ch. 494 (H.B. 1014), § 2, effective June 20, 2003.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.016. Consent of City.

A district may operate within the corporate limits of a city or within the extraterritorial jurisdiction of a city, provided that a city may require that the district construct all facilities to serve the land in accordance with plans and specifications that are approved by the city. The city may also require that the city be entitled to inspect facilities being constructed by a district within the corporate limits or extraterritorial jurisdiction of the city.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.017. Deposit [Repealed].

Repealed by *Acts 1987, 70th Leg., ch. 399 (H.B. 1328), § 2*, effective September 1, 1987.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.018. Notice and Hearing on District Creation.

If a resolution is filed under Section 65.014, the commission shall give notice of an application as required by Section 49.011 and may conduct a hearing on the application if the commission determines that a hearing is necessary under Section 49.011.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. *Acts 1997, 75th Leg., ch. 1070 (S.B. 1865), § 40*, effective September 1, 1997.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved

End of Document

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.019. Notice of Hearing [Repealed].

Repealed by *Acts 1997, 75th Leg., ch. 1070 (S.B. 1865), § 55*, effective September 1, 1997.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.020. Hearing.

(a) If the commission determines that a hearing is necessary under Section 49.011, the commission shall conduct a hearing and accept evidence on the sufficiency of the resolution and whether or not the request for conversion for each purpose specified in the resolution, as required by Section 65.015, is feasible and practicable and is necessary and would be a benefit to all or any part of the land proposed to be included in the district. The commission may only consider a purpose for which the district is being created that is specified in the resolution.

(b) The commission has jurisdiction to determine all issues on the sufficiency of the resolution and the creation of the district.

(c) The hearing may be adjourned from day to day, and the commission may make all incidental orders necessary with respect to the matters before it.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. *Acts 1997, 75th Leg., ch. 1070 (S.B. 1865), § 41*, effective September 1, 1997; am. *Acts 2005, 79th Leg., ch. 1244 (H.B. 1673), § 1*, effective September 1, 2005.

Annotations

## Notes

**STATUTORY NOTES**

**Amendment Notes**

**2005 amendment,** in (a), added "for each purpose specified in the resolution, as required by Section 65.015" in the first sentence, and added the second sentence.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.021. Granting or Refusing Creation of District.

(a) If the commission finds that the resolution conforms to the requirements of Section 65.015, the request for conversion is feasible and practicable, and each purpose for which the district is created is necessary and would be a benefit to the land proposed to be included in the district, the commission shall make these findings in an order and shall authorize the creation of the district for the purpose or purposes specified in the resolution, as required by Section 65.015, on approval at the confirmation and directors' election called and held under this subchapter.

(b) In determining if the request for conversion is feasible and practicable and if each purpose for which the district is created is necessary and would be a benefit to the land included in the district, the commission shall consider:

(1) the availability of comparable service from other systems, including water districts, municipalities, and regional authorities;

(2) the reasonableness of projected construction costs, if any, tax rates, and water and sewer rates; and

(3) whether or not the district and its system and subsequent development within the district will have an unreasonable effect on the following:

(A) land elevation;

(B) subsidence;

(C) groundwater level within the region;

(D) recharge capability of a groundwater source;

(E) natural runoff rates and drainage; and

(F) water quality.

(c) If the commission finds that not all of the land proposed to be included in the district will be benefited by the creation of the district, the commission shall formally make this finding and shall exclude all land that is not benefited from the proposed district and shall redefine the proposed district's boundaries accordingly.

(d) If the commission finds that the resolution does not conform to the requirements of Section 65.015 of this code, the request for conversion is not feasible or practicable, or a purpose for which the district is created is not necessary or a benefit to the land in the district, the commission shall make this finding in its order and shall deny the creation of the district.

(e) A copy of the order of the commission granting or denying the request for conversion stated in the resolution must be mailed to each city that has extraterritorial jurisdiction in a county in which the proposed district is located and that requested notice of hearing as provided by Section 65.019 of this code.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. Acts 1997, 75th Leg., ch. 1070 (S.B. 1865), § 42, effective September 1, 1997; am. Acts 2005, 79th Leg., ch. 1244 (H.B. 1673), § 2, effective September 1, 2005.

Annotations

## Notes

### STATUTORY NOTES

### Amendment Notes

**2005 amendment,** in (a), substituted "the request for conversion is feasible and practicable, and each purpose for which the district is created is necessary" for "and that the request for conversion is feasible and practicable and is necessary," and added "for the purpose or purposes specified in the resolution, as required by Section 65.015"; substituted "each purpose for which the district is created" for "it" in the introductory language in (b); substituted "the request for conversion is not feasible or practicable, or a purpose for which the district is created is not necessary" for "or that the request for conversion is not feasible, practicable, necessary"; and made related changes.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.022. Temporary Directors.

If the commission authorizes the creation of the district, it shall appoint those persons whose names are listed in the resolution filed with the commission by the water supply or sewer service corporation to serve as temporary directors until initial directors are elected as provided by this subchapter.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. *Acts 1999, 76th Leg., ch. 320 (H.B. 1069), § 2,* effective August 30, 1999.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved

End of Document

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.023. Appeal from Order of Commission.

A city or a person who appeared in person or by attorney and offered testimony for or against the creation of the district, may appeal from the order of the commission authorizing or refusing the creation of the district. The appeal must be made within 30 days after the entry of the order.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.

End of Document

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.024. Qualification and Organization of Temporary Directors [Repealed].

Repealed by Acts 1995, 74th Leg., ch. 715 (S.B. 626), § 48, effective September 1, 1995.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

**Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)**

## Sec. 65.025. Confirmation and Directors' Election [Repealed].

Repealed by Acts 1995, 74th Leg., ch. 715 (S.B. 626), § 48, effective September 1, 1995.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

---

End of Document

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.026. Notice of Confirmation and Directors' Election [Repealed].

Repealed by *Acts 1995, 74th Leg., ch. 715 (S.B. 626), § 48*, effective September 1, 1995.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

**Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)**

## Sec. 65.027. Election Ballot [Repealed].

Repealed by Acts 1995, 74th Leg., ch. 715 (S.B. 626), § 48, effective September 1, 1995.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.028. Election Results [Repealed].

Repealed by Acts 1995, 74th Leg., ch. 715 (S.B. 626), § 48, effective September 1, 1995.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985; am. Acts 1991, 72nd Leg., ch. 187 (H.B. 214), § 7, effective September 1, 1991.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: sb14, sb2, sb365, sb262; and the 2025 ballot proposition contingencies to date. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Water Code > Title 4 General Law Districts (Chs. 49 — 68) > Chapter 65 Special Utility Districts (Subchs. A — H) > Subchapter B Creation of District; Conversion of District (§§ 65.011 — 65.029)*

## Sec. 65.029. Supervision by Commission [Repealed].

Repealed by Acts 1995, 74th Leg., ch. 715 (S.B. 626), § 46, effective September 1, 1995.

## History

Enacted by Acts 1983, 68th Leg., ch. 435 (H.B. 1769), § 4, effective August 29, 1983; am. Acts 1985, 69th Leg., ch. 447 (H.B. 181), § 1, effective November 15, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

End of Document

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Katy Hennings on behalf of John Joseph Carlton
Bar No. 3817600
katy@carltonlawaustin.com
Envelope ID: 101178059
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellant, Jonah Water Special Utility District
Status as of 5/22/2025 4:24 PM CST

Associated Case Party: City of Georgetown

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Patricia Carls | 3813425 | tcarls@tcarlslaw.com | 5/22/2025 4:02:20 PM | SENT |
| Carlota Hopinks-Baul | 24094039 | chbaul@spencerfane.com | 5/22/2025 4:02:20 PM | SENT |
| Maris Chambers | | MChambers@spencerfane.com | 5/22/2025 4:02:20 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Thompson | 24088531 | will@lkcfirm.com | 5/22/2025 4:02:20 PM | SENT |
| Edmond McCarthy | 13367200 | ed@ermlawfirm.com | 5/22/2025 4:02:20 PM | SENT |
| William Faulk | 24075674 | cfaulk@spencerfane.com | 5/22/2025 4:02:20 PM | SENT |
| John Carlton | 3817600 | john@carltonlawaustin.com | 5/22/2025 4:02:20 PM | SENT |
| Helen Gilbert | 786263 | hgilbert@bartonbensonjones.com | 5/22/2025 4:02:20 PM | SENT |
| Colton Halter | | colton.halter@oag.texas.gov | 5/22/2025 4:02:20 PM | SENT |
| Todd Disher | | todd@lkcfirm.com | 5/22/2025 4:02:20 PM | SENT |
| Kelli Carlton | | kelli@carltonlawfirm.com | 5/22/2025 4:02:20 PM | ERROR |
| Erin Selvera | | erin@carltonlawfirm.com | 5/22/2025 4:02:20 PM | ERROR |

Associated Case Party: Texas Commission on Environmental Quality

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kellie E.Billings-Ray | | Kellie.Billings-Ray@oag.texas.gov | 5/22/2025 4:02:20 PM | SENT |
| Sara Ferris | | sara.ferris@oag.texas.gov | 5/22/2025 4:02:20 PM | SENT |
| Jennifer Jamison | | jennifer.jamison@tceq.texas.gov | 5/22/2025 4:02:20 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Katy Hennings on behalf of John Joseph Carlton
Bar No. 3817600
katy@carltonlawaustin.com
Envelope ID: 101178059
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellant, Jonah Water Special Utility District
Status as of 5/22/2025 4:24 PM CST

Associated Case Party: Texas Commission on Environmental Quality

| | | | | |
|---|---|---|---|---|
| Jennifer Jamison | | jennifer.jamison@tceq.texas.gov | 5/22/2025 4:02:20 PM | SENT |
| Bobby Salehi | | bobby.salehi@tceq.texas.gov | 5/22/2025 4:02:20 PM | ERROR |
| Erin  K.Snody | | Erin.Snody@oag.texas.gov | 5/22/2025 4:02:20 PM | ERROR |

Associated Case Party: AIRW 2017-7, LP

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Davis | | andrew@lkcfirm.com | 5/22/2025 4:02:20 PM | SENT |

Associated Case Party: AIRW 2017-7, L.P.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Yahaira De Lara | | ydelara@bartonbensonjones.com | 5/22/2025 4:02:20 PM | SENT |

Associated Case Party: Jonah Water Special Utility District

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| John Carlton | | john@carltonlawfirm.com | 5/22/2025 4:02:20 PM | ERROR |